# **EXHIBIT N**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------x
HERMÈS INTERNATIONAL,                 :
HERMÈS SELLIER, and                   :
HERMÈS OF PARIS, INC.,                :
                                      :
                Plaintiffs,           :        **Special Verdict Sheet**
                                      :        98 Civ. 2820 (SAS)
           -against-                  :
                                      :
LEDERER DE PARIS FIFTH                :
AVENUE, INC.,                         :
                                      :
                Defendant.            :
-------------------------------------x

1.    Has Hermès proved, by a preponderance of the evidence,
that any of the products listed below have acquired secondary
meaning?  Please check either "Yes" or "No" for each of the
products listed below.

| Product | Yes | No |
|---|---|---|
| The Kelly bag | ✓ | |
| The Birkin bag | ✓ | |
| The Bolide/Bugatti bag | | ✓ |
| The Trim bag | | ✓ |
| The Constance bag | ✓ | |
| The Evelyne bag | | ✓ |
| The Feudou bag | | ✓ |
| The Jige bag | | ✓ |
| The H wallet | | ✓ |
| The H belt | ✓ | |

[If you answered "Yes" to any of the products listed
above, please go on to question 1(a).  If you answered "No" to
each and every product listed above, please go on to question 5
and page 35 of your Jury Charge.]

1(a).       Has Hermès proved, by a preponderance of the
evidence, that any of the products listed
below acquired secondary meaning before
Lederer sold the particular style?

| | | |
|---|---|---|
| The Kelly bag | Yes | No |
| The Birkin bag | Yes | No |
| The Bolide/Bugatti bag | Yes | No |
| The Trim bag | Yes | No |
| The Constance bag | Yes | No |
| The Evelyne bag | Yes | No |
| The Feudou bag | Yes | No |
| The Jige bag | Yes | No |
| The H wallet | Yes | No |
| The H belt | Yes | No |

[If you answered "Yes" to any of the products listed
below, please go on to question (2).  If you answer "No" to each
and every of the products listed above, please go on to question
5.]


2.    Has Hermès proved, by a preponderance of the evidence,
that Lederer intentionally infringes Hermès' rights by selling
products that are likely to confuse or mislead ordinary prudent
consumers into thinking that any of Lederer's products came from,
or were authorized by, the same source as the Hermès products at
issue in this dispute?  Please write "Yes" next to the Lederer
product for which you find Hermès has met its burden.  (A "yes"
favors Hermès; A "No" favors Lederer.)

| | |
|---|---|
| Yes | The Kelly bag |
| Yes | The Birkin bag |
| No | The Bolide/Bugatti bag |

2

NO      The Trim bag
YES      The Constance bag
No      The Evelyne bag
No      The Feudou bag
NO      The Jige bag
NO      The H wallet
YES      The H belt

[Please go on to question 3.]

3.    Has Hermès proved, by a preponderance of the evidence, that Lederer intentionally infringes on either of Hermès' two federally registered trademarks?  Please answer "Yes" or "No" for each of the trademarks listed below.

The federally registered trademark for the rectangular strap design on the flap of a handbag, such as the Kelly or Birkin bag:

Yes ~~~~~~~~~~      No √

The federally registered trademark for the "H" design on the flap of a handbag, such as the Constance bag?

Yes √      No ____

[Please proceed to question 4.]

4.    Has Lederer proved, by clear and convincing evidence, that Hermès abandoned the use of its trademark or trade dress in any of its designs prior to the time Lederer sold its products? Please write either "Yes" or "No" for each of the products listed below. (A "Yes" favors Lederer; A "No" favors Hermès)

NO      The Kelly bag
NO      The Birkin bag
YES      The Bolide/Bugatti bag

3

```
Yes      The Trim bag
No       The Constance bag
Yes      The Evelyne bag
Yes      The Feudou bag
Yes      The Jige bag
Yes      The H wallet
No       The H belt
```

[Please proceed to question 5]

5. Has Hermès proved, by a preponderance of the evidence, that Lederer has been unfairly competing with Hermès, as defined in pages 35-36 of the charge? ("Yes" favors Hermès; "No" favors Lederer.)

Yes ✓                    No_____

[If you answered "Yes" to any of the products in question 2 or 3, and "No" to any of the products in question 4, go to question 6. If you answered "Yes" to question 5, go to question 6. Otherwise, please turn to page 5 and sign and date the verdict sheet.]

6. Has Hermès proved, by a preponderance of the evidence, that it has suffered damages as a result of Lederer's actions?

Yes ✓                    No_____

[If you answered "Yes", please go on to question 7. Otherwise, please turn to page 5 and sign and date the verdict sheet.]

4

7.    If you have found that Hermès has suffered damages (question 6), how much should be paid to Hermès?

Amount $ *1,108,111*

[Please go on to question 8.]


8.    Is Hermès entitled to punitive damages?  ("Yes" favors Hermès; "No" favors Lederer.)

Yes____                    No ✓____


If you answered "Yes," please state the amount of punitive damages.

Amount $_____


Dated:        _____

Signed:       _____
              (Foreperson)

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

HERMÈS INTERNATIONAL,                    :
HERMÈS SELLIER, and                      :
HERMÈS OF PARIS, INC.,                   :
                                         :
                    Plaintiffs,          :
                                         :    98 Civ. 2820 (SAS) (DFE)
        -against-                        :
                                         :
LEDERER DE PARIS FIFTH AVENUE, INC.,     :
                                         :
                    Defendant.           :
------------------------------------------------------------x

### ORDER UPON CONSENT OF ENTRY OF PERMANENT INJUNCTION AND DISMISSAL WITH PREJUDICE

Upon the consent of the Plaintiffs, Hermès International, Hermès Sellier, and

Hermès of Paris, Inc. (collectively "Plaintiffs" or "Hermès"), and Defendant Lederer de Paris

Fifth Avenue, Inc., ("Lederer" or "Defendant"), the Court issues the following Order Upon

Consent of Permanent Injunction and Dismissal With Prejudice:

1.      This is an action by Hermès for alleged federal trademark infringement

under 15 U.S.C. § 1114; alleged false designation of origin under the Lanham Act, 15 U.S.C.

§ 1125(a)(1)(A); and alleged common law trademark infringement and unfair competition.

2.      This Court has jurisdiction over the controversy based on 28 U.S.C.

§§ 1331 and 1338(b) and on 15 U.S.C. § 1121, as well as the supplemental jurisdiction of the

Court. The Court has personal jurisdiction over the Defendant in this action.

3.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because

Lederer resides in this District. Venue is also proper in this District under 28 U.S.C. §



1391(b)(2) because a substantial part of the events giving rise to this action occurred in this District.

4.      Hermès is the owner of United States Trademark Registration Nos. 1,806,107 and 1,806,108 (attached as Exhibits "1" and "2", respectively) and the trade dress rights in the following products manufactured and sold by Hermès:  Kelly handbag, Constance handbag, Birkin handbag, Bolide/Bugatti handbag, Evelyne handbag, Feudou handbag, Trim handbag, Jige clutch, Bearn billfold, and H wallet (which are depicted at Exhibit "3" attached hereto).  For purposes of this Order, Defendant agrees that these rights and all asserted rights by Hermès in this action, which will be referred to as "Hermès' Rights," are valid and enforceable.

5.      The term "Copies of Hermès Products" shall include any product whose appearance or sale is likely to cause confusion, or to cause mistake, or to deceive as to source or sponsorship with any product bearing Hermès' Rights.

6.      Defendant consents to entry of a permanent injunction as set forth herein in this Order Upon Consent.

7.      Hermès consents to dismissal with prejudice of its claims in this action.

WHEREFORE IT IS ORDERED, ADJUDGED AND DECREED that effective on January 1, 2002:

(1)      Defendant Lederer de Paris Fifth Avenue, Inc., and its owners, officers, agents, servants, employees, attorneys, successors, and assigns, and all those persons in active concert or participation with any of them who have notice hereof (including any new entities with any of the same owners, officers, agents, servants, employees, attorneys, successors and assigns), shall be and are hereby permanently enjoined from:

-2-

(a)    importing, marketing, advertising, selling, offering for sale, or fulfilling any outstanding orders for any Copies of Hermès Products;

(b)    expressly or impliedly representing its products as being affiliated in any manner with Hermès or as authorized, sponsored or endorsed by or otherwise connected with Hermès;

(c)    engaging in any conduct that will cause or is likely to cause confusion, mistake, or misunderstanding as to the source, affiliation, connection, or association of Lederer and its products with Hermès or Hermès' products bearing the above-referenced Hermès' Rights; and

(d)    otherwise infringing upon Hermès' Rights or unfairly competing with Hermès in any manner whatsoever.

(3)    All claims made by Hermès against Defendant as part of this action are hereby dismissed with prejudice.

(4)    Hermès and Defendant shall each bear their own attorneys' fees and costs incurred in connection with this action.



**CONSENTS:**

HERMÈS INTERNATIONAL

Dated:

_____
Name:
Title:

HERMÈS SELLIER

_Ch Blanchar_

Dated:

_____
Name:  Christian Blanckaert
Title:  President

HERMÈS OF PARIS, INC.

Dated:

_____
Name:
Title:

LEDERER DE PARIS FIFTH AVENUE, INC.

Dated:

_____
Name:
Title:

**APPROVED AS TO FORM**
**BY ATTORNEYS FOR HERMÈS:**

KIRKLAND & ELLIS

Dated: _____, 2001

By: _____
    John M. Desmarais (JD 6460)
    Joseph C. Gioconda (JG 4716)
    Citicorp Center
    153 East 53rd Street
    New York, New York  10022-4675
    Telephone: (212) 446-4800

-4-

**APPROVED AS TO FORM BY**
**ATTORNEYS FOR LEDERER:**

JORDAN AND HAMBURG

Dated: _____, 2001

By: _____

Thomas Furth (TF 0785)
Chanin Building
122 East 42nd Street
New York, New York 10168
Telephone: (212) 986-2340

**SO ORDERED:**

_____
Shira A. Scheindlin
United States District Judge

Dated: New York, New York
_____, 2001

**FINAL JUDGMENT ENTERED:**

_____, 2001

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

HERMÈS INTERNATIONAL,   :
HERMÈS SELLIER, and   :
HERMÈS OF PARIS, INC.,   :
:
Plaintiffs,   :
:   98 Civ. 2820 (SAS) (DFE)
-against-   :
:
LEDERER DE PARIS FIFTH AVENUE, INC.,   :
:
Defendant.   :
------------------------------------------------------------------x

## ORDER UPON CONSENT OF ENTRY OF PERMANENT INJUNCTION AND DISMISSAL WITH PREJUDICE

Upon the consent of the Plaintiffs, Hermès International, Hermès Sellier, and

Hermès of Paris, Inc. (collectively "Plaintiffs" or "Hermès"), and Defendant Lederer de Paris

Fifth Avenue, Inc., ("Lederer" or "Defendant"), the Court issues the following Order Upon

Consent of Permanent Injunction and Dismissal With Prejudice:

1.       This is an action by Hermès for alleged federal trademark infringement

under 15 U.S.C. § 1114; alleged false designation of origin under the Lanham Act, 15 U.S.C.

§ 1125(a)(1)(A); and alleged common law trademark infringement and unfair competition.

2.       This Court has jurisdiction over the controversy based on 28 U.S.C.

§§ 1331 and 1338(b) and on 15 U.S.C. § 1121, as well as the supplemental jurisdiction of the

Court.  The Court has personal jurisdiction over the Defendant in this action.

3.       Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because

Lederer resides in this District.  Venue is also proper in this District under 28 U.S.C. §

1391(b)(2) because a substantial part of the events giving rise to this action occurred in this District.

4.      Hermès is the owner of United States Trademark Registration Nos. 1,806,107 and 1,806,108 (attached as Exhibits "1" and "2", respectively) and the trade dress rights in the following products manufactured and sold by Hermès:  Kelly handbag, Constance handbag, Birkin handbag, Bolide/Bugatti handbag, Evelyne handbag, Feudou handbag, Trim handbag, Jige clutch, Bearn billfold, and H wallet (which are depicted at Exhibit "3" attached hereto).  For purposes of this Order, Defendant agrees that these rights and all asserted rights by Hermès in this action, which will be referred to as "Hermès' Rights," are valid and enforceable.

5.      The term "Copies of Hermès Products" shall include any product whose appearance or sale is likely to cause confusion, or to cause mistake, or to deceive as to source or sponsorship with any product bearing Hermès' Rights.

6.      Defendant consents to entry of a permanent injunction as set forth herein in this Order Upon Consent.

7.      Hermès consents to dismissal with prejudice of its claims in this action.

WHEREFORE IT IS ORDERED, ADJUDGED AND DECREED that effective on January 1, 2002:

(1)      Defendant Lederer de Paris Fifth Avenue, Inc., and its owners, officers, agents, servants, employees, attorneys, successors, and assigns, and all those persons in active concert or participation with any of them who have notice hereof (including any new entities with any of the same owners, officers, agents, servants, employees, attorneys, successors and assigns), shall be and are hereby permanently enjoined from:

-2-

      (a)     importing, marketing, advertising, selling, offering for sale, or

fulfilling any outstanding orders for any Copies of Hermès

Products;

      (b)     expressly or impliedly representing its products as being affiliated

in any manner with Hermès or as authorized, sponsored or

endorsed by or otherwise connected with Hermès;

      (c)     engaging in any conduct that will cause or is likely to cause

confusion, mistake, or misunderstanding as to the source,

affiliation, connection, or association of Lederer and its products

with Hermès or Hermès' products bearing the above-referenced

Hermès' Rights; and

      (d)     otherwise infringing upon Hermès' Rights or unfairly competing

with Hermès in any manner whatsoever.

    (3)    All claims made by Hermès against Defendant as part of this action are

hereby dismissed with prejudice.

    (4)    Hermès and Defendant shall each bear their own attorneys' fees and costs

incurred in connection with this action.

**CONSENTS:**

HERMÈS INTERNATIONAL

Dated:

Name:
Title:

HERMÈS SELLIER

Name:  Christian Blanckaert
Title:  President

HERMÈS OF PARIS, INC.

Dated:

Name:
Title:

LEDERER DE PARIS FIFTH AVENUE, INC.

Dated:

Name:
Title:

**APPROVED AS TO FORM**
**BY ATTORNEYS FOR HERMÈS:**

KIRKLAND & ELLIS

Dated: _____, 2001

By: _____

John M. Desmarais (JD 6460)
Joseph C. Gioconda (JG 4716)
Citicorp Center
153 East 53rd Street
New York, New York  10022-4675
Telephone: (212) 446-4800

-4-

**APPROVED AS TO FORM BY**
**ATTORNEYS FOR LEDERER:**

JORDAN AND HAMBURG

Dated: _____, 2001

By: _____

Thomas Furth (TF 0785)
Chanin Building
122 East 42nd Street
New York, New York 10168
Telephone: (212) 986-2340

**SO ORDERED:**

_____

Shira A. Scheindlin
United States District Judge

Dated: New York, New York
_____, 2001

**FINAL JUDGMENT ENTERED:**

_____, 2001

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
HERMÈS INTERNATIONAL,                            :
HERMÈS SELLIER,                                  :
HERMÈS GESTION, INC., and                        :
HERMÈS OF PARIS, INC.,                           :
                                                 :
                      *Plaintiffs*,              :
                                                 :
                                                 :      98 Civ. 2820 (SAS)
            v.                                    :
                                                 :
PELLE VIA ROMA, INC.,                            :
PELLE VIA ROMA OF GREAT NECK, INC.,              :
MAXTAMARA, INC., and                             :
ALEXANDER CAESARE CO.,                           :
                                                 :
                      *Defendants*.              :
-------------------------------------------------------------------x

## FINAL JUDGMENT INCLUDING
## PERMANENT INJUNCTION UPON
## CONSENT AGAINST DEFENDANTS

Plaintiffs, HERMÈS INTERNATIONAL, HERMÈS SELLIER, HERMÈS
GESTION, INC., and HERMÈS OF PARIS, INC. (collectively "Hermès") having charged
Defendants PELLE VIA ROMA, INC., PELLE VIA ROMA OF GREAT NECK, INC.,
MAXTAMARA, INC. and ALEXANDER CAESARE CO. (collectively "Defendants" or
"Pelle"), with trademark and trade dress infringement, false designations of origin and unfair
competition; and a jury having found Pelle liable on all counts for all named products (*See*
Exhibit 1), and Pelle having objected to the relief sought and having had an opportunity to
challenge the verdict; and Hermès and Pelle desiring to settle the controversy among them; it is

ORDERED, ADJUDGED and DECREED between Plaintiffs and Defendants:

1.      This Court has jurisdiction over the parties to this action, and has jurisdiction over the subject matter thereof under 15 U.S.C. § 1121, and 28 U.S.C. §§ 1131, 1338(a), 1338(b) and 1367(a).

2.      Hermès is the owner of the U.S. Reg. Nos. 1,806,107 and 1,806,108 (Exhibits 2 and 3) and the trade dresses in the following products: Kelly handbag, Constance handbag, Birkin handbag, Bolide/Bugatti handbag, Evelyne handbag, Jige handbag, Kelly Sport handbag, Feudou handbag, Ranch handbag, H belt, and Bearn wallet (which are listed and depicted in representative sizes and colors at Exhibit 4 attached hereto), collectively referred to as the "Hermès Designs," and Defendants agree that those rights are valid and enforceable.

3.      The Defendants' distribution and sale of handbags and other products bearing copies of the marks shown in Exhibits 2 and 3 or otherwise copying the trade dress of the products which are depicted in representative sizes and shapes in Exhibit 4, is likely to cause confusion, or to cause mistake, or to deceive as to source or sponsorship.

4.      Defendants, and their officers, agents, servants, employees, attorneys, successors, and assigns, and all those persons in active concert or participation with any of them who have notice hereof (including any new entities with any of the same owners, officers or employees), are hereby forever enjoined from using any of the Hermès Designs or any colorable imitations thereof, or any designs whose appearance or sale is likely to cause confusion, or to cause mistake, or to deceive as to source or sponsorship therewith, in the manufacturing, importing, selling, offering for sale, distributing, advertising, and displaying of these products or similar merchandise anywhere in the United States.

2

Fax émis par : 33014817986

Fax reçu de : 212 4464980

20/18/99   19:03   Pg: 14

5.     Each party will pay its own costs and attorneys' fees.

CONSENTS:

HERMÈS INTERNATIONAL

Dated: October 29, 1999

Name: BERTRAND PUECH
Title: VICE PRESIDENT

HERMÈS SELLIER

Dated: October __ 1999

Name: BLANCKAERT Christian
Title: Président.

HERMÈS GESTION

Dated: October ___ 1999

Name:
Title:

HERMÈS OF PARIS, INC.

Dated: October ___ 1999

Name:
Title:

3

5.    Each party will pay its own costs and attorneys' fees.

CONSENTS:

HERMÈS INTERNATIONAL

Dated: October ___, 1999

_____
Name:
Title:

HERMÈS SELLIER

Dated: October ___, 1999

_____
Name:
Title:

HERMÈS ~~CERTIOU~~ OF PARIS, INC.

Dated: October 27, 1999

_____
Name: LAURENT E. MOMMEJA
Title: PRESIDENT, CEO

HERMÈS OF ~~PARIS~~ INC. CERTIOW

Dated: October ___, 1999

_____
Name:
Title:

3

5.    Each party will pay its own costs and attorneys' fees.

CONSENTS:

HERMÈS INTERNATIONAL

Dated: October ___, 1999

_____
Name:
Title:

HERMÈS SELLIER

Dated: October ___, 1999

_____
Name:
Title:

HERMÈS GESTION

Dated: October 29, 1999

_____
Name:  DAVID  W. DUPERT
Title:

HERMÈS OF PARIS, INC.

Dated: October ___, 1999

_____
Name:
Title:

3

PELLE VIA ROMA, INC., PELLE VIA ROMA
OF GREAT NECK, INC., MAXTAMARA, INC.,
and ALEXANDER CAESARE CO.

Dated: October 28, 1999

PRESIDENT:

Name: ZARAFSHAN. Mohammed
Title: PRESIDENT

4

11/05/99    16:34    ☎212 805 7920

APPROVED AS TO FORM
BY HERMÈS' ATTORNEYS:

Dated: October 2? , 1999

KIRKLAND & ELLIS

By: _____

John M. Desmarais, Esq.
David S. Brafman, Esq.
Joseph C. Gioconda, Esq. (JG  4716  )
Citicorp Center
153 East 53rd Street
New York, New York  10022-4675
(212) 446-4800

APPROVED AS TO FORM
BY PELLE'S ATTORNEYS:

Dated: ~~October~~ Nov 4 , 1999

FROSS, ZELNICK, LEHRMAN & ZISSU, P.C.

By: _____

Roger L. Zissu, Esq.
Glenn Mitchell, Esq. (8560)
At First Avenue & 48th St.
866 United Nations Plaza
New York, NY 10017
(212) 813-5900

So Ordered:

11/4/99

5

UNITED.STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------x

HERMÈS INTERNATIONAL,
HERMÈS SELLIER,
HERMÈS GESTION, INC. and
HERMÈS OF PARIS, INC.,                     :

         Plaintiff,             :          98 CIV. 2820 (SAS)

    v.

PELLE VIA ROMA, INC.,                      :

        Defendant.              :

----------------------------------x

## SPECIAL VERDICT FORM

1.   Has Hermès proved, by a preponderance of the evidence, that the overall appearance of the following products is inherently distinctive?  Please check either 'Yes' or 'No' for each product listed below.

|  | Yes | No |
|---|---|---|
| The Kelly bag | ✓ | |
| The Constance bag | ✓ | |
| The Birkin bag | ✓ | |
| The Bolide/Bugatti bag | ✓ | |
| The Evelyne bag | ✓ | |
| The Jige bag | ✓ | |
| The Kelly Sport bag | ✓ | |
| The Feudou bag | ✓ | |
| The Ranch bag | ✓ | |
| The H belt | ✓ | |
| The Bearn wallet | ✓ | |

[If you answered 'Yes' to all of the products listed above, go on to question 3; if you answered 'No' to any of the products listed above, go on to question 2]

2.  Has Hermès proved, by a preponderance of the evidence, that any of the products listed below for which you did not answer 'Yes' in question 1 has acquired secondary meaning? Please check either 'Yes' or 'No' for each of the products listed below for which you answered 'No' in question 1.

| | | |
|---|---|---|
| The Kelly bag | Yes ✓ | No_____ |
| The Constance bag | Yes ✓ | No_____ |
| The Birkin bag | Yes ✓ | No_____ |
| The Bolide/Bugatti bag | Yes ✓ | No_____ |
| The Evelyne bag | Yes ✓ | No_____ |
| The Jige bag | Yes ✓ | No_____ |
| The Kelly Sport bag | Yes ✓ | No_____ |
| The Feudou bag | Yes ✓ | No_____ |
| The Ranch bag | Yes ✓ | No_____ |
| The H belt | Yes ✓ | No_____ |
| The Bearn wallet | Yes ✓ | No_____ |

[If you answered 'Yes' to any of the products listed above in either questions 1 or 2, please go on to question 3.  If you answered 'No' to each and every product listed above, please go on to question 5 and page 30 of your Jury Charge.]

-2-

3.  Has Hermès proved, by a preponderance of the evidence that any of the products sold by Pelle infringe on either of Hermès' two federally registered trademarks?  Please answer 'Yes' or 'No' for each of the trademarks listed below.

The federally registered trademark for the rectangular strap design on the flap of a handbag, such as the Kelly or Birkin bag:

Yes  ✓                No  _____

The federally registered trademark for the "H" design on the flap of a handbag, such as the Constance bag?

Yes  ✓                No  _____

[Please go on to question 4]

4.  Has Hermès proved, by a preponderance of the evidence, that it is likely that ordinary prudent consumers would be confused or misled into thinking that any of Pelle's products came from or were authorized by the same source as Hermès' products at issue in this dispute?  Please circle the name of any product or products below which you believe are likely to confuse or mislead ordinary prudent consumers.

(The Kelly bag)
(The Constance bag)
(The Birkin bag)
(The Bolide/Bugatti bag)
(The Evelyne bag)
(The Jige bag)
(The Kelly Sport bag)
(The Feudou bag)
(The Ranch bag)
(The H belt)
(The Bearn wallet)

[Please go on to question 5]

-3-

5.  Has Hermès proved, by a preponderance of the evidence, that Pelle has been unfairly competing with Hermès? ('Yes' favors Hermès; 'No' favors Pelle).

Yes ✓                              No ____

[If you answered 'Yes' to any one of questions 3, 4 OR 5, please go on to question 6.  If you answered 'No' to all of questions 3, 4 AND 5, please turn to page 6]

6.  Has Hermès proved, by a preponderance of the evidence, that Pelle's conduct was willful? ('Yes' favors Hermès; 'No' favors Pelle).

Yes ✓                              No ____

[Please go on to question 7]

7.  Has Pelle proved, by a preponderance of the evidence, that Hermès abandoned the use of its trademark or trade dress in any of its designs prior to the time Pelle sold its products?  Please check either 'Yes' or 'No' for each of the products listed below.

| | Yes | No |
|---|---|---|
| The Kelly bag | ____ | ✓ |
| The Constance bag | ____ | ✓ |
| The Birkin bag | ____ | ✓ |
| The Bolide/Bugatti bag | ____ | ✓ |
| The Evelyne bag | ____ | ✓ |
| The Jige bag | ____ | ✓ |

| | | |
|---|---|---|
| The Kelly Sport bag | Yes_____ | No ✓ |
| The Feudou bag | Yes_____ | No ✓ |
| The Ranch bag | Yes_____ | No ✓ |
| The H belt | Yes_____ | No ✓ |
| The Bearn wallet | Yes_____ | No ✓ |

[If you answered 'Yes' to all of the above, please turn to page 6. If you answered 'No' to any of the products listed above, go on to question 8]

8. Has Hermès proved, by a preponderance of the evidence, that it suffered damages as a result of Pelle' actions?

Yes ✓    No _____

[If you answered 'Yes', please go on to question 9]

9. If you have found that Pelle willfully infringed Hermès' marks (question 6) or if you have found that Hermès has suffered damages (question 8), how much should be paid to Hermès?

Amount $ _____ *An accounting of the infringer's profits.*

[Please go on to question 10]

10. Is Hermès entitled to punitive damages? ('Yes' favors Hermès; 'No' favors Pelle).

Yes ✓    No _____

Amount (if yes) $ _____ *50% of the account of the infringer's profits.*

[Please turn to the next page]

Dated: *July 15, 1999*

Signed _Sonti B. DuCote_

      (foreperson)

Int. Cl.: 18

Prior U.S. Cl.: 3

## United States Patent and Trademark Office

Reg. No. 1,806,107
Registered Nov. 23, 1993

### TRADEMARK
PRINCIPAL REGISTER



HERMES GESTION, INC. (DELAWARE COR-
PORATION)
1409 FOULK ROAD, SUITE 102
P.O. BOX 7108
WILMINGTON, DE 19803

FOR: LEATHER HANDBAGS, IN CLASS 18
(U.S. CL. 3).

FIRST USE 1-1-1972; IN COMMERCE
1-1-1972.

THE MARK CONSISTS OF A RECTANGU-
LAR DESIGN ATTACHED TO THE FLAP OF
A HANDBAG AND THE DOTTED LINE AP-
PEARING ON THE DRAWING IS NOT A PART
OF THE MARK AND SERVES ONLY TO SHOW
THE POSITION OF THE MARK.
SEC. 2(F).

SER. NO. 74–336,038, FILED 12-2-1992.

DAVID CHO, EXAMINING ATTORNEY



TR 110512

# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

June 16, 1999

THE ATTACHED U.S. TRADEMARK REGISTRATION *1,806,107* IS
CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND
EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN
THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *10* YEARS FROM  *November 23, 1993*

SAID RECORDS SHOW TITLE TO BE IN:
  *HERMES INTERNATIONAL*
  *A CORPORATION OF FRANCE*



By Authority of the
COMMISSIONER OF PATENTS AND TRADEMARKS

N.  WILLIAMS

Certifying Officer

Int. Cl.: 18

Prior U.S. Cl.: 3

## United States Patent and Trademark Office

Reg. No. 1,806,108
Registered Nov. 23, 1993

### TRADEMARK
### PRINCIPAL REGISTER



HERMES GESTION, INC. (DELAWARE COR-
PORATION)
1409 FOULK ROAD, SUITE 102
P.O. BOX 7108
WILMINGTON, DE 19803

FOR: LEATHER HANDBAGS, IN CLASS 18
(U.S. CL. 3).

FIRST USE 1-1-1972; IN COMMERCE
1-1-1972.

THE MARK CONSISTS OF AN "H" DESIGN
ATTACHED TO THE FLAP OF A HANDBAG
AND THE DOTTED LINE APPEARING ON
THE DRAWING IS NOT A PART OF THE
MARK AND SERVES ONLY TO SHOW THE
POSITION OF THE MARK.

SEC. 2(F).

SER. NO. 74-336,039, FILED 12-2-1992.

DAVID CHO, EXAMINING ATTORNEY



## THE UNITED STATES OF AMERICA

### TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

June 16, 1999

THE ATTACHED U.S. TRADEMARK REGISTRATION *1,806,108* IS
CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND
EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN
THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *10* YEARS FROM  *November 23, 1993*

SAID RECORDS SHOW TITLE TO BE IN:
   *HERMES INTERNATIONAL*
   *A CORPORATION OF FRANCE*



By Authority of the
COMMISSIONER OF PATENTS AND TRADEMARKS

N. WILLIAMS
Certifying Officer



# Hermes Bags and Products

Evelyne

Feudou

Ranch

Jige

H Wallet (Bearn)

H Belt

Kelly

Kelly Sport

Birkin

Bolide (Bugatti)

H Lock

Constance



**INTA Bulletin**

*The Voice of the International Trademark Association*

April 15, 2008  Vol. 63  No. 8

## IN THIS ISSUE

**2 ASSOCIATION NEWS**

Association Heads Down Under to Host Major Asia-Pacific Event

Celebrate World IP Day on April 26

**Member Spotlight**
Bob Capshaw
Chehrazade Chemcham

**5 FEATURES**

Canadian Official Marks: Are They Available for Foreign Entities?

**7 LAW & PRACTICE**

**ARGENTINA**
Color Combination Found Not Registrable as a Trademark

**EUROPEAN UNION**
OHIM Search Reports—Change of Practice as of March 10, 2008

**GERMANY**
Can Size Be a Trademark?

**KOREA**
Shape of Hermès Kelly and Birkin Bags Recognized as Well-Known Source Identifiers

**NAMIBIA**
Delays at the Trade Marks Office

**PERU**
First Center for Resolution of Disputes Between Trademark Owners and .pe Domain Name Holders Accredited

**SINGAPORE**
IP Exploitation—Singapore's Attitude Toward Parallel Imports

**UNITED STATES**
USPTO Revises Mark Description Requirements

# INTA Represents Brand Owners at February ICANN Meeting

INTA supported the 31st Internet Corporation for Assigned Names and Numbers (ICANN) public meeting in New Delhi, India, held February 10–15. The meeting, co-hosted by ICANN and India's Department of Information Technology, was attended by more than 700 participants from 76 countries, who took part in policy development activities and domain name system discussions.

### NEW GENERIC TOP-LEVEL DOMAINS

ICANN staff described the process for introducing new generic top-level domains (gTLDs, such as .com, .org and .info), based on recommendations made by the Generic Names Supporting Organization (GNSO), the ICANN group charged with providing policy recommendations on gTLDs to the ICANN Board. An implementation plan, which is continuing to be developed, will guide the technical, operational, legal and political aspects of introducing new gTLDs to the ICANN Board. ICANN does not expect to start accepting bids for new gTLDs until at least the end of 2008.

### DOMAIN NAME TASTING

Domain name tasting is the practice of using an ICANN contractual five-day grace period to register, use and delete gTLDs without incurring registration fees.

A proposal to eliminate domain name tasting by charging an ICANN registration fee of 20 cents on all domain names registered—including those deleted within the grace period—was recently introduced as part of the draft ICANN budget. The budget will be finalized in June 2008 and requires approval from the domain name registrars.

The .biz and .info registries have separately proposed changes to their registry contracts in an attempt to address domain name tasting. Also, the GNSO has an open policy development process on domain name tasting, and during the New Delhi meeting its drafting team—which includes members from INTA's Internet Committee—worked toward finalizing its motion to address domain name tasting. That motion was subsequently finalized, and has been posted for public comment. The motion is scheduled to be considered by the GNSO Council as a possible policy recommendation for the ICANN Board.

### GNSO REFORM?

The GNSO has six constituency groups: domain name registries, registrars, business and commercial users, Internet and communication service providers, IP owners and noncommercial users. The GNSO's weighted voting system provides the parties under contract with ICANN—domain name registries and registrars—double voting power over the other GNSO constituency groups.

As stipulated by its bylaws, several years ago the ICANN Board formed a working group to review the GNSO in an effort to improve its functionality. That group submitted its finalized proposal on GNSO improvements a few days before the public meeting in New Delhi.

The working group's proposal on GNSO improvements, as interpreted by INTA's Internet Committee, failed to address concerns raised by the IP community and other IP constituency groups. The proposal's most contentious element was a recommendation to radically restructure the GNSO Council, merging the business users, Internet service provider and IP owners constituencies into one "Commercial Interest" group, while leaving the other constituency groups essentially intact.

GNSO reform was discussed during the IP Constituency meeting led by INTA External Relations Manager for the Internet and the Judiciary and ICANN IP Constituency Vice Chair Claudio DiGangi. That meeting focused on alternative reform options that more equitably balance the multiple-stakeholder model within ICANN.

Discussions from the IP Constituency meeting led to the submission of a joint constituency proposal soon after the New Delhi meeting. The IP Constituency is working with other ICANN constituencies to finalize their reform proposal in time for the next ICANN public meeting in Paris in June 2008.

INTA's Internet Committee will continue to monitor and participate in ICANN developments, including the reform of the GNSO.

# LAW & PRACTICE

## ARGENTINA

### Color Combination Found Not Registrable as a Trademark

On December 6, 2007, the Federal Court of Appeals for Civil and Commercial Matters reversed the first instance court's decision in the case of *Mars Inc. v. Arcor S.A.I.C.* The first instance court had rejected Arcor's opposition to Mars's application to register a specific color combination.

Color combinations are registrable as trademarks under Argentine law, although they must comply with certain requirements set forth by the law itself and construed by the courts.

The first instance decision admitted the complaint filed by Mars and rejected Arcor's opposition to registration of the trademark in Class 30. The trademark consisted of a yellow background with a brown line at the bottom, as shown above.

On appeal, Arcor argued that the color combination applied for by Mars was not distinctive, and that several registered trademarks that included yellow and brown colors and that were used on choc-



(71) Acta 2.236.305 - (51) Class 30
(72) E.PA.)
AMARILLO.

MARRON

(73) 23/08/1999 - 173 MARS, INCORPORATED - US
(52) SOLAMENTE PRODUCTOS DE CONFITERIA
(74) 34 108 - (44) 13/10/99

olate products already existed. Arcor further argued that Mars was trying to obtain a monopoly for basic colors used by a majority of the companies that manufactured chocolate products.

In its decision, the Court of Appeals first stated that according to Argentine law, "color combinations applied to particular locations on products or packagings" are registrable as trademarks. Further, the TRIPS Agreement, in force in Argentina, permits the registration of color combinations. However, in this particular case, the Court found that the claimed color combination lacked the distinctiveness required to be registered as a trademark. The Court observed that for a color combination to be protected by trademark law, it should prompt consumers to clearly identify origin and source. The Court found that this requisite was not met in the applied-for trademark, and that granting a privilege of exclusive use of the color combination would have given Mars an unfair advantage over its competitors.

> Contributor: Claudia Serritelli, De las Carreras & Chaloupka, Buenos Aires; Verifier: Paola Laurini, Bruchou, Fernandez Madero & Lombardi, Buenos Aires. Both are members of the *INTA Bulletin* Law & Practice–Americas Subcommittee

## KOREA

### Shapes of Hermès Kelly and Birkin Bags Recognized as Well-Known Source Identifiers

The bags of Hermès International, the manufacturer of luxury bags and leather products, have been imported and sold in prestigious department stores in Korea since 1997. Hermès bags, in particular the models known as the Kelly and the Birkin bags, are leather handbags that typically are trapezoidal in shape. They are original in appearance in that the lid closes over the bag entirely from back to front, with the leather straps crossing over the lid and fastening in the middle with a buckle.

Upon discovering a Korean manufacturer selling bags similar to its own, Hermès recently filed a lawsuit to enjoin such acts of unfair competition, on the grounds that (1) the defendant's bags were likely to cause confusion as to source because they were similar in appearance to the Kelly and Birkin bags widely known in Korea, and (2) the defendant was using the registered H-in-oval trademark of Hermès on its bags.

Not only did the Seoul Central District Court rule in favor of Hermès regarding its trademark infringement claim against the defendant's use of the H-in-oval mark, but the court also sustained Hermès' unfair competition claim under the Unfair Competition Prevention and Trade Secret Protection Act (UCPA)(Case No. 2007 *Gahap* 44687, rendered January 31, 2008). To prevail under the UCPA, a claimant must prove that (1) the asserted mark is well known in Korea as a source identifier, (2) the cited use is similar or identical to the well-known mark and (3) likelihood of confusion exists as a result of the similarity.

In its decision, the court acknowledged that although a product shape generally is not used in a source-identifying function, a prod-

uct shape may be recognized as a source identifier if any one of the following conditions is met:

1. The product shape is very unique;
2. The product has distinctive feature(s) used exclusively for a long time; or
3. The product has distinctive feature(s) extensively advertised in a short period.

For products such as handbags, the court stated that the major attractions motivating consumers to buy would be the visual beauty produced by the combination of shape and color, the value of the trademark and the image. The court emphasized those elements in the case of costly luxury handbags manufactured in small quantity and sold to a limited number of consumers, where the shapes are individually characteristic and worldwide advertising often means the products' shapes acquire the required source-indicating function.

In turn, the court recognized that the Kelly and Birkin bags have acquired such a source-identifying function among consumers, precisely because of their distinctive features and the exclusive use of their shapes. Based on the foregoing, the court finally held that the defendant's acts of manufacturing and selling its confusingly similar bags did in fact constitute unfair competition.

> Contributor: Alex H. Cho, Kim & Chang, Seoul, *INTA Bulletin* Law & Practice–Asia-Pacific Subcommittee;
> Verifier: Joong-hyo Kim, Choice Kim Intellectual Property Law, Seoul

*[Translation]*

# SEOUL HIGH COURT
## FIFTH CIVIL PANEL
## DECISION

Case No.: 2008 Na 35359 Prohibition of Unfair Competitive Act

Plaintiffs/Appellees:  1.  Hermès International
24, rue du Faubourg Saint Honoré, 75008 Paris, France
Representative: Annick de Chaunac

2.  Hermès Korea Limited
630-26 Shinsa-dong, Gangnam-gu, Seoul
Representative Directors: Patrick Tomas, Christian Blankert

Counsel: Kwan Seok Oh, Attorney-at-law

Defendants/Appellants:  1.  Choong Gil Park
2-105 Geukdong Apt., 428 Oksu-dong, Seongdong-gu, Seoul

2.  Hyun Ok Park
20-62 Nokbeon-dong, Eunpyeong-gu, Seoul

3.  Young Ok Park
2-105 Geukdong Apt., 428 Oksu-dong, Seongdong-gu, Seoul

Lower Court Decision:  Seoul Central District Court Decision 2007 Gahap 44687, rendered on
January 31, 2008

Close of Hearings:  November 4, 2008

Date of Decision:  December 9, 2008

## Order

1.  Defendants' appeal against the Plaintiffs is dismissed in entirety.
2.  The appeal costs shall be borne by the Defendants.

## Purport of Claim and Purport of Appeal

- 1 -

*[Translation]*

**1.      Purport of Claim**

Defendants shall not manufacture, sell, assign, exhibit, import or export the products listed under the column of 'Defendants' Products' in the List attached hereto (the "List").   Defendants shall destroy the above products, which are stored or displayed at Defendants' factories, offices, stores, business premises or warehouses.

**2.      Purport of Appeal**

Those that have been decided against the Defendants, from among the lower court decision, shall be cancelled, and the Plaintiff's claim against the Defendants, which is made with respect to those having been decided against the Defendants from among the lower court decision, shall be dismissed in entirety.

**Grounds**

**1.      Those Cited from the Lower Court Decision**

The grounds to be explained by this court with respect to the present case are the same as stated in the grounds of the lower court decision, except the following, and thus are accepted as they are in accordance with Article 420 of the Civil Proceedings Act:   Correction of "Hesmès" stated respectively in lines 7, 9, 10 and 12 of page 3 of the grounds of the lower court decision to "Hermès", and those subject to further determination by this court as stated in Section 2 below.

**2.      Those Subject to Further Determination**

**A.      Defendants' arguments**

Defendants argue that the Defendant Choong Gil Park ("CG Park") has clearly indicated that the source of Nos. 1, 5, 10 and 11 products under the column of the 'Defendants' Products' in the List (the "Infringing Products") is different from that of the Plaintiffs' products by continuously using 'HENRY HIGHCLASS KELLY' mark, which was registered by the Defendant CG Park in 1999 on the Infringing Products.   In addition, the price of the Infringing Products does not reach even 10% of the price of the Plaintiffs' products.   Thus, the markets and consumers for the Infringing Products are completely different from those for the Plaintiffs' products.   In light of the above, it is not concerned that consumers are confused as to the source of Nos. 1, 5, 10 and 11 products under the column of the 'Defendants' Products' in the List.

**B.      Judgment**

- 2 -

*[Translation]*

(1)    Design of the shapes of the products shown in Nos. 1 and 5 products under the column of 'Plaintiffs' Products' in the List (the "Subject Design"),'  and , is as follows:   "The front of the handbags is trapezoid, the side of handbags is triangular, the lid covers even upto the top of the body, stretching from the back, and two (2) leather straps stretching from both ends of the top of the body are coupled to a buckle protruding in the center, a lock device of metal, crossing the top cover."   The Subject Design is not limited to serve the product function of stimulating consumers a desire to purchase the products upon generating consumers a sense of aesthetic appreciation but rather, the Subject Design falls under the case where a product shape is individualized to a degree that the distinctive features as held by the shape remind consumers of products from a specific source having a specific quality, due to the continuous and exclusive use of the shape for a long time and the continuous advertisement.   In light of the above, the Subject Design constitutes a 'mark indicating goods of another' as protected by Article 2(i)(a) of the Unfair Competition Prevention and Trade Secret Protection Act (the "UCPA").

However, the Defendants have caused confusion to consumers as to the source of products by using a design identical or similar to the Subject Design on Nos. 1 and 5 Infringing Products, including ' ,' and ' .'   Thus, in the absence of any special circumstances, the Defendants' above act constitutes an unfair competitive act under the UCPA.

(2)    The ' ,' and ' ' marks as indicated in the center of ' ' and ' ', which are Nos. 10 and 11 products under the column of 'Plaintiffs' Products' in the List, were registered by the Plaintiff 1 in 2006 and 2007, respectively.

However, the Defendants' act of indicating the marks identical or similar to the above ' ,' and ' ,' marks, which were registered by the Plaintiff 1, on the center of Nos. 10 and 11 Infringing Products, including ' ,' and ' ', have caused consumers confusion as to the source of products.   In light of the above, unless there exist special circumstances, the Defendants' above act constitutes a trademark infringing act under Article 66(1)(i) of the Trademark Act.

- 3 -

*[Translation]*

(3)    Defendants have continuously used 'HENRY HIGHCLASS KELLY, ' (the "Defendants' Mark"), which is distinguished from the Plaintiff 1's registered marks, on the Infringing Products, as pointed out by the Defendants.   However, only based upon the fact that the Defendants' Mark is indicated in a small size on the label or a part of the surface of the Infringing Products, it cannot be found that the risk of consumer confusion as to the source of goods, as stated in Section B(1) and (2), was eliminated.

Furthermore, in relation to the 'KELLY, portion from among the Defendants' Mark, the following should be considered:   Plaintiffs' product (under No. 5), '      ', has been referred to as 'Kelly Bag' for about 50 years throughout the world, upon being manufactured by the Plaintiff 1 for the actress Grace Kelly who became a queen of Monaco in around 1956.   In light of the above, it cannot be found that, upon seeing the Defendants' Mark, the risk of consumer confusion as to the relation between the Infringing Products and the Plaintiff 1 and the above Kelly Bag is eliminated.

On the other hand, the Infringing Products that are manufactured and sold by the Defendants are far cheaper than the Plaintiff's products, as pointed out by the Defendants.   However, in line with the global economic policy of globalization, mass production and lowering prices, it is always possible for anyone to develop related brands and enforce a low price policy at the same time in parallel with a high price policy, depending on its marketing strategy.   In addition, in case of clothing and bags, low-priced genuine goods can be imported to and sold in Korea as a result of the parallel importation of genuine goods.   Taking all the circumstances into consideration, solely based on the fact that the Infringing Products being manufactured and sold by the Defendants are far cheaper than the Plaintiff's products, it cannot be found that the risk of consumer confusion as to the source of goods, as stated in Section B(1) and (2), is eliminated.   Therefore, Defendants' arguments above are groundless in entirety.

## 3.    Conclusion

In light of the above, the lower court decision is reasonable and proper.   Accordingly, Defendants' appeal against the Plaintiffs is groundless and thus, shall be dismissed in entirety, as stated in the Order.

|  |  |
|---|---|
| Chief Judge | Sung-Ho Lee |
| Judge | Dong-Jin Kim |

- 4 -

*[Translation]*

Judge          Suk-Yeon Lee

*[Translation]*

## List

| | Plaintiffs' Products | Defendants' Products |
|---|---|---|
| 1 |  |  |

C:\Users\mcorrigan\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\690L0CZK\EN_2008Na35359.doc







- 9 -



*[Translation]*



*[Translation]*

| | | |
|---|---|---|
| 10 |  |  |
| 11 |  |  |
| 12 |  |  |
| 13 | | Other handbags which have the same shape as that of the products listed in Nos. 1 through 12 |

- 12 -

*[Translation]*

This is an authentic copy.

December 16, 2008

Seoul High Court

Court clerk    Jeong-Han Jeon (sealed)

- 13 -

*[Translation]*

## SEOUL CENTRAL DISTRICT COURT
## THIRTEENTH CIVIL PANEL
## DECISION

Case No.:  2014*Gahap*552520      Claim against Act of Unfair Competition

Plaintiffs:  1.  Hermès International
24, rue du Faubourg Saint Honoré, 75008 Paris, France
Representative: Annick de Chaunac

2.  Hermès Korea Limited
(Shinsa-dong) 7, Dosandae-ro 45-gil, Gangnam-gu, Seoul
Joint Representative Directors: Florian Crane, Axel Dumas

Counsels: Kyeong-Tae Kang and Dae-Hyun Seo, Attorneys-at-law

Defendant:  Suwa United
(Nonhyeon-dong Hosan Bldg.) #204, 222, Dosandae-ro, Gangnam-gu, Seoul
Representative   Director Su-Yeon Lee
Counsels: Jeong-Rak Lee, Attorney-at-law
Chi-Jung Kim and Ju-Hyeon Cheong, Responsible Attorneys-at-law,
Barun Law

Date of Closure of Hearings: January 13, 2015

Date of Decision: January 19, 2015


## Order

1.  Plaintiffs' claim against the manufacture, sale, transfer, display, import, or export of products listed under Item No. 7 of Exhibit 1, and Plaintiffs' claim for destruction of the same are dismissed.

2.  Defendant

   A.  shall not manufacture, sell, transfer, display, import, or export products listed under Item Nos. 1 through 6 of Exhibit 1; and
   B.  shall destroy products listed under Nos. 1 through 6 of Exhibit 1 that are being stored and displayed in Defendant's factory, office, store, business place, and warehouse.

3.  Defendant shall pay each Plaintiff the amount of KRW 50,000,000, together with interest thereon at the rate of 20% per annum for the period starting from August 2, 2014 to the date when the amount is paid in full.

4.  The costs of the litigation shall be borne by the Defendant.

*[Translation]*

5.      Paragraphs 2 and 3 may be executed provisionally.


**Purport of Claim**


Paragraphs 2 and 3 of the Order, and Defendant shall not manufacture, sell, transfer, display, import or export products listed under Item No. 7 of Exhibit 1, and shall destroy products listed under Item No. 7 of Exhibit 1 that are being stored and displayed in the Defendant's factory, office, store, business place and warehouse.


**Grounds for Claim**


**1.      Basic Facts**

A.      Plaintiff Hermès International ("Plaintiff Hermès") is a French corporation that engages in the manufacture and sale of handbags, clothing, footwear, perfumes, watches and tableware, etc. and Plaintiff Hermès Korea Limited ("Plaintiff Hermès Korea") has been selling exclusively products manufactured by Plaintiff Hermès in Korea since 1997.

B.      Defendant is a Korean corporation and was incorporated on November 15, 2010 for the purpose of engaging in the wholesale and resale of bags, clothing and miscellaneous goods. Defendant has sold handbags listed in Item Nos. 1 through 6 of Exhibit 1 (collectively, "Defendant's Products") through department stores, duty free stores and Internet shopping malls, etc. since being incorporated.

C.      The handbag in the shape as listed in Item No. 1 of Exhibit 2 ("Birkin Bag"), which may differ in terms of size and color per product, from among the handbags manufactured by Plaintiff Hermès is made of leather, and is rectangular or trapezoid-like in shape. It has a triangular shape when viewed from the side because it is slim at the top, and widens as it reaches the bottom. The top of the body of the bag consists of two handle straps and a lid which is divided into three (3) parts at the end.   When closing the handbag, the lid covers entirely the handles, and the holes located on the left and right sides of the lid divided into three parts are fitted to the metal loops located at both ends of the top of the body. Then two (2) leather straps stretching from both ends of the top of the body are passed sideways through the metal loops protruding through holes in the lid, and the ends of the two leather straps are fixed with a buckle shaped like a padlock in the middle of the lid.

      This bag was designed by Plaintiff Hermès in or around 1984 for Jane Birkin, a British model and actress. It came to be known as the 'Birkin Bag' following its use by Jane Birkin, a fashion leader at that time. The retail price for a Birkin Bag in Korea is over KRW 10 million.

D.      The handbag in the shape as listed in Item No. 2 of Exhibit 2 ("Kelly Bag"), which may differ in terms of size and color per product, from among the handbags manufactured by Plaintiff Hermès is made of leather, and is rectangular or trapezoid in shape. A leather strap is attached to the lid which covers the upper part of the body, and after the lid covers the body from the back to the front, two (2) leather straps stretching from both ends of the top of the body are fixed with a buckle shaped like a padlock in the middle of the lid.

- 2 -

*[Translation]*

This bag came to be known as the 'Kelly Bag' after the actress Grace Kelly, who became the Queen of Monaco, appeared on the cover of Life magazine, covering her pregnant body with this oversized red crocodile bag in 1956. The retail price for a Kelly Bag in Korea is over KRW 10 million. (Birkin Bag and Kelly Bag are collectively referred to as "Plaintiffs' Products".)

E.      Defendant's Products are handbags, and are made by printing the shapes of Plaintiffs' Products on polyester fabric upon photographing the same.[1]

[Ground for Acknowledgments] Undisputed facts, contents described in Plaintiffs' Exhibit Nos. 1~16 and 18~20, Defendant's Exhibit Nos. 38~48 (including branch numbers, if any), images and purport of overall pleadings

**2.      Gist of Plaintiffs' argument**

Due to the Plaintiffs' investment and efforts, the shapes of Plaintiffs' Products are widely known in Korea as source identifiers of their products. On the other hand, Defendant manufactures and sells Defendant's Products that are handbags made by printing the shapes of Plaintiffs' Products upon photographing the same. Defendant's above act constitutes ☐ an act of causing confusion as to the source of goods under Article 2(1)(a) of the Unfair Competition Prevention and Trade Secret Protection Act (the "UCPA"), causing misunderstanding·confusion among consumers as to the source of goods, ☐ an act of damaging distinctiveness, etc. under Article 2(1)(c) of the UCPA, damaging distinctiveness or reputation of Plaintiffs' Products, or ☐ an act of unfair competition under Article 2(1)(j) of the UCPA or an illegal act under the Civil Code, using the outcomes achieved by other persons through substantial investment or efforts, for its own business without permission, in a manner contrary to fair commercial practices or competition order.

Thus, Defendant should not manufacture, sell, transfer, display, import or export products listed under Item Nos. 1 through 7 of Exhibit 1, and should destroy the same that are being stored and displayed in Defendant's factory, office, store, business place and warehouse. In addition, Defendant should compensate for the damage that Plaintiffs have suffered due to Defendant's act of unfair competition or illegal act. Thus, Plaintiffs claim that Defendant shall pay each Plaintiff KRW 50,000,000 and a default interest thereon as partial damages thereof.

**3.      Legality of Plaintiffs' claim against the manufacture or sale, etc. of products listed in Item No. 7 of Exhibit 1, and Plaintiffs' claim for destruction of the same**

In specifying the products, in respect of which Plaintiffs claim for enjoinment of manufacture and sale, etc. against Defendant in the tenor of claim, Plaintiffs did not specify the constitution of the product subject to the act of unfair competition in detail, and just stated the products in Item No. 7 of Exhibit 1 as the 'handbags in the same shapes as that of products listed in Item Nos. 1 through 6 of Exhibit 1'. If a decision is rendered to the effect that Plaintiffs' claim with respect to Item No. 7 of Exhibit 1 is accepted as in the tenor of claim, it would result in a decision that lacks specificity and an enforcement agency would be unable

---

[1]   A handbag that is made by printing the shape of a specific product, as in the case of Defendant's Products, are called print bag, fake bag or parody bag, etc.

[Translation]

to execute such decision. Thus, Plaintiffs' claim with respect to Item No. 7 of Exhibit 1 cannot be accepted. In light of the above, Plaintiffs' claim against the manufacture or sale, etc. of products listed in Item No. 7 of Exhibit 1, and Plaintiffs' claim for destruction of the same are without merit.

**4.      Judgment on the grounds for claim**

**A.      Whether an act of unfair competition or an illegal act is established or not**

1)      New Article 2(1)(j) of the UCPA and court precedents prior to entry into force of same

Article 2(1)(j) of the UCPA, a general provision on acts of unfair competition which entered into force on July 30, 2013, provides that "an act of infringing on other persons' economic interests by using the outcomes, etc. achieved by them through substantial investment or efforts, for one's own business without permission, in a manner contrary to fair commercial practices or competition order" constitutes an act of unfair competition. Even before the new establishment of the above provision, the court ruled that 'an act of obtaining unfair profit upon free-riding on competitors' efforts and investment and infringing on competitors' profit worth to be protected by law by using the outcomes achieved by them through substantial investment or efforts, for one's own business without permission, in a manner contrary to commercial morality or fair competition order" is an act of unfair competition, and constitutes an illegal act under the Civil Code (*see* Supreme Court Decision in Case No. 2008*Ma*1541, dated August 25, 2010, etc.).

2)      Present case

In light of the following that can be acknowledged upon overall consideration of the evidences mentioned earlier and purport of overall pleadings, it is reasonable to conclude that Defendant's act of manufacturing and selling Defendant's Products, which are handbags made by printing the shapes of Plaintiffs' Products on polyester fabric upon photographing the same, is an act infringing on the Plaintiffs' economic interests by using the outcomes achieved by Plaintiffs through substantial investments or efforts, for its own business without permission, in a manner contrary to fair commercial practices or competition order and thus, falls under an act of unfair competition under Article 2(1)(j) of the UCPA or an illegal act under the Civil Code.[2] [As it is recognized that an act of manufacturing and selling Defendant's Products constitutes an act of unfair competition under Article 2(1)(j) of the UCPA or an illegal act under the Civil Code, and the claim against the manufacture and sale, etc. of Defendant's Products and the claim for destruction of Defendant's Products are accepted accordingly as below, it is not necessary to review whether the act also constitutes an act under Article 2(1)(a) or Article 2(1)(c) of the UCPA, as claimed by Plaintiffs.]

☐   Plaintiff Hermès sells handbags including Plaintiffs' Products through about 200 stores that are under its direct management and located all over the world and through other sales network. In Korea, Plaintiff Hermès sells handbags including Plaintiffs' Products

---

[2]   As Article 2(1)(j) of the UCPA entered into force on July 30, 2013, the acts committed before January 31, 2014 are subject to Article 750 of the Civil Code, and the acts committed thereafter are subject to Article 2(1)(j) of the UCPA.

*[Translation]*

through Plaintiff Hermès Korea, which directly manages stores located at Shilla Hotel, Apgujeong Store·Trade Center Store·Busan Store of Hyundai Department Store and Main Store of Shinsegae Department Store, etc. Plaintiffs' sales in Korea from 2000 to March 2007 reached about KRW 61 billion. Plaintiffs advertise their various products, including Plaintiffs' Products, through Korean fashion magazines such as 'Marie Claire', 'Noblesse' and 'Elle' (in 2006, Plaintiffs advertised Plaintiffs' Products in Korean magazines four times every month, and the total advertisement expenditure in Korea for the years to 2000 to 2006 reached KRW 247,946,000). In addition, the shape, color, visual beauty resulting from the combination of same, and trademark value·image, etc. held by product manufacturers·sellers serve as important considerations, when consumers purchase goods such as handbags. In particular, in the case of costly luxury handbags manufactured only in small quantities and purchased by few consumers, the shape of goods, including the form, color, etc, which is widely advertised, functions as a source identifier, granting unique individuality to such goods that distinguishes them from other goods. Upon overall consideration of the above, Plaintiffs' Products have been manufactured·sold by Plaintiff Hermès, which has been known for several decades throughout the world for the "Hermès" trade name or trademark, and in light of the used period·used way·number of transaction of Plaintiff's Products, etc. , it is reasonable to conclude that the shapes of Plaintiffs' Products came to function as source identifiers since the shapes have been used by Plaintiffs for a long time·monopolistically·exclusively, but also the discriminative features held by the shapes are individualized remarkably to a degree that it is associated·by traders or consumers with Plaintiff Hermès due to continuous promotion·advertisement, etc. (*see* Supreme Court Decision in Case No. 2010*Da*20044, dated March 29, 2012, etc.). Given the above, it can be said that the shapes of Plaintiff's Products constitute the outcomes achieved by Plaintiffs through substantial investment or efforts.

Against the above, Defendant argues that the shapes of Plaintiffs' Products are commonly used for handbags universally, and have been publicly known before Plaintiffs' Product were produced. However, it is hard to see that the concrete shapes of Plaintiffs' Products as acknowledged in Section 1.C and D above are commonly used for handbags universally. In addition, evidences submitted by Defendant only, including the contents described in Defendant's Exhibit Nos. 54~56, 61 and 62, are insufficient to acknowledge the facts as claimed by Defendant, and there is no other evidence to acknowledge the same. Furthermore, although handbags of designs similar to that of Plaintiff's Products may have been sold before Plaintiffs' Products were released, in light of the following, Plaintiffs' Products cannot be deemed as not protected by the Civil Code or Article 2(1)(j) of the UCPA, just based on the reasons claimed by Defendant: The product shapes as protected by the Civil Code or Article 2(1)(j) of the UCPA do not require that they should be new; it seems that no products of similar designs have acquired a reputation and goodwill as high as the Plaintiffs' Products; consumers who see Defendant's Products appear to associate them with the Plaintiff's Products, and this result was achieved through Plaintiffs' considerable investment and effort. In light of the above, the Defendant's arguments cannot be accepted.

☐   All of Defendant's Products are made by printing the shapes of Plaintiffs' Products on polyester fabric upon photographing the same. Though the material of Defendant's Products differs from that of Plaintiffs' Products, which is leather, it is hard to distinguish Defendant's Products from Plaintiffs' Products when viewed with naked

eyes at a distance, since not only the outward shape of Plaintiffs' Products such as front, side, back and bottom, but also concrete constitutions of Plaintiffs' Products such as leather gloss, the shades portion when the product is folded, lid and padlock, etc. are printed therein (furthermore, it is hard to exclude the possibility that a consumer who would see the Defendant's Products would be misled into believing that Plaintiff Hermès manufactures fabric bags in the same design as that of Plaintiffs' Products). Therefore, though consumers are not likely to be confused and/or misled as to the source of goods at the time of purchase of the Defendant's Products as it is easy to distinguish Defendant's Products from Plaintiff's Products due to the difference in material, when viewed at a close distance or when touched, it cannot be said that it does not constitute a manner contrary to fair commercial practices or competition order to manufacture·sell Defendant's Products that are made by printing the shapes of Plaintiffs' Products upon photographing the same, without the Plaintiffs' permission, just based on the above circumstances.

☐   Defendant's Products are sold in the market for KRW 180,000 ~ 200,000, which seems higher than the prices of general bags made of polyester. Even considering any and all expenses presented by the Defendant, such as printing cost and cutting cost, it seems that the following considerably contributes to Defendant's Products being sold at KRW 180,000 ~ 200,000: Defendant's Products make consumers feel as if they carry Plaintiffs' Products and Defendant's Products mislead third parties, who see Defendant's Products, to believe that the Defendant's Products are the Plaintiffs' Products. Defendant appears to have considered these points when he manufactured the Defendant's Products. In light of the above, it is reasonable to conclude that the Defendant manufactures·sells Defendant's Products with the intention to free-ride on the power to attract consumers, etc. and the reputation and image held by Plaintiffs' Products or Plaintiff Hermès (if Defendant sold bags that were made without printing the shapes of Plaintiffs' Products or other luxury handbags, while using the same material, printing method and cutting method as those of Defendant's Products, it does not seem that Defendant would obtain the same sales volume as it obtained.)

☐   Defendant's Products enjoyed popularity among consumers as it became a topic of conversation that consumers may purchase Defendant's Products, which reflect the shapes of Plaintiffs' Products, at a price remarkably lower than that of Plaintiff's Products (KRW 180,000 ~ 200,000). Defendant also utilized such argument in its promotion. It is reasonable to conclude that the Defendant free-rides not only on the shapes of Plaintiffs' Products, but also on the reputation, image and power to attract consumers, etc. held by Plaintiff Hermès.

☐   Defendant argues that given the prices difference between Plaintiff's Products and Defendant's Products, etc., the sales volume of Plaintiffs' Products would not be affected by the sales of Defendant's Products, that Plaintiffs cannot be deemed to have suffered damage due to Defendant's Products since Plaintiffs manufacture·sell Plaintiff's Products only in a small quantity every year, and furthermore that Plaintiffs and Defendant are not in competition. However, it is not that Plaintiffs' profit is infringed on only when the sales volume of Plaintiffs' Products is affected by the sale of Defendant's Products. It is reasonable to see that Plaintiffs have suffered tangible·intangible damages due to Defendant's use of the shapes of Plaintiffs' Products on Defendant's Products upon printing the same without permission (it is

hard to exclude that potential purchasers of Plaintiffs' Products could be tempted to purchase handbags other than Plaintiffs' Handbags due to Defendant's Products, and this could concern, not only consumers who were interested in purchasing the Plaintiffs' Products but had difficulty in purchasing the same due to their high price or the long waiting period, but also some consumers who already owned a Birkin Bag or Kelly Bag and who could purchase Defendant's Products to use as shopping basket or diaper bag.) In addition, to acknowledge an act of unfair competition or an illegal act under the Civil Code, it is not required that an infringer and a victim should be in competition on an equal level or that corresponding products directly replaced demand for a specific product.

**B.      Judgment on a claim against the manufacture and sale, etc. of Defendant's Products and a claim for destruction of the same**

In light of the above, Defendant should not manufacture, sell, transfer, display, import or export Defendant's Products, and has an obligation to destroy Defendant's Products that are being stored and displayed in Defendant's factory, office, store, business place, and warehouse.

**C.      Judgment on damages claim**

1)      Establishment of liability for damages

As reviewed above, Defendant has an obligation to compensate Plaintiffs for the damage that Plaintiffs have suffered resulting from the manufacture and sale of Defendant's Products [the acts committed before January 31, 2014 are subject to Article 750 of the Civil Code (as Article 2(1)(j) of the UCPA only entered into force on July 30, 2013), and the acts committed thereafter are subject to Article 5 of the UCPA].

2)      Calculation of damages

Article 14-2, Paragraph (5) of the UCPA provides as follows: Where the court recognizes the extreme difficulty, owing to the nature of the case, of proving facts required for the substantiation of the amount of damage, though it is recognized that damage has occurred related to an act of unfair competition, the court may determine a reasonable amount on the basis of the purport of overall pleadings and the results of evidence investigations.[3] It is reasonable to see that the amount of damage suffered by Plaintiffs due to Defendant's act of unfair competition and illegal act exceeds KRW 50,000,000 per Plaintiff, upon consideration of the following, which can be acknowledged upon overall consideration of the contents described in Plaintiffs' Exhibit No. 5 and Defendant's Exhibit Nos. 57 and 58 and purport of

---

[3]  Where the court recognizes the difficulty, owing to the nature of the case, of proving the concrete amount of damage, though it is recognized that property damage has occurred in relation to an illegal act under the Civil Code, the court may determine the amount, which is the scope of damage having a considerable causal relationship with all the relevant indirect facts, such as a relationship between parties as found from the purport of overall pleadings and the results of evidence investigations, the illegal act and the background for the occurrence of property damage resulting therefrom, the nature of damage, and all the circumstances after the occurrence of damage, upon overall consideration of the same (*See* Supreme Court Decision in Case No. 2011*Da*82438, rendered on April 10, 2014, etc.).

*[Translation]*

overall pleadings, together with the price and sales period for each of Defendant's Products, the ratio of Defendant's Products that are made by printing the shapes of Plaintiffs' Products, from among the Defendant's Products, Defendant's operating margin in the field and any and all circumstances: □ Defendant's annual sales in 2011, 2012 and 2013 was KRW 888,197,179, KRW 1,472,349,497 and KRW 1,113,766,327, respectively, and the ratio of the sales number of Defendant's Products against the sale number of Defendant's entire products in 2013 and 2014, as acknowledged even by Defendant, was 22.68%[4] and 14.20%, respectively; □ Defendant commenced to sell Defendant's Products in Korea from the second half of 2010, and sold Defendant's Products amounting to KRW 220,000,000 at a store (Super Normal) located at Cheongdam-dong, Seoul for one month in June, 2011, and also sold the same in the amount of about KRW 20,000,000 at Gangnam Branch of Shinsegae Department Store for 1 day in March, 2013; □ articles stating that Defendant's Products enjoy much popularity among consumers were run several times by the press media such as The Han-Kyoreh Shinmun and Maeil Business Newspaper from 2011 to 2013.

3)      Sub-conclusion

Therefore, Defendant has an obligation to pay each Plaintiff KRW 50,000,000, together with a default interest thereon at the rate of 20% per annum as provided for in the Act on Special Cases concerning Expedition, etc. of Legal Proceedings from August 2, 2014, which is the date immediately following the service of this Complaint, to the date when the amount is paid in full, as sought by Plaintiffs as partial damages claim.


5.      **Conclusion**

In light of the above, Plaintiffs' claim against the manufacture and sale, etc. of products listed in Item No. 7 of Exhibit 1 and Plaintiffs' claim for destruction of the same are without merit and thus, are rejected in their entirety, and the remaining claims have merits and thus, are accepted. As for the cost of litigation, it is decided as per the Order upon applying the proviso of Article 101 of the Civil Code.


Woo-Yong Shim, Presiding Judge
Woo-Yong Lee, Judge
Jeong-Yeon Hwang, Judge

---

[4] The Defendant's sales in 2013 from selling Defendant's Products, calculated based upon the ratio, reaches KRW 254,606,982 (= KRW 1,113,766,327 X 22.86%, (calculated upon discarding anything below the value of 1 Won).

*[Translation]*

Exhibit 1

## Defendant's Products

| | |
|---|---|
| 1 |  |
| 2 |  |
| 3 |  |
| 4 |  |
| 5 |  |
| 6 |  |
| 7 | Other handbags in the same shape as that of products listed in Item Nos. 1 through 6 |

*[Translation]*

Exhibit 2

Plaintiffs' Products

1.    Birkin Bag



2.    Kelly Bag

