**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

HERMÈS INTERNATIONAL and
HERMÈS OF PARIS, INC.,

                Plaintiff,

    v.

MASON ROTHSCHILD,

                Defendant.

Civil Action No. 22-cv-00384-AJN-GWG

---

## MEMORANDUM OF LAW IN OPPOSITION TO MASON ROTHSCHILD'S MOTION TO DISMISS

Gerald J. Ferguson, Esq.
Oren J. Warshavsky, Esq.
Tracy L. Cole, Esq.
Kevin M. Wallace, Esq.
Megan A. Corrigan, Esq.
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

Debora Wilcox, Esq. (*pro hac vice*)
BAKER & HOSTETLER LLP
Key Tower
127 Public Square
Suite 2000
Cleveland, OH 44114
Telephone: 216.621.0200

*Attorneys for Plaintiffs Hermès*
*International and Hermès of Paris, Inc.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS .........................................................................................3

ARGUMENT ..........................................................................................................7

I.     STANDARD OF REVIEW ...........................................................................7

II.    THE AMENDED COMPLAINT AMPLY ALLEGES DEFENDANT'S
VIOLATION OF THE LANHAM ACT AND NEW YORK LAW ............................8

     A.     THE AMENDED COMPLAINT STATES A CLAIM FOR
TRADEMARK INFRINGEMENT ...................................................8

          1.     Defendant Uses METABIRKINS As a Mark in Commerce. ...............8

          2.     Defendant's Commercial Use of the METABIRKINS Mark Is
Likely To, and Already Has Been Shown To, Cause Confusion...........9

               a.     The Amended Complaint Alleges Evidence of Actual
Confusion ...............................................................10

               b.     The Amended Complaint Alleges Defendant's Use of a
Nearly Identical Mark, Differentiated Only by an
Explicitly Misleading Generic Prefix .....................................11

               c.     The Amended Complaint Alleges a Likelihood of Bridging
the Gap and Hermès Is Entitled to Trademark Protection
for Digital Goods ....................................................11

               d.     The Amended Complaint Alleges Defendant's Bad Faith ......13

               e.     The Amended Complaint Alleges Facts Supporting the
Remaining *Polaroid* Factors ...................................................14

     B.     THE AMENDED COMPLAINT STATES A CLAIM FOR
TRADEMARK DILUTION ........................................................14

     C.     THE AMENDED COMPLAINT STATES A CLAIM FOR
CYBERSQUATTING ...............................................................16

III.    *ROGERS* DOES NOT SHIELD DEFENDANT'S CONDUCT FROM THE
REACH OF THE LANHAM ACT...................................................................16

A.      *ROGERS* IS INAPPLICABLE TO DEFENDANT'S ALLEGED
        CONDUCT ..................................................................................................17

B.      *ROGERS* WOULD NOT INSULATE DEFENDANT FROM
        LIABILITY IF IT WERE APPLICABLE .......................................................22

        1.      Defendant's Efforts to Escape the *Polaroid* Factors Are Fruitless......22

        2.      The Amended Complaint Alleges Explicitly Misleading Use of
                the Mark .................................................................................................25

CONCLUSION..................................................................................................................25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*,
   364 F. Supp. 3d 291 (S.D.N.Y. 2019) .................................................................22

*AM Gen. LLC v. Activision Blizzard, Inc.*,
   450 F. Supp. 3d 467 (S.D.N.Y. 2020) .................................................................23

*Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*,
   11 F.4th 26 (2d Cir. 2021), *cert. granted sub nom. Andy Warhol Found., Inc.*
   *v. Goldsmith*, No. 21-869, 2022 WL 892102 (U.S. Mar. 28, 2022) ........................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................................................7

*Brown v. Electronic Arts, Inc.*,
   724 F.3d 1235 (9th Cir. 2013) .............................................................................21

*Burck v. Mars, Inc*,
   571 F. Supp. 2d 446 (S.D.N.Y. 2008) .................................................................22

*Cap. One Fin. Corp. v. Cap. One Certified Inc.*,
   No. 18 CV 580 (ARR)(RML), 2019 WL 1299266 (E.D.N.Y. Mar. 5, 2019),
   *report and recommendation adopted*, No. 18 CV 580 (ARR)(RML), 2019 WL
   1299661 (E.D.N.Y. Mar. 21, 2019) .......................................................................9

*Cardservice Int'l, Inc. v. McGee*,
   950 F. Supp. 737 (E.D. Va. 1997), *aff'd without opinion*, 129 F.3d 1258 (4th
   Cir. 1997) .............................................................................................................12

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp.*,
   886 F.2d 490 (2d Cir. 1989) ...........................................................................20, 22

*Coty Inc. v. Excell Brands, LLC*,
   277 F. Supp. 3d 425 (S.D.N.Y. 2017) .................................................................14

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23 (2003) ...........................................................................................12, 13

*Deere & Co. v. MTD Prods., Inc.*,
   No. 00 CIV 5936 (LMM), 2001 WL 435613 (S.D.N.Y. Apr. 30, 2001) ................10

*DiFolco v. MSNBC Cable L.L.C.*,
   622 F.3d 104 (2d Cir. 2010) ..................................................................................7

*Dr. Seuss Enters., L.P. v. Comicmix LLC*,
    983 F.3d 443 (9th Cir. 2020) ...................................................................................................21

*Empresa Cubana del Tabaco v. Culbro Corp.*,
    399 F.3d 462 (2d Cir.2005)........................................................................................................8

*ESPN, Inc. v. Quiksilver, Inc.*,
    586 F. Supp. 2d 219 (S.D.N.Y. 2008)........................................................................................8

*ETW Corp. v. Jireh Publ'g, Inc.*,
    332 F.3d 915 (6th Cir. 2003) ...................................................................................................21

*Fireman's Ass'n of State of New York v. French Am. Sch. of New York*,
    839 N.Y.S.2d 238 (2007)..........................................................................................................15

*Gayle v. Allee*,
    No. 18 CIV. 3774 (JPC), 2021 WL 120063 (S.D.N.Y. Jan. 13, 2021)...................................23

*Gordon v. Drape Creative, Inc.*,
    909 F.3d 257 (9th Cir. 2018) ..............................................................................................22, 24

*Gruner + Jahr USA Publ'g v. Meredith Corp.*,
    991 F.2d 1072 (2d Cir. 1993)......................................................................................................8

*Harley Davidson, Inc. v. Grottanelli*,
    164 F.3d 806 (2d Cir. 1999).......................................................................................................22

*Juicy Couture, Inc. v. Bella Int'l Ltd.*,
    930 F. Supp. 2d 489 (S.D.N.Y. 2013).......................................................................................10

*Kensington Publ'g. Corp v. Gutierrez*,
    No. 05 Civ.10529 (LTS)(AJP), 2009 WL 4277080 (S.D.N.Y. Nov. 10, 2009) .....................22

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*,
    799 F.2d 867 (2d Cir. 1986).......................................................................................................8

*Lynch v. City of New York*,
    952 F.3d 67 (2d Cir. 2020)..........................................................................................................7

*Mattel, Inc. v. MCA Records, Inc.*,
    296 F.3d 894 (9th Cir. 2002) ..............................................................................................19, 20

*Mattel, Inc. v. Walking Mountain Prods.*,
    353 F.3d 792 (9th Cir. 2003) .....................................................................................................20

*Medina v. Dash Films, Inc.*,
    No. 15-CV-2551 (KBF), 2016 WL 3906714 (S.D.N.Y. July 14, 2016)..................................23

*Planned Parenthood Fed'n of Am., Inc. v. Bucci*,
　　No. 97 CIV. 0629 (KMW), 1997 WL 133313 (S.D.N.Y. Mar. 24, 1997), *aff'd*,
　　152 F.3d 920 (2d Cir. 1998) .............................................................................18

*Polaroid Corp. v. Polarad Elecs. Corp.*,
　　287 F.2d 492 (2d Cir. 1961).................................................................... *passim*

*Renovation Realty, Inc. v. Esplanade*,
　　No. 13-CV-396-MMA(BLM), 2013 WL 12114628 (S.D. Cal. May 9, 2013) ......................16

*Rogers v. Grimaldi*,
　　875 F.2d 994 (2d Cir. 1989)..................................................................... *passim*

*S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*,
　　483 U.S. 522 (1987)...........................................................................24

*Savin Corp. v. Savin Grp.*,
　　391 F.3d 439 (2d Cir. 2004).........................................................10, 14, 15

*Scarves by Vera, Inc. v. Todo Imports Ltd. (Inc.)*,
　　544 F.2d 1167 (2d Cir. 1976)...............................................................11

*Scotch & Soda B.V. v. Scotch & Iron LLC*,
　　No. 1:17-CV-04561 (ALC), 2018 WL 2224997 (S.D.N.Y. May 15, 2018)..........................10

*Shepard v. Eur. Pressphoto Agency*,
　　291 F. Supp. 3d 465 (S.D.N.Y. 2017)..........................................................13

*Simon & Schuster, Inc. v. Dove Audio, Inc.*,
　　970 F. Supp. 279 (S.D.N.Y. 1997) ...........................................................24

*SMJ Group, Inc. v. 417 Lafayette Rest. LLC*,
　　439 F. Supp. 2d 281 (S.D.N.Y. 2006).........................................................17

*State St. Glob. Advisors Tr. Co. v. Visbal*,
　　431 F. Supp. 3d 322 (S.D.N.Y. 2020).........................................................18

*TCPIP Holding Co. v. Haar Commc'ns, Inc.*,
　　244 F.3d 88 (2d Cir. 2001)................................................................9, 18

*Tiffany & Co. v. Costco Wholesale Corp.*,
　　971 F.3d 74 (2d Cir. 2020)...................................................................9

*Tiffany (NJ) Inc. v. eBay Inc.*,
　　600 F.3d 93 (2d Cir. 2010)..................................................................15

*Twentieth Century Fox Television v. Empire Distrib., Inc.*,
　　875 F.3d 1192 (9th Cir. 2017) ..............................................................21

*Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*,
    996 F.2d 1366 (2d Cir. 1993)..................................................................22, 23

*United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*,
    128 F.3d 86 (2d Cir. 1997)................................................................................17

*Univ. of Ala. Bd. of Tr. v. New Life Art, Inc.*,
    683 F.3d 1266 (11th Cir. 2012) ........................................................................21

*VIP Prods. LLC v. Jack Daniel's Props., Inc.*,
    953 F.3d 1170 (9th Cir. 2020) ..........................................................................20

*Webadviso v. Bank of Am. Corp.*,
    448 F.App'x 95 (2d Cir. 2011) .........................................................................16

*World Championship Wrestling v. Titan Sports, Inc.*,
    46 F. Supp. 2d 118 (D. Conn. 1999) ................................................................21

*Yankee Publ'g Inc. v. News Am. Publ'g Inc.*,
    809 F. Supp. 267 (S.D.N.Y. 1992) ...................................................................17

**Statutes**

15 U.S.C. § 1114.......................................................................................................8

15 U.S.C. § 1125(a)..................................................................................................8

15 U.S.C. § 1125(c)(2)(B)(i)-(vi)...........................................................................15

15 U.S.C. § 1125(d)................................................................................................16

15 U.S.C. § 1127......................................................................................................9

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...........................................................................................7

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* (5th ed.
    2022) ........................................................................................................9, 11, 12

Plaintiffs Hermès International and Hermès of Paris, Inc. (collectively, "Hermès"), by and through its undersigned counsel, respectfully submits this memorandum of law in opposition to the motion ("Motion") brought by defendant Mason Rothschild a/k/a Sonny Alexander Estival ("Defendant") to dismiss Hermès' amended complaint (the "Amended Complaint" or "AC").

## PRELIMINARY STATEMENT

Defendant's motion to dismiss is a diversion. Defendant's own words, quoted in Hermès' Amended Complaint, show Defendant for what he is: an opportunistic infringer, trading off Hermès' substantial goodwill to sell digital handbags he describes as "commodities." Defendant's motion invites the Court to make factual determinations contrary to the allegations of the Amended Complaint and change the law to immunize infringers from Lanham Act claims in virtual worlds known as the metaverse. These requests are inappropriate on a motion to dismiss, and unfounded as a matter of law. The Court should deny the motion.

It is undisputed that Hermès, one of the world's leading luxury brands, developed the BIRKIN trademark in connection with handbags. As Defendant admits, Hermès' BIRKIN handbag is "a highly covetable 'holy grail' handbag" because "[t]here's nothing more iconic than the Hermès Birkin bag." Defendant saw an opportunity in the burgeoning field of non-fungible tokens (or NFTs) to exploit Hermès' goodwill. Defendant decided to sell virtual handbags in the so-called "metaverse"—virtual worlds where people can meet, exchange goods, and even show off (or perhaps wear) their virtual handbags. Given his feelings about Hermès' BIRKIN line, it comes as no surprise that Defendant set up a storefront under the name "METABIRKINS"—a portmanteau of the generic formative "meta" and Hermès' BIRKIN mark—to sell virtual handbags. Defendant's products include virtual handbags that appear nearly identical to Hermès' "iconic" and "holy grail" BIRKIN handbags. Defendant calls these virtual handbags "METABIRKINS," and promotes their sale under the "METABIRKINS" tradename.

In trying to build up interest in his virtual handbag business, Defendant explained that he was conducting an "experiment to see if [he] could create the same kind of illusion that [the BIRKIN handbag] has in real life as *a digital commodity*."  Not surprisingly, Defendant stated that he has "accomplished [his experiment]" and has "put together the kind of digital commodity [the METABIRKINS] everybody loves . . . ."  Using the iconic BIRKIN trademark to sell handbags, real or virtual, is no more an "experiment" than any other act of trademark infringement.  Regardless, Defendant did indeed successfully "accomplish[]" the goal of his infringing conduct: consumers and the press alike believed Hermès was involved.  *Elle* magazine, the *New York Post*, and other sophisticated commentators reported that Hermès authorized the METABIRKINS infringement "experiment."  Likewise, Defendant's social media account is steeped in posts from third parties expressing confusion about Hermès' sponsorship of and/or collaboration with Defendant and his METABIRKINS infringements.

Defendant's "experiment" did not stop with his sale of METABIRKINS digital handbags. He has used METABIRKINS as a pseudonym and trade name to promote his digital business ventures.  The confusion is sure to grow.

Faced with the well-pleaded facts in Hermès' Amended Complaint and the ineluctable infringement finding, Defendant seeks refuge in the First Amendment.  In so doing, Defendant asks this Court to ignore that he is selling virtual handbags to be displayed in the metaverse and that he has referred to these virtual handbags as "commodities," and as an analog to physical handbags (and at similar prices!).  Defendant is asking the Court to disregard the pleadings and make factual determinations, based on unsworn statements in Defendant's moving papers, that Defendant did not adopt METABIRKINS as part of concerted and successful effort to confuse

consumers into believing that Hermès participated in the METABIRKINS project. Alternatively, Defendant asks the Court to find that trademark rights evaporate in the metaverse.

The body of law Defendant relies upon, principally *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), and its progeny, does not immunize Defendant from the Lanham Act.  As detailed below, the *Rogers* case did not deal with "commodities" sold in commerce, but rather "the use of the title *Ginger and Fred* for a fictional movie that only obliquely relates to [Ginger] Rogers …" As Defendant himself notes, Hermès owns the "iconic" BIRKIN trademark and sells handbags under that mark.  Now Defendant is selling virtual handbags (that appear to be blurry digital copies of actual Hermès BIRKIN handbags) under the confusingly similar METABIRKINS brand.  If Defendant used the BIRKIN trademark to sell physical handbags, it's unclear what First Amendment protection he would be seeking.  There is no reason to treat his sales of virtual handbags, which Defendant concedes are digital commodities, any differently.

This is a motion to dismiss.  The Amended Complaint's detailed factual allegations, that must be accepted as true, directly contradict Defendant's unsworn statements in his motion.  If the Amended Complaint consisted *only* of Defendant's own statements, his current motion would be denied because the contradictions between his public statements and the unsworn factual assertions in Defendant's motion require factual determinations.

## STATEMENT OF FACTS

Hermès is a world-renowned luxury fashion business known for its luxury goods, including its iconic and famous BIRKIN handbag.  (AC ¶¶ 27, 29, 33.)  Since the BIRKIN handbag's introduction in the United States in 1986, it has garnered widespread and extensive recognition in the U.S. and worldwide as a "highly covetable 'holy grail' handbag that doubles as an investment or store of value," as Defendant himself notes.  As Defendant further observed, "there's nothing more iconic than the Hermès Birkin bag."  (AC ¶¶ 37-53, 76.)  Hermès is the

3

owner of its famous BIRKIN Mark, BIRKIN Trade Dress and HERMÈS Mark, all of which are registered on the Principal Register, in full force and effect, incontestable, and have been continuously used for decades by Hermès.  (AC ¶¶ 30, 34-36.)

Defendant is a "marketing strategist" and "Entrepreneur" who "come[s] from the fashion industry."  (AC ¶¶ 1, 8-9, 25 & Ex. Y.)  On or about December 2, 2021, Defendant launched a line of collectible digital handbags under the METABIRKINS name, which uses the entirety of Hermès' famous BIRKIN Mark and simply adds the generic prefix "meta."  (AC ¶¶ 2, 76.)  "Meta" and "metaverse" refer to virtual worlds and economies where digital assets can be sold and traded; "METABIRKINS" simply means "BIRKINS in the metaverse."  (AC ¶ 2.)  The METABIRKINS collection consists of 100 NFTs, each of which is a digital copy of Hermès' iconic BIRKIN handbag.  (AC ¶¶ 78, 94.)  When initially selling his METABIRKINS collectible digital handbags, Defendant described them as "a tribute to Herm[è]s' most famous handbag, the Birkin, one of the most exclusive, well-made luxury accessories. Its mysterious waitlist, intimidating price tags, and extreme scarcity have made it a highly covetable 'holy grail' handbag that doubles as an investment or store of value."  (AC ¶ 94.)  Defendant did not describe his METABIRKINS as an "art project," but rather as a "digital commodity," in an interview with *Yahoo! Finance*, Defendant stated:

> I mean, for me, there's nothing more iconic than the Herm[è]s Birkin bag.  And I wanted to see as an experiment if I could create that same kind of illusion that it has in real life as a **digital commodity**.
>
> . . .
>
> [T]there's not much difference in between having the crazy car or the crazy handbag in real life because it's kind of just that, that showing of like wealth or that kind of explanation of success.
>
> And now you're able to bring that into the metaverse with these iconic NFTs . . . .  So I feel like the difference between the two is like getting a little bit blurred now because we have this new outlet,

4

> which is the metaverse, to showcase, showcase them in our virtual
> worlds, and even just show them online.

(AC, Ex. Y.) (emphasis added.)  Defendant's strategy worked:  METABIRKINS collectible

digital handbags have sold for prices comparable to real world BIRKIN handbags.  (AC ¶¶ 8,

112, 120-121.).

Creating digital versions of "real life" products in the metaverse is a burgeoning industry.

Brands are themselves creating and offering digital replicas of their products and putting on

digital fashion shows.  (AC ¶ 66.)  A number of ready-to-wear brands have begun testing out

virtual versions of their collections in various virtual platforms and creating metaverse business

units.  (*Id.*)  Even high fashion brands are entering the metaverse with branded digital worlds,

digital wardrobes available to consumers in the metaverse, and metaverse fashion weeks with

virtual models and digital apparel.  (*Id.*)  NFTs can link to digital media like virtual fashion items

that can be worn in virtual worlds online.  (*Id.*; *see also* AC, Ex. R)  In fact, after Hermès filed

the Amended Complaint, Defendant announced that his other collection of NFTs called "I Like

You You're Weird" has partnered with Arcade and that owners of a "Weirdo" NFT can "play as

their Weirdo [NFT] in-game and live in the many biomes of the Arcade Metaverse."  *See*

Declaration of Gerald J. Ferguson, Ex. A.[1]  Although Defendant has not yet introduced

METABIRKINS into virtual worlds in the same manner, his stated business plan indicates that

he plans to do so.

Fashion brands are also partnering with artists to create co-branded products and

collaborations.  (AC ¶ 67.)  For example, Gucci has entered into a collaboration with Trevor

---

[1] Defendant's post-Amended Complaint conduct is relevant to his argument that the Amended Complaint's
allegation that NFT's can be used in virtual worlds "has no bearing on this case" because "Hermès does not and
cannot allege that *these MetaBirkins* can be worn or used in virtual worlds."  (Def. Br. at 7, n.4) (emphasis in
original).

Andrew for a series of NFTs pointing to images of ghosts bearing Gucci's double G trademark. (*Id.*)  Defendant sought to suggest a similar collaboration by promoting his METABIRKINS NFTs as a "tribute" to Hermès.  (AC ¶¶ 14, 98-100.)  But Hermès has not authorized Defendant to "take [the BIRKIN] into the metaverse" and Defendant has usurped Hermès' trademark rights in attempting to do so.

In addition to referring to Hermès' most famous handbag the BIRKIN, Defendant continues to operate his METABIRKINS business like a brand.  (AC ¶¶ 2, 5.)  Defendant has opened digital storefronts on four different e-commerce platforms to sell his line of digital fashion products.  (AC ¶¶ 102-103, 122-133.)  To increase his brand presence, he has created social media and marketing channels: @METABIRKINS on Twitter, @METABIRKINS on Instagram, METABIRKINS.com, and a METABIRKINS community on the Discord social platform.  (AC ¶¶ 90-98, 100-101, 104-107, 123, 133.)  Defendant has advertised his METABIRKINS collectible digital handbags using advertising slogans that incorporate the BIRKKIN trademark such as "NOT YOUR MOTHER'S BIRKIN" and the hashtags "#METABIRKINS GONNA MAKE IT" and "#MINT A METABIRKIN HOLD A METABIRKIN."  (AC ¶¶ 88, 95-96.)  And Defendant has used his METABIRKINS brand to collaborate with other entrepreneurs and promote other NFT projects.  (AC ¶¶ 134-143) (collectively, the "Infringing METABIRKINS Uses").  Indeed, Defendant is now claiming trademark rights in the METABIRKINS brand, repeatedly complaining that his METABIRKINS are being "counterfeited", and he saw "more and more fake METABIRKINS sold every hour." (AC ¶¶ 12, 108.)

Defendant's extensive Infringing METABIRKINS Uses, in conjunction with other uses of Hermès trademarks, has explicitly misled the general public and caused actual confusion

concerning (i) Hermès' affiliation with the METABIKRINS collection of NFTs; (ii) the relationship between the METABIRKINS collection of NFTs and authentic BIRKIN handbags; and (iii) Hermès' authorization or sponsorship of the METABIRKINS collection of NFTs.  (AC ¶¶ 3, 113-121.)  Consumers and the general public have commented on Defendant's METABIRKINS social media channels expressing their confusion.  (AC ¶¶ 114-115.)  The media has also been confused regarding Hermès' affiliation with the METABIRKINS.  *Elle*, *L'Officiel* magazine, and the *New York Post* all mistakenly reported that the METABIRKINS collection of NFTs was unveiled by Hermès in partnership with Defendant.  (AC ¶¶ 117-119.)

## ARGUMENT

### I.     STANDARD OF REVIEW

When considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must liberally construe all claims in a complaint, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  A claim is sufficient when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 678.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  A court may not, as Defendant asks this Court to do, make factual findings contrary to the plausible allegations of the complaint; its function is "to assess the legal feasibility of the complaint" and "not to assess the weight of the evidence that might be offered on either side."  *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).

II.     **THE AMENDED COMPLAINT AMPLY ALLEGES DEFENDANT'S VIOLATION OF THE LANHAM ACT AND NEW YORK LAW**

    A.     **THE AMENDED COMPLAINT STATES A CLAIM FOR TRADEMARK INFRINGEMENT**

Claims for trademark infringement under Section 32 and 42(a) of the Lanham Act are analyzed under the two-prong test described in *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1074 (2d Cir. 1993): (1) whether the plaintiff's mark is entitled to protection and (2) whether defendant's use of the mark is likely to cause consumer confusion as to the origin or sponsorship of the defendant's goods. *Id.* Trademark infringement and unfair competition claims under New York law mirror those for the Lanham Act and may be analyzed together.[2] *See ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219, 230 (S.D.N.Y. 2008).

It is uncontested that the HERMÈS Mark, BIRKIN Mark, and the BIRKIN Trade Dress are registered trademarks entitled to protection. (AC ¶¶ 30, 34-35); *see Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986) ("[R]egistered trademarks are presumed to be distinctive and should be afforded the utmost protection."). It is also uncontested that Defendant uses "METABIRKINS" to identify the collection of digital handbags that he offers for sale, as well as in a URL, on his website and that he promotes his business activities through the Infringing METABIRKINS Uses. (AC ¶¶ 90-96.)

    1.     **Defendant Uses METABIRKINS As a Mark in Commerce.**

"[U]nder the Lanham Act, a defendant is deemed to have used the mark in commerce if 'it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement

---

[2] While the elements of trademark infringement and unfair competition under New York common law mirror the Lanham Act, a party stating a claim for unfair competition under New York law must plead that the alleged infringer acted in bad faith. *See Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 485 (2d Cir.2005). The same factual allegations cited to as evidencing bad faith under the *Polaroid* analysis in section II.A.2.d, also support bad faith for Hermès' unfair competition claim under New York law.

impracticable, then on documents associated with the goods or their sale.'" *Cap. One Fin. Corp.*
*v. Cap. One Certified Inc.*, No. 18 CV 580 (ARR)(RML), 2019 WL 1299266, at *2 (E.D.N.Y.
Mar. 5, 2019), *report and recommendation adopted*, No. 18 CV 580 (ARR)(RML), 2019 WL
1299661 (E.D.N.Y. Mar. 21, 2019) (quoting 15 U.S.C. § 1127).  A defendant further

> uses a term as a mark when it employs it as a symbol to attract public
> attention, or to identify and distinguish . . . goods [or services] . . .
> and to indicate [their] source.  Whether a defendant has done so may
> entail an investigation into, *inter alia*, whether the challenged
> material appeared on the product itself, on its packaging, or in any
> other advertising or promotional materials related to [the] product,
> and the degree to which defendants were trying to create, through
> repetition ... a[n] association between [themselves] and the [mark].

*Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 92 (2d Cir. 2020) (internal quotation
marks and citations omitted).  Here, Defendant's Infringing METABIRKINS Uses are to attract
public attention and to indicate source.  (AC ¶¶ 6-7, 77-79, 82-107, 122-146.)  The use of a
trademark to identify a product line and to promote a business enterprise is the essence of
trademark use.  1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 3:2
(5th ed. 2022).  Further, the Second Circuit has long recognized that use of a mark as the address,
or name, of a website is a trademark use.  *TCPIP Holding Co. v. Haar Commc'ns, Inc.*, 244 F.3d
88, 104 (2d Cir. 2001).

### 2.   Defendant's Commercial Use of the METABIRKINS Mark Is Likely To, and Already Has Been Shown To, Cause Confusion

To determine whether a defendant's mark is likely to cause confusion, courts consider the
eight factors enumerated in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961):

> (1) the strength of the plaintiff's mark; (2) the similarity of the
> marks; (3) the competitive proximity of the products in the
> marketplace; (4) the likelihood that the senior user will "bridge the
> gap" by moving into the junior user's product market; (5) evidence
> of actual confusion; (6) the junior user's bad faith in adopting the
> mark; (7) the respective quality of the products; and (8) the
> sophistication of the consumers in the relevant market.

*Juicy Couture, Inc. v. Bella Int'l Ltd.*, 930 F. Supp. 2d 489, 499 (S.D.N.Y. 2013) (citing

*Polaroid*, 287 F.2d at 495).  Notably, an ultimate determination of likelihood of confusion "is not

an inquiry appropriate on a motion to dismiss."  *Deere & Co. v. MTD Prods., Inc.*, No. 00 CIV

5936 (LMM), 2001 WL 435613, at *1 (S.D.N.Y. Apr. 30, 2001).  "Accordingly, the hurdle for

Plaintiff's claims regarding the likelihood of confusion is exceedingly low."  *Scotch & Soda B.V.*

*v. Scotch & Iron LLC*, No. 1:17-CV-04561 (ALC), 2018 WL 2224997, at *3 (S.D.N.Y. May 15,

2018).

　　　　　　　a.　　*The Amended Complaint Alleges Evidence of Actual Confusion*

　　　　Of the eight *Polaroid* factors, "[t]here can be no more positive or substantial proof of  the

likelihood of confusion than proof of actual confusion."  *Savin Corp. v. Savin Grp.*, 391 F.3d

439, 459 (2d Cir. 2004) (internal quotation marks and citation omitted).  Here, Hermès'

Amended Complaint is replete with examples showing that sophisticated media outlets as well as

consumers have actually been confused as to: (1) Hermès' affiliation with the METABIKRINS

collection of NFTs; (2) the relationship between the METABIRKINS collection of NFTs and

authentic BIRKIN handbags; and (3) Hermès' authorization or sponsorship of the

METABIRKINS collection of NFTs.  (AC ¶¶ 3, 112-121.)  Although "anecdotes" and "a handful

of comments on the MetaBirkins Instagram page," (Def. Br. at 17-18), would be ample to state a

facially sufficient claim of likelihood of confusion, the evidence alleged here is overwhelming.

　　　　Defendant's misappropriation of the BIRKIN mark has confused consumers, the general

public, industry experts, and the press.  (AC ¶¶ 112-121.)  After Defendant released the

METABIRKINS collection of NFTs and promoted the NFTs as a tribute to Hermès, *Elle* fashion

magazine published an article titled "Hermès Goes Virtual With Launch of Birkin Bags as

NFTs."  (AC ¶ 117.)  *L'Officiel* magazine reported that Hermès "partnered with" Defendant and

described Defendant's METABIRKINS as "a new line of Birkin bags" and "another collection

of Birkin NFTs."  (AC ¶ 118.)  The *New York Post* reported that Hermès "unveiled the MetaBirkin-a VR version of its signature bag, created by [Defendant], and 'made' just 100 of them" and that "[w]ith such a limited supply, prices have 'skyrocketed to near real-Birkin levels' . . . ."  (AC ¶ 119.)  Even a lawyer presenting at an intellectual property conference in Paris wrongly stated that Hermès collaborated with Defendant on the introduction of the METABIRKINS collection of NFTs.  (AC ¶116.)  The popularity and high prices of the METABIRKINS are driven by consumers' mistaken understanding that they are BIRKIN handbags in the metaverse, and not by Defendant's alleged "art."  (AC ¶ 121.)

      b.      *The Amended Complaint Alleges Defendant's Use of a Nearly Identical Mark, Differentiated Only by an Explicitly Misleading Generic Prefix*

Defendant points out he has added the prefix "META" to his use of Hermès' BIRKIN mark, suggesting this addition constitutes an artistic allusion that distances his mark from Hermès'.  (*See, e.g.*, Def. Br. at 1.)  "Adding a generic name to another's mark, especially if it is a famous mark, will not usually avoid a likelihood of confusion."  4 McCarthy, *supra*, § 23:50.  But in the context of Defendant selling NFTs in the metaverse, the term META is simply a generic term describing where the BIRKIN products are being sold.  Instead of dispelling confusion, Defendant's modification accomplishes the opposite:  Defendant's addition of the generic term META (for metaverse) to Hermès' fanciful BIRKIN mark creates the explicitly misleading impression that Hermès, the only source of BIRKIN handbags, is offering BIRKIN handbags in the METAverse.  (AC ¶¶ 2, 34-53, 113-19.)

      c.      *The Amended Complaint Alleges a Likelihood of Bridging the Gap and Hermès Is Entitled to Trademark Protection for Digital Goods*

Federal and state law protects a trademark owner's "interest in being able to enter a related field at some future time" and does not require proof of present intent to enter that field.  *Scarves by Vera, Inc. v. Todo Imports Ltd. (Inc.)*, 544 F.2d 1167, 1172-74 (2d Cir. 1976).  As

alleged in the Amended Complaint, offering virtual goods is in Hermès' natural zone of expansion. NFTs are part of a burgeoning industry. Fashion brands have entered and are continuing to grow in the metaverse, and media coverage spotlights the growing number of real-world fashion brands, including high fashion brands, that are exploring the sale of branded digital products. (AC ¶¶ 66-68.) Hermès has the right to expand into the metaverse at the time of its choosing. (AC ¶ 14.) As evidenced by the examples of consumer and media confusion as to Defendant's affiliation with Hermès, consumers see luxury fashion brands entering the NFT space and would expect NFTs featuring famous brands to be affiliated with those brands. (*Id.*)

Astonishingly, Defendant appears to argue that the enforcement of trademark rights is somehow limited to the realm of physical goods. (Def. Br. at 20-22.) To the contrary: "There is no doubt that trademark law and the Lanham Act are fully operative in cyberspace." 5 McCarthy, *supra*, § 25A:1 (citing *Cardservice Int'l, Inc. v. McGee*, 950 F. Supp. 737, 741(E.D. Va. 1997), *aff'd without opinion*, 129 F.3d 1258 (4th Cir. 1997)).

Ignoring decades of application of the Lanham Act to virtual goods and services, Defendant argues that the Lanham Act is not applicable to the metaverse through a tortured misinterpretation of *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). In *Dastar*, Fox owned a television series, *Crusade*, which had entered into the public domain. 539 U.S. at 25-26. Dastar released a video set that included a great deal of footage from *Crusade*. *Id.* at 26-27. Unable to bring a copyright infringement claim, Fox brought a "false designation of origin" claim under the Lanham Act arguing that Dastar should have credited Fox when issuing the video. *Id.* at 27-28. The Supreme Court held that section 43(a) of the Lanham Act does not prevent the unaccredited copying of an uncopyrighted work. *Id.* at 37. "*Dastar* addresses the interplay between copyright—which protects authors' rights in their creations—and unfair

competition laws—which protect consumers from, *inter alia*, confusion as to the origin of goods." *Shepard v. Eur. Pressphoto Agency*, 291 F. Supp. 3d 465, 469 (S.D.N.Y. 2017). In rejecting an effort to refashion the Lanham Act to provide copyright-like rights, *Dastar* differentiates between creative ideas and "tangible goods that are offered for sale." *See Dastar*, 539 U.S. at 37. Defendant takes this discussion out of context to assert the radical position that "digital commodities" cannot be protected under the Lanham Act. (Def. Br. at 21.) But in *Dastar*, the issue of whether the Lanham Act protects consumers of virtual goods and services was simply not before the Court. Not surprisingly, in the almost two decades since the *Dastar* decision, no court has found that *Dastar* bars application of the Lanham Act to any digital goods or services, including digital commodities.

### d.   *The Amended Complaint Alleges Defendant's Bad Faith*

By his own admission, Defendant deliberately adopted a name incorporating the BIRKIN mark for the express purpose of capitalizing on its success and goodwill. Defendant admitted to creating the METABIRKINS collection of NFTs as an "experiment to see if [he] could create the same kind of illusion that [the BIRKIN handbag] has in real life as a digital commodity." (AC ¶ 77.) On his METABIRKINS.com website, Defendant suggested his METABIRKINS collection of NFTs were issued in collaboration with Hermès by promoting these NFTs as "a tribute to Herm[è]s' (sic) most famous handbag, the Birkin." (AC ¶¶ 94, 98, 100.) Defendant's adoption of the METABIRKINS Mark, his other Infringing METABIRKINS Uses, and related unauthorized uses of Hermès' marks, are the reason for the high prices and popularity of the METABIRKINS line of collectible digital handbags and all demonstrate bad faith. (AC ¶¶ 8, 121.)

13

e.   *The Amended Complaint Alleges Facts Supporting the Remaining Polaroid Factors*

Defendant cannot challenge the strength of the BIRKIN mark because his business model explicitly intends to exploit the BIRKIN mark's "iconic", "exclusive," and "holy grail" status. (AC ¶¶ 1, 38, 74, 76, 94, 98, 99, 102.)  The proximity of the marks is demonstrated by consumer confusion as to the relationship between the METABIRKINS collectible digital handbags and the actual BIRKIN handbags with which they are nearly indistinguishable blurry images.  (AC ¶ 78.)  Defendant's consumers are sophisticated enough to be well aware that brands have been expanding from physical into digital goods; they nonetheless are likely to be (and in fact have been) confused by Defendant's use of the BIRKIN trademark and apparent affiliation with Hermès and actual BIRKIN handbags.  (AC ¶¶ 3, 114.)  The disclaimer trumpeted in Defendant's motion was only added after receiving the cease and desist and only on his website. Regardless, "courts have held that disclaimers are not only ineffective, but actually cut against the allegedly infringing party."  *Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 448 (S.D.N.Y. 2017) ("Not Associated with" disclaimer on defendant's "Our Version Of" Coty fragrances did not prevent confusion where Coty's well-known marks were "significantly more prominent and accentuated" on the packaging).

**B.    THE AMENDED COMPLAINT STATES A CLAIM FOR TRADEMARK DILUTION**

To prevail on a claim for trademark dilution under the Lanham Act, Hermès must show (1) the BIRKIN trademark is famous; (2) the Defendant is making commercial use of the METABIRKINS trademark in commerce; (3) the Defendant's use began after the BIRKIN trademark became famous; and (4) the Defendant's use of METABIRKINS dilutes the quality of the BIRKIN Mark by diminishing the capacity of the mark to identify and distinguish goods and services.  *Savin Corp.*, 391 F.3d at 448-49.  By sufficiently pleading a claim for dilution under

14

the Lanham Act, Hermès also sufficiently pleads a claim for dilution under New York state law and the claims can be analyzed together.[3]

Whether a mark or trade name is likely to cause dilution by blurring depends on factors including:

> (i) The degree of similarity between the mark or trade name and the famous mark; (ii) the degree of inherent or acquired distinctiveness of the famous mark; (iii) the extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark; (iv) the degree of recognition of the famous mark; (v) whether the user of the mark or trade name intended to create an association with the famous mark; and (vi) any actual association between the mark or trade name and the famous mark.

15 U.S.C. § 1125(c)(2)(B)(i)-(vi).  Many of the factual allegations underlying the *Polaroid* factors also support dilution, as discussed *supra* in Section II.A.2.a-e: the trademarks are highly similar, the BIRKIN Mark is strong and distinct; Defendant acted in bad faith by adopting the METABIRKINS mark with the intent to create an association with the BIRKIN Mark; and there has been actual confusion as to the association between the METABIRKINS collectible digital handbags and the BIRKIN Mark.  These facts establish that Defendant's use of METABIRKINS is likely to cause dilution by blurring.

Defendant's use of the BIRKIN trademark is not merely "referential" as he claims and *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93 (2d Cir. 2010), provides no support for his position. In that case, eBay's use of the TIFFANY trademark was to advertise and identify the availability of authentic Tiffany products.  *Id.* at 112.  To be comparable here, eBay would need to be using

---

[3] "[T]he federal standard [for trademark dilution] . . .is more stringent than the New York standard."  *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 456 (2d Cir. 2004).  To prevail on a claim for trademark dilution under New York law, the plaintiffs must show "(1) that it possesses a strong mark—one which has a distinctive quality or has acquired a secondary meaning . . . and (2) a likelihood of dilution by either blurring or tarnishment."  *Fireman's Ass'n of State of New York v. French Am. Sch. of New York*, 839 N.Y.S.2d 238, 241-42 (2007) (internal quotation marks and citations omitted).

the TIFFANY mark to identify eBay's own product and falsely suggesting endorsement of

eBay's own product by TIFFANY.

### C.    THE AMENDED COMPLAINT STATES A CLAIM FOR CYBERSQUATTING

Defendant's use of the BIRKIN Mark in his domain name www.MetaBirkins.com to

further profit off the goodwill of the BIRKIN Mark constitutes cybersquatting under the

Anticybersquatting Consumer Protection Act ("ACPA").

> To successfully assert a claim under the ACPA, a plaintiff must demonstrate that (1) its marks were distinctive at the time the domain name was registered; (2) the infringing domain names complained of are identical to or confusingly similar to plaintiff's mark; and (3) the infringer has a bad faith intent to profit from that mark.

*Webadviso v. Bank of Am. Corp.*, 448 F.App'x 95, 97 (2d Cir. 2011).  Defendant does not

dispute that the BIRKIN Mark was distinctive at the time MetaBirkins.com was registered, nor

does he challenge that his domain name is identical or confusingly similar to the BIRKIN Mark.

Defendant's only argument is that he lacks a bad faith intent to profit because the domain name

is the "title of his art."  (Def. Br. at 24-25.)  However, any arguments regarding Defendant's

intent would involve a factual inquiry that is premature at this stage of the proceedings.

*Renovation Realty, Inc. v. Esplanade*, No. 13-CV-396-MMA(BLM), 2013 WL 12114628, at *2

(S.D. Cal. May 9, 2013) ("Whether Defendant *actually* had 'bad faith intent'–as defined in

section 1125(d)(1)(B)–is a factual matter not properly before the court [on a motion to

dismiss].").

### III.    *ROGERS* DOES NOT SHIELD DEFENDANT'S CONDUCT FROM THE REACH OF THE LANHAM ACT

Defendant's motion to dismiss rests on two propositions.  First, Defendant asserts that he

has used METABIRKINS as the "title" of artwork, and not as an identifier of the source of his

products, and his use of Hermès' mark is therefore entitled to First Amendment protection.

Second, Defendant argues that based on the analysis applicable to works of art, Hermès'

allegations are facially insufficient to state any claim.  Defendant is wrong on both counts.

### A.   *ROGERS* IS INAPPLICABLE TO DEFENDANT'S ALLEGED CONDUCT

*Rogers* concerned the title of a film that included Ginger Roger's name and held that the

use of a trademark as artistic expression is entitled to a narrower interpretation of the Lanham

Act.  *Rogers*, 875 F.2d at 998.  Contrary to Defendant's characterization, the *Rogers* analysis

does not apply whenever "a defendant's product is artistic or expressive," (Def. Br. at 4.), but

applies to protect "freedom of expression" in the context of artwork.  *Id.* at 998.  Regardless of

Defendant's product, the First Amendment does not shield non-artistic uses of a trademark from

trademark infringement claims.  First Amendment protection does not extend to the unauthorized

use of another's mark as a source identifier.  *See Yankee Publ'g Inc. v. News Am. Publ'g Inc.*,

809 F. Supp. 267, 276 (S.D.N.Y. 1992).  Even in the context of otherwise protected speech,

using a mark "to suggest the same source identification…is precisely the use that is reserved by

the Lanham Act to the owner of the mark."  *United We Stand Am., Inc. v. United We Stand, Am.*

*N.Y., Inc*., 128 F.3d 86, 93 (2d Cir. 1997) (defendant's use of slogan as means to associate itself

with plaintiff's political movement was not protected by the First Amendment, even assuming

defendant might communicate its political message more effectively by appropriating plaintiff's

mark).  *See also SMJ Group, Inc. v. 417 Lafayette Rest. LLC*, 439 F. Supp. 2d 281, 291

(S.D.N.Y. 2006) (use of plaintiff's logo as a source identifier on the cover of a pamphlet

criticizing plaintiff was not protected by the First Amendment "[i]rrespective of the content of

defendants' leaflets").

Defendant's Infringing METABIRKINS Uses constitute branding of the digital handbags

themselves and are easily disposed of as source identification that is not entitled to protection.

For example, in *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322 (S.D.N.Y. 2020), the defendant-artist attempted to sell replica statues of a sculpture originally commissioned by the plaintiff.  The court found *Rogers* to be inapplicable because the defendant used the plaintiff's trademark in trademark ways "as a URL, and to identify a website and a series of webpages that promote and advertise [the defendant-artists]."  *Id.* at 342.  *See also*, *TCPIP Holding Co*, 244 F.3d at 104 (holding that the use of another's trademark as the address or name of its website was not "adjectival use" but use "as a mark"); *Planned Parenthood Fed'n of Am., Inc. v. Bucci*, No. 97 CIV. 0629 (KMW), 1997 WL 133313, at *11 (S.D.N.Y. Mar. 24, 1997), *aff'd*, 152 F.3d 920 (2d Cir. 1998) (use of "plannedparenthood.com" as domain name was "on its face more analogous to source identification than to a communicative message" and was not a title; even treated as a title rather than source identifier, it had "no artistic implications" and was being used to attract consumers by misleading them as to website's source or content).

Nor is Defendant's METABIRKINS trademark entitled to First Amendment protection as applied to Defendant's collection of 100 digital handbags.  In essence, Defendant argues that *because* they are images, they are art.  (*See, e.g.*, Def. Br. at 8.)  But in fact, the Amended Complaint alleges, including by quoting Defendants' admission, that the METABIRKINS are simply digital knock-offs, or digital versions, of physical BIRKIN handbags.  They are being offered for sale by Defendant, and understood by consumers, as "a new line of Birkins":  "digital commodities" that bring the BIRKIN handbag "into the metaverse," which is a "new outlet" for fashion brands to sell digital assets.  (AC ¶ 4, Ex. Y.)  Defendant's alternative facts about the allegedly artistic nature of the METABIRKINS products are not properly considered on a motion to dismiss.

Defendant's arguments highlight his fundamental mischaracterization of Hermès' claims. For example, Defendant quotes a 2002 Ninth Circuit case stating: "[i]f we see a painting titled 'Campbell's Chicken Noodle Soup,' we're unlikely to believe that Campbell's has branched into the art business." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002). First, despite Defendant's talismanic invocation of Andy Warhol, even that artist has been found liable by the Second Circuit for trademark infringement. *Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 42-44 (2d Cir. 2021), *cert. granted sub nom. Andy Warhol Found., Inc. v. Goldsmith*, No. 21-869, 2022 WL 892102 (U.S. Mar. 28, 2022) (Warhol renditions of photograph of Prince were infringing). Second, this quotation actually makes Hermès' point. Here, not only are consumers who see Defendant's digital METABIRKINS highly likely to believe that Hermès has "branched into" the metaverse as many other brands have done, but Defendant adopted Hermès' mark *for the express purpose* of creating that false impression. Defendant has succeeded in creating actual confusion and reaped the financial benefit of selling what consumers mistakenly viewed as a very limited line of digital BIRKIN handbags offered by or in collaboration with Hermès.

Similarly, Defendant argues his objection to "counterfeit" METABIRKINS is irrelevant because "Ginger Rogers wouldn't have had a better claim against the producers of *Ginger and Fred* if they had objected to infringing copies of the film." (Def. Br. at 12 n. 7.) But the Amended Complaint does not allege that Defendant is complaining about "infringing copies" of any of the 100 specific NFTs he created and branded as METABIRKINS. It alleges that Defendant's "infringing use of the METABIRKINS trademark has spurred others to create hundreds more NFTs claiming to be NFTs from the METABIRKINS collection or offshoots of the METABIRKINS collection of NFTs, all of which infringe on and dilute the BIRKIN Mark."

19

(AC ¶ 12.)  The producers of *Ginger and Fred* did not assert trademark rights in Ginger Rogers'

name or likeness, or complain that other films using the name *Ginger* were "counterfeits" or

"fakes."

None of Defendant's cases support his position that *Rogers* immunizes digital images

from Lanham Act claims.  First, Defendant cites to several cases applying a *Rogers* analysis

where defendant used a trademark for purposes of parody.  *See Mattel, Inc. v. Walking Mountain

Prods.*, 353 F.3d 792, 805 (9th Cir. 2003) (photos in "Chain Store Barbie," featuring nude Barbie

dolls in absurd and often sexualized positions to criticize the doll and its symbolism, was a

category of artistic photography that Mattel was "highly unlikely" to license); *Cliffs Notes, Inc.

v. Bantam Doubleday Dell Publ'g Grp.*, 886 F.2d 490, 496  (2d Cir. 1989) (SPY NOTES was

protected parody of CLIFFS NOTES title where, among other things, content of books was

different and SPY NOTES had "A Satire" prominently displayed at least five times on the front

cover and four times on the back cover); *VIP Prods. LLC v. Jack Daniel's Props., Inc.*, 953 F.3d

1170, 1172, 1176 (9th Cir. 2020) (dog toys called "Bad Spaniels Silly Squeakers," shaped like

Jack Daniel's whisky bottle with image of a spaniel over the words Bad Spaniel and replacing

whiskey bottle language with "the Old No. 2, on your Tennessee Carpet" conveyed humorous

message); *MCA Records*, 296 at 901 (applying *Rogers* to song that used trademark in its name

and lyrics and not as indicators of source).  Defendant makes no parodic use of the BIRKIN

trademark and other Hermès' trademarks.  Instead, by his own admission, he uses these

trademarks as a "tribute" to Hermès so as to indicate his use is authorized and thereby he can sell

digital handbags at a high price.  Although Defendant reframed his offering as a critique after

receiving a cease and desist letter, there is neither humor nor critique of the BIRKIN in the

METABIRKINS NFTs.

Second, Defendant cites to several cases applying *Rogers* to incidental use of a trademark. *See Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1192, 1198 (9th Cir. 2017) (television series set in New York used "Empire" in non-source indicating ways by evoking both the Empire State and the media empire); *Dr. Seuss Enters., L.P. v. Comicmix LLC,* 983 F.3d 443, 462-63 (9th Cir. 2020) (applying *Rogers* to mashup book blending multiple fictional worlds and finding "expressive content . . . beyond the mark itself"); *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 920-21, 936-38 (6th Cir. 2003) (applying *Rogers* to painting in which registered mark appears neither on the work itself nor the title and artist's signature appeared in corner of work); *Univ. of Ala. Bd. of Tr. v. New Life Art, Inc.*, 683 F.3d 1266, 1278-79 (11th Cir. 2012) (applying *Rogers* to paintings and their reproductions where trademarks were "mere inclusion[s]" in a larger expressive work). Here, the Defendant has not merely included BIRKIN in the METABIRKINS NFTs. Rather, the trademark is used in its entirety in the title of the NFTs and the subject is exclusively the BIRKIN handbag.

Finally, Defendant relies on *Brown v. Electronic Arts, Inc.* which does not even address trademark infringement claims but rather a false endorsement claim. 724 F.3d 1235 (9th Cir. 2013).

Because the Amended Complaint amply pleads Defendant is the owner of a METABIRKINS-branded business and his Infringing METABIRKINS Uses are as an indicator of source, *Rogers* is facially inapplicable. Even if Defendant's motion did raise a question whether his speech was expressive or commercial, such a question cannot be resolved on a motion to dismiss. *See, e.g., World Championship Wrestling v. Titan Sports, Inc.*, 46 F. Supp. 2d 118, 123 (D. Conn. 1999) (because professional wrestling "seems to be hybrid of expressive

performance and advertising," the "balancing test" called for under the caselaw could not be disposed of at motion to dismiss stage).[4]

## B. *ROGERS* WOULD NOT INSULATE DEFENDANT FROM LIABILITY IF IT WERE APPLICABLE

*Rogers* and its progeny make clear that "First Amendment concerns do not insulate titles of artistic works from all Lanham Act claims." *Rogers*, 875 F.2d at 998; *see also Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 261 (9th Cir. 2018) (reasoning that *Rogers* is "not an automatic safe harbor for any minimally expressive work that copies someone else's mark."). "Consumers of artistic works thus have a dual interest: They have an interest in not being misled and they also have an interest in enjoying the results of the author's freedom of expression." *Rogers*, 875 F.2d at 998. *Rogers* specifically prohibits use of another's trademark in the title of artistic or expressive works if (1) the trademark has "no artistic relevance" to the accused works or (2) if there is artistic relevance, then use of the marks in the alleged works "explicitly misleads." *Id.* at 999-1000.

### 1. Defendant's Efforts to Escape the *Polaroid* Factors Are Fruitless

To determine whether the use of another's trademark in the title of an expressive work is explicitly misleading, courts in the Second Circuit apply the "venerable *Polaroid* factors". *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1379 (2d Cir. 1993) (citing *Cliffs Notes*, 886 at 495 n. 3); *see also Kensington Publ'g. Corp. v. Gutierrez*, No. 05 Civ. 10529(LTS)(AJP),

---

[4] *See also*, *A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*, 364 F. Supp. 3d 291, 322 (S.D.N.Y. 2019) (Lanham Act claim against creator of artwork survived summary judgment where defendant "trick[ed] licensees into a belief that its products are officially endorsed"); *Harley Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 812-14 (2d Cir. 1999) (affirming injunction of defendant's use of plaintiff's logo over parody defense; "We … have not hesitated to prevent a manufacturer from using an alleged parody of a competitor's mark to sell a competing product")(internal citations omitted); *Burck v. Mars, Inc*, 571 F. Supp. 2d 446, 455-56 (S.D.N.Y. 2008) (motion to dismiss Naked Cowboy performer's Lanham Act claim for false endorsement denied over parody, fair use, and First Amendment affirmative defenses); *Kensington Publ'g. Corp v. Gutierrez*, No. 05 Civ.10529 (LTS)(AJP), 2009 WL 4277080, at *6 (S.D.N.Y. Nov. 10, 2009) (Plaintiff's evidence relevant to similarity, proximity and bad faith could support fact finder's determination in plaintiff's favor).

2009 WL 4277080, at *6 (S.D.N.Y. Nov. 10, 2009) (noting that the *Polaroid* likelihood of confusion factors inform the explicitly misleading determination).

Defendant challenges the applicability of the *Polaroid* factors here, arguing that the analysis described in *Twin Peaks* is limited to "title-versus-title" conflicts, which are exempted from the *Rogers* rule.  (Def. Br. at 17.)  There is no basis for Defendant's distinction between cases governed by *Rogers* and cases applying the *Polaroid* factors, given that *Twin Peaks* itself (authored by the same Judge that authored *Rogers*) stresses that the analysis requires "careful application of the *Polaroid* factors, assessed in light of *Rogers*."  *Twin Peaks*, 996 F.2d at 1379. In any event, Defendant's position has not been accepted by any court in this Circuit, all of which consider the *Polaroid* factors when analyzing the explicitly misleading prong of *Rogers*.[5]

Presumably recognizing the hopelessness of his arguments under the applicable *Polaroid* factors, particularly likelihood of confusion and similarity of the marks, Defendant turns to the Ninth Circuit.  First, he cites a Ninth Circuit case for the proposition that evidence relating to confusion, or the "impact of the use" of a trademark, is not "relevant" to whether its use is explicitly misleading under the *Rogers* test.  (Def. Br. at 17, citing *Brown*, 724 F3d at 1246-46.) Defendant mines other Ninth Circuit cases to support his argument that "explicit misleadingness cannot be established by use of the mark alone," and accordingly Defendant's titling his work METABIRKINS cannot, in itself, be explicitly misleading.  (Def. Br. at 14.)  It is therefore worth

---

[5] *See, e.g., Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366 (2d Cir. 1993) (remanding case to District Court to apply the *Polaroid* factors to determine whether unauthorized trademark use was explicitly misleading under *Rogers*); *see also Gayle v. Allee*, No. 18 CIV. 3774 (JPC), 2021 WL 120063, at *5, *7 (S.D.N.Y. Jan. 13, 2021) (applying the *Polaroid* factors to determine whether unauthorized trademark use was explicitly misleading under *Rogers* and finding that the unauthorized trademark use was too small in the corner of the accused work to cause consumer confusion); *AM Gen. LLC v. Activision Blizzard, Inc.*, 450 F. Supp. 3d 467, 480-84 (S.D.N.Y. 2020) (applying the *Polaroid* factors to use of another's trademark in a video game and finding that the depiction of military vehicles in a video game with a title devoid of use of another's trademark was not likely to explicitly mislead); *Medina v. Dash Films, Inc.*, No. 15-CV-2551 (KBF), 2016 WL 3906714, at *4 (S.D.N.Y. July 14, 2016) (stating that the Second Circuit has directed district courts to determine whether a title is explicitly misleading by application of the venerable *Polaroid* factors).

noting that Defendant's conduct would enjoy no more protection in the Ninth Circuit than it does here.

Although citing many Ninth Circuit cases, Defendant fails to cite *Gordon*, which involved the owner of trademark rights in various "Honey Badger" catchphrases for goods including greeting cards.  909 F.3d at 260.  When defendants designed and produced greeting cards using similar "Honey Badger" catchphrases on and inside the cards*,* the Ninth Circuit observed that "such identical usage could reflect the type of 'explicitly misleading description' of source that *Rogers* condemns."  *Id.* at 270 (quoting *Rogers*, 875 F.2d at 999-1000).  As the court explained, the use of another's mark "as the centerpiece of an expressive work itself, unadorned with any artistic contribution by the junior user, may reflect nothing more than an effort to 'induce the sale of goods or services' by confusion or 'lessen the distinctiveness and thus the commercial value of' a competitor's mark."  *Id.* at 271 (quoting *S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 539 (1987)).  The court continued to clarify that a defendant does not need to make an "affirmative statement of the plaintiff's sponsorship or endorsement."  *See Id.* at 269.  And while it repeated its statement that use of a trademark alone is not sufficient to be explicitly misleading, the Ninth Circuit clarified that "this reasoning does not extend to instances in which consumers *would* expect the use of a mark alone to identify the source."  *Id.* at 270*. See also Simon & Schuster, Inc. v. Dove Audio, Inc.*, 970 F. Supp. 279, 296 (S.D.N.Y. 1997) (defendant's use of plaintiff's trademark for a competing literary work was likely to mislead or confuse consumers as to the source of the defendant's work).  Regardless of venue, use of a trademark in an artistic work is explicitly misleading where, as here, it is used by the junior user as the unadorned centerpiece of the "commodity" and in the same way that consumers would expect it to be used by the senior user.

    **2.**    <u>**The Amended Complaint Alleges Explicitly Misleading Use of the Mark**</u>

It is difficult to imagine a clearer application of the *Polaroid* factors to demonstrate misleading use of a trademark than that existing here.  Defendant adopted Hermès' iconic BIRKIN trademark, slapped on the generic prefix "META," and used it to sell 100 collectible digital handbags (identified by numbers 0 through 99) that are digital copies of physical BIRKIN bags.  Defendant's conduct is indistinguishable from the examples of explicitly misleading uses such as "Nimmer on Copyright" or "Jane Fonda's Workout Book" offered by the *Rogers* court. *See Rogers*, 875 F.2d at 999.  Defendant acted in bad faith: he openly admitted his goal was to capitalize on the "iconic" BIRKIN mark and he succeeded in explicitly misleading the public and the press into believing his METABIRKINS were associated with Hermès.  The evidence that Defendant's Infringing METABIRKINS Uses actually mislead market participants is incontrovertible:  *Elle* magazine, *L'Officiel*, the *New York Post*, industry conference presenters, and consumers all expressed actual confusion that Defendant's products were authorized by or affiliated with Hermès, and Defendant used this misperception to sell his collectible digital handbags for prices comparable to real world BIRKIN handbags.

This conduct more than establishes a claim that Defendant's use of Hermès' trademarks and trade dress is explicitly misleading, and that in this case the public's interest in not being misled far outweighs its interest in enjoying Defendant's free speech.  *Rogers*, 875 F.2d at 999.

<u>**CONCLUSION**</u>

For the foregoing reasons, Hermès respectfully requests that Defendant's motion to dismiss be denied in its entirety.

Dated:  April 4, 2022
          New York, New York

Of Counsel:

**BAKER & HOSTETLER LLP**
Deborah Wilcox, Esq. (*pro hac vice*)
Key Tower
127 Public Square
Suite 2000
Cleveland, OH 44114
Telephone: 216.621.0200

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:   /s/ *Gerald J. Ferguson*
        Gerald J. Ferguson, Esq.
        Oren J. Warshavsky, Esq.
        Tracy L. Cole, Esq.
        Kevin M. Wallace, Esq.
        Megan A. Corrigan, Esq.
        45 Rockefeller Plaza
        14th Floor
        New York, NY  10111
        Telephone:   212.589.4200
        Facsimile:    212.589.4201

        *Attorneys for Plaintiffs*
        *Hermès International and*
        *Hermès of Paris, Inc.*