# Lex Lumina PLLC

Rhett O. Millsaps II  |  rhett@lex-lumina.com  |  646.535.1137

April 4, 2022

VIA ECF

The Honorable Gabriel W. Gorenstein
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

MEMORANDUM ENDORSED

    Re:    <u>Hermès International et al. v. Rothschild</u>, 22-cv-00384-AJN-GWG

Dear Judge Gorenstein,

    We represent Defendant Mason Rothschild in the above-referenced matter. Pursuant to Your Honor's Individual Practices and Local Civil Rule 37.2, we write to request a pre-motion conference to discuss Mr. Rothschild's proposed motion to stay discovery pending resolution of Mr. Rothschild's motion to dismiss the Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

    The parties have met and conferred about this issue by both telephone and email. We first discussed this issue with Plaintiffs' counsel—Gerald Ferguson, Deborah Wilcox, Oren Warshavsky, and Kevin Wallace of BakerHostetler—when the parties conducted their Rule 26(f) conference by telephone at noon on March 21, 2022. Following the conference, which lasted approximately half an hour, Plaintiffs' counsel informed us by email on March 23rd that Plaintiffs would not join Mr. Rothschild's request for a stay of discovery pending his motion to dismiss and would oppose it. The parties subsequently have been negotiating a Proposed Scheduling Order that notes that Mr. Rothschild intends to file a motion to stay discovery and that Plaintiffs will oppose the motion.

**Standard Governing a Motion to Stay Discovery**

    The Court court has discretion to stay discovery "for good cause shown." Fed. R. Civ. P. 26(c). "Good cause may be shown where a party has filed a dispositive motion, the stay is for a short period of time, and the opposing party will not be prejudiced by the stay." *Spencer Trask Software and Info. Servs. LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002) (citing *Anti–Monopoly, Inc. v. Hasbro, Inc.,* No. 94 Civ. 2120, 1996 WL 101277, at *2 (S.D.N.Y. March 7, 1996) (collecting cases)). In deciding whether to stay discovery, the Court should consider "the strength of the dispositive motion that is the basis for the discovery stay application" as well as "the breadth of discovery sought and the burden of responding to it." *Id*.

    These considerations favor staying discovery in this matter. First, Mr. Rothchild's motion to dismiss is supported by two separate, independent, clear, and controlling lines of

precedent that preclude all of Plaintiffs' claims as a matter of law. See *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), and *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). Second, the burden of responding to discovery must be assessed in relation to the particulars of this case—in which a multi-billion-dollar luxury goods giant is attempting to strong-arm a young and emerging artist with trademark claims that are exceedingly weak on the merits.

Put in the most practical terms, it is the expense to Mr. Rothschild of defending this lawsuit that is the principal weapon that Plaintiffs have to wield. Staying discovery in this case is thus necessary to prevent Plaintiffs from leveraging the expense of litigation to chill Mr. Rothschild's First Amendment rights and to prevail on otherwise meritless claims.

Plaintiffs' lawsuit strikes directly at speech protected by the First Amendment and raises profound questions of artistic freedom. A recent article in the magazine *Wired* makes the stakes of this lawsuit very clear:

> If the court were to determine that the brand's monopoly extends to images like Rothschild's, it would be a major loss for artists and all who value freedom of expression, a signal that the metaverse is likely to be treated less as a new frontier for human creativity and more as an annex-in-waiting for established business concerns.[1]

Indeed, Plaintiffs already have taken steps to suppress Mr. Rothschild's art. They have leveraged their meritless trademark claims against certain websites that previously hosted auctions of Mr. Rothchild's MetaBirkins artworks. Those sites, unwilling to put themselves to the expense of resisting Plaintiffs' claims, have removed MetaBirkins auctions and blocked new auctions. Plaintiffs have thus for the moment achieved with threats what they should not achieve through law. For this reason, the speedy, inexpensive resolution of this litigation is not only in Mr. Rothschild's interest; it also is in the public's interest.

### Rothschild's Motion to Dismiss is Strong Under Controlling Precedent

Controlling precedent in this Circuit establishes that Mr. Rothschild's artistic representations of Plaintiffs' "Birkin" handbags are protected by the First Amendment and that Plaintiffs' Amended Complaint therefore fails to state a claim under federal or state trademark law, the federal anti-cybersquatting statute, or state law misappropriation or unfair competition law. See *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). See also *Cliffs Notes v. Bantam Doubleday Dell Publ. Group*, 886 F.2d 490, 495 (2d Cir. 1989) (reversing as a matter of law district court injunction against "Spy Notes" parody of "Cliffs Notes"); *AM General LLC v. Activision Blizzard, Inc.*, 450 F. Supp. 3d 467, 477 (S.D.N.Y. 2020) (applying *Rogers* to appearance of distinctive vehicle in videogame and granting summary judgment to defendant); *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't*, 868 F. Supp. 2d 172 (S.D.N.Y. 2012) (applying *Rogers* to use of fake Louis Vuitton bag in a movie, and to character's reference to that bag as a "Lewis Vuitton," and granting defendant's motion to dismiss). See generally Memorandum of Law in Support of Defendant Mason Rothschild's Motion to Dismiss the Amended Complaint (Dkt. No. 27) ("Def. Mem.").

---

[1] Jessica Rizzo, "The Future of NFTs Lies With the Courts," *Wired*, Apr. 3, 2022, https://www.wired.com/story/nfts-cryptocurrency-law-copyright/ (visited April 4, 2022).

Plaintiffs principally allege that Mr. Rothschild infringed Plaintiffs' trademark rights by creating a series of digital artworks that depict and comment on Plaintiffs' "Birkin" handbags. Each of the 100 works in Mr. Rothschild's "MetaBirkins" series is a unique, fanciful interpretation of a Birkin bag. The MetaBirkins are depicted as fur covered. This aspect of Mr. Rothschild's art comments on the animal cruelty inherent in Plaintiffs' manufacture of its ultra-expensive leather handbags.



Under *Rogers*, Mr. Rothschild has the right to make and sell art that depicts branded products, and he has the right to identify his depictions of Birkin bags as "MetaBirkins." In *Rogers*, the Second Circuit rejected a claim by legendary actress and dancer Ginger Rogers that the use of her name in the title of the motion picture Ginger and Fred infringed her rights in her name. 875 F.2d at 994. The Second Circuit held that where the defendant's product is artistic or expressive, the Lanham Act must be interpreted "narrowly in order to avoid suppressing protected speech under the First Amendment." *Id.* at 998.

While *Rogers* focused specifically on the use of a celebrity's name in the title of a film, the Second Circuit has since held that *Rogers* applies not only to titles but "is generally applicable to Lanham Act claims against works of artistic expression." *Cliffs Notes*, 886 F.2d at 495. *See also AM General*, 450 F. Supp. 3d at 477; *Louis Vuitton*, 868 F. Supp. 2d at 172.

The *Rogers* rule is clear: use of a trademark in noncommercial speech is not actionable unless it "has *no artistic relevance to the underlying work whatsoever*, or if it has some artistic relevance, unless [the use of the trademark] *explicitly misleads* as to the source or content of the work." 875 F.2d at 998 (emphasis added). As courts in this Circuit have repeatedly noted, the requirement of minimal artistic relevance "is not unduly rigorous out of the understanding that the 'overextension of Lanham Act restrictions … might intrude on First Amendment values.'" *AM General*, 450 F. Supp. 3d at 477 (quoting *Rogers*, 875 F.2d at 998); see also *Rogers*, 875 F.2d at 999 (describing the "appropriately low threshold of minimal artistic relevance"); *Louis Vuitton*, 868 F. Supp. 2d at 178 (describing the artistic relevance threshold as "purposely low").

There can be no doubt that Mr. Rothschild's depictions of Birkin bags in his artwork, and the use of the "MetaBirkins" name to explain what he has depicted, easily exceed this low threshold of artistic relevance. Indeed, Plaintiffs concede the point, admitting in their Amended Complaint that "a digital image connected to an NFT may reflect some artistic creativity…" (Dkt. No. 24 ¶ 9). And as controlling case law in this Circuit makes clear, the

artist's choice of subject matter determines artistic relevance. In *Rogers*, the Second Circuit held the title "Ginger and Fred" artistically relevant because the central characters in the film were nicknamed "Ginger" and "Fred." 875 F.2d at 1001. Here, Mr. Rothschild's art depicts Birkin handbags, and the name of the artwork, "MetaBirkins," both refers to the context in which Rothschild makes the art available (*i.e.*, the online, virtual environment popularly dubbed the "Metaverse") and alludes to his artwork's "meta" commentary on the Birkin bag and the fashion industry more generally.

It is equally clear that Mr. Rothschild's use of the term "MetaBirkins" to title his artworks is not "explicitly misleading." In *Rogers*, the Second Circuit gave examples that illustrate the narrowness of the concept of "explicitly misleading." Explicitly misleading titles would be "Nimmer on Copyright" for a treatise that was not authored by Nimmer, or "Jane Fonda's Workout Book" for a book Jane Fonda had nothing to do with. *Id*. Likewise, titles containing references that falsely and explicitly claimed endorsement—*e.g.*,"an authorized biography"—might be actionable. *Id*. at 999. The *Rogers* court contrasted those explicitly misleading uses with the "many titles" that "include a well-known name without any overt indication of authorship or endorsement—for example, the hit song 'Bette Davis Eyes,' and the film 'Come back to the Five and Dime, Jimmy Dean, Jimmy Dean.'" *Id*. "To some people, th[o]se titles might implicitly suggest that the named celebrity had endorsed the work or had a role in producing it." *Id.* at 999-1000. But "the slight risk that such use of a celebrity's name might implicitly suggest endorsement or sponsorship to some people is outweighed by the danger of restricting artistic expression, and the Lanham Act is not applicable." *Id*. at 1000.

These examples make clear that explicit misleadingness cannot be established by use of the mark alone. Indeed, "if the use of a mark alone were sufficient 'it would render *Rogers* a nullity.'" *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1245 (9th Cir. 2013). For these reasons, Mr. Rothschild's titling of his artwork as "MetaBirkins" cannot, in itself, be "explicitly misleading," even if some people might take the name to implicitly suggest that Plaintiffs had "endorsed the work or had a role in producing it." *Rogers*, 875 F.2d at 999-1000. *Rogers* specifically held that, where there is a "mixture of meanings, with the possibly misleading meaning not the result of explicit misstatement," there is no claim. *Id.* at 1001.

Plaintiffs' real objection is to Mr. Rothschild's art project; the name "MetaBirkins" itself makes no explicit claims about the source of the art. Any inference a consumer might draw about the relationship between the "MetaBirkins" artworks and Plainitffs is not due to anything "explicitly misleading" in Mr. Rothschild's uses of the "MetaBirkins" title, and, as a consequence, Mr. Rothschild's First Amendment speech rights must take precedence over Plaintiffs' trademark complaints.

And Mr. Rothschild's art does not lose its First Amendment protection just because he sells it: almost every case in which courts have applied *Rogers*—including *Rogers* itself—has involved speech that was sold. Nor does it matter that Mr. Rothschild sells each digital artwork with a non-fungible token or "NFT," the technological means by which Mr. Rothschild authenticates his artworks: Mr. Rothschild's First Amendment rights do not depend on *how* he sells his art any more than they depend on *whether* he sells it.

The bottom line here is that Plaintiffs want to stop Mr. Rothschild from creating fanciful pictures that comment on their handbags, from calling those artworks "MetaBirkins," and from promoting those artworks. But trademark law does not give Plaintiffs control over

Mr. Rothschild's art.[2] The First Amendment guarantees Rothschild's right to make and sell artworks depicting and commenting on Hermès' Birkin handbags in just the same way that the First Amendment guaranteed Andy Warhol's right to make the 32 paintings in his 1962 "Campbell's Soup Cans" series.



Finally, even if *Rogers* were not directly on point and dispositive in this case—which it is—the Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp*., 539 U.S. 23 (2003), would be fatal to Plaintiffs' claims here. Plaintiffs' fundamental complaint is that consumers will believe that Mr. Rothschild's MetaBirkins artworks are sponsored by or affiliated with Plaintiffs. Specifically, Plaintiffs complain that, because Mr. Rothchild depicts Birkin bags and calls his art MetaBirkins, consumers will believe that Plaintiffs are the origin of the artwork, or that Plaintiffs have some relationship with the art project.

That claim is barred by *Dastar*, which unambiguously holds that only mis-representations of the origin of physical goods are actionable under the Lanham Act. 539 U.S. at 37. Other sorts of misrepresentations, including but not limited to misrepresentations of the origin of creative content, are not actionable. *See id*. (holding that "origin of goods" as used in the Lanham Act refers only to "the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods"). The MetaBirkins artworks are communicative goods that *Dastar* places outside the scope of the Lanham Act.

***If Discovery is Not Stayed, Plaintiffs Will Use the Expense of Litigation as Leverage to Assert Rights the Law Does Not Give Them***

Absent a stay from this Court, Plaintiffs are certain to seek discovery aimed at imposing costs on Mr. Rothschild that he is ill-equipped to bear. Given the strength of Mr. Rothschild's motion to dismiss, such discovery is likely to prove unnecessary. And given the substantial First Amendment issues in this case, the burden and expense of discovery should not be imposed until after Mr. Rothschild's motion to dismiss has been decided.

Plaintiffs have indicated that they will serve broad requests for documents and also

---

[2] Plaintiffs' non-trademark claims fail for the same basic reason—they cannot override Rothschild's First Amendment right to free artistic expression. *See* Def. Mem. at 24-25.

for deposition testimony from at least Mr. Rothschild, two of his artistic collaborators on projects other than MetaBirkins, *and Mr. Rothschild's fiancée*. Plaintiffs have also stated that they intend to retain expert witnesses on at least four different subjects. We understand by this representation that Plaintiffs intend to retain several expert witnesses. Given the pace of the discovery process in this case, to defend himself adequately against Plaintiffs' baseless claims Mr. Rothschild will have to hire multiple experts essentially immediately—an enormous expense that he cannot realistically bear and that only a stay of discovery can forestall.

Plaintiffs were unprepared in the parties' March 21 meet and confer to enumerate every category of documents they plan to request, but there is every reason to believe that the requests will be burdensome and that responding to them will be expensive. This is foreshadowed by Plaintiffs' insistence that the parties now negotiate and submit an order governing electronically stored information (ESI), which almost certainly would impose the additional substantial expense on Mr. Rothschild of hiring an ESI vendor for this case. Given the substantive weakness of Plaintiffs' claims, Mr. Rothschild has every reason to believe that Plaintiffs' requests will be *designed* to be burdensome and to chill Mr. Rothschild's First Amendment rights by forcing him to discontinue the litigation and capitulate to Plaintiffs' improper demands.

### *A Short Delay in Discovery Will Not Prejudice Plaintiffs*

Finally, Mr. Rothschild's requested time-limited stay of discovery will not prejudice Plaintiffs. "A stay pending determination of a dispositive motion that potentially eliminates the entire action will neither substantially nor unduly delay the action, should it continue." *Spencer Trask Software*, 206 F.R.D. at 368; *see also Boelter v. Hearst Commc'ns, Inc.*, No. 15 Civ. 03934 (AT), 2016 WL 361554, at *5 (S.D.N.Y. Jan. 28, 2016) (granting stay pending resolution of motion to dismiss); *In re Term Commodities Cotton Futures Litig.*, No. 12 Civ. 5126 (ALC) (KNF), 2013 WL 1907738, at *7 (S.D.N.Y. May 8, 2013) (granting stay pending resolution of motion to dismiss where "plaintiffs failed to demonstrate that a short delay in discovery will impose any unfair prejudice on them"). Indeed, a stay at this juncture would substantially limit the amount of Mr. Rothschild's attorneys' fees and costs, which Plaintiffs might have to pay at the end of this case.

As is clear from controlling authorities such as *Rogers* and *Dastar*, resolution of this case should occur at the motion to dismiss stage. Given the strength of Mr. Rothschild's motion to dismiss, the burden of discovery and the chilling effect that such burden would impose on Mr. Rothschild's exercise of his First Amendment rights, and the lack of prejudice to Plaintiffs, Mr. Rothschild respectfully requests a pre-motion conference regarding his proposed motion for a stay of discovery pending resolution of his motion to dismiss.

Sincerely,

Rhett O. Millsaps II

cc:  All Counsel of Record (via ECF)

The pre-motion conference requirement is waived.  Briefing shall be in accordance with paragraph 2.B of the Court's Individual Practices.  Defendant may elect to rely on this letter in lieu of a notice of motion and memorandum of law by filing a letter on ECF so stating and providing in the letter the briefing schedule that would otherwise have been contained in the notice of motion as required by paragraph 2.B.

So Ordered.

GABRIEL W. GORENSTEIN
United States Magistrate Judge
April 5, 2022