**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HERMÈS INTERNATIONAL and HERMÈS OF PARIS, INC., | No. 22-cv-00384-AJN-GWG |
| Plaintiffs, | ECF Case |
| v. | |
| MASON ROTHSCHILD, | |
| Defendant. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT**
**MASON ROTHSCHILD'S MOTION TO DISMISS THE AMENDED COMPLAINT**

April 11, 2022

Rebecca Tushnet
Mark P. McKenna (*pro hac vice*)
Rhett O. Millsaps II
Christopher J. Sprigman
LEX LUMINA PLLC
745 Fifth Avenue, Suite 500
New York, NY  10151
(646) 898-2055
rhett@lex-lumina.com

*Attorneys for Defendant Mason Rothschild*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES…………………………………………….................... ii

INTRODUCTION……………..………………………………………………... 1

ARGUMENT……………………………………………………………..…….. 1

    I.      HERMÈS' DOES NOT AND CANNOT PLAUSIBLY DENY
            THAT ROTHSCHILD'S *METABIRKINS* ARE ARTWORKS…………..… 1

    II.     ROTHSCHILD'S *METABIRKINS* ARTWORKS ARE PROTECTED
            UNDER THIS CIRCUIT'S HOLIDNG IN *ROGERS*……………………. 3

         A.     *Rogers* Applies to Rothschild's *MetaBirkins* images, the
                *MetaBirkins* name, and Promotional References to *MetaBirkins*….. 3

         B.     Rothschild's Uses are Artistically Relevant and Not Explicitly
                Misleading…………………………….............................................. 5

         C.     The *Polaroid* Likelihood of Confusion Factors Are Irrelevant
                Where *Rogers* Applies………….................................................. 8

    III.    *DASTAR* INDEPENDENTLY BARS HERMÈS' TRADEMARK
            CLAIMS……….…………………………………………………….. 9

CONCLUSION…………………………………………………………………… 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AM General LLC v. Activision Blizzard, Inc.*,
    450 F. Supp. 3d 467 (S.D.N.Y. 2020)……………………………………………..3, 9

*Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*,
    11 F.4th 26 (2d Cir. 2021), *cert. granted sub nom. Andy Warhol Found., Inc.*
    *v. Goldsmith*, No. 21-869, 2022 WL 892102 (U.S. Mar. 28, 2022)………………..…5

*Brown v. Elec. Arts, Inc.*,
    724 F.3d 1235 (9th Cir. 2013)……………………………….……………………..…6

*Cliffs Notes v. Bantam Doubleday Dell Publ. Group*,
    886 F.2d 490 (2d Cir. 1989)……………………………………..…………………3, 6

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003)………………………………………………..…………9, 10

*Dr. Seuss Enters., L.P. v. Comicmix LLC*,
    983 F.3d 443 (9th Cir. 2020)………………………………………………...7

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*,
    547 F.3d 1095 (9th Cir. 2008)………………………………………….……6

*Gordon v. Drape*,
    909 F.3d 257 (9th Cir. 2018)……………………………………………..…7

*Mattel, Inc. v. MCA Records, Inc.*,
    296 F.3d 894 (9th Cir. 2002)……………………………………………….6

*Phoenix Entm't Partners, LLC v. J-V Successors, Inc.*,
    305 F. Supp. 3d 540 (S.D.N.Y. 2018)…………..……………………………10

*Phoenix Entm't Partners, LLC v. Rumsey*,
    829 F.3d 817 (7th Cir. 2016)………………………………………………10

*Pulse Entm't Corp. v. David*,
    No. CV 14-4732 (C.D. Cal. Sept. 17, 2014) (Dkt. No. 19)………………………10

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989)…………………………………………………*passim*

*Simon & Schuster, Inc. v. Dove Audio, Inc.*,
      970 F. Supp. 279 (S.D.N.Y. 1997)..……………………………………………………..6

*State St. Glob. Advisors Tr. Co. v. Visbal*,
      431 F. Supp. 3d 322 (S.D.N.Y. 2020)…………………………………………...……4, 5

*Twentieth Century Fox Television v. Empire Dist. Inc.*,
      875 F.3d 1192 (9th Cir. 2017)……………………………………………….……..3, 7

*Twin Peaks Productions, Inc. v. Publ'ns Intern., Ltd.*,
      996 F.2d 1366 (2d Cir. 1993)……………………………………………...………8

*Yankee Publ'g Inc. v. News America Publ'g Inc.*,
      809 F. Supp. 267 (S.D.N.Y. 1992)……………………………………………6, 7

**Other Authorities**

HARRY TORCZYNER, MAGRITTE: IDEAS AND IMAGES (1977)…………………………………..1

## INTRODUCTION



René Magritte, *La Trahison des Images* ("*The Treachery of Images*"), 1929

At bottom, Hermès' opposition to Rothschild's Motion to Dismiss boils down to a single implausible assertion: that Rothschild's *MetaBirkins* are not art, but "commodities." That is, in Hermès' words: "[T]he Amended Complaint alleges … that the METABIRKINS are simply digital knock-offs, or digital versions, of physical BIRKIN handbags." Memorandum of Law in Opposition to Mason Rothschild's Motion to Dismiss ("Opp.") at 18.

But just as an image of a pipe is not a pipe, digital images of handbags are not handbags. Try as it might, Hermès cannot escape *Rogers* and *Dastar* with semantic sleight of hand. The Amended Complaint ("Complaint" or "Compl.") should be dismissed.

## ARGUMENT

### I.    HERMÈS DOES NOT AND CANNOT PLAUSIBLY DENY THAT ROTHSCHILD'S *METABIRKINS* ARE ARTWORKS

Like Magritte's treacherous image, the *MetaBirkins* are representation.[1] They are artworks depicting fanciful, fur-covered Birkin handbags that exist only in static digital images that are the product of Rothschild's imagination. And indeed, at many points in its Complaint

---

[1] Magritte's elaboration on his masterpiece was prescient: "The famous pipe. How people reproached me for it! And yet, could you stuff my pipe? No, it's just a representation, is it not? So if I had written on my picture 'This is a pipe', I'd have been lying!" HARRY TORCZYNER, MAGRITTE: IDEAS AND IMAGES 71 (1977).

Hermès cannot help but admit that Rothschild's *MetaBirkins* are in fact artworks. *See, e.g.,* Compl. at ¶ 9 (characterizing *MetaBirkin* as "a digital image connected to an NFT" and admitting that the digital image "may reflect some artistic creativity"); *id.* at ¶ 10 (alleging (incorrectly) that Rothschild does not title his individual artworks *MetaBirkins* but admitting that Rothschild uses the name to title his collection of artworks depicting Birkin bags); *id.* at ¶ 14 (admitting that Rothchild's NFTs "point to images that reflect the distinctive design of the BIRKIN handbag"); *id.* at ¶ 71 (admitting that Rothschild's *Baby Birkin* consisted of "an animation of Hermès' BIRKIN handbag … featur[ing] a 40-week-old fetus inside a transparent version of a Birkin bag"); *see id.* (attaching screenshot of the *Baby Birkin* artwork); *id.* at ¶ 78 (referring to and misdescribing the "images pointed to by each NFT in the METABIRKINS collection"); *id.* (admitting that "Defendant has designed" the *MetaBirkins* "images").

Hermès is playing a semantic game that is precluded by *Rogers*, which does not distinguish between "art" and "commodities" (which DVDs of *Ginger and Fred* surely are) but between art that is itself the product being sold and commercial speech that is used to sell a separate product. There is no such thing as a "digital knock-off of a handbag," because a "knock-off" handbag is, by definition, a handbag. A painting of a pipe isn't a pipe, Andy Warhol's paintings of Campbell's soup cans aren't soup cans, and Rothschild's *MetaBirkins* images aren't handbags. Just like Magritte could not stuff his painting of a pipe, you can't put your lip balm in a *MetaBirkin*. Rothschild's digital images are artworks, plain and simple.[2]

---

[2] Because Rothschild has *another unrelated* project under a different name that allows owners of NFTs to interact in the metaverse, Hermès alleges that Rothschild intends to introduce *MetaBirkins* into virtual worlds. *See* Opp. at 5. Even if use of digital images in the metaverse would have some legal significance, Hermès' allegations are pure speculation that cannot support a claim. Hermès does not and cannot allege any facts showing that *MetaBirkins* are even capable of being used as "virtual handbags" with which avatars can interact, or that Rothschild has ever had any plans to make them capable of such interaction.

## II.     ROTHSCHILD'S *METABIRKINS* ARTWORKS ARE PROTECTED UNDER THIS CIRCUIT'S HOLDING IN *ROGERS*

Because Rothschild's digital images undeniably are artworks, under the Second Circuit's holding in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), Rothschild's First Amendment rights to free artistic expression must prevail over Hermès' trademark claims, *see* Memorandum of Law in Support of Defendant Mason Rothschild's Motion to Dismiss the Amended Complaint at 4-20 ("Mem."), and over Hermès' other causes of action. *Id.* at 22-25.

### A.     *Rogers* Applies to Rothschild's *MetaBirkins* images, the *MetaBirkins* name, and Promotional References to *MetaBirkins*.

Hermès spends little time on *Rogers*, despite it being the apposite, controlling Second Circuit precedent. *Rogers* is not a parody case: the film *Ginger and Fred* was not a parody.[3] *See* Opp. at 20. Nor is *Rogers* an "incidental use" case: Ginger Rogers' name was central to Fellini's film and to its title.[4] *See id*. at 21. Under *Rogers*, use of a mark in the title or the content of a work is protected as long as it is <u>artistically relevant</u> and <u>not explicitly misleading</u>. As subsequent cases in this Circuit make clear, the *Rogers* test "is generally applicable to all Lanham Act claims against works of artistic expression." *Cliffs Notes v. Bantam Doubleday*, 886 F.2d 490, 495 (2d Cir. 1989).

---

[3] *AM General LLC v. Activation Blizzard, Inc*., 450 F. Supp. 3d 467 (S.D.N.Y. 2020), also wasn't a parody case. That case involved Blizzard's realistic depiction of the Humvee military vehicles in a videogame. *See id*. at 477 (finding use of defendant's marks artistically relevant precisely because they gave players "a sense of a particularized reality of being part of an actual elite special forces operation and serve[d] as a means to increase specific realism of the game").

[4] Hermès likewise mischaracterizes *Twentieth Century Fox Television v. Empire Dist. Inc*., 875 F.3d 1192 (9th Cir. 2017), as an "incidental use" case. *See* Opp. at 21. *Empire* involved a claim by a record label, Empire, against Fox's use of "Empire" as the name of a television series about a fictional record label called "Empire," and as the name under which Fox released actual music and related merchandise. The term "Empire" couldn't possibly have been more central to Fox's expressive works. *Id*. at 1197 ("[The television show and music releases… lie at the heart of [Fox's] 'Empire' *brand*.") (emphasis added).

Hermès argues that *Rogers* doesn't apply because Rothschild's "[i]nfringing METABIRKINS Uses constitute branding of the digital handbags themselves and are easily disposed of as source identification that is not entitled to protection." Opp. at 17. But in *every* trademark infringement case, the plaintiff's theory is that the defendant's use indicates a source—if it did not, then the use could not cause confusion necessary to sustain a claim. Only uses that cause confusion are actionable irrespective of *Rogers*; interpreting *Rogers* to apply only when a use doesn't indicate source would render the case a nullity.

Ginger Rogers' theory was that the title of the motion picture *Ginger and Fred* caused confusion because titles were like trademarks. The Second Circuit agreed that titles could serve as source indicators, but because the commercial and noncommercial dimensions of titles were inextricably intertwined, trademark claims implicate First Amendment interests, and properly accounting for those interests requires a different test. *Rogers*, 875 F.2d at 998 (noting that titles can indicate source but that this function is "inextricably intertwined" with their communicative, artistic functions); *see also Twentieth Century Fox*, 875 F.3d at 1199.[5]

Hermès also attempts to distinguish *Rogers* by citing *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322 (S.D.N.Y. 2020), which Hermès claims found *Rogers* inapplicable because the defendant there used the plaintiff's trademark "as a URL, and to identify a website and a series of webpages that promote and advertise [the defendant-artists]." *Id*. at 342. But the

---

[5] Hermès continues to suggest that the *MetaBirkins* name is not protected by *Rogers* because Rothschild has complained that others have created NFTs "claiming to be NFTs from the METABIRKINS collection or offshoots of the METABIRKINS collection of NFTs, all of which infringe on and dilute the BIRKIN Mark." Opp. at 19. But Rothschild's art does not lose its protection just because he objected to others' suggestions that they were selling NFTs that were part of his collection any more than Andy Warhol's *Campbell's Soup Cans* would lose protection if Warhol objected to another artist's suggestion that she had created a new work that was part of the Warhol *Campbell's Soup Cans* collection.

parties in that case had negotiated agreements permitting defendant's use of the plaintiff's
FEARLESS GIRL trademark to sell replicas of the "Fearless Girl" statue (which defendant had
originally created but in which plaintiff owned the copyright). The *Visbal* defendant wasn't sued
for using the trademark in a URL for a website identifying or promoting the *statue*. Rather, that
defendant was sued for using the trademark outside the scope of the parties' agreements—
namely, for using the trademark "in connection with educational services, and the promotion of
public interest in gender and diversity issues in corporate governance, including in the financial
services sector …." *Id*. at 341. Rothschild's uses of the *MetaBirkins* name are fundamentally
different. Hermès does not and cannot allege that Rothschild has ever used the *MetaBirkins* name
in any way other than to identify or promote the *MetaBirkins* artworks.

There is perhaps no better indication of the radical conflict between Hermès' theory and
artists' First Amendment rights than Hermès' implicit assertion that Andy Warhol's iconic
*Campbell's Soup Cans* paintings are infringing. Hermès erroneously asserts that Warhol has
been "found liable by the Second Circuit for trademark infringement." Opp. at 19, citing *Andy
Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 42-44 (2d Cir. 2021), *cert.
granted sub nom. Andy Warhol Found., Inc. v. Goldsmith*, No. 21-869, 2022 WL 892102 (U.S.
Mar. 28, 2022). *Warhol v. Goldsmith* is not a trademark case. It is a copyright case about
Warhol's use, without permission, of another artist's copyrighted photograph of Prince. The case
is not about Warhol's right to depict Prince*. Id.* Hermès has no copyright interest here and has
not asserted a copyright claim in this case.

**B.     Rothschild's Uses are Artistically Relevant and Not Explicitly Misleading.**

Under *Rogers*, use of a trademark in noncommercial speech is not actionable unless it
"has no artistic relevance to the underlying work whatsoever, or if it has some artistic relevance,

unless [the use of the trademark] explicitly misleads as to the source or content of the work."
875 F.2d at 998. There can be no doubt that Rothschild's depictions of Birkin bags in his
artworks, and his use of the *MetaBirkins* name to identify what he has depicted, easily satisfy
*Rogers'* artistic relevance requirement. Hermès' contrary argument is based on its ipse dixit that
the *MetaBirkins* images are not artworks but rather "simply digital knock-offs, or digital
versions, of physical BIRKIN handbags." Opp. at 18. That facially implausible allegation fails
for the reasons discussed in Section I, *supra*, and Hermès' argument that Rothschild's use of the
mark has no artistic relevance fails along with it.

To be actionable, an artistically relevant use must be *explicitly* misleading, and mere use
of a mark is not explicitly misleading. Indeed, "if the use of a mark alone were sufficient 'it
would render *Rogers* a nullity.'" *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1245 (9th Cir. 2013)
(quoting *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002)); *see also E.S.S.
Ent 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008) ("[T]he mere use of
a trademark alone cannot suffice to make such use explicitly misleading.").

Hermès cites *Yankee Publ'g Inc. v. News Am. Publ'g Inc.*, 809 F. Supp. 267, 276
(S.D.N.Y. 1992) for the proposition that "First Amendment protection does not extend to the
unauthorized use of another's mark as a source identifier." Opp. at 17. That case stands for the
opposite proposition as applied to artwork. *Yankee Publishing* did not apply *Rogers* directly
because the plaintiff owned trademark rights in a *title* for its own publication, as Hermès does
not here. *See Rogers*, 875 F.2d at 999 n.9; *Cliffs Notes*, 886 F.2d at 494.[6] Instead, following
precedent, that court applied a First Amendment-sensitive confusion analysis. *Yankee Publishing*

---

[6] *See also Simon & Schuster*, *Inc. v. Dove Audio, Inc.*, 970 F. Supp. 279 (S.D.N.Y. 1997)
(dealing with a claim against the defendant's competing literary work—thus, a title-versus-title
case and also inapposite to Hermès' claims here).

held that the use by *New York Magazine* of "an obvious take-off on the famous traditional cover of the [Farmer's] Almanac" was protected by the First Amendment. *See* 809 F. Supp. at 275 ("Even if there was some likelihood of confusion, I would still conclude that *New York*'s cover did not violate Yankee's trademark rights. This is because the First Amendment confers a measure of protection for the unauthorized use of trademarks when that use is a part of the expression of a communicative message.").

By contrast, the Ninth Circuit does not have a title-versus-title exception to *Rogers*. *See Empire*, 875 F.3d at 1197. The Ninth Circuit's decision in *Gordon v. Drape*, 909 F.3d 257 (9th Cir. 2018), followed from that; the plaintiff had a trademark registration for greeting cards and defendant sold greeting cards. *See id.* at 261. *Gordon* stretched the meaning of "explicit" misleadingness to deal with that situation. But, as the Ninth Circuit subsequently confirmed, the *Rogers* test protects expressive uses where the defendant provides audiences the means to distinguish between its work and the material in which the plaintiff claims rights. In *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443 (9th Cir. 2020), the plaintiff claimed trademark rights in the title OH, THE PLACES YOU'LL GO and the Dr. Seuss visual style and font. The defendant used the title OH, THE PLACES YOU'LL BOLDLY GO and employed the Dr. Seuss visual style and font. It did so, however, with distinguishable (albeit copyright-infringing) content and with the authors' own names displayed on their book.

*ComicMix* emphasized that artwork that "include[s] a well-known name" is not explicitly misleading if it only "*implicitly* suggest[s] endorsement or sponsorship." *Id.* at 462 (quoting *Rogers*, 875 F.2d at 999–1000) (emphasis added by *ComicMix*). Although BOLDLY used the Seussian font, visual style, and title with just one word added, none of that amounted to explicit misleadingness. *Id*. Nor did extrinsic evidence of actual confusion. "The *Rogers* test drew a

7

balance in favor of artistic expression and tolerates 'the slight risk that [the use of the trademark] might implicitly suggest endorsement or sponsorship to some people.'" *Id.* (quoting *Rogers*, 875, F.2d at 1000). BOLDLY used the defendant's own artwork, and its cover also "conspicuously" listed the authors, as Rothschild does with *MetaBirkins*. *See id.* at 463; Compl. ¶¶ 83, 87, Figs. 6, 8, & Exs. AB, AE.

C.     **The *Polaroid* Likelihood of Confusion Factors Are Irrelevant Where *Rogers* Applies.**

As Rothschild explained in his opening brief, *Rogers* dismissed Ginger Rogers' Lanham Act claims without considering the *Polaroid* likelihood of confusion factors, because the *Rogers* two-part test substitutes for *Polaroid*. *See* Mem. at 16-17. *Twin Peaks Productions, Inc. v. Publ'ns Intern., Ltd.*, 996 F.2d 1366 (2d Cir. 1993), cited by Hermès, is not to the contrary. The district court in that case had found that confusion was likely without applying *Polaroid*. The Second Circuit, characterizing the trademark issue as involving "the scope of trademark protection for literary titles," *see id.* at 1370, adhered to its earlier statement in *Rogers* that the *Rogers* test did not govern title-versus-title conflicts, *Rogers*, 875 F.2d at 999 fn. 5, though it emphasized that the First Amendment was still highly relevant. *Twin Peaks*, 996 F.2d at 1379.

Hermès makes no attempt to account for First Amendment interests in its discussion of the likelihood of confusion factors in this case. Hermès brushes aside the authority that evidence of confusion is not sufficient to prove explicit misleadingness, *see* Mem. at 16-18, by suggesting that such authority comes only from the Ninth Circuit. *See* Opp. at 23. But that too reflects Hermes' unwillingness to acknowledge *Rogers*, which rejected Ginger Rogers' claim despite evidence of meaningful confusion both on the part of knowledgeable experts *and* among the moviegoing public. *Rogers*, 875 F.2d at 1001 ("As both the survey and the evidence of the actual confusion among the movie's publicists show, there is no doubt a risk that some people looking

at the title 'Ginger and Fred' might think the film was about Rogers and Astaire in a direct, biographical sense. For those gaining that impression, the title is misleading.").

*Rogers* made clear that confusion is not relevant unless it is engendered by an explicitly misleading statement. Where defendant's use of a trademark as the title an artistic work leads to a "mixture of meanings, with the possibly misleading meaning not the result of explicit misstatement," there is no claim. *Id. See also id.* at 1000 (*Rogers* "insulates from restriction titles [and works] with at least minimal artistic relevance that are ambiguous or only implicitly misleading."); *AM General*, 450 F. Supp. 3d at 480 (quoting *Rogers* and noting that a "survey documenting confusion is not dispositive" and recognizing that "no amount of evidence showing *only* consumer confusion can satisfy the 'explicitly misleading' prong of the *Rogers* test because such evidence goes only to the 'impact of the use' on a consumer").[7]

## III.   *DASTAR* INDEPENDENTLY BARS HERMÈS' TRADEMARK CLAIMS

Hermès accuses Rothschild of asserting the "radical position that 'digital commodities' cannot be protected under the Lanham Act." Opp. at 13. But that is not Rothschild's assertion. The Supreme Court's holding in *Dastar Corp. v. Twentieth Century Fox Film Corp.* is abundantly clear: as used in the Lanham Act, "origin of goods" refers to the producer of tangible products. 539 U.S. 23, 37 (2003). As a result, Lanham Act claims are available *only* when there is plausible confusion regarding "the producer of the tangible goods that are offered for sale, and

---

[7] Hermès' allegations that other fashion brands have created NFTs or partnered with digital artists are not relevant. *See* Opp. at 5. Brands pay for product placement; celebrities do promotions. Neither of those facts mean that brand owners are therefore entitled to control noncommercial speech referencing their marks. *See AM General*, 450 F. Supp. 3d at 475 (dismissing plaintiff's claim based on use of Humvee marks in Call of Duty videogame despite plaintiff's evidence that it "granted licenses to other companies to use the Humvee trademark 'on or in connection with a wide variety of products,' including toys and at least four video games").

not … the author of any idea, concept, or communication embodied in those goods." *Id.* at 37.[8]

Contrary to Hermès' assertion that "no court has found that *Dastar* bars application of the Lanham Act to any digital goods," in fact courts have *routinely* recognized that *Dastar* bars claims that do not allege confusion about the origin of tangible goods. *See Phoenix Entm't Partners, LLC v. Rumsey*, 829 F.3d 817, 829 (7th Cir. 2016) (rejecting plaintiff's claim of confusion over origin of digital copies of karaoke tracks based on use of plaintiff's registered mark in the content of the copies; any confusion was "not about the source of the tangible good sold in the marketplace"); *see also Phoenix Entm't Partners v. J-V Successors, Inc.,* 305 F. Supp. 3d 540 (S.D.N.Y. 2018) (adopting the reasoning of *Rumsey*)*; Pulse Entm't Corp. v. David*, No. CV 14-4732 (C.D. Cal. Sept. 17, 2014) Dkt. #19 (*Dastar* barred false designation of origin claim based on explicit misattribution to wrong creator; hologram was creative work, like a cartoon).

Hermès alleges that consumers will be confused about the origin of Rothschild's intangible *MetaBirkins* artworks because of the title or the content of those artworks. Hermès does not allege confusion regarding the origin of any tangible goods Rothschild has offered for sale. Thus, Hermès' claims are barred under *Dastar*.

## CONCLUSION

For the foregoing reasons, Rothschild respectfully requests that the Court dismiss all claims against him with prejudice and award Rothschild the costs and attorneys' fees incurred in defense of this action, along with all other relief to which Rothschild is justly entitled.

---

[8] Hermès' use of Professor McCarthy's statement that "there is no doubt that trademark law and the Lanham Act are fully operative in cyberspace" completely misunderstands *Dastar*. *See* Opp. at 12. Many uses in "cyberspace" can plausibly indicate the origin of tangible goods. Nike sells physical shoes online; online uses of the Nike mark can cause confusion about the origin of tangible goods like physical shoes. Uses that do not cause confusion about the origin of tangible goods are not actionable under *Dastar*, in cyberspace or elsewhere.

Dated: April 11, 2022                    Respectfully submitted,

/s/ *Rhett O. Millsaps II*
Rebecca Tushnet
Mark P. McKenna (*pro hac vice*)
Rhett O. Millsaps II
Christopher J. Sprigman
LEX LUMINA PLLC
745 Fifth Avenue, Suite 500
New York, NY  10151
(646) 898-2055
rhett@lex-lumina.com

*Attorneys for Defendant Mason Rothschild*