**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| HERMÈS INTERNATIONAL and HERMÈS OF PARIS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MASON ROTHSCHILD, <br><br> Defendant. | Civil Action No. 22-cv-00384-AJN-GWG |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT MASON ROTHSCHILD'S MOTION TO STAY DISCOVERY**

Gerald J. Ferguson, Esq.
Oren J. Warshavsky, Esq.
Tracy L. Cole, Esq.
Kevin M. Wallace, Esq.
Megan A. Corrigan, Esq.
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

Debora Wilcox, Esq. (*pro hac vice*)
BAKER & HOSTETLER LLP
Key Tower
127 Public Square
Suite 2000
Cleveland, OH 44114
Telephone: 216.621.0200

*Attorneys for Plaintiffs Hermès*
*International and Hermès of Paris, Inc.*

**TABLE OF CONTENTS**

BACKGROUND ....................................................................................................................1

ARGUMENT.......................................................................................................................3

     I.     THE MERITS OF DEFENDANT'S MOTION DO NOT WARRANT A
           STAY .........................................................................................................3

     II.    HERMÈS AND THE PUBLIC WILL BE PREJUDICED BY
           DEFENDANT'S ONGOING MISCONDUCT IF DISCOVERY IS STAYED .....8

     III.   THE SCOPE OF DISCOVERY IS LIMITED AND WILL NOT UNDULY
           BURDEN DEFENDANT ..................................................................................10

CONCLUSION....................................................................................................................12

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alford v. City of N.Y.*,
 No. CV 2011–0622(ERK)(MDG), 2012 WL 947498 (E.D.N.Y. Mar. 20,
 2012) ...................................................................................................................................3

*Andy Warhol Found. For Visual Arts, Inc. v. Goldsmith*,
 11 F.4th 26 .........................................................................................................................7

*Boelter v. Hearst Commc'ns, Inc.*,
 15 Civ. 03934 (AT), 2016 WL 361554 (S.D.N.Y. Jan. 28, 2016)......................................8

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
 539 U.S. 23 (2003).........................................................................................................7, 8

*Gold, Inc. v H.I.S. Juveniles, Inc.*,
 No. 14–cv–02298–RM–KMT, 2015 WL 1650900 (D. Colo. Apr. 8, 2015) ......................9

*Mirra v. Jordan*,
 15-CV-4100 (AT) (KNF), 2016 WL 889559 (S.D.N.Y. Mar. 1, 2016) .........................3, 11

*Morgan Art Found. Ltd. v. McKenzie*,
 18-CV-4438 (AT) (BCM), 2020 WL 6135113 (S.D.N.Y. Oct. 18, 2020) ..........................3

*Otter Prods. LLC v. Outlook Acquisition Corp.*,
 18-cv-031966(RM)(NYW), 2019 WL 1454686 (D. Colo. Apr. 2, 2019) ...........................9

*Phoenix Ent. Partners, LLC v. J-V Successors, Inc.*,
 305 F. Supp. 3d 540 (S.D.N.Y. 2018)................................................................................8

*Phoenix Ent. Partners, LLC v. Rumsey*,
 829 F.3d. 817 (7th Cir. 2016) .......................................................................................7, 8

*Planned Parenthood Fed'n of Am., Inc. v. Bucci*,
 No. 97 CIV. 0629 (KMW), 1997 WL 133313 (S.D.N.Y. Mar. 24, 1997), *aff'd*,
 152 F.3d 920 (2d Cir. 1998)..............................................................................................6

*Rogers v. Grimaldi*,
 875 F.2d 994 (2d Cir. 1989)..........................................................................................5, 6

*SMJ Group, Inc. v. 417 Lafayette Rest. LLC*,
 439 F. Supp. 2d 281 (S.D.N.Y. 2006)................................................................................6

*Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*,
 206 F.R.D. 367 (S.D.N.Y. 2002) .......................................................................................8

ii

*State St. Glob. Advisors Tr. Co. v. Visbal*,
    431 F. Supp. 3d 322 (S.D.N.Y. 2020)............................................................................6, 7

*TCPIP Holding Co. v. Haar Commc'ns, Inc.*,
    244 F.3d 88 (2d Cir. 2001).................................................................................................6

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992) .......................................................................................................10

*United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*,
    128 F.3d 86 (2d Cir. 1997)...............................................................................................6

**Other Authorities**

S. Rep. No. 1333, 79th Cong., 2d Sess., 4 (1946) .........................................................................10

Plaintiffs Hermès International and Hermès of Paris, Inc. (collectively, "Hermès"), by and though their undersigned counsel, respectfully submit this memorandum of law in opposition to the motion ("Motion") brought by defendant Sonny Alexander Estival a/k/a Mason Rothschild ("Defendant") to stay discovery pending resolution of Defendant's motion to dismiss Hermès' Amended Complaint ("AC").

**BACKGROUND**

This is a textbook trademark infringement case.  Defendant has attached the generic prefix "META" (for "metaverse") to the iconic Hermès BIRKIN trademark to brand himself and his products, which are digital handbags sold in the metaverse, as METABIRKINS.  (AC ¶ 2.) He publicly pronounced his intention to replicate the BIRKIN handbags in the metaverse.  (AC ¶¶ 4-5, 77.)  The general public was actually confused as to whether Hermès authorized the METABIRKINS virtual handbags. (AC ¶¶ 3, 113-119.)  After creating and selling 100 virtual handbags (which are essentially pictures of Hermès BIRKIN handbags) under the product name METABIRKINS, Defendant has continued to use the mark METABIRKINS to brand himself and his products across e-commerce, social media, and digital marketing channels and platforms, including use of the domain name METABIRKINS.com.  (AC ¶¶ 6-7, 78-79, 82-96, 122-143.)

In response to Hermès' Amended Complaint that states Lanham Act and state law claims based on overwhelming evidence, Defendant filed a motion to dismiss arguing that this Court should find, based on unsworn statements in Defendant's papers, that his use of the BIRKIN mark functions solely as artistic expression and is entitled to immunity from Lanham Act claims under the First Amendment.  (Mem. of Law in Supp. of Def. Mason Rothschild's Mot. to Dismiss the Am. Compl. 4, 8, ECF No. 27 ("Def.'s Br.").)  He is wrong.  This is not a case in which Defendant sells artwork under his given name, Sonny Estival (or even his alias, Mason Rothschild).  Instead, Defendant uses the trademark METABIRKINS to market his commercial

line of 100 virtual handbags, to identify himself online (METABIRKINS.com), as the name of

his e-commerce stores (METABIRKINS), as his name on social media (@METABIRKINS), and

to promote new lines of digital products unrelated to BIRKIN handbags.  (AC ¶¶ 6-7, 78-79, 82-

96, 122-143.)  It is well settled in this Circuit that there is no First Amendment protection for

commercial uses of a trademark, such as using a mark for a domain name such as

"METABIRKINS.com."  (Pls.' Mem. of Law in Opp'n to Mason Rothschild's Mot. to Dismiss

18, ECF No. 31 ("Pls.' Opp'n").)  Defendant's motion to dismiss at best raises a fact issue as to

whether his use of Hermès' BIRKIN mark on the specific products themselves is "explicitly

misleading."

Defendant now seeks to stay discovery, based not on any particular objection to

discovery demands (which have not yet been made) but on his unsworn and dramatic, but false,

narrative of "this case":  specifically, "in which a multi-billion-dollar luxury goods giant is

attempting to strong-arm a young and emerging artist with trademark claims that are exceedingly

weak on the merits."  (Def.'s Mot. to Stay Disc. 2, ECF No. 30 ("Def.'s Disc. Mot.").)  In reality,

this is a case in which a digital entrepreneur sold blurry images of BIRKIN handbags for prices

comparable to actual BIRKIN handbags by duping consumers into believing his products were

affiliated with Hermès.  (AC ¶¶ 8, 120-121.)  Recent social media posts show him celebrating in

Hawaii as he continues to profit from his ongoing misuse of the METABIRKINS brand on his

website and across social media and e-commerce platforms.  (Declaration of Gerald J. Ferguson

("Ferguson Decl.") Exs. D-F.)  Regardless of Defendant's motion to dismiss, his infringing

conduct is ongoing and indefensible.  Hermès and the public continue to be harmed each day

Defendant continues to misappropriate Hermès' BIRKIN mark in order to mislead the public

into believing his products are somehow affiliated with Hermès, and Hermès is entitled to

discovery in the ordinary course (reserving and not waiving Hermès' right to seek expedited

discovery if appropriate) so that it may prosecute its meritorious claims.

## ARGUMENT

Stays of discovery should "not be routinely [granted] simply on the basis that a motion to

dismiss has been filed." *Morgan Art Found. Ltd. v. McKenzie*, 18-CV-4438 (AT) (BCM), 2020

WL 6135113, *2 (S.D.N.Y. Oct. 18, 2020) (citation omitted).  In deciding a motion to stay

discovery, courts "must look to the particular circumstances and posture of each case." *Alford v.*

*City of N.Y.*, No. CV 2011–0622(ERK)(MDG), 2012 WL 947498, at *1 (E.D.N.Y. Mar. 20,

2012).  Factors considered by the court include: (1) the strength of the motion, (2) any prejudice

that would result to the party opposing the stay, and (3) the breadth of discovery sought and

burden of responding to it. *See Mirra v. Jordan*, 15-CV-4100 (AT) (KNF), 2016 WL 889559, at

*2 (S.D.N.Y. Mar. 1, 2016).  Ultimately, it is the moving party's burden to "establish good cause

for granting a stay, which includes a showing that no prejudice will attend the party opposing the

motion." *Id.* at *2.  Here, no factor favors a stay and Hermès would be prejudiced if one were to

be granted.

## I.     THE MERITS OF DEFENDANT'S MOTION DO NOT WARRANT A STAY

For a stay of discovery to be supported by the strength of a motion to dismiss, the moving

party must present "substantial arguments for dismissal[]." *Morgan Art Found. Ltd.,* 2020 WL

6135113, at *2 (citation omitted).  This requires the moving party to make "a strong showing that

the plaintiff's claim is unmeritorious." *Mirra,* 2016 WL 889559, at *2 (citation omitted).

Here, Defendant fails to satisfy this burden with his motion to dismiss Hermès' Amended

Complaint.  To recap, Hermès alleges (quoting Defendant's public comments) that Defendant's

uses of the METABIRKINS trademark are a deliberate, and evidently successful, attempt to

recreate the commercial success of the BIRKIN handbag in the metaverse by trading off Hermès'

"iconic" and "holy grail" trademark of the BIRKIN handbag.  (AC ¶¶ 1, 4-5, 38, 76-77, 94, 98-99.)  Defendant created 100 virtual handbags, identified by numbers, which copy Hermès' trade dress in the BIRKIN handbag, attached them to NFTs, and collectively called them METABIRKINS.  (AC ¶¶ 10, 78.)  He did so with the intent to mislead consumers into believing they were limited edition virtual versions of BIRKIN handbags that were sanctioned by Hermès.  (AC ¶¶ 81-146.)  Defendant touted his "tribute" to the "iconic" BIRKIN handbag to hype demand for these METABIRKINS.  (AC ¶¶ 76, 98, 103, Exs. F, U, Y.)  He announced that this was his "experiment" to see if he could "create the same kind of illusion it has in real life as a digital commodity" and "bring that into the metaverse," which is a "new outlet" to "showcase" them.  (AC ¶ 77, Ex. Y.)  Defendant's own words easily could have duped purchasers into buying these METABIRKINS with the belief that the virtual handbags could be "showcased" in a virtual world as a status symbol or even as interactive digital "wearables."[1]  Fashion brands recently have been collaborating with artists to release "NFT wearables" to much fanfare.  (Ferguson Decl., Exs. K-L.)

Defendant's marketing hype did not stop there.  He registered the domain name "METABIRKINS.com" and created a website where he provided (and continues to provide) information on the METABIRKINS.  (AC ¶¶ 90-107.)  Defendant continues to operate his METABIRKINS business like a brand.  (AC ¶¶ 2, 5-6.)  Defendant has opened digital storefronts on four different e-commerce platforms to sell his line of digital handbags.  (AC ¶¶ 102-103,

---

[1]Defendant stated his intention to "bring [the BIRKIN] into the metaverse," this "new outlet," to "showcase them in our virtual worlds, and even just show them online."  (AC, Ex. Y.)  And it is not "pure speculation" to assume, based on this language and the fact that Defendant has begun introducing other collections of NFTs as virtual wearables, that absent court intervention Defendant may well expand his Infringing METABIRKINS Uses into the virtual wearable space.  (Reply Mem. of Law in Further Supp. of Def. Mason Rothschild's Mot. to Dismiss Am. Compl. 2 n. 2, ECF No. 38 ("Reply Br."))  Notably, while Defendant characterizes these other NFTs as an "*unrelated project* under a different name," *id.*, the Amended Complaint alleges that Defendant is using the METABIRKINS name to promote not just his 100 METABIRKINS digital handbag products, but to promote himself, his own brand and the entirety of his products, including other NFT products.

122-133.)  To increase his brand presence, he created social media and marketing channels: @METABIRKINS on Twitter, @METABIRKINS on Instagram, METABIRKINS.com, and a METABIRKINS community on the Discord social platform.  (AC ¶¶ 6, 82-98, 100-101, 104-107, 123, 133.)  Defendant has advertised his METABIRKINS digital handbags using advertising slogans that incorporate the BIRKIN trademark such as "NOT YOUR MOTHER'S BIRKIN" and the hashtags "#METABIRKINS GONNA MAKE IT" and "#MINT A METABIRKIN HOLD A METABIRKIN."  (AC ¶¶ 6, 84, 88, 95-96.)  And Defendant has used his METABIRKINS brand to collaborate with other entrepreneurs and promote other NFT projects. (AC ¶¶ 134-143) (collectively, the "Infringing METABIRKINS Uses").

Defendant's marketing ploy worked.  He was able to sell the numbered METABIRKINS virtual handbags at near real-world BIRKIN prices because consumers were misled into believing the NFTs were a very limited BIRKIN-related offering sanctioned by Hermès.  (AC ¶¶ 119-121.)  The Amended Complaint alleges evidence of actual consumer confusion including documented consumer comments and media reports from sophisticated outlets like *Elle* Magazine, the *New York Post*, and *L'Officiel*.  (AC ¶¶ 3, 113-119.)

Defendant's response is that he is immune from liability for trademark infringement, dilution, unfair competition, and cybersquatting under the Lanham Act and New York law because, in unsworn statements in motion papers, he now describes his copies of BIRKIN handbags as exclusively artistic expression.  He requests that this Court determine that each and every one of his Infringing METABIRKINS Uses is fully protected under the balancing test of *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989).  But *Rogers* does not, as Defendant argues, "preclude all of Plaintiffs' claims as a matter of law."  (Def.'s Disc. Mot. 2.)  Indeed, it does not preclude Hermès' claims as a matter of law even as to the products to which *Rogers* is argued to

apply—the numbered, knock-off virtual handbags that Defendant branded as "METABIRKINS."

And even if *Rogers* applied, it does not protect trademark use that is "explicitly misleading."

*Rogers*, 875 F.2d at 999-1000.  There is no theory under which *Rogers* could be claimed to apply

to all of Defendant's Infringing METABIRKINS Uses.  Defendant's use of METABIRKINS as a

trademark has gone so far that he has complained that other NFTs using the METABIRKINS

brand are "fake" and "counterfeit."  (AC ¶¶ 12, 108, 110-111.)  And significantly, Defendant is

using the METABIRKINS brand to collaborate with others and promote *other* NFT projects.

(AC ¶¶ 134-143.)

Defendant's numerous and widespread commercial uses of the mark are as an indication

of source, for commercial use, and are not protected by the First Amendment.  Courts can and do

separate such use from "artistic" speech.  *See United We Stand Am., Inc. v. United We Stand,*

*Am. N.Y., Inc.*, 128 F.3d 86, 93 (2d Cir. 1997); *SMJ Group, Inc. v. 417 Lafayette Rest. LLC*, 439

F. Supp. 2d 281, 291 (S.D.N.Y. 2006).  Further, the Second Circuit has long recognized that use

of a mark as the address, or name, of a website is a trademark use.  *See TCPIP Holding Co. v.*

*Haar Commc'ns, Inc.*, 244 F.3d 88, 104 (2d Cir. 2001); *Planned Parenthood Fed'n of Am., Inc.*

*v. Bucci*, No. 97 CIV. 0629 (KMW), 1997 WL 133313, at *11 (S.D.N.Y. Mar. 24, 1997), *aff'd*,

152 F.3d 920 (2d Cir. 1998) (finding use of "plannedparenthood.com" as domain name was "on

its face more analogous to source identification than to a communicative message").

Defendant's attempt to distinguish *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d

322 (S.D.N.Y. 2020), in his reply in support of his motion to dismiss, (Reply Br. 4-5), is

unavailing, as the plaintiff's proposed amended complaint in that case included claims for

trademark infringement, not merely breach of the parties' Trademark License Agreement, and

allegations that the defendant was "using the Disputed URLs 'to promote and advertise herself

and her replica sales' " among other things.  *State St. Glob. Advisors Tr.*, 431 F. Supp. 3d at 341.

Defendant also asserts a baffling interpretation of the Lanham Act based on *Dastar Corp.

v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).  *Dastar* held that unaccredited

copying of an uncopyrighted work is not protected by section 43(a) of the Lanham Act, because

copyright law protects authors' rights in their creative works while the Lanham Act protects

consumers from being confused as to the origin of goods.  Pls.' Opp'n at 12-13.[2]  The Supreme

Court noted that "[t]he words of the Lanham Act should not be stretched to cover matters that are

typically of no consequence to purchasers."  *Dastar*, 539 U.S. at 32-33.  Rather, Lanham Act

claims relating to the "origin of goods" are meant to apply to "the producer of the tangible goods

that are offered for sale" rather than the author of the idea embodied in those goods.  *Id*. at 37.

Defendant continues to rely on the Supreme Court's use of the word "tangible" out of context to

argue that after *Dastar*, the Lanham Act can never apply to "digital goods."  (Reply Br. 10.)

Indeed, he seems to suggest that courts "have *routinely* recognized" the distinction between

digital and physical goods he claims to find in *Dastar*.  (Reply Br. 10.)  With this argument,

Defendant acknowledges that his METABIRKINS are "digital goods."

Regardless, this argument is contradicted not only by over two decades' worth of

trademark law applying the Lanham Act in the context of virtual goods and the internet, but also

by the cases Defendant cites.  In *Phoenix Ent. Partners, LLC v. Rumsey*, 829 F.3d. 817 (7th Cir.

2016), an unauthorized copying case, "the Seventh Circuit held that the consumers of karaoke

shows could not be confused about the source of the tangible good [under *Dastar*], because

---

[2] Hermès' statement that *Andy Warhol Found. For Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 42-44 (2d Cir. 2021 concerned "trademark" infringement was an error; that case is a copyright case.  Hermès' intention was merely to point out that even Andy Warhol has been held to be an infringer.

consumers are not aware of *the tangible good at issue—i.e., the digital files* containing karaoke

accompaniment tracks." *Phoenix Ent. Partners, LLC v. J-V Successors, Inc.*, 305 F. Supp. 3d

540, 547 (S.D.N.Y. 2018) (emphasis added).  The *Phoenix* cases do not stand for the proposition

that "digital" goods are not tangible goods under *Dastar*; they state the opposite.  *Rumsey*, 829

F.3d. at 828 ("We shall assume, perhaps counter-intuitively, that the digital file counts as a

tangible good for purposes of the trademark analysis.  Any number of communicative

products . . . are now bought and sold in digital form, many of them exclusively so.") (citations

omitted).  As the Seventh Circuit noted, the relevant question under *Dastar* is not whether a

"good" is physical or digital; the question is "what, if any tangible 'good' the consumer sees, and

whether the use of the plaintiffs' trademark leads to confusion about the source of that particular

good."  *Id.*  Here, the "good" the consumer sees is a digital knock-off of an Hermès BIRKIN

handbag, with the mark METABIRKINS used as a brand to identify the image, the Defendant,

and Defendant's website and other marketing channels.  This misappropriation of Hermès' mark

is prohibited by the Lanham Act.

       In short, Defendant's motion to dismiss is not strong, and Hermès is entitled to discovery

on the scope and extent of Defendant's past conduct, ongoing conduct and future plans, and the

extent of damage that has caused to Hermès and the duped consumers.

II.     **HERMÈS AND THE PUBLIC WILL BE PREJUDICED BY DEFENDANT'S
        ONGOING MISCONDUCT IF DISCOVERY IS STAYED**

       Defendant's conclusory statement that a "time-limited stay of discovery will not

prejudice Plaintiffs," (Def.'s Disc. Mot. 6), is unsupported by any facts.  His exclusive basis for

this statement appears to be what he regards to be the strength of his motion, as evinced by the

cases on which he relies.  *See Boelter v. Hearst Commc'ns, Inc.*, 15 Civ. 03934 (AT), 2016 WL

361554, at *5 (S.D.N.Y. Jan. 28, 2016) (no disputed issues of fact); *Spencer Trask Software &*

*Info. Servs., LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002) (court convinced of

defendant's likelihood of success on motion to dismiss).  And because Defendant's motion *at*

*best* creates an issue of fact as to some of Hermès' claims, its pendency does not negate prejudice

to Hermès by a stay.

In contrast, Defendant's continued use of the METABIRKINS mark is causing ongoing

prejudice to Hermès and risks permanent damage to its mark.  *See Gold, Inc. v H.I.S. Juveniles,*

*Inc.*, No. 14–cv–02298–RM–KMT, 2015 WL 1650900, at *2 (D. Colo. Apr. 8, 2015) (declining

to stay discovery in part because "a trademark plaintiff has a substantial interest in avoiding

continuing injury due to a defendant's alleged violation of its trademarks"); *see also Otter Prods.*

*LLC v. Outlook Acquisition Corp.*, 18-cv-031966(RM)(NYW), 2019 WL 1454686, at *2 (D.

Colo. Apr. 2, 2019) (declining to stay discovery in part because "the alleged harm is ongoing"

and "Defendants have [not] agree to cease and desist" their infringing conduct pending a

decision on their motion to dismiss).  While several NFT platforms removed Defendant's

infringing METABIRKINS collection of numbered digital handbags, these products continue to

be re-sold at Defendant's store on the LooksRare NFT marketplace, and this point of sale on the

LooksRare NFT marketplace remains open.  (AC ¶¶ 129-130; Ferguson Decl., Ex. B.)

Defendant promoted recent resales on the LooksRare marketplace of two of the numbered

METABIRKINS as recently as March 10, 2022.  (Ferguson Decl., Ex. C).  Defendant

purportedly earns royalties on all resales of the METABIRKINS digital handbags; resales that he

continues to promote through his METABIRKINS website and his METABIRKINS-branded

social media presence.  (AC ¶ 129, Ferguson Decl., Ex. C).

At the outset of this action, Hermès offered Defendant additional time to answer the

initial complaint if Defendant agreed not to issue any new NFTs or other products or services

9

identified by the METABIRKINS tradename.  (Ferguson Decl., Ex. A.)  Instead of responding to

that offer, Defendant filed his motion to dismiss, and his ongoing commercial use of the

METABIRKINS trademark and promotion of his METABIRKINS virtual handbag business

continues to harm Hermès' goodwill in the BIRKIN trademark and its reputation.

In addition to protecting its mark, Hermès has an interest in and obligation to protect the

public from being misled into purchasing products that are not genuine Hermès products, which

Defendant's METABIRKINS handbags are not.  The Lanham Act was enacted, in part, "to

protect the public from deceit."  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 782 n.15

(1992) (Stevens, J., concurring) (quoting S. Rep. No. 1333, 79th Cong., 2d Sess., 4 (1946)).

Defendant's ongoing uses of METABIRKINS for his virtual handbag business continue to

deceive the public.  Defendant has refused to pause his infringing uses. The prejudice Hermès

faces is based on his ongoing infringing activity and the possibility that he releases more

infringing METABIRKINS virtual handbags into the metaverse.

### III.   THE SCOPE OF DISCOVERY IS LIMITED AND WILL NOT UNDULY BURDEN DEFENDANT

At this early stage of the case, Defendant cannot reasonably claim that discovery will be

broad and be "*designed* [by Hermès] to be burdensome" and "expensive."  (Def.'s Disc. Mot. 5)

(emphasis in original).  Defendant has not answered, initial disclosures have not been exchanged,

and no discovery requests have been served.  As Magistrate Judge Gorenstein advised during the

initial case management conference in this action, Defendant does not yet face any burden.

Defendant observes only that Hermès intends to request documents, (Def.'s Disc. Mot.

5), depose four individuals who have worked closely with Defendant on his business ventures

(all four) or likely to have information about Defendant's real identity (his fiancée), (Def.'s Disc.

Mot. 5-6), retain expert witnesses (Def.'s Disc. Mot. 6) and engage in e-discovery (Def.'s Disc.

Mot. 6).[3]  None of this is surprising in a trademark case in which Defendant's chosen channels of misconduct are digital and online.

Essentially, the issues on which discovery is needed relate to Defendant's own conduct in deciding to create and use the METABIRKINS mark, which appears to have taken place within approximately the last year, a relatively short period of time.  The information relevant to Hermès' claims includes such information as Defendant's business activities, sales and profits, marketing and design decisions, and the like.  All of this information should be easily accessible to Defendant, and his "vague and conclusory contentions" to the contrary are unavailing.  *Mirra*, 2016 WL 889559, at *2 (finding that the burden of responding to "119 discovery demands" on a "wide variety of issues" was insufficient to warrant stay).

Notably, Defendant appears to concede the strength and fame of Hermès' marks, and also takes the position that evidence of actual customer confusion identified to date is "irrelevant." To the extent that Defendant will stipulate to these evidentiary issues, this would reduce the scope and extent of discovery.

Defendant also is not "ill-equipped to bear" the costs of any discovery. Defendant's lavish lifestyle projected on social media and the millions in sales and resales of his NFT projects belie such a claim.  As recently as last month, Defendant was bragging on social media about flying to Hawaii for business meetings, staying at the Four Seasons, and cruising the "island" in a limited availability, luxury vehicle.  (Ferguson Decl., Exs. D-F.)  Defendant allegedly co-

---

[3] Defendant's April 24 letter misrepresents Hermès' preparedness for the parties' Rule 26(f) conference, claiming Hermès could not "enumerate every category of documents [it] plan[s] to request." (Def.'s Disc. Mot. 6.)  Of course, that was not the purpose of the Rule 26(f) conference but rather is within the purview of initial disclosures. Defendant further exaggerated "Plaintiffs' insistence" on negotiating a protocol governing electronically stored information ("ESI").  E-discovery is a required part of any discovery plan under Rule 26(f).  Hermès offered at the Rule 26(f) conference to circulate the first draft of an ESI protocol.  Defendant agreed that was acceptable and did not dispute the need for such a protocol.  Finally, Defendant is responsible for the costs he must incur to litigate this case given his insistence in continuing his infringing conduct.

founded his own fashion boutique in Los Angeles, called Terminal 27, separate from his NFT projects.  (Ferguson Decl., Ex. J.)  Defendant has also offered to pay for fans' flights to attend a promotional event at Terminal 27 for another NFT project.  (Ferguson Decl., Ex. I.)

And finally, Defendant must have profited not only from the initial sale of his NFTs but also from royalties on subsequent resales of his NFTs.  (AC ¶¶ 128-129.)  These include the METABIRKINS virtual handbag NFTs which had a total sales volume of over $1.1 million as of December 22, 2021.  (AC, at Ex. AO.)  Defendant's latest line of 10,000 NFTs, which he promoted using his METABIRKINS trademark, sold for collectively over $1.1 million and he has since recognized approximately $12 million in total sales volume, from which Defendant purportedly receives royalties, according to data promoted by Defendant.  (Ferguson Decl., Exs. G-H.)

These are not the hallmarks of a defendant "ill-equipped to bear" the costs of discovery, but a defendant unwilling to accept responsibility for his infringing conduct.

## CONCLUSION

For the foregoing reasons, Hermès respectfully requests that Defendant's motion to stay discovery be denied.

13

Dated: April 15, 2022                          Respectfully submitted,
        New York, New York


                                               **BAKER & HOSTETLER LLP**

Of Counsel:                                    By:    /s/ *Gerald J. Ferguson*
                                                      Gerald J. Ferguson, Esq.
**BAKER & HOSTETLER LLP**                             Oren Warshavsky, Esq.
Deborah Wilcox, Esq. (*pro hac vice*)                 Tracy L. Cole, Esq.
Key Tower                                             Kevin M. Wallace, Esq.
127 Public Square                                     Megan A. Corrigan, Esq.
Suite 2000                                            45 Rockefeller Plaza
Cleveland, OH 44114                                   14th Floor
Telephone: 216.621.0200                               New York, NY  10111
                                                      Telephone:   212.589.4200
                                                      Facsimile:   212.589.4201

                                                      *Attorneys for Plaintiffs*
                                                      *Hermès International and*
                                                      *Hermès of Paris, Inc.*

13