# Lex Lumina PLLC

Rhett O. Millsaps II  |  rhett@lex-lumina.com  |  646.535.1137

April 18, 2022

<u>VIA ECF</u>

The Honorable Gabriel W. Gorenstein
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

     Re:    <u>Hermès International et al. v. Rothschild</u>, 22-cv-00384-AJN-GWG

Dear Judge Gorenstein,

    We represent Defendant Mason Rothschild in the above-referenced matter. We submit this letter in reply to Plaintiffs' Memorandum of Law in Opposition to Defendant Mason Rothschild's Motion to Stay Discovery ("Opposition" or "Opp.") and accompanying declaration.

    Plaintiffs' Opposition only confirms the strength of Mr. Rothschild's motion to dismiss and the appropriateness of staying discovery in this case until that motion is decided.

**<u>Plaintiffs' Allegations Cannot Survive *Rogers*</u>**

    To escape defeat by *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), and its progeny, Plaintiffs would have to plausibly allege that Mr. Rothschild's *MetaBirkins* are something other than art. But Plaintiffs' own Opposition and pleading show that they cannot. While Plaintiffs try adamantly to characterize Mr. Rothschild's *MetaBirkins* as "virtual handbags," Opp. at 1, or "digital knock-offs, or digital versions, of physical BIRKIN handbags,"[1] Plaintiffs cannot help but admit that *MetaBirkins* are in fact static digital images, not actual handbags in any sense. *See* Opp. at 1 (admitting that *MetaBirkins* are "are essentially pictures…"); Opp. at 2 (characterizing *MetaBirkins* as "blurry images"); Reply Memorandum of Law in Further Support of Defendant Mason Rothschild's Motion to Dismiss (Dkt. No. 38) ("Reply") at 2 (quoting numerous allegations in the Amended Complaint ("Complaint" or "Compl.") that admit that Rothschild's *MetaBirkins* are digital images that "may reflect some artistic creativity"). Plaintiffs do not and cannot even allege that Mr. Rothschild's *MetaBirkins* are pictures of actual "Birkin" bags, because they in fact are digital figments of Mr. Rothschild's imagination depicting fur-covered Birkin bags, while in reality Birkin bags are made from leather. *See* Memorandum of Law in Support of Defendant Mason Rothschild's Motion to Dismiss the Complaint (Dkt. No. 27) ("Mem.") at 3; Compl. ¶¶ 37, 76, 79, Fig. 5 & Ex. Z.

---

[1] Memorandum of Law in Opposition to Mason Rothschild's Motion to Dismiss (Dkt. No. 31) at 18.

Even if Plaintiffs had not admitted that Mr. Rothschild's *MetaBirkins* illustrations are art, this Court should reject Plaintiffs' assertion that *MetaBirkins* are somehow outside the First Amendment's concern because they are not art but "digital knock-offs" or "virtual handbags." As Mr. Rothschild explained in his Reply in support of his motion to dismiss, those arguments are nonsensical:

> There is no such thing as a "digital knock-off of a handbag," because a "knock-off" handbag is, by definition, a handbag. A painting of a pipe isn't a pipe, Andy Warhol's paintings of Campbell's soup cans aren't soup cans, and Rothschild's *MetaBirkins* images aren't handbags. Just like Magritte could not stuff his painting of a pipe, you can't put your lip balm in a *MetaBirkin*. Rothschild's digital images are artworks, plain and simple.

Reply at 2.

Plaintiffs' attempt to exile Rothschild's *MetaBirkins* from the world of art (and, consequently, from First Amendment protection) thus is meritless. It also is dangerous. As Justice Holmes cautioned long ago, "It would be a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth of pictorial illustrations, outside of the narrowest and most obvious limits." *Bleistein v. Donaldson Lithographing Co*., 188 U.S. 239, 251 (1903).[2] Justice Holmes further aptly observed that an illustration of something "drawn from the life"—like Rothchild's *MetaBirkins*—"is the personal reaction of an individual upon nature. Personality always contains something unique." *Id*. at 250 ("The least pretentious picture has more originality in it than directories and the like…"). And Justice Holmes even had a rejoinder to Plaintiffs' bluster here about Mr. Rothschild's "marketing hype" and commercial success around *MetaBirkins* (Opp. at 4-5): "Certainly works are not the less connected with the fine arts because their pictorial quality attracts the crowd, and therefore gives them a real use,—if use means to increase trade and to help to make money." *Bleistein*, 188 U.S. at 251

Likewise, Plaintiffs' own allegations bely their argument that Mr. Rothschild's "motion to dismiss at best raises a fact issue as to whether his use of [the *MetaBirkins* name] is 'explicitly misleading'"—the only other way that Plaintiffs could escape *Rogers* here. Opp. at 2. As the relevant exhibits attached to the Complaint show on their faces, Mr. Rothschild's use of the *MetaBirkins* name is, as a matter of law, not "explicitly misleading" in the manner required by *Rogers* to give rise here to any colorable claim by Plaintiffs. *See* Mem. at 13-18; Reply at 6-8. Mr. Rothschild uses the name *MetaBirkins* as a title for his artwork, a title that describes what the work depicts. In so doing, Mr. Rothschild makes *no explicit claim of association*. Mere use of a mark in a work's title is not explicitly misleading. Indeed, "if the use of a mark alone were sufficient 'it would render *Roger*s a nullity.'" *Brown v. Elec. Arts, Inc*., 724 F.3d 1235, 1245 (9th Cir. 2013) (quoting *Mattel, Inc. v. MCA Records, Inc*., 296 F.3d 894, 902 (9th Cir. 2002)); see also *E.S.S. Ent 2000, Inc. v. Rock Star Videos, Inc*., 547 F.3d 1095, 1100 (9th Cir. 2008) ("[T]he mere use of a trademark alone cannot suffice to make such use explicitly misleading.")

---

[2] *Bleistein* was a copyright case, but Justice Holmes' statements there about the danger of judges passing on whether a particular illustration is "artistic" enough to merit copyright protection applies with even greater force to Plaintiffs' suggestion that this Court should rule that Rothschild's *MetaBirkins* illustrations are insufficiently artistic to enjoy the First Amendment's protections.

**Plaintiffs' Allegations Cannot Survive *Dastar***

Even if Plaintiffs could surmount the high bar of *Rogers*—which their own allegations show they cannot—Plaintiffs' claims would separately be barred by *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). *See* Mem. at 20-22; Reply at 9-10.

Plaintiffs continue to mischaracterize the Supreme Court's simple holding in *Dastar*. As Rothschild pointed out in his Reply, *Dastar* is not about whether the mark appears online. *See* Reply at 9-10. It is about the nature of the alleged confusion. The Supreme Court's rule is quite clear on that point: any alleged confusion must be about the origin of *tangible* goods. Plaintiffs' claims fundamentally allege confusion about the origin of digital images, just as the plaintiff's claim in *Rumsey* was fundamentally about confusion regarding the origin of intangible karaoke tracks. *See Phoenix Ent. Partners, LLC v. Rumsey*, 829 F.3d. 817 (7th Cir. 2016). The plaintiff in *Rumsey* was not able to avoid *Dastar* simply because the karaoke tracks happened to be stored in digital files; nor can Plaintiffs here avoid *Dastar* just because the *MetaBirkins* artworks are stored in digital files. As Plaintiffs have repeatedly demonstrated in every filing in this case, their claims are entirely about the content of the *MetaBirkins* digital images.

**The First Amendment Interests in this Case Weigh Heavily in Favor of a Stay**

While Plaintiffs admit that Mr. Rothschild's *MetaBirkins* are artistic images, Plaintiffs' Opposition brushes aside the First Amendment concerns in this case, speciously arguing that "[i]t is well settled in this Circuit that there is no First Amendment protection for commercial uses of a trademark…" Opp. at 2. But *Rogers* and its progeny all involved commercial uses of a trademark in connection with noncommercial speech and held that the First Amendment interests outweighed plaintiffs' trademark interests in those cases. *See, e.g.*, *Rogers*, 875 F.2d 994 (First Amendment protected commercial uses of the allegedly infringing *Fred and Ginger* film title); *AM General LLC v. Activation Blizzard, Inc*., 450 F. Supp. 3d 467 (S.D.N.Y. 2020) (First Amendment protected commercial uses of allegedly infringing marks in a video game); *Twentieth Century Fox Television v. Empire Dist. Inc.*, 875 F.3d 1192 (9th Cir. 2017) (First Amendment protected commercial uses of record label Empire's name in connection with Fox's television show about a fictional record label called "Empire" as well as music and related merchandise commercially sold by Fox under the same name). Indeed, *Rogers* means nothing if not that First Amendment interests trump trademark interests when it comes to the commercial sales of works that make uses of an allegedly infringed mark, so long as they are artistically relevant and not explicitly misleading.

Courts widely have recognized that a stay of discovery is appropriate in cases involving First Amendment rights, as here, because "if a suit entails long and expensive litigation, then the protective purpose of the First Amendment is thwarted even if the defendant ultimately prevails." *Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013) (cleaned up) (affirming lower court that dismissed complaint after granting discovery stay, *see* 863 F. Supp. 2d 29, 35 n.7 (D.D.C. 2012)). *See Herbert v. Lando*, 441 U.S. 153, 178 (1979) (Powell, J., concurring) (observing that trial courts have a duty to consider defendants' First Amendment rights in addition to the private interests of the plaintiff when supervising discovery); *Weyrich v. New Republic, Inc*., 235 F.3d 617, 628 (D.C. Cir. 2001) ("We are mindful that trial courts are understandably wary of allowing unnecessary discovery where First Amendment values might be threatened."); *Nunes v. Lizza*, No. 20-cv-4003-CJW, 2020

Hon. Gabriel W. Gorenstein
Page 4 of 5
April 18, 2022

WL 6938825, at *2 (N.D. Iowa Jul. 23, 2020) ("The possibility of prejudice, hardship, or inequity weighs in favor of granting the stay. Defendants have pointed to the chilling effect of expensive discovery on their First Amendment rights. Plaintiffs have not identified any real prejudice or other consequence they might suffer as a result of a stay at this stage of the litigation."); *Pan Am Systems, Inc. v. Hardenbergh*, Civil No. 2:11–cv–00339–NT, 2012 WL 4855205 (D. Me. Oct. 12, 2012) (staying litigation pending resolution of insurance dispute; "The Court is sensitive to the potential chilling effect on the press—particularly in a case where the Defendants are an individual and a small publication—caused by the prospect of having to defend prolonged and expensive litigation."); *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 592, 592 n. 10 (D.C. Cir. 2000) (summary proceedings are essential in First Amendment cases particularly where plaintiffs sue "an individual who might be expected to have limited resources")).

Additionally, although the procedural protections of New York's anti-SLAPP law, N.Y. Civ. Rts. L. § 76-a, do not directly apply in federal courts, they show that New York acknowledges the unique First Amendment interest in preventing defendants from being subjected to burdensome and potentially unnecessary discovery when they have been sued for exercising their First Amendment rights. *See, e.g.*, *Mireskandari v. Daily Mail and General Trust PLC*, CV 12-02943 MMM (FFMx), 2013 WL 12129944, *3 (C.D. Cal. Jan. 14, 2013) (while not applying California anti-SLAPP statute, staying discovery because of the concerns for discovery's ability to chill speech); *cf. Slauson Partnership v. Ochoa*, 112 Cal. App. 4th 1005, 1021 (2d Dist. 2003) (discovery stayed "to minimize the costs and burdens of unmeritorious litigation directed at free speech rights").

Plaintiffs already have had a substantial chilling effect on Mr. Rothschild's First Amendment rights here by having listings of his artwork removed from online marketplaces. *See* Opp. at 9 (noting that "several NFT platforms removed" Rothschild's *MetaBirkins* as a result of Plaintiffs' claims). And Plaintiffs apparently would like to go beyond curtailing Mr. Rothschild's First Amendment rights to dictating whether, when, where, and how he is allowed to take a vacation. *See* Opp. at 11. But the Court should not countenance Plaintiffs' indifference to Mr. Rothschild's rights—and effectively thwart the protective purpose of the First Amendment—by subjecting Mr. Rothschild to potentially wholly unnecessary and substantial discovery costs in this case, which would include not only his attorneys' time but also significant expenditures for discovery vendors and experts.

**A Short Discovery Stay Would Not Prejudice Plaintiffs**

This is especially so given that Plaintiffs have not identified any prejudice that they would suffer from a short stay of discovery until the Court has decided Mr. Rothschild's motion to dismiss. Plaintiffs already have succeeded in having *MetaBirkins* delisted from several NFT platforms. *See* Opp. at 9. Plaintiffs complain that Mr. Rothschild continues to promote re-sales of *MetaBirkins* through more limited channels, *see id.*, but profits generated from any such re-sales could be damages claimed at the end of the day were Plaintiffs ultimately to prevail in this case despite the steep legal hurdles they face. Nowhere in Plaintiffs' Opposition do they assert that Plaintiffs themselves are attempting to sell NFTs connected to "Birkin" images or that sales of any of Plaintiffs' products are actually being harmed by sales of the *MetaBirkins* artworks.

Accordingly, Plaintiffs' Opposition only confirms the appropriateness of a discovery stay in this case in light of the strength of Mr. Rothschild's motion to dismiss, the burden of

discovery and the chilling effect that such burden would impose on Mr. Rothschild's exercise of his First Amendment rights, and the lack of prejudice to Plaintiffs. Mr. Rothschild thus respectfully requests that the Court stay discovery pending resolution of his motion to dismiss.

Sincerely,

/s/ *Rhett O. Millsaps II*

/s/ *Rebecca Tushnet*

*Counsel for Defendant Mason Rothschild*

cc:  All Counsel of Record (via ECF)