UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------- x
HERMÈS INTERNATIONAL and HERMÈS OF  :
PARIS, INC.,                        :
                                    :
        Plaintiffs,                 :          22-cv-384 (JSR)
                                    :
            -v-                     :          MEMORANDUM ORDER
                                    :
MASON ROTHSCHILD,                   :
                                    :
        Defendant.                  :
--------------------------------- x

JED S. RAKOFF, U.S.D.J.

    Around December 2021, defendant Mason Rothschild created
digital images of faux-fur-covered versions of the luxury Birkin
handbags of plaintiffs Hermès International and Hermès of Paris,
Inc. (collectively, "Hermès"). Rothschild titled these images
"MetaBirkins" and sold them using so-called "NFTs" (non-fungible
tokens), explained further below. In response, Hermès filed a
complaint, subsequently amended, claiming trademark infringement,
trademark dilution, and cybersquatting.

    Now before the Court is Rothschild's motion to dismiss the
amended complaint for failure to state a claim upon which relief
can be granted under Fed. R. Civ. P. 12(b)(6). ECF No. 26. The
motion is fully briefed and the Court heard oral argument on May
4, 2022. As the Court stated by "bottom-line" order dated May 5,
2022, see ECF No. 49, the Court denies the motion to dismiss. This

Memorandum Order confirms that ruling and sets forth the reasons for it.

## BACKGROUND

Unless otherwise indicated, the following factual allegations are taken from the amended complaint. See ECF No. 24.

Hermès is a luxury fashion business known for, among other products, its unique Birkin handbag, which sells for anywhere from thousands of dollars to over one hundred thousand dollars. Am. Compl. ¶¶ 27, 29, 33, 37. Hermès owns trademark rights in the Hermès and Birkin marks as well as trade dress rights in the Birkin handbag design. Id. ¶¶ 34-36.

NFTs, or "non-fungible tokens," are units of data stored on a blockchain that are created to transfer ownership of either physical things or digital media. Id. ¶ 4. When NFTs are created, or "minted," they are listed on an NFT marketplace where NFTs can be sold, traded, etc., in accordance with "smart contracts" that govern the transfers. Id. ¶¶ 61, 63. Because NFTs can be easily sold and resold with a transaction history securely stored on the blockchain, NFTs can function as investments that can store value and increase value over time. Id. ¶ 69.

When an NFT is linked to digital media, the NFT and corresponding smart contract are stored on the blockchain and are linked to digital media files (e.g., JPEG images, .mp4 video files,

or .mp3 music files) to create a uniquely identifiable digital media file.[1] Id. ¶ 60. The NFTs and smart contracts are stored on the blockchain (so that they can be traced), but the digital media files to which the NFTs point are stored separately, usually on either a single central server or a decentralized network. Id. ¶ 62.

Fashion brands are beginning to create and offer digital replicas of their real-life products to put in digital fashion shows or otherwise use in the metaverse. Am. Compl. ¶ 66. NFTs can link to any kind of digital media, including virtual fashion items that can be worn in virtual worlds online. Id. Brands sometimes partner with collaborators in offering co-branded virtual fashion products. Id. ¶ 67.

Defendant Mason Rothschild is a "marketing strategist" and "Entrepreneur" who "come[s] from the fashion industry." Id. ¶¶ 1,

---

[1] This means that an NFT could link to a digital media file that is just an image of a handbag or could link to a different kind of digital media file that is a virtual handbag that can be worn in a virtual world. Fashion companies are just starting to branch out into offering virtual fashion items that can be worn in virtual worlds online (most commonly, for now, in the context of videogames, but with potential to expand into other virtual worlds and platforms as those develop), and NFTs can be used to create and sell such virtual fashion items.

However, while Hermès calls what Rothschild sells "digital handbags," they do not dispute that what Rothschild sells are digital images of (faux fur, not leather) Birkin bags, and not virtually wearable Birkin bags.

8-9, 25 (quoting Rothschild's statements in an interview at Ex. Y). In or around May 2021, Rothschild created a digital image entitled "Baby Birkin," which depicted a 40-week-old fetus gestating inside of a transparent Birkin handbag. Id. ¶¶ 70-71. Rothschild sold the NFT linked to the "Baby Birkin" digital image for $23,500; it later resold for $47,000. Id. ¶ 72.

In or around December 2021, Rothschild created a collection of digital images titled "MetaBirkins," each of which depicted an image of a blurry faux-fur-covered Birkin handbag. Id. ¶¶ 37, 76, 79, Fig. 5 and Ex. Z. Rothschild used NFTs to sell these "MetaBirkins" digital images. Id. ¶¶ 79-80. Each NFT in the "MetaBirkins" collection is titled with a number from 0 to 99 and not the "MetaBirkins" name. Id. ¶ 10. The NFTs have sold for prices comparable to real-world Birkin handbags. Id. ¶¶ 8, 112, 120-21.

When Rothschild initially sold the NFTs of the "MetaBirkins" digital images, Rothschild described them as "a tribute to Herm[è]s' most famous handbag, the Birkin, one of the most exclusive, well-made luxury accessories. Its mysterious waitlist, intimidating price tags, and extreme scarcity have made it a highly covetable 'holy grail' handbag that doubles as an investment or store of value." Id. ¶ 94. In an interview with Yahoo Finance about the "MetaBirkins" collection, Rothschild stated that "for me, there's nothing more iconic than the Herm[è]s Birkin bag. And I

wanted to see as an experiment if I could create that same kind of illusion that it has in real life as a digital commodity." Am. Compl. Ex. Y. He went on to state that "there's not much difference" between owning a MetaBirkin and "having the crazy car or the crazy handbag in real life because it's kind of just that, that showing of like wealth or that kind of explanation of success"; that "now you're able to bring that into the metaverse with these iconic NFTs"; and that "I feel like the difference between the two is like getting a little bit blurred now because we have this new outlet, which is the metaverse, to showcase, showcase them in our virtual worlds, and even just show them online." Id.

Rothschild has sold his "MetaBirkins" NFTs on four different NFT platforms. Am. Compl. ¶¶ 102-03, 122-33. He has created social media and marketing channels: @METABIRKINS on Twitter and Instagram, MetaBirkins.com, and a "MetaBirkins" community on the Discord social platform. Id. ¶¶ 90-98, 100-01, 122-33. Rothschild's advertising for the "MetaBirkins" NFTs has included slogans such as "NOT YOUR MOTHER'S Birkin" and the hashtags "#MetaBirkins GONNA MAKE IT" and "#MINT A METABIRKIN HOLD A METABIRKIN." Id. ¶¶ 88, 95-96. Rothschild has complained that he has seen his "MetaBirkin" NFTs being "counterfeited," and that he

saw "more and more fake MetaBirkins sold every hour." Id. ¶¶ 12, 108.

Consumers posting on the "MetaBirkins" Instagram page have expressed actual confusion, believing that there is an Hermès affiliation with Rothschild's "MetaBirkins" collection. Id. ¶¶ 114-15. Similar confusion exists in the media. For example, the magazines *Elle* and *L'Officiel* and the *New York Post* have all mistakenly reported that the "MetaBirkins" NFTs were unveiled by Hermès in partnership with Rothschild. Id. ¶¶ 117-19.[2]

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, the complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint must offer more than "a formulaic recitation of the elements of a

---

[2] While the foregoing allegations are taken from the amended complaint, Hermès also avers that, after Hermès filed its amended complaint, Rothschild announced a new collection of NFTs titled "I Like You You're Weird," which includes NFTs linked to forms of digital media that a user could virtually wear in the Arcade video game world. ECF No. 32 (Decl. of Gerald Ferguson) Ex. A. As noted below, however, the Court considers only the well-pleaded facts alleged in the amended complaint for purposes of this motion to dismiss under 12(b)(6).

-6-

cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. See Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 557 (2007). If the plaintiff has "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Twombly, 550 U.S. at 570.


## DISCUSSION

The Court first addresses Rothschild's arguments that Hermès's trademark infringement claims fail as a matter of law based on Rogers v. Grimaldi, 875 F.2d 994 (2d Cir. 1989). The Court then turns to Rothschild's arguments as to Hermès's remaining claims. Because the Court concludes that the amended complaint contains sufficient factual allegations to make out the trademark infringement and other claims, the Court denies Rothschild's motion to dismiss.

### I. Trademark Infringement (Lanham Act and New York law)

The analysis for claims under Sections 32 and 42(a) of the Lanham Act parallels that for the trademark infringement and unfair competition claims under New York law, see ESPN, Inc. v. Quiksilver, Inc., 586 F. Supp.2d 219, 230 (S.D.N.Y. 2008), though a party stating a claim for unfair competition under New York law must also plead that the alleged infringer acted in bad faith, see

Empresa Cubana del Tabaco v. Culbro Corp., 399 F.3d 462, 485 (2d Cir. 2005).

The parties dispute, however, what test applies, at least in part, to analyzing the alleged trademark infringement at issue here. Rothschild argues that, because the digital images of the Birkin bags that are tied to the NFTs he sells are "art," the Second Circuit's test in Rogers v. Grimaldi applies, and that applying the Rogers test requires dismissing Hermès's claims on First Amendment grounds. 875 F.2d 994 (2d Cir. 1989). Hermès argues that the two-prong test of Gruner + Jahr applies instead, asking whether the mark is entitled to protection and requiring application of the Polaroid factors to assess the likelihood of confusion. Gruner + Jahr USA Pub. v. Meredith Corp., 991 F.2d 1072, 1074 (2d Cir. 1993). Hermès further argues that, even if the Rogers test does apply, the Court cannot make factual determinations of artistic relevance or explicit misleadingness at the motion to dismiss stage.

The Court concludes that the Rogers test applies, at least in part, to the trademark infringement analysis of Rothschild's uses of "MetaBirkins." Because, however, the amended complaint includes sufficient allegations of explicit misleadingness either as a function of likelihood of confusion under the Polaroid factors, see Twin Peaks Prods., Inc. v. Publ'ns Int'l Ltd. 996 F.2d 1366,

-8-

1379–80 (2d Cir. 1993) (remanding to district court for application of <u>Polaroid</u> factors to determine explicit misleadingness), or under Rothschild's own theory of the explicitly misleading analysis, the Court denies the motion to dismiss the trademark infringement claims.

### A. "MetaBirkins" as Source Indicator or Artistic Expression?

Hermès argues that Rothschild uses the "MetaBirkins" mark, in commerce, to brand a product line, and to attract public attention and signify source. <u>See</u> 15 U.S.C. § 1127 (noting that use in commerce includes when the mark "is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale"); <u>see also</u> <u>Tiffany & Co. v. Costco Wholesale Corp.</u>, 971 F.3d 74, 92 (2d Cir. 2020) ("Whether a defendant has [used a term as a mark] may entail an investigation into, *inter alia*, whether the challenged material appeared on the product itself, on its packaging, or in any other advertising or promotional materials related to [the] product, and the degree to which defendants were trying to create, through repetition . . . a[n] association between [themselves] and the [mark]." (internal citations and quotation marks omitted)).

Rothschild argues that because he used "MetaBirkins" as the title of artwork -- the digital images of the fur-covered Birkin bags -- and not as a source identifier of his products, his use of Hermès's mark is therefore entitled to First Amendment protection under Rogers v. Grimaldi, 875 F.2d 994 (2d Cir. 1989), and that the test set out in Rogers applies to the trademark infringement analysis here. See id. at 999 ("We believe that in general the [Lanham] Act should be construed to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression. In the context of allegedly misleading titles . . . that balance will normally not support application of the Act unless the title has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the title explicitly misleads as to the source or the content of the work.").

While the Second Circuit in Rogers was considering the title of a movie that used plaintiff Ginger Rogers's name, the Second Circuit has not only applied the Rogers test to titles, but also has found that it "is generally applicable to Lanham Act claims against works of artistic expression." Cliffs Notes v. Bantam Doubleday Dell Pub. Group, 886 F.2d 490, 495 (2d Cir. 1989). Even the amended complaint's allegations acknowledge the artistic aspect of some of the digital images sold through the NFTs. See,

e.g., Am. Compl. ¶ 9 (stating that "a digital image connected to an NFT may reflect some artistic creativity"). In any event, even if the commercial aspects of a work are intertwined with artistic content, the trademark-using speech must be treated as noncommercial. See, e.g., Riley v. Nat'l Fed'n of the Blind of N.C., Inc., 487 U.S. 781, 796 (1988).

The Second Circuit held in Rogers that while titles can be source indicators, this function is "inextricably intertwined" with their communicative, artistic functions. 875 F.2d at 998. Because trademark claims therefore implicate First Amendment interests, accounting for these different interests requires a separate test, as the Court laid out in Rogers, and it is that test that applies here. See id. Because Rothschild is selling digital images of handbags that could constitute a form of artistic expression, balancing the First Amendment concerns with Lanham Act protection requires applying the Rogers test.

Hermès tries to distinguish Rogers on the ground that Rothschild uses the "MetaBirkins" mark as a source identifier on social media to promote and advertise the NFTs, as a URL, and to identify a website, arguing that the First Amendment does not protect unauthorized use of another's mark as a source identifier. But this does little to distinguish Rogers or explain why the Rogers test does not apply here. Using the title of the artwork

for social media and online accounts dedicated to selling the artwork is just like the marketing and advertising approved in Rogers. 875 F.2d at 998. And Rogers is not inapplicable simply because Rothschild sells the images -- the movie studio defendant in Rogers sold the film at issue. 875 F.2d at 997. Neither does Rothschild's use of NFTs to authenticate the images change the application of Rogers: because NFTs are simply code pointing to where a digital image is located and authenticating the image, using NFTs to authenticate an image and allow for traceable subsequent resale and transfer does not make the image a commodity without First Amendment protection any more than selling numbered copies of physical paintings would make the paintings commodities for purposes of Rogers.[3]

---

[3] Rogers might not apply, Rothschild seems to concede, if the NFTs were attached to a digital file of a virtually wearable Birkin handbag, in which case the "MetaBirkins" mark would refer to a non-speech commercial product (albeit not one that is, as yet, considered ordinary or quotidian). But Hermès's only contention on this score is that Rothschild might branch out into virtually wearable "MetaBirkins" because he has sold NFTs of wearable items under another of his project headings, "I Like You You're Weird." Not only is the fact that Rothschild has a separate project under a different name that allows the NFT owners to interact in the metaverse not sufficient to state a claim with regard to the "MetaBirkins," more critically, these contentions are not found in the amended complaint. See ECF No. 32 Ex. A. The Court will thus not consider them for purposes of this motion to dismiss. The amended complaint does not contain sufficient factual allegations that Rothschild uses, or will in the immediate foreseeable future use, the mark to sell non-speech commercial products, i.e., virtually wearable Birkin bags.

-12-

**B. Does _Rogers_ Protect Rothschild's Uses of "MetaBirkins"?**

Assuming, therefore that _Rogers_ here applies, does it entail dismissal of the amended complaint? Rothschild argues that his marketing and sale of the "MetaBirkins" NFTs is not copyright infringement under _Rogers_ as a matter of law because he is using the "MetaBirkins" trademark in noncommercial speech, that use of the trademark has some artistic relevance, and the use of the trademark does not explicitly mislead as to the source or content of the work. _Rogers_, 875 F.2d at 998. But, to the contrary, the amended complaint contains sufficient factual allegations that the use of the trademark is not artistically relevant and that the use of the trademark is explicitly misleading as to the source or content of the work. This Court may not resolve these factual disputes at the motion to dismiss stage.

_1. Artistic Relevance_

The threshold for "artistic relevance" is intended to be low and will be satisfied unless the use "has no artistic relevance to the underlying work whatsoever." _Rogers_, 875 F.2d at 999. "The artistic relevance prong ensures that the defendant intended an artistic—_i.e._, noncommercial—association with the plaintiff's mark, as opposed to one in which the defendant intends to associate with the mark to exploit the mark's popularity and good will." _Louis Vuitton Malletier S.A. v. Warner Bros. Ent. Inc._,

-13-

868 F. Supp. 2d 172, 178 (S.D.N.Y. 2012); see also Rogers, 875 F.2d at 1001 (finding that the defendant satisfied the artistic relevance prong where its use of the trademark was "not arbitrarily chosen just to exploit the publicity value of [the plaintiffs' mark] but instead ha[d] genuine relevance to the film's story").

Here, however, the amended complaint includes sufficient allegations that Rothschild entirely intended to associate the "MetaBirkins" mark with the popularity and goodwill of Hermès's Birkin mark, rather than intending an artistic association, see, e.g., Am. Compl. ¶ 94 (quoting Rothschild's statements that his "MetaBirkins" were intended as "a tribute to Herm[è]s' most famous handbag, the Birkin,"); Am. Compl. Ex. Y (quoting Rothschild's statements in an interview about the "MetaBirkins" collection, that he "wanted to see as an experiment if [he] could create that same kind of illusion that [the Birkin bag] has in real life as a digital commodity."). Viewing the plausible allegations in the amended complaint, including Rothschild's own descriptions of the "MetaBirkins" project, the Court declines to resolve at this stage whether the "MetaBirkins" clear the admittedly low bar of artistic relevance.

2. *Explicit Misleadingness*

Even if the "MetaBirkins" satisfied the artistic relevance prong, the amended complaint contains sufficient factual

-14-

allegations that Rothschild's use of the "MetaBirkins" mark is explicitly misleading and thus still actionable under the Lanham Act. While Rogers did not consider the Polaroid factors in dismissing the Lanham Act claims at issue in that case, in a subsequent opinion, written by the same judge (Judge Newman), the Second Circuit, while still applying the Rogers test, expressly remanded to the district court to consider the Polaroid factors in determining explicit misleadingness. See Twin Peaks, 996 F.2d at 1379 (holding that the relevant question is whether the defendant's use of the mark "is misleading in the sense that it induces members of the public to believe [the allegedly infringing use] was prepared or otherwise authorized" by the plaintiff); Louis Vuitton Malletier, 868 F. Supp.2d at 179-80.

Thus, while the Second Circuit in Rogers concluded that the Lanham Act "should be construed to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression," 875 F.2d at 999, it then added in Twin Peaks that in considering explicit misleadingness under the Rogers balancing test, the Court should consider the Polaroid factors to determine whether the likelihood of confusion is sufficiently compelling to outweigh the public interest in free expression. 996 F.2d at 1379. Twin Peaks emphasizes that the relevant question is whether the defendant's use of the mark "is

misleading in the sense that it induces members of the public to believe [the allegedly infringing use] was prepared or otherwise authorized" by the plaintiff, 996 F.2d at 1379, and that this determination "must be made, in the first instance, by application of the venerable *Polaroid* factors." Id. (citing Cliffs Notes, 886 F.2d at 495 n. 3).

Applying the Polaroid factors is fact-intensive, and resolving the likelihood of confusion on a motion to dismiss posture is not appropriate. See, e.g., Deere & Co. v. MTD Prods., Inc., No. 00-CV-5936 (LMM), 2001 WL 435613, at *1 (S.D.N.Y. Apr. 30, 2001). The amended complaint contains sufficient factual allegations to support a conclusion of explicit misleadingness under the Polaroid factors -- particularly as to the strength of the Birkin mark, evidence of actual confusion,[4] and the junior user's bad faith in adopting the mark.[5] See Polaroid Corp., 287

---

[4] As noted above, the amended complaint contains evidence on of actual confusion on the part of both consumers and the media about Hermès's affiliation with Rothschild's MetaBirkins collection, believing there is such an affiliation and mistakenly reporting it as such. Am. Compl. ¶¶ 114-15, 117-19.

[5] As noted above, Rothschild described his MetaBirkins images as "a tribute to Herm[è]s' most famous handbag, the Birkin." Id. ¶ 94. Rothschild stated in an interview that he "wanted to see as an experiment if [he] could create that same kind of illusion that [the Birkin bag] has in real life as a digital commodity." Am. Compl. Ex. Y. He further observed in that interview that the difference between a real-life luxury bag and the NFT versions "is

F.2d at 495 (noting factors include (1) the strength of the plaintiff's mark; (2) the similarity of the marks; (3) the competitive proximity of the products in the marketplace; (4) the likelihood that the senior user will "bridge the gap" by moving into the junior user's product market; (5) evidence of actual confusion; (6) the junior user's bad faith in adopting the mark; (7) the respective quality of the products; and (8) the sophistication of the consumers in the relevant market). The amended complaint's allegations may not be overwhelming evidence of explicit misleadingness, but they are sufficient to survive a motion to dismiss.

Moreover, even under Rothschild's theory of the explicitly misleading analysis, the amended complaint survives the motion to dismiss. Rothschild argues that (1) that explicit misleadingness cannot be established by use of the mark alone; (2) that evidence of confusion alone is not sufficient to prove explicit misleadingness; and (3) that evidence of confusion must relate to the nature of the behavior of the identifying material's user, not the impact of the use.

---

like getting a little bit blurred now because we have this new outlet, which is the metaverse, to showcase, showcase them in our virtual worlds, and even just show them online." Id.

As to the first two arguments, the amended complaint alleges more than simply use or actual confusion. And as to the third, even assuming *arguendo* this were correct, the amended complaint contains sufficient factual allegations as to Rothschild's behavior -- not just the impact of the use on consumers, the media, and the public, but also that Rothschild himself made statements that are plausibly interpreted as explicitly misstatements and that this engendered the confusion on the part of consumers. See, e.g., Am. Compl. ¶ 94; Am. Compl. Ex. Y.[6]

Because the amended complaint includes sufficient allegations of explicit misleadingness either as a function of likelihood of confusion under the Polaroid factors or under Rothschild's own theory of the explicitly misleading analysis, the Court denies the motion to dismiss the trademark infringement claims.[7]

_____

[6] Rothschild further argues that Rogers shows as a matter of law that the "MetaBirkins" title here is not misleading. Rogers includes examples of titles that are explicitly misleading: "Nimmer on Copyright" when the treatise was not authored by Nimmer, or "Jane Fonda's Workout Book" when the book was unrelated to Jane Fonda. 875 F.2d at 999. But those examples are relevant to the alleged infringement there, as to Ginger Rogers's name, and are by no means inconsistent with finding that the title "MetaBirkins," when the digital images tied to the NFTs have nothing to do with Hermès, is explicitly misleading.

[7] Rothschild argues in the alternative that Dastar Corp. v. Twentieth Century Fox Film Corp. bars Hermès's claims because the allegedly infringing use concerns digital images and not "tangible" goods. 539 U.S. 23 (2003). Rothschild argues that Dastar

## II.  The Amended Complaint's Other Claims

Rothschild argues that Hermès's remaining claims for, *inter alia*, trademark dilution and cybersquatting, rise and fall with the First Amendment defense to the trademark infringement claims and the application of the Rogers test: that if Rogers protects Rothschild's "MetaBirkins" uses against trademark infringement claims, it even more clearly protects against trademark dilution and cybersquatting claims. See ECF No. 27 at 22-25. Rothschild does not otherwise contend that the amended complaint lacks sufficient factual allegations to plausibly allege trademark dilution or cybersquatting. Because, as discussed in above, the Court concludes that the Rogers test does not support dismissing the trademark infringement claims at the pleadings stage, the Court

---

stands for the proposition that confusion about origin or sponsorship of (intangible) creative content is not actionable under the Lanham Act, which only covers confusion about origin or sponsorship of physical goods. Dastar, 539 U.S. 23 (2003). Under this argument, because the digital images associated with the "MetaBirkins" NFTs are "intangible creative content," and not physical goods, the Lanham Act does not cover confusion about their origin or sponsorship. This, however, is an unduly narrow reading of Dastar, which held that Section 43(a) of the Lanham Act does not prevent the unaccredited copying of an uncopyrighted work. Id. at 37. The Supreme Court rejected an argument that the Lanham Act provided trademark protection akin to copyright rights by distinguishing between creative ideas and "tangible goods that are offered for sale." Id. The Court thus rejects Rothschild's argument that Hermès's trademark infringement claims are barred under Dastar.

also denies the motion to dismiss the trademark dilution and cybersquatting claims.

### CONCLUSION

For the aforementioned reasons, and as the Court stated by bottom-line order dated May 5, 2022, see ECF No. 49, the Court denies Rothschild's motion to dismiss the amended complaint. The Clerk of Court is directed close the entry at docket number 26.

SO ORDERED.

Dated:   New York, NY

May 18, 2022

JED S. RAKOFF, U.S.D.J.

-20-