UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HERMÈS INTERNATIONAL and HERMÈS OF PARIS, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> MASON ROTHSCHILD, <br><br> Defendant. | CIVIL ACTION NO. <br><br> 22-CV-00384 (JSR) (GWG) <br><br><br> **STIPULATED PROTOCOL AND [~~PROPOSED~~] ORDER GOVERNING THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

Plaintiffs Hermès International and Hermès of Paris (collectively, "Plaintiffs") and Defendant Mason Rothschild ("Defendant") (Plaintiffs and Defendant, collectively, "Parties," and individually, a "Party") having agreed to the following terms of a protocol (the "Protocol") for the production of electronically stored information ("ESI") and discoverable documents originating from hard copy sources and pursuant to the Federal Rules of Civil Procedure ("FRCP") and subject to the parties' Protective Order, entered by the Court on September 13, 2022 ("Protective Order") (Dkt. No. 57), it is therefore hereby:

ORDERED that the Parties shall adhere to the following terms, upon pain of contempt:

**General Provisions**

1. As used herein, the "Requesting Party" means the party requesting production of documents. As used herein, the "Producing Entity" means the party or third party that may be producing documents in response to the request of the Requesting Party. As used herein, the words "Party" or "Parties" include the Requesting Party and the Producing Entity.

2. "Data Protection Laws" means all laws and regulations, including laws and regulations of the European Union, the European Economic Area and their member states,

Switzerland, the United Kingdom, and the United States and its states, applicable to the processing of Personal Data in connection with this litigation.

3. "Personal Data" means any information that a Party believes in good faith to be subject to federal, state, or foreign Data Protection Laws that protect and regulate the use, storage, and transfer of data of natural persons. Personal Data constitutes highly sensitive materials requiring special protection. Examples of such Data Protection Laws include, without limitation, Regulation (EU) 2016/679 of the Parliament and of the Council of 27 April 2016 on the Protection of Natural Persons with Regard to the Processing of Personal Data and on the Free Movement of Such Data, and repealing Directive 95/46/EC ("General Data Protection Regulation" or "GDPR"); the laws implementing the GDPR in the Member States of the European Union and the European Economic Area; the GDPR as it forms part of the law of England and Wales, Scotland and Northern Ireland by virtue of section 3 of the European Union (Withdrawal) Act 2018 and as amended by Schedule 1 to the Data Protection, Privacy and Electronic Communications (Amendments etc.) (EU Exit) Regulations 2019 (SI 2019/419) ("UK GDPR"); the UK Data Protection Act 2018; and the Federal Act on Data Protection of Switzerland.

4. The parties, and their professional vendors, shall have in place, at a minimum, physical, technical, administrative, and organizational safeguards that provide for and ensure: (a) protection of business facilities, servers, computing equipment, including without limitation all mobile devices and other equipment with information storage capability, and backup systems; (b) network, application (including databases), and platform security; (c) secure transmission and storage of ESI, including encryption that meets or exceeds current industry standards or other equally protective measures; (d) authentication and access control mechanisms over media, applications, operating systems, and equipment; (e) personnel security and integrity, including

background checks where consistent with applicable law; and (f) storage limitations such that the ESI reside only on servers in data centers that comply with industry standard data center security controls, and restrictions to ensure that ESI is not placed on any notebook hard drive or removable media, such as compact disc or flash drives, unless encrypted. The Parties agree that ESI containing Personal Data may require additional safeguards pursuant to Data Protection Laws and will meet and confer to implement these safeguards if and when needed.

5. This Protocol applies to the ESI provisions of FRCP 16, 26, 33, 34, and 37. This Protocol also applies to FRCP 45, if agreed to by the recipient of any document request or subpoena issued pursuant to that rule, in all instances in which the provisions of FRCP 45 are the same as, or substantially similar to, the provisions of FRCP 16, 26, 33, 34, and 37. Nothing in this Protocol shall be deemed to prevent any Parties from agreeing to terms different than or inconsistent with the terms of this Protocol.

6. Nothing in this Protocol shall be deemed to constitute a waiver of any objections a Producing Entity may have with respect to any document request.

7. This Protocol is intended to be consistent with FRCP 26(b)(1). Nothing in this Protocol shall obligate a Party to preserve ESI outside the scope of permissible discovery under FRCP 26(b)(1).

**Documents From Hard Copy Sources**

8. **Form of Production.** The Parties will produce documents originating from hard copy sources ("Hard Copy Documents") and attachments in Group IV single-page TIFF format (black and white, 300 dpi) with corresponding searchable OCR text, along with the below-listed metadata fields when available. The Parties will provide a standardized load file compatible with

Relativity and with a Bates number field included in the load file to match text and metadata with TIFF images. With respect to Hard Copy Documents, data in the load file will include:

    a. Beginning Document Bates Number;
    b. Ending Document Bates Number;
    c. Beginning Family Bates Number (the first page of the first document in a family);
    d. Ending Family Bates Number (the last page of the last document in a family);
    e. Custodian or Source;
    f. All Custodians;
    g. Confidentiality Designation;
    h. Redacted (Y/N); and
    i. Text File Path (providing the location in the production load file for the text file).

**Electronically Stored Information:**

9. **Identification of Responsive Documents.** The Producing Entity shall conduct a reasonable and good faith search for potentially responsive documents and ESI under the FRCP and shall undertake a good faith effort to segregate ESI that is not subject to discovery. To filter ESI for relevancy prior to review and production, a Producing Entity may, among other things, do one or more of the following, so long as the process used meets the standard of care promulgated in FRCP 26(g): (i) use keyword search terms that it in good faith believes will capture responsive ESI and review search term hits for responsiveness; (ii) limit the collection and review of ESI to the custodians the Producing Entity reasonably believes have unique documents responsive to the document requests; (iii) limit the collection and review of ESI to a reasonable date range based on the claims asserted; or (iv) use technology assisted review ("TAR") techniques.

    a. The Parties will meet and confer and attempt in good faith to reach agreement regarding the scope of preservation, search methods used to identify and search ESI for potentially responsive documents, custodians, data sources, and a reasonable date range.

b.  Should the Producing Entity decide to use search terms, it will propose an initial list of keyword search terms to the Requesting Party. The Requesting Party may suggest additional or modified keyword search terms for consideration by the Producing Entity. The Producing Entity will include any such search terms that are acceptable to the Producing Entity, inform the Requesting Party of objectionable search terms and propose alternative terms. The Parties shall work to resolve any disagreements and agree to search terms in good faith.

c.  Any TAR techniques to be used to cull or eliminate documents to be produced must be disclosed to the Requesting Party. The Parties will meet and confer in good faith regarding such use of TAR techniques prior to implementation by any Party to cull or eliminate documents to be produced. For the avoidance of any doubt, a Producing Entity is at liberty to use any TAR methodology and use any tool for the purpose of prioritization and/or expediting the review and need not disclose these techniques to the Requesting Party if such TAR techniques are not used for culling ESI.

d.  The Parties will meet and confer and attempt in good faith to reach agreement regarding protocols for searching mobile devices, direct or instant messaging, chat applications or social media data, should such data come to be identified as a data source containing potentially responsive ESI subject to review and production.

e.  Nothing in this Protocol shall prevent any Party from conducting a manual review of documents after application of any search methodologies for responsiveness, privilege, and confidentiality.

f.  If the Parties meet-and-confer in good faith and fail to reach agreement regarding search and culling methodologies, each Party may seek relief from the Court.

10. **Form of Production.** Except for those documents noted in Paragraphs 13 and 24 of this Protocol, the Parties will produce documents originating as ESI in Group IV single page TIFF format (black and white, using Group 4 compression with at least 300 dpi) with extracted text (where not subject to claims of privilege or the work product doctrine), along with the below-listed metadata fields when available. After initial production in image file format is complete, a Party must demonstrate particularized need for production of ESI in its native format. The parties will provide a standardized load file compatible with Relativity with a Bates number field included in the load file to match text and metadata with TIFF images. With respect to ESI, data on the load file will include the following, if available:

   a. Beginning Document Bates Number;
   b. Ending Document Bates Number;
   c. Beginning Family Bates Number (the first page of the first document in a family);
   d. Ending Family Bates Number (the last page of the last document in a family);
   e. Custodian or Source;
   f. All Custodians;
   g. Confidentiality Designation;
   h. Redacted (Y/N);
   i. Email Thread Family ID (if email threading is used by Producing Entity- unique identifier from email threading algorithm to denote emails from a single thread and all attachments)

6

      j.      Document Date and Time;[1]
      k.     File Name (including extension);
      l.      File Extension;
      m.    From;
      n.     To;
      o.     CC;
      p.     BCC;
      q.     Subject;
      r.      Time Zone ;
      s.     Text File Path (providing the location in the production load file for the text file);
      t.      Native file path (providing the location in the production load file for documents produced in native format); and
      u.     MD5 Hash Values (or alternatively agreed upon Hash Standard).

11. **Time Zone.** To the extent reasonably practicable, ESI shall be processed and standardized to the Eastern time zone.

12. **Redactions.** In the event that the Producing Entity finds that redactions are needed to protect from disclosure documents and ESI subject to the attorney-client privilege, work product

---

[1] The Parties will ensure that this metadata field conforms with one of the following formats and the Parties will endeavor to be consistent across productions as to which format they use – except that in the time fields, the Producing Entity does not need to provide the seconds of any document being produced (e.g., no "SS"):

**Accepted Date & Time Formats**

| Format | Date and Time in one field (example) |
|---|---|
| Month-Day-Year HH:MM:SS AM or PM | 09-17-2014 1:23:45 AM |
| Month-Day-Year HH:MM:SS | 09/17/2014 13:23:45 |
| Month Day, Year, HH:MM:SS CST | Sept 17, 2014 1:23:45 CST |
| Month Day, Year, HH:MM:SS AM or PM | October 2, 2019 1:23:45 AM |
| Mon Day Year Time+offset | Mar 1 2020 1:23:45+00:00 |

doctrine, or any other applicable privilege, legal requirement, or immunity, documents may be produced with redactions in TIFF format with corresponding redactions in the searchable OCR text and the associated metadata for the document, ensuring the redacted content is fully protected from disclosure. In the event that the Producing Entity finds the redaction of certain documents in image form to be overly burdensome, it may elect to redact such documents in their native form. Any metadata fields for redacted documents that would reveal privileged information shall be excluded. The Parties may redact (i) previously nondisclosed financial information (including without limitation profitability reports or estimates, percentage fees, design fees, royalty rates, minimum guarantee payments, sales reports and sale margins); (ii) previously nondisclosed material relating to ownership or control of any non-public company; (iii) previously nondisclosed business plans, product development information, or marketing plans; (iv) any information of a personal or intimate nature regarding any individual; or (v) any other category of information hereinafter given confidential status by the Court. Without derogating from the aforesaid, any Party may redact from any disclosures any Personal Data, including without limitation, personnel files, personal contact information and any personal identifiers. If the same responsive information is otherwise available and not subject to Data Protection Laws, such information should be produced consistent with the terms of this Protocol which provides adequate protection without the need for redaction. Certain Personal Data may compel alternative or additional protections beyond those afforded by redaction or confidentiality designation, in which event the Parties shall meet and confer in good faith to discuss such protections that may include entry into additional legal instruments such as entry into data transfer agreements (including EU Standard Contractual Clauses or Standard Contractual Clauses as required for transfers of Personal Data from the United

Kingdom or Switzerland) and/or anonymization or pseudonymization, and, if unsuccessful, shall seek assistance from the Court.

13. **Native Productions.** The parties agree in Paragraph 10 that ESI shall be produced as TIFF images with an accompanying data load file, which will contain the ESI metadata listed in Paragraph 10. The exception to this rule shall be the following:

   a. The Parties will produce spreadsheets (*e.g.*, Microsoft Excel) and presentation (*e.g.*, Microsoft PowerPoint) files not requiring redaction in native format. Spreadsheets and presentation files requiring redaction will either be redacted in native format or will be converted to TIFF images and have the images redacted. Where native redactions are undertaken, the spreadsheet or presentation file will clearly reflect any redactions and the Redacted metadata field will be populated to reflect that redaction. The Parties may consider whether information contained in spreadsheets is available and should be produced from a structured data source from which the spreadsheets are generated.

   b. The Parties will produce in native format those documents and ESI that do not convert well to TIFF images (*e.g.*, oversized drawings, audio, and video files), or the Producing Entity will ask the Receiving Party to meet and confer regarding a reasonable alternative form of production.

   c. All documents produced in native format will be accompanied by a placeholder (a single-page TIFF image slip sheet) stating that the document is produced in native format. The placeholder will be branded with the production number in the lower righthand corner and the phrase or

substantially similar phrase "PRODUCED IN NATIVE ONLY" branded in the center of the page. The Producing Entity will also brand any confidentiality or similar endorsements in the lower left-hand corner of the placeholder. All documents produced in native format will have the Native File Path metadata field populated with a link to the native file in the production load file. The file name for documents produced in native format will consist of a Bates number and a confidentiality designation if available.

14. **Color/Pictures.** Notwithstanding the form of production identified in Paragraphs 8 and 10, the Parties will produce color images of electronic documents containing color where color versions are necessary to adequately understand the document. If good cause exists for the Requesting Party to request production of certain documents that were produced in black-and-white in color, the Requesting Party may request production of such documents in color by providing (i) a list of the Bates numbers of documents it requests to be produced in color format; and (ii) an explanation of the need for production in color format. The Parties may produce pictures in native format, color TIFF, color PDF, or JPEG format when color images are reasonably available. To the extent pictures are not produced in color, the Parties will accommodate reasonable and proportional requests for the production of color pictures on a case-by-case basis.

15. **Deduplication.** The Parties may perform de-duplication of ESI within and across custodians according to MD5 or SHA-1 hash values and produce only a single copy of identical ESI. De-duplication shall not break up document families. The Producing Entity shall not withhold an attachment as duplicative if the full family is not duplicative of another full family. All custodians of a de-duplicated document must be identified in the "All Custodians" metadata

field specified in Paragraph 10. If the Parties de-duplicate ESI, they shall provide custodian associations in a semi-colon delimited field that includes duplicate custodian name information for the duplicate custodians. No later than the substantial completion of document production, the Parties will provide an overlay data file if needed to account for updated duplicate custodian information in the Duplicate Custodian field.

16. **Parent-Child Relationships.** Parties shall preserve parent-child relationships (the association between an attachment and its parent document) where possible. The Parties will provide a Beginning Family Bates Number and Ending Family Bates Number for each produced document in the data load file. The parties agree that the extraction of MS Office embedded images, MS Office embedded objects and email inline images is not required.

17. **Bates Numbering.** The Parties shall assign a Bates number to individual pages of TIFF documents and a Bates number to each document and its associated placeholder image produced in native format. Bates numbers shall be unique across the entire document production and sequential within a given document and document family.

18. **Threading.** The Parties may use email thread suppression to avoid review and production of information contained within an existing email thread in another document being reviewed and produced, but under no circumstances will email thread suppression eliminate (a) the ability of a Requesting Party to identify every custodian who had a copy of a produced document or email, or (b) remove from a production any unique branches and/or attachments contained within an email thread.

19. When documents produced in accordance with this Protocol are used in any proceeding herein, including depositions, hearings, or trial, the Bates stamped production image of documents as described in Paragraph 9 shall be the copy used, if available. Where the document

to be used was produced in native format, the Party intending to use the document may create an image of such document *so long as* (a) the image generated by the Party includes the Bates number and confidentiality designation assigned to the document at the time of production, (b) the image generated by the Party is clearly marked as one that was produced in native format, (c) the Party using the image verifies that the image is authentic to the document as produced in native format, and (d) if the image generated by the Party excerpts information from the native document, the image is clearly marked as an "Excerpt." Extracted text files shall not be used in any proceeding as a substitute for the image of any document. This Paragraph does not apply to any summary exhibits or demonstratives under FRCP.

20. Unless otherwise ordered by the Court, each Party will bear the costs to process and review its own documents according to this Protocol. Notwithstanding this Paragraph, nothing in this Protocol limits or prohibits a prevailing party from seeking recovery of all allowable fees and costs, including attorneys' fees and costs, as may be permitted under applicable law and the FRCP.

21. Nothing in this Protocol shall be construed to affect, modify, or amend the Parties' Protective Order filed with the Court, or to require disclosure of either irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.

22. Nothing in this Protocol shall be construed to affect the discoverability or admissibility of any document or data. All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at any time in accordance with the applicable FRCP.

**Production of Databases and Other Structured Data**

23.     Where a discovery request requires production of structured data, the Parties shall meet and confer to determine the most reasonable format of production based on the specific circumstances and the content and format of a data extraction from such structured data source. The Parties reserve all rights to object, including but not limited to objections for relevance, undue burden, and/or inaccessibility.

24.     If ESI in commercial or proprietary database format can be produced in an already existing and reasonably available report form, the Parties will produce the information in such a report form, in the reasonably usable format (e.g., Excel, CSV, PDF, TIFF or other image format). If an existing report form is not reasonably available, the Parties will meet and confer to attempt to identify a mutually agreeable form of production.

**Other Data Sources**

25.     The Parties share a desire to ensure that ESI is produced in an acceptable, searchable format. The Parties recognize that certain, limited ESI may not be amenable to the proposed technical specifications. The Parties will meet and confer in good faith to attempt to reach agreement regarding these issues and the appropriate form of production and will seek Court intervention if necessary.

**Prior Productions/Productions from Other Proceedings**

26.     Notwithstanding anything to the contrary herein, production of documents made by a Producing Entity in other civil investigations, litigations, and/or administrative actions by federal, state, or local government entities, if relevant to this litigation may be made in the format in which they were previously produced, including any previously produced metadata, load files and accompanying text files, and same Bates numbers and confidentiality designations. This

Paragraph addresses the format of production only and does not impose any obligation to produce documents produced in other proceedings.

**Confidentiality Designation**

27. If a particular document has a confidentiality designation, the designation shall be stamped on the face of all TIFF images pertaining to such document, in the lower left-hand corner of the Document, or as close thereto as possible while preserving the underlying image. To the extent responsive documents are produced in native format, confidentiality designations will be identified in the file name and on the placeholder tiff image, unless native redactions are employed.

28. **Assertion of Privilege.**

   a. For any document or ESI (including, without limitation, metadata) received by a Party that subject to a legally recognizable privilege, immunity, or other right not to produce such information ("Inadvertently Disclosed Information"), the Receiving Party shall follow the procedures outlined in Paragraphs 10-15 of the Protective Order which shall govern all instances of production of Inadvertently Disclosed Information.

   b. Nothing in this Paragraph is intended to or will limit the protection of Federal Rule of Evidence 502(d); Federal Rule of Evidence 502(b) shall not apply to this Protocol.

   c. The Parties may withhold documents from production by designating the documents privileged pursuant to a claim of attorney-client privilege, work product protection, or other applicable privilege or immunity. Where a fully privileged or protected document is being withheld from production and is in a document family with relevant, non-privileged documents, the

privileged document will be replaced in the production with a placeholder image stating that the privileged document is being withheld from production. For such documents, the only metadata fields that need to be provided in the load file are the Bates number fields.

d. **Privilege Logs.** To the extent ESI is withheld from production on the basis of the attorney-client privilege or the work product doctrine, the Producing Entity shall produce a privilege log of withheld documents dated on or after January 14, 2022. Prior to generation of a privilege log, the Parties shall meet and confer in a good faith effort to reach agreement on the manner in which a privilege log will be generated and the contents of such a log. The Parties shall consider whether the nature and volume of the privileged documents and ESI warrants category-by-category privilege logs, document-by-document privilege logs, metadata log, or some combination of these approaches.

e. The following documents presumptively need not be included on a privilege log:

   1. Communications exclusively between a Party and its outside counsel regarding this litigation dated prior to January 14, 2022.

   2. Work product created by outside counsel, or by an agent of outside counsel other than a Party, testifying expert, or third-party vendor, regarding this litigation dated prior to January 14, 2022.

3. Redacted documents need not be logged if the nature of the privileged or protected information is evident on the face of the document.

**Burden; Deficiency Procedure**

29. If the forms of production allowed by this Protocol present an undue burden or cost for a Producing Entity, the Parties shall meet and confer to try to agree on a reasonable, alternative form of production.

30. If, after meeting and conferring in good faith with the Producing Entity, the Requesting Party has good cause to believe that a Producing Entity's discovery efforts with respect to the collection, review or production of ESI have been deficient, the Requesting Party will file a motion with the Court for the purpose of resolving the disagreement.

**SO STIPULATED AND AGREED.**

Dated: July 11, 2022

/s/ Gerald J. Ferguson
**BAKER & HOSTETLER LLP**
Gerald J. Ferguson, Esq.
Oren J. Warshavsky, Esq.
Kevin M. Wallace, Esq.
45 Rockefeller Plaza, 14th Floor
New York, NY 10111
Telephone: 212.589.4200

**BAKER & HOSTETLER LLP**
Deborah A. Wilcox, Esq. (*pro hac vice*)
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114
Telephone: 216.621.0200

*Attorneys for Plaintiffs*

Dated: July 11, 2022

/s/ Rhett O. Millsaps
**LEX LUMINA PLLC**
Rhett O. Millsaps II, Esq.
Rebecca Tushnet, Esq.
Christopher J. Sprigman, Esq.
Mark McKenna, Esq. (*pro hac vice*)
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: 646.898.2055

*Attorneys for Defendant*

**SO ORDERED.**

Dated: 9/13/22
New York, New York

Jed S. Rakoff, U.S. District Judge