UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
---------------------------------------
HERMÈS INTERNATIONAL and
HERMÈS OF PARIS, INC.,

            Plaintiffs,

    -against-

MARTIN ROTHSCHILD,

            Defendant.
---------------------------------------
```

22-cv-384 (JSR)

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.

Few presumptions are as integral to judicial efficiency in the federal courts as the one against granting interlocutory review. Time and again, federal courts have recognized that the "result of permitting interim appeals is vexatious and duplicative litigation, prolonged uncertainty, and endless delay." Picard v. Katz, 466 B.R. 208, 208 (S.D.N.Y. 2012); see Westwood Pharmaceuticals, Inc. v. Nat'l Fuel Gas Dist. Corp. 964 F.2d 85, 89 (2d Cir. 1992). And, following on the pandemic, when litigants have been asked to wait longer and expend greater resources before their disputes are resolved, the Court's duty to exercise great care when considering a request for interlocutory review has seldom been more pressing. Interlocutory appeals should thus be reserved for only the most exceptional circumstances, where they would not "derail the orderly conduct of lawsuits and result in piecemeal

... litigation." <u>SEC v. Citigroup Global Markets Inc.,</u> 827 F. Supp. 2d 336, 337 (S.D.N.Y. 2011).

Here, the defendant, Martin Rothschild, moves to certify an interlocutory appeal of the Court's decision to deny his motion to dismiss the claims of Hermès International and Hermès of Paris, Inc. (collectively, "Hermès") that Rothschild has violated Hermès's trademark rights under the Lanham Act, 15 U.S.C. § 1125. <u>See</u> Dkt. 52. Having carefully considered the parties' submissions, the Court concludes that this is not an exceptional case that warrants immediate appellate review, and therefore denies Rothschild's motion in full.

## BACKGROUND

The Court here assumes general familiarity with the facts of this case, which, for present purposes, must be taken most favorably to the plaintiff. <u>See</u> Memorandum Order Denying Motion to Dismiss, Dkt. 50 ("Order"). In brief, the Amended Complaint alleges as follows: Hermès is a luxury fashion company known for, among other things, designing and producing the Birkin handbag. Am. Compl. ¶¶ 27, 29, 33, 37. Since its inception in 1984, the Birkin has been virtually synonymous with high fashion, exclusivity, and wealth. Indeed, the handbag is so highly coveted -- the waiting list for one is reported to be two years long -- that a single Birkin can fetch hundreds of thousands of dollars at auction. <u>Id.</u> ¶ 37, Ex. I at 3. Hermès owns trademark rights in the "Hermès" and

"Birkin" marks as well as trade dress rights in the design of the handbag. Id. ¶¶ 34-36.

The defendant, Martin Rothschild, is an "entrepreneur" who, in 2011, designed and marketed a collection of digital images depicting faux-fur-covered Birkin handbags titled "MetaBirkins." Id. ¶ 1. As explained in detail in the Court's prior Order, Rothschild used non-fungible tokens ("NFTs") to sell these images. See Order at 2-3; Am. Compl. ¶ 4. Like the physical Birkin handbag itself, MetaBirkins are extremely valuable commodities: the NFTs have sold for over a million dollars collectively. Id. ¶ 120.

Consumers and media outlets have expressed actual confusion as to whether Hermès is affiliated with Rothschild's line of NFTs, with many believing it to be the product of a partnership between the two. Id. ¶¶ 114-19. Indeed, Rothschild has often portrayed his collection as "a tribute to [Hermès's] Birkin." Id. ¶ 94.

## LEGAL STANDARD

A district court may certify an issue for interlocutory review only if it decides that an order "involves a controlling question of law as to which there is substantial ground for difference of opinion" and, separately, "that an immediate appeal [of the issue] may materially advance the ultimate termination of the litigation." See 28 U.S.C. § 1292(b).

For purposes of the statute, "a question of law [is one] that the reviewing court could decide quickly and cleanly without having

to study the record," and such question is considered "controlling if reversal of the district court's order would terminate the action." <u>Youngers v. Virtus Investment Partners, Inc.</u>, 228 F. Supp. 3d 295, 298 (S.D.N.Y. 2017). To establish that there is a substantial "difference of opinion" between courts that warrants interlocutory review, litigants must do more than just "claim that the court's ruling was wrong" or point to modest disagreements between different courts on an issue in dispute. <u>Mills v. Everest Reinsurance Co.</u>, 771 F. Supp. 2d 270, 273 (S.D.N.Y. 2009). They must show that courts are in clear conflict with one another on the subject and that the "issue is <u>particularly</u> difficult and of first impression for the [reviewing court]." <u>Youngers</u>, 228 F. Supp. 3d at 299 (emphasis added).

As this Court has repeatedly emphasized, "[t]his provision imposes a high standard." <u>See, e.g.</u>, <u>Prout v. Vladeck</u>, 319 F. Supp. 3d 741, 746 (S.D.N.Y. 2018). Interlocutory appeals are designed to be rare and reserved for exceptional circumstances, lest they disrupt the orderly disposition of lawsuits in their due course. <u>See</u> <u>Citigroup</u>, 827 F. Supp. 2d at 337.

## DISCUSSION

With this standard in mind, Rothschild identifies two issues in the Court's Order as appropriate for interlocutory appeal. The first issue is Rothschild's disagreement with the Court's determination that there are sufficient factual allegations in the

4

Amended Complaint to survive a First Amendment challenge under the Second Circuit's <u>Rogers v. Grimaldi</u> test.[1] <u>See</u> 875 F.2d 994 (2d Cir. 1989); Order at 13 ("[T]he Amended Complaint contains sufficient factual allegations that [Rothschild's] use of [Hermès's] trademark is not artistically relevant and that the use of the trademark is explicitly misleading as to the source or content of the work.")

The second issue is Rothschild's argument that the thrust of the Supreme Court's decision in <u>Dastar Corp. v. Twentieth Century Fox Film Corp</u>. is to restrict the scope of the Lanham Act to the misuse of trademarks in the sale of tangible goods, whereas here the goods are intangible. <u>See</u> 539 U.S. 29 (2003).

---

[1] In <u>Rogers v. Grimaldi</u>, the Second Circuit determined that the use of a trademark can serve artistic functions that are protected by the First Amendment. 875 F.2d 994 (2d Cir. 1989); <u>see also</u> <u>Cliff Notes v. Bantam Doubleday Dell Pub. Group</u>, 886 F.2d 490, 495 (2d Cir. 1989) (averring that the <u>Rogers</u> test is "generally applicable to Lanham Act claims against works of artistic expression"). In such cases, the interests of the First Amendment must be balanced with the protection afforded by the Lanham Act under a separate standard, colloquially known as the <u>Rogers</u> test.

Courts applying this test must make three related inquiries. They must first determine whether the work is one "of artistic expression" and thus <u>prima facie</u> entitled to protection under the First Amendment. <u>Rogers</u>, 875 F.2d at 997. If it is, the Court will then ask whether the use of the trademark bears any "artistic relevance to the underlying work." <u>Id</u>. at 999. This is a low bar: the use of trademarks in artistic works almost always pass the "low threshold of minimum artistic relevance." <u>Id.</u> Third, even where courts are satisfied that the use of the trademark is artistically relevant, a work is not entitled to protection if it is "explicitly misleading as to [its] source or content." <u>Id.</u>

For the reasons stated below, the Court concludes that both of the issues on which the defendant seeks interlocutory review fail to satisfy one or more of the requirements of 28 U.S.C. § 1292(b).

I.   **The Supreme Court's Rogers v. Grimaldi Decision**

A. The Ruling on "Artistic Relevance"

As noted, Rothschild seeks to appeal the Court's determination that the Amended Complaint sufficiently alleged that Rothschild's use of Hermès's trademarks was not artistically relevant to the MetaBirkins. "The Order's failure to find artistic relevance," Rothschild urges, "is legal error" and thus immediately reviewable under 28 U.S.C. § 1292(b). Def's Br. at 7.

But an issue is not a legal one just because the defendant says it is. In its Order, the Court found that there were sufficient factual allegations in the Amended Complaint that Rothschild used the trademarks to associate his NFTs with the immense popularity of the Birkin bags, rather than as an artistic statement. In doing so, the Court plainly did not resolve a pure question of law, as is required by 28 U.S.C. § 1292(b): it applied the "artistic relevance" element of the Rogers test to the alleged facts, taken to be true, contained in the Amended Complaint.

This Court has made clear over the course of adjudicating countless requests for interlocutory appeal that questions that are dependent on the particular facts of a case are not "the type

6

of questions that are suited for interlocutory appeal." <u>In re Refco</u> <u>Inc. Sec. Litig.</u>, 2014 WL 1302857 at *1 (S.D.N.Y. Mar. 19, 2014); <u>Weber v. United States</u>, 484 F.3d 154, 158 (2d Cir. 2007). This rule makes good sense. Questions that turn on factual allegations that have not yet been subject to any discovery or summary judgment motion practice but simply have to be taken most favorably to the plaintiff in their current state are better addressed after discovery is complete because, experience shows, reviewing courts with a complete record in hand are able to resolve disputes between litigants in a more accurate and efficacious manner. Moreover, discovery in the instant case concluded on September 23, 2022 and the matter is firmly scheduled to be ready for trial by November 4, 2022. "When the trial of this proceeding is completed and final judgment entered, just a few months from now, an appellate court will be able to review [the ruling] on a full record." <u>Picard</u>, 462 B.R. at 210.

Rothschild responds that, because "the threshold for 'artistic relevance' is intended to be low," this issue functionally amounts to a question of law appropriate for interlocutory appeal. <u>See</u> <u>Rogers</u>, 875 F.2d at 999 (determining that the use of a trademarked title is artistically relevant unless that title "has <u>no</u> artistic relevance to the underlying work whatsoever"). But an issue that involves the application of law to alleged facts is not, at bottom, a purely legal one. Defendant's

motion on this issue thus fails to meet the unambiguous requirements of the statute, which allows this Court to grant interlocutory appeal only on pure questions of law.

And to take this analysis one step further, Rothschild's arguments would fail to persuade even if one assumes he is seeking review on a purely legal issue. That is because the Court's disposition of the first Rogers question would not be "controlling" as that term is defined by 28 U.S.C. § 1292(b). Put simply, a court that determines that the use of a trademark was "artistically relevant" to the underlying work must still decide whether the defendant's work was "explicitly misleading" as to its source and thereby not entitled to First Amendment protection. Because reversing the Court on the "artistic relevance" point would not by itself terminate the litigation, interlocutory appeal is doubly unwarranted.

B.  The Ruling on "Explicit Misleadingness"

Rothschild also seeks interlocutory review of the Court's ruling -- after it applied the Polaroid factors for consumer confusion[2] -- that Rothschild, based on the Amended Complaint, may

---

[2] In Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492 (2d Cir. 1961), the inimitable Judge Friendly articulated several factors that courts should consider when deciding whether the use of a mark is likely to generate consumer confusion. The Second Circuit later clarified that these factors should also be used to determine whether a particular work was explicitly misleading as to its origin under Rogers v. Grimaldi. See Twin Peaks Prods., Inc. v. Publ'ns Int'l Ltd., 996 F.2d 1366, 1379-80 (2d Cir. 1993)

have been "explicitly misleading" as to the source of his MetaBirkins. See 287 F.2d 492 (2d Cir. 1961). His reasoning is two-fold: first, that the Court erred in finding there are sufficient allegations in the Amended Complaint that Rothschild's work was explicitly misleading, and second, that the Court should not have applied the Polaroid factors to assess consumer confusion because they are relevant only where the title of one work allegedly infringes the trademark of another work -- so-called "title-vs-title" conflicts. Neither argument provides persuasive grounds for certifying an immediate appeal under § 1292(b).

The first argument for appeal on this issue can be dismissed in much the same way as Rothschild's earlier contentions. The Court's determination that ¶ 94 of the Amended Complaint contains sufficient allegations of explicit misleadingness to survive a motion to dismiss plainly involves the application of a legal standard to alleged facts that have not yet been fleshed out, modified, and placed in context by the further record available after discovery. In such a posture, interlocutory appeal is ordinarily inappropriate under § 1292(b).

---

(emphasizing that deciding whether a defendant's use of a mark "is misleading in ... that it induces members of the public to believe [the allegedly infringing use] was prepared or otherwise authorized" by the plaintiff "must be made, in the first instance, by application of the venerable Polaroid factors" (citing Cliff Notes, 886 F.2d 490)).

With respect to the second argument, it is true that deciding whether to restrict application of the Polaroid factors to title-vs-title conflicts is a pure question of law, and the defendant thereby avoids the problems posed by his other Rogers contentions. But his argument nevertheless runs into another hurdle imposed by § 1292(b): the bare question whether to restrict the scope of the Polaroid factors to title-vs-title conflicts is not "controlling" and thus reversal on it would not, by itself, terminate the action. Even if the Second Circuit were to require application of a different, non-Polaroid consumer-confusion test, Hermès's claims might very well survive a defendant's motion to dismiss. Indeed, the Court acknowledged as much in its Order, stressing that "the Complaint [would] survive dismissal even if the Polaroid analysis" was not undertaken because Rothschild made explicit misstatements that could be viewed as generating consumer confusion regarding the source of the MetaBirkins. See Order at 17-18.

Moreover, Rothschild fails to show that there is a "substantial ground for difference of opinion" on the applicability of the Polaroid factors. In his brief, Rothschild cites little to no caselaw that evinces significant disagreement between courts on the correct application of the Polaroid factors. All he is able to muster is a list of reasons why he thinks the Court misinterprets Polaroid and its progeny. That is not what is required of a moving party by the statute. See 28 U.S.C. § 1292(b)

10

(allowing interlocutory appeal of an order only where there exists an issue "as to which there is substantial ground for difference of opinion"). An interlocutory appeal is not the appropriate vehicle to bring arguments that the "[C]ourt's ruling was wrong" or that a given order is "inconsistent with Second Circuit precedent," as the defendant does here. See Youngers, 228 F. Supp. 3d at 299; Everest Reinsurance Co., 771 F. Supp. 2d at 273. Indeed, disagreements of this sort are the very stuff of an appeal following entry of final judgment, and either party is free to make arguments in this vein at that stage of the proceeding.

Rothschild responds that special circumstances here -- namely, the potential that undue delay in deciding these issues would chill artists' First Amendment rights -- counsels for "allow[ing] courts to resolve these kinds of cases early as a matter of law." Def's Br. at 2. But nothing suggests that the mere existence of First Amendment interests loosens the standards of § 1292(b). We are bound, now as ever, by the clear directive of the statutory text.

## II.  **The Supreme Court's Dastar Decision**

Rothschild likewise cannot show that courts view the Lanham Act as restricted to claims against the misuse of trademarks involving tangible goods after the Supreme Court's decision in Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23 (2003).

In Dastar, Twentieth Century Fox ("Fox") accused Dastar Corporation of violating § 43(a) of the Lanham Act -- which makes unlawful misrepresentations that "[are] likely to cause confusion ... as to the origin ... of [a defendant's] goods" -- because Dastar copied a documentary series on which Fox held exclusive television rights onto videotapes that it then sold. Dastar, 539 U.S. at 31. The documentary series existed in the public domain at the time of copying and Fox did not possess any copyright on it.

The precise question before the Court was whether "origin" of "goods" in § 43(a) referred to the producer of the goods for sale -- i.e., the videotapes owned by Dastar -- or the creator of the intangible, creative content on the videotapes -- i.e., the documentary that was owned by Fox. While the former interpretation would absolve Dastar of liability because copying the documentary did not generate consumer confusion about the origin of the physical videotapes themselves, the latter reading would likely entitle Fox to damages under the Lanham Act. If "origin" of the "goods" means the producer of the documentary series, as Fox argued it does, Dastar's copying could plausibly have "caused" consumers to think that it -- not Fox -- was the "origin" of the series.

The Supreme Court ultimately held that "the most natural understanding of the 'origin' of 'goods' ... is the producer of the tangible product sold in the marketplace," in this case, the physical videotapes sold by Dastar. Id. The Lanham Act, it

reasoned, does not provide individuals or other entities with a copyright-like protection in originality, creative ideas, or other abstractions but only against misrepresentations that generate consumer confusion as to the origin of a good for sale. Id. at 33.

Because Rothschild's MetaBirkins are creative works and there is no copyright at issue -- circumstances analogous to that of Dastar -- he argues that Dastar bars Hermès from bringing Lanham Act claims directed at intangible goods like his. But Dastar said nothing at all about the general applicability of the Lanham Act to intangible goods. Rather, the Supreme Court sought to underscore the subtle distinction between copyright -- with its focus on encouraging the production of creative content -- and trademark -- aimed principally at preventing confusion regarding consumer goods.

The plaintiff in Dastar, possessing no copyright on the documentary series, attempted to disguise what was in essence a copyright claim as a trademark claim, even though the copying at issue did not cause consumer confusion vis-à-vis the defendant's goods -- the touchstone of any trademark claim. Faced with this legal gamesmanship, the Supreme Court ruled that the plaintiff could not circumvent § 43(a)'s requirement that there be consumer confusion with respect to the goods for sale, and not just as to the intangible ideas underlying them. See also Shepard v. Eur. Pressphoto Agency, 291 F. Supp. 3d 465, 469 (S.D.N.Y. 2017)

("Dastar addresses the interplay between copyright -- which protects authors' rights in their creations -- and unfair competition laws -- which protect consumers from, inter alia, confusion as to the origin of goods.").

The lower court cases cited by Rothschild in support of his motion follow the same logic. For instance, the plaintiff in Phoenix Entertainment Partners v. J-V Successors, Inc. alleged that the defendant, who owned a karaoke bar, unlawfully played CDs containing digital musical files that had been trademarked but not copyrighted. See 305 F. Supp. 3d 540 (S.D.N.Y. 2018). The court ruled that the Lanham Act was inapplicable: because patrons of the bar would be unconcerned with, and therefore not confused about, the source of the defendant's goods -- the physical CDs containing the tracks -- there was no "false or misleading representation of fact, which ... is likely to cause confusion ... as to the origin ... of [the defendant's] goods." Id. at 547-49. Consumer confusion with respect to the defendant's goods being marketed, the court ruled, was essential to any § 43(a) Lanham Act claim and could not be dispensed with. This case, like Dastar, turned on the absence of this consumer confusion and not, as Rothschild argues, the intangibility of those goods.

In other words, neither Dastar nor its progeny require that a defendant's goods be tangible for Lanham Act liability to attach. Rather, the courts in those cases aimed to draw a sharper

14

distinction between copyright and trademark by requiring consumer confusion as to the defendant's goods -- whether tangible or intangible -- rather than with respect to their creative content. See, e.g., Phoenix Entertainment, 305 F. Supp. at 548 (describing the presumption that consumers in Dastar and related cases "lack[ed] ... awareness of the ... products at issue" as "central to the courts' analyses").

Here, however, it is plausible that the use of trademarks by Rothschild did generate consumer confusion with respect to the defendant's intangible goods for sale -- the MetaBirkins -- and so Dastar does not bar Hermès from pursuing its Lanham Act claims. Unlike plaintiffs in Dastar and related cases, Hermès can reasonably contend that consumers would be confused about the source of Rothschild's goods -- not just their creative content -- and more likely to buy those goods if they believed Hermès was associated with the project. These factual allegations, taken as true, make Dastar and its related cases entirely distinguishable.

Furthermore, whatever the merits of Rothschild's reading of Dastar, he cannot show that courts share his view such that there is "substantial ... difference of opinion" that warrants immediate review.[3] See Youngers, 288 F. Supp. 3d at 295 (viewing

---

[3] Much less persuasive is Hermès's argument that deciding the Dastar issue in Rothschild's favor is not "controlling" since Dastar applies only to the federal Lanham Act and Hermès's state law claims would thus remain to be resolved. Because the relevant

interlocutory appeals as restricted to cases where the moving party
can show "conflicting authority on the legal issue" or that the
legal "issue is particularly difficult and of first impression for
the Second Circuit").

Rothschild identifies only three cases in which courts even
arguably adopted his reading of Dastar. Two of these involved
courts outside the Second Circuit,[4] and one of them is an
unpublished order bearing no precedential weight. Moreover, the
vast majority of courts agree with the Court that the Lanham Act
extends to trademark claims against intangible, as well as
tangible, goods: Hermès has identified a swath of cases in which
the Lanham Act was affirmatively applied to intangible goods.
Indeed, the Second Circuit itself, in Kelly-Brown v. Winfrey, 717
F.3d 295 (2d Cir. 2013), reversed a district court's decision to
dismiss claims that a company's unauthorized use of a plaintiff's
trademarked slogan "Own Your Power" on their website -- clearly an

---

federal and state laws require the same evidentiary showing,
deciding the Dastar issue in the defendant's favor would
functionally -- even if not formally -- terminate the litigation.
That is enough to satisfy 28 U.S.C. § 1292(b). Cf. In re Duplan
Corp., 591 F.2d 139, 148 n.11 (2d Cir. 1978).

    [4] Although plaintiff is incorrect to suggest that only
conflicting authority on the legal issue from within the district
is relevant to the inquiry, it makes sense to give intra-district
conflict greater weight. Routine disagreements between courts in
different circuits on the proper interpretation of a Supreme Court
decision are to be expected, and very rarely give rise to the
extraordinary circumstances that call for immediate review.

intangible good -- violated the Lanham Act. In so doing, the Second Circuit impliedly rejected the notion that the Lanham Act applies only to physical goods.[5]

Though the phrase "substantial ... difference of opinion" admittedly conveys a less weighty burden than the foregoing discussion suggests, the statute should be viewed in light of the extraordinary nature of an interlocutory appeal to require more than just moderate disagreement among courts. The legal issue designated for review should be so central to the disposition of the case, and dispute on it so entrenched and longstanding, that proceeding with the case any further without immediate appellate review would be a waste of judicial resources.

By furnishing three cases of questionable relevance, the defendant has fallen far short of meeting this demanding burden. Granting interlocutory appeal in every case where a party can cite to a few cases for their position would transform the procedure into a vehicle for a second bite at an appeal wherever there is a difficult issue, a function for which it was obviously not

---

[5] Kelly-Brown admittedly involved a trademark much unlike the ones at issue in Dastar: the words "Own Your Power" have no underlying creative content like a videotape containing a movie does. Still, the Second Circuit plainly applied the Lanham Act to intangible goods. See also Soter Technologies, LLC v. IP Video Corporation, 523 F. Supp. 3d 389 (S.D.N.Y. 2021) (accepting that the defendant's use of a website domain name that unlawfully incorporates the plaintiff's trademark falls within the scope of the Lanham Act).

intended. See Liebert v. Levine, 2004 WL 764709, at *2 (S.D.N.Y. Apr. 9, 2004) (advising that interlocutory appeal "is not intended as a vehicle to provide early review of difficult rulings in hard cases").

Further still, the Dastar issue is not a "particularly difficult" one constituting "exceptional circumstances ... for interlocutory appeal." See Frederick v. Capital One (USA) N.A., 2015 WL 8484560 at *3 (S.D.N.Y. 2015). The conceptual groundwork for the legal issue has already been laid by the Supreme Court, and all that a reviewing court need decide is whether or not Dastar bars Lanham Act claims with respect to intangible goods. That is a task that the Second Circuit could -- and, as Kelly-Brown shows, has  -- handle(d) on routine appeal.

Finally, this is not a question of "first impression" for the Second Circuit. See Frederick, 2015 WL 8484560 at *3 (advising that interlocutory appeals only be granted on issues "of first impression for the [appeals court]"). As Kelly-Brown makes clear, the Second Circuit has -- at least implicitly -- already decided that the Lanham Act applies to intangible goods. Even if it had not, "the silence of an appellate court is not enough to satisfy [§] 1292(b)," for otherwise the mere fact that an appellate court cannot anticipate and address every legal issue that could possibly be raised by litigants would make interlocutory appeals "the norm, [rather than] the exception." Garber v. Office of the Comm'r of

18

Baseball, 120 F. Supp. 3d 334, 338 (S.D.N.Y. 2014). No doubt, more explicit clarification on whether the Lanham Act applies in these cases could promote judicial efficiency by detailing the Act's relevance to some Lanham Act claims. But the defendant has not carried his burden to prove that these cases are exceptionally numerous, protracted, and expensive such that clarification of the issue is especially warranted. Liebert, 2004 WL 764709 at *2 (observing that interlocutory appeals should be limited to "extraordinary cases where appellate review might avoid protracted and expensive litigation").

### III. **Conclusion**

For the foregoing reasons, Rothschild's motion for interlocutory appeal on the Court's motion to dismiss order is hereby denied in its entirety. The Clerk is directed to close the motion (item 52) on the docket.

SO ORDERED.

Dated:    New York, NY

          September 30, 2022                    JED S. RAKOFF, U.S.D.J.