**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| HERMÈS INTERNATIONAL and HERMÈS OF PARIS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MASON ROTHSCHILD, <br><br> Defendant. | No. 22-cv-00384-JSR <br><br> ECF Case <br><br> **ROTHSCHILD'S RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Local Rule 56.1 (a) and (d), Defendant Mason Rothschild, by and through his undersigned counsel, respectfully submits the following statement of undisputed material facts in support of his Motion for Summary Judgment.

**Background**

1.       Mr. Rothschild, born Sonny Estival, is an artist as well as an entrepreneur and business owner. Declaration of Mason Rothschild dated October 6, 2022 ("Rothschild Decl.") ¶¶ 1, 3-5; Declaration of Rhett O. Millsaps II dated October 7, 2022 ("Millsaps Decl.") ¶ 2, Ex. 1 (Gopnik Rep. ¶¶ 10, 15); ¶ 8, Ex. 7 (T. Sacks Dep. (Sept. 15, 2022) 32:2-11); ¶ 7, Ex. 6 (D. Cohen Dep. (Sept. 22, 2022) 61:25-62:10); ¶ 6, Ex. 5 (K. Loo Dep. (Sept. 7, 2022) 155:5-156:1); Amended Complaint ("Compl.") ¶¶ 1, 8-9, 25.

2.       Dr. Blake Gopnik, a noted art historian, critic, and author of *Warhol*—the 976-page, definitive biography of Andy Warhol published in 2020—has recognized Mr. Rothschild as an artistic heir to Marcel Duchamp and Andy Warhol based on Mr. Rothschild's *MetaBirkins* art project. Millsaps Decl. ¶ 2, Ex. 1 (B. Gopnik Report (Sept. 1, 2022) ¶¶ 10, 15).

3.     In one early artistic project in 2015, Mr. Rothschild created and sold a collection of t-shirts titled *The Art School Dropout* as a commentary on the "ugly" designs on merchandise sold by venerated art schools at the time. Rothschild Decl. ¶ 6; Millsaps Decl. ¶ 3, Ex. 2 (M. Rothschild Dep. (Aug. 4, 2022) 48:23-53:4, Ex. 6); ¶ 4, Ex. 3 (B. Gopnik Dep. (Sept. 23, 2022) 160:21-167:7).

4.     One of those schools liked Rothschild's work so much that it hired him to design merchandise for the school. Rothschild Decl. ¶ 6.

5.     For Mr. Rothschild's first artistic project involving non-fungible tokens (NFTs), in early 2021 Mr. Rothschild produced a digital image of a chair linked to an NFT, which sold for the equivalent (at the time) of approximately $4,000. Rothschild Decl. ¶ 7; Millsaps Decl. ¶ 3 Ex. 2 (M. Rothschild Dep. (Aug. 4, 2022) 118:19-119:23).

6.     NFTs are units of data stored on a blockchain that are created to transfer and authenticate ownership of either physical things or digital media. Compl. ¶ 4.

7.     When NFTs are created, or "minted," they are listed on an NFT marketplace where NFTs can be sold or traded in accordance with "smart contracts" that govern the transfers. Compl. ¶¶ 61, 63.

8.     When an NFT is linked to digital media, the NFT and corresponding smart contract are stored on the blockchain and are linked to digital media files (*e.g.*, JPEG images, .mp4 video files, or .mp3 music files) to create a uniquely identifiable digital media file. Compl. ¶ 60.

9.     NFTs and smart contracts are stored on the blockchain (so that they can be traced), but the digital media files to which the NFTs point are stored separately, usually on either a single central server or a decentralized network. Compl. ¶ 62.

10.     In or around May 2021, Mr. Rothschild produced a short digital animation titled *Baby Birkin*, which was linked to an NFT and depicted a 40-week-old fetus gestating inside of a transparent Birkin handbag. Compl. ¶¶ 70-71; Rothschild Decl. ¶ 8.

11.     Mr. Rothschild sold *Baby Birkin* for the equivalent (at the time) of $23,500; *Baby Birkin* later resold for the equivalent (at the time) of $47,000. Compl. ¶ 72; Rothschild Decl. ¶ 8.

12.     The response to *Baby Birkin* inspired Mr. Rothschild's follow-up art project, which he came to title *MetaBirkins*. Rothschild Decl. ¶ 9.

**The *MetaBirkins* Art Project**

13.     Hermès is a luxury fashion business known for, among other products, its Birkin handbag, which sells for anywhere from thousands of dollars to over one hundred thousand dollars and has become a cultural symbol of rarefied wealth through prolific references in media and pop culture. Compl. ¶¶ 27, 29, 33, 37, 40-45.

14.     In or around December 2021, Mr. Rothschild produced and sold a collection of 100 digital images titled *MetaBirkins* and linked to NFTs; they depicted imaginary Birkin handbags entirely covered in cartoonish fur, with some of the images also incorporating other artistic elements, such as the *Mona Lisa* (*La Joconde*) and van Gogh's *The Starry Night*. Compl. ¶¶ 37, 76, 79, Fig. 5 and Ex. Z; Rothschild Decl. ¶ 9; Millsaps Decl. at ¶ 5, Ex. 4 (N. Martin Dep. (Aug. 30, 2022) 48:3-11; 60:5-14, 51:4-52:13, 52:14-53:18).

15.     The *MetaBirkins* images linked to the corresponding NFTs are two-dimensional, static digital images. Rothschild Decl. ¶ 9; Millsaps Decl. at ¶ 5, Ex. 4 (N. Martin Dep. (Aug. 30, 2022) 48:3-11; 64:20-65:10), ¶ 12, Ex. 11 (Plaintiffs Hermès International and Hermès of Paris, Inc.'s Responses to Defendant Rothschild's First Set of Requests for Admission, Responses to Request for Admission No. 2); Compl. ¶¶ 76, 79, Fig. 5 and Ex. Z.

16.     The *MetaBirkins* digital images are a form of creative expression; they are renderings of imaginary Birkin bags entirely covered in "goofy, garish fake fur" that "flags the absurdist, parodic intent of [the] project" and are both a fanciful tribute to the Birkin bag, which has become a cultural object signifying extreme wealth, and a reference to the fashion industry's fur-free initiative. Millsaps Decl. ¶ 2, Ex. 1 (B. Gopnik Report (Sept. 1, 2022) ¶ 38); ¶ 3, Ex. 2 (M. Rothschild Dep. (Aug. 4, 2022) 189:21-190:5); Rothschild Decl. ¶ 10.

17.     The *MetaBirkins* project as a whole, including its promotion and sales in connection with NFTs, is a "Business Art" project in the vein of Warhol, Duchamp, and other such artists who have deliberately engaged with the intersection of art and commerce; the project was at least in part an artistic experiment to explore how the culture would respond to simple images of imaginary Birkin bags and where the value lies in the Birkin bag (*i.e.*, in the handcrafted physical object or in the image it projects?). Millsaps Decl. ¶ 2, Ex. 1 (B. Gopnik Report (Sept. 1, 2022) ¶¶ 18-35, 37-40); Rothschild Decl. ¶ 11.

**Artistic Relevance of the *MetaBirkins* Title**

18.     At a most basic level, the "MetaBirkins" title is artistically relevant to the *MetaBirkins* project and images because it indicates the subject of the artwork. Millsaps Decl. ¶ 2, Ex. 1 (B. Gopnik Report (Sept. 1, 2022) ¶ 36), ¶ 5, Ex. 4 (N. Martin Dep. (Aug. 30, 2022) 85:23-86:6 ("*Q: Do you consider the word MetaBirkins to be in any way descriptive of the images that you see here? A: There is some link between the title [MetaBirkins] and what I see*"), ¶ 12, Ex. 11 (Plaintiffs Hermès International and Hermès of Paris, Inc.'s Responses to Defendant Rothschild's First Set of Requests for Admission, Responses to Request for Admission No. 3).

19.     The "MetaBirkins" title additionally is artistically relevant to the project at a deeper level; it "adds to the Birkins that it describes as [Rothschild's] subject" and "tells an

informed viewer that the interest we are supposed to take in the Birkin that Rothschild has labelled 'meta' comes from a larger comment it makes, rather than from its mere virtues as a depiction of a fancy purse." Millsaps Decl. ¶ 2, Ex. 1 (B. Gopnik Report (Sept. 1, 2022) ¶¶ 37-40); Rothschild Decl. ¶ 12.

**Lack of Explicit Misleadingness**

20.    When asked if Hermès had evidence of any attempts by Mr. Rothschild to explicitly mislead others to believe that *MetaBirkins* is associated with Hermès, Hermès' representative could point only to the use of the "Hermès" and "Birkin" marks and the claimed Birkin trade dress, and not to any *explicit* claim that Hermès was the source of the *MetaBirkins* artworks and associated NFTs, or that Hermès had sponsored or endorsed the *MetaBirkins* artworks and associated NFTs. Millsaps Decl. ¶ 5 Ex. 4 (N. Martin Dep. (Aug. 30, 2022) 114:9-115:16, 118:13-18).

21.    Mr. Rothschild had no intention or desire for Hermès to be credited for his *Baby Birkin* or *MetaBirkins* artworks. Rothschild Decl. ¶ 13.

22.    In promoting *MetaBirkins*, Mr. Rothschild never made any statements attributing *MetaBirkins* to Hermès or claiming any affiliation with Hermès. *Id.*

23.    When a few press outlets mistakenly attributed *MetaBirkins* to Hermès shortly after the launch of the project, Mr. Rothschild or his representative reached out promptly to point out that Hermès was not affiliated with *MetaBirkins* and to ask for a correction. *Id.*; Millsaps Decl. ¶ 13, Ex. 12 (emails from Rothschild and his representative to journalists).

24.    Following publication of those mistaken articles and receipt of a cease-and-desist letter from Hermès, Mr. Rothschild also added a disclaimer on the www.metabirkins.com

website to make clear that his *MetaBirkins* project was in no way affiliated with Hermès. Rothschild Decl. ¶ 14.

25.     The disclaimer on the *MetaBirkins* website reads: "We are not affiliated, associated, authorized, endorsed by, or in any way officially connected with the HERMES, or any of its subsidiaries or its affiliates. The official HERMES website can be found at https://www.hermes.com/." Compl. ¶ 104, Fig. 13 and Ex. AH.

**<u>Lack of Confusion</u>**

26.     Plaintiffs' proffered expert, Dr. Bruce Isaacson, conducted a survey of handbag purchasers (the "Handbag Survey") that found a net confusion level of 3.6% among purchasers or potential purchasers of luxury handbags. Millsaps Decl. ¶ 11, Ex. 10 (B. Isaacson Dep. (Sept. 20, 2022) 126:17-127:9), ¶ 10, Ex. 9 (Neal Rep. ¶ 3.5).

27.     Dr. Isaacson chose or was directed not to rely on the Handbag Survey for his opinions and conclusions in this case after the data for the survey had been collected. Millsaps Decl. ¶ 11, Ex. 10 (B. Isaacson Dep. (Sept. 20, 2022) 141:16-142:12).

28.     The Handbag Survey results showed an absence of confusion among luxury handbag purchasers. Millsaps Decl. ¶ 11, Ex. 10 (B. Isaacson Dep. (Sept. 20, 2022) 127:10-129:21), ¶ 10, Ex. 9 (Neal Rep. ¶ 1.10-1.11, 3.5).

29.     Dr. Isaacson also conducted a survey of NFT purchasers (the "NFT Survey") that purported to find 18.7% confusion among that population. Millsaps Decl. ¶ 10, Ex. 9 (Isaacson Rep. ¶¶ 20-21).

30.     But Dr. Isaacson admitted at his deposition that the NFT Survey was in fact not a survey of trademark *confusion* at all; he testified that his survey was testing not for confusion but

for mere mental association between *MetaBirkins* and Hermès. Millsaps Decl. ¶ 11, Ex. 10 (B. Isaacson Dep. (Sept. 20, 2022) 95:10-18, 102:3-9, 108:15-110:12, 120:2-8, 124:3-13).

31.     For this reason, Dr. Isaacson counted as "confused" NFT Survey respondents who, when asked about the source of the products on the webpage that Isaacson used as a stimulus, read back to him the *disclaimer* on the page, which explicitly stated that *MetaBirkins* had no connection with Hermès. Millsaps Decl. ¶ 11, Ex. 10 (B. Isaacson Dep. (Sept. 20, 2022) 118:25-120:8), ¶ 10, Ex. 9 (Neal Rep. ¶¶ 3.3-3.3.15.2).


 Dated:  October 7, 2022                            Respectfully Submitted,

                                                    /s/ *Rhett O. Millsaps II*
                                                    Rhett O. Millsaps II
                                                    Christopher J. Sprigman
                                                    Mark P. McKenna (*pro hac vice*)
                                                    Rebecca Tushnet
                                                    LEX LUMINA PLLC
                                                    745 Fifth Avenue, Suite 500
                                                    New York, NY  10151
                                                    (646) 898-2055
                                                    rhett@lex-lumina.com

                                                    *Attorneys for Defendant Mason Rothschild*