UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HERMÈS INTERNATIONAL and
HERMÈS OF PARIS, INC.,

                Plaintiffs,

-against-

MASON ROTHSCHILD,

                Defendant.

CIVIL ACTION NO.

22-CV-00384 (JSR)

### DECLARATION OF NICOLAS MARTIN

I, Nicolas Martin, declare as follows:

1. I am General Counsel for Plaintiff Hermès International, of which Plaintiff Hermès of Paris, Inc. is a wholly owned subsidiary (collectively, "Hermès"). I have held this position since 2019, and prior to that I was the Intellectual Property Director. I submit this declaration in support of Hermès's Motion for Summary Judgment.

2. All statements made in this Declaration are based on my personal knowledge, or records and other documents kept by Hermès in the ordinary course of business. I am familiar with all documents referred to in this Declaration. I am authorized to make this Declaration on behalf of Hermès.

3. Hermès's origin dates back to 1837, when it began designing and manufacturing high-quality harnesses for horses. During the twentieth century, Hermès expanded its business to include handbags, personal leather goods, and apparel, among other goods.

4. Hermès owns several U.S. federal trademark registrations for HERMÈS for a wide array of goods and services.

5. Hermès owns U.S. federal trademark Registration Nos. 2991927 and 3936105 for the BIRKIN word mark and BIRKIN trade dress, respectively, which have both been in continuous use in U.S. commerce for leather or imitation leather goods, namely, handbags, since the first sale in 1986.

6. Hermès is well known for its iconic BIRKIN handbag, which is an exclusive Hermès design that was created in 1984 and first sold in U.S. commerce in 1986. The BIRKIN handbag was the outcome of a chance encounter between the late President and Artistic Director of Hermès, Jean-Louis Dumas, and the actress Jane Birkin on a Paris to London flight. Ms. Birkin complained to Mr. Dumas that she could not find a bag suitable for her needs as a young mother, so Mr. Dumas sketched the design of a spacious rectangular hold-all with a burnished flap and saddle stitching. This bag is universally known as the BIRKIN handbag.

7. Over time, the BIRKIN handbag has become one of Hermès's most iconic products, if not its most iconic product.

8. The BIRKIN handbag is handcrafted from the finest leather by experienced artisans in France. The manufacturing of a single BIRKIN handbag requires more than 17 hours of an artisan's time. The intensive labor and craftmanship and high-quality leathers required makes the BIRKIN handbag difficult to produce and sold at high prices. The customer demand for BIRKIN handbags is such that Hermès cannot satisfy all requests.

9. The price of a BIRKIN handbag varies from thousands of dollars to over one hundred thousand dollars. The price of the BIRKIN handbag has increased over the years.

10. Since the first sale of the BIRKIN handbag in 1986, Hermès has sold more than ███████ worth of BIRKIN handbags in the U.S. In the past 10 years, Hermès has annually sold over ███████ U.S. dollars' worth of BIRKIN handbags in significant quantities in the U.S. The BIRKIN handbag is also sold in France and throughout the world.

11. The BIRKIN handbag is distributed exclusively through Hermès's stores. As of December 31, 2021, Hermès had over 303 stores across the world, with 73 stores in Europe, 47 in the Americas (including 31 in the U.S.), 95 in Asia, and 6 in Oceania. Hermès has since opened two additional stores in the U.S., for a total of 33. Attached hereto as **Exhibit 1** is a true and correct copy of Hermès's 2021 global distribution network, Bates stamped HERMES_0014420 and a 2022 U.S. list of stores, Bates stamped HERMES_0014007, both produced by Hermès in this case.

12. Hermès spends ███████ in advertising, which includes advertising the BIRKIN handbag. Attached as **Exhibit 2** is a true and correct copy of a spreadsheet of Hermès's U.S. advertising spend since 2016 in U.S. dollars, Bates stamped HERMES_0033759 and produced by Hermès in this case.

13. Attached as **Exhibit 3** is a true and correct copy of a spreadsheet showing that in Fall/Winter 2020, Hermès spent ███████ in advertising the BIRKIN handbag in print publications, Bates stamped HERMES_0032455 and produced by Hermès in this case.

14. For decades, Hermès has developed its reputation and distinctive image as a luxury fashion house of high-quality merchandise and has invested substantially in developing its goodwill in the HERMÈS house mark, BIRKIN word mark, and BIRKIN trade dress, which are all known worldwide. The BIRKIN word mark and BIRKIN handbag are famous and among Hermès's most valuable assets.

15. The BIRKIN handbag has been famous in the U.S. for many years, and at least as of November 7, 2021. The customer demand for and value of this famous handbag continues to increase and is such that the BIRKIN handbag is considered by customers to be a financial investment.

16. Wearing a BIRKIN handbag is not limited to physically carrying it and using it as a vessel to carry other physical objects. It is an iconic handbag that is meant to be placed on a table or simply shown off, whether physically or virtually. A BIRKIN handbag is a symbol of status, so there is no need to physically wear it; rather, one can just show it or show evidence that they own one through an NFT.

17. Hermès did not learn about the METABIRKINS NFTs until on or about November 30, 2021. Hermès has not had any direct contact with Defendant, whether by telephone or email or any other form of communication. Hermès's attorneys, Baker & Hostetler LLP, sent Defendant a cease-and-desist letter on December 16, 2021, a true and correct copy attached hereto as **Exhibit 4**, and Defendant's attorneys, Lex Lumina PLLC, sent a response letter on December 21, 2021, a true and correct copy attached hereto as **Exhibit 5**.

18. METABIRKINS consists of the term "META" referring to the "metaverse" and Hermès's BIRKIN Mark. The entirety of the BIRKIN Mark is contained within Defendant's METABIRKINS Mark.

19. Hermès owns pending U.S. Application Serial Nos. 97566629 for BIRKIN and 97566611 for HERMÈS, covering non-fungible tokens (NFTs) and related goods and services.

20. ███████████████████████████████████████████

█████████████████████████████████████████████████
█████████████████████████████████████████████████
████████████████████████████████

21. Attached hereto as **Exhibit 6** is a true and correct copy of a document titled, ███████████████████████████████████████ ██████████████████████ Bates stamped HERMES_0029911 and produced by Hermès in this case.

22. Attached hereto as **Exhibit 7** is a true and correct copy of a ██████████ ███████████████████████████████████ ████████████████████ Bates stamped HERMES_0023652 and produced by Hermès in this case.

23. Attached hereto as **Exhibit 8** is a true and correct copy of a document titled, ████████████████████████████████ ███████████████████████████████ Bates stamped HERMES_0024286 and produced by Hermès in this case.

24. Hermès has invested significant time and money in making Hermès what it is today, including in making the BIRKIN handbag what it is today. Considering what could be Hermès's future with the metaverse and NFTs, the fact that Defendant launched his METABIRKINS NFTs first, whatever Hermès will do, there will always be a reference to what Defendant has done. It has caused irreparable harm to Hermès. Today, whatever Hermès does in the metaverse or with NFTs, there will always be a tie to Defendant or METABIRKINS. Consumers could become newly confused as they might not believe, for example, that Hermès's NFTs are really from Hermès. Indeed, entering the NFT market with

the BIRKIN trademark is becoming more difficult for Hermès because the METABIRKINS name has already been used for an NFT.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 7, 2022  
Paris, France

By: _____  
Nicolas Martin