**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HERMÈS INTERNATIONAL and
HERMÈS OF PARIS, INC.,

                    Plaintiffs,

       -against-

MASON ROTHSCHILD,

                 Defendant.

CIVIL ACTION NO.

22-CV-00384 (JSR)

## <u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>

**BAKER & HOSTETLER LLP**

Gerald J. Ferguson, Esq.
Oren J. Warshavsky, Esq.
Kevin M. Wallace, Esq.
Megan A. Corrigan, Esq.
45 Rockefeller Plaza, 14th Floor
New York, NY 10111
Telephone:   212.589.4200
Facsimile:   212.589.4201

Deborah A. Wilcox, Esq. (*pro hac vice*)
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114
Telephone:   216.621.0200

Lisa Bollinger Gehman, Esq. (*pro hac vice*)
1735 Market Street, Suite 3300
Philadelphia, PA 19103
Telephone:   215.568.3100

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ......................................................................................1

STATEMENT OF UNDISPUTED FACTS .....................................................................3

ARGUMENT .................................................................................................................14

I. STANDARD OF REVIEW ..............................................................................14

II. HERMÈS IS ENTITLED TO SUMMARY JUDGMENT ON ITS FEDERAL AND COMMON LAW TRADEMARK INFRINGEMENT CLAIMS ...............15

A. Hermès's BIRKIN Mark Is Entitled To Protection .................................15

B. Rothschild Uses METABIRKINS As a Mark in Commerce.................................16

C. Rothschild's Commercial Use of the METABIRKINS Mark Is Likely To, and Already Has Been Shown To, Cause Confusion ............................................17

  1. *Rogers* is inapplicable to Rothschild's conduct.................17

  2. The METABIRKINS Mark is likely to cause confusion and has, in fact, already caused actual confusion ..............18

  a. Strength of BIRKIN Mark .............................................................19

  b. Similarity of the BIRKIN Mark and METABIRKINS Mark ........19

  c. Competitive Proximity of BIRKIN Handbags and METABIRKINS ..............................................................................19

  d. Likelihood that Hermès Will "Bridge the Gap" ...........................20

  e. Evidence of Actual Confusion ......................................................20

  f. Rothschild's Bad Faith in Adopting METABIRKINS .................21

  g. Respective Quality of Products......................................................22

  h. Sophistication of Consumers in Marketplace ...............................23

  i. Conclusion to *Polaroid* Factors ....................................................23

III. HERMÈS IS ENTITLED TO SUMMARY JUDGMENT ON ITS TRADEMARK DILUTION CLAIM ..................................................................23

A.    The BIRKIN Mark Is Famous .................................................................24

B.    Rothschild Uses the METABIRKINS Mark in Commerce and Began
      Using It After the BIRKIN Mark Was Famous .........................................25

C.    Rothschild's Use of BIRKIN Dilutes the BIRKIN Mark .........................25

CONCLUSION...............................................................................................................26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Betty, Inc. v. Pepsico, Inc..*,
  848 F.App'x 43 (2d Cir 2021) ............................................................................14

*Aslanidis v. U.S. Lines, Inc.*,
  7 F.3d 1067, 1072 (2d Cir. 1993)........................................................................15

*BPI Lux S.a.r.l. v. Bd. of Managers of Setai Condo. Residence at 40 Broad St.*,
  No. 18 CIV. 1621 (NRB), 2019 WL 3202923 (S.D.N.Y. July 16, 2019) .............20

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).............................................................................................14

*Empresa Cubana del Tabaco v. Culbro Corp.*,
  399 F.3d 462 (2d Cir. 2005).................................................................................15

*Energybrands, Inc. v. Beverage Marketing USA, Inc.*,
  No. 02 CIV. 3227(JSR), 2002 WL 826814 (S.D.N.Y. May 1, 2002)...................21

*ESPN, Inc. v. Quiksilver, Inc.*,
  586 F. Supp. 2d 219 (S.D.N.Y. 2008)..................................................................15

*Fireman's Ass'n of State of New York v. French Am. Sch. of New York*,
  839 N.Y.S.2d 238 (2007)......................................................................................23

*Gruner + Jahr USA Publ'g v. Meredith Corp.*,
  991 F.2d 1072, 1074 (2d Cir. 1993)......................................................................15

*Juicy Couture, Inc. v. Bella Int'l Ltd.*,
  930 F. Supp. 2d 489 (S.D.N.Y. 2013)..................................................................18

*Kensington Pub. Corp. v. Gutierrez*,
  No. 05 Civ. 10529(LTS)(AJP), 2009 WL 4277080 (S.D.N.Y. Nov. 10, 2009) .....18

*L & L Wings, Inc. v. Marco-Destin, Inc.*,
  676 F. Supp. 2d 179 (S.D.N.Y. 2009)..................................................................15

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*,
  799 F.2d 867 (2d Cir. 1986)...........................................................................15, 18

*MyPlayCity, Inc. v. Conduit Ltd.*,
  No. 10 Civ. 1615(CM), 2012 WL 2929392 (S.D.N.Y. July 18, 2012)..................16

*Polaroid Corp. v. Polarad Elecs. Corp.*,
 287 F.2d 492 (2d Cir. 1961)............................................................................ *passim*

*Powell v. Nat'l Bd. of Med. Exam'rs*,
 364 F.3d 79 (2d Cir. 2004)....................................................................................15

*RJR Foods, Inc. v. White Rock Corp.*,
 603 F.2d 1058 (2d Cir. 1979)................................................................................21

*Rogers v. Grimaldi*,
 875 F.2d 994 (2d Cir. 1989)......................................................................16, 17, 18

*Savin Corp. v. Savin Grp.*,
 391 F.3d 439 (2d Cir. 2004)............................................................................20, 23

*TCPIP Holding Co. v. Haar Commc'ns, Inc.*,
 244 F.3d 88 (2d Cir. 2001)...................................................................................16

*Tiffany & Co. v. Costco Wholesale Corp.*,
 971 F.3d 74 (2d Cir. 2020)....................................................................................16

**Statutes**

15 U.S.C. § 1125(c)(2)(A) ...............................................................................23, 24

15 U.S.C. § 1125(c)(2)(B)(i)-(vi) ............................................................................25

Lanham Act..............................................................................................15, 17, 23

1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 3:2
 (5th ed. 2022) .................................................................................................6, 19

Plaintiffs Hermès International and Hermès of Paris, Inc. (collectively, "Hermès") respectfully submit this Memorandum of Law in Support of their Motion for Summary Judgment against Defendant Mason Rothschild ("Rothschild") under Federal Rule of Civil Procedure 56.

## PRELIMINARY STATEMENT

This case concerns the unlawful and unauthorized attempt to capitalize on the goodwill of a leading luxury brand—Hermès—and one of its most iconic trademarks and products—the BIRKIN. Starting in December 2021, Rothschild began selling non-fungible tokens (or NFTs) under the name "METABIRKINS." The images associated with the NFTs appropriate the design elements (including shape and other features) of the trade dress covering Hermès's BIRKIN handbags—Rothschild did so deliberately and without authorization from Hermès.

Unlike most trademark cases, the salient facts underlying the *Polaroid* factors are undisputed. As Rothschild admits, Hermès's BIRKIN handbag is "a highly covetable 'holy grail' handbag" and "[t]here's nothing more iconic than the Hermès Birkin bag." The marks are nearly identical—Rothschild merely added the generic term "meta" to the valuable BIRKIN trademark and used designs imitating the trade dress for the BIRKIN handbags. ███████████

███████████████████████████████████████████████████████

███████████████ There is thus nothing accidental about Rothschild's infringement.

Rothschild's promotion of METABIRKINS NFTs caused precisely the confusion he intended. Shortly after Rothschild claimed to have "put together the kind of digital commodity everybody loves," commentators and consumers including *Elle* and *L'Officiel* magazines, the *New York Post*, existing and potential customers—and even intellectual property attorneys—all assumed that Hermès was involved with the METABIRKINS NFTs. This confusion created significant difficulties for Hermès, including its plans for legitimate NFT projects.

Once Hermès objected to the METABIRKINS NFT launch, Rothschild protested that his scheme to profit by infringing Hermès's BIRKIN trade dress was artistic expression. Rothschild now predictably argues that Hermès is trying to stifle his art. Although Rothschild's unlawful use of Hermès's trade dress and imagery is an aggravating factor, it was Rothschild's unauthorized use of the BIRKIN *name* for NFTs that he initially sold (when they were not associated with the images he claims are art) that gave rise to this action. Rothschild used "METABIRKINS" to refer to and promote the NFTs themselves, which have value separate and apart from any associated images, which he can change at will. He has also used "METABIRKINS" to promote a website and recruit thousands of members for a METABIRKINS community, and to profit by attracting potential customers and investors to projects not related to "METABIRKINS."

At bottom, Rothschild is an opportunist. Rothschild's first foray into art was selling unlicensed, college branded tee-shirts. ███████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████████ Rothschild did not even create the name "METABIRKINS." Rather, Rothschild ran a "contest," promising a "Birkin" NFT to the winner. Rothschild adopted the mark and ████████████████████ ██████████ ████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████

Hermès's claims for trademark infringement and unfair competition are clear and undisputed. Rothschild's sole defense—that his conduct is protected by the First Amendment—is devoid of merit. The undisputed evidence is overwhelming that Rothschild had no discernible

artistic intent or expression in promoting and selling the METABIRKINS NFTs. Rather, Rothschild used the BIRKIN mark to associate the METABIRKINS NFTs with Hermès and its most iconic trademark and product. As such, the Court should grant Hermès's motion.

## STATEMENT OF UNDISPUTED FACTS

### A.  Hermès, The BIRKIN Handbag, and Relevant Trademarks

Hermès is one of the world's best-known luxury brands. (Hermès Rule 56.1 Statement of Material Facts ("SOMF") at ¶¶ 1-2.)[1] Hermès designed the BIRKIN handbag in 1984 and first sold it in the U.S. in 1986. (*Id.* ¶¶ 2, 12, 23.) The BIRKIN handbag has become one of Hermès's most iconic products, if not its most iconic product. (*Id.* ¶¶ 2-3.) Hermès owns significant trademark rights its BIRKIN handbags, including U.S. trademark registration Nos. 2991927 and 3936105 covering "BIRKIN" (the "BIRKIN Mark") and the trade dress of the BIRKIN handbag (the "BIRKIN Trade Dress"). (*Id.* ¶¶ 22, 24, 27-29.) Hermès also owns a pending trademark application for BIRKIN NFTs. (*Id.* ¶ 26.)  The BIRKIN Mark and BIRKIN Trade Dress are strong and distinctive. (*Id.* ¶¶ 24, 29.)  Rothschild stated: "[t]he Birkin is one of the luxury industry's most exclusive accessories," is "Herm[è]s['s] most famous handbag" a "'holy grail' handbag," and that "[t]here's nothing more iconic than the Hermès Birkin bag." (*Id.* ¶ 206.)

### B.  Defendant Mason Rothschild

Rothschild's given and legal name is Sonny Estival. (*Id.* ¶ 222.) "Mason Rothschild" is the name of a known digital artist. (*Id.*) Though he never legally changed his name, ███████████ ████████████████████████████████████████████████ (*Id.* ¶ 223.)

████████████████████████████████████████████████

---

[1] Pursuant to this Court's Individual Rule 2(e), all record citations are made to Hermès's Local Civil Rule 56.1 Statement of Material Fact (referred to as "SOMF" herein).

███████████████████████████████████

Rothschild's main business outside of BIRKIN-based NFTs is an LA-based boutique, Terminal 27, that he publicly runs with his fiancée, Erika del Rosario. (*Id.* ¶ 207.) Terminal 27 sells dozens of leather and fur products, including leather jackets and pants, leather and fur shoes, leather handbags, womenswear, and menswear. (*Id.*) Despite Rothschild's recent claim to be concerned about animal cruelty in fashion, Terminal 27 sells products made from traditional leather, calf leather, lamb leather, calfskin, and Australian wool. (*Id.*) ██████████████

███████████████████████████████████

Rothschild's first professional "art" project was called "Art School Dropout." (*Id.* ¶ 229.) This project was print-on-demand tee-shirts that looked like officially licensed college gear, such as the tee-shirt to the right. (*Id.*) ███████████████



███████████████████████████████████

████████████████████████████

## C.  NFTs and Smart Contracts, Generally

This case involves NFTs that are called METABIRKINS. NFTs are digital records of ownership, typically recorded on a public ledger called a blockchain, and may or may not be associated with or represent ownership of a digital or physical asset that can be any type of file, including an image or video. (*Id.* ¶ 30.) Analogous to physical deeds as ownership records for land or other property, NFTs are often used as a "digital deed" representing ownership in digital or physical assets. (*Id.* ¶ 31.) The METABIRKINS NFTs are governed by "smart contracts." (*Id.* ¶¶ 36-37, 39-40.) A smart contract is code placed on a blockchain that creates rules governing, without limitation, how NFTs are generated, how they may be sold or transferred, what NFTs are

called, and the control of the digital files associated with NFTs. (*Id.* ¶ 37.)[2] It is important to note that Hermès's Complaint is about the NFTs, not necessarily the images associated with them.

### D.  Fashion Brands Entering the Metaverse

Creating digital versions of "real life" digital commodities in the metaverse is a burgeoning industry. Fashion brands are entering the metaverse and launching NFT projects around their brand assets, branded digital worlds, digital wardrobes to consumers in the metaverse, and metaverse fashion weeks with virtual models and digital apparel. (*Id.* ¶¶ 113-14, 117.)

Digital brand NFTs can be extensions of established, real-world brands. (*Id.* ¶ 114.) Rothschild admits that he knew of fashion brands launching or planning to launch metaverse projects, including: Gucci's 10KFT and Gucci Ghost projects, which involve images sold in connection with NFTs; Louis Vuitton's launch of a "collectible," or images sold in connection with an NFT; and Balenciaga "teasing" the launch of an NFT project. (*Id.* ¶ 113.) Several other fashion brands, including Nike and Adidas, have also launched NFT projects. (*Id.* ¶ 112.) NFTs offered by Gucci, Nike, and Adidas trade for high prices because of their association with these established brands. (*Id.* ¶ 58.) Owning such fashion brand NFTs permits holders to showcase or even virtually "wear" their NFTs in the metaverse. (*Id.* ¶ 116.)

---

[2] NFTs and smart contracts are explained further in the Kominers and Mentzer expert reports.

██████████████████████████████████████████████████████

### F.  Rothschild's Foray into NFTs

In the Spring/Summer of 2021, Rothschild became involved in an NFT called "Baby Birkin." (*Id.* ¶ 232.) The one-off Baby Birkin NFT had an associated video, showing a fetus gestating inside of a Hermès BIRKIN handbag. (*Id.* ¶ 230.) █████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████

### G.  The Financial Success of "Baby Birkin" Spawns another BIRKINS NFT Project

The Baby Birkin NFT sale was significant – the one NFT sold for $23,500. (*Id.* ¶ 232.) Aware that fashion brands are launching projects in the metaverse, Rothschild saw an opportunity to profit by allowing consumers to "actually own these commodities in [the metaverse] where we can actually show them off." (*Id.* ¶¶ 101, 113.) Rothschild was referring to the NFTs that would eventually become the METABIRKINS NFTs, ██████████████████

███████████████████████ (*Id.* ¶ 197.) Indeed, Rothschild released 100 METABIRKINS NFTs, and the sales were over $1 million. (*Id.* ¶¶ 43, 50, 168, 206.)

### H.  ██████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████  ███████████████████████████

███████████████████████████████████████████

████████████████████████ (*Id.* ¶ 172.) ███████████

███████████████████████████████ (*Id.* ¶ 239.) █████████

████████████████████████████████████████████



(*Id.* ¶ 244.)

## I.   The Images (or Files) Associated with the METABIRKINS NFTs can be Changed

At Rothschild's direction, the METABIRKINS smart contract assigned the name

"METABIRKINS" to NFTs before they were associated with any images. (*Id.* ¶ 39.) Rothschild

became the "controller" and, under the smart contract, could associate the NFTs with any digital

file ███████████████████ which are not recorded on the blockchain. (*Id.* ¶¶ 38, 40, 46-

47, 100.) ███████████████ swapping the images associated with the METABIRKINS NFTs is accurate and important. As Dr. Mentzer confirms, the controller of the METABIRKINS smart contract—Rothschild—can change the digital files (currently images) associated with the METABIRKINS NFTs at any time. (*Id.* ¶¶ 38, 40, 100.) In fact, when the METABIRKINS NFTs were initially sold, the files associated with each METABIRKINS NFT depicted the image of a shroud covered unidentified object (displayed to the right). (*Id.* ¶¶ 45-46.) Thereafter, the images attached to the METABIRKINS NFTs were changed to depict "handbags," which Rothschild admitted were intended to be "similar to a Birkin bag" and "a riff on Hermès' most famous handbag, the Birkin." (*Id.* ¶¶ 47-48, 91, 206.) These digital images attached to the METABIRKINS NFTs are "handbags" in the digital world and "wearable" in virtual worlds. (*Id.* ¶¶ 95-96, 100.)



(*Id.*) Rothschild can replace the file associated with the NFTs with a 3D file compatible with any platform at any time. (*Id.* ¶ 100.)

### J.  Rothschild's Sham "Contests" and the METABIRKINS Name

On October 29, 2021, Rothschild posted a contest seeking a name for an NFT collection billed as "one of a kind, Birkins," promising "a gifted Birkin" for the best suggestion. (*Id.* ¶ 245) Twitter user MAKISA responded that day with seven suggestions, including "MetaBirkin." (*Id.*) Twitter user JessLozano.eth responded on November 2, 2021, with several suggestions, including "not your mom's Birkin." (*Id.*) Rothschild used both METABIRKINS and the tag line

"Not your Mother's Birkin." (*Id.* ¶¶ 17, 255.) ███████████████████████

███████████████████████████████████████████████████████████████

███████████████████████ MAKISA inquired about the lack of consideration. (*Id.* ¶ 253.)

█████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████ (*Id.* ¶

254.) But, Rothschild's METABIRKINS Website was not registered until November 7, 2021 and

he produced none of the evidence promised. (*Id.*)

**K.  Rothschild** ████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████

Rothschild knew what he was doing. ██████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

**L.** ████████████████████████████████████████

████████████████████████████████

Rothschild intended the METABIRKINS NFTs to be speculative investments that would "double as an investment for holders like the real-world 'holy grail' handbag." (*Id.* ¶¶ 169-170.)

████████████████████████████████████████

Rothschild recognized that the future value of the METABIRKINS NFTs would come not from the images but from the publicity associated with the NFTs. (*Id.* ¶ 78.) To that end, Rothschild promoted the METABIRKINS NFTs over social media applications including Twitter, Instagram, and a METABIRKINS website. (*Id.* ¶¶ 64-67, 71.) Rothschild created a community around the METABIRKINS NFTs through a Discord[3] server and ██████████████ ████████████████████████. (*Id.* ¶¶ 69-71, 74.) Rothschild also opened digital storefronts on five different e-commerce platforms under the "METABIRKINS" name to sell digital fashion products. (*Id.* ¶ 49.)

████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

---

[3] Discord is a VoIP and instant messaging social platform. Users can communicate with voice and video calls, text messages, media, in private chats or as part of communities called "servers."

[4] ██████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████

### M. The METABIRKINS NFTs are Released and Confusion Ensues

On December 2, 2021, Rothschild released his NFTs under the METABIRKINS name, and the files associated with the METABIRKINS NFTs depicted images of shrouds. (*Id.* ¶¶ 43-46.) The shroud images did not drive the sales of these NFTs —the name of the project, METABIRKINS NFTs, did. The whitelist page to "mint" the METABIRKINS NFTs referred to the NFTs as "Birkins." (*Id.* ¶ 90.) That was by design. One of Rothschild's proffered experts, Dr. Gopnik, explained that "NFT'd images made to mimic a purse sold at Walmart would be sure to get little artistic transaction in our Hermès-mad culture. The Kominers report submitted in this case is quite right to note that "*the success of Rothschild's 'METABIRKINS' depend on their connection to the Hermès brand.*" (*Id.* ¶ 61) (emphasis added). Dr. Gopnik further stated that "[t]he cultural disturbance caused by Mason Rothschild's 'METABIRKINS'–including to the Hermès company–indicates that they are exploring similar terrain." (*Id.* ¶ 106.)

Rothschild recently criticized Gucci for offering "useless" NFTs that offer no utility; Rothschild espouses an NFT brand building strategy rewarding customers with additional utilities associated with NFT projects to "prolong engagement" with customers. (*Id.* ¶¶ 80-81.)

---

[5] Rothschild's glib approach to this litigation is pervasive. Hermès's Rule 56.1 Statement includes texts between Rothschild and Sacks, emails between Rothschild and Loo, Twitter posts, Discord posts, and other documents authored, controlled, or possessed by Rothschild. Those were produced by others (Rothschild later produced emails with Loo). On October 4, Rothschild deleted most of his Twitter history (including the "contest" submissions), which he argued was allowed under the federal rules and First Amendment.  (*Id.* ¶ 256.)

The utilities Rothschild indicated he'd provide to METABIRKINS NFT owners included a digital Hermès horse charm to further associate himself with Hermès, access to future NFT projects, and token gated event access to a party at his Terminal 27 store. (*Id.* ¶¶ 63, 73-74.)

Rothschild's METABIRKINS NFTs caused actual confusion among consumers, sophisticated commentators, and even intellectual property attorneys who believed that the METABIRKINS NFTs were affiliated with, authorized by, or sponsored by Hermès. (*Id.* ¶¶ 120-59.) *L'Officiel*, a French fashion magazine, reported that Hermès "partnered with" Rothschild and described METABIRKINS as "a new line of Birkin bags" and "another collection of Birkin NFTs." (*Id.* ¶ 125.) Rothschild testified that *L'Officiel* "thought [MetaBirkins] was an official [H]erm[è]s thing." (*Id.* ¶ 126.) The *New York Post* reported that Hermès entered the metaverse and "unveiled the MetaBirkin-a VR version of its signature bag." (*Id.* ¶ 128.) *Elle UK* published an article, "Birkin NFT: Everything You Need to Know About The 'Handbag' of The Future," reporting that Hermès created the METABIRKINS NFTs and called the METABIRKINS a BIRKIN. (*Id.* ¶ 123.) Months after this lawsuit was filed, *Challenge*, a French publication reported that Hermès "unveil[ed] virtual bags under the name 'MetaBirkin.'" (*Id.* ¶ 129.)

Rothschild admitted that there was actual confusion with the BIRKIN Mark. (*Id.* ¶ 120.)

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ Various Twitter and Instagram users were confused, some believing that by purchasing a METABIRKINS NFT they would obtain a Hermès BIRKIN. (*Id.* ¶¶ 130-51.) ████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████

████

Hermès's expert, Dr. Bruce Isaacson, conducted a survey measuring the likelihood of confusion between BIRKIN handbags from Hermès and METABIRKINS NFTs, and concluded that there was net confusion of 18.7%. (*Id.* ¶¶ 160-65.)

### N.  Rothschild and Gopnick View METABIRKINS as a Commodity

Dr. Gopnik, admits that "'NFT art' simply does not exist." (*Id.* ¶ 82.) He explains that the image contained in a video file associated with any NFT, including the METABIRKINS NFTs, is not art. (*Id.*) Dr. Gopnik described the METABIRKINS NFTs as an "elite metaversal commodity. . . the kind of deluxe Hermès bag a MetaKardashian might carry, in the virtual reality we will all inhabit." (*Id.* ¶ 96.) And in a *Yahoo! Finance* interview, Rothschild championed his METABIRKINS NFTs as a "digital commodity":

> I wanted to see as an experiment to see if I could create the same kind of illusion that [the BIRKIN Handbag] has in real life as a digital commodity. And I feel like I've kind of accomplished that with the statistics that we kind of have today, is being able to put together this kind of digital commodity everybody loves, bringing it into the digital world with this introduction of the metaverse and seeking how it works out and how it plays in the hands of lie the community, selling it a [sic] that, keeping the scarcity of 100 bags total.

(*Id.* ¶ 168.)

### ARGUMENT

### I.  STANDARD OF REVIEW

A court may grant summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Betty, Inc. v. Pepsico, Inc.*, 848 F.App'x 43, 44, (2d Cir 2021). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "If the movant demonstrates an absence of a genuine issue of material fact, a limited burden of production shifts to the nonmovant, who must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir. 2004) (quoting *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993)).

## II.   HERMÈS IS ENTITLED TO SUMMARY JUDGMENT ON ITS FEDERAL AND COMMON LAW TRADEMARK INFRINGEMENT CLAIMS

Claims for trademark infringement under Section 32 and 42(a) of the Lanham Act are analyzed under the two-prong test described in *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1074 (2d Cir. 1993): (1) whether the plaintiff's mark is entitled to protection and (2) whether defendant's use of the mark is likely to cause consumer confusion as to the origin or sponsorship of the defendant's goods. *Id.*; *see also L & L Wings, Inc. v. Marco-Destin, Inc.*, 676 F. Supp. 2d 179, 187 (S.D.N.Y. 2009). Trademark infringement and unfair competition claims under New York law mirror those for the Lanham Act and may be analyzed together.[6] *See ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219, 230 (S.D.N.Y. 2008).

### A.   Hermès's BIRKIN Mark Is Entitled To Protection

It is undisputed that Hermès is one of the most iconic luxury brands known for its luxury goods, including its iconic BIRKIN handbag. The BIRKIN Mark is federally registered, incontestable, and continuously used since 1986. *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986); *see also L & L Wings, Inc.*, 676 F. Supp. 2d at 187.

---

[6] A New York law unfair competition claim also requires that the infringer acted in bad faith. *See Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 485 (2d Cir. 2005). The evidence of bad faith is submitted under the *Polaroid* analysis in Section II.C.2.f.

### B.  Rothschild Uses METABIRKINS As a Mark in Commerce

A mark is used in commerce if "it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale." *MyPlayCity, Inc. v. Conduit Ltd.*, No. 10 Civ. 1615(CM), 2012 WL 2929392 at *4 (S.D.N.Y. July 18, 2012) (quoting 15 U.S.C. § 1127). A defendant further:

> uses a term "as a mark" when it employs it "as a symbol to attract public attention," or "to identify and distinguish . . . goods [or services] . . . and to indicate [their] source." Whether a defendant has done so may entail an investigation into, *inter alia*, whether the challenged material appeared on the product "itself, on its packaging, or in any other advertising or promotional materials related to [the] product," and the degree to which "defendants were trying to create, through repetition . . . a[n] association between [themselves] and the [mark]."

*Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 92 (2d Cir. 2020) (internal citations omitted). Rothschild promoted and marketed the METABIRKINS NFTs as a luxury brand and brand of NFTs to attract public attention and to indicate source. It is undisputed that Rothschild used "METABIRKINS" to identify the collection of NFTs that he offered for sale in storefronts on various NFT trading marketplaces. Rothschild also promoted the NFTs through: the metabirkins.com URL, on the METABIRKINS Website, through METABIRKINS Twitter and Instagram accounts, in METABIRKINS hashtags, and on the METABIRKINS Discord server. Rothschild also promoted, advertised, and marketed his business activities through these various means. Using a trademark to identify a product line and promote a business is the essence of trademark use. 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 3:2 (5th ed. 2022). The Second Circuit has long recognized that a website's name and/or address is a trademark use. *TCPIP Holding Co. v. Haar Commc'ns, Inc.*, 244 F.3d 88, 104 (2d Cir. 2001).

**C. Rothschild's Commercial Use of the METABIRKINS Mark Is Likely To, and Already Has Been Shown To, Cause Confusion**

### 1. *Rogers* is inapplicable to Rothschild's conduct

Rothschild had no discernible artistic intent or expression in promoting and selling METABIRKINS NFTs. Rothschild's only intention was to make a commercially focused, branded NFT community centered on the METABIRKINS name and therefore the *Polaroid* factors provide the applicable framework without the need to balance any First Amendment concerns. This Court previously indicated that because the digital images of handbags "could constitute a form of artistic expression," balancing First Amendment concerns against Lanham Act protection requires applying *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). (Mem. Order Denying Def.'s Mot. to Dismiss, ECF No. 50, at 11.) However, the undisputed facts developed since then show that *Rogers* does not apply.

METABIRKINS is the name of the NFTs separate and apart from the digital images. The digital images are not permanent and can be easily replaced as Rothschild already did after minting, when the image associated with the NFTs was changed from a shrouded object to the digital BIRKIN handbags. As the controller of the METABIRKINS smart contract, Rothschild can change the digital files associated with the METABIRKINS NFTs at will. In addition, as discussed *infra* at Section II.C.2.c, the images associated with the METABIRKINS NFTs are metaverse-ready to become wearable goods in digital worlds.

To the extent that the name also applies to the images, Rothschild chose it to capitalize on the immense popularity and goodwill associated with Hermès's BIRKIN Mark and not for artistically relevant reasons. The METABIRKINS NFTs are commercial commodities, with utilities extending beyond any form of artistic expression. Rothschild derives commercial benefit from using the BIRKIN Mark to associate the METABIRKINS NFTs with Hermès's popularity

and the iconic BIRKIN handbag. As Rothschild's own expert said: "the success of Rothschild's 'METABIRKINS' depend on their connection to the Hermès brand" and Rothschild portrayed the METABIRKINS NFTs as "a tribute to [Hermès's] Birkin." (*Id.* ¶¶ 61, 167.)

Even if *Rogers* applies and the name is found to be artistically relevant, Rothschild has been explicitly misleading as to the source of the METABIRKINS NFTs. As discussed in further detail *infra* at Section II.C.2.e, Rothschild made various explicit statements that misled the public and the press into believing his METABIRKINS NFTs were associated with Hermès, when they were not. *Rogers*, 875 F.2d at 999-1000; *see also Kensington Pub. Corp. v. Gutierrez*, No. 05 Civ. 10529(LTS)(AJP), 2009 WL 4277080, at *6 (S.D.N.Y. Nov. 10, 2009) (*Polaroid* likelihood of confusion factors inform the explicitly misleading determination).

### 2. The METABIRKINS Mark is likely to cause confusion and has, in fact, already caused actual confusion

To determine whether a defendant's mark is likely to cause confusion, courts consider the eight factors enumerated in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961):

> (1) the strength of the plaintiff's mark; (2) the similarity of the marks; (3) the competitive proximity of the products in the marketplace; (4) the likelihood that the senior user will "bridge the gap" by moving into the junior user's product market; (5) evidence of actual confusion; (6) the junior user's bad faith in adopting the mark; (7) the respective quality of the products; and (8) the sophistication of the consumers in the relevant market.

*Juicy Couture, Inc. v. Bella Int'l Ltd.*, 930 F. Supp. 2d 489, 499 (S.D.N.Y. 2013) (citing *Polaroid*, 287 F.2d at 495). Summary judgment on Hermès's trademark infringement claims should be granted because every *Polaroid* factor tips decidedly in favor of Hermès. *Lois Sportswear, U.S.A., Inc.*, 799 F.2d at 876 (affirming the district court's grant of summary judgment after applying the *Polaroid* factors to the undisputed facts).

18

### a.  **Strength of BIRKIN Mark**

It is undisputed that the BIRKIN Mark is strong and distinctive. Rothschild himself explained that the BIRKIN is "Herm[è]s most famous handbag," a "'holy grail' handbag," and that "there's nothing more iconic than the Hermès Birkin bag." (SOMF ¶¶ 13, 167, 206.)

### b.  **Similarity of the BIRKIN Mark and METABIRKINS Mark**

The marks are nearly identical. Rothschild uses the entirety of the BIRKIN Mark, differentiated only by an explicitly misleading generic prefix "META," which refers to the "metaverse." "Adding a generic name to another's mark, especially if it is a famous mark, will not usually avoid a likelihood of confusion." 4 McCarthy, *supra*, § 23:50. Instead of dispelling confusion, Rothschild's modification accomplishes the opposite: Rothschild's addition of the generic term "META" to Hermès's BIRKIN Mark creates the explicitly misleading impression that Hermès, the only source of BIRKIN handbags, is offering BIRKIN handbags in the METAverse. This confusion is exacerbated by the appearance of the digital handbag, which looks like a BIRKIN handbag. ███████████████████████████████
████████████████████████████ (SOMF ¶¶ 32, 34, 89-90. 166-67, 174, 182, 197, 206.)

### c.  **Competitive Proximity of BIRKIN Handbags and METABIRKINS**

It is undisputed that both Hermès and Rothschild market the same types of goods—a luxury handbag. The digital images attached to the METABIRKINS NFTs depict "handbags,"
████████████████████████████████████████████████████
████████████████████████████████████ (*Id.* ¶¶ 46, 48, 91, 95, 97, 206.) "Wearing a BIRKIN handbag is not limited to physically carrying it and using it as a vessel to carry other objects.  It is an iconic handbag meant to be placed on a table or simply shown off—it is a symbol of status." (*Id.* ¶ 94.) ████████████████████████████████
██████████████████████

Similar to real life BIRKIN handbags, the METABIRKINS NFTs as minted were immediately usable in certain metaverses.  Rothschild can replace the current file associated with the METABIRKINS NFTs with a 3D handbag wearable in any number of metaverses, including in "gaming or avatar environments." (*Id.* ¶¶ 38, 40, 99-100.)  TikTok users posted videos showing the wearability of the METABIRKINS NFTs. Social media users can also "wear [the METABIRKINS] in profile picture[s]." (*Id.* ¶ 145 ("Change your Profile Photo to your favorite #MetaBirkin.").) ██████████████████████████████████████ ███████████████████████ (*Id.* ¶¶ 98-100.)

Dr. Gopnik reported that the METABIRKINS NFTs are "an elite metaversal commodity. . . the kind of deluxe Hermès bag a MetaKardashian might carry, in the virtual reality we will all inhabit." (*Id.* ¶ 96.) He further opined that Hermès and Rothschild "are exploring similar terrain." (*Id.* ¶ 106.) Rothschild agreed: the "difference between [the real life and digital handbag] is like getting a bit blurred now because we have this new outlet, which is the metaverse, to showcase our product, showcase them in our virtual worlds, and even just show them online." (*Id.* ¶ 101.)

### d.   <u>Likelihood that Hermès Will "Bridge the Gap"</u>

The law protects a trademark owner's "interest in being able to enter a related field at some future time" and does not require proof of present intent to enter that field. *BPI Lux S.a.r.l. v. Bd. of Managers of Setai Condo. Residence at 40 Broad St.*, No. 18 CIV. 1621 (NRB), 2019 WL 3202923, at *7 (S.D.N.Y. July 16, 2019).* ██████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████████

### e.   <u>Evidence of Actual Confusion</u>

"There can be no more positive or substantial proof of the likelihood of confusion than

proof of actual confusion." *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 459 (2d Cir. 2004) (internal

quotation marks and citation omitted). Rothschild admitted that there was actual confusion. His

agents and partners said the same. And as indicated, consumers, industry experts, and the press

all expressed confusion as to: (1) Hermès's affiliation with the METABIRKINS collection of

NFTs; (2) the relationship between the METABIRKINS NFTs and authentic BIRKIN handbags;

and (3) Hermès's authorization or sponsorship of the METABIRKINS collection of NFTs. While

presenting at a conference in Paris, an IP lawyer wrongly stated that Hermès and Rothschild

collaborated on the METABIRKINS NFTs. She thought this because "the names of the NFTs

include the famous trademark 'BIRKIN' and reproduced the shape of the bag." (SOMF ¶¶ 152-

157.) Consumers posted numerous comments on social media, expressing confusion.

Furthermore, a recent survey Hermès conducted confirms actual confusion. The survey

measured the likelihood of confusion among NFT purchasers as to the source or sponsorship of

Rothschild's NFTs. The survey found net confusion among the NFT audience of 18.7%.  Net

confusion this high is evidence of a substantial likelihood of confusion. *See RJR Foods, Inc. v.*

*White Rock Corp.*, 603 F.2d 1058, 1061 (2d Cir. 1979); *Energybrands, Inc. v. Beverage*

*Marketing USA, Inc.*, No. 02 CIV. 3227(JSR), 2002 WL 826814 (S.D.N.Y. May 1, 2002) (17%

consumer confusion sufficient to support finding of likelihood of confusion).

### f.   Rothschild's Bad Faith in Adopting METABIRKINS

Rothschild sought to capitalize on the goodwill associated with Hermès's BIRKIN Mark.

Rothschild saw a financial opportunity when major fashion brands entered the metaverse and

sold branded digital products for significant prices. Rather than creating something original,

Rothschild wanted to make money by replicating those fashion brands and created "the same

kind of illusion that [the BIRKIN handbag] has in real life as a digital commodity." (SOMF ¶

168.) Rothschild's goal in creating the METABIRKINS NFTs was to "double as an investment

for holders like the real-world 'holy grail' handbag." (*Id.* ¶ 169.) ████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████

      ██████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████

███████████████████ Rather, ███████████████████████████████

██████████████████████████████████████████. (*Id.* ¶ 206.)

### g.  Respective Quality of Products

Hermès is one of the world's most iconic luxury brand and makes one of the finest handbags. The BIRKIN handbag is difficult to produce and sells at high prices because of the intensive labor and craftmanship and the high-quality leathers required to make BIRKIN handbags. By contrast, ██████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████ (*Id.* ¶¶ 216-18.) Consumers were skeptical about the METABIRKINS NFTs and referred to Rothschild's project as a "rug," which in NFT parlance means scam. (*Id.* ¶¶ 219-20.) One Instagram user, commenting on Hermès's cease and desist letter, explained the quality of both parties' products best—"why would [Hermès] collaborate with [Rothschild] who lacks originality. They built [an] empire. [Rothschild] ripped off their bags and made NFTs. You really on the NFT koo laid and have no

clue how much of this is just pyramid schemes and rug pulls." (*Id.* ¶ 221.)

### h.  <u>Sophistication of Consumers in Marketplace</u>

Rothschild's consumers are well aware that brands have expanded into digital goods.

However, as evidenced by consumers' comments on social media and the survey Hermès

conducted, consumers are not particularly sophisticated in determining whether the

METABIRKINS NFTs were authorized, affiliated, or sponsored by Hermès. It is only natural

that consumers have been confused by Rothschild's use of the BIRKIN Mark and his repeated

references to Hermès. Rothschild's addition of the generic term META to the BIRKIN Mark is

explicitly misleading to the consumers, especially because the image of the digital handbag was

intended to look—and does look—"similar to a Birkin bag."  (*Id.* ¶ 87, 91)

### i.  <u>Conclusion to *Polaroid* Factors</u>

Each *Polaroid* factor weighs only in Hermès's favor. There is no genuine dispute as to a

material issue of fact. Summary judgment on Hermès's infringement claims should be granted.

## III.  <u>HERMÈS IS ENTITLED TO SUMMARY JUDGMENT ON ITS TRADEMARK DILUTION CLAIM</u>

To prevail on its dilution claim under the Lanham Act, Hermès must prove that: (1) the

BIRKIN Mark is famous; (2) Rothschild is making commercial use of the METABIRKINS

trademark in commerce; (3) Rothschild's use began after the BIRKIN Mark became famous; and

(4) Rothschild's use of METABIRKINS dilutes the quality of the BIRKIN Mark by diminishing

its capacity to identify and distinguish goods and services. *Savin Corp.*, 391 F.3d at 448-49. A

dilution claim under New York law has the same elements as a dilution claim under the Lanham

Act, and the claims can be analyzed together.[7]

---

[7] The standard for federal trademark dilution is more stringent than New York's standard. *Savin Corp.*, 391 F.3d at 456.  New York law, requires that Hermès prove "(1) that it possesses a strong mark . . . and (2) a likelihood of dilution by either blurring or tarnishment."  *Fireman's*

### A.     **The BIRKIN Mark Is Famous**

"[A] mark is famous if it is widely recognized by the general consuming public of the

United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C.

§ 1125(c)(2)(A). In determining whether a mark is "famous," courts may consider: (i) the

duration, extent, and geographic reach of advertising and publicity of the mark; (ii) the amount,

volume, and geographic extent of sales of goods or services offered under the mark; (iii) the

extent of actual recognition of the mark; and (iv) whether the mark is registered. *Id.*

Hermès is well known for its iconic and universally known BIRKIN handbag, which was

first sold in U.S. commerce in 1986. Hermès promotes its products and spends ███████

████ in advertising, including advertising the BIRKIN handbag. The BIRKIN handbag and

BIRKIN Mark have been advertised in widely distributed domestic and international

publications and are featured in numerous U.S. television shows and films. (*Id.* ¶¶ 6-9.)

Rothschild gushed about the BIRKIN handbag's fame, noting that "there's nothing more iconic

than the Hermes Birkin bag," (*Id.* ¶ 14.) as it's a "'holy grail' handbag." (*Id.* ¶¶ 13, 169.)

Hermès has sold over ██████ worth of BIRKIN handbags in the United States since

1986. In the past 10 years, Hermès has annually sold over ███████ worth of BIRKIN

handbags in the U.S. The BIRKIN handbag and BIRKIN Mark regularly receive press coverage

in major fashion publications such as *Vogue*, *Harper's Bazaar*, *New York Times Style Magazine*,

*Vanity Fair*, *Marie Claire*, *W*, *Allure*, *Elle*, *WWD*; have been featured in *WSJ Magazine*, *Forbes*,

and *Departures*; and have received online coverage in *CNN Business* and *Time*. For example, an

article of the March 2021 edition of *Harper's Bazaar* discusses "[h]ow the [BIRKIN handbag]

withstood trends and WEATHERED SEASONS to become an INDELIBLE PART of the

---

*Ass'n of State of New York v. French Am. Sch. of New York*, 839 N.Y.S.2d 238, 241-42 (2007)
(internal quotation marks and citations omitted).

CULTURE." (*Id.* ¶ 15.) A September 2021 *Vanity Fair* article notes that,

> There is a kind of fashion object so long-lasting, so tirelessly
> wanted that its name becomes recognizable, a metonym for the
> brand that made it: the Air Jordan, the Love bracelet. Few brands,
> successful though they may be, attain that kind of saturation.
> Hermès has done it twice: the Birkin and, arguably first of the
> household-name phenomena, the Kelly.

(*Id.* ¶ 16.)

### B. Rothschild Uses the METABIRKINS Mark in Commerce and Began Using It After the BIRKIN Mark Was Famous

As discussed *supra* in Section II.B, Rothschild uses the METABIRKINS Mark in

commerce and admits he did so after the BIRKIN Mark was famous.

### C. Rothschild's Use of BIRKIN Dilutes the BIRKIN Mark

Whether a mark is likely to cause dilution by blurring depends on factors including:

> (i) The degree of similarity between the mark or trade name and the
> famous mark; (ii) the degree of inherent or acquired distinctiveness
> of the famous mark; (iii) the extent to which the owner of the famous
> mark is engaging in substantially exclusive use of the mark; (iv) the
> degree of recognition of the famous mark; (v) whether the user of
> the mark or trade name intended to create an association with the
> famous mark; and (vi) any actual association between the mark or
> trade name and the famous mark.

15 U.S.C. § 1125(c)(2)(B)(i)-(vi). Many of the factual allegations underlying the *Polaroid*

factors also support dilution, as discussed *supra* in Section II.C.2: the trademarks are highly

similar; the BIRKIN Mark is strong and distinct; Rothschild acted in bad faith by adopting the

METABIRKINS mark with the intent to create an association with Hermès and the BIRKIN

Mark; and there has been actual confusion as to the association between the METABIRKINS

collectible digital handbags and Hermès and its BIRKIN Mark. These undisputed facts establish

that Rothschild's use of METABIRKINS is likely to cause dilution, harming Hermès's

"goodwill and capacity to exploit and to use" the BIRKIN Mark in the metaverse. (SOMF ¶ 21.)

Accordingly, summary judgment should be granted as to Hermès's trademark dilution claim.

## <u>CONCLUSION</u>

For the foregoing reasons, Hermès respectfully requests that this Court grant its motion

for summary judgment on all of its claims.

Dated: October 7, 2022
     New York, New York

**BAKER & HOSTETLER LLP**
Deborah A. Wilcox, Esq. (*pro hac vice*)
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114
Telephone:   216.621.0200

**BAKER & HOSTETLER LLP**
Lisa Bollinger Gehman, Esq. (*pro hac vice*)
1735 Market Street, Suite 3300
Philadelphia, PA 19103
Telephone:   215.568.3100

**BAKER & HOSTETLER LLP**

By:   /s/ *Oren J. Warshavsky*
     Gerald J. Ferguson, Esq.
     Oren J. Warshavsky, Esq.
     Kevin M. Wallace, Esq.
     Megan A. Corrigan, Esq.
     45 Rockefeller Plaza, 14th Floor
     New York, NY 10111
     Telephone:  212.589.4200
     Facsimile:   212.589.4201

     *Attorneys for Plaintiffs*
     *Hermès International and*
     *Hermès of Paris, Inc.*