**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

<span style="color:red">**REDACTED - REFERENCES
CONFIDENTIAL MATERIALS
FILED UNDER SEAL**</span>

HERMÈS INTERNATIONAL and
HERMÈS OF PARIS, INC.,

　　　　　　Plaintiffs,

　　　v.

MASON ROTHSCHILD,

　　　　　　Defendant.

No. 22-cv-00384-JSR

ECF Case

**MASON ROTHSCHILD'S
COUNTERSTATEMENT TO
PLAINTIFFS' RULE 56.1
STATEMENT OF MATERIAL
FACTS**

　　　　In accordance with Local Rule 56.1(b) of the Local Rules of the United States District

Court for the Southern District of New York, Defendant Mason Rothschild respectfully submits

this Counterstatement of Material Facts in response to Plaintiffs' Statement of Material Facts in

Support of Plaintiffs' Motion for Summary Judgment. The numbered paragraphs below

correspond to those appearing in Plaintiffs' Statement of Material Facts, along with Mr.

Rothschild's response to each such paragraph, without admission that any of Plaintiffs'

statements are material. Mr. Rothschild does not reproduce herein the headings from Plaintiffs'

Statement of Material Facts, many of which are argumentative, conclusory, and/or disparaging

statements that are not supported by the evidence cited by Plaintiffs.

　　　　Mr. Rothschild contends that undisputed material facts in this case entitle Mr. Rothschild

to summary judgment dismissing all of Plaintiffs' claims, as set forth herein and in Mr.

Rothschild's Motion for Summary Judgment and accompanying papers (which are incorporated

herein by reference).

**ROTHSCHILD'S COUNTERSTATEMENT TO PLAINTIFFS'
RULE 56.1 STATEMENT OF MATERIAL FACTS**

1.      Hermès's origin dates back to 1837, when it began designing and manufacturing high quality harnesses for horses. During the twentieth century, Hermès expanded its business to include handbags, personal leather goods, and apparel, among other goods. Authority: Martin Decl. at ¶ 3.

*Rothchild's Response:*

**(1)**    Undisputed.

2.      Hermès is well known for its iconic BIRKIN handbag, which is an exclusive Hermès design that was created in 1984 by the late President and Artistic Director of Hermès, Jean-Louis Dumas for actress Jane Birkin and first sold in U.S. commerce in 1986. This bag is universally known as the BIRKIN handbag. Authority: Martin Decl. at ¶ 6.

*Rothschild's Response:*

**(2)**    Mr. Rothschild does not dispute that Hermès is well known for its Birkin

handbag, that the first Birkin was created in 1984 by the late President and Artistic Director of

Hermès, Jean-Louis Dumas for actress Jane Birkin, or that it was first sold in U.S. commerce in

1986. Mr. Rothschild disputes, however, that the Birkin handbag is "universally known," which

is an issue for which Plaintiffs bear the burden of proof, and which the evidence in the record

does not show.

3.      Over time, the BIRKIN handbag has become one of Hermès's most iconic products, if not its most iconic product. Authority: Martin Decl. at ¶ 7.

*Rothschild's Response:*

**(3)**    Undisputed.

4.      Hermès spends ▮▮▮▮▮▮▮▮▮▮▮ a year in advertising. Since 2016, Hermès has spent over ▮▮▮▮▮▮▮▮▮ in U.S. advertising, which includes advertising the BIRKIN handbag. Authority: Martin Decl. at ¶ 12, Ex. 2.

*Rothschild's Response:*

**(4)**    Undisputed.

5.      By way of example, in the U.S. for Fall/Winter 2020, Hermès spent ███████ ███ in advertising the BIRKIN handbag in print publications. Authority: Martin Decl., Ex. 3.

***Rothschild's Response:***

**(5)**      Undisputed.

6.      The BIRKIN handbag and BIRKIN Mark (as defined herein) have been advertised in widely distributed publications such as the *WSJ Magazine*, *Architect Digest*, *Town & Country*, *Departures*, *Elle*, *W*, *Vogue*, *Harper's Bazaar*, *Vanity Fair*, and the *New York Times Style Magazine*. Authority: Corrigan Decl., Ex. 1; Martin Decl., Ex. 3.

***Rothschild's Response:***

**(6)**      Undisputed.

7.      The BIRKIN handbag and BIRKIN Mark regularly receive unsolicited press coverage in the U.S. in major fashion publications such as *Vogue*, *Harper's Bazaar*, *New York Times Style Magazine*, *Vanity Fair*, *Marie Claire*, *W*, *Allure*, *Elle*, *WWD*; have been featured in *WSJ Magazine*, *Forbes*, and *Departures*; and have received online coverage in *CNN Business* and *Time*. Authority: Corrigan Decl., Ex. 2.

***Rothschild's Response:***

**(7)**      Undisputed.

8.      The BIRKIN handbag and BIRKIN Mark also receive unsolicited coverage in international fashion publications, including for example, *Harper's Bazaar* editions in Indonesia, India, and Taiwan, *In Style* in Germany, *Marie Claire* Hong Kong, *Prestige* Malaysia, *Elle* editions in Germany and Australia, *Glam* in Qatar, *Female* Malaysia's leading fashion & beauty magazine, *Flare* Canada's fashion magazine, *Vogue* Italy, and *Madame Figaro* in France, among others around the world. Authority: Corrigan Decl., Ex. 3.

***Rothschild's Response:***

**(8)**      Undisputed.

9.      The BIRKIN handbag has been featured in numerous U.S. television shows and movies over the years, including for example, *Sex and the City*, *Gossip Girl*, *Gilmore Girls*, Apple TV+'s *Loot*, *Unbreakable Kimmy Schmidt*, *Inventing Anna*, *The Proposal*, *Transformers*, *Inside Man*, *The Royal Tenenbaums*, *Fifty Shades Freed*, *The Women*, *The Hustle*, *Tenet*, *The Bling Ring*, *Midnight in Paris*, *Made of Honor*, *Think Like A Man*, *What Men Want*, *Little*, *Rizzoli & Isles*, *Brooklyn Nine-Nine*, *Jessica Jones*, and *Velvet Buzzsaw*. Authority: Corrigan Decl., Ex. 4.

*Rothschild's Response:*

**(9)**     Undisputed.

10.     The BIRKIN handbag is distributed exclusively through Hermès's stores. As of December 31, 2021, Hermès had over 303 stores across the world, with 73 stores in Europe, 47 in the Americas (including 31 in the U.S.), 95 in Asia, and 6 in Oceania. Hermès has since opened two additional stores in the U.S., for a total of 33. Authority: Martin Decl. at ¶ 11, Ex. 1.

*Rothschild's Response:*

**(10)**     Undisputed.

11.     The price of a BIRKIN handbag varies from thousands of dollars to over one hundred thousand dollars. The price of the BIRKIN handbag has increased over the years. Authority: Martin Decl. at ¶ 9.

*Rothschild's Response:*

**(11)**     Undisputed.

12.     Since the first sale of the BIRKIN handbag in 1986, Hermès has sold more than ▉▉▉▉▉ worth of BIRKIN handbags in the U.S. In the past 10 years, Hermès's [sic] has annually sold over ▉▉▉▉▉▉ U.S. dollars' worth of BIRKIN handbags in significant quantities in the U.S. Authority: Martin Decl. at ¶ 10.

*Rothschild's Response:*

**(12)**     Undisputed.

13.     In Defendant's marketing for the METABIRKINS NFTs (as described herein), he described the BIRKIN handbag as "Herm[è]s' most famous handbag" and a "highly covetable 'holy grail' handbag." Authority: Corrigan Decl., Ex. 5 at HERMES_0009806; Ex. 6 at HERMES_0037671.

*Rothschild's Response:*

**(13)**     Mr. Rothschild does not dispute that the quotes in paragraph 13 appear in the

cited materials, but he disputes that they were used in "marketing for…NFTs" alone. As

HERMES_0009806 and HERMES_0037671 show, the statements were made in describing the

*MetaBirkins* art project as a whole.

Mr. Rothschild further states that although Hermès says that the METABIRKINS NFTs are "described herein," that term in fact is not defined in Plaintiffs' Rule 56.1 Statement of Material Facts. As a consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are independent either from the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire *MetaBirkins* art project, of which they are an integral part.

14. Defendant stated in a December 6, 2021 interview with *Yahoo! Finance* that for him, "there's nothing more iconic than the Hermes Birkin bag." Authority: Corrigan Decl., Ex. 7 at HERMES_0010582.

***Rothschild's Response:***

**(14)** Undisputed.

15. The March 2021 edition of *Harper's Bazaar* contained an editorial dedicated to the BIRKIN handbag titled, "The Mighty, MIGHTY Birkin." The article discusses "[h]ow the [BIRKIN handbag] withstood trends and WEATHERED SEASONS to become an INDELIBLE PART of the CULTURE." Authority: Corrigan Decl., Ex. 8 at HERMES_0001769.

***Rothschild's Response:***

**(15)** Undisputed.

16. A September 2021 *Vanity Fair* article noted that, "There is a kind of fashion object so long-lasting, so tirelessly wanted that its name becomes recognizable, a metonym for the brand that made it: the Air Jordan, the Love bracelet. Few brands, successful though they may be, attain that kind of saturation. Hermès has done it twice: the Birkin and, arguably the first of the household-name phenomena, the Kelly." Authority: Corrigan Decl., Ex. 9 at HERMES_0037579.

***Rothschild's Response:***

**(16)** Undisputed.

17. Defendant first began using the METABIRKINS Mark as early as November 7, 2021. Authority: Corrigan Decl., Ex. 10 at Rothschild006657; Ex. 11.

*Rothschild's Response:*

(17)     Mr. Rothschild does not dispute that he began using the *MetaBirkins* title for his

art project as early as November 7, 2021. Mr. Rothschild disputes, however, that he has used

"MetaBirkins" as a trademark, which is a legal question, not a question of fact.

18.     The BIRKIN handbag has been famous in the U.S. for many years, and at least
prior to Defendant's use. Authority: Martin Decl. at ¶ 15.

*Rothschild's Response:*

(18)     Mr. Rothschild does not dispute that the Birkin handbag is well-known in the U.S.

But Mr. Rothschild disputes that the Birkin handbag is "famous," at least as that term is used in

U.S. trademark law. Under U.S. trademark law, fame refers to the widespread recognition by the

national consuming public of a trademark, not a product like a handbag. Plaintiffs have not

produced evidence to show fame in the sense in which the concept operates in U.S. trademark

law.

19.     For decades, Hermès has developed its reputation and distinctive image as a
luxury fashion house of high-quality merchandise and has invested substantially in developing its
goodwill in the HERMÈS Mark (as defined herein), BIRKIN Mark, and BIRKIN Trade Dress
(as defined herein), which are all known worldwide. The BIRKIN Mark and BIRKIN handbag
are famous and among Hermès's most valuable assets. Authority: Martin Dec. at ¶ 14.

*Rothschild's Response:*

(19)     Undisputed, except that Mr. Rothschild disputes that the BIRKIN Mark is

"famous," at least as that term is used in U.S. trademark law, as Plaintiffs have not produced

evidence to show fame in that sense. Mr. Rothschild also disputes that the Birkin handbag can be

"famous;" that term, as used in U.S. trademark law, applies to marks, not products.

20.     Hermès has invested significant time and money in making Hermès what it is
today, including in making the BIRKIN handbag what it is today. Considering what could be
Hermès's future with the metaverse and NFTs, the fact that Defendant launched his
METABIRKINS NFTs first, whatever Hermès will do, there will always be a reference to what
Defendant has done. It has caused irreparable harm to Hermès. Today, whatever Hermès does in

the metaverse or with NFTs, there will always be a tie to Defendant or METABIRKINS. Consumers could become newly confused as they might not believe, for example, that Hermès's NFTs are really from Hermès. Indeed, entering the NFT market with the BIRKIN trademark is becoming more difficult for Hermès because the METABIRKINS name has already been used for an NFT. Authority: Martin Decl. at ¶ 24, Exs. 6-8; Corrigan Decl., Ex. 12 at 273:24-274:25.

*Rothschild's Response:*

**(20)**   Mr. Rothschild does not dispute that Hermès has invested significant time and

money in its company and the Birkin handbag. But Mr. Rothschild disputes the remainder of

paragraph 20, which is speculative and unsupported by evidence in the record aside from Nicolas

Martin's conclusory testimony. *See* Martin Decl. at ¶ 24, Exs. 6-8; Corrigan Decl., Ex. 12 at

273:24-274:25.

21.   Defendant has harmed Hermès's "goodwill and [its] capacity to exploit and to use [its] trademark Birkin and [its] trade dress in the metaverse and in the NFT." Authority: Corrigan Decl., Ex. 12 at 277:23-278:3.

*Rothschild's Response:*

**(21)**   Mr. Rothschild disputes the statement in paragraph 21, which is speculative and

unsupported by evidence in the record aside from Nicolas Martin's conclusory testimony. *See*

Corrigan Decl., Ex. 12 at 277:23-278:3.

22.   Hermès owns the BIRKIN trademark which registered on the Principal Register of the U.S. Trademark and Patent Office ("USPTO") on September 6, 2005 under Registration No. 2991927 (the "BIRKIN Mark"). Authority: Corrigan Decl., Ex. 13 at HERMES_0007355; Martin Decl. at ¶ 5.

*Rothschild's Response:*

**(22)**   Undisputed.

23.   The BIRKIN handbag was first sold under the BIRKIN Mark in commerce in the U.S. in 1986. Authority: Corrigan Decl., Ex. 14 at HERMES_0007674; Martin Decl. at ¶¶ 5, 10.

*Rothschild's Response:*

**(23)**   Undisputed.

24.     Hermès owns the BIRKIN trade dress which registered on the Principal Register of the USPTO on March 29, 2011 under Registration No. 3936105 (the "BIRKIN Trade Dress"). Authority: Corrigan Decl., Ex. 14 at HERMES_0007674; Martin Decl. at ¶ 5.

*Rothschild's Response:*

**(24)**   Mr. Rothschild does not dispute that Hermès owns Registration No. 3936105. The

question of whether Hermès owns a trade dress in connection with the Birkin handbag is a

question of law to which no response is necessary here.

25.     Hermès owns several registrations for the HERMÈS trademark which are registered on the Principal Register of the USPTO for a wide array of goods and services, including Registration Nos. 930149, 4278653, 2213940, 368785, 369271, 369681, 1450841, 370082, 909653, 369944, 858299, 3198963, 3036116, 1099896 (collectively, the "HERMÈS Mark"). Authority: Corrigan Decl., Ex. 15; Martin Decl. at ¶ 4.

*Rothschild's Response:*

**(25)**   Undisputed.

26.     Hermès owns pending U.S. Application Serial Nos. 97566629 for BIRKIN and 97566611 for HERMÈS, in connection with non-fungible tokens (NFTs) and related goods and services. Authority: Corrigan Decl., Exs. 16-17; Martin Decl. at ¶ 19.

*Rothschild's Response:*

**(26)**   Mr. Rothschild does not dispute that Hermès filed these pending applications on

August 26, 2022, on an "intent-to-use" basis.

27.     The BIRKIN Mark is in full force and effect for leather or imitation leather goods, namely, handbags. Authority: Corrigan Decl., Ex. 13; Martin Decl. at ¶ 5.

*Rothschild's Response:*

**(27)**   Mr. Rothschild does not dispute that the registration for the BIRKIN Mark is valid

and persisting.

28.     The BIRKIN Mark, registered on the USPTO Principal Register, became incontestable on February 9, 2012, and has been continuously used since its registration. Authority: Corrigan Decl., Ex. 13; Martin Decl. at ¶ 5.

*Rothschild's Response:*

**(28)**   Undisputed.

29.   The BIRKIN Mark is strong and distinctive for handbags. Authority: Corrigan Decl., Ex. 18 at 7.

*Rothschild's Response:*

**(29)**   Undisputed.

30.   Non-fungible tokens ("NFTs") are digital records of ownership, typically recorded on a public ledger called a blockchain; NFTs may, or may not, be associated with and/or represent ownership of a digital or physical asset. Authority: Mentzer Decl., Ex. 1 at 7-8; Kominers Decl., Ex. 1 at 5.

*Rothchild's Response:*

**(30)**   Undisputed.

31.   "Like in the way that physical deeds serve as ownership records for land or other physical property, NFTs are often used as a form of 'digital deed' representing ownership in digital or physical assets." Authority: Kominers Decl., Ex. 1 at 5.

*Rothschild's Response:*

**(31)**   Undisputed.

32.   ████████████████████████████████████████
████████████████ Authority: Corrigan Decl., Ex. 19 at Rothschild008291.

*Rothschild's Response:*

**(32)**   Undisputed.

33.   ████████████████████████████████████████
████████████████ Authority: Corrigan Decl., Ex. 20 at Rothschild008347; Ex. 21 at 143:2-17.

*Rothschild's Response:*

**(33)**   Mr. Rothschild does not dispute that ████████████████

████████████████████████████████████████████████



*See* Corrigan Decl., Ex. 20 at Rothschild008343-8347.

34. ████████████████████████████████████████ Authority: Corrigan Decl., Ex. Ex. [sic] 21 at 146:24-147:9; Ex. 22 at Rothschild008383-8386.

***Rothschild's Response:***

**(34)** Mr. Rothschild does not dispute that ████████████████

████████ *See* Corrigan Decl., Ex. 22 at Rothschild008383-8386.

35. ████████████████████████████████████████ uthority: Corrigan Decl., Ex. 23 at Rothschild008391-92.

***Rothschild's Response:***

**(35)** Mr. Rothschild disputes ████████████████████████

████████ *See* Corrigan Decl., Ex. 55 at Rothschild008309-8320 (showing Mr. Rothschild giving feedback and direction to Mr. Berden); Declaration of Rhett O. Millsaps II in Support of Rothschild's Opposition to Plaintiffs' Motion for Summary Judgment dated October 20, 2022 ("Millsaps Opp. Decl.") ¶ 2, Ex. 1 at Rothschild0011356-11359, Rothschild0011416-11428,

Rothschild0014566-14594, Rothschild0014660-14663, Rothschild0014683-14685,

Rothschild0014687-14694, Rothschild0014796-14802; ¶ 3, Ex. 2 (Gopnik Dep. (Sept. 23, 2022)

244:7-245:5 (in response to questioning about his review of a voluminous number of Mr.

Rothschild's and Mr. Berden's communications, stating that Mr. Berden "was functioning as a

high-level studio assistant" to Mr. Rothschild)); Declaration of Blake Gopnik dated October 20,

2022 ("Gopnik Decl.") ¶¶ 14-15; Declaration of Mason Rothschild in Opposition to Plaintiffs'

Motion for Summary Judgment dated October 20, 2022 ("Rothschild Opp. Decl.") ¶¶ 3-4.



36.     Prior to December 2, 2021, ███████████████████ a smart contract to generate NFTs identified by the name METABIRKINS. Authority: Mentzer Decl., Ex. 1 at 10; Corrigan Decl., Ex. 21 at 258:21-261:13.

**Rothschild's Response:**

**(36)**     Undisputed.

37.     A smart contract is computer code placed on the blockchain. The smart contract creates the rules as to what NFTs are called, how NFTs are generated, how they can be sold or transferred, and how digital files become associated with NFTs. Authority: Mentzer Decl., Ex. 1 at 9, 10, 16, 21 n. 9, 24, 29; Corrigan Decl., Ex. 21 at 258:21-261:9, 378:24-379:4.

**Rothschild's Response:**

**(37)**     Undisputed.

38.     Defendant currently controls the smart contract that created the METABIRKINS NFTs. Authority: Mentzer Decl., Ex. 1 at 9, 10, 16, 21 n. 9, 24, 29; Corrigan Decl., Ex. 21 at 258:21-261:9, 378:24-379:4.

*Rothschild's Response:*

(38)     Undisputed. Mr. Rothschild further states that although Hermès says that the

METABIRKINS NFTs are "described herein," that term in fact is not defined in Plaintiffs' Rule

56.1 Statement of Material Facts. As a consequence, Mr. Rothschild does not know what Hermès

means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the

NFTs are independent either from the *MetaBirkins* artworks they authenticate or Mr.

Rothschild's entire *MetaBirkins* art project, of which they are an integral part.

39.     At the direction of Defendant, the METABIRKINS smart contract creator assigned the METABIRKINS name to the NFTs created by this contract. Authority: Mentzer Decl., Ex. 1 at 11, 16-17, & 29; Corrigan Decl., Ex. 21 at 258:21-261:9.

*Rothschild's Response:*

(39)     Undisputed.

40.     The METABIRKINS smart contract permits the controller of the smart contract to associate the NFTs with digital files which are not recorded on the blockchain. The controller of the METABIRKINS smart contract can change the digital files associated with the METABIRKINS NFTs at any time. Authority: Mentzer Decl., Ex. 1 at 11, 16-17, & 29; Corrigan Decl., Ex. 21 at 258:21-261:9.

*Rothschild's Response:*

(40)     Undisputed. Mr. Rothschild further states that although Hermès says that the

METABIRKINS NFTs are "described herein," that term in fact is not defined in Plaintiffs' Rule

56.1 Statement of Material Facts. As a consequence, Mr. Rothschild does not know what Hermès

means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the

NFTs are independent either from the *MetaBirkins* artworks they authenticate or Mr.

Rothschild's entire *MetaBirkins* art project, of which they are an integral part.

41.     To determine who would receive the METABIRKINS NFTs, Defendant created a whitelist, which is a list of crypto wallets pre-approved to generate the METABIRKINS NFTs Authority: Mentzer Decl., Ex. 1 at 9.

*Rothschild's Response:*

**(41)**     Undisputed. Mr. Rothschild further states that although Hermès says that the

METABIRKINS NFTs are "described herein," that term in fact is not defined in Plaintiffs' Rule

56.1 Statement of Material Facts. As a consequence, Mr. Rothschild does not know what Hermès

means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the

NFTs are independent either from the *MetaBirkins* artworks they authenticate or Mr.

Rothschild's entire *MetaBirkins* art project, of which they are an integral part.

42.     By whitelisting crypto wallets, Defendant sold each crypto wallet owner the right to generate a METABIRKINS NFT, at the cost of 0.1 Ether (~$450 at the time of minting). The process of generating NFTs and transferring them to their first owners is called minting.

*Rothschild's Response:*

**(42)**     Undisputed. Mr. Rothschild further states that although Hermès says that the

METABIRKINS NFTs are "described herein," that term in fact is not defined in Plaintiffs' Rule

56.1 Statement of Material Facts. As a consequence, Mr. Rothschild does not know what Hermès

means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the

NFTs are independent either from the *MetaBirkins* artworks they authenticate or Mr.

Rothschild's entire *MetaBirkins* art project, of which they are an integral part.

43.     The minting process began on the morning of December 2, 2021 UTC when Defendant began adding the 100 crypto wallets to the METABIRKINS whitelist. Authority: Mentzer Decl., Ex. 1 at 12-13.

*Rothschild's Response:*

**(43)**     Undisputed.

44.     On the evening of December 2, 2021 UTC, the whitelist spot holders began minting the METABIRKINS NFTs. Minting was completed by the evening of December 3, 2021 UTC, in less than 24 hours. Authority: Mentzer Decl., Ex. 1 at 14-15.

**Rothschild's Response:**

(44)     Undisputed. Mr. Rothschild further states that although Hermès says that the

METABIRKINS NFTs are "described herein," that term in fact is not defined in Plaintiffs' Rule

56.1 Statement of Material Facts. As a consequence, Mr. Rothschild does not know what Hermès

means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the

NFTs are independent either from the *MetaBirkins* artworks they authenticate or Mr.

Rothschild's entire *MetaBirkins* art project, of which they are an integral part.

45.     During the time period when the METABIRKINS NFTs were initially sold, the digital files associated with the METABIRKINS NFTs depicted images of shrouds covering an unidentified object. All initial sales of METABIRKINS NFTs occurred during the time when the METABIRKINS NFTs were associated with images of shrouds. Authority: Corrigan Decl., Ex. 21 at 227:16-228:3; Ex. 24; Kominers Decl., Ex. 1 at 25; Mentzer Decl., Ex. 1 at 15-19 (screenshot of Figure 9 on page 17 is depicted below).

**Rothchild's Response:**

(45)     Mr. Rothschild disputes this statement to the extent it suggests that buyers did not

understand at the time of sale that they were buying a *MetaBirkins* artwork. Undisputed

testimony in the record shows that purchasers saw and doubtless understood that they were

buying *MetaBirkins* artworks, even though prior to minting the NFTs they did not know which

one of the *MetaBirkins* they would receive. *See* Corrigan Decl. ¶ 6, Ex. 6. That evidence is

consistent with Rothschild's uncontradicted deposition testimony:

> *Q: So how would somebody know what they were purchasing?*
>
> *A: Because the 100* [MetaBirkins *artworks*] *were shown in previews. You just didn't know which one you were going to get*."

Millsaps Opp. Decl. ¶ 4, Ex. 3 (M. Rothschild Dep. (August 4, 2022) 226:18-228:10).

Mr. Rothschild further states that although Hermès says that the METABIRKINS NFTs are "described herein," that term in fact is not defined in Plaintiffs' Rule 56.1 Statement of Material Facts. As a consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are independent either from the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire *MetaBirkins* art project, of which they are an integral part.

Mr. Rothschild does not dispute that the *MetaBirkins* NFTs were attached to images of shrouds covering an unidentified object for less than 24 hours during the initial minting process, until the "unveiling" occurred upon conclusion of minting, "when each NFT received their unique [*MetaBirkins*] image." Mentzer Decl., Ex. 1 at 17-19.

46.     During the minting process, the METABIRKINS NFTs were still associated with the shrouded image above, and 16 METABIRKINS NFTs were sold or transferred prior to the images being replaced with the digital files depicting furry BIRKIN handbags. These shrouded images were called "MetaBirkins" in the OpenSea marketplace where Defendant promoted and made available for sale the METABIRKINS NFTs. Authority: Corrigan Decl., Ex. 21 at 249:17-250:4; Mentzer Decl., Ex. 1 at 15-19.

### *Rothschild's Response:*

**(46)**   Mr. Rothschild disputes this statement to the extent it suggests that buyers did not understand at the time of sale that they were buying a *MetaBirkins* artwork, based on the undisputed evidence cited in response to paragraph 45, *supra*.

Mr. Rothschild further states that although Hermès says that the METABIRKINS NFTs are "described herein," that term in fact is not defined in Plaintiffs' Rule 56.1 Statement of Material Facts. As a consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are independent either from the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire *MetaBirkins* art project, of which they are an integral part.

Mr. Rothschild otherwise does not dispute the factual details laid out in paragraph 46.

47.     After minting ended on December 3, 2021 UTC, Defendant caused the shrouded image files associated with the newly minted METABIRKINS NFTs to be replaced with images like that shown below. Authority: Mentzer Decl., Ex. 1 at 19 (screenshot of Figure 11 on page 18 depicted below).

*Rothschild's Response:*

**(47)**     Mr. Rothschild disputes this statement to the extent it suggests that buyers did not

understand at the time of sale that they were buying a *MetaBirkins* artwork, based on the

undisputed evidence cited in response to paragraph 45, *supra*.

Mr. Rothschild further states that although Hermès says that the METABIRKINS NFTs

are "described herein," that term in fact is not defined in Plaintiffs' Rule 56.1 Statement of

Material Facts. As a consequence, Mr. Rothschild does not know what Hermès means that term

to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are

independent either from the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire

*MetaBirkins* art project, of which they are an integral part.

Mr. Rothschild otherwise does not dispute the factual details laid out in paragraph 47.

48.     These new image files depicted handbags which copy the registered trade dress of the BIRKIN handbag. In these new image files, Defendant intended to replicate the features and ultimately the value of a BIRKIN handbag. Authority: Corrigan Decl., Ex. 6 at HERMES_0037671; Ex. 12 at 68:1-22; Ex. 21 at 147:18-148:1.

*Rothschild's Response:*

**(48)**     Mr. Rothschild disputes that he copied the trade dress of the Birkin handbag, as

undisputed evidence shows that the *MetaBirkins* images do not incorporate all of the elements of

the claimed trade dress in Registration No. 3936105. *See* Corrigan Decl. ¶ 6, Ex. 6; Ex. 14 at

HERMES_0007674; Millsaps Opp. Decl. ¶ 5, Ex. 4 (S. Kominers Dep. (Aug. 29, 2022) 119:18-

24) (testifying that the *MetaBirkins* images do not depict Birkins, but rather "they depict fuzzified bags that look similar to Birkins").

Mr. Rothschild does not dispute that the *MetaBirkins* image files depict imaginary Birkin bags covered in cartoonish fur and that Mr. Rothschild hoped to prove a point with his artistic experiment to see if the culture would assign value to his artwork similar to the value assigned to the Birkin handbag. *See* Rothschild Decl. [Doc. 66] ¶ 11.

49.     Defendant offered the METABIRKINS NFTs for sale on the OpenSea, Rarible, Zora, LooksRare, and Coinbase NFT marketplaces, in online stores that he identified as "MetaBirkins." Authority: Corrigan Decl., Ex. 18 at 5-7; Exs. 25-28.

*Rothschild's Response:*

**(49)**     Mr. Rothschild disputes that he offered his MetaBirkins artworks or NFTs for sale on OpenSea, Rarible, LooksRare, or Coinbase. Mr. Rothschild further states that although Hermès says that the METABIRKINS NFTs are "described herein," that term in fact is not defined in Plaintiffs' Rule 56.1 Statement of Material Facts. As a consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are independent either from the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire *MetaBirkins* art project, of which they are an integral part.

50.     Through July 2022, total sales volume for METABIRKINS NFTs exceeded $1.1 million. Authority: Mentzer Decl. Ex. 1, at 21, 48.

*Rothschild's Response:*

**(50)**     Undisputed. Mr. Rothschild further states that although Hermès says that the METABIRKINS NFTs are "described herein," that term in fact is not defined in Plaintiffs' Rule 56.1 Statement of Material Facts. As a consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the

NFTs are independent either from the *MetaBirkins* artworks they authenticate or Mr.

Rothschild's entire *MetaBirkins* art project, of which they are an integral part.

51.     Even before minting, ███████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████ Authority:
Corrigan Decl., Ex. 29 at Rothschild014949, Rothschild014952, Rothschild014957.

*Rothschild's Response:*

**(51)**     Mr. Rothschild disputes ███████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████     *See* Corrigan Decl., Ex. 55 at Rothschild008309-8320 (showing Mr. Rothschild

giving feedback and direction to Mr. Berden); Declaration of Mason Rothschild in Opposition to

Plaintiffs' Motion for Summary Judgment dated October 20, 2022 ("Rothschild Opp. Decl.") ¶¶

3-4; Declaration of Rhett O. Millsaps II in Opposition to Plaintiffs' Motion for Summary

Judgment dated October 20, 2022 ("Millsaps Opp. Decl.") ¶ 2, Ex. 1 at Rothschild0011356-

11359, Rothschild0011416-11428, Rothschild0014566-14594, Rothschild0014660-14663,

Rothschild0014683-14685, Rothschild0014687-14694, Rothschild0014796-14802; ¶ 3, Ex. 2

(Gopnik Dep. (Sept. 23, 2022) 244:7-245:5 (in response to questioning about his review of a

voluminous number of Mr. Rothschild's and Mr. Berden's communications, stating that Mr.

Berden "was functioning as a high-level studio assistant" to Mr. Rothschild)); Declaration of

Blake Gopnik dated October 20, 2022 ("Gopnik Decl.") ¶ 14.

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

Mr. Rothschild does not dispute that he exchanged the quoted text messages with Mr.

Berden.

52.     After minting, ███████████████████████████████████████
███████████████████████████████████████████████████████

Authority: Corrigan Decl., Ex. 30 at Rothschild015036.

*Rothschild's Response:*

**(52)**   Mr. Rothschild does not dispute that ███████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████

53.   ████████████████████████████████████████████████
██████████████████████   Authority: Corrigan Decl.,

Ex. 31 at Rothschild015053.

*Rothschild's Response:*

**(53)**   Mr. Rothschild disputes ████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████   *See* Corrigan Decl., Ex. 55 at Rothschild008309-8320 (showing Mr. Rothschild

giving feedback and direction to Mr. Berden); Declaration of Rhett O. Millsaps II in Opposition

to Plaintiffs' Motion for Summary Judgment dated October 20, 2022 ("Millsaps Opp. Decl.") ¶

2, Ex. 1 at Rothschild0011356-11359, Rothschild0011416-11428, Rothschild0014566-14594,

Rothschild0014660-14663, Rothschild0014683-14685, Rothschild0014687-14694,

Rothschild0014796-14802; ¶ 3, Ex. 2 (Gopnik Dep. (Sept. 23, 2022) 244:7-245:5 (in response to

questioning about his review of a voluminous number of Mr. Rothschild's and Mr. Berden's

communications, stating that Mr. Berden "was functioning as a high-level studio assistant" to

Mr. Rothschild)); Declaration of Blake Gopnik dated October 20, 2022 ("Gopnik Decl.") ¶ 14;

Declaration of Mason Rothschild in Opposition to Plaintiffs' Motion for Summary Judgment

dated October 20, 2022 ("Rothschild Opp. Decl.") ¶¶ 3-4.

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████

Mr. Rothschild does not dispute that ███████████████████████

████

54.   ███████████████████████████████████

███████████████   Authority: Corrigan Decl., Ex. 32 at Rothschild015215.

***Rothschild's Response:***

**(54)**   Mr. Rothschild disputes ████████████████████

████████████████████████████████

████████████████████████████████████

████████████████████████████████

███████████████████████████████████

███████████   *See* Corrigan Decl., Ex. 55 at Rothschild008309-8320 (showing Mr. Rothschild

giving feedback and direction to Mr. Berden); Declaration of Rhett O. Millsaps II in Opposition

to Plaintiffs' Motion for Summary Judgment dated October 20, 2022 ("Millsaps Opp. Decl.")

¶ 2, Ex. 1 at Rothschild0011356-11359, Rothschild0011416-11428, Rothschild0014566-14594,

Rothschild0014660-14663, Rothschild0014683-14685, Rothschild0014687-14694,

Rothschild0014796-14802; ¶ 3, Ex. 2 (Gopnik Dep. (Sept. 23, 2022) 244:7-245:5 (in response to

questioning about his review of a voluminous number of Mr. Rothschild's and Mr. Berden's

communications, stating that Mr. Berden "was functioning as a high-level studio assistant" to

Mr. Rothschild)); Declaration of Blake Gopnik dated October 20, 2022 ("Gopnik Decl.") ¶ 14;

Declaration of Mason Rothschild in Opposition to Plaintiffs' Motion for Summary Judgment

dated October 20, 2022 ("Rothschild Opp. Decl.") ¶¶ 3-4.

████████████████████████████████████

████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████

███████████████████████████████████████

55.     After Hermès's December 16, 2021 cease and desist letter to Defendant,

██████████████████████████████████████████████ Authority: Martin

Decl. Ex. 4; Corrigan Decl., Ex. 33 at Rothschid009768.

*Rothschild's Response:*

**(55)**   Mr. Rothschild does not dispute that ██████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

████████

56.     Before, during, and after minting, Defendant promoted and marketed the
METABIRKINS NFTs as a digital brand. He went so far as to draw parallels between his
METABIRKINS NFTs and the most successful digital branded NFTs: Bored Ape Yacht Club
and Doodles. Authority: Kominers Decl., Ex. 1 at 1, 16, & 33.

*Rothschild's Response:*

**(56)**   Mr. Rothschild disputes that he promoted and marketed his *MetaBirkins* artworks

or the NFTs to which they are linked as a "digital brand" as opposed to art. As Dr. Blake Gopnik

explained, the distinction that Dr. Kominers attempts to draw between "art-only" NFTs and

"digital brand" NFTs is "specious…Any fine artist eager to be recognized in the 21st century,

and to earn a living, would naturally adopt many or all of the strategies used to publicize and sell

branded products, and this would include the strategies that brands adopt in the new world of

NFTs." Declaration of Rhett O. Millsaps II in Support of Mason Rothschild's Motion for

Summary Judgment dated October 7, 2022 ("Millsaps Decl.") [Doc. 65] ¶ 2, Ex. 1 at 6. As Dr.

Gopnik further opined:

> [A]t least as far back as Rembrandt an artist's signature style has also functioned
> to create brand-recognition in the market for art; there is simply no way to
> distinguish between an artist's properly "aesthetic" activities and the way they use
> those aesthetics to establish the brand that their market, like most elite markets,
> depends on. Even as they make their art, most artists are also running a small
> business whose function is to sell that art. To do that, they can choose to use the
> same marketing strategies that any other business would use. Just as Pablo
> Picasso was a master at manipulating the 20th-century market for physical art
> objects, playing dealers and collectors off each other to control his art's supply
> and demand, so today's artists should be expected to understand and use all
> aspects of the 21st century's new digital markets for their goods and images.

*Id*.

Mr. Rothschild further disputes that his Tweet referencing *MetaBirkins* and popular NFT

projects Bored Ape Yacht Club and Doodles is evidence that he promoted his *MetaBirkins* art

project as a "digital brand." As Plaintiffs' own expert, Dr. Kominers, stated, "…it is not clear

what, precisely, Rothschild intended from the reference here other than an aspirational

implication that the *MetaBirkins* would increase in value ("MetaBirkins2Pluto") to reach towards

the extremely high values attained by the Bored Ape Yacht Club and Doodles NFTs…"

Kominers Decl., Ex. 1 at 33-34.

Mr. Rothschild further states that although Hermès says that the METABIRKINS NFTs

are "described herein," that term in fact is not defined in Plaintiffs' Rule 56.1 Statement of

Material Facts. As a consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are independent either from the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire *MetaBirkins* art project, of which they are an integral part.

57.     The marketplace also viewed the METABIRKINS NFTs as digital brand NFTs because the trading price history and patterns of the METABIRKINS NFTs resembled those of NFT projects which were associated with established brands, had significant upfront investments, or had prior audiences. Authority: Kominers Decl., Ex. 1 at 42-52.

**Rothschild's Response:**

**(57)**     Mr. Rothschild disputes this statement in its entirety. Dr. Kominers admitted at his deposition that he did not take into account the art market as a "factor" in his "empirical" analysis of the prices fetched by Rothschild's *MetaBirkins* because he "couldn't figure out a way to do it that would be robust." Millsaps Opp. Decl. ¶ 5, Ex. 4 (Kominers Dep. (Aug. 29, 2022) 247:5-250:12).

Additionally, Mr. Rothschild disputes the validity of the artificial category of "digital brand NFTs" that Dr. Kominers invented for his report in this case. *See* Millsaps Opp. Decl. ¶ 5, Ex. 4 (S. Kominers Dep. (Aug. 29, 2022) 124:9-126:6 (wherein Dr. Kominers admits that he never published anything using the terms "art-only" NFTs and "digital brand" NFTs prior to submitting his expert report in this case).

Further, as Dr. Blake Gopnik explained, the distinction that Dr. Kominers attempts to draw between "art-only" NFTs and "digital brand" NFTs is "specious…Any fine artist eager to be recognized in the 21st century, and to earn a living, would naturally adopt many or all of the strategies used to publicize and sell branded products, and this would include the strategies that brands adopt in the new world of NFTs." Millsaps Decl. [Doc. 65] ¶ 2, Ex. 1 (Gopnik Rep.) at 6. As Dr. Gopnik further opined:

[A]t least as far back as Rembrandt an artist's signature style has also functioned to create brand-recognition in the market for art; there is simply no way to distinguish between an artist's properly "aesthetic" activities and the way they use those aesthetics to establish the brand that their market, like most elite markets, depends on. Even as they make their art, most artists are also running a small business whose function is to sell that art. To do that, they can choose to use the same marketing strategies that any other business would use. Just as Pablo Picasso was a master at manipulating the 20th-century market for physical art objects, playing dealers and collectors off each other to control his art's supply and demand, so today's artists should be expected to understand and use all aspects of the 21st century's new digital markets for their goods and images.

*Id*.

58.    For example, NFTs offered by Gucci, Nike, and Adidas traded for thousands of dollars to tens of thousands, which reflect being associated with an established brand with these brands' NFTs. Authority: Kominers Decl., Ex. 1 at 22.

**Rothschild's Response:**

**(58)**   Mr. Rothschild disputes this statement to the extent that it purports to explain the

prices paid for Mr. Rothschild's *MetaBirkins* artworks and associated NFTs. Dr. Kominers

admitted at his deposition that he did not take into account the art market as a "factor" in his

"empirical" analysis of the prices fetched by Rothschild's *MetaBirkins* because he "couldn't

figure out a way to do it that would be robust." Millsaps Opp. Decl. ¶ 5, Ex. 4 (Kominers Dep.

(Aug. 29, 2022) 247:5-250:12).

59.    Dr. Kominers analyzed trading patterns of 413 NFTs minted around the same time as the METABIRKINS NFTs and found that the METABIRKINS NFTs traded for a higher average price than all but one NFT, NEOTOKYO, which was created by a collection of venture capital funds, developers, and others trying to develop metaverse gaming platforms and whose social media channels had hundreds of thousands if not millions of followers at the time of minting (METABIRKINS Twitter had approximately 5,500 followers at the time of minting). Authority: Kominers Decl., Ex. 1 at 42-43.

**Rothschild's Response:**

**(59)**   Mr. Rothschild disputes this statement to the extent that it purports to explain the

prices paid for Mr. Rothschild's *MetaBirkins* artworks and associated NFTs. Dr. Kominers

admitted at his deposition that he did not take into account the art market as a "factor" in his "empirical" analysis of the prices fetched by Rothschild's *MetaBirkins* because he "couldn't figure out a way to do it that would be robust." Millsaps Opp. Decl. ¶ 5, Ex. 4 (Kominers Dep. (Aug. 29, 2022) 247:5-250:12).

Mr. Rothschild further states that although Hermès says that the METABIRKINS NFTs are "described herein," that term in fact is not defined in Plaintiffs' Rule 56.1 Statement of Material Facts. As a consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are independent either from the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire *MetaBirkins* art project, of which they are an integral part.

60.    The only factor that explains the METABIRKINS NFTs pricing is the Defendant's adoption of the BIRKIN Mark, the BIRKIN Trade Dress, and the Hermès brand to promote and market the METABIRKINS NFTs. Authority: Kominers Decl., Ex. 1 at 52.

***Rothschild's Response:***

**(60)**    Mr. Rothschild disputes that the only factor that explains the pricing of his *MetaBirkins* artworks and NFTs was his "adoption of the BIRKIN Mark, the BIRKIN Trade Dress, and the Hermès brand to promote and market" them. Mr. Rothschild referenced and engaged with, but did not "adopt," Hermès' marks, trade dress, or brands in his artwork and the promotion of his artwork. *See* Millsaps Opp. Decl. ¶ 3, Ex. 2 (Gopnik Dep. (Sept. 23, 2022) 76:5-78:8).

Moreover, Plaintiffs do not have evidence to support this contentions, as Dr. Kominers admitted at his deposition that he did not take into account the art market as a "factor" in his "empirical" analysis of the prices fetched by Rothschild's *MetaBirkins* because he "couldn't

figure out a way to do it that would be robust." Millsaps Opp. Decl. ¶ 5, Ex. 4 (Kominers Dep.

(Aug. 29, 2022) 247:5-250:12).

61.    Defendant's proffered expert, Dr. Blake Gopnik, provided an expert report stating that "NFT'd images made to mimic a purse sold at Walmart would be sure to get little artistic transaction in our Hermès-mad culture. The Kominers report submitted in this case is quite right to note that the success of Rothschild's 'MetaBirkins' depends on their connection to the Hermès brand." Authority: Corrigan Decl., Ex. 34, ¶ 35.

**Rothschild's Response:**

**(61)**    Undisputed.

62.    Defendant copied the attributes and promotional efforts of successful digital brand NFTs to market the METABIRINS NFTs. Authority: Kominers Decl., Ex. 1 at 16-34; Corrigan Decl., Ex. 21 at 218:9-19, 223:13-224:11, 225:11-18.

**Rothschild's Response:**

**(62)**    Mr. Rothschild disputes the validity of the artificial category of "digital brand

NFTs" that Dr. Kominers invented for his report in this case. *See* Millsaps Opp. Decl. ¶ 5, Ex. 4

(S. Kominers Dep. (Aug. 29, 2022) 124:9-126:6 (wherein Dr. Kominers admits that he never

published anything using the terms "art-only" NFTs and "digital brand" NFTs prior to

submitting his expert report in this case)).

Further, as Dr. Blake Gopnik explained, the distinction that Dr. Kominers attempts to

draw between "art-only" NFTs and "digital brand" NFTs is "specious…Any fine artist eager to

be recognized in the 21st century, and to earn a living, would naturally adopt many or all of the

strategies used to publicize and sell branded products, and this would include the strategies that

brands adopt in the new world of NFTs." Declaration of Rhett O. Millsaps II in Support of

Mason Rothschild's Motion for Summary Judgment dated October 7, 2022 ("Millsaps Decl.")

[Doc. 65] ¶ 2, Ex. 1 at 6. As Dr. Gopnik further opined:

> [A]t least as far back as Rembrandt an artist's signature style has also functioned
> to create brand-recognition in the market for art; there is simply no way to

distinguish between an artist's properly "aesthetic" activities and the way they use those aesthetics to establish the brand that their market, like most elite markets, depends on. Even as they make their art, most artists are also running a small business whose function is to sell that art. To do that, they can choose to use the same marketing strategies that any other business would use. Just as Pablo Picasso was a master at manipulating the 20th-century market for physical art objects, playing dealers and collectors off each other to control his art's supply and demand, so today's artists should be expected to understand and use all aspects of the 21st century's new digital markets for their goods and images.

*Id.*

Mr. Rothschild does not dispute that he promoted his *Metabirkins* artworks and linked

NFTs in ways that other NFT projects have been promoted.

63.     For example, Defendant made public promises of utility like air drops of related brand assets, including replicating an ██████████████████ (Defendant's pink horse image at left compared to the orange Hermès bag charm at right below) ████████████ Authority: Corrigan Decl., Ex. 21 at 179:24-181:3; Ex. 35 at SACKS_000253-254; Ex. 36 at 198:16-199:14; Kominers Decl., Ex. 1 at 52-53.

*Rothschild's Response:*

**(63)**   Mr. Rothschild does not dispute that ████████████████████

████████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████████





Gopnik Decl. ¶ 15.

Further, it is undisputed that ██████████████████████████████

██████████████████████████████████████████████████ *See* Millsaps

Opp. Decl. ¶ 5, Ex. 4 (S. Kominers Dep. (Aug. 29, 2022) 179:6-18) ("*Q: Is there any digital*

*merchandise associated with MetaBirkins? A: So there was – Rothschild indicated plans to*

*introduce an airdrop of another NFT which might be considered digital merchandise…But all of*

*these are things he could have done. But I'm not aware that he introduced those individual assets*

*at this time*.").

64.      Defendant also created a dedicated website and social media accounts for the
METABIRKINS NFTs. Authority: Corrigan Decl., Ex. 18 at 4-5; Ex. 21 at 29:16-30:23.

***Rothschild's Response:***

**(64)**   Mr. Rothschild states that although Hermès says that the METABIRKINS NFTs

are "described herein," that term in fact is not defined in Plaintiffs' Rule 56.1 Statement of

Material Facts. As a consequence, Mr. Rothschild does not know what Hermès means that term

to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are

independent either from the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire

*MetaBirkins* art project, of which they are an integral part.

Mr. Rothschild does not dispute that he promoted his *Metabirkins* artworks and linked

NFTs in ways that other NFT art projects have been promoted, including with a website and

social media accounts.

65.     Defendant owns and operates for his benefit, a website at the domain name <MetaBirkins.com> (the "METABIRKINS Website"). Authority: Corrigan Decl., Ex. 18 at 4; Ex. 21 at 32:14-19.

***Rothschild's Response:***

**(65)**     Undisputed.

66.     The METABIRKINS Website was registered on November 7, 2021. Authority: Corrigan Decl., Ex. 11.

***Rothschild's Response:***

**(66)**     Undisputed.

67.     Defendant maintains, controls, and uses for his benefit, a Twitter account using the handle @MetaBirkins (the "METABIRKINS Twitter"). Authority: Corrigan Decl., Ex. 18 at 4; Ex. 21 at 29:16-30:23.

***Rothschild's Response:***

**(67)**     Undisputed.

68.     Defendant maintains, controls, and uses for his benefit, an Instagram account using the handle @MetaBirkins (the "MEABIRKINS Instagram"). Authority: Corrigan Decl., Ex. 18 at 5; Ex. 21 at 29:16-30:23.

***Rothschild's Response:***

**(68)**     Undisputed.

69.     Additionally, Defendant created and actively engaged with a METABIKRINS [sic] community. Defendant created, runs, and operates for his benefit, the METABIRKINS Discord server (the "METABIRKINS Discord"). Authority: Kominers Decl., Ex. 1 at 27, 36; Corrigan Decl., Ex. 18 at 5; Ex. 21 at 31:11-15.

***Rothschild's Response:***

**(69)**     Undisputed.

70.     Defendant utilized Discord moderators and managers to actively engage with his METABIRKINS community. ███████████████████████████████
████████████████████████ Authority: Kominers Decl., Ex. 1 at 27, 36; Corrigan Decl., Ex. 21 at 31:16-20.

*Rothschild's Response:*

(70)    Undisputed.

71. Defendant uses the METABIRKINS Twitter, METABIRKINS Instagram, METABIRKINS Website, and METABIRKINS Discord, to promote and advertise the METABIRKINS collection of NFTs and his METABIRKINS branded commercial activities. Authority: Corrigan Decl., Ex. 6; Ex. 37 HERMES_0008348 at 8349-8350, 8523-8533, 8713-8719, 8732-8764, 8818-8822; Ex. 38 HERMES_0009089 at 9416-9432; Ex. 39.

*Rothschild's Response:*

(71)    Mr. Rothschild disputes that he has used the *MetaBirkins* website and social

media accounts to promote "branded commercial activities" (which is Plaintiffs' characterization

and a term that is undefined by them) other than the sale of his art, and the cited evidence does

not support that assertion. Mr. Rothschild has used those channels to promote his *MetaBirkins*

artworks, which include the linked NFTs, and art project as a whole. *See* generally Millsaps

Decl. [Doc. 65], Ex. 1 (Gopnik Rep.); Gopnik Decl. ¶¶ 4, 6-7, 9; Rothschild Decl. [Doc. 66] ¶¶

11-14.

72. Defendant also cross-promoted the METABIRKIN NFTs with other NFT projects, for example, he used the METABIRKINS Twitter, METABIRKINS Instagram, and METABIRKINS Discord to promote and advertise his I Like You You're Weird ("ILYYW") NFTs. Authority: Corrigan Decl., Ex. 37 at HERMES_0008348 at 8391-8405 Ex. 38 HERMES_0009089 at 9420; Exs. 40-41; Kominers Decl., Ex. 1 at 38.

*Rothschild's Response:*

(72)    Mr. Rothschild disputes that he promoted NFTs alone. Although Hermès says that

the METABIRKINS NFTs are "described herein," that term in fact is not defined in Plaintiffs'

Rule 56.1 Statement of Material Facts. As a consequence, Mr. Rothschild does not know what

Hermès means that term to refer to, but he disputes Hermès' use of the term to the extent it

suggests the NFTs are independent either from the *MetaBirkins* artworks they authenticate or Mr.

Rothschild's entire *MetaBirkins* art project, of which they are an integral part.

Mr. Rothschild does not dispute that he promoted his ILYYW art project through channels associated with his *MetaBirkins* art project.

73. ███████████████████████████████████████████ uthority: Corrigan Decl., Ex. 42 at 21:18-22:3.

**Rothschild's Response:**

**(73)**   Undisputed.

74. ███████████████████████████████████ Authority: Corrigan Decl., Ex. 35 at SACKS_000252.

**Rothschild's Response:**

**(74)**   Mr. Rothschild disputes that ██████████████████████████
████████████████████████████████████████
███████████████████████████████████████ Corrigan

Decl., Ex. 35 at SACKS_000252.

Mr. Rothschild further states that █████████████████████████
████████████████████████████████████████
████████████████████████████████████████
█████████████████████████████████████
████████████████████████████████████████
███████████████████████████

75. Had Hermès not taken action to stop Defendant's digital brand activities, he likely would have continued with the same digital brand building activities mapped out in his ILYYW NFT project. These activities included promises of utility like "pet" companions to holders' ILYYW characters, collaborations with a metaverse based game platform (Blankos) to create playable characters based on the images associated with holders' ILYYW NFTs, and designing and gifting digital assets co-branded with other NFT projects (e.g., METABIRKINS NFTs with images using ILYYW color patterns). Authority: Kominers Decl., Ex. 1 at 38-39.

*Rothschild's Response:*

**(75)**     Mr. Rothschild disputes that he had plans to use the ILYYW roadmap with his separate MetaBirkins art project. Plaintiffs have no evidence to support this statement; indeed Dr. Kominers' cited report states, "Rothschild's strategies to promote the value of the ILYYW NFTs suggest a number of steps he might theoretically take to promote the value of the MetaBirkins brand if permitted to do so."  Kominers Decl., Ex. 1 at 38 (emphasis added).

Mr. Rothschild additionally disputes the validity of the artificial category of "digital brand" activities in relation to image-based NFTs that Dr. Kominers invented for his report in this case. *See* Millsaps Opp. Decl. ¶ 5, Ex. 4 (S. Kominers Dep. (Aug. 29, 2022) 124:9-126:6 (wherein Dr. Kominers admits that he never published anything using the terms "art-only" NFTs and "digital brand" NFTs prior to submitting his expert report in this case).

Further, as Dr. Blake Gopnik explained, the distinction that Dr. Kominers attempts to draw between "art-only" NFTs and "digital brand" NFTs is "specious…Any fine artist eager to be recognized in the 21st century, and to earn a living, would naturally adopt many or all of the strategies used to publicize and sell branded products, and this would include the strategies that brands adopt in the new world of NFTs." Declaration of Rhett O. Millsaps II in Support of Mason Rothschild's Motion for Summary Judgment dated October 7, 2022 ("Millsaps Decl.") [Doc. 65] ¶ 2, Ex. 1 at 6. As Dr. Gopnik further opined:

> [A]t least as far back as Rembrandt an artist's signature style has also functioned to create brand-recognition in the market for art; there is simply no way to distinguish between an artist's properly "aesthetic" activities and the way they use those aesthetics to establish the brand that their market, like most elite markets, depends on. Even as they make their art, most artists are also running a small business whose function is to sell that art. To do that, they can choose to use the same marketing strategies that any other business would use. Just as Pablo Picasso was a master at manipulating the 20th-century market for physical art objects, playing dealers and collectors off each other to control his art's supply

and demand, so today's artists should be expected to understand and use all aspects of the 21st century's new digital markets for their goods and images.

*Id*.

Mr. Rothschild further states that although Hermès says that the METABIRKINS NFTs are "described herein," that term in fact is not defined in Plaintiffs' Rule 56.1 Statement of Material Facts. As a consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are independent either from the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire *MetaBirkins* art project, of which they are an integral part.

Mr. Rothschild does not dispute that he has engaged in the described activities in relation to his ILYYW NFT art project. It is undisputed that Mr. Rothschild did not engage in the described activities in relation to his *MetaBirkins* art project. *See*, *e.g.*, Kominers Decl., Ex. 1 (Kominers Rep. ¶ 55 ("Rothschild's strategies to promote the value of the ILYYW NFTs suggest a number of steps he *might theoretically take* to promote the value of the MetaBirkins brand if permitted to do so.") (emphasis added)).

76. Defendant incentivized himself to continue providing utility to METABIRKINS NFT holders by setting a royalty or creator fee. Defendant earned a creator fee for every resale of a METABIRKINS NFT on each NFT platform where METABIRKINS NFTs were and are offered for sale. This royalty was typically set at 7.5% of the sale price. Authority: Mentzer Decl., Ex. 1 at 5, 8-9, 17-27.

***Rothschild's Response:***

**(76)**   Mr. Rothschild does not dispute that he receives a royalty or creator fee for each resale of his *MetaBirkins* NFT artworks, but Mr. Rothschild disputes Plaintiffs' characterization that he incentivized himself to continue providing utility for the *MetaBirkins* NFT artworks. The value of Mr. Rothschild's MetaBirkins NFTs is tied to the artwork to which they are linked and the art project as a whole. *See* Gopnik Decl. ¶ 6. Mr. Rothschild further states that although

Hermès says that the METABIRKINS NFTs are "described herein," that term in fact is not defined in Plaintiffs' Rule 56.1 Statement of Material Facts. As a consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are independent either from the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire *MetaBirkins* art project, of which they are an integral part.

77. Defendant has continued publicly promising utility to METABIRKINS NFTs holders since the filing of this lawsuit. On August 16, 2022, Defendant discussed token gated events and promised "passes" to METABIRKINS NFT holders for access to "IRL [In Real Life] experience[s] . . . where [Terminal 27 is] partnering with different fashion brands . . . " and to "different discounts and stuff." Authority: Kominers Decl., Ex. 3 at 76:16-79:10.

### Rothschild's Response:

**(77)**     Mr. Rothschild disputes that he has publicly promised utility to *MetaBirkins* holders since the filing of this lawsuit, including passes to token gated events or discounts for *MetaBirkins* holders in relation to Terminal 27; there is no evidence in the record to support this assertion. The cited August 16, 2022, transcript is clear on its face that the quoted response from Mr. Rothschild was in answer to the question, "Do you ever plan on like cr[e]ating an NFT for your store, Terminal 27? Like exclusive for the store…" Kominers Decl., Ex. 3 at 76:3-5. *See also* generally Kominers Decl., Ex. 3 at 76:3-79:10.

Moreover, as Dr. Gopnik has explained:

> [T]he kinds of opportunities offered by those utilities — to be a member of a social community built around "MetaBirkins"; to have early access to subsequent artistic projects by. Mr. Rothschild; to participate in special events organized by him (although, contra Plaintiff, evidence suggests he never did hold properly "gated" events for his "MetaBirkins") — all of these are perfectly normal aspects of traditional artistic practices. It is absolutely standard, for instance, for collectors of an early project by a painter to be given privileged access to subsequent bodies of work. (You might easily call that an unstated but understood "utility" that comes with the purchase of that artist's work.) And it is

almost a cliché that collectors buy an artist's works partly for the social access
that gives them to the artist and his or her circle — for the specifically social
"utility" that comes with the purchase. (In private, artists have often complained
to me about the social duties that come with sales.) The selling and buying of
works of art has always involved "utilities," of one kind or another, that have little
to do, in any immediate way, with the properly artistic qualities of those works. In
being sold with explicit "utilities" associated with them, Mr. Rothschild's NFT'd
images are not much different from more traditional works whose associated
"utilities" are left implied.

Gopnik Decl. ¶ 9.

Mr. Rothschild further states that although Hermès says that the METABIRKINS NFTs

are "described herein," that term in fact is not defined in Plaintiffs' Rule 56.1 Statement of

Material Facts. As a consequence, Mr. Rothschild does not know what Hermès means that term

to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are

independent either from the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire

*MetaBirkins* art project, of which they are an integral part.

78. Defendant admits that the future value of the METABIRKINS NFTs would come not
    from the art associated with the NFTs but instead would come from the publicity,
    community activities, and other forms of utility offered to METABIRKINS NFT holders.
    Authority: Kominers Decl., Ex. 3 at 47:25-48:12.

***Rothschild's Response:***

**(78)**     Mr. Rothschild disputes Plaintiffs' characterization that he admitted that the

future value of his *MetaBirkins* NFT artworks would not come from the associated art but

instead from the publicity, community activities, and other forms of utility. As the transcript

cited shows, Mr. Rothschild was speaking about creating a community and utility in the way that

artists have done for ages, but in a new medium using NFTs. *See* Kominers Decl., Ex. 3 at 47:25-

48:12; Gopnik Decl. ¶ 9. Moreover, the value of Mr. Rothshild's *MetaBirkins* NFTs is tied to the

artwork to which they are linked and the art project as a whole. *See* Gopnik Decl. ¶ 6.

79. Defendant's digital brand activities for the METABIRKINS NFTs stand in stark contrast to art-only NFTs, which serve only to convey ownership of digital imagery and collectibles and do not also provide utility and other promotional activities. Authority: Kominers Decl., Ex. 1 at 32.

**Rothschild's Response:**

(79)    Mr. Rothschild disputes the validity of the artificial categories of "art-only NFTs" and "digital brand NFTs" that Dr. Kominers invented for his report in this case. *See* Millsaps Opp. Decl. ¶ 5, Ex. 4 (S. Kominers Dep. (Aug. 29, 2022) 124:9-126:6 (wherein Dr. Kominers admits that he never published anything using the terms "art-only" NFTs and "digital brand" NFTs prior to submitting his expert report in this case)).

Further, as Dr. Blake Gopnik explained, the distinction that Dr. Kominers attempts to draw between "art-only" NFTs and "digital brand" NFTs is "specious…Any fine artist eager to be recognized in the 21st century, and to earn a living, would naturally adopt many or all of the strategies used to publicize and sell branded products, and this would include the strategies that brands adopt in the new world of NFTs." Declaration of Rhett O. Millsaps II in Support of Mason Rothschild's Motion for Summary Judgment dated October 7, 2022 ("Millsaps Decl.") [Doc. 65] ¶ 2, Ex. 1 at 6. As Dr. Gopnik further opined:

> [A]t least as far back as Rembrandt an artist's signature style has also functioned to create brand-recognition in the market for art; there is simply no way to distinguish between an artist's properly "aesthetic" activities and the way they use those aesthetics to establish the brand that their market, like most elite markets, depends on. Even as they make their art, most artists are also running a small business whose function is to sell that art. To do that, they can choose to use the same marketing strategies that any other business would use. Just as Pablo Picasso was a master at manipulating the 20th-century market for physical art objects, playing dealers and collectors off each other to control his art's supply and demand, so today's artists should be expected to understand and use all aspects of the 21st century's new digital markets for their goods and images.

*Id*.

37

Mr. Rothschild additionally states that although Hermès says that the METABIRKINS

NFTs are "described herein," that term in fact is not defined in Plaintiffs' Rule 56.1 Statement of

Material Facts. As a consequence, Mr. Rothschild does not know what Hermès means that term

to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are

independent either from the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire

*MetaBirkins* art project, of which they are an integral part.

80. In recent live audio interviews on Twitter Spaces, Defendant acknowledged the art-only and digital brand segments of the NFT market, while renaming them "art driven" and "utility driven." Defendant criticized Gucci for offering "useless" NFTs that have "diluted" Gucci's Web3 brand due to the lack of utility. Defendant explained that his fashion boutique, Terminal 27, is helping "fashion brands to enter Web3" by launching these two different types of NFTs. Authority: Kominers Decl., Ex. 2 at 1-2; Ex. 3 at 11:19-12:11; 56:1-24.

***Rothschild's Response:***

**(80)**      Mr. Rothschild disputes Plaintiffs' characterization of his full statement about

Gucci's NFT project based on the words that Plaintiffs cherry picked from it. A review of the full

transcript shows that Mr. Rothschild criticized Gucci for promising NFTs with utility but failing

to deliver the utility. Mr. Rothschild further disputes the validity of the artificial categories of

"art-only NFTs" and "digital brand NFTs" that Dr. Kominers invented for his report in this case.

*See* Millsaps Opp. Decl. ¶ 5, Ex. 4 (S. Kominers Dep. (Aug. 29, 2022) 124:9-126:6 (wherein Dr.

Kominers admits that he never published anything using the terms "art-only" NFTs and "digital

brand" NFTs prior to submitting his expert report in this case)).

Further, as Dr. Blake Gopnik explained, the distinction that Dr. Kominers attempts to

draw between "art-only" NFTs and "digital brand" NFTs is "specious…Any fine artist eager to

be recognized in the 21st century, and to earn a living, would naturally adopt many or all of the

strategies used to publicize and sell branded products, and this would include the strategies that

brands adopt in the new world of NFTs." Declaration of Rhett O. Millsaps II in Support of

Mason Rothschild's Motion for Summary Judgment dated October 7, 2022 ("Millsaps Decl.")

[Doc. 65] ¶ 2, Ex. 1 (Gopnik Rep.) at 6. As Dr. Gopnik further opined:

> [A]t least as far back as Rembrandt an artist's signature style has also functioned
> to create brand-recognition in the market for art; there is simply no way to
> distinguish between an artist's properly "aesthetic" activities and the way they use
> those aesthetics to establish the brand that their market, like most elite markets,
> depends on. Even as they make their art, most artists are also running a small
> business whose function is to sell that art. To do that, they can choose to use the
> same marketing strategies that any other business would use. Just as Pablo
> Picasso was a master at manipulating the 20th-century market for physical art
> objects, playing dealers and collectors off each other to control his art's supply
> and demand, so today's artists should be expected to understand and use all
> aspects of the 21st century's new digital markets for their goods and images.

*Id*.

Dr. Gopnik has further opined regarding "utility" in connection with image-based NFTs

like *MetaBirkins*:

> [T]he kinds of opportunities offered by those utilities — to be a member of a
> social community built around "MetaBirkins"; to have early access to subsequent
> artistic projects by. Mr. Rothschild; to participate in special events organized by
> him (although, contra Plaintiff, evidence suggests he never did hold properly
> "gated" events for his "MetaBirkins") — all of these are perfectly normal aspects
> of traditional artistic practices. It is absolutely standard, for instance, for collectors
> of an early project by a painter to be given privileged access to subsequent bodies
> of work. (You might easily call that an unstated but understood "utility" that
> comes with the purchase of that artist's work.) And it is almost a cliché that
> collectors buy an artist's works partly for the social access that gives them to the
> artist and his or her circle — for the specifically social "utility" that comes with
> the purchase. (In private, artists have often complained to me about the social
> duties that come with sales.) The selling and buying of works of art has always
> involved "utilities," of one kind or another, that have little to do, in any immediate
> way, with the properly artistic qualities of those works. In being sold with explicit
> "utilities" associated with them, Mr. Rothschild's NFT'd images are not much
> different from more traditional works whose associated "utilities" are left implied.

Gopnik Decl. ¶ 9.

81. Defendant goes as far as to advocate that brands engage in the same kinds of utility
driven promotion he engaged in with the METABIRKINS NFTs: "prolong the

engagement with your customer or your kind of client long-term by just constantly reward them [with utility] . . . ." Authority: Kominers Decl., Ex. 3 at 12:6-8.

***Rothschild's Response:***

**(81)**     Mr. Rothschild does not dispute the statement attributed to him but disputes any

implication that it signals that his *MetaBirkins* project is not art. As Dr. Blake Gopnik explained:

> [T]he kinds of opportunities offered by those utilities — to be a member of a social community built around "MetaBirkins"; to have early access to subsequent artistic projects by. Mr. Rothschild; to participate in special events organized by him (although, contra Plaintiff, evidence suggests he never did hold properly "gated" events for his "MetaBirkins") — all of these are perfectly normal aspects of traditional artistic practices. It is absolutely standard, for instance, for collectors of an early project by a painter to be given privileged access to subsequent bodies of work. (You might easily call that an unstated but understood "utility" that comes with the purchase of that artist's work.) And it is almost a cliché that collectors buy an artist's works partly for the social access that gives them to the artist and his or her circle — for the specifically social "utility" that comes with the purchase. (In private, artists have often complained to me about the social duties that come with sales.) The selling and buying of works of art has always involved "utilities," of one kind or another, that have little to do, in any immediate way, with the properly artistic qualities of those works. In being sold with explicit "utilities" associated with them, Mr. Rothschild's NFT'd images are not much different from more traditional works whose associated "utilities" are left implied.

Gopnik Decl. ¶ 9.

82. Dr. Gopnik, Defendant's art expert, admits that "'NFT art,' as commonly understood, simply does not exist." Rather, Dr. Gopnik claims that the act of buying and selling NFTs may be a form of performance art that he calls "business art." Authority: Corrigan Decl., Ex. 43 at 179:25-180:14, 181:4-8, 183:3-10; 184:3-19; 188:2-11; Ex. 44.

***Rothschild's Response:***

**(82)**     Mr. Rothschild disputes that his expert witness, Dr. Gopnik, admitted that NFT art

does not exist. As Dr. Gopnik explains:

> Plaintiffs present an even more egregious distortion of my position in the following assertion: "Dr. Gopnik, admits that ' "NFT art" simply does not exist.' He explains that the image contained in a video file associated with any NFT, including the METABIRKINS NFTs is not art." In my *New York Times* article from which Plaintiff has extracted the direct quote in that assertion, the whole point is that the digital entities we normally refer to as "NFT art" don't deserve

that name specifically because they are so very obviously the same kind of digital art that we have known for decades. That is, if they are not "NFT art" it is by virtue of their being precisely the same as digital art that doesn't bear the title "NFT"— contra Plaintiffs, my position is that NFTs, as commonly understood, are very much art, of a relatively traditional kind. This is because most image-based NFTs have almost no meaning at all apart from the quite traditional digital images to which they are attached. I made my views on the artistic status of NFTs, and their images, very clear when I was questioned at length on the topic by Plaintiff's counsel during my sworn deposition; I am appalled that those views were so grossly distorted in Plaintiff's Motion.

Gopnik Decl. ¶ 5.

Mr. Rothschild does not dispute that the act of buying and selling NFTs could be included in the practice of "Business Art" as described by Dr. Gopnik.

83. ███████████████████████████████████ Authority: Corrigan Decl., Ex. 45 at 19:4-19:14.

*Rothschild's Response:*

(83)   Mr. Rothschild disputes this statement in its entirety. ████████████ ██████████████████████████████ Rothschild Opp. Decl. ¶ 10.

84. The BIRKIN Mark is strong for handbags. Authority: Corrigan Decl., Ex. 18 at 7.

*Rothschild's Response:*

(84)   Undisputed.

85. The BIRKIN Mark is distinctive for handbags. Authority: Corrigan Decl., Ex. 18 at 7.

*Rothschild's Response:*

(85)   Undisputed.

86. The BIRKIN Mark was distinctive at least as of September 6, 2005, when the BIRKIN Mark registered with the USPTO. Authority: Corrigan Decl., Ex. 13; Martin Decl. at ¶ 5.

*Rothschild's Response:*

(86)   Undisputed.

87. METABIRKINS consists of the term "META" referring to the "metaverse" and Hermès's BIRKIN Mark. Authority: Martin Decl. at ¶ 18; Corrigan Decl., Ex. 18 at 8.

*Rothschild's Response:*

**(87)**     Mr. Rothschild disputes that the term "Meta" in "MetaBirkins" refers only to the "metaverse," and the cited responses by Mr. Rothschild to Hermès' Requests for Admissions do not support this assertion. *See* Corrigan Decl., Ex. 18 at 8. Hermès can point to no evidence to dispute that the term "Meta" in "MetaBirkins" refers in part to  the "meta" nature of the MetaBirkins art project as "a 'meta' inquiry into the nature of the Birkin bag as a revered cultural object in our luxury-obsessed world." Rothschild Decl. [Doc. 66] ¶ 12; Millsaps Decl. [Doc. 65] ¶ 2, Ex. 1 (Gopnik Rep.) at ¶¶ 36-40.

88. The entirety of Hermès's BIRKIN Mark is contained within Defendant's METABIRKINS Mark. Authority: Martin Decl. at ¶ 18.

*Rothschild's Response:*

**(88)**     Mr. Rothschild disputes that "MetaBirkins" is a mark; rather it is the name of his *MetaBirkins* images and art project. Rothschild Decl. [Doc. 66] ¶¶ 9-12; Gopnik Decl. ¶ 12.

89. Defendant referred to the NFTs as "Birkins" publicly and in conversations with friends and business contacts. Authority: Corrigan Decl., Ex. 21 at 47:18-148:1; Ex. 46; Ex. 47 at Rothschild008467-8469; Ex. 48 at Rothschild014566; Ex. 49 at Rothschild008328; Ex. 50 at Rothschild008679.

*Rothschild's Response:*

**(89)**     Mr. Rothschild disputes that he referred to NFTs alone as "Birkins," and there is no evidence in the record to support that contention. Mr. Rothschild does not dispute that he sometimes casually referred to his artworks as "birkins" in shorthand privately among his friends and associates. *See* Corrigan Decl., Ex. 21 at 147:10-148:1; Ex. 47 at Rothschild008467-8469; Ex. 48 at Rothschild014566; Ex. 49 at Rothschild008328; Ex. 50 at Rothschild008679. Mr. Rothschild also does not dispute that he once publicly referred to his forthcoming artworks as

"Birkins" when he previewed the artwork on his @MasonRothschild Instagram account, including an image of one of the *MetaBirkins* artworks and writing alongside it, "A preview of my upcoming NFT collection…Releasing 50, one of a kind, Birkins of varying rarity…The collection needs a name. Share this post and reply with your suggestion, best suggestion gets a gifted Birkin." Corrigan Decl., Ex. 46.

90. The whitelist page to "mint" the METABIRKINS NFTs referred to the NFTs as "Birkins." Authority: Corrigan Decl., Ex. 51; Mentzer Decl., Ex. 1 at 13-14.

***Rothschild's Response:***

**(90)**   Mr. Rothschild disputes that the whitelist page to mint the *MetaBirkins* NFTs referred to the NFTs as "Birkins" or included the word "Birkins" at all. As Mr. Rothschild testified at his deposition, the screenshot relied upon as evidence for this statement (Corrigan Decl., Ex. 51) "couldn't be" part of the minting process for *MetaBirkins* because "it's a local host, which means this is not a published website. It's not an official version of the website." Millsaps Opp. Decl. ¶ 4, Ex. 3 (M. Rothschild Dep. (August 4, 2022) at 245:9-14). Mr. Rothschild further testified that he did not know where the screenshot came from. *Id*. (M. Rothschild Dep. (August 4, 2022) at 246:22-247:18 (A: "*I personally don't know where it was produced from, though because it's not my screen. Like, it's not my account either…And this is not my wallet ID either*.").

Mr. Rothschild has subsequently found additional evidence showing that in fact the evidence relied upon for this statement, Corrigan Decl., Ex. 51, was not part of the minting process for *MetaBirkins* and did not come from his computer, as Mr. Rothschild testified; it was a draft sent to him by a developer, which Mr. Rothschild rejected. Rothschild Opp. Decl. ¶ 11; Declaration of James Kerr dated October 19, 2022 ("Kerr Decl.") ¶9 & Ex. 3. The developer then changed the whitelist page that was used in the minting process so that it did not refer to the

NFTs as "Birkins." *See* Declaration of Truman Sacks dated October 19, 2022 ("Sacks Decl.") ¶ 5 & Ex. 1; Rothschild Opp. Decl. ¶ 11; Kerr Decl. ¶ 9 & Ex. 3.

91.  Authority: Corrigan Decl., Ex. 21 at 147:18-148:1.

***Rothschild's Response:***

**(91)**   Undisputed.

92.  Authority: Corrigan Decl., Ex. 35 SACKS_000252.

***Rothschild's Response:***

**(92)**   Mr. Rothschild does not dispute that 

 Corrigan Decl., Ex. 35 SACKS_000252. It is undisputed that 

 *See* Rothschild Opp. Decl. ¶ 5; Millsaps Opp. Decl. ¶ 5, Ex. 4 (S. Kominers Dep. (Aug. 29, 2022) 178:24-179:5) (Plaintiffs' expert testifying that he was not aware of any physical merchandise ever being associated with *MetaBirkins*).

93.  Authority: Corrigan Decl., Ex. 36 at 121:18-21; 124:5-16; Ex. 52 at SACKS_000046; Ex. 53.

***Rothschild's Response:***

**(93)**   Mr. Rothschild disputes that

████████████████████████████████████████████

██████████████████████████████

    Mr. Rothschild further disputes ████████████████████████████████

██████████████████████████████████████████     *See* Millsaps

Opp. Decl. ¶ 5, Ex. 4 (S. Kominers Dep. (Aug. 29, 2022) 124:9-126:6 (wherein Dr. Kominers

admits that he never published anything using the terms "art-only" NFTs and "digital brand"

NFTs prior to submitting his expert report in this case)).

    Further, as Dr. Blake Gopnik explained, the distinction that Dr. Kominers attempts to

draw between "art-only" NFTs and "digital brand" NFTs is "specious…Any fine artist eager to

be recognized in the 21st century, and to earn a living, would naturally adopt many or all of the

strategies used to publicize and sell branded products, and this would include the strategies that

brands adopt in the new world of NFTs." Millsaps Decl. [Doc. 65] ¶ 2, Ex. 1 (Gopnik Rep.) at 6.

As Dr. Gopnik further opined:

> [A]t least as far back as Rembrandt an artist's signature style has also functioned
> to create brand-recognition in the market for art; there is simply no way to
> distinguish between an artist's properly "aesthetic" activities and the way they use
> those aesthetics to establish the brand that their market, like most elite markets,
> depends on. Even as they make their art, most artists are also running a small
> business whose function is to sell that art. To do that, they can choose to use the
> same marketing strategies that any other business would use. Just as Pablo
> Picasso was a master at manipulating the 20th-century market for physical art
> objects, playing dealers and collectors off each other to control his art's supply
> and demand, so today's artists should be expected to understand and use all
> aspects of the 21st century's new digital markets for their goods and images.

*Id*

> 94. Wearing a BIRKIN handbag is not limited to physically carrying it and using it as a
> vessel to carry other physical objects. It is an iconic handbag that is meant to be placed on
> a table or simply shown off, whether physically or virtually. A BIRKIN handbag is a
> symbol of status, so there is no need to physically wear it; rather, one can just show it or
> show evidence that they own one through an NFT. Authority: Martin Decl. at ¶ 16.

*Rothschild's Response:*

(94)    Mr. Rothschild disputes this statement, which is inconsistent with the dictionary definition of "wear" and "wearable" and also contrary to common usage of those words. *See, e.g.*, *Oxford English Dictionary* (https://www.oed.com) ("To carry or bear on one's body or on some member of it, for covering, warmth, ornament, etc.; to be dressed in; to be covered or decked with; to have on.").

95.  The digital images attached to the METABIRKINS NFTs are "handbags" in the digital world and "wearable" in virtual worlds. Nicolas Martin, Hermès's designated 30(b)(6) corporate representative, testified that, "I think 'wearable' means a lot of things, including in particular in the metaverse, and I think you can wear the MetaBirkin on your internet account You can wear it in [a] profile picture -- so for me it's a wearable handbag." Authority: Corrigan Decl., Ex. 12 at 60:16-61:3, 67:11-15.

*Rothschild's Response:*

(95)    Mr. Rothschild disputes this statement in its entirety, which is inconsistent with the dictionary definition of "handbags," "wear," and "wearable" and also contrary to common usage of those words. See, e.g., Cambridge Dictionary (https://dictionary.cambridge.org/us/dictionary/english/handbag) ("handbag: a small bag for money, keys, makeup, etc., carried especially by women"); Oxford English Dictionary (https://www.oed.com) ("wear: To carry or bear on one's body or on some member of it, for covering, warmth, ornament, etc.; to be dressed in; to be covered or decked with; to have on.").

Additionally, it is undisputed that the *MetaBirkins* images are two-dimensional, static digital images. Millsaps Decl. [Doc. No. 65] ¶ 12, Ex. 11 (Plaintiffs Hermès International and Hermès of Paris, Inc.'s Responses to Defendant Rothschild's First Set of Requests for Admission, Responses to Request for Admission No. 2); Millsaps Opp. Decl. ¶ 6, Ex. 5 (N. Martin Dep. (August 30, 2022) 64:20-65:10).

96. Dr. Gopnik described the METABIRKINS NFTs as an "elite metaversal commodity. . . the kind of deluxe Hermès bag a MetaKardashian might carry, in the virtual reality we will all inhabit." Authority: Corrigan Decl., Ex. 34, ¶ 37.

***Rothschild's Response:***

**(96)**    Mr. Rothschild disputes that Dr. Gopnik described the *MetaBirkins* images or NFTs as a literal commodity. As Dr. Gopnik has explained, Plaintiffs have selectively twisted his words here to change the meaning of what Dr. Gopnik actually opined:

> The following sentence from Plaintiff's motion further implies that I am denying the artistic status of Mr. Rotshchild's "MetaBirkins": "Dr. Gopnik described the METABIRKINS NFTs as an 'elite metaversal commodity. . . the kind of deluxe Hermès bag a MetaKardashian might carry, in the virtual reality we will all inhabit.' " In fact, the sentence of mine that Plaintiff quoted is meant to underline the artistic status of the "MetaBirkins," by making clear the imaginative work that they do. The very next sentence in my report, conveniently omitted by Plaintiff, makes that very clear: "That lends a speculative quality to Mr. Rothschild's work that aligns it with certain kinds of literary science fiction, where current cultural trends and goods are extrapolated into the future."

Gopnik Decl. ¶ 8; Corrigan Decl., Ex. 34, ¶ 37.

Mr. Rothschild further states that although Hermès says that the METABIRKINS NFTs are "described herein," that term in fact is not defined in Plaintiffs' Rule 56.1 Statement of Material Facts. As a consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are independent either from the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire *MetaBirkins* art project, of which they are an integral part.

97.  uthority: Corrigan Decl., Ex. 54 at Rothschild008804.

***Rothschild's Response:***

**(97)**    Mr. Rothschild does not dispute that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████ *See*

Gopnik Decl. ¶ 19; Millsaps Decl. [Doc. No. 65] ¶ 4, Ex. 3 (B. Gopnik Dep. (Sept. 23, 2022)

122:19-123:16.

98. ████████████████████████████████████████████████

███ Authority: Corrigan Decl., Ex. 52 at SACKS_000027.

*Rothschild's Response:*

**(98)** Mr. Rothschild does not dispute that ███████████████████████

██████████████████████████████████████████████████ but Mr.

Rothschild disputes that ████████████████████████████████████

███████████████ ████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████ Corrigan Decl., Ex. 52 at

SACKS_000027. *See also* Millsaps Decl. [Doc. No. 65] ¶ 12, Ex. 11 (Plaintiffs Hermès

International and Hermès of Paris, Inc.'s Responses to Defendant Rothschild's First Set of

Requests for Admission, Responses to Request for Admission No. 2)); Millsaps Opp. Decl. ¶ 6,

Ex. 5 (N. Martin Dep. (August 30, 2022) 64:20-65:10).

99. ████████████████████████████████████████████████

██████████████████████████████ Authority: Corrigan Decl., Ex. 21 at 167:24-169:5;

Ex. 55 at Rothschild008316-8317.

*Rothschild's Response:*

**(99)**   Mr. Rothschild disputes that ████████████████████████

████████████████████████████████████████████████████████

████████████   *See* Millsaps Decl. [Doc. No. 65] ¶ 12, Ex. 11 (Plaintiffs Hermès

International and Hermès of Paris, Inc.'s Responses to Defendant Rothschild's First Set of

Requests for Admission, Responses to Request for Admission No. 2); Millsaps Opp. Decl. ¶ 6,

Ex. 5 (N. Martin Dep. (August 30, 2022) 64:20-65:10).

100.   The METABIRKINS NFTs as minted were immediately wearable or usable in certain metaverses. The current files associated with the METABIRKINS NFTs could be replaced by Defendant with three-dimensional files or other file types compatible with any number of other metaverses. Authority: Mentzer Decl. Ex. 1 at 28, 29, & 32-33.

*Rothschild's Response:*

**(100)**   Mr. Rothschild does not dispute that the current files associated with the

MetaBirkins NFTs *could be* replaced with other files. But it is undisputed that the *MetaBirkins*

images that have been linked to the *MetaBirkins* NFTs since minting was completed are two-

dimensional, static images. *See* Millsaps Decl. [Doc. No. 65] ¶ 12, Ex. 11 (Plaintiffs Hermès

International and Hermès of Paris, Inc.'s Responses to Defendant Rothschild's First Set of

Requests for Admission, Responses to Request for Admission No. 2); Millsaps Opp. Decl. ¶ 6,

Ex. 5 (N. Martin Dep. (August 30, 2022) 64:20-65:10).

101.   Defendant described Web3 and the metaverse as allowing consumers to "actually own these commodities in this place where we can actually show them off." Defendant further stated, "I was explaining to somebody before, there's not much difference in between having the crazy car or the crazy handbag in real life because it's just kind of that, that showing of like wealth or that kind of explanation of success. And now you're able to bring that into the metaverse with these iconic NFTs that have fetched crazy amounts of money in that resale market for NFTs. So I feel like the difference between the two is like getting a little bit blurred now because we have this new outlet, which is the metaverse, to showcase our product, showcase them in our virtual worlds, and even just show them online. You know, like people have been posting the ones that they've gotten." Authority: Corrigan Decl., Ex. 7.

*Rothschild's Response:*

**(101)**   Undisputed.

102.   TikTok users posted videos showing the wearability of the METABIRKINS NFTs. TikTok user @charliegross describes the METABIRKINS NFTs as "NFT Birkins," and stating "It's a well-known fact that a Birkin bag is a great investment. Is a Birkin NFT as good an investment? Time will tell" and "Some people keep their Birkins in their closet, others keep them on the blockchain." Authority: Corrigan Decl., Ex. 56.

*Rothschild's Response:*

**(102)**   Mr. Rothschild disputes that TikTok users posted videos showing the "wearability

of the" *MetaBirkins* NFTs. The video posted by @charliegross does not address or show any

"wearability" of *MetaBirkins* NFTs. Further, Plaintiffs' use of "wearability" is inconsistent with

the dictionary definition of "wear" and "wearable" and also contrary to common usage of those

words. *See*, *e.g.*, *Oxford English Dictionary* (https://www.oed.com) ("To carry or bear on one's

body or on some member of it, for covering, warmth, ornament, etc.; to be dressed in; to be

covered or decked with; to have on."). *See also* Gopnik Decl. ¶ 16.

103.   User @arielabench posted a TikTok video titled "what's in my metabirkin" and featuring the METABIRKIN bag sitting on a stack of fashion books on a table which appears to be on a balcony. The user then reaches her hand into the bag and pulls out varying items, including a VR headset, a bottle of vodka, a nightlight, and a law school textbook. Authority: Corrigan Decl., Ex. 57.

*Rothschild's Response:*

**(103)**   Mr. Rothschild disputes that TikTok user @arielabench "reache[d] her hand into

the [MetaBirkin] and pull[ed] out varying items…" The video plainly shows that the

*MetaBirkins* image is a two-dimensional, static, digital image, which the flesh-and-blood TikTok

user could not reach inside of; rather, as the video shows on its face, the TikTok user

superimposed the *MetaBirkins* image on the video to create another piece of art—*i.e.*, a funny

video depicting what objects might be carried in an imaginary *MetaBirkin* handbag. The

*MetaBirkins* image, in other words, plainly is representation on the face of the video. *See* Gopnik

Decl. ¶ 16.

104.     User @cherryemojixo posted a TikTok video on the topic of what does the metaverse mean for fashion, stating, "Fashion plays a huge role in how we express our identities. So, now that we are moving into this virtual reality of having an avatar that looks just like us, that comes with buying clothes that we like." She then says we know that virtual fashion is profitable and shows the Balenciaga and Fortnight collaboration, "but the lines between reality and virtual are going to soon blur." She pulls up a photo of a METABIRKIN and says, "we are seeing NFT Birkins sell for almost $4,000 US Dollars." Authority: Corrigan Decl., Ex. 58.

**Rothschild's Response:**

**(104)**   Undisputed.

105.     Defendant ran a "Build-a-MetaBirkin" challenge on the METABIRKINS Discord. Defendant requested that followers create physical goods, not virtual goods, by "[b]uild[ing] a MetaBirkin using household materials ONLY!" and told followers to "use things like toilet paper rolls, old rags, etc." Authority: Corrigan Decl., Ex. 21 at 363:20-367:17; Ex. 59.

**Rothschild's Response:**

**(105)**   Undisputed.

106.     Dr. Gopnik stated in his report that "[t]he cultural disturbance caused by Mason Rothschild's 'MetaBirkins' – including to the Hermès company – indicates that they are exploring similar terrain." Authority: Corrigan Decl., Ex. 34, ¶ 22.

**Rothschild's Response:**

**(106)**   Mr. Rothschild does not dispute that the quote from Dr. Gopnik's report is

accurate, but Mr. Rothschild disputes any insinuation by Plaintiffs that Dr. Gopnik meant that

Mr. Rothschild's MetaBirkins and Hermès are exploring similar terrain. As Dr. Gopnik

explained:

> My expert report, as quoted by Plaintiffs, notes that "the cultural disturbance caused by Mason Rothschild's 'METABIRKINS'—including to the Hermès company —indicates that they are exploring similar terrain." Let me state clearly that in the original context of that report the "they" in my sentence very evidently refers to the "MetaBirkins" themselves, which, as I explain, are exploring similar terrain to the avant-garde artworks involved in Business Art, which I had invoked

two sentences earlier. Plaintiffs incorrectly suggests instead that I meant that Mr. Rothschild's "MetaBirkins" and the Hermès company are exploring similar terrain—which could hardly be further from the truth, since Hermès is involved in the production and sale of luxury goods while Mr. Rothschild's "MetaBirkins" are works of Business Art that comment on such production and sale. (And let me note Plaintiffs' alteration of my original quote, capitalizing all the letters in the word "MetaBirkins" that I had merely put between quotation marks, as one would with any artwork's title. Plaintiffs no doubt deployed the all-capped form METABIRKINS to make that title look more like a trademark as used in commerce, in support of their claims on that topic which my evidence otherwise undermines.)

Gopnik Decl. ¶ 4.



107. ███████████████████████████████████
██████████ uthority: Corrigan Decl., Ex. 21 at 194:24-195:1.

***Rothschild's Response:***

**(107)**   Mr. Rothschild disputes that ████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████ Corrigan Decl., Ex. 21 at 194:24-195:1.

108. ██████████████████████████████ Authority: Corrigan Decl., Exs. 60 - 61.

***Rothschild's Response:***

**(108)**   Mr. Rothschild disputes that █████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████ *See* Corrigan Decl., Exs. 60 - 61; Compl. ¶ 79

& Fig. 5, ¶ 83 & Fig. 6.

109. ████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

████████████████████████████ Authority: Martin Decl. at ¶ 20 and Exs. 6-8; Corrigan Decl., Ex. 12 at 250:4-7, 252:22-253:3.

*Rothschild's Response:*

**(109)**   Undisputed.

110.   ████████████████████████████████████████████ Authority: Martin Decl. at ¶ 20; Corrigan Decl., Ex. 12 at 245:2-248:18.

*Rothschild's Response:*

**(110)**   Undisputed.

111.   Hermès intends to use the BIRKIN and HERMÈS Marks in connection with NFT goods and services. Authority: Martin Decl. at ¶ 19; Corrigan Decl., Exs. 16-17.

*Rothschild's Response:*

**(111)**   Undisputed.

112.   Digital brand NFTs do not have to be novel and can be extensions of established real-world brands. Fashion brands, including Gucci, Nike, and Adidas, are entering the metaverse launching NFT projects around their brand assets, branded digital worlds, digital wardrobes to consumers in the metaverse, and metaverse fashion weeks with virtual models and digital apparel. Authority: Corrigan Decl. Exs. 62-66; Kominers Decl., Ex. 1 at 20, 22.

*Rothschild's Response:*

**(112)**   Mr. Rothschild disputes this statement to the extent that it attempts, without

support in the record, to equate Mr. Rothschild's *MetaBirkins* project with these fashion industry

NFT projects.

Mr. Rothschild further disputes the validity of the artificial categories of "art-only NFTs"

and "digital brand NFTs" that Dr. Kominers invented for his report in this case. *See* Millsaps

Opp. Decl. ¶ 5, Ex. 4 (S. Kominers Dep. (Aug. 29, 2022) 124:9-126:6 (wherein Dr. Kominers

admits that he never published anything using the terms "art-only" NFTs and "digital brand"

NFTs prior to submitting his expert report in this case)).

Further, as Dr. Blake Gopnik explained, the distinction that Dr. Kominers attempts to draw between "art-only" NFTs and "digital brand" NFTs is "specious…Any fine artist eager to be recognized in the 21st century, and to earn a living, would naturally adopt many or all of the strategies used to publicize and sell branded products, and this would include the strategies that brands adopt in the new world of NFTs." Millsaps Decl. [Doc. 65] ¶ 2, Ex. 1 (Gopnik Rep.) at 6. As Dr. Gopnik further opined:

> [A]t least as far back as Rembrandt an artist's signature style has also functioned to create brand-recognition in the market for art; there is simply no way to distinguish between an artist's properly "aesthetic" activities and the way they use those aesthetics to establish the brand that their market, like most elite markets, depends on. Even as they make their art, most artists are also running a small business whose function is to sell that art. To do that, they can choose to use the same marketing strategies that any other business would use. Just as Pablo Picasso was a master at manipulating the 20th-century market for physical art objects, playing dealers and collectors off each other to control his art's supply and demand, so today's artists should be expected to understand and use all aspects of the 21st century's new digital markets for their goods and images.

*Id.*

113.

Authority: Corrigan Decl., Ex. 21 at 113:9-116:20.

**Rothschild's Response:**

**(113)**   Undisputed.

114.    Established brands creating NFTs seek to create engagement among their fans and consumers in digital spaces like metaverse platforms. Authority: Kominers Decl., Ex. 1 at 20-21.

**Rothschild's Response:**

**(114)**   Undisputed.

115.    Such promotion also generates brand awareness among new audiences who are more likely to interact in the digital space. Authority: Kominers Decl., Ex. 1 at 20.

*Rothschild's Response:*

**(115)**   Undisputed.

116.   Owning such fashion brand NFTs permits holders to showcase or even wear their NFTs in the metaverse as they would in the real world. Authority: Kominers Decl., Ex. 1 at 22.

*Rothschild's Response:*

**(116)**   Mr. Rothschild disputes this statement to the extent that it attempts, without support in the record, to equate Mr. Rothschild's *MetaBirkins* project with the previously named fashion industry NFT projects.

Mr. Rothschild further disputes this statement, which is inconsistent with the dictionary definition of "wear" and "wearable" and also contrary to common usage of those words. *See, e.g.*, *Oxford English Dictionary* (https://www.oed.com) ("To carry or bear on one's body or on some member of it, for covering, warmth, ornament, etc.; to be dressed in; to be covered or decked with; to have on.").

Mr. Rothschild does not dispute that holders of NFTs linked to digital images can display those images in digital environments.

117.   Branded digital goods are available on various metaverse platforms, including Roblox, where users can buy Gucci handbags for thousands of dollars or generic, non-branded handbags for a few dollars. Authority: Kominers Decl., Ex. 1 at 24.

*Rothschild's Response:*

**(117)**   Undisputed.

118.   The digital assets associated with fashion brand NFTs can also have a real-world counterpart. Tiffany's NFTiff collection gives holders who also own a CryptoPunk NFT the ability to redeem the NFTiff for a real-world pendant of their CryptoPunk NFT created by Tiffany's and an NFT of the pendant. Authority: Kominers Decl., Ex. 1 at 24.

*Rothschild's Response:*

**(118)**   Undisputed.

119.     Defendant admitted that an "organic" expansion of the METABIRKINS NFTs was physical bags resembling those depicted in the image files associated with the NFTs. In the August 16 Twitter Space, Defendant's co-host suggested that Defendant could have partnered with Hermès following the release of the METABIRKINS NFTs "to turn these into physicals. Because I actually think those bags that you [Defendant] made are super marketable by more than just someone that wants to buy an NFT image, right? . . . and everyone, you know, has these like Hermès bags that started as an NFT." In response, Defendant added "there was definitely so much opportunity for that to be a little bit more of a fruitful situation for both kind of parties [Hermès and Defendant]." Authority: Kominers Decl., Ex. 3 at 52:1-16, 54:2-5.

*Rothschild's Response:*

**(119)**   Undisputed.

120.    Authority: Corrigan Decl., Ex. 67 at SACKS_000109-110.

*Rothschild's Response:*

**(120)**   Undisputed.

121.   uthority: Corrigan Decl., Ex. 36 at 169:3-18; Ex. 112 at SACKS_000346.

*Rothschild's Response:*

**(121)**   Mr. Rothschild does not dispute that

122.   Authority: Corrigan Decl., Ex. 68 at 61:3-18.

*Rothschild's Response:*

**(122)**   Mr. Rothschild does not dispute that Mr. Loo testified as follows:





Corrigan Decl., Ex. 68 at 61:3-18.

123.    *Elle UK* was confused by Hermès's affiliation with the METABIRKINS NFTs and published an article titled, "Birkin NFT: Everything You Need To Know About The 'Handbag' Of The Future," reporting that Hermès had created the METABIRKINS NFTs and referred to the METABIRKINS as a BIRKIN. Authority: Corrigan Decl., Ex. 68 at 110:14-111:16; Ex. 69.

**Rothschild's Response:**

**(123)**   Mr. Rothschild disputes that there is evidence in the record to show that *Elle UK* actually was confused about Hermès' affiliation with *MetaBirkins* aside from the referenced article published by *Elle UK*. Mr. Rothschild does not dispute that *Elle UK* published the referenced article titled, "Birkin NFT: Everything You Need To Know About The 'Handbag' Of The Future."

124.     Authority: Corrigan Decl., Ex. 68 at 110:2-20; Exs. 69-71.

**Rothschild's Response:**

**(124)**   Undisputed.

125.    *L'Officiel*, a French fashion magazine with US edition, reported that Hermès "partnered with" Defendant and described the METABIRKINS NFTS as "a new line of Birkin bags" and "another collection of Birkin NFTs." Authority: Corrigan Decl., Ex. 67 at 121; Ex 72.

**Rothschild's Response:**

**(125)**   Undisputed.

126. ███████████████████████████████████
█████████████████████████ Authority: Corrigan Decl., Ex. 73 at Rothschild016047-16048.

*Rothschild's Response:*

**(126)**  Undisputed.

127. ███████████████████████████████████
█████████████████████████ Authority: Corrigan Decl. Ex. 68 at 143:15-144:17; Ex. 74.

*Rothschild's Response:*

**(127)**  Undisputed.

128.  The *New York Post* was confused about Hermès's affiliation with the METABIRKINS NFTs, stating that Hermès had entered the metaverse and "unveiled the MetaBirkin-a VR version of its signature bag." Authority: Corrigan Decl., Ex. 75.

*Rothschild's Response:*

**(128)**  Mr. Rothschild disputes that there is evidence in the record to show that the *New York Post* actually was confused about Hermès' affiliation with *MetaBirkins* aside from the referenced article published by the paper. Mr. Rothschild does not dispute that the *New York Post* published the referenced article with the quoted statement.

129.  Even months after the filing of this lawsuit, publications are still confused as to the origin of the METABIRKINS NFTs: In May, the French publication *Challenges* reported that Hermès "unveil[ed] virtual bags under the name 'MetaBirkin.'" Authority: Corrigan Decl., Ex. 76.

*Rothschild's Response:*

**(129)**  Mr. Rothschild disputes that there is evidence in the record that "publications are still confused as to the origin of the METABIRKINS NFTs" aside from the referenced *Challenges* article. Mr. Rothschild does not dispute that *Challenges* published the referenced article with the quoted statement.

130.  Consumers expressed confusion regarding whether the METABIRKINS NFTs were authorized, affiliated, or sponsored by Hermès. A user tweeted, which the Defendant then

retweeted from the METABIRKINS Twitter, "You know what comes after the avatar/pfp frenzy? Metaverse fashion. Dressing those metaverse avatars. Digital outfits and accessories. Big brands are already experimenting with NFTs. Be early. @MetaBirkins Whitlisting now on discord [link] Minting soon." Authority: Corrigan Decl., Ex. 38 at HERMES_0009435-36.

### Rothschild's Response:

**(130)**  Mr. Rothschild disputes that the referenced Tweet shows "confusion regarding

whether the METABIRKINS NFTs were authorized, affiliated, or sponsored by Hermès." The

text of the Tweet speaks for itself.

131.   In response to the Defendant tweeting from the METABIRKINS Twitter, "WE'RE LIVE! #MetaBirkins," and a link to the OpenSea, a user commented, "But are these even official Birkins @Hermes_Paris." Authority: Corrigan Decl., Ex. 38 at HERMES_0009520.

### Rothschild's Response:

**(131)**  Undisputed.

132.   In response to the Defendant tweeting from the METABIRKINS Twitter "gm (sun emoji) @Banks, mint a MetaBirkin, hold a MetaBirkin," and an image of a METABIRKIN, a user commented, "Finally an NFT my wife can get on board with! Would LOVE to get her this Birken [sic] for Christmas!" Authority: Corrigan Decl., Ex. 38 at HERMES_0009533, 9536.

### Rothschild's Response:

**(132)**  Mr. Rothschild disputes this statement to the extent that it is offered to suggest

that the commenter is confused about the source of *MetaBirkins* or about affiliation with Hermès.

133.   Another user commented on the same tweet saying, "I need this Birkin for the wifey! Please whitelist me sir. #WAGMI #MetaBirkins." Authority: Corrigan Decl., Ex. 38 at HERMES_0009533, 9540.

### Rothschild's Response:

**(133)**  Mr. Rothschild disputes this statement to the extent that it is offered to suggest

that the commenter is confused about the source of *MetaBirkins* or about affiliation with Hermès.

134.   A third user commented, "A Birkin I can afford for my wife!" Authority: Corrigan Decl., Ex. 38 at HERMES_0009533, 9541.

*Rothschild's Response:*

**(134)**   Mr. Rothschild disputes this statement to the extent that it is offered to suggest

that the commenter is confused about the source of *MetaBirkins* or about affiliation with Hermès.

135.      A fourth user commented, "Big Birkin!!" Authority: Corrigan Decl., Ex. 38 at HERMES_0009608.

*Rothschild's Response:*

**(134)**   Mr. Rothschild disputes this statement to the extent that it is offered to suggest

that the commenter is confused about the source of *MetaBirkins* or about affiliation with Hermès.

136.      In response to the Defendant tweeting from the METABIRKINS Twitter, "gm (sun emoji) @DavidDobrik, hold this," and an image of a METABIRKIN, a user commented "Birkin NFT is the future of fashion!" Authority: Corrigan Decl., Ex. 38 at HERMES_0009544-9545.

*Rothschild's Response:*

**(136)**   Mr. Rothschild disputes this statement to the extent that it is offered to suggest

that the commenter is confused about the source of *MetaBirkins* or about affiliation with Hermès.

137.      In response to Defendant tweeting from the METABIRKINS Twitter, "gm (sun emoji) @CozomoMedici," and an image of a METABIRKIN, a user commented "Hey you know what's better than one Birkin Bag NFT. A second one with a lock. Inside of it is a free whitelist for me (: @CozomoMedici." Authority: Corrigan Decl., Ex. 38 at HERMES_0009549, 9554.

*Rothschild's Response:*

**(137)**   Mr. Rothschild disputes this statement to the extent that it is offered to suggest

that the commenter is confused about the source of *MetaBirkins* or about affiliation with Hermès.

138.      Another user commented on the same tweet, "A birkin bag? Oh my god a birkin bag??" Authority: Corrigan Decl., Ex. 38 at HERMES_0009549, 9555.

*Rothschild's Response:*

**(138)**   Mr. Rothschild disputes this statement to the extent that it is offered to suggest

that the commenter is confused about the source of *MetaBirkins* or about affiliation with Hermès.

139.     A third user commented, "@CozomoMedici they put a $900 million dollar painting on a Birkin?? That's a bag on a bag!!!" Authority: Corrigan Decl., Ex. 38 at HERMES_0009549, 9552.

***Rothschild's Response:***

**(139)**  Mr. Rothschild disputes this statement to the extent that it is offered to suggest

that the commenter is confused about the source of *MetaBirkins* or about affiliation with Hermès.

140.     In response to Defendant tweeting from the METABIRKINS Twitter, "!shill," and an image of a METABIRKIN, a user commented "Can't wait to own a birkin." Authority: Corrigan Decl., Ex. 38 at HERMES_0009598.

***Rothschild's Response:***

**(140)**  Mr. Rothschild disputes this statement to the extent that it is offered to suggest

that the commenter is confused about the source of *MetaBirkins* or about affiliation with Hermès.

141.     Another user commented on the same tweet saying "Need me a birkin." Authority: Corrigan Decl., Ex. 38 at HERMES_0009598.

***Rothschild's Response:***

**(141)**  Mr. Rothschild disputes this statement to the extent that it is offered to suggest

that the commenter is confused about the source of *MetaBirkins* or about affiliation with Hermès.

142.     In response to the Defendant tweeting from the METABIRKINS Twitter, "MetaBirkins: Collection One, Now Available on @rarible (emojis)," with a link to Rarible and an image of a METABIRKIN, one user commented "daddy give me a Birkinnnnnn." Authority: Corrigan Decl., Ex. 38 at HERMES_0009605.

***Rothschild's Response:***

**(142)**  Mr. Rothschild disputes this statement to the extent that it is offered to suggest

that the commenter is confused about the source of *MetaBirkins* or about affiliation with Hermès.

143.     On Instagram, users made similar comments expressing confusion between BIRKIN and METABIRKINS. In response to Defendant posting on the METABIRKINS Instagram, "gm, say it back #MetaBirkins @peacevoid," a user commented, "And also gm to @wednesdaysummers for putting me on! @bronze_bombshel since you're the fashion history god, what do you think about Birkins (and fashion generally) entering the metaverse." Another user commented on the same post saying, "@antnoir

@alexharveyco I know you want a birkin :p" Authority: Corrigan Decl., Ex. 37 at HERMES_0008824-8828.

***Rothschild's Response:***

**(143)**   Mr. Rothschild disputes Hermès' characterization that the proffered comments

necessarily indicate that the users were confused about the source of *MetaBirkins*. Mr.

Rothschild does not dispute that the comments were posted on the *MetaBirkins* Instagram

account.

144.        In response to Defendant posting on the METABIRKINS Instagram, "The Creation.. #MetaBirkins," one user commented, "Ok, I have a couple Birkins, but NFTs? This is too awesome!!!" Authority: Corrigan Decl., Ex. 37 at HERMES_0008684, 8689.

***Rothschild's Response:***

**(144)**   Mr. Rothschild disputes this statement to the extent that it is offered to suggest

that the commenter is confused about the source of *MetaBirkins* or about affiliation with Hermès.

145.        In response to Defendant posting on the METABIRKINS Instagram, a METABIRKINS image with the text "132 ETH Volume Traded 5.9 ETH Floor Price," with a post saying "The Whitelist: Round Two, Change your Profile Photo to your favorite #MetaBirkins, Follow @metabirkins and @masonrothschild, Like and Share this post, Tag three friend who have diamonds hands to hold #MetaBirkins #NotYourMothersBirkin #MintAMetaBirkinHoldAMetaBirkin," one user commented, "@grecchia1 girl they giving away Birkins as beautiful NFT's." Authority: Corrigan Decl., Ex. 37 at HERMES_0008634, 8638.

***Rothschild's Response:***

**(145)**   Mr. Rothschild disputes this statement to the extent that it is offered to suggest

that the commenter is confused about the source of *MetaBirkins* or about affiliation with Hermès.

146.        In response to Defendant posting on the METABIRKINS Instagram, "Hold this. #MetaBirkins,"one user commented, "WL ME PLEASE . LET ME OWN MY FIRST BIRKIN . Please WL ME HIIIIIIIIIIIIIIIIIIIIIIIIII @metabirkins @metabirkins." Authority: Corrigan Decl., Ex. 37 at HERMES_0008696, 8706.

*Rothschild's Response:*

**(146)**   Mr. Rothschild disputes this statement to the extent that it is offered to suggest

that the commenter is confused about the source of *MetaBirkins* or about affiliation with Hermès.

147.        In response to Defendant posting on the METABIRKINS Instagram, "gm (emoji) # MetaBirkins," one user commented, "@lowebs @barleymeg okay a Birkin NFT tell Mitch and Justin we're starting to collect expensive NFT bags lololol crazy." Authority: Corrigan Decl., Ex. 37 at HERMES_0008752, 8757.

*Rothschild's Response:*

**(147)**   Mr. Rothschild disputes this statement to the extent that it is offered to suggest

that the commenter is confused about the source of *MetaBirkins* or about affiliation with Hermès.

148.        In response to Defendant posting on the METABIRKINS Instagram, "Monochrome #MetaBirkins, runner up to rose gold in regards to hardware rarity," a user commented, "If you can't get a fur Birkin in real life, get a NFT." Authority: Corrigan Decl., commented, "If you can't get a fur Birkin in real life, get a NFT." Authority: Corrigan Decl., Ex. 37 at HERMES_0008802, 8809.

*Rothschild's Response:*

**(148)**   Mr. Rothschild disputes this statement to the extent that it is offered to suggest

that the commenter is confused about the source of *MetaBirkins* or about affiliation with Hermès.

149.        In response to Defendant posting on the METABIRKINS Instagram, "van Gogh, Twombly & Rothko #MetaBirkins," a user commented "BIRKIN TO THE MOON." Another user commented on the same post, "@thedinabina @leahjgrace NFT birkins. This is crazy!" Authority: Corrigan Decl., Ex. 37 at HERMES_0008835, 8841-42.

*Rothschild's Response:*

**(149)**   Mr. Rothschild disputes this statement to the extent that it is offered to suggest

that the commenter is confused about the source of *MetaBirkins* or about affiliation with Hermès.

150.        In response to Defendant posting on the METABIRKINS Instagram, "A statement in response to Hermès International, et al. v. Mason Rothschild," a user commented, "I just want to know how I can get one of them bags." Authority: Corrigan Decl., Ex. 37 at HERMES_0008362, 8376.

*Rothschild's Response:*

**(150)**   Mr. Rothschild disputes this statement to the extent that it is offered to suggest

that the commenter is confused about the source of *MetaBirkins* or about affiliation with Hermès.

151.      In response to Defendant posting on the METABIRKINS Instagram, "c/o
@sage.willows," a user commented, "@tamara_powell what do you mean this guy was
selling Hermes birkins without the approval of the brand. And everyone jumped on the
bandwagaon now the artist is out buying MAYC lol." Authority: Corrigan Decl., Ex. 37
at HERMES_0008439, 8445.

*Rothschild's Response:*

**(151)**   Mr. Rothschild disputes this statement to the extent that it is offered to suggest

that the commenter is confused about the source of *MetaBirkins* or about affiliation with Hermès.

152.      In preparing an NFT presentation at the end of 2021 for the AIPPI, an IP
association in Paris, France, Boriana Guimberteau, a French intellectual property lawyer,
became aware of the Baby Birkin NFT and believed "Hermès authorized the NFT or
there was some kind of a partnership with Hermès for this NFT." The Baby Birkin NFT
was Defendant's NFT project that preceded his METABIRKINS NFT project. Authority:
Corrigan Decl., Ex. 21 at 119:24-120:2; Ex. 77 at 6:20-9:21; Ex. 78.

*Rothschild's Response:*

**(152)**   Mr. Rothschild does not dispute that Ms. Guimberteau testified that she was

believed that Hermès authorized or was somehow affiliated with *Baby Birkin* because it used the

word "Birkin" and the shape of a Birkin bag, and because she saw an article with a picture of the

*Baby Birkin* artwork with "Image Courtesy of Hermès" written under the image. Millsaps Opp.

Decl. ¶ 7, Ex. 6 (Boriana Guimberteau Dep. (Sept. 14, 2022) 9:15-10:12, 26:25-28:18).

153.      An article titled, "2021 The Year of Fashion NFTs," which Ms. Guimberteau used
to prepare for her NFT presentation, included an image of the Baby Birkin NFT with the
text "Image Courtesy of Hermès." Authority: Corrigan Decl., Ex. 77 at 8:14-10:12; Ex.
78.

*Rothschild's Response:*

**(153)**   Undisputed.

154.     Ms. Guimberteau thought the METABIRKINS NFTs were from Hermès or with promoted [sic] with Hermès's authorization. Authority: Corrigan Decl., Ex. 77 at 10:24-11:7.

*Rothschild's Response:*

**(154)**  Mr. Rothschild does not dispute that Ms. Guimberteau testified that she was believed that Hermès authorized or was somehow affiliated with MetaBirkins because "as it was related to Hermès, it was necessarily with Hermès' agreement" and also used the word "Birkin" and the shape of a Birkin bag. Millsaps Opp. Decl. ¶ 7, Ex. 6 (Boriana Guimberteau Dep. (Sept. 14, 2022) 10:19-11:7, 28:24-29:12).

155.     During her AIPPI NFT presentation, Ms. Guimberteau presented that the Baby Birkin and METABIRKINS NFTs were "made with Hermès or by Hermès." Authority: Corrigan Decl., Ex. 77 at 11:8-11:20, 13:16-14:6; Ex. 79.

*Rothschild's Response:*

**(155)**  Undisputed.

156.     It was Ms. Guimberteau's understanding at the time, late 2021, that "there were a lot of fashion and luxury houses that launched NFTs" and "Hermès was also a luxury house that also launched an NFT." Authority: Corrigan Decl., Ex. 77 at 13:24-14:19.

*Rothschild's Response:*

**(156)**  Undisputed.

157.     Ms. Guimberteau prepared and signed an Affidavit declaring that as of December 9, 2021, she "thought that these [Baby Birkin and MetaBirkins NFTs] were also made in close collaboration with HERMÈS," because "the names of the NFTs include the famous trademark 'BIRKIN' and reproduced the shape of the bag." Authority: Corrigan Decl., Ex. 77 at 15:24-18:2; Exs. 80-81.

*Rothschild's Response:*

**(157)**  Undisputed.

158.     In preparing for another presentation in December 2021, Ms. Guimberteau found an *L'Officiel* article titled, "The New NFT METABIRKIN Bags of HERMES Sold At Record Prices." Authority: Corrigan Decl., Ex. 81, ¶ 8.

*Rothschild's Response:*

**(158)**   Undisputed.

159.   ████████████████████████████████████████ ███████████████ Authority: Corrigan Decl., Ex. 45 at 43:14-19; Ex. 82 at Rothschild015178.

*Rothschild's Response:*

**(159)**   Mr. Rothschild does not dispute that ███████████████████████ ████████████████████████████████████████████ Corrigan Decl., Ex. 82 at

Rothschild015178

160.   Plaintiffs' expert, Dr. Bruce Isaacson, conducted a survey measuring the likelihood of confusion caused by Defendant's MetaBirkins.com website advertising the METABIRKINS NFTs using the BIRKIN Mark, Birkin Trade Dress, and the HERMES Mark. Authority: Isaacson Decl., Ex. 1 at 38.

*Rothschild's Response:*

**(160)**   Mr. Rothschild disputes that Dr. Isaacson conducted a survey measuring the

likelihood of confusion. Dr. Isaacson repeatedly testified at his deposition that his survey

measured mere "cognitive connections" rather than confusion as to source. *Millsaps Decl*. [Doc.

65] ¶ 11, Ex. 10 (B. Isaacson Dep. (Sept. 20, 2022) 95:10-18, 102:3-9, 108:15-110:12, 120:2-8,

124:3-13).

161.   Dr. Isaacson is President of MMR Strategy Group, a marketing research and consulting firm and has provided expert reports or depositions regarding surveys in approximately 100 matters. Dr. Isaacson has testified on surveys in matters before federal and state courts, the National Advertising Division of the Better Business Bureau, the Trademark Trial and Appeal Board, the U.S. International Trade Commission, and other venues. Authority: Isaacson Decl., Ex. 1 at 16.

*Rothschild's Response:*

**(161)**   Undisputed.

162.      Dr. Isaacson's NFT survey was conducted among an audience of consumers
likely to purchase NFTs, specifically NFTs for digital artwork, fashion apparel, or
fashion accessories. Authority: Isaacson Decl., Ex. 1 at 20.

**Rothschild's Response:**

**(162)**   Mr. Rothschild does not dispute that Dr. Isaacson's NFT survey was conducted

among an audience of consumers who reported that they were likely to purchase NFTs,

specifically NFTs for digital artwork, fashion apparel, or fashion accessories. Isaacson Decl., Ex.

1 at 20.

163.      Dr. Isaacson conducted the survey to measure forward confusion: the likelihood
of confusion among the junior user's audience, the purchasers of Defendant's goods and
services. Authority: Isaacson Decl., Ex. 1 at 37.

**Rothschild's Response:**

**(163)**   Mr. Rothschild disputes that Dr. Isaacson conducted a survey measuring the

likelihood of confusion. Dr. Isaacson repeatedly testified at his deposition that his survey

measured mere "cognitive connections" rather than confusion as to source. *Millsaps Decl.* [Doc.

65] ¶ 11, Ex. 10 (B. Isaacson Dep. (Sept. 20, 2022) 95:10-18, 102:3-9, 108:15-110:12, 120:2-8,

124:3-13).

164.      Dr. Isaacson's survey found net confusion among the NFT audience of 18.7%.
Authority: Isaacson Decl., Ex. 1 at 15.

**Rothschild's Response:**

**(164)**   Mr. Rothschild does not dispute that Dr. Isaacson reported that he found net

confusion among the NFT audience of 18.7%, but Mr. Rothschild disputes that the survey

measured confusion and, even assuming it did, that it actually shows net confusion of 18.7%. See

Millsaps Decl. [Doc. 65] ¶ 11, Ex. 10 (B. Isaacson Dep. (Sept. 20, 2022) 95:10-18, 102:3-9,

108:15-110:12, 120:2-8, 124:3-13) (admitting that the survey tested for mere "cognitive

connections"); ¶ 10, Ex. 9 (Neal Rep.).

165.     Net confusion this high is typically interpreted as indicating a substantial likelihood of confusion. Authority: Isaacson Decl., Ex. 1 at 38.

***Rothschild's Response:***

**(165)**   Mr. Rothschild disputes that this is an issue of fact; rather, it is a question of law,

and especially so in a case where *Rogers v. Grimaldi* applies, as here.

166.     Defendant advertised his NFTs as "Birkins," including in the first ever tweet about the collection which Defendant described as "Birkins of varying rarity." Authority: Kominers Decl., Ex. 1 at 52.

***Rothschild's Response:***

**(166)**   Mr. Rothschild does not dispute that on October 29, 2021, he Tweeted an image

that depicted an imaginary, furry Birkin bag with the following text:

> A preview of my upcoming NFT collection ahead of it's release next week at #NFTNYC. Releasing 50, one of a kind, Birkins of varying rarity – starting at .1 ETH.

> The collection needs a name. Share this post and reply with your suggestion, best suggestion gets a gifted Birkin.

Kominers Decl., Ex. 1 at 52.

167.     Defendant described the METABIRKINS NFTs as a "tribute to Herm[è]s' most famous handbag, the Birkin." Authority: Corrigan Decl., Ex. 6 at HERMES_0037671.

***Rothschild's Response:***

**(167)**   Mr. Rothschild states that although Hermès says that the METABIRKINS NFTs

are "described herein," that term in fact is not defined in Plaintiffs' Rule 56.1 Statement of

Material Facts. As a consequence, Mr. Rothschild does not know what Hermès means that term

to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are

independent either from the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire

*MetaBirkins* art project, of which they are an integral part.

Mr. Rothschild does not dispute that he described his *MetaBirkins* art project, which includes NFTs, as quoted.

168.     In a December 6, 2021 interview with Yahoo! Finance, Defendant stated: "I wanted to see as an experiment to see if I could create the same kind of illusion that [the BIRKIN Handbag] has in real life as a digital commodity. And I feel like I've kind of accomplished that with the statistics that we kind of have today, is being able to put together this kind of digital commodity everybody loves, bringing it into the digital world with this introduction of the metaverse and seeking how it works out and how it plays in the hands of lie the community, selling it a that, keeping the scarcity of 100 bags total." Authority: Corrigan Decl., Ex. 7.

*Rothschild's Response:*

**(168)**   Undisputed.

169.     Defendant characterized the METABIRKINS NFTs as investment assets: "My goal is for MetaBirkins [sic] double as an investment for holders like the real-world 'holy grail' handbag." Authority: Corrigan Decl., Ex. 5; Kominers Decl., Ex. 1 at 26.

*Rothschild's Response:*

**(169)**   Mr. Rothschild states that although Hermès says that the METABIRKINS NFTs are "described herein," that term in fact is not defined in Plaintiffs' Rule 56.1 Statement of Material Facts. As a consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are independent either from the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire *MetaBirkins* art project, of which they are an integral part.

Mr. Rothschild does not dispute the quoted text attributed to him.

170.   
Corrigan Decl., Ex. 45 at 82:6-11; Ex. 83.

*Rothschild's Response:*

**(170)**   Undisputed.

171. ██████████████████████████████████
████████████████████████████ Authority: Corrigan Decl.,
Ex. 68 at 149:7-23.

*Rothschild's Response:*

**(171)**   Mr. Rothschild does not dispute that ██████ ████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████ Corrigan Decl., Ex. 68 at 149:7-23.

172. ██████████████████████████████████
████████████ Authority: Corrigan Decl., Ex. 55 at Rothschild008307.

*Rothschild's Response:*

**(172)**   Undisputed.

173. ██████████████████████████████████
██████ Authority: Corrigan Decl., Ex. at 20 at Rothshcild008345.

*Rothschild's Response:*

**(173)**   Mr. Rothschild does not dispute that ██████████████ but he disputes
that ██████████████████████████████

████████████████████████████████████

██████████████████████████████

██████ Rothschild Opp. Decl. 6.

174. ██████████████████████████████████
Authority: Corrigan Decl., Ex. 22 at Rothschild008383, Rothschild008386.

*Rothschild's Response:*

**(174)**   Mr. Rothschild does not dispute that this statement was puffery, but he disputes that it was false. Mr. Rothschild made this statement after having a private, confidential conversation with the former CEO of a large fashion distributor, who told Mr. Rothschild that he was working on getting Mr. Rothschild a meeting with Hermès to discuss a potential collaboration. Rothschild Opp. Decl. 6.

175.    Authority: Corrigan Decl., Ex. 52 at SACKS_000047; Ex. 36 at 124:17-125:10.

*Rothschild's Response:*

**(175)**   Undisputed.

176.   Authority: Corrigan Decl., Ex. 52 at SACKS_000026.

*Rothschild's Response:*

**(176)**   Undisputed.

177.   Authority: Corrigan Decl., Ex. 35 at SACKS_000249.

*Rothschild's Response:*

**(177)**   Undisputed.

178.   Authority: Corrigan Decl., Ex. 84 at Rothschild017162.

*Rothschild's Response:*

**(178)**   Mr. Rothschild does not dispute that

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████   Corrigan Decl., Ex. 84-2 at Rothschild017159, ████████████████████████

██████████████████████████████   Corrigan Decl., Ex. 84 at Rothschild017151,

Rothschild017162.

179.       However, Hermès ████████████████████████████████
██████████████ did not interact with Defendant before sending the December 16, 2021 cease-and-desist letter. Authority: Martin Decl. at ¶ 17, Exs. 4-5; Corrigan Decl., Ex. 12 at 44:7-11.

***Rothschild's Response:***

**(179)**   Undisputed.

180.   ████████████████████████████████████████████████
████████████████████████████████████ Authority: Corrigan Decl., Ex. 21 at 144:12-146:5.

***Rothschild's Response:***

**(180)**   Undisputed.

181.   ████████████████████████████████████████████████
████████████████████████████████ Authority: Corrigan Decl., Ex. 21 at 280:23-281:10.

***Rothschild's Response:***

**(181)**   Mr. Rothschild does not dispute that ██████████████████████

██████████████████████████████████████████████

██████████████████████   ████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████ Millsaps

Opp. Decl. ¶ 6, Ex. 7 (K. Loo Dep. (Aug. 10, 2022) 62:15-65:21).

Mr. Rothschild further states that ██████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

███████████████████████████████████████

████████████████████████

182. ████████████████████████████████
████████████████████████████ uthority: Corrigan
Decl., Ex. 21 at 184:14-194:22; Ex. 85 at Rothshcild008526.

*Rothschild's Response:*

**(182)**   Undisputed.

183. ████████████████████████████████
████████████ Authority: Corrigan Decl., Ex. 36 at 57:22-24; Ex. 86 at 49:22-23.

*Rothschild's Response:*

**(183)**   Undisputed.

184. ██████████████████████████████ Authority: Corrigan Decl.,
Ex. 21 at 391:24-392:24.

*Rothschild's Response:*

**(184)**   Undisputed.

185. ████████████████████████████████
████████ Authority: Corrigan Decl., Ex. 36 at 199:23-200:10.

*Rothschild's Response:*

**(185)**   Undisputed.

186.   ████████████████████████████████████████
Authority: Corrigan Decl., Ex. 42 at 48:1-48:4.

*Rothschild's Response:*

**(186)**   Undisputed.

187.   ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████   Authority:
Corrigan Decl., Ex. 87 at Rothschild014669.

*Rothschild's Response:*

**(187)**   Mr. Rothschild disputes that ████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████ Rothschild Decl. [Doc. 66] ¶ 11; Gopnik Decl. ¶¶ 17-18.

Mr. Rothschild further states that ████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████

188.  Authority: Corrigan Decl., Ex. 21 at 393:22-23; Ex. 88 at Rothschild014857-59.

**Rothschild's Response:**

**(188)**  Undisputed.

189. Authority: Corrigan Decl., Ex. 21 at 392:6-8; Ex. 89 at Rothschild008648, Rothschild008658, Rothshcild008665.

**Rothschild's Response:**

**(189)**  Undisputed.

190. Authority: Corrigan Decl., Ex. 52 at SACKS_000032.

**Rothschild's Response:**

**(190)**  Undisputed.

191. Authority: Corrigan Decl., Ex. 54 at Rothschild008802, Rothschild008805-6, Rothschild008808.

**Rothschild's Response:**

**(191)**  Undisputed.

192. Authority: Corrigan Decl., Ex. 90 at Rothschild008963.

*Rothschild's Response:*

**(192)**  Undisputed.

193.   Authority: Corrigan
Decl., Ex. 86 at 38:24-39:12; Ex. 91 at Rothschild009090.

*Rothschild's Response:*

**(193)**  Undisputed.

194.  Authority: Corrigan Decl., Ex. 92 at Rothschild009283.

*Rothschild's Response:*

**(194)**  Undisputed.

195.  Authority: Corrigan
Decl., Ex. 55 at Rothschild008308.

*Rothschild's Response:*

**(195)**  Mr. Rothschild does not dispute that

Mr. Rothschild states that

196.  Authority: Corrigan Decl., Ex. 36 at 50:14-58:6.

*Rothschild's Response:*

**(196)**   Undisputed.

197.    Authority: Corrigan

Decl., Ex. 21 at 195:16-24; Ex. 85 at Rothschild008527.

*Rothschild's Response:*

**(197)**   Mr. Rothschild disputes that

Corrigan Decl., Ex. 21 at 195:19-25.

Mr. Rothschild further states that

198.   Authority

Corrigan Decl., Ex. 21 at 386:17-387:23; Ex. 89 at Rothschild08652.

*Rothschild's Response:*

**(198)**   Undisputed.

199.

Authority: Corrigan Decl., Ex. 45 at 22:24-25:25; 31:24-32:7.

*Rothschild's Response:*

**(199)**   Mr. Rothschild does not dispute that ██████████████████████

███████████████████████████████ Mr. Rothschild states that

████████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████

██████████████

200.   ██████████████████████████████████████████

Authority: Corrigan Decl., Ex. 23 at Rothschild008391; Ex. 47 at Rothschild008468; Ex. 95 at Rothschild011297; Ex. 96 at Rothschild017383; Ex. 97 at Rothschild008499.

*Rothschild's Response:*

**(200)**   Mr. Rothschild does not dispute that ████████████████████.

201.   ████████████████████████████████████████████████

██████ uthority: Corrigan Decl., Ex. 45 at 44:8-17; Ex. 82 at Rothschild015179.

*Rothschild's Response:*

**(201)**   Mr. Rothschild disputes that ████████████████████████

████████████████████ but Mr. Rothschild does not dispute that ████████████████

████████████████████████████████████████████████████

███████████████████ Mr. Rothschild further states that ██████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████

202.   ████████████████████████████████████████████
████████████   Authority: Corrigan Decl., Ex. 45 at 64:6-16; 69:23-72:14; 73:2-11.

***Rothschild's Response:***

**(202)**   Undisputed, though Mr. Rothschild states that ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

203.   ████████████████████████████████████████████
████████████████   Authority: Corrigan Decl., Ex. 45 at 15:19-17:13; 118:19-119:8; Ex. 96 at
Rothschild017385.

***Rothschild's Response:***

**(203)**   Mr. Rothschild does not dispute that ████████████████████

████████████████████████████████████████████████████████ Mr.

Rothschild states that ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████

204. 

uthority: Corrigan Decl., Ex. 45 at 26:19-21; 71:5-14.

*Rothschild's Response:*

**(204)**  Undisputed.

205.

Authority: Corrigan Decl., Ex. 21 at 352:-354:22; Ex. 36 at 186:22-88:22, 191:13-25; Ex. 67 at SACKS_000159.

*Rothschild's Response:*

**(205)**  Mr. Rothschild does not dispute that

Corrigan Decl., Ex. 21 at 353:9-19. Mr. Rothschild further explained that by the term "black market for NFTs" he simply meant a truly decentralized NFT exchange. *Id*. at 352:4-353:22.

206.

Authority: Corrigan Decl., Ex. 98 at Rothschild014825.

*Rothschild's Response:*

**(206)**  Undisputed.

207.

Authority: Corrigan Decl., Ex. 21 at 43:18-25, 48:4-6, 72:16-17, 84:1-89:7; Exs. 99-107.

*Rothschild's Response:*

**(207)**   Mr. Rothschild disputes that ██████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████ *See* Corrigan Decl., Ex. 105. █████████████

█████████████████████████████████████████████████████

████████████ Rothschild Opp. Decl. ¶ 7. Mr. Rothschild does not dispute that ████████

█████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████ Corrigan Decl., Ex. 21 at 112:4-9.

208.    █████████████████████████████████████████████

███████████████████████████████████ Authority:
Corrigan Decl., Ex. 108 at Rothschild016240.

*Rothschild's Response:*

**(208)**   Undisputed.

209.    Defendant rarely highlighted the alleged "fur-free" inspiration for the
METABIRKINS NFTs. Authority: Kominers Decl., Ex. 1 at 32.

*Rothschild's Response:*

**(209)**   Mr. Rothschild disputes that he "rarely highlighted" the fur-free inspiration for the

*MetaBirkins* project. Since at least December 1, 2021—before the *MetaBirkins* NFTs were

released—the *MetaBirkins* website has prominently explained that *MetaBirkins* were a "new

series" developed by Rothschild, this time inspired by the acceleration of fashion's 'fur free'

initiatives and embrace of alternative textiles." Corrigan Decl., Ex. 6. And Mr. Rothschild began

discussing the fur-free inspiration for *MetaBirkins* in or around April 2021 and further articulated

it in October 2021. *See* Millsaps Opp. Decl. ¶ 2, Ex. 1 at Rothschild0011356-11359,

Rothschild0014566-14594.

210.  uthority: Corrigan Decl., Ex.112:6-12; Ex. 109.

*Rothschild's Response:*

**(210)** Undisputed.

211.  Authority: Corrigan Decl., Ex. 21 at 276:22-277:8.

*Rothschild's Response:*

**(211)** Undisputed.

212.  Kenneth Loo set up an interview for Defendant with Cristina Criddle of the *Financial Times* to discuss "his MetaBirkins NFT and counterfeits on OpenSea." Ms. Criddle requested numbers and screenshots of the METABIRKINS counterfeits Defendant claimed were being sold on OpenSea, but Defendant and Mr. Loo never provided the information. Authority: Corrigan Decl., Ex. 68 at 70:7-71:21; 72:7-72:23; Ex. 110.

*Rothschild's Response:*

**(212)** Undisputed.

213.  Authority: Corrigan Decl., Ex. 43 at 145:14-17.

*Rothschild's Response:*

**(213)** Undisputed.

214.  The BIRKIN handbag is handcrafted from the finest leather by experienced artisans in France. The manufacturing of a single BIRKIN handbag requires more than 17 hours of an artisan's time. The intensive labor and craftmanship and high-quality leathers required makes the BIRKIN handbag difficult to produce and sold at high prices. The customer demand for BIRKIN handbags is such that Hermès cannot satisfy all requests. Authority: Martin Decl. at ¶ 8.

*Rothschild's Response:*

(214)   Undisputed.

215.      The customer demand for and value of the BIRKIN handbag continues to increase and is such that the BIRKIN handbag is considered by customers to be a financial investment. Authority: Martin Decl. at ¶ 15.

*Rothschild's Response:*

(215)   Undisputed.

216.   ██████████████████████████████████████████████████████
████████████████████████ Authority: Corrigan Decl., Ex. 55 at Rothschild008305.

*Rothschild's Response:*

(216)   Undisputed.

217.   ██████████████████████████████████████████████████████
████████ Authority: Corrigan Decl., Ex. 111 at Rothschild008417, 8420.

*Rothschild's Response:*

(217)   Undisputed.

218.   ██████████████████████████████████████████████████████
██████████████████████████ Authority: Corrigan Decl., Ex. 113 at Rothschild015475-76.

*Rothschild's Response:*

(218)   Undisputed.

219.   ██████████████████████████████████████████████████████
██████████████████████ Authority: Corrigan Decl., Ex. 42 at Krejci Tr. 31:4-32:16.

*Rothschild's Response:*

**(219)**   Undisputed.

220.      Consumers were skeptical about the METABIRKINS NFTs and referred to Defendant's project as a "rug," with one Twitter user commenting that "13K a lot for a ruggggg." Authority: Corrigan Decl., Ex. 38 at HERMES_0009452.

*Rothschild's Response:*

**(220)**   Mr. Rothschild disputes that "[c]onsumers were skeptical" and referred to the

*MetaBirkins* project as a "rug," and the evidence cited by Hermès does not support this broad

assertion. Mr. Rothschild does not dispute that the quoted Tweet was posted by a user on Twitter

as shown in Corrigan Decl., Ex. 38 at HERMES_0009452.

221.      In response to Defendant's Instagram post about Hermès's cease and desist letter and the subject lawsuit, one user commented, "why would they [Hermès] collaborate with someone [Defendant] who lacks originality. They built and [sic] empire. This guy ripped off their bags and made NFTs. You really on the NFT koo laid and have no clue how much of this is just pyramid schemes and rug pulls." Authority: Corrigan Decl., Ex. 114 at Rothschild007787-88.

*Rothschild's Response:*

**(221)**   Undisputed.

222.      Defendant's legal name is Sonny Estival, not Mason Rothschild. █████████ ████████████████████████████████████████████ Authority: Corrigan Decl., Ex. 21 at 20:6-16, 26:24-27:11.

*Rothschild's Response:*

**(222)**   Mr. Rothschild disputes that ████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ Corrigan

Decl., Ex. 21 at 26:24-27:7.

Additionally, while Mr. Rothschild does not dispute that his legal name is Sonny Estival, Mr. Rothschild explained in uncontradicted testimony that he has started the process of changing his legal name to Mason Rothschild, which is a name that was given to Mr. Rothschild by old coworkers at one of his first jobs, and which has been Mr. Rothschild's Instagram handle since he was 15 years old. Corrigan Decl., Ex. 21 at 20:9-21:5.

223.  Authority: Corrigan Decl., Ex. 36 at 111:8-15; Ex. 45 at 20:24-21:4; Ex. 52 at SACKS_000026; Ex. 115 at EF0000081-87.

***Rothschild's Response:***

**(223)** Undisputed.

224. Authority: Corrigan Decl., Ex. 21 at 18:13-20:4, 26:11-23.

***Rothschild's Response:***

**(224)** Undisputed.

225. Authority: Corrigan Decl., Ex. 21 at 21:2-24:12, 36:10-42:3.

***Rothschild's Response:***

**(225)** Undisputed.

226. Authority: Corrigan Decl., Ex. 21 at 21:24-22:14, 41:19-42:3, Ex. 116.

***Rothschild's Response:***

**(226)** Undisputed.

227. █████████████████████████████████████████
████████████████████ uthority: Corrigan Decl., Ex. 21 at 40:21-42:13, Ex. 116.

*Rothschild's Response:*

**(227)** Mr. Rothschild disputes ███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████ Corrigan Decl., Ex. 21 at 40:22-41:4. ████████████████████

███████████████████████████████████████████████

██████████████████████████ *Id.* at 41:8-18. Mr. Rothschild does not dispute

that ████████████████████████████████████████

228. ████████████████████████████████████
████████████████████████████████ Authority:
Corrigan Decl., Ex. 21 at 42:4-13; Ex. 116.

*Rothschild's Response:*

**(228)** Undisputed.

229. ████████████████████████████████████
████████████████████████████████
████████████████████████████████ Authority:
Corrigan Decl., Ex. 21 at 48:15-55:2, 62:17-23, 171:2-11; Ex. 117.

*Rothschild's Response:*

**(229)** Mr. Rothschild disputes that ██████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████████

████    *See* Rothschild Decl. [Doc. 66] ¶ 6; Millsaps Decl. [Doc. 65] ¶ 3, Ex. 2 (M.

Rothschild Dep. (Aug. 4, 2022) 48:23-53:4, Ex. 6); ¶ 4, Ex. 3 (B. Gopnik Dep. (Sept. 23, 2022)

160:21-167:7). ███████████████████████████████████████████

██████████████████████████████████    *See* Rothschild Decl. [Doc. 66] ¶ 6.

230.     Defendant's second NFT project was the Baby Birkin NFT. The Baby Birkin
NFT was associated with video file depicting a fetus growing inside a BIRKIN handbag.
Authority: Kominers Decl., Ex. 1 at 24-25; Corrigan Decl., Ex. 21 at 120:1-2.

*Rothschild's Response:*

**(230)**   Mr. Rothschild does not dispute that *Baby Birkin* was his second NFT art project,

and that it included an NFT linked to a video file depicting a fetus growing inside a Birkin

handbag.

231. ████████████████████████████████████████████
████████████████████████████████████████
Authority: Corrigan Decl., Ex. 21 at 121:17-122:13, 417:7-24, 422:13-24.

*Rothschild's Response:*

**(231)**   Mr. Rothschild does not dispute that ███████████████████████████

███████████████████████████. *See* Rothschild Opp. Decl. ¶¶ 3-4.

232.     The Baby Birkin NFT initially sold for $23,500 in May 2021. Authority: Mentzer
Decl. Ex. 1 at 28.

*Rothschild's Response:*

**(232)**   Undisputed.

233. 

Authority: Corrigan Decl., Ex. 21 at 406:5-414:18.

*Rothschild's Response:*

**(233)**   Mr. Rothschild disputes this statement in its entirety.

*See* Corrigan Decl., Ex. 21 at 406:5-414:18.

*See* paragraph 207, *supra*;

Rothschild Decl. [Doc. 66] ¶ 4; Rothschild Opp. Decl. ¶ 7.

Mr. Rothschild further states that

234.

Authority: Corrigan Decl., Ex. 21 at 406:5- 414:18.

*Rothschild's Response:*

**(234)**   Mr. Rothschild disputes this statement in its entirety. ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ *See* Corrigan Decl., Ex. 21 at 406:5-414:18. ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ *See* paragraph 207, *supra*; Rothschild

Decl. [Doc. 66] ¶ 4; Rothschild Opp. Decl. ¶ 7.

Mr. Rothschild further states that ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

235.   ████████████████████████████████████████

████████████████████████████ Authority: Corrigan Decl.,
Ex. 21 at 393:22-23, 407:5-416:17; Ex. 118 at Rothschild010197-98.

*Rothschild's Response:*

**(235)**   Mr. Rothschild disputes that ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████ *See* Corrigan Decl., Ex. 21 at

393:22-23, 407:5-416:17. ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

*See* paragraph 207, *supra*; Rothschild Decl. [Doc. 66] ¶ 4; Rothschild Opp. Decl. ¶¶ 7-8.

236. ████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████ Authority: Corrigan Decl., Ex. 21 at 379:16-
380:23; Ex. 119 at Rothschild009367- 68.

*Rothschild's Response:*

**(236)**   Mr. Rothschild states that ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

████████████████████████████████████████████

████████

237. ████████████████████████████████████████
██████████████████████████ Authority: Corrigan Decl., Ex. 21 at 69:4-9,
73:10-74:1, 356:23-362:8; Ex. 120 at Rothschild010863-64.

*Rothschild's Response:*

**(237)**   Undisputed.

238.        Defendant sought submissions in the METABIRKINS Discord for a "Build-a-MetaBirkin" challenge. The winner would receive a whitelist spot for an unspecified NFT project. Defendant says he "has a history of giving out more" █████████████ ████████████████████████████████████████████████████████ ██████████████████████████████ uthority: Corrigan Decl., Ex. 21 at 363:14-369:8.

*Rothschild's Response:*

**(235)**   Undisputed.

239. ████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████

Authority: Corrigan Decl., Ex. 21 at 235:16-236:6; Exs. 47-48; Ex. 87; Ex. 121.

*Rothschild's Response:*

**(239)**   Mr. Rothschild disputes that ███████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████ *See* Rothschild Opp. Decl. ¶¶ 3-4;

Corrigan Decl., Ex. 55 at Rothschild008309-8320 (showing Mr. Rothschild giving feedback and

direction to Mr. Berden); Millsaps Opp. Decl. ¶ 2, Ex. 1 at Rothschild0011356-11359,

Rothschild0011416-11428, Rothschild0014566-14594, Rothschild0014660-14663,

Rothschild0014683-14685, Rothschild0014687-14694, Rothschild0014796-14802; ¶ 3, Ex. 2

(Gopnik Dep. (Sept. 23, 2022) 244:7-245:5 (in response to questioning about his review of a

voluminous number of Mr. Rothschild's and Mr. Berden's communications, stating that Mr.

Berden "was functioning as a high-level studio assistant" to Mr. Rothschild)); Gopnik Decl. ¶¶

14-15.

240. ███████████████████████████████████████████████████ ███████████████████████████████████████ Authority: Corrigan Decl., Ex. 21 at 135:7-136:16.

*Rothschild's Response:*

**(240)** Mr. Rothschild disputes that ████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ █████████████████ Corrigan Decl., Ex. 21 at 135:24-136:16 (*Q: "At that time [when the MetaBirkins images were created], did you know how to use Houdini? A: "Yes."*).

241. ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████ Authority: Corrigan Decl., Ex. 21 at 155:22-156:11, 416:18-421:2.

*Rothschild's Response:*

**(241)** Mr. Rothschild disputes that ████████████████████████████ ████████████████████████████████████████████████████████████ █████████████████████████████████████████ *See* Rothschild Opp. Decl. ¶¶ 3-4; Corrigan Decl., Ex. 55 at Rothschild008309-8320 (showing Mr. Rothschild giving feedback and direction to Mr. Berden); Millsaps Opp. Decl. ¶ 2, Ex. 1 at Rothschild0011356-11359, Rothschild0011416-11428, Rothschild0014566-14594, Rothschild0014660-14663, Rothschild0014683-14685, Rothschild0014687-14694, Rothschild0014796-14802; ¶ 3, Ex. 2 (Gopnik Dep. (Sept. 23, 2022) 244:7-245:5 (in response to questioning about his review of a voluminous number of Mr. Rothschild's and Mr. Berden's communications, stating that Mr. Berden "was functioning as a high-level studio assistant" to Mr. Rothschild)); Gopnik Decl. ¶¶ 14-15.

Mr. Rothschild disputes that █████████████████████████████
█████████████████████████████████████████████████████████
████████████████████████████████████████ See Rothschild Opp. Decl.
¶ 3.

Mr. Rothschild does not dispute that ████████████████████████
████████████████████████████

242.  Authority: Corrigan Decl., Ex. 68 at 155:22-156:21; Ex. 86 at
31:7-13.

***Rothschild's Response:***

**(242)**   Mr. Rothschild does not dispute that ██████████████████
█████████████████████████████ █████████████████████████
███████████████████████████████████████████████████████
████████████████████████████ *See* Millsaps Opp. Decl. ¶ 9, Ex. 8 (K.

Loo Dep. (Sept. 7, 2022) 155:5-157:23); ¶ 10, Ex. 9 (D. Cohen Dep. (Sept. 22, 2022) 46:17-

47:3).

243. Authority: Corrigan Decl., Ex. 21 at 140:24-142:21, Ex. 122 & Ex. 128.

*Rothschild's Response:*

**(243)**   Mr. Rothschild disputes that ██████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████ *See* Millsaps Opp. Decl. ¶ 4, Ex. 3 (M. Rothschild Dep. (Aug. 4,

2022) 263:3-14, Rothschild008409). ████████████████████████████

████████████████████████ *See* Millsaps Opp. Decl. ¶ 11, Ex. 10

(Rothschild008283). Mr. Rothschild further states that ████████████████████

████████████████ Mr. Rothschild does not dispute that ████████████████

████████████████████████████████████

244. 

Authority: Corrigan Decl., Ex. 123 at Rothshcild010189-90.

*Rothschild's Response:*

**(244)**   Undisputed.

245.      On October 29, 2021, Defendant ran a contest on Twitter ahead of the METABIRKINS NFTs release, describing the NFTs as "one of a kind, Birkins" and

asked followers to reply with their suggestions for the collection name, and stated the "best suggestion gets a gifted Birkin." Twitter user MAKISA responded on the same day, October 29, 2021, with seven suggestions, including "MetaBirkin." Twitter user "JessLozano.eth in NY" responded on November 2, 2021 with several suggestions, including "not your mom's Birkin." Authority: Corrigan Decl., Ex. 46.

*Rothschild's Response:*

**(245)**   Undisputed.

246.   ███████████████████████████████████████████████████████████
███████████████████████████████████    Authority: Corrigan Decl., Ex. 21 at 382:19-383:17; Ex. 124 at Rothshcild010392.

*Rothschild's Response:*

**(246)**   Undisputed.

247.   On July 19, 2022, Defendant made a public statement to his METABIRKINS Discord community regarding this Court's denial of Defendant's Motion to Dismiss, mischaracterizing the loss as a win. The publicly available post states, "@everyone: I just wanted to update everyone on the litigation with Hermes. The judge has ruled that the First Amendment applies in our case, and we are confident that in the end *MetaBirkins will be fully protected as free artistic speech*. We're continuing to litigate the case toward that result, and we'll update you as the case unfolds. Thanks, everyone, for your support!" Authority: Corrigan Decl., Ex. 125 (emphasis added).

*Rothschild's Response:*

**(247)**   Mr. Rothschild does not dispute that he posted the quoted text, but Mr. Rothschild

disputes that the text "mischaracteriz[es] the loss as a win." The text speaks for itself.

248.   On January 17, 2022, Defendant made a public statement which said, "Hermes chose instead to break off negotiations and sue me" despite the fact that Defendant actually gave Hermès a deadline of January 14, 2022 by which Defendant would take action against Hermès. Authority: Corrigan Decl., Ex. 21 at 333:18-335:25; Ex. 126.

*Rothschild's Response:*

**(248)**   Mr. Rothschild disputes that he gave Hermès a deadline of January 14, 2022, by

which he would take action against Hermès. The cited transcript shows that Plaintiffs' counsel

represented this "fact" to Mr. Rothschild at his deposition after Mr. Rothschild testified that he

did not believe that he had given Hermès such a deadline. Corrigan Decl., Ex. 21 at 333:24-335:25. Moreover, Plaintiffs' counsel appeared to base this "fact" on Mr. Rothschild's statement to Hermès that he would bring an anti-SLAPP suit if Hermès sued him. *See Id*. at 334:9-15. Mr. Rothschild further testified: "I believe we were supposed to have a conversation that week, and that's what that meant. And instead, we just got -- or we saw the complaint… we had a call scheduled that week, and instead of calling us, we just got the complaint instead, so there was no -- there was no communication before that." *Id*. at 334:24-335:25.

249.



Authority: Corrigan Decl., Ex. 20; Ex. 21 at 144:12-146:5, 148:21-149:3, 323:25-326:11, 354:9- 355:21; Ex. 22; Ex. 93 at Rothschild009680.

*Rothschild's Response:*

**(249)**   Mr. Rothschild does not dispute that

*See* Rothschild Opp. Decl. ¶ 6.

250.

Authority: Corrigan Decl., Ex. 21 at 149:4-12 & Ex. 22 at Rothschild008383-8386.

*Rothschild's Response:*

**(250)**   Mr. Rothschild does not dispute

Corrigan Decl., Ex. 21 at 149:4-15.

251. ███████████████████████████████████████████ Authority: Corrigan Decl., Ex. 68 at 25:2-5.

***Rothschild's Response:***

**(251)**  Mr. Rothschild disputes ███████████████████████

██████ ████████████████████████████████████████

████████████████████ Millsaps Opp. Decl. ¶ 8, Ex. 7 (K. Loo Dep. (Aug. 10,

2022) 17:17-18:10, 23:6-8).

252. █████████████████████████████████████████ Authority: Corrigan

Decl., Ex. 21 at 173:19-174:9.

***Rothschild's Response:***

**(252)**  Mr. Rothschild disputes that ████████████████████████

███████████████████████████████████████████████████████████

████████ Mr. Rothschild does not dispute that ██████████████████

███████████████████████████████████████████████████

████████████████ and Mr. Rothschild does not dispute that ████████████████.

253.      After submitting the name METABIRKINS in connection with Defendant's
naming contest, Twitter user MAKISA followed up with Defendant on Twitter to see if
she was "eligible for the NFT mentioned in your initial tweet." Authority: Corrigan Decl.,
Ex. 46.

***Rothschild's Response:***

**(253)**  Undisputed.

254. ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ Authority: Corrigan Decl., Ex.11;
Ex. 21 at 204:15-18, 207:4-17.

***Rothschild's Response:***

**(254)**   Mr. Rothschild does not dispute 

See Millsaps Opp. Decl. ¶ 13, Ex. 12; Rothschild Opp. Decl. ¶ 12.

Rothschild Opp. Decl. ¶ 12.

255.   ███████████████████████████████
█████████████████████████████████ Authority: Corrigan Decl., Ex.
46; Ex. 21 at 203:24-204:24.

***Rothschild's Response:***

**(255)**   Undisputed.

256.   On October 4, 2022, Rothschild deleted most of his Twitter history (including the "contest" submissions), which he argued was allowed under the federal rules and First Amendment. Authority: Corrigan Decl., Exs. 94, 129.

***Rothschild's Response:***

**(256)**   Mr. Rothschild does not dispute that on October 4, 2022, he deleted much of his

public Twitter history. As Mr. Rothschild's counsel explained to Hermès' counsel, Mr.

Rothschild's Twitter data was collected and preserved prior to Mr. Rothschild's removal of

public posts from the account. Millsaps Opp. Decl. ¶ 12, Ex. 11 (October 11, 2022, email from

Rhett Millsaps to Oren Warshavsky).

## ROTHSCHILD'S STATEMENT OF ADDITIONAL
## UNDISPUTED MATERIAL FACTS

Mr. Rothschild here incorporates by reference Rothschild's Rule 56.1 Statement of

Undisputed Material Facts in Support of His Motion for Summary Judgement [Doc. 63].

Dated:  October 21, 2022

Respectfully Submitted,

/s/ *Rhett O. Millsaps II*
Rhett O. Millsaps II
Christopher J. Sprigman
Mark P. McKenna (*pro hac vice*)
Rebecca Tushnet
LEX LUMINA PLLC
745 Fifth Avenue, Suite 500
New York, NY  10151
(646) 898-2055
rhett@lex-lumina.com

*Attorneys for Defendant Mason Rothschild*