# Exhibit 142

| | |
|---|---|
| **Generated on:** | This page was generated by TSDR on 2022-10-18 14:17:47 EDT |
| **Mark:** | GUCCI |

# GUCCI

| | | | |
|---|---|---|---|
| **US Serial Number:** | 97112038 | **Application Filing Date:** | Nov. 06, 2021 |
| **Register:** | Principal | | |
| **Mark Type:** | Trademark, Service Mark | | |
| **TM5 Common Status Descriptor:** | | LIVE/APPLICATION/Under Examination | |
| | | The trademark application has been accepted by the Office (has met the minimum filing requirements) and that this application has been assigned to an examiner. | |
| **Status:** | A non-final Office action has been sent (issued) to the applicant. This is a letter from the examining attorney requiring additional information and/or making an initial refusal. The applicant must respond to this Office action. To view all documents in this file, click on the Trademark Document Retrieval link at the top of this page. | | |
| **Status Date:** | Aug. 30, 2022 | | |

## Mark Information

| | |
|---|---|
| **Mark Literal Elements:** | GUCCI |
| **Standard Character Claim:** | Yes. The mark consists of standard characters without claim to any particular font style, size, or color. |
| **Mark Drawing Type:** | 4 - STANDARD CHARACTER MARK |

## Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:
- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

| | | | |
|---|---|---|---|
| **For:** | Downloadable virtual goods, namely, computer programs featuring footwear, clothing, headwear, eyewear, handbags, laptop bags, backpacks, luggage, briefcases, art, toys, jewelry, watches, hair accessories, pet collars, accessories and charms for use in online virtual worlds | | |
| **International Class(es):** | 009 - Primary Class | **U.S Class(es):** | 021, 023, 026, 036, 038 |
| **Class Status:** | ACTIVE | | |
| **Basis:** | 1(b) | | |
| **For:** | Retail store services featuring virtual goods, namely, footwear, clothing, headwear, eyewear, handbags, laptop bags, backpacks, luggage, briefcases, art, toys, jewelry, watches, hair accessories, pet collars, accessories and charms for use in online virtual worlds | | |
| **International Class(es):** | 035 - Primary Class | **U.S Class(es):** | 100, 101, 102 |
| **Class Status:** | ACTIVE | | |
| **Basis:** | 1(b) | | |
| **For:** | Entertainment services, namely, providing on-line, non-downloadable virtual footwear, clothing, headwear, eyewear, handbags, laptop bags, backpacks, luggage, briefcases, art, toys, jewelry, watches, hair accessories, pet collars, accessories and charms for use in virtual environments created for entertainment purposes | | |
| **International Class(es):** | 041 - Primary Class | **U.S Class(es):** | 100, 101, 107 |

**Class Status:** ACTIVE
**Basis:** 1(b)

## Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** | No | **Currently Use:** | No |
| **Filed ITU:** | Yes | **Currently ITU:** | Yes |
| **Filed 44D:** | No | **Currently 44E:** | No |
| **Filed 44E:** | No | **Currently 66A:** | No |
| **Filed 66A:** | No | **Currently No Basis:** | No |
| **Filed No Basis:** | No | | |

## Current Owner(s) Information

**Owner Name:** HOLMES, FENESHA AMANA
**Owner Address:** 2411 GABLE HOLLOW LANE
KATY, TEXAS UNITED STATES 77450
**Legal Entity Type:** INDIVIDUAL          **Citizenship:** UNITED STATES

**Owner Name:** HOLMES, KAI SHAY
**Owner Address:** 2411 GABLE HOLLOW LANE
KATY, TEXAS UNITED STATES 77450
**Legal Entity Type:** INDIVIDUAL          **Citizenship:** UNITED STATES

## Attorney/Correspondence Information

**Attorney of Record - None**
**Correspondent**

**Correspondent Name/Address:** HOLMES, FENESHA AMANA
2411 GABLE HOLLOW LANE
KATY, TEXAS UNITED STATES 77450
**Phone:** 201-304-5001
**Correspondent e-mail:** FENESHA.HOLMES@GMAIL.COM  KAIHOLMES66@GMAIL.COM          **Correspondent e-mail Authorized:** Yes

**Domestic Representative - Not Found**

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Aug. 30, 2022 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | |
| Aug. 30, 2022 | NON-FINAL ACTION E-MAILED | |
| Aug. 30, 2022 | NON-FINAL ACTION WRITTEN | 95704 |
| Aug. 17, 2022 | ASSIGNED TO EXAMINER | 95704 |
| Nov. 16, 2021 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED IN TRAM | |
| Nov. 10, 2021 | NEW APPLICATION ENTERED IN TRAM | |

## TM Staff and Location Information

**TM Staff Information**

**TM Attorney:** SANCHEZ RIVERA, MARIA          **Law Office Assigned:** LAW OFFICE 112

**File Location**

**Current Location:** TMO LAW OFFICE 112 - EXAMINING ATTORNEY ASSIGNED          **Date in Location:** Aug. 30, 2022

2

| | |
|---|---|
| **To:** | HOLMES, FENESHA AMANA(FENESHA.HOLMES@GMAIL.COM) |
| **Subject:** | U.S. Trademark Application Serial No. 97112038 - GUCCI |
| **Sent:** | August 30, 2022 10:37:56 AM EDT |
| **Sent As:** | tmng.notices@uspto.gov |

**Attachments**

0959338
1169019
1097555
1132675
0876292
1168922
0972078
1200991
1321864
1202802
1340599
1168477
3061918
4555556
4563132
4555576
4563098
4407149
4567128
4567127
5119544
5921105
5921104
90739397
6073427
88286374
88286389
screencapture-www-projectpractical-com-top-10-fashion-brands-embracing-the-metaverse-16618075312421
screencapture-www-bloomberg-com-news-articles-2021-12-09-luxury-fashion-brands-are-already-making-millions-in-the-metaverse-16618086275081
screencapture-www-raconteur-net-technology-luxury-goods-crypto-nfts-metaverse-16618089879641
screencapture-www-highsnobiety-com-tag-gucci-16618680838061
screencapture-www-thefashionlaw-com-kering-revenue-tops-20-billion-in-2021-boosted-by-growth-from-gucci-16618682174961
GUCCI.pdf
screencapture-www-merriam-webster-com-dictionary-gucci-16618694269791
screencapture-www-dictionary-com-misspelling-16618694664041

3

United States Patent and Trademark Office (USPTO)
Office Action (Official Letter) About Applicant's Trademark Application

**U.S. Application Serial No.** 97112038

**Mark:** GUCCI

**Correspondence Address:**
HOLMES, FENESHA AMANA
2411 GABLE HOLLOW LANE
KATY TX 77450 UNITED STATES

**Applicant:** HOLMES, FENESHA AMANA

**Reference/Docket No.** N/A

**Correspondence Email Address:** FENESHA.HOLMES@GMAIL.COM

# NONFINAL OFFICE ACTION

**The USPTO must receive applicant's response to this letter within <u>six months</u> of the issue date below or the application will be <u>abandoned.</u>** Respond using the Trademark Electronic Application System (TEAS). A link to the appropriate TEAS response form appears at the end of this Office action.

**Issue date:** August 30, 2022

The referenced application has been reviewed by the assigned trademark examining attorney. Applicant must respond timely and completely to the issue(s) below. 15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

**SUMMARY OF ISSUES:**

- Section 2(d) Refusal - Likelihood of Confusion
- Prior Pending Applications
- Section 2(a) Refusal - Suggests False Connection
- Section 2(e)(4) Refusal - Primarily Merely a Surname
- Supplemental Register Advisory
- Request for Information
- Amendment of Identification of Services Required

**SECTION 2(d) REFUSAL – LIKELIHOOD OF CONFUSION**

4

Registration of the applied-for mark is refused because of a likelihood of confusion with the marks in U.S. Registration Nos. 0876292, 0959338, 1132675, 1097555, 1168477, 1168922, 1169019, 1202802, 1200991, 1321864, 1340599, 3061918, 4407149, 4563098, 4555556, 4567128, 4567127, 4563132, 4555576, 5119544, 5921105, 5921104, 6073427, all in the name of the same owner. Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq. See the attached registrations.*

Applicant has applied for the mark "GUCCI", in standard characters, for use in connection with "Downloadable virtual goods, namely, computer programs featuring footwear, clothing, headwear, eyewear, handbags, laptop bags, backpacks, luggage, briefcases, art, toys, jewelry, watches, hair accessories, pet collars, accessories and charms for use in online virtual worlds" in Class 9; "Retail store services featuring virtual goods, namely, footwear, clothing, headwear, eyewear, handbags, laptop bags, backpacks, luggage, briefcases, art, toys, jewelry, watches, hair accessories, pet collars, accessories and charms for use in online virtual worlds" in Class 35 and "Entertainment services, namely, providing on-line, non-downloadable virtual footwear, clothing, headwear, eyewear, handbags, laptop bags, backpacks, luggage, briefcases, art, toys, jewelry, watches, hair accessories, pet collars, accessories and charms for use in virtual environments created for entertainment purposes" in Class 41.

The registered marks are:

- "GUCCI" (Reg. No. 0876292), in typed drawing, for use in connection with the following relevant goods: "pocketbooks, wallets, travel and duffel bags, attaché cases, toilet cases sold empty and shoe bags" in Class 18 and "shoes and boots" in Class 25.
- "GUCCI" (Reg. No. 0959338), in typed drawing, for use in connection with "watches" in Class 14.
- "GUCCI" (Reg. No. 0972078), in typed drawing, for use in connection with "retail apparel, jewelry and leather goods store services" in Class 42.
- "GUCCI" & design (Reg. No. 1132675) for use in connection with "cufflinks of precious metal, bracelets, pendants, earrings, rings, necklaces" in Class 14.
- "GUCCI" & design (Reg. No. 1097555) for use in connection with "neckties, scarves, footwear, shirts, sweaters, coats" in Class 25.
- "GUCCI" (Reg. No. 1168477), in typed drawing, for use in connection with "neckties; scarves; belts; footwear; shirts; sweaters; coats; suits; dressing gowns; hats; socks; dresses and bathing suits" in Class 25.
- "GUCCI" (Reg. No. 1168922), in typed drawing, for use in connection with "key rings" in Class 6.
- "GUCCI" (Reg. No. 1169019), in typed drawing, for use in connection with "eye glass cases" in Class 9.
- "GUCCI" (Reg. No. 1202802), in typed drawing, for use in connection with "eye glass cases" in Class 9.
- "GUCCI" (Reg. No. 1200991), in typed drawing, for use in connection with "bracelets, rings, necklaces, cufflinks, pendants, pins, money clips, keyrings, all made wholly or in part of precious metal" in Class 14.
- "GUCCI" (Reg. No. 1321864), in typed drawing, for use in connection with "eyeglasses and parts therefor" in Class 9.
- "GUCCI" (Reg. No. 1340599), in typed drawing, for use in connection with "jewelry-namely, earrings, made wholly or in part of precious metal" in Class 14.
- "GUCCI" (Reg. No. 3061918), in stylized form, for use in connection with "wallets, purses, handbags, shoulder bags, clutch bags, tote bags, duffel bags, business card cases, calling card cases, credit card cases, name card cases, key cases" in Class 18.

5

- "GUCCI" (Reg. No. 4407149), in standard characters, for use in connection with "sunglasses and cases for sunglasses" in Class 9.
- "GUCCI" (Reg. No. 4563098), in standard characters, for use in connection with "Protective covers and cases for mobile electronic communication devices and computers; computer application software for all mobile devices, namely, software for providing information in the field of fashion, the arts and lifestyle" in Class 9.
- "GUCCI" (Reg. No. 4555556), in stylized form, for use in connection with "scarves, shirts" in Class 25.
- "GUCCI" (Reg. No. 4567128), in standard characters, for use in connection with "providing entertainment news and information in the fields of fine art, film, music, theater, and dance through an Internet website portal and social media sites; entertainment services, namely, organizing cultural events" in Class 41 and "providing news and information in the fields of fashion and personal lifestyles through an Internet website portal and social media sites" in Class 45.
- "GUCCI" (Reg. No. 4567127), in standard characters, for use in connection with "Advertising and marketing services provided by means of indirect methods of marketing communications, namely, social media; retail store and retail outlet store services featuring clothing, footwear, handbags, luggage, small leather goods, jewelry, watches, eyewear, fragrances, and accessories; online retail stores featuring clothing, footwear, handbags, luggage, small leather goods, jewelry, watches, eyewear, fragrances and accessories." in Class 35.
- "GUCCI" (Reg. No. 4563132), in standard characters, for use in connection with "handbags, shoulder bags, clutch bags, tote bags, briefcases, business card cases, credit card cases, backpacks, key cases, passport cases, cosmetic cases sold empty, valises, suitcases, luggage, all the foregoing being made in whole or in part of leather" in Class 35.
- "GUCCI" (Reg. No. 4555576), in standard characters, for use in connection with "jewelry" in Class 14.
- "GUCCI" (Reg. No. 5119544), in standard characters, for use in connection with the relevant goods "children's and infant's cloth bibs; hats for infants, babies, toddlers and children; rain boots" in Class 25.
- "GUCCI GG" & design (Reg. No. 5921105), for use in connection with "cases and covers for mobile phones" in Class 9; "key rings" in Class 14; "handbags; shoulder bags; messenger bags; tote bags; clutch bags; backpacks; duffle bags; wallets; business card cases; leather credit card cases and holders; pouches of leather" in Class 18; and "clothing, namely, tops as clothing, scarves, belts, footwear, headwear; children's and infants' cloth bibs" in Class 25.
- "GUCCI GG" & design (Reg. No. 5921104), for use in connection with "cases and covers for mobile phones" in Class 9; "key rings" in Class 14; "handbags; shoulder bags; messenger bags; tote bags; clutch bags; backpacks; duffle bags; wallets; business card cases; leather credit card cases and holders; pouches of leather" in Class 18; and "clothing, namely, tops as clothing, scarves, belts, footwear, headwear; children's and infants' cloth bibs" in Class 25.
- "GUCCI" (Reg. No. 6073427), in standard characters, for use in connection with the following relevant goods: "sunglasses, eyeglasses, cases for sunglasses, cases for eyeglasses, mobile phone cases, cases for computers, cases for tablet computers, computer application software for all mobile devices, namely, downloadable software for providing information in the field of fashion, the arts and lifestyle" in Class 9; "jewelry, watches, key rings, cuff links, tie bars" in Class 14; "pocketbooks, handbags, shoulder bags, clutches, wristlet bags, coin purses, wallets, credit card cases, business card cases, tote bags, backpacks, diaper bags, cosmetic bags sold empty, luggage" in Class 18; "Tops as clothing, bottoms as clothing, coats, jackets, suits, dresses, jumpsuits, bathing suits, scarves, ties as clothing, belts, gloves, headwear, footwear, tights, socks, stockings" in Class 25; and "retail store services for clothing, footwear, fashion accessories, jewelry,

6

watches, handbags, sunglasses, fragrances, home furnishings and accessories; online retail store services for clothing, footwear, fashion accessories, jewelry, watches, handbags, sunglasses, fragrances, home furnishings and accessories" in Class 35.

Trademark Act Section 2(d) bars registration of an applied-for mark that is so similar to a registered mark that it is likely consumers would be confused, mistaken, or deceived as to the commercial source of the goods and/or services of the parties. *See* 15 U.S.C. §1052(d). Likelihood of confusion is determined on a case-by-case basis by applying the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973) (called the "*du Pont* factors"). *In re i.am.symbolic, llc*, 866 F.3d 1315, 1322, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017). Any evidence of record related to those factors need be considered; however, "not all of the *DuPont* factors are relevant or of similar weight in every case." *In re Guild Mortg. Co.*, 912 F.3d 1376, 1379, 129 USPQ2d 1160, 1162 (Fed. Cir. 2019) (quoting *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1406, 41 USPQ2d 1531, 1533 (Fed. Cir. 1997)).

Although not all *du Pont* factors may be relevant, there are generally two key considerations in any likelihood of confusion analysis: (1) the similarities between the compared marks and (2) the relatedness of the compared goods and/or services. *See In re i.am.symbolic, llc*, 866 F.3d at 1322, 123 USPQ2d at 1747 (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1164-65, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002)); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1103, 192 USPQ 24, 29 (C.C.P.A. 1976) ("The fundamental inquiry mandated by [Section] 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods [or services] and differences in the marks."); TMEP §1207.01.

**Similarity of the Marks**

Marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression. *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1321, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014) (quoting *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005)); TMEP §1207.01(b)-(b)(v). "Similarity in any one of these elements may be sufficient to find the marks confusingly similar." *In re Inn at St. John's, LLC*, 126 USPQ2d 1742, 1746 (TTAB 2018) (citing *In re Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014)), *aff'd per curiam*, 777 F. App'x 516, 2019 BL 343921 (Fed. Cir. 2019); TMEP §1207.01(b).

In the present case, applicant's mark is "GUCCI" and registrant's marks are also "GUCCI". These marks are identical in appearance, sound, and meaning, "and have the potential to be used . . . in exactly the same manner." *In re i.am.symbolic, llc*, 116 USPQ2d 1406, 1411 (TTAB 2015), *aff'd,* 866 F.3d 1315, 123 USPQ2d 1744 (Fed. Cir. 2017). Additionally, because they are identical, these marks are likely to engender the same connotation and overall commercial impression when considered in connection with applicant's and registrant's respective goods and/or services. *Id.*

Moreover, consumers are generally more inclined to focus on the first word, prefix, or syllable in any trademark or service mark. *See Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1372, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005) (finding similarity between VEUVE ROYALE and two VEUVE CLICQUOT marks in part because "VEUVE . . . remains a 'prominent feature' as the first word in the mark and the first word to appear on the label"); *Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874, 876, 23 USPQ2d 1698, 1700 (Fed Cir. 1992) (finding similarity between CENTURY 21 and CENTURY LIFE OF AMERICA in part because

"consumers must first notice th[e] identical lead word"); *see also In re Detroit Athletic Co.*, 903 F.3d 1297, 1303, 128 USPQ2d 1047, 1049 (Fed. Cir. 2018) (finding "the identity of the marks' two initial words is particularly significant because consumers typically notice those words first"). In this case, the applied-for mark "GUCCI" and the registered marks "GUCCI GG" share the identical wording "GUCCI" as the first element of each mark, with such wording being the entirety of applicant's mark, making it their most prominent and dominant feature.

Finally, a mark in typed or standard characters may be displayed in any lettering style; the rights reside in the wording or other literal element and not in any particular display or rendition. *See In re Viterra Inc.*, 671 F.3d 1358, 1363, 101 USPQ2d 1905, 1909 (Fed. Cir. 2012); *In re Mighty Leaf Tea*, 601 F.3d 1342, 1348, 94 USPQ2d 1257, 1260 (Fed. Cir. 2010); 37 C.F.R. §2.52(a); TMEP §1207.01(c)(iii). Thus, a mark presented in stylized characters and/or with a design element generally will not avoid likelihood of confusion with a mark in typed or standard characters because the word portion could be presented in the same manner of display. *See, e.g., In re Viterra Inc.*, 671 F.3d at 1363, 101 USPQ2d at 1909; *Squirtco v. Tomy Corp.*, 697 F.2d 1038, 1041, 216 USPQ 937, 939 (Fed. Cir. 1983) (stating that "the argument concerning a difference in type style is not viable where one party asserts rights in no particular display"). Here, as the applied-for mark is in standard characters, it may be displayed in any lettering style and/or design, including one similar to the manner of display of the registered marks "GUCCI" and "GUCCI GG".

Therefore, the marks are confusingly similar.

**Relatedness of the Goods and Services**

The goods and/or services are compared to determine whether they are similar, commercially related, or travel in the same trade channels. *See Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369-71, 101 USPQ2d 1713, 1722-23 (Fed. Cir. 2012); *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1165, 64 USPQ2d 1375, 1381 (Fed. Cir. 2002); TMEP §§1207.01, 1207.01(a)(vi).

Determining likelihood of confusion is based on the description of the goods and/or services stated in the application and registration at issue, not on extrinsic evidence of actual use. *See In re Detroit Athletic Co.*, 903 F.3d 1297, 1307, 128 USPQ2d 1047, 1052 (Fed. Cir. 2018) (citing *In re i.am.symbolic, llc*, 866 F.3d 1315, 1325, 123 USPQ2d 1744, 1749 (Fed. Cir. 2017)).

In this case, the registrations "GUCCI" (Reg. No. 0959338), "GUCCI" (Reg. No. 4567127) and "GUCCI" (Reg. No. 6073427) use broad wording to describe retail store services featuring clothing, jewelry and handbags, which presumably encompasses all services of the type described, including applicant's more narrow retail store services featuring virtual goods in these categories. *See, e.g., In re Solid State Design Inc.*, 125 USPQ2d 1409, 1412-15 (TTAB 2018); *Sw. Mgmt., Inc. v. Ocinomled, Ltd.*, 115 USPQ2d 1007, 1025 (TTAB 2015). Thus, applicant's and registrant's services are legally identical. *See, e.g., In re i.am.symbolic, llc*, 127 USPQ2d 1627, 1629 (TTAB 2018) (citing *Tuxedo Monopoly, Inc. v. Gen. Mills Fun Grp., Inc.*, 648 F.2d 1335, 1336, 209 USPQ 986, 988 (C.C.P.A. 1981); *Inter IKEA Sys. B.V. v. Akea, LLC*, 110 USPQ2d 1734, 1745 (TTAB 2014); *Baseball Am. Inc. v. Powerplay Sports Ltd.*, 71 USPQ2d 1844, 1847 n.9 (TTAB 2004)).

Additionally, the services of the parties have no restrictions as to nature, type, channels of trade, or classes of purchasers and are "presumed to travel in the same channels of trade to the same class of purchasers." *In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (quoting *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1268, 62 USPQ2d 1001, 1005

(Fed. Cir. 2002)).  Thus, applicant's and registrant's services are related.

Furthermore, applicant's virtual goods, such as footwear, clothing, headwear, eye-wear, handbags, jewelry, and watches and registrant's footwear, clothing, headwear, eye-wear, handbags, jewelry, and watches are of a kind that may emanate from a single source, under a single mark. The attached Internet evidence shows that luxury brands, including registrant, are selling virtual versions of their physical goods in virtual worlds. *See the attached article from Raconteur.net* ("Gucci has been particularly active in the metaverse, most recently with the release of a set of NFTs called Gucci Grail. Minted on the ethereum blockchain, this is the result of a collaboration between the brand's creative director, Alessandro Michele, and fictional "famed digital craftsman" Wagmi-san."); *from Bloomberg.com* ("Already, big names are staking a claim in the metaverse. The Gucci Garden, for example, a pop-up on Roblox that sold the brand's designs, saw one bag fetch $4,000 in real-world cash. Nike Inc., too, announced an in-depth partnership with the platform to create Nikeland, a virtual world modeled after the company's headquarters in Oregon that offers exclusive goods for sale. In September, Balenciaga brought out a collection of clothes in Fortnite."); *and from ProjectPractical.com* ("In 2021, Gucci teamed with Roblox, one of the most renowned gaming platforms, to exhibit Gucci handbags, hats, and sunglasses in avatars. Termed the Gucci Garden space, it ran for two weeks, allowing enthusiasts and gamers to buy collectibles and several rare Gucci accessories."). Therefore, applicant's and registrant's goods are closely related.

Furthermore, where the marks of the respective parties are identical or virtually identical, as in this case, the degree of similarity or relatedness between the goods and/or services needed to support a finding of likelihood of confusion declines. *See In re Country Oven, Inc.*, 2019 USPQ2d 443903, at *5 (TTAB 2019) (citing *In re i.am.symbolic, llc*, 116 USPQ2d 1406, 1411 (TTAB 2015), *aff'd*, 866 F.3d 1315, 123 USPQ2d 1744 (Fed. Cir. 2017)); TMEP §1207.01(a); *see also In re Shell Oil Co.*, 992 F.2d 1204, 1207, 26 USPQ2d 1687, 1689 (Fed. Cir. 1993). Here, because the marks are identical or virtually identical and the goods and services are closely related, consumers encountering applicant's goods and services would reasonably presume that these are produced or manufactured by the same source as registrant's goods and services. Thus, because consumers would be likely to assume the existence of a connection between the parties, the marks are confusingly similar.

## Conclusion

The overriding concern is not only to prevent buyer confusion as to the source of the goods and/or services, but to protect the registrant from adverse commercial impact due to use of a similar mark by a newcomer. *See In re Shell Oil Co.*, 992 F.2d 1204, 1208, 26 USPQ2d 1687, 1690 (Fed. Cir. 1993). Therefore, any doubt regarding a likelihood of confusion determination is resolved in favor of the registrant. TMEP §1207.01(d)(i); *see Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1265, 62 USPQ2d 1001, 1003 (Fed. Cir. 2002); *In re Hyper Shoppes (Ohio), Inc.*, 837 F.2d 463, 464-65, 6 USPQ2d 1025, 1026 (Fed. Cir. 1988).

Thus, because the marks create a confusingly similar commercial impression and the goods and services at issue are commercially related, registration is refused under Section 2(d) for a likelihood of confusion.

Applicant should note the additional potential grounds for refusal under Section 2(d) immediately below.

**PRIOR PENDING APPLICATIONS**

The filing dates of pending U.S. Application Serial Nos. 88286389 ("GUCCI GG" & design), 88286374 ("GUCCI GG" & design), and
90739397 ("GUCCI" & design) precede applicant's filing date.  *See attached referenced applications*.  If one or more of the marks in the referenced applications register, applicant's mark may be refused registration under Trademark Act Section 2(d) because of a likelihood of confusion with the registered mark(s).  *See* 15 U.S.C. §1052(d); 37 C.F.R. §2.83; TMEP §§1208 *et seq*.  Therefore, upon receipt of applicant's response to this Office action, action on this application may be suspended pending final disposition of the earlier-filed referenced applications.

In response to this Office action, applicant may present arguments in support of registration by addressing the issue of the potential conflict between applicant's mark and the marks in the referenced applications.  Applicant's election not to submit arguments at this time in no way limits applicant's right to address this issue later if a refusal under Section 2(d) issues.

Applicant should note the following additional ground for refusal.

## SECTION 2(a) REFUSAL - SUGGESTS FALSE CONNECTION

Registration is refused because the applied-for mark consists of or includes matter that may falsely suggest a connection with GUCCI AMERICA, INC. Trademark Act Section 2(a), 15 U.S.C. §1052(a). Although GUCCI AMERICA, INC.is not connected with the goods and/or services provided by applicant under the applied-for mark, GUCCI AMERICA, INC.is so well-known that consumers would presume a connection. *See id*.

Trademark Act Section 2(a) prohibits registration of "matter which may . . . falsely suggest a connection with persons, living or dead, institutions, beliefs, or national symbols." 15 U.S.C. §1052(a). To establish that an applied-for mark falsely suggests a connection with a person or an institution, the following is required:

  (1) The mark sought to be registered is the same as, or a close approximation of, the name or identity previously used by another person or institution.

  (2) The mark would be recognized as such, in that it points uniquely and unmistakably to that person or institution.

  (3) The person or institution identified in the mark is not connected with the goods that are sold or will be sold or services that are performed or will be performed by applicant under the mark.

  (4) The fame or reputation of the named person or institution is of such a nature that a connection with such person or institution would be presumed when applicant's mark is used on its goods and/or services.

*Piano Factory Grp., Inc. v. Schiedmayer Celesta GmbH*, 11 F.4th 1363, 1377, 2021 USPQ2d 913, at *11 (Fed. Cir. 2021) (citing *In re Jackson*, 103 USPQ2d 1417, 1419 (TTAB 2012)); *U.S. Olympic Comm. v. Tempting Brands Neth. B.V.*, 2021 USPQ2d 164, at *17-18 (TTAB 2021) (citing *Pierce-Arrow Soc'y v. Spintek Filtration, Inc.*, 2019 USPQ2d 471774, at *14 (TTAB 2019)); TMEP §1203.03(b)(i); *see also Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imps. Co.*, 703 F.2d 1372,

1375-77, 217 USPQ 505, 508-10 (Fed. Cir. 1983) (providing foundational principles for four-factor test)).

As to the first factor, applicant's mark "GUCCI" is identical in terms of sound and appearance as the named used by another person, in this case, a juristic person - GUCCI AMERICA, INC. Under Section 45, a "person" may be a natural person (i.e., an individual) or a juristic person (i.e., a corporation, partnership, association, union, or any other organization capable of suing or being sued). 15 U.S.C. §1127; TMEP §1203.03(a)(i); *see Morehouse Mfg. Corp. v. J. Strickland & Co.*, 407 F.2d 881, 888, 160 USPQ 715, 720-21 (C.C.P.A. 1969); *In re Pedersen*, 109 USPQ2d 1185, 1191 (TTAB 2013). The mark sought to be registered is identical to the name and/or identity used by GUCCI AMERICA, INC.

As to the second factor, the attached Internet evidence from Raconteur.net, Bloomberg.com and ProjectPractical.com establishes a clear and direct association between applicant's goods and services under the applied-for mark and those goods and services provided by GUCCI AMERICA, INC. because GUCCI AMERICA, INC. - thorough its "GUCCI" marks - also produces, provides and/or manufactures virtual goods, such as applicant's. If applicant's goods and/or services are of a type that the named person or institution sells or uses, and the named party is sufficiently famous, then it may be inferred that purchasers of the goods and/or services would be misled into making a false connection of sponsorship, approval, support or the like with the named party. *See, e.g.*, *In re Nieves & Nieves LLC*, 113 USPQ2d 1639, 1647-48 (TTAB 2015) (holding ROYAL KATE used with applicant's consumer products, including fashion products, suggested a connection with Kate Middleton would be inferred because evidence showed that Kate Middleton, by virtue of being the wife of Prince William of the British Royal family, has become a celebrity and fashion trend-setter the media reports on, including the clothes she wears, what she does, and what she buys); *In re Cotter & Co.*, 228 USPQ 202, 204-05 (TTAB 1985) (holding WESTPOINT used with applicant's firearms suggested sponsorship, approval, support or the like from West Point because evidence showed that West Point is a well-known U.S. Military Academy). Here, because GUCCI AMERICA, INC. produces similar goods and provides similar services, and is well established in the fashion industry, applicant's goods and services would suggest a connection with the goods and services under the GUCCI AMERICA, INC. brands.

In terms of the third factor, nothing in the record establishes that GUCCI AMERICA, INC. has any connection to the applicant or applicant's goods and/or services. Applicant should note the request for information regarding the relationship between applicant and the institution named in the mark discussed below in this Office action.

Finally, GUCCI is an Italian fashion label founded in 1921 by Guccio Gucci, making it one of the oldest Italian fashion brands in operation today, with annual revenues of $13.66 billion dollars. *See the attached article from Highsnobiety.com.* In the North America region, GUCCI's sales grew 67% in 2021, compared to the previous years. *See the attached article from TheFashionLaw.com.* Thus, GUCCI AMERICA, INC. and its brand GUCCI's fame or reputation is of such nature that a connection with such institution would be presumed when applicant's mark is used on its goods and services, particularly given how applicant intentionally has created and presented a direct association - by intending to use an identical mark - with those manufactured or sold by GUCCI AMERICA, INC. Therefore, in light of the fame and popularity of GUCCI AMERICA, INC. and its products, purchasers may infer a connection and be misled into making a false connection between applicant's "GUCCI" goods and services and those manufactured, sold and/or provided by GUCCI AMERICA, INC.

Accordingly, the applied-for mark "GUCCI" is a close approximation to GUCCI AMERICA, INC.,

and the applied-for mark and the goods and services identified therein would be recognized as primarily referring to said company, despite the lack of established connection between the company and applicant's goods and/or services. Furthermore, GUCCI AMERICA, INC. is sufficiently famous that a connection with applicant's goods and services would be falsely presumed when the applied-for mark is used in connection with applicant's goods and services.

Accordingly, registration is refused pursuant to Section 2(a) of the Trademark Act.

Applicant should note the following additional ground for refusal.

**SECTION 2(e)(4) REFUSAL - PRIMARILY MERELY A SURNAME**

Registration is refused because the applied-for mark is primarily merely a surname. Trademark Act Section 2(e)(4), 15 U.S.C. §1052(e)(4); *see* TMEP §1211.

An applicant's mark is primarily merely a surname if the surname, when viewed in connection with the applicant's recited goods and/or services, "'is the primary significance of the mark as a whole to the purchasing public.'" *Earnhardt v. Kerry Earnhardt, Inc.*, 864 F.3d 1374, 1377, 123 USPQ2d 1411, 1413 (Fed. Cir. 2017) (quoting *In re Hutchinson Tech. Inc.*, 852 F.2d 552, 554, 7 USPQ2d 1490, 1492 (Fed. Cir. 1988)); TMEP §1211.01.

The following five inquiries are often used to determine the public's perception of a term's primary significance:

(1) Whether the surname is rare;

(2) Whether anyone connected with applicant uses the term as a surname;

(3) Whether the term has any recognized meaning other than as a surname;

(4) Whether the term has the structure and pronunciation of a surname; and

(5) Whether the term is sufficiently stylized to remove its primary significance from that of a surname.

*In re Colors in Optics, Ltd.*, 2020 USPQ2d 53784, at *1-2 (TTAB 2020) (citing *In re Benthin Mgmt. GmbH*, 37 USPQ2d 1332, 1333-34 (TTAB 1995) for the *Benthin* inquiries/factors); TMEP §1211.01; *see also In re Etablissements Darty et Fils*, 759 F.2d 15, 16-18, 225 USPQ 652, 653 (Fed. Cir. 1985).

These inquiries or factors are not exclusive, and any of these circumstances – singly or in combination – and any other relevant circumstances may be considered when making this determination. *In re tapio GmbH*, 2020 USPQ2d 11387, at *9 (TTAB 2020) (citing *In re Eximius Coffee, LLC*, 120 USPQ2d 1276, 1277-78 (TTAB 2016)); TMEP §1211.01. For example, when the applied-for mark is not stylized, it is unnecessary to consider the fifth inquiry. *In re Yeley*, 85 USPQ2d 1150, 1151 (TTAB 2007); TMEP §1211.01.

Please see the attached evidence from LEXISNEXIS®, establishing the surname significance of "GUCCI". This evidence shows the applied-for mark appearing 871 times as a surname in the LEXISNEXIS® surname database, which is a weekly updated directory of cell phone and other phone

numbers (such as voice over IP) from various data providers.

The wording "GUCCI" has no recognized meaning other than a surname. Evidence that a term has no recognized meaning or significance other than as a surname is relevant to determining whether the term would be perceived as primarily merely a surname. *See In re Weiss Watch Co.*, 123 USPQ2d 1200, 1203 (TTAB 2017); *In re Eximius Coffee, LLC*, 120 USPQ2d 1276, 1280 (TTAB 2016); TMEP §1211.02(b)(vi). In this case, the attached results from Merriam-Webster.com and Dictionary.com show that "GUCCI" has no English language meaning other than as a surname. Thus, this term appears to have no recognized meaning or significance other than as a surname.

Thus, taken together, the primary significance to the purchasing public of the applied-for mark as a whole is primarily merely a surname. Accordingly, registration is refused under Section 2(e)(4) of the Trademark Act.

Although applicant's mark has been refused registration, applicant may respond to the refusal(s) by submitting evidence and arguments in support of registration.

**Supplemental Register Advisory**

Although an amendment to the Supplemental Register would be an appropriate response to this refusal(s) in an application based on Trademark Act Section 1(a) or 44, such a response is not appropriate in the present case. The instant application was filed under Section 1(b) and is not eligible for registration on the Supplemental Register until an acceptable amendment to allege use meeting the requirements of 37 C.F.R. §2.76 has been timely filed. 37 C.F.R. §2.47(d); TMEP §§816.02, 1102.03.

If applicant files an acceptable allegation of use and also amends to the Supplemental Register, the application effective filing date will be the date applicant met the minimum filing requirements under 37 C.F.R. §2.76(c) for an amendment to allege use. TMEP §§816.02, 1102.03; *see* 37 C.F.R. §2.75(b). In addition, the undersigned trademark examining attorney will conduct a new search of the USPTO records for conflicting marks based on the later application filing date. TMEP §§206.01, 1102.03.

However, if applicant responds to the refusal(s), applicant must also respond to the requirement(s) set forth below.

**REQUEST FOR INFORMATION**

To permit proper examination of the application, applicant must submit additional information about its relationship with the person named in the mark. *See* 37 C.F.R. §2.61(b); TMEP §§814, 1203.03(b)(i). Due to the renown of this institution or person, and the fact that there is no information in the application record regarding a connection with applicant, applicant must specify whether the person or institution named in the mark has any connection with applicant's goods and/or services, and if so, must describe the nature and extent of that connection. *See* 37 C.F.R. §2.61(b); TMEP §1203.03(b)(i).

Applicant has a duty to respond directly and completely to this requirement for information. *See In re Ocean Tech., Inc.*, 2019 USPQ2d 450686, at *2 (TTAB 2019) (citing *In re AOP LLC*, 107 USPQ2d 1644, 1651 (TTAB 2013)); TMEP §814. Failure to comply with a requirement for information is an independent ground for refusing registration. *In re SICPA Holding SA*, 2021 USPQ2d 613, at *6 (TTAB 2021) (citing *In re Cheezwhse.com, Inc.*, 85 USPQ2d 1917, 1919 (TTAB 2008); *In re DTI P'ship LLP*, 67 USPQ2d 1699, 1701-02 (TTAB 2003); TMEP §814).

**AMENDMENT OF IDENTIFICATION OF GOODS AND SERVICES**

The wording "accessories and charms" in the identification of goods and services is indefinite and must be clarified because the nature of these goods is not clear. *See* 37 C.F.R. §2.32(a)(6); TMEP §1402.01. For example, an acceptable amendment would be "fashion accessories" and "charms for jewelry", if accurate.

Applicant may substitute the following wording, if accurate (changes in **bold**; comments in ***bold italics***):

> Class 9: Downloadable virtual goods, namely, computer programs featuring footwear, clothing, headwear, eyewear, handbags, laptop bags, backpacks, luggage, briefcases, art, toys, jewelry, watches, hair accessories, pet collars, **fashion** accessories and charms **for jewelry** for use in online virtual worlds

> Class 35: Retail store services featuring virtual goods, namely, footwear, clothing, headwear, eyewear, handbags, laptop bags, backpacks, luggage, briefcases, art, toys, jewelry, watches, hair accessories, pet collars, **fashion** accessories and charms **for jewelry** for use in online virtual worlds

> Class 41: Entertainment services, namely, providing on-line, non-downloadable virtual footwear, clothing, headwear, eyewear, handbags, laptop bags, backpacks, luggage, briefcases, art, toys, jewelry, watches, hair accessories, pet collars, **fashion** accessories and charms **for jewelry** for use in virtual environments created for entertainment purposes

Applicant may amend the identification to clarify or limit the goods and/or services, but not to broaden or expand the goods and/or services beyond those in the original application or as acceptably amended. *See* 37 C.F.R. §2.71(a); TMEP §1402.06. Generally, any deleted goods and/or services may not later be reinserted. *See* TMEP §1402.07(e). 8-

For assistance with identifying and classifying goods and services in trademark applications, please see the USPTO's online searchable *U.S. Acceptable Identification of Goods and Services Manual*. *See* TMEP §1402.04.

**RESPONSE GUIDELINES**

For this application to proceed, applicant must explicitly address each refusal and/or requirement in this Office action. For a refusal, applicant may provide written arguments and evidence against the refusal, and may have other response options if specified above. For a requirement, applicant should set forth the changes or statements. Please see "Responding to Office Actions" and the informational video "Response to Office Action" for more information and tips on responding.

Please call or email the assigned trademark examining attorney with questions about this Office action. Although an examining attorney cannot provide legal advice, the examining attorney can provide additional explanation about the refusal(s) and/or requirement(s) in this Office action. *See* TMEP §§705.02, 709.06.

The USPTO does not accept emails as responses to Office actions; however, emails can be used for

informal communications and are included in the application record. *See* 37 C.F.R. §§2.62(c), 2.191; TMEP §§304.01-.02, 709.04-.05.

**How to respond.  Click to file a response to this nonfinal Office action.**

/María del C. Sánchez Rivera/
María del C. Sánchez Rivera
Trademark Examining Attorney
Law Office 112
(571) 272-2323
maria.sanchezrivera@uspto.gov

## RESPONSE GUIDANCE

- **Missing the response deadline to this letter will cause the application to abandon.** The response must be received by the USPTO before midnight **Eastern Time** of the last day of the response period. TEAS maintenance or unforeseen circumstances could affect an applicant's ability to timely respond.

- **Responses signed by an unauthorized party** are not accepted and can **cause the application to abandon**.  If applicant does not have an attorney, the response must be signed by the individual applicant, all joint applicants, or someone with legal authority to bind a juristic applicant.  If applicant has an attorney, the response must be signed by the attorney.

- If needed, **find contact information for the supervisor** of the office or unit listed in the signature block.

15