**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HERMÈS INTERNATIONAL and
HERMÈS OF PARIS, INC.,

                    Plaintiffs,

          -against-

MASON ROTHSCHILD,

                    Defendant.

CIVIL ACTION NO.

22-CV-00384 (JSR)

**REDACTED PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AND STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION**

Plaintiffs Hermès International and Hermès of Paris, Inc. ("Hermès") respectfully submit the following Response to the Rule 56.1 Statement of Undisputed Material Facts in Support of Defendant Mason Rothschild's ("Rothschild") Motion for Summary Judgment (ECF No. 63) and Statement of Additional Material Facts in Opposition to Rothschild's Motion for Summary Judgment. Hermès relies on the October 7, 2022 Declarations of Nicolas Martin (ECF No. 70) ("Martin Decl."), Dr. Scott Duke Kominers, Ph.D. (ECF No. 71) ("Kominers Decl."), Dr. Kevin Mentzer ("Mentzer Decl."), Dr. Bruce Isaacson, DBA, MBA (ECF No. 67) ("Isaacson Decl."), and Megan A. Corrigan (ECF No. 72) ("Corrigan Decl."), the October 21, 2022 Supplemental Declaration of Megan A. Corrigan ("Corrigan Suppl. Decl."), as well as the exhibits attached thereto.

**I.        RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS**

          1.        Mr. Rothschild, born Sonny Estival, is an artist as well as an entrepreneur and business owner. Declaration of Mason Rothschild dated October 6, 2022 ("Rothschild Decl.") ¶¶

1, 3-5; Declaration of Rhett O. Millsaps II dated October 7, 2022 ("Millsaps Decl.") ¶ 2, Ex. 1
(Gopnik Rep. ¶¶ 10, 15); ¶ 8, Ex. 7 (T. Sacks Dep. (Sept. 15, 2022) 32:2-11); ¶ 7, Ex. 6 (D.
Cohen Dep. (Sept. 22, 2022) 61:25-62:10); ¶ 6, Ex. 5 (K. Loo Dep. (Sept. 7, 2022) 155:5-156:1);
Amended Complaint ("Compl.") ¶¶ 1, 8-9, 25.

**Hermès's Response:** Hermès does not dispute that Rothschild, born Sonny Estival, is an
entrepreneur and business owner. Hermès disputes as inaccurate the statement that Rothschild is
an artist. *See* Corrigan Decl., Ex. 21 at 26:15-26:23.

2.      Dr. Blake Gopnik, a noted art historian, critic, and author of *Warhol*—the 976-
page, definitive biography of Andy Warhol published in 2020—has recognized Mr. Rothschild
as an artistic heir to Marcel Duchamp and Andy Warhol based on Mr. Rothschild's *MetaBirkins*
art project. Millsaps Decl. ¶ 2, Ex. 1 (B. Gopnik Report (Sept. 1, 2022) ¶¶ 10, 15).

**Hermès's Response:** Hermès does not dispute that Dr. Blake Gopnik is an art historian,
critic, and author of *Warhol*—the 976-page biography of Andy Warhol published in 2020.
Hermès disputes as misleading and inaccurate that METABIRKINS NFTs are an "art project"
and that "Rothschild [is] an artistic heir to Marcel Duchamp and Andy Warhol" because the
METABIRKINS NFTs were an investment and commodity, which Rothschild even hoped it
████████████████████ *See* Corrigan Decl., Ex. 5 (ECF No. 72-14); Ex. 7 (ECF No. 72-
16); Ex. 21 at 391:24-393:23 (ECF No. 73-5); Ex. 23 at Rothschild008391 (ECF No. 73-7); Ex.
29 at Rothschild014949 (ECF No. 73-9); Ex. 47 at Rothschild008468 (ECF No. 73-20); Ex. 87 at
Rothschild014669 (ECF No. 73-45); Ex. 89 at Rothschild008648, Rothschild008658,
Rothschild008665 (ECF No. 73-47).

3.      In one early artistic project in 2015, Mr. Rothschild created and sold a collection
of t-shirts titled *The Art School Dropout* as a commentary on the "ugly" designs on merchandise

sold by venerated art schools at the time. Rothschild Decl. ¶ 6; Millsaps Decl. ¶ 3, Ex. 2 (M. Rothschild Dep. (Aug. 4, 2022) 48:23-53:4, Ex. 6); ¶ 4, Ex. 3 (B. Gopnik Dep. (Sept. 23, 2022) 160:21-167:7).

**Hermès's Response:** Hermès does not dispute that Rothschild created and sold a collection of t-shirts titled *The Art School Dropout* in 2015. Hermès disputes as misleading and inaccurate that the collection was an "artistic project" and "a commentary on the ugly designs of merchandise sold by venerated art schools at the time" as it was merely printing art school names on t-shirts in what appeared to be authorized, branded merchandise, ██████████████████ ██████████████████ *See* Corrigan Decl., Ex. 117 (ECF No. 72-135); Corrigan Suppl. Decl., Ex. 130.

4.     One of those schools liked Rothschild's work so much that it hired him to design merchandise for the school. Rothschild Decl. ¶ 6.

**Hermès's Response:** Hermès is not in possession of information to admit or dispute this statement. Additionally, this fact is immaterial because it does not affect the outcome of the suit under the governing law. *Reyes v. Krasdale Foods, Inc.*, 945 F. Supp. 2d 486, 490 (S.D.N.Y. 2013) ("Factual disputes that are irrelevant or unnecessary are not material and thus cannot preclude summary judgment.") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) Further Hermès is aware that ██████████████████████ ██████████████████ which Rothschild failed to produce in discovery. *See* Corrigan Suppl. Decl., Ex. 130.

5.     For Mr. Rothschild's first artistic project involving non-fungible tokens (NFTs), in early 2021 Mr. Rothschild produced a digital image of a chair linked to an NFT, which sold for the equivalent (at the time) of approximately $4,000. Rothschild Decl. ¶ 7; Millsaps Decl. ¶ 3

Ex. 2 (M. Rothschild Dep. (Aug. 4, 2022) 118:19-119:23).

**Hermès's Response:** Hermès does not dispute that Rothschild sold an NFT linked to a digital image of a chair. Hermès disputes as misleading and inaccurate that Rothschild created the image. ██████████████████████████ (Corrigan Suppl. Decl., Ex 131.)

6. NFTs are units of data stored on a blockchain that are created to transfer and authenticate ownership of either physical things or digital media. Compl. ¶ 4.

**Hermès's Response:** Hermès does not dispute that NFTs are units of data stored on a blockchain. Hermès disputes as misleading and inaccurate the statement that NFTs are created *only* to transfer and authenticate ownership of physical things or digital media. NFTs may or may not be associated with or represent ownership of a digital or physical asset. *See* Kominers Decl., Ex. 1 at 5 (ECF No. 71-1); Mentzer Decl., Ex. 1 at 7-8 (ECF No. 68-1).

7. When NFTs are created, or "minted," they are listed on an NFT marketplace where NFTs can be sold or traded in accordance with "smart contracts" that govern the transfers. Compl. ¶¶ 61, 63.

**Hermès's Response:** Hermès does not dispute this fact.

8. When an NFT is linked to digital media, the NFT and corresponding smart contract are stored on the blockchain and are linked to digital media files (*e.g.*, JPEG images, .mp4 video files, or .mp3 music files) to create a uniquely identifiable digital media file. Compl. ¶ 60.

**Hermès's Response:** Hermès does not dispute this fact; however, it is incomplete. While the NFT and corresponding smart contract are uniquely identifiable, the corresponding media file can be changed or altered. *See* Corrigan Decl., Ex. 21 at 227:16-228:10, 249:17-250:4 (ECF No. 73-5); Kominers Decl., Ex. 1 at 25 (ECF No. 71-1); Mentzer Decl., Ex. 1 at 11, 15-19, 21 n. 9,

24, 29 (ECF No. 68-1).

9.      NFTs and smart contracts are stored on the blockchain (so that they can be traced), but the digital media files to which the NFTs point are stored separately, usually on either a single central server or a decentralized network. Compl. ¶ 62.

**Hermès's Response:** Hermès does not dispute that NFTs and smart contracts are stored on the blockchain or that digital media files to which the NFTs point are stored separately. Hermès disputes as unsupported by the record the statement that the NFTs and smart contracts are stored on the blockchain so that they can be traced. *See* Am. Compl. ¶ 62 (ECF No. 24) ("Compl.") ("While the smart contracts and the NFTs associated with them are stored on the blockchain, the digital media files to which the NFTs point are stored separately. The digital media files are generally stored either in a central location (e.g., a single server) or on a decentralized network known as the Interplanetary File System (the 'IPFS'). The IPFS stores pieces of the digital media files across multiple locations on its decentralized network making it nearly impossible to track down each piece and destroy the original digital media files.")

10.      In or around May 2021, Mr. Rothschild produced a short digital animation titled *Baby Birkin*, which was linked to an NFT and depicted a 40-week-old fetus gestating inside of a transparent Birkin handbag. Compl. ¶¶ 70-71; Rothschild Decl. ¶ 8.

**Hermès's Response:** Hermès does not dispute that the Baby Birkin image was an animation or video of a 40-week-old fetus inside a transparent BIRKIN handbag linked to an NFT. Hermès disputes as misleading and inaccurate that Mr. Rothschild produced the animation. ██████████████████████████████████████████████. *See* Corrigan Decl., Ex. 21 at  417:7-24, 422:13-24 (ECF No. 73-5).

11.      Mr. Rothschild sold *Baby Birkin* for the equivalent (at the time) of $23,500; *Baby*

*Birkin* later resold for the equivalent (at the time) of $47,000. Compl. ¶ 72; Rothschild Decl. ¶ 8.

**Hermès's Response:** Hermès does not dispute that the Baby Birkin NFT originally sold for the equivalent (at the time) of $23,500, and the resale for the equivalent (at the time) of $47,000. ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████ Corrigan Supp. Decl., Ex. 133 at Rothschild008969. Hermès disputes this statement as misleading to the extent it is unclear that the sale was of the NFT, not the animation itself. *See* Mentzer Decl., Ex. 1 at 28 (ECF No. 68-1).

12.     The response to *Baby Birkin* inspired Mr. Rothschild's follow-up art project, which he came to title *MetaBirkins*. Rothschild Decl. ¶ 9.

**Hermès's Response:** Hermès disputes as misleading that "the response to *Baby Birkin* inspired" the METABIRKINS and the record does not support this assertion. Hermès avers Rothschild began working on the METABIRKINS NFT project shortly after the commercial success of the Baby Birkin NFT, which as Rothschild does not dispute, sold for $23,500. (Corrigan Decl., Ex. 6 (ECF No. 72-15); Mentzer Decl., Ex. 1 at 28 (ECF No. 71-1).) Hermès further disputes as misleading and inaccurate the characterization of the METABIRKINS as an "art project." *See* Corrigan Decl., Ex. 5 (ECF No. 72-14); Ex. 7 (ECF No. 72-16); Ex. 21 at 391:24-393:23 (ECF No. 73-5); Ex. 23 at Rothschild008391 (ECF No. 73-7); Ex. 29 at Rothschild014949 (ECF No. 73-9); Ex. 47 at Rothschild008468 (ECF No. 73-20); Ex. 87 at Rothschild014669 (ECF No. 73-45); Ex. 89 at Rothschild008648, Rothschild008658, Rothschild008665 (ECF No. 73-47).

13.     Hermès is a luxury fashion business known for, among other products, its Birkin handbag, which sells for anywhere from thousands of dollars to over one hundred thousand

dollars and has become a cultural symbol of rarefied wealth through prolific references in media and pop culture. Compl. ¶¶ 27, 29, 33, 37, 40-45.

**Hermès's Response:** Hermès does not dispute this fact.

14.     In or around December 2021, Mr. Rothschild produced and sold a collection of 100 digital images titled *MetaBirkins* and linked to NFTs; they depicted imaginary Birkin handbags entirely covered in cartoonish fur, with some of the images also incorporating other artistic elements, such as the *Mona Lisa* (*La Joconde*) and van Gogh's *The Starry Night*. Compl. ¶¶ 37, 76, 79, Fig. 5 and Ex. Z; Rothschild Decl. ¶ 9; Millsaps Decl. at ¶ 5, Ex. 4 (N. Martin Dep. (Aug. 30, 2022) 48:3-11; 60:5-14, 51:4-52:13, 52:14-53:18).

**Hermès's Response:** Hermès disputes this statement as misleading and inaccurate. Rothschild sold 100 NFTs titled METABIRKINS and the digital images associated with the METABIRKINS NFTs were numerically titled. (Mentzer Decl., Ex. 1 at 17-19 (ECF No. 71-1).) During the time period when the METABIRKINS NFTs were initially minted and sold, the associated digital files depicted a shrouded object, but on December 3, 2021 UTC, after the NFTs were sold, Rothschild caused the shrouded image files to be replaced with new image files which depicted handbags copying the BIRKIN Trade Dress. (Corrigan Decl., Ex. 21 at 227:16-228:10, 249:17-250:4 (ECF No. 73-5); Ex. 24 (ECF No. 73-8); Kominers Decl., Ex. 1 at 25 (ECF No. 71-1); Mentzer Decl., Ex. 1 at 15-19 (ECF No. 71-1).) ███████████████████████ ███████████████████████████████████████. (Corrigan Decl., Ex. 21 at 227:16-228:10, 235:16-236:6, (ECF No. 73-5); Ex. 47 (ECF No. 73-20); Ex. 48 (ECF No. 73-21); Ex. 121 (ECF No. 73-68).) Hermès admits the images did appear to have fur but takes no position on the characterization as the fur as "cartoonish." Hermès admits the images associated with the METABIRKINS NFTs may have other elements, but takes no position on the

characterization as "artistic elements." (Corrigan Supp. Decl., Ex. 144 at 50:7-13; 50:22-51:11; 83:19-24 (Mr. Martin testified that "it's the Birkin shape with colors that we have done, or may have done, with the detail that we have used or may have used[;]" "it's our Birkin shape in colors that we have made on or we could make in detail that we have used or could use[;]" and "[w]hat I see here, for me is an Hermès . . . Birkin Handbag, in colors that could be the colors we used, or have used and with material that we also have used.".)

15.     The *MetaBirkins* images linked to the corresponding NFTs are two-dimensional, static digital images. Rothschild Decl. ¶ 9; Millsaps Decl. at ¶ 5, Ex. 4 (N. Martin Dep. (Aug. 30, 2022) 48:3-11; 64:20-65:10), ¶ 12, Ex. 11 (Plaintiffs Hermès International and Hermès of Paris, Inc.'s Responses to Defendant Rothschild's First Set of Requests for Admission, Responses to Request for Admission No. 2); Compl. ¶¶ 76, 79, Fig. 5 and Ex. Z.

**Hermès's Response:** Hermès does not dispute that the images currently associated with the METABIRKINS NFTs are two-dimensional. Hermès disputes as inaccurate and vague that the images are "static" because the images can be changed, at any time, and in fact, have already been changed at least once. (Corrigan Decl., Ex. 21 at 227:16-228:10, 249:17-250:4 (ECF No. 73-5); Ex. 24 (ECF No. 73-8); Kominers Decl., Ex. 1 at 25 (ECF No. 71-1); Mentzer Decl., Ex. 1 at 15-19 (ECF No. 71-1).) ██████████████████████████████ ██████████████████████████████ *See* Corrigan Decl., Ex. 21 at 167:21-169:5 (ECF No. 73-5); Ex. 55 at Rothschild008316-8317 (ECF No. 73-28); Mentzer Decl., Ex. 1 at 11, 21 n. 9, 24, 28-33 (ECF No. 68-1). ██████████████████ ██████████████████ (Corrigan Decl., Ex. 52 at SACKS_000027 (ECF No. 73-25).)

16.     The *MetaBirkins* digital images are a form of creative expression; they are renderings of imaginary Birkin bags entirely covered in "goofy, garish fake fur" that "flags the

absurdist, parodic intent of [the] project" and are both a fanciful tribute to the Birkin bag, which has become a cultural object signifying extreme wealth, and a reference to the fashion industry's fur-free initiative. Millsaps Decl. ¶ 2, Ex. 1 (B. Gopnik Report (Sept. 1, 2022) ¶ 38); ¶ 3, Ex. 2 (M. Rothschild Dep. (Aug. 4, 2022) 189:21-190:5); Rothschild Decl. ¶ 10.

**Hermès's Response:** Hermès disputes this statement as misleading and inaccurate, except for the fact that the images associated with the METABIRKINS NFTs depict BIRKIN handbags. This statement is neither "undisputed" nor is it a "fact," but a self-serving opinion that is not supported by the record. Specifically, Hermès disputes that METABIRKINS are digital images; METABIRKINS are NFTs that have associated images. (Mentzer Decl., Ex. 1 at 16-17, 29 (ECF No. 68-1).) Rothschild did not use fur to make a statement or comment; rather, he ███████████████████████████████████████████████████████████ *See* Corrigan Decl., Ex. 48 at Rothschild014594 (ECF No. 73-21).

17.    The *MetaBirkins* project as a whole, including its promotion and sales in connection with NFTs, is a "Business Art" project in the vein of Warhol, Duchamp, and other such artists who have deliberately engaged with the intersection of art and commerce; the project was at least in part an artistic experiment to explore how the culture would respond to simple images of imaginary Birkin bags and where the value lies in the Birkin bag (*i.e.*, in the handcrafted physical object or in the image it projects?). Millsaps Decl. ¶ 2, Ex. 1 (B. Gopnik Report (Sept. 1, 2022) ¶¶ 18-35, 37-40); Rothschild Decl. ¶ 11.

**Hermès's Response:** Hermès disputes this statement as inaccurate and misleading. Rothschild was not engaging with an "artistic experiment" but rather sought to create and sell a "digital commodity" (Corrigan Decl., Ex. 7 (ECF 72-16)) and seeking "global publicity" (Corrigan Decl., Ex. 5 (ECF No. 72-14)). ██████████████████████████████████

████████████████████████████████████████

(Corrigan Decl., Ex. 23, Rothschild008391-92 (ECF No. 73-7)) ████████████████

(Corrigan Decl., Ex. 87 at Rothschild014669 (ECF No. 73-45)). Rothschild sold

METABIRKINS NFTs, not the images, and through this sale created a brand and promoted other

NFT projects, ██████████████████████████████████████

████████████████████████████████████ *See* Corrigan Decl., Ex. 89 at

Rothschild008649 (ECF No. 73-47); Mentzer Decl., Ex. 1 at 9 (ECF No. 68-1).

18.     At a most basic level, the "MetaBirkins" title is artistically relevant to the

*MetaBirkins* project and images because it indicates the subject of the artwork. Millsaps Decl. ¶

2, Ex. 1 (B. Gopnik Report (Sept. 1, 2022) ¶ 36), ¶ 5, Ex. 4 (N. Martin Dep. (Aug. 30, 2022)

85:23-86:6 ("*Q: Do you consider the word MetaBirkins to be in any way descriptive of the*

*images that you see here? A: There is some link between the title [MetaBirkins] and what I see*"),

¶ 12, Ex. 11 (Plaintiffs Hermès International and Hermès of Paris, Inc.'s Responses to Defendant

Rothschild's First Set of Requests for Admission, Responses to Request for Admission No. 3).

**Hermès's Response:** Hermès disputes this statement as inaccurate and misleading and

not supported by the record. METABIRKINS is not "artistically relevant" because Rothschild

intended to commercially exploit the BIRKIN Mark's popularity and goodwill. (Corrigan Decl.,

Ex. 5 (ECF No. 72-14) ("I knew I had to try and recreate the same exclusivity and demand of

Herm[è]s'[s] most famous handbag."); Ex. 6 (ECF No. 72-15) ("Metabirkins are a tribute to

Herm[è]s'[s] most famous handbag, the Birkin, one of the most exclusive, well-made luxury

accessories. Its mysterious waitlist, intimidating price tags, and extreme scarcity have made it a

highly covetable 'holy grail' handbag that doubles as an investment or store of value."); Ex. 7

(ECF No. 72-16) ("I wanted to see as an experiment to see if i could create that same kind of

illusion that it has in real life as a digital commodity. . . selling it at that, keeping that scarcity of 100 bags total . . .").) The term METABIRKINS is the domain name and fixed term associated with the NFT, not the image and not the "title." (Corrigan Decl., Ex. 18 at 4 (ECF No. 73-02); Ex. 21 at 32:14-19, 258:21-261:15, 378:18-379:4 (ECF No. 73-5); Mentzer Decl., Ex. 1 at 10, 29 (ECF No. 68-1).) The images of the digital handbags are titled numerically. (Mentzer Decl., Ex. 1 at 17-19 (ECF No. 68-1).) Rothschild chose to include the METABIRKINS name in the smart contract to associate it with the NFTs, not the images. (Mentzer Decl., Ex. 1 at 10-11, 16-19 (ECF No. 68-1).) The METABIRKINS name was created by a different person under a contest. (Corrigan Decl., Ex. 46 (ECF No. 72-60).) Hermès also disputes that Mr. Martin's statement indicates artistic relevance because Mr. Martin was only asked about whether the name METABIRKINS was descriptive, not if it was artistically relevant. *See* Millsaps Decl., Ex. 4 at 85:23-86:6 (ECF No. 64-4).

19.     The "MetaBirkins" title additionally is artistically relevant to the project at a deeper level; it "adds to the Birkins that it describes as [Rothschild's] subject" and "tells an informed viewer that the interest we are supposed to take in the Birkin that Rothschild has labelled 'meta' comes from a larger comment it makes, rather than from its mere virtues as a depiction of a fancy purse." Millsaps Decl. ¶ 2, Ex. 1 (B. Gopnik Report (Sept. 1, 2022) ¶¶ 37-40); Rothschild Decl. ¶ 12.

**Hermès's Response:** Hermès disputes this statement as misleading and inaccurate, this statement is neither "undisputed" nor is it a "fact," rather, it is a self-serving opinion and characterization that is not supported by the record. Hermès disputes the characterization that METABIRKINS title is artistically relevant. METABIRKINS is not "artistically relevant" because Rothschild intended to exploit the BIRKIN Mark's popularity and goodwill. (Corrigan

Decl., Ex. 5 (ECF No. 72-14) ("I knew I had to try and recreate the same exclusivity and demand of Herm[è]s'[s] most famous handbag."); Ex. 6 (ECF No. 72-15) ("Metabirkins are a tribute to Herm[è]s'[s] most famous handbag, the Birkin, one of the most exclusive, well-made luxury accessories. Its mysterious waitlist, intimidating price tags, and extreme scarcity have made it a highly covetable 'holy grail' handbag that doubles as an investment or store of value."); Ex. 7 (ECF No. 72-16) ("I wanted to see as an experiment to see if i could create that same kind of illusion that it has in real life as a digital commodity. . . selling it at that, keeping that scarcity of 100 bags total . . .").) Hermès, again, points to the fact that the term METABIRKINS is the domain name and the fixed term associated with the NFT, not the name or title of the image and not the "title" overall. (Corrigan Decl., Ex. 18 at 4 (ECF No. 73-02); Ex. 21 at 32:14-19, 258:21-261:15, 378:18-379:4 (ECF No. 73-5); Mentzer Decl., Ex. 1 at 10, 29 (ECF No. 68-1).) The images of the digital handbags are titled numerically. (Mentzer Decl., Ex. 1 at 17-19 (ECF No. 68-1).) Rothschild chose to include the METABIRKINS name in the smart contract to associate it with the NFTs, not the images. (Mentzer Decl., Ex. 1 at 10-11, 16-19 (ECF No. 68-1).) The METABIRKINS name was created by a different person under a contest. (Corrigan Decl., Ex. 46 (ECF No. 72-60).)

20.     When asked if Hermès had evidence of any attempts by Mr. Rothschild to explicitly mislead others to believe that *MetaBirkins* is associated with Hermès, Hermès' representative could point only to the use of the "Hermès" and "Birkin" marks and the claimed Birkin trade dress, and not to any *explicit* claim that Hermès was the source of the *MetaBirkins* artworks and associated NFTs, or that Hermès had sponsored or endorsed the *MetaBirkins* artworks and associated NFTs. Millsaps Decl. ¶ 5 Ex. 4 (N. Martin Dep. (Aug. 30, 2022) 114:9-115:16, 118:13-18).

**Hermès's Response:** Hermès disputes this statement as inaccurate and misleading. This statement is a mischaracterization of Nicolas Martin's testimony and is not supported by the record. During the refenced line of questioning, Rothschild did not confront Mr. Martin with any of the evidence cited in Hermès Complaint or produced in discovery, nor ask any specific questions as to Rothschild's actions and Mr. Martin clearly explained that he could not recall all examples off the top of his mind, and provided the examples of Rothschild's use of the word BIRKIN in early communications, the BIRKIN Trade Dress. (Millsaps Decl., Ex. 4 at 114:16-115:7.) Rothschild's business associates attested to explicitly misleading others to believe that METABIRKINS NFTs are associated with Hermès: ██████████████████████████

███████████████████████████████████████████

████████████████████████████ (Corrigan Decl., Ex. 45 at 43:14-19 (ECF No. 73-19); Ex. 82 at Rothschild015178 (ECF No. 73-38).) █████████████████████

███████████████████████████████████████████

(Corrigan Decl., Ex. 68 at 149:7-23 (ECF No. 73-32).) █████████████████

██████████████████████ (Corrigan Decl., Ex. 20 at Rothschild008345 (ECF No. 73-4).) ███████████████████████████ (Corrigan Decl., Ex. 22 at Rothschild008383, Rothschild008386 (ECF No. 73-6).)

21.     Mr. Rothschild had no intention or desire for Hermès to be credited for his *Baby Birkin* or *MetaBirkins* artworks. Rothschild Decl. ¶ 13.

**Hermès's Response:** Hermès disputes this statement as inaccurate, misleading, and incomplete. The METABIRKINS NFTs were an investment and commodity, Rothschild even said it ████████████████████ (Corrigan Decl., Ex. 5 (ECF No. 72-14); Ex. 7 (ECF No. 72-16); Ex. 21 at 391:24-393:23 (ECF No. 73-5); Ex. 23 at Rothschild008391 (ECF No. 73-7);

Ex. 29 at Rothschild014949 (ECF No. 73-9); Ex. 47 at Rothschild008468 (ECF No. 73-20); Ex. 87 at Rothschild014669 (ECF No. 73-45); Ex. 89 at Rothschild008648, Rothschild008658, Rothschild008665 (ECF No. 73-47).) Rothschild's announcement of the METABIRKINS NFTs launch was designed to mislead. (Corrigan Decl., Ex. 5 (ECF No. 72-14) ("I knew I had to try and recreate the same exclusivity and demand of Hermes' most famous handbag. My goal is for MetaBirkins double as an investment for holders like the real-world 'holy grail' handbag."; Corrigan Decl., Ex. 46 (ECF No. 72-60) (Rothschild made announcements on social media by referring to the NFTs as "one of a kind, Birkins.").) Rothschild's acts were designed to mislead and perpetuate confusion, for example ███████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████ (Corrigan Decl.,

Ex. 68 at 149:7-23 (ECF No. 73-32).) ███████████████████████████

█████████████████████████ (Corrigan Decl., Ex. 55 at Rothschild008307 (ECF No. 73-28).)

█████████████████████████████████████████████████████

██████████████████████████ (Corrigan Decl., Ex. 20 at

Rothschild008345 (ECF No. 73-4)), ██████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████ (Corrigan Decl., Ex. 110 at KLOO_0000039-42, ECF No. 72-128.). Hermès is not in possession of information to admit or dispute the remainder of this statement.

22.     In promoting *MetaBirkins*, Mr. Rothschild never made any statements attributing *MetaBirkins* to Hermès or claiming any affiliation with Hermès. *Id.*

**Hermès's Response:** Hermès disputes this statement as inaccurate, misleading, and incomplete. ███████████████████████████████

████████████████████████████████████████████

███████████████████████████████████ (Corrigan Decl., Ex. 68 at 149:7-23 (ECF No. 73-32).) ██████████████████████████████████

██████████████ (Corrigan Decl., Ex. 55 at Rothschild008307 (ECF No. 73-28).)

██████████████████████████████████████████

███████████████████████████████████ (Corrigan Decl., Ex. 20 at Rothschild008345 (ECF No. 73-4).) ████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████ (Corrigan Decl., Ex. 22 at Rothschild008383, Rothschild008386 (ECF No. 73-16).)

██████████████████████████████████████████

██████████████████████████████████████████

███████ (Corrigan Decl., Ex. 36 at 124:17-125:10 (ECF No. 73-16); Ex. 52 at SACKS_000047 (ECF No. 73-25).) Rothschild further advertised and promoted the METABIRKINS NFTs as a "tribute to Herm[è]s' most famous handbag, the Birkin." (Corrigan Decl., Ex. 6 at HERMES_0037671 (ECF No. 72-15).) The BIRKIN Mark is inextricably intertwined with Hermès, and by adopting the mark, he was claiming an affiliation with Hermès.

23.     When a few press outlets mistakenly attributed *MetaBirkins* to Hermès shortly after the launch of the project, Mr. Rothschild or his representative reached out promptly to point out that Hermès was not affiliated with *MetaBirkins* and to ask for a correction. *Id*.; Millsaps Decl. ¶ 13, Ex. 12 (emails from Rothschild and his representative to journalists).

**Hermès's Response:** Hermès disputes this statement as inaccurate and incomplete.

███████████████████████████████████████████████, indicating common

confusion. (Corrigan Decl., Ex 68 at 61:3-18; 110:14-111:16, 143:15-144:17 (ECF No. 73-32)).

Despite this, Rothschild and his representative failed to ask for corrections in some publications

that were confused about Hermès's affiliation with the METABIRKINS NFTs, including the

*New York Post* and *Challenges*. (Corrigan Decl., Ex. 75 at HERMES_0036022 (ECF No. 72-93);

Ex. 76. (ECF No. 72-94).) ██████████████████████████████████████████

██████ (Corrigan Decl., Ex. 110 at KLOO_0000039-42 (ECF No. 72-128).) Additionally, neither

Rothschild nor his representatives ever corrected the multitude of comments on the various

social media platforms where customers and social media users explicitly confused and

attributed the METABIRKINS NFTs to Hermès. *See* Corrigan Decl., Ex. 37 at

HERMES_0008362, HERMES_0008376, HERMES_0008439, HERMES_0008445,

HERMES_0008634, HERMES_0008638, HERMES_0008684, HERMES_0008689,

HERMES_0008696, HERMES_0008706, HERMES_0008752, HERMES_0008757,

HERMES_0008802, HERMES_0008809, HERMES_0008824-8828, HERMES_0008835,

HERMES_0008841-8842 (ECF No. 72-46); Ex. 38 at HERMES_0009435-36,

HERMES_0009520, HERMES_0009533, HERMES_0009536, HERMES_0009540-9541,

HERMES_0009544-9545 HERMES_0009549, HERMES_0009522, HERMES_0009555,

HERMES_0009598, HERMES_0009605, HERMES_0009608 (ECF No. 72-47).

    24.    Following publication of those mistaken articles and receipt of a cease-and-desist

letter from Hermès, Mr. Rothschild also added a disclaimer on the www.metabirkins.com

website to make clear that his *MetaBirkins* project was in no way affiliated with Hermès.

Rothschild Decl. ¶ 14.

**Hermès's Response:** Hermès disputes this statement as incomplete. While Hermès admits that a disclaimer was added to the METABIRKINS.com website after receipt of the cease-and-desist letter, Rothschild failed to include that the disclaimer was added after the initial sales of the METABIRKINS NFTs. (Corrigan Decl., Ex. 6 (ECF No. 72-15).)  Additionally, Rothschild failed to add similar (or any such) disclaimers on either his social media sites or any of the NFT marketplaces where he had METABIRKINS NFTs storefronts. *See* Corrigan Decl., Ex. 25 (ECF No. 72-34); Ex. 26 (ECF No. 72-35); Ex. 27 (ECF No. 72-36); Ex. 28 (ECF No. 72-37); Ex. 37 (ECF No. 72-46); Ex. 38 (ECF No. 72-46).

25.    The disclaimer on the *MetaBirkins* website reads: "We are not affiliated, associated, authorized, endorsed by, or in any way officially connected with the HERMES, or any of its subsidiaries or its affiliates. The official HERMES website can be found at https://www.hermes.com/." Compl. ¶ 104, Fig. 13 and Ex. AH.

**Hermès's Response:** While Hermès does not dispute the existence or content of the disclaimer on the METABIRKINS website, Hermès avers that said disclaimer on the METABIRKINS website did not appear until on or about December 20, 2021, after the initial minting and sale of the NFTs and following Rothschild's receipt of Hermès's cease-and-desist letter. *See* Corrigan Decl., Ex. 6 (ECF No. 72-15); Martin Decl. at ¶ 17, Ex. 4.

26.    Hermès's proffered expert, Dr. Bruce Isaacson, conducted a survey of handbag purchasers (the "Handbag Survey") that found a net confusion level of 3.6% among purchasers or potential purchasers of luxury handbags. Millsaps Decl. ¶ 11, Ex. 10 (B. Isaacson Dep. (Sept. 20, 2022) 126:17-127:9), ¶ 10, Ex. 9 (Neal Rep. ¶ 3.5).

**Hermès's Response:** Hermès does not dispute that the Handbag Survey was conducted of handbag purchasers and that the net confusion level was 3.6% but this statement is misleading

as Dr. Isaacson did not offer any opinion as to that survey because his "opinions in this matter are based on the survey of NFT purchasers rather than the survey of handbag purchasers because Hermès has made allegations in this matter that are consistent with forward confusion." *See* Corrigan Suppl. Decl., Ex. 132 at 126:23-127:9; Isaacson Decl., Ex. 1 ¶¶ 83, 91 (ECF 67-01).

27.     Dr. Isaacson chose or was directed not to rely on the Handbag Survey for his opinions and conclusions in this case after the data for the survey had been collected. Millsaps Decl. ¶ 11, Ex. 10 (B. Isaacson Dep. (Sept. 20, 2022) 141:16-142:12).

**Hermès's Response:** Hermès disputes this statement as misleading. Dr. Isaacson's basis for relying on the NFT Survey (defined herein) as opposed to the Handbag Survey was because his "opinions in this matter are based on the survey of NFT purchasers rather than the survey of handbag purchasers because Hermès has made allegations in this matter that are consistent with forward confusion." *See* Isaacson Decl., Ex. 1 ¶ 91 (ECF 67-01).

28.     The Handbag Survey results showed an absence of confusion among luxury handbag purchasers. Millsaps Decl. ¶ 11, Ex. 10 (B. Isaacson Dep. (Sept. 20, 2022) 127:10-129:21), ¶ 10, Ex. 9 (Neal Rep. ¶ 1.10-1.11, 3.5).

**Hermès's Response:** Hermès disputes as misleading, inaccurate, and incomplete the statement that the Handbag Survey showed an absence of confusion among luxury handbag purchasers. The Handbag Survey's measures were 18.8% for the test webpage, and 15.2% for that control. (Isaacson Decl., Ex. 1, Report Ex. 11 at 24 (ECF No. 67-1).) Dr. Isaacson explained, in his deposition, that "[a] net confusion level of 3.6 percent would normally be associated with the absence of confusion, but it's also important to remember that the survey didn't show no confusion. What the survey showed is control cell confusion that was almost equal to the test confusion." (Corrigan Suppl. Decl., Ex. 132 at 127:13-19.) Dr. Isaacson went on to further state

that he "disagreed with your statement earlier that it doesn't show any confusion. It does show confusion. It just shows almost equal confusion on the control cell as on the test cell." (Corrigan Suppl. Decl., Ex. 132 at 128:7-12.)

29.     Dr. Isaacson also conducted a survey of NFT purchasers (the "NFT Survey") that purported to find 18.7% confusion among that population. Millsaps Decl. ¶ 10, Ex. 9 (Isaacson Rep. ¶¶ 20-21).

**Hermès's Response:** Hermès does not dispute this statement.

30.     But Dr. Isaacson admitted at his deposition that the NFT Survey was in fact not a survey of trademark *confusion* at all; he testified that his survey was testing not for confusion but for mere mental association between *MetaBirkins* and Hermès. Millsaps Decl. ¶ 11, Ex. 10 (B. Isaacson Dep. (Sept. 20, 2022) 95:10-18, 102:3-9, 108:15-110:12, 120:2-8, 124:3-13.

**Hermès's Response:** Hermès disputes this statement as misleading, inaccurate, vague, and incomplete. Rothschild's mischaracterizes Dr. Isaacson's deposition testimony. Dr. Isaacson testified about the mental processes respondents likely engaged in that created the likelihood of confusion measured by his NFT Survey: "there's only one kind of confusion that I'm basing my opinions on. And that's where someone sees the MetaBirkins web page and makes a cognitive connection in their own mind between that web page and Hermes or Birkin." (Corrigan Suppl. Decl., Ex 132 at 95:13-18.) Dr. Isaacson further testified as to a particular respondent: "their answer to question 4 indicates that they clearly see a Hermes bag in the MetaBirkins home page and that means they're confused by the way that likel[ihood] of confus[ion] surveys work. . . . They've made a cognitive connection between a bag that they're shown that is never labeled as an Hermes bag in the survey, but they've identified it as an Hermes bag twice. . . . I don't see where there's any question that this respondent is confused." *See* Corrigan Suppl. Decl., Ex 132

at 101:22-102:17.

31.     For this reason, Dr. Isaacson counted as "confused" NFT Survey respondents who, when asked about the source of the products on the webpage that Isaacson used as a stimulus, read back to him the *disclaimer* on the page, which explicitly stated that *MetaBirkins* had no connection with Hermès. Millsaps Decl. ¶ 11, Ex. 10 (B. Isaacson Dep. (Sept. 20, 2022) 118:25-120:8), ¶ 10, Ex. 9 (Neal Rep. ¶¶ 3.3-3.3.15.2).

**Hermès's Response:** Hermès disputes this statement as misleading, incomplete, vague, and inaccurate. Dr. Isaacson testified: "this person not only is confused by the web page but they're also confused by the disclaimer . . . because they're not quite sure what's going on. But they are clearly demonstrating that they looked at this and they thought that somehow Hermes is involved in it. They think that Hermes is providing the items that are shown on the webpage." (Corrigan Suppl. Decl., Ex. 132 at 116:18-117:3.) Dr. Isaacson further testified: "their answer to question 2 demonstrates just how confused they are by the page, and demonstrates as well that that disclaimer which is sometimes the case for disclaimers that are not sufficiently clear is exacerbating their confusion. . . . they saw something in the disclaimer that made them confused. Not that it made them unconfused . . . but rather led them to believe, based on seeing the word Hermes in the disclaimer possibly, that they were confused." **Authority:** Corrigan Suppl. Decl., Ex. 132 at 118:17-119:14.

## II.     PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION

Hermès submits the below material facts in support of Hermès opposition to Rothschild's Motion for Summary Judgment alongside Hermès's above responses to Rothschild's 56.1 Statement.

**Hermès's BIRKIN Mark and Trade Dress**

32.    Hermès owns the BIRKIN trademark which registered on the Principal Register of the U.S. Patent and Trademark Office ("USPTO") on September 6, 2005 under Registration No. 2991927 (the "BIRKIN Mark"). **Authority:** Corrigan Decl., Ex. 13 at HERMES_0007355 (ECF No. 72-22); Martin Decl. at ¶ 5 (ECF No. 70).

33.    Hermès owns the BIRKIN trade dress which registered on the Principal Register of the USPTO on March 29, 2011 under Registration No. 3936105 (the "BIRKIN Trade Dress"). **Authority:** Corrigan Decl., Ex. 14 at HERMES_0007674 (ECF No. 72-23); Martin Decl. at ¶ 5 (ECF No. 70).

34.    The BIRKIN Mark is in full force and effect for leather or imitation leather goods, namely, handbags. **Authority:** Corrigan Decl., Ex. 13 (ECF No. 72-22); Martin Decl. at ¶ 5 (ECF No. 70).

35.    The BIRKIN Mark, registered on the USPTO Principal Register, became incontestable on February 9, 2012, and has been continuously used since its registration. **Authority:** Corrigan Decl., Ex. 13 (ECF No. 72-22); Martin Decl. at ¶ 5 (ECF No. 70).

36.    The BIRKIN Mark is strong and distinctive for handbags. **Authority:** Corrigan Decl., Ex. 18 at 7 (ECF No. 73-2).

**BIRKIN Mark is Famous**

37.    Hermès is well known for its iconic BIRKIN handbag, which is an exclusive Hermès design that was created in 1984 and first sold in U.S. commerce in 1986. This bag is universally known as the BIRKIN handbag. **Authority:** Martin Decl. at ¶ 6 (ECF No. 70).

32.    Over time, the BIRKIN handbag has become one of Hermès's most iconic products, if not its most iconic product. **Authority:** Martin Decl. at ¶ 7 (ECF No. 70).

33.     Hermès spends ███████████████ in advertising. Since 2016, Hermès has

spent over ███████████ in U.S. advertising, which includes advertising the BIRKIN

handbag. **Authority:** Martin Decl. at ¶ 12, Ex. 2 (ECF No. 70, 69-2).

34.     By way of example, in the U.S. for Fall/Winter 2020, Hermès spent ████████

███ in advertising the BIRKIN handbag in print publications. **Authority:** Martin Decl., Ex. 3

(ECF No. 69-3).

35.     The BIRKIN handbag and BIRKIN Mark have been advertised in widely

distributed publications such as the *WSJ Magazine*, *Architect Digest*, *Town & Country*,

*Departures*, *Elle*, *W*, *Vogue*, *Harper's Bazaar*, *Vanity Fair*, and the *New York Times Style

Magazine*. **Authority:** Corrigan Decl., Ex. 1 (ECF No. 72-1); Martin Decl., Ex. 3 (ECF No. 69-

3).

36.     The BIRKIN handbag and BIRKIN Mark regularly receive unsolicited press

coverage in the U.S. in major fashion publications such as *Vogue*, *Harper's Bazaar*, *New York

Times Style Magazine*, *Vanity Fair*, *Marie Claire*, *W*, *Allure*, *Elle*, *WWD*; have been featured in

*WSJ Magazine*, *Forbes*, and *Departures*; and have received online coverage in *CNN Business*

and *Time*. **Authority:** Corrigan Decl., Ex. 2 (ECF No. 72-2).

37.     The BIRKIN handbag and BIRKIN Mark also receive unsolicited coverage in

international fashion publications, including for example, *Harper's Bazaar* editions in Indonesia,

India, and Taiwan, *In Style* in Germany, *Marie Claire* Hong Kong, *Prestige* Malaysia, *Elle*

editions in Germany and Australia, *Glam* in Qatar, *Female* Malaysia's leading fashion & beauty

magazine, *Flare* Canada's fashion magazine, *Vogue* Italy, and *Madame Figaro* in France, among

others around the world. **Authority:** Corrigan Decl., Ex. 3 (ECF No. 72-7).

38.     The BIRKIN handbag has been featured in numerous U.S. television shows and movies over the years, including for example, *Sex and the City*, *Gossip Girl*, *Gilmore Girls*, Apple TV+'s *Loot*, *Unbreakable Kimmy Schmidt*, *Inventing Anna*, *The Proposal*, *Transformers*, *Inside Man*, *The Royal Tenenbaums*, *Fifty Shades Freed*, *The Women*, *The Hustle*, *Tenet*, *The Bling Ring*, *Midnight in Paris*, *Made of Honor*, *Think Like A Man*, *What Men Want*, *Little*, *Rizzoli & Isles*, *Brooklyn Nine-Nine*, *Jessica Jones*, and *Velvet Buzzsaw*. **Authority:** Corrigan Decl., Ex. 4 (ECF No. 72-13).

39.     The BIRKIN handbag is distributed exclusively through Hermès's stores. As of December 31, 2021, Hermès had over 303 stores across the world, with 73 stores in Europe, 47 in the Americas (including 31 in the U.S.), 95 in Asia, and 6 in Oceania. Hermès has since opened two additional stores in the U.S., for a total of 33. **Authority:** Martin Decl. at ¶ 11, Ex. 1 (ECF No. 70, 69-1).

40.     Since the first sale of the BIRKIN handbag in 1986, Hermès has sold more than ▮▮▮▮▮▮▮▮▮ worth of BIRKIN handbags in the U.S. In the past 10 years, Hermès's has annually sold over ▮▮▮▮▮▮ U.S. dollars' worth of BIRKIN handbags in significant quantities in the U.S. **Authority:** Martin Decl. at ¶ 10 (ECF No. 70).

41.     In Rothschild's marketing for the METABIRKINS NFTs, he described the BIRKIN handbag as "Herm[è]s' most famous handbag" and a "highly covetable 'holy grail' handbag." **Authority:** Corrigan Decl., Ex. 5 at HERMES_0009806 (ECF No. 72-14); Ex. 6 at HERMES_0037671 (ECF No. 72-15).

42.     Rothschild stated in a December 6, 2021 interview with *Yahoo! Finance* that for him, "there's nothing more iconic than the Hermes Birkin bag." **Authority:** Corrigan Decl., Ex. 7 at HERMES_0010582 (ECF No. 72-16).

43.     Rothschild first began using the METABIRKINS Mark as early as November 7, 2021. **Authority:** Corrigan Decl., Ex. 10 at Rothschild006657 (ECF No. 72-19); Ex. 11 (ECF No. 72-20).

44.     The BIRKIN handbag has been famous in the U.S. for many years, and at least prior to Rothschild's use. **Authority:** Martin Decl. at ¶ 15 (ECF No. 70).

45.     For decades, Hermès has developed its reputation and distinctive image as a luxury fashion house of high-quality merchandise and has invested substantially in developing its goodwill in the HERMÈS Mark, BIRKIN Mark, and BIRKIN Trade Dress, which are all known worldwide. The BIRKIN Mark and BIRKIN handbag are famous and among Hermès's most valuable assets. **Authority:** Martin Dec. at ¶ 14 (ECF No. 70).

██████████████████████████████

46.     ████████████████████████████████████ **Authority:** Martin Decl. at ¶¶ 19-20; Exs. 6-8 (ECF Nos. 69-06, 69-07, 69-08); Corrigan Decl., Ex. 12 at 245:2-248:18; 250:4-7, 252:22-253:3; Exs. 16-17 (ECF Nos. 72-25, 72-26).

47.     Hermès owns pending U.S. Application Serial Nos. 97566629 for BIRKIN and 97566611 for HERMÈS, in connection with NFTs and related goods and services. **Authority:** Corrigan Decl., Ex. 16 (ECF No. 72-25); Ex. 17 (ECF No. 72-26); Martin Decl. at ¶ 19 (ECF No. 70).

48.     ████████████████████████████████████ **Authority:** Corrigan Decl., Ex. 21 at 113:9-116:20 (ECF No. 73-05); Ex. 62 (ECF No. 72-76); Ex. 63 (ECF No. 72-77); Ex. 64 (ECF No. 72-78); Ex. 65 (ECF No. 72-81); Ex. 66 (ECF No. 72-84).

49.     The USPTO has taken the position that virtual and physical goods are the kind that "may emanate from a single source, under a single mark" and that "[t]he same providers of

real fashion goods often provide virtual fashion goods." **Authority:** Corrigan Supp. Decl., Exs. 142 at p. 9; Ex. 143 at p. 7.

50.     For example, U.S. Application Serial No. 97112038 was filed by individuals not affiliated with Gucci for the mark GUCCI for virtual goods, including "footwear, clothing, headwear, eyewear, handbags, laptop bags, backpacks, luggage, briefcases, art, toys, jewelry, watches, hair accessories, pet collars, accessories and charms for use in online virtual worlds." The USPTO issued an Office Action on August 30, 2022, refusing registration, in part, because the mark was identical and the virtual goods were the same as the physical goods covered by Gucci's GUCCI registrations so "consumers would be likely to assume the existence of a connection between the parties," also noting that Gucci is "is so well-known that consumers would presume a connection." **Authority:** Corrigan Supp. Decl., Ex. 142 pp. 8-11.

51.     Similarly, U.S. Application Serial No. 97112054 was filed by an individual not affiliated with Prada for the mark PRADA for virtual goods, including "footwear, clothing, headwear, eyewear, handbags, laptop bags, backpacks, luggage, briefcases, art, toys, jewelry, watches, hair accessories, pet collars, accessories and charms for use in online virtual worlds." The USPTO issued an Office Action on August 29, 2022, refusing registration, in part, because the mark was identical and the goods were "virtual versions" of the goods covered by Prada's PRADA registrations, noting that "providers of real fashion goods often provide virtual fashion goods" and "PRADA is so well-known that consumers would presume a connection." **Authority:** Corrigan Supp. Decl., Ex. 143 at pp. 6-8.

52.     Hermès has invested significant time and money in making Hermès what it is today, including in making the BIRKIN handbag what it is today. Considering what could be Hermès's future with the metaverse and NFTs, the fact that Rothschild launched his

METABIRKINS NFTs first, whatever Hermès will do, there will always be a reference to what Rothschild has done.  It has caused irreparable harm to Hermès. Today, whatever Hermès does in the metaverse or with NFTs, there will always be a tie to Rothschild or METABIRKINS. Consumers could become newly confused as they might not believe, for example, that Hermès's NFTs are really from Hermès. Indeed, entering the NFT market with the BIRKIN trademark is becoming more difficult for Hermès because the METABIRKINS name has already been used for an NFT. **Authority:** Martin Decl. at ¶ 24, Exs. 6-8 (ECF Nos. 70, 70-3, 70-4, 70-5); Corrigan Decl., Ex. 12 at 273:24-274:25 (ECF No. 73-1).

53.     Rothschild has harmed Hermès's "goodwill and [its] capacity to exploit and to use [its] trademark Birkin and [its] trade dress in the metaverse and in the NFT." **Authority:** Corrigan Decl., Ex. 12 at 277:23-278:3 (ECF No. 73-1).

### The METABIRKINS NFTs Smart Contract and the Image Files Associated with the METABIRKINS NFTs

54.     The METABIRKINS NFTs are data recorded on the Ethereum blockchain. That data lives forever on the blockchain and is governed by a smart contract which is immutable. **Authority:** Mentzer Decl., Ex. 1 at 10, 29 (ECF No. 68-1).

55.     ██████████████████████████████████████████ ████████████████████████████ Under the METABIRKINS NFTs smart contract, these NFTs are permanently branded METABIRKINS because the smart contract cannot be changed. **Authority:** Corrigan Decl., Ex. 21 at 258:21-261:15, 378:18-379:4 (ECF No. 73-5); Mentzer Decl., Ex. 1 at 10, 29 (ECF No. 68-1).

56.     Rothschild is the controller of the smart contract governing the METABIRKINS NFTs. As the controller, Rothschild can modify or change the images associated with the

METABIRKINS NFTs at any time. **Authority:** Corrigan Decl., Ex. 21 at 227:16-228:10, 249:17-250:4 (ECF No. 73-5); Mentzer Decl., Ex. 1 at 11, 16-17, 21 n. 9, 24, 29 (ECF No. 68-1).

57.     During the time period when the METABIRKINS NFTs were first minted and sold, all of the digital files associated with the METABIRKINS NFTs depicted the same images of a shroud covering an unidentified object. All initial sales of METABIRKINS NFTs occurred during the time when the METABIRKINS NFTs were associated with the same image of a shroud. **Authority:** Corrigan Decl., Ex. 21 at 227:16-228:10, 249:17-250:4 (ECF No. 73-5); Ex. 24 (ECF No. 73-8); Kominers Decl., Ex. 1 at 25 (ECF No. 71-1); Mentzer Decl., Ex. 1 at 15-19 (screenshot of Figure 9 on page 17 is depicted above) (ECF No. 68-1).



58.     During the minting process, the METABIRKINS NFTs were still associated with the shrouded image above, and 16 METABIRKINS NFTs were sold or transferred prior to the images being replaced with the digital files depicting furry BIRKIN handbags. These shrouded images were called "MetaBirkins" in the OpenSea marketplace where Rothschild promoted and made available for sale the METABIRKINS NFTs. **Authority:** Corrigan Decl., Ex. 21 at 249:17-250:4 (ECF No. 73-5); Mentzer Decl., Ex. 1 at 15-19 (ECF No. 68-1).

59.     The initial purchasers were not purchasing particular images, but rather rights to own a METABIRKINS branded NFT, then associated with the same image of a shrouded object. **Authority:** Mentzer Decl., Ex. 1 at 16-19, 29 (ECF No. 68-1).

60.     Kominers's statistical analysis of NFT trading data determined that Rothschild's use of the BIRKIN Mark in METABIRKINS drove sales. **Authority:** Kominers Decl., Ex. 1 at 42-54 (ECF No. 71-1); Mentzer Decl., Ex. 1 at 16-19, 29 (ECF No. 68-1).

61.     After minting ended on December 3, 2021 UTC, Rothschild caused the shrouded image files associated with the newly minted METABIRKINS NFTs to be replaced with images like that shown below. **Authority:** Mentzer Decl., Ex. 1 at 19 (screenshot of Figure 11 on page 18 depicted below) (ECF No. 68-1).



62.     These new files depicted "handbags," that ███████████████████████
████████████████████████████████████████ **Authority:** Corrigan Decl., Ex. 6 at HERMES_0037671 (ECF No. 72-15); Ex. 21 at 147:18-148:1 (ECF No. 73-5); Ex. 98 at Rothschild014825 (ECF No. 73-56); Mentzer Decl., Ex. 1 at 19 (ECF No. 68-1).

63.     ████████████████████████████████████████████
████████████████████████████████ **Authority:** Corrigan Suppl. Decl., Ex. 139 at Rothschild008429-88433, Rothschild008454-8457.

64.     ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████ **Authority:** Corrigan Decl., Ex. 55 at

Rothschild008305-8308 (ECF No. 73-28); Ex. 111 at Rothschild008420 (ECF No. 73-61); Ex. 113 at Rothschild015475-76 (ECF No. 73-63).

65.  ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

**Authority:** Corrigan Decl., Ex. 113 at Rothschild015475-76 (ECF No. 73-63).

66.    Some consumers were skeptical about the METABIRKINS NFTs and wondered if the METABIRKINS NFTs were just a scam or "rug." **Authority:** Corrigan Decl., Ex. 38 at HERMES_0009452 (ECF 72-47); Ex. 114 at Rothschild007787-88 (ECF No. 72-132).

**The METABIRKINS NFTs Are Metaverse Ready**

67.    The digital images attached to the METABIRKINS NFTs are "handbags" in the digital world and "metaverse ready" in any metaverse capable of pulling image information from the METABIRKINS smart contract. **Authority:** Corrigan Decl., Ex. 12 at 60:16-61:3, 67:11-15 (ECF No. 73-1); Ex. 34 ¶ 37 (ECF No. 73-14); Mentzer Decl., Ex. 1 at 28-31 (ECF No. 68-1).

68.    Rothschild has the ability to update the files associated with the METABIRKINS NFTs, can replace the file associated with the METABIRKINS NFTs with a 3D file, compatible with any metaverse platform at any time. **Authority:** Mentzer Decl., Ex. 1 at 28-33 (ECF No. 68-1).

69.    Social media users can "wear [the METABIRKINS] in profile picture[s]." **Authority:** Corrigan Decl., Ex. 12 at 60:16-61:3, 67:11-15 (ECF No. 73-1).

70.    Dr. Gopnik described the METABIRKINS NFTs as an "elite metaversal commodity. . . the kind of deluxe Hermès bag a MetaKardashian might carry, in the virtual reality we will all inhabit." **Authority:** Corrigan Decl., Ex. 34, ¶ 37 (ECF No. 73-14).

71. ███████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████

████████████ **Authority:** Corrigan Decl., Ex. 21 at 167:21-169:5 (ECF No. 73-5); Ex.

55 at Rothschild008316-8317 (ECF No. 73-28).

72. ████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

███ **Authority:** Corrigan Decl., Ex. 52 at SACKS_000027 (ECF No. 73-25).

**The METABIRKINS NFTs Are "Digital Brand" NFTs**

73.     There are sub-markets within the larger NFT market. Two sub-markets are "art-only" and "digital brand" NFTs. "Art-only" NFTs "serve just to convey ownership of (often digital) artworks, imagery, collectibles or similar—without any other utility or other direct holder benefits." "Digital brand" NFTs "use digital assets such as art, imagery, or collectibles as a springboard for establishing a broader product ecosystem, holder community, and brand." **Authority:** Kominers Decl., Ex. 1 at 1 (ECF No. 71-1).

74.     Unlike "art-only" NFTs, "digital brand" NFTs launch with a brand asset, which is then followed by various forms of rewards for NFT holders, typically called "utilities," including additional brand assets. The purpose of creating "utilities" for digital brand NFTs is to enhance the value of the NFTs and promote sales and resales. This can enrich the owner of the smart contract, who can collect income on sales and resales. **Authority:** Kominers Decl., Ex. 1 at 1, 7-10, 13, 15-20 (ECF No. 71-1); Mentzer Decl., Ex. 1 at 9, 17-25 (ECF No. 68-1).

75.     In recent live audio interviews on Twitter Spaces, Rothschild acknowledged the art-only and digital brand segments of the NFT market, while renaming them "art driven" and "utility driven." **Authority:** Kominers Decl., Ex. 2 at 1-2 (ECF No. 71-2); Kominers Decl., Ex. 3 at 11:19-12:8 (ECF No. 71-3); Kominers Decl., Ex. 4 at 11:22-12:11 (ECF No. 71-4).

76.     Rothschild advocates that brands embrace the "digital brand" or "utility driven" NFTs and avoid the "art-only" NFTs. **Authority:** Kominers Decl., Ex. 2, at 1-2 (ECF No. 71-2).

77.     Rothschild criticized Gucci's launch of "purely art" NFTs that had "no real like utility" because "it doesn't do anything" and "just dilute[s] their brand in Web3 to like not really have much behind it." **Authority:** Kominers Decl., Ex. 2, at 1-2 (ECF No. 71-2).

78.     Dr. Gopnik noted the METABIRKINS NFTs are "digital brand" NFTs or "utility driven." Dr. Gopnik stated in his report that "Rothschild deliberately rejects the restricted world of 'art-only' NFTs (I have argued in the Times that its artistic potential is close to non-existent) and instead ventures into the world of 'digital brand' NFTs that seems to have real leverage on our current reality." **Authority:** Corrigan Decl., Ex. 34 ¶ 22 (ECF No. 73-14).

79.     METABIRKINS NFTs mirror the attributes of "digital brand" NFTs or "utility driven" NFTs. **Authority:** Kominers Decl., Ex. 1 at 1, 32-41(ECF No. 71-1); Kominers Decl., Ex. 2 at 1-2 (ECF No. 71-2); Kominers Decl., Ex. 3 at 11:19-12:8 (ECF No. 71-3); Kominers Decl., Ex. 4 at 11:22-12:11 (ECF No. 71-4).

80.     Rothschild promoted the METABIRKINS NFTs —not the images—as the key to unlocking all of his future projects. **Authority:** Corrigan Decl., Ex 5 (ECF No. 72-14).

81.     Rothschild promised purchasers of the METABIRKINS NFTs other digital assets, including replicating an "Herm[è]s Horse Companion" (Rothschild's pink horse image at left compared to the orange Hermès Rodeo horse charm at right below) to "'attach' to bag[s]."

████████████████████████████

████████   **Authority:** Corrigan Decl., Ex. 21 at 179:24-181:3 (ECF No. 73-5); Ex. 35 at

SACKS_000253-254 (ECF No. 73-15); Ex. 36 at 198:16-199:14 (ECF No. 73-16); Ex 47 (ECF

No. 73-20); Kominers Decl., Ex. 1 at 52-53 (ECF No. 71-1).



82.     Rothschild gave purchasers of the METABIRKINS NFTs exclusive whitelist

access to his next NFT projects. **Authority:** Corrigan Decl., Ex. 5 (ECF No.72-14); Ex. 42 at

21:18-22:2 (ECF No. 73-17).

83.     Rothschild was planning to provide additional utilities (generative projects) to

METABIRKINS NFT holders. Rothschild promised that "the top 10 longest MetaBirkins

Holders (at the time of generative project minting) will be gifted an item from the generative

project collection."  **Authority:** Corrigan Decl., Ex. 5 (ECF No.72-14).

84.     Rothschild advertised a plan for exclusive access to future real-world parties for

the METBIRKINS NFT holders at his Terminal 27 store. **Authority:** Corrigan Decl., Ex. 35 at

SACKS_000252 (ECF No. 73-15); Kominers Decl., Ex. 3 at 76:16-79:10 (ECF No. 71-03).

85.     Rothschild created a METABIRKINS community on Discord. The community

had at its peak approximately 36,000 members—meaning that at least 35,900 people that did not

own METABIRKINS NFTs were members of a METABIRKINS community. METABIRKINS

community members received access and updates on Rothschild's other projects. Rothschild promised the first 1,000 members of the METABIRKINS Discord community would be given "white list" spots for an upcoming, undisclosed, and unrelated NFT project. **Authority:** Corrigan Decl., Ex. 5 (ECF No. 72-14); Ex. 21 at 31:16-20 (ECF No. 73-5).

86.   Rothschild cross-promoted the METABIRKINS NFTs with other NFT projects, including his I Like You You're Weird ("ILYYW") NFTs. **Authority:** Corrigan Decl., Ex. 37 HERMES_0008391-00088405 (ECF No. 72-46); Ex. 38 at HERMES_0009420 (ECF No. 72-47); Ex. 40 (ECF No. 72-54); Ex. 41 (ECF No. 72-55); Kominers Decl., Ex. 1 at 34-38 (ECF No. 71-1).

87.   Rothschild promoted and marketed the METABIRKINS NFTs as a digital brand. He drew parallels between his METABIRKINS NFTs and the most successful digital branded NFTs: Bored Ape Yacht Club and Doodles. **Authority:** Kominers Decl., Ex. 1 at 1, 16, & 33 (ECF No. 71-1).

88.   Had Hermès not taken action to stop Rothschild's digital brand activities, Rothschild likely would have continued with the same digital brand building activities mapped out in his ILYYW NFT project. **Authority**: Kominers Decl., Ex. 1 at 38-39 (ECF. 71-1).

**METABIRKINS NFTs Are A Business for Profit**

89.   Rothschild generated the METABIRKINS NFTs to be sold as digital commodities and profit from them. **Authority:** Mentzer Decl., Ex. 1 at 21, 48 (ECF No. 68-1); Corrigan Decl., Ex. 5 (ECF No. 72-14); Ex. 7 (ECF No 72-16); Ex. 29 at Rothschild014949, Rothschild014952, Rothschild014957 (ECF No. 73-9); Kominers Decl., Ex. 1 at 26 (ECF No. 71-1).

90.   ███████████████████████████████████████████████

**Authority:** Corrigan Decl., Ex. 23 at Rothschild008391 (ECF No. 73-7); Ex. 47 at

Rothschild008468 (ECF No. 73-20); Ex. 95 at Rothschild011297 (ECF No. 73-53); Ex. 97 at Rothschild008499 (ECF No. 73-55).

91. ██████████████████████████████████████████████

████████████████████████████████████ **Authority:** Corrigan Decl., Ex. 7 at HERMES_0010582, ECF No. 72-16; Ex. 29 at Rothschild014949.

92. ██████████████████████████████████████████████

████████████████████████ **Authority:** Corrigan Decl., Ex. 36 at 186:22-88:22, 191:13-25 (ECF No. 73-16); Ex. 67 at SACKS_000159 (ECF No. 73-31).

93. ████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████ **Authority:** Corrigan Decl., Ex. 87 at Rothschild014669 (ECF No. 73-45).

94. ██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████ **Authority:** Corrigan Decl., Ex. 21 at 393:22-23 (ECF No. 73-5); Ex. 88 at Rothschild014857-59 (ECF No. 73-46).

95. ████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████   **Authority:** Corrigan Decl., Ex. 21 at 392:6-8 (ECF No. 73-5); Ex. 89 at Rothschild008648, Rothschild008658, Rothshcild008665 (ECF No. 73-47).

96. ████████████████████████████████████

████████████████████████████████   **Authority:** Corrigan Decl., Ex. 52 at SACKS_000032 (ECF No. 73-25).

97. ████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████   **Authority:** Corrigan Decl., Ex. 54 at Rothschild008802, Rothschild008805-6, Rothschild008808 (ECF No. 73-27).

98. ████████████████████████████████████

████████████████████████████████████   **Authority:** Corrigan Decl., Ex. 90 at Rothschild008963 (ECF No. 73-48).

99. ████████████████████████████████████

████████████████████████████████████

████████████████████████████   **Authority:** Corrigan Decl., Ex. 86 at 38:24-39:12 (ECF No. 73-44); Ex. 91 at Rothschild009090 (ECF No. 73-49).

100. ████████████████████████████████████

██████████████   **Authority:** Corrigan Decl., Ex. 92 at Rothschild009283 (ECF No. 73-50).

101. ███████████████████████████████████████████

███████████████████████████████████████ **Authority:** Corrigan Decl.,

Ex. 55 at Rothschild008308 (ECF No. 73-28).

102. ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████ **Authority:** Corrigan Decl., Ex. 36 at 50:14-58:6 (ECF No. 73-16).

103.    On October 11, 2022, Rothschild tweeted "NFTs in a nutshell: Overpromise,

underdeliver = PUMP[;] Underpromise, overdeliver = DUMP." **Authority:** Corrigan Suppl.

Decl., Ex. 137.

104. ███████████████████████████████████████████

███████████████████████████████████████. **Authority:** Corrigan Decl., Ex.

21 at 195:16-24 (ECF No. 73-5); Ex. 85 at Rothschild008527 (ECF No. 73-43).

105. ███████████████████████████████████████████

███████████████████████████████████████████**Authority:**

Corrigan Decl., Ex. 21 at 386:17-387:23 (ECF No. 73-5); Ex. 89 at Rothschild08652 (ECF No.

73-47).

106. ███████████████████████████████████████

███████████████████████████████████████ **Authority:** Corrigan

Decl., Ex. 54 at Rothschild008803-880m44 (ECF No. 73-27).

107.    Through July 2022, total sales volume for METABIRKINS NFTs exceeded $1.1

million. **Authority:** Mentzer Decl., Ex. 1 at 21, 48 (ECF No. 68-1).

108.  ███████████████████████████████████████████

████████████████████████. **Authority:** Corrigan Suppl. Decl. Ex. 134 at 379:12-381:2,

326:20-328:5.

## Dr. Gopnik's "Business Art"

109.    According to Dr. Gopnik, there is a category of art called "business art" or

"commerce by artist." Dr. Gopnik claims that "business art" includes, investing money in the

stock market, creating a corporation, the public sale of works at auction, opening a restaurant,

adopting the trademark of another company, activity geared towards provoking a lawsuit, and

making money. **Authority:** Corrigan Suppl. Decl., Ex. 135 at 123:20-124:22, 128:13-21, 129:13-

25, 131:3-14, 236:25-238:24, 245:9-11; Corrigan Decl., Ex. 34 at 13-14 (ECF No. 73-14).

110.    Dr. Gopnik has stated that creating confusion regarding whether a trademark

owner has authorized goods is also a component of "business art," and in certain "business art"

cases, the NFT itself can "play[] an artistic role." **Authority:** Corrigan Suppl. Decl., Ex. 135 at

180:14-19, 239:3-16.

111.    Dr. Gopnik testified that "a non-specialist has no sense of art" and explained that

to understand "business art," one must "have knowledge of the history of business art, for

instance. You'd have to have knowledge of other examples of business art. You would need to

understand those cues in order to understand what you're confronting." **Authority:** Corrigan

Suppl. Decl., Ex. 135 at 131:15-132:8.

112.    Dr. Gopnik further testified that a person could acquire an understanding of

"business art," if "[y]ou look at a lot of art, you think about a lot of art, you read about art, you

immerse yourself in the world, in this case, of twentieth century art, in this case a particular part

of twentieth century art." **Authority:** Corrigan Suppl. Decl., Ex. 135 at 129:3-10.

113.     According to Dr. Gopnik, the Judiciary should not decide whether the use of intellectual property is "fair use." Rather than judges "decid[ing] that they're art critics", Dr. Gopnik testified that judges should "poll a number of art critics" and weigh the opinions. **Authority:** Corrigan Suppl. Decl., Ex. 135 at 138:4-141:2, 247:25-250:17; Ex. 136.

114.     Dr. Gopnik is not aware of any other art professionals who consider METABIRKINS NFTs art. **Authority:** Corrigan Suppl. Decl., Ex. 135 at 95:15-23, 142:21-25.

**Rothschild Adopted the METABIRKINS Name in Bad Faith**

115.     Rothschild created METABIRKINS Twitter and Instagram accounts, a METABIRKINS Discord server and a METABIRKINS Website all to promote and advertise the METABIRKINS NFTs. **Authority:** Corrigan Decl., Ex. 6 (ECF No. 715); Ex. 18 at 4-5 (ECF No. 73-02); Ex. 21 at 29:16-31:15, 32:14-19 (ECF No. 73-5); Ex. 37 HERMES_0008349-8350, HERMES_0008524-8533, HERMES_0008713-0008719, HERMES_0008764, HERMES_0008818-8822 (ECF No. 72-46); Ex. 38 at HERMES_0009416-0009432 (ECF No. 72-47); Ex. 39 (ECF No. 72-53).

116.     Rothschild described the METABIRKINS NFTs on his METABIRKINS.com website, on the OpenSea NFT marketplace where the METABIRKINS NFTs were sold, and in interviews, as a "tribute to Herm[è]s' most famous handbag, the Birkin." **Authority:** Corrigan Decl., Ex. 6 at HERMES_0037671 (ECF No. 72-15); Ex. 7 (ECF No. 72-16); Ex. 28 (ECF No. 72-37); Rothschild Decl. ¶ 10 (ECF No. 66).

117.     In a December 6, 2021 interview with *Yahoo! Finance*, Rothschild stated: "I wanted to see as an experiment to see if I could create the same kind of illusion that [the BIRKIN Handbag] has in real life as a digital commodity. In his interview with *Yahoo! Finance*, when speaking about counterfeiting of "high-end luxury items like an Hermes bag," Rothschild

complained that "before my collection dropped, there was a bunch of like counterfeit NFTs that weren't from my collection" **Authority:** Corrigan Decl., Ex. 7 (ECF No. 72-16).

118.    Rothschild claims the METABIRKINS NFTs are an "experiment to explore where the value in the Birkin handbag actually lies—in the handcrafted physical object, or in the image it projects?" **Authority:** Rothschild Decl. ¶ 11 (ECF No. 66).

119.    ████████████████████████████████████████████

████████████████████████ **Authority:** Corrigan Decl., Ex. 19 at Rothschild008291, (ECF No. 73-3); Ex. 22 at Rothschild008383-8385 (ECF No. 73-6).

120.    Rothschild announced the eventual launch of his METABIRKINS NFT project on social media by referring to the NFTs as "one of a kind, Birkins". **Authority:** Corrigan Decl., Ex. 46 (ECF No. 72-60).

121.    Rothschild promoted the METABIRKINS NFTs on his METABIRKINS.com website as "Birkin NFTs." **Authority:** Corrigan Decl., Ex. 6 at HERMES_0037671 (ECF No. 72-60).

122.    Rothschild advertised the METABIRKINS NFTs using Hermès's trademarks in two slogans: "Mint a MetaBirkin Hold a MetaBirkin," and "NOT YOUR MOTHER'S BIRKIN." **Authority:** Corrigan Decl., Ex. 38, HERMES_0009416, HERMES_0009424, HERMES_0009431, HERMES_0009432, HERMES_0009435 (ECF No. 72-47); Corrigan Decl., Ex. 37 at HERMES_0008634, HERMES_0008713-0008719 (ECF No. 72-46); Isaacson Decl., Ex. 1 ¶¶ 7-10, figures 1-2 (ECF No. 67-1).

123.    On October 29, 2021, Rothschild ran a contest on Twitter asking followers to reply with their suggestions for the collection name, and stated the "best suggestion gets a gifted Birkin."  Twitter user "JessLozano.eth in NY" responded on November 2, 2021 with several

suggestions, including "not your mom's Birkin."  Rothschild used the slogan "Not Your

Mother's Birkin" ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

**Authority:** Corrigan Decl., Ex. 46 (ECF No. 72-60); Ex. 21 at 203:24-204:24 (ECF No. 75-5).

124.    The initial storefront for the METABIRKINS NFTs on OpenSea did not have a

single reference to Rothschild. **Authority:** Corrigan Decl., Ex. 28 (ECF No. 72-37).

125.    When the METABIRKINS NFTs were sold on Zora, another NFT marketplace,

there was no mention of Rothschild being the creator. **Authority:** Corrigan Decl., 26 (ECF No.

72-35).

126.    There is no mention of Rothschild on the METABIRKINS storefront on the

LooksRare NFT marketplace. **Authority:** Corrigan Decl., Ex. 25 (ECF No. 72-25).

127.    Prior to Hermès taking action, the METABIRKINS Instagram account merely

included a tag to Rothschild's personal account in the biography without any signal or context.

The METABIRKINS Instagram account had nearly 17,000 followers at the time. The account

was updated only after Hermès took action against Rothschild. **Authority:** Corrigan Suppl.

Decl., Ex 138 HERMES_0037428; Corrigan Decl., Ex. 37 (ECF No. 72-46).

128.    Rothschild added a disclaimer about his lack of affiliation with Hermès on his

METABIRKINS.com website after he minted all of the METABIRKINS NFTs. The disclaimer

never appeared on any of the NFT marketplaces, including LooksRare where at least one sale has

occurred since the filing of this lawsuit. **Authority:** Corrigan Decl., Exs. 6 (ECF No. 72-15); Ex.

25 (ECF No. 72-34); Ex. 26 (ECF No. 72-35); Ex. 27 (ECF No. 72-36); Ex. 28 (ECF No.72-37);

Ex. 37 (ECF No. 72-46); Ex. 38 (ECF No. 72-47); Mentzer Decl., Ex. 1 at 10, 20-22, 43-44 (ECF No. 68-1).

129.    The disclaimer consists of two lines of small font, but capitalized HERMÈS. The disclaimer is on a webpage that contains 17 large handbag images, and other eye-catching elements, including flashing text that reads, "NOT YOUR MOTHER'S BIRKIN." **Authority:** Isaacson Decl., Ex. 1 at ¶¶ 7-10, Figures 1-2 (ECF No. 67-1); Corrigan Decl., Ex. 6. (ECF No. 72-15)

130.    ███████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████ **Authority:** Corrigan Decl., Ex. 68 at 149:7-23 (ECF No. 73-32).

131.    ████████████████████████████████████

████████████████████████████████████ **Authority:** Corrigan Decl., Ex. 55 at Rothschild008307 (ECF No. 73-28).

132.    ████████████████████████████████████████

███████████████████████████████████████

**Authority:** Corrigan Decl., Ex. at 20 at Rothschild008345 (ECF No. 73-4).

133.    ████████████████████████████████████████

████████████████████████████████████

█████████████████████████████ **Authority:** Corrigan Decl., Ex. 22 at Rothschild008383, Rothschild008386 (ECF No. 73-6).

134.    ████████████████████████████████████████

█████████████████████████████████████████████

**Authority:** Corrigan Decl., Ex. 12 at 44:7-11 (ECF No.73-1); Ex. 21 at 144:12-146:5 (ECF No. 75-5); Martin Decl. at ¶ 17, Ex. 4 (ECF No. 70, 69-4).

135.   ███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████   **Authority:** Corrigan Decl., Ex. 36 at 124:17-125:10 (ECF No. 73-16); Ex. 52 at SACKS_000047 (ECF No. 73-25).

136.   Dr. Blake Gopnik provided an expert report stating that "NFT'd images made to mimic a purse sold at Walmart would be sure to get little artistic transaction in our Hermès-mad culture. The Kominers report submitted in this case is quite right to note that the success of Rothschild's 'MetaBirkins' depends on their connection to the Hermès brand." **Authority:** Corrigan Decl., Ex. 34, ¶ 35 (ECF No.73-14).

137.   Rothschild admits that the future value of the METABIRKINS NFTs would come not from the art associated with the NFTs but instead would come from the publicity, community activities, and other forms of utility offered to METABIRKINS NFT holders. **Authority:** Kominers Decl., Ex. 3 at 47:25-48:12 (ECF No. 71-3).

138.   ████████████████████████████████████████████

████████████████████████████████████████   **Authority:** Corrigan Decl., Ex. 21 at 280:23-281:10 (ECF No. 73-5).

139.   ████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████   **Authority:** Corrigan Decl., Ex. 21 at 184:14-194:22 (ECF No.73-5); Ex. 85 at Rothschild008526 (ECF No. 73-43).

140.     Hermès has sold fur BIRKIN handbags, but Rothschild had no idea whether Hermès made fur BIRKIN handbags. **Authority:** Corrigan Decl., Ex. 21 at 187:15-17; 194:24-195:1 (ECF No. 73-5); Exs. 60 (ECF No. 73-29); Ex. 61 (ECF No. 73-30).

141.     ████████████████████████████████████████████████
████████████████████████████ **Authority:** Corrigan Decl., Ex. 21 at 43:18-25, 48:4-6, 72:16-17, 84:1-89:7 (ECF No. 73-5); Exs. 99 (ECF No. 72-117-72-124. 73-57).

142.     ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

**Authority:** Corrigan Suppl. Decl., Ex.134 at Tr. 84:14-90:21.

**METABIRKINS NFTs Cause Consumer Confusion**

143.     ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ **Authority:** Corrigan Decl., Ex. 67 at SACKS_000109-110 (ECF No.73-31).

144.     █████████████████████████████████████████

**Authority:** Corrigan Decl., Ex. 45 at 43:14-19 (ECF No. 73-19); Ex. 68 at 61:3-18 (ECF No.73-32); Ex. 82 at Rothschild015178 (ECF No. 73-38).

145.     In preparing an NFT presentation at the end of 2021 for the AIPPI, an IP association in Paris, France, Boriana Guimberteau, a French intellectual property lawyer, became aware of the Baby Birkin NFT and believed "Hermès authorized the NFT or there was some kind of a partnership with Hermès for this NFT."  The Baby Birkin NFT was Rothschild's NFT

project that preceded his METABIRKINS NFT project. **Authority:** Corrigan Decl., Ex. 21 at 119:24-120:2 (ECF No. 73-5); Ex. 77 at 6:20-9:21 (ECF No. 73-34); Ex. 79 (ECF No.72-97).

146.    Ms. Guimberteau thought the METABIRKINS NFTs were "necessarily with Hermès' agreement." **Authority:** Corrigan Decl., Ex. 77 at 10:24-11:7 (ECF No. 73-34).

147.    During her AIPPI NFT presentation, Ms. Guimberteau presented that the Baby Birkin and METABIRKINS NFTs were "made with Hermès or by Hermès." **Authority:** Corrigan Decl., Ex. 77 at 11:8-11:20, 13:16-14:6 (ECF No. 73-34); Ex. 79 (ECF No. 72-97).

148.    It was Ms. Guimberteau's understanding at the time, late 2021, that "there were a lot of fashion and luxury houses that launched NFTs" and "Hermès was also a luxury house that also launched a[n] NFT." **Authority:** Corrigan Decl., Ex. 77 at 13:24-14:19 (ECF No. 73-34).

149.    Ms. Guimberteau prepared and signed an Affidavit declaring that as of December 9, 2021, she "thought that these [Baby Birkin and MetaBirkins NFTs] were also made in close collaboration with HERM[È]S," because "the names of the NFTs include the famous trademark 'BIRKIN' and reproduced the shape of the bag." **Authority:** Corrigan Decl., Ex. 77 at 15:24-18:2; Exs. 80-81.

150.    ██████████████████████████████████████████████
████████████████████████████████████ **Authority:** Corrigan Decl., Ex. 36 at 169:3-18 (ECF No.73-16); Ex. 112 at SACKS_000346 (ECF No. 73-62).

151.    ██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████. **Authority:** Corrigan Decl., Ex. 68 at 110:2-111:8; 143:15-146:5 (ECF No. 73-32); Ex. 69 (ECF No. 72-87); Ex. 74 (ECF No. 72-92); Martin Decl. at ¶ 17, Ex. 4 (ECF No. 70, 69-4).

152.    *Elle UK* was confused by Hermès's affiliation with the METABIRKINS NFTs and published an article titled, "Birkin NFT: Everything You Need To Know About The 'Handbag' Of The Future," reporting that Hermès had created the METABIRKINS NFTs and referred to the METABIRKINS as a BIRKIN. **Authority:** Corrigan Decl., Ex. 68 at 110:14-111:16 (ECF No. 73-32); Exs. 69-71 (ECF No. 72-87 – 72-89).

153.    ███████████████████████████

████████████████████████████████████████

██████████    **Authority:** Corrigan Decl., Ex. 68 at 110:2-20 (ECF No. 73-32); Ex. 69 (ECF No. 72-87).

154.    *L'Officiel*, a French fashion magazine with US edition, reported that Hermès "partnered with" Rothschild and described the METABIRKINS NFTS as "a new line of exclusive Birkin bags" and "another collection of Birkin NFTs." **Authority:** Corrigan Decl., Ex. 72 (ECF No. 72-90).

155.    ███████████████████████████

███████████████████    **Authority:** Corrigan Decl., Ex. 67 at SACKS_000121 (ECF No. 73-31) .

156.    ███████████████████████████

████████████████████████████████████████

██████████████    **Authority:** Corrigan Decl., Ex. 68 at 143:15-144:17 (ECF No. 73-32); Ex. 74 (ECF No. 72-92).

157.    The *New York Post* was confused about Hermès's affiliation with the METABIRKINS NFTs, stating that Hermès had entered the metaverse and "unveiled the

MetaBirkin-a VR version of its signature bag." **Authority:** Corrigan Decl., Ex. 75 at HERMES_0036022 (ECF No. 72-93).

158.    Months after the filing of this lawsuit, publications were still confused as to the origin of the METABIRKINS NFTs: In May, the French publication *Challenges* reported that Hermès "unveil[ed] virtual bags under the name 'MetaBirkin.'" Rothschild nor Loo reached out to correct the reporting. **Authority:** Corrigan Decl., Ex. 76 (ECF No. 72-94).

159.     **Authority:** Corrigan Decl., Ex. 68 at 71:15-72:24 (ECF No. 73-32); Ex. 110 at KLOO_0000037 (ECF No. 72-128).

160.    **Authority:** Corrigan Decl., Ex. 110 at KLOO_0000039-42, (ECF No. 72-128).

161.    Consumers expressed confusion on the METABIRKINS Instagram and Twitter accounts regarding whether the METABIRKINS NFTs were authorized, affiliated, or sponsored by Hermès. **Authority:** Corrigan Decl., Ex. 37 at HERMES_0008362, HERMES_0008376, HERMES_0008439, HERMES_0008445, HERMES_0008634, HERMES_0008638, HERMES_0008684, HERMES_0008689, HERMES_0008696, HERMES_0008706, HERMES_0008752, HERMES_0008757, HERMES_0008802, HERMES_0008809, HERMES_0008824-8828, HERMES_0008835, HERMES_0008841-8842; Ex. 38 at HERMES_0009435-36, HERMES_0009520, HERMES_0009533, HERMES_0009536, HERMES_0009540-9541, HERMES_0009544-9545 HERMES_0009549, HERMES_0009522,

HERMES_0009555, HERMES_0009598, HERMES_0009605, HERMES_0009608 (ECF No. 72-46).

162.    Customers expected more from the METABIRKINS NFTs, including receiving a real-world handbag. **Authority:** Corrigan Decl., Ex. 37 at HERMES_0008376, HERMES_0008398, HERMES_0008443, HERMES_0008689, HERMES_0008701, HERMES_0008723, HERMES_0008759, HERMES_0008790, HERMES_0008799 (ECF No. 72-46).

163.    ███████████████████████████████████████████

███████████████████████████████████████████

███████**Authority:** Corrigan Suppl. Decl., Ex. 140.

164.    Hermès's expert, Dr. Bruce Isaacson, conducted a survey measuring "the likelihood of confusion between Birkin bags from Hermès and MetaBirkins NFTs, which are sold by the Defendant, Mason Rothschild." Dr. Isaacson's survey found net confusion among the NFT audience of 18.7%. **Authority:** Isaacson Decl., Ex. 1 at 1, 15, 38 (ECF No. 67-1).

165.    Dr. Isaacson's survey measured confusion by determining whether respondents who were shown the METABIRIKINS website associated it with Hermès. The stimulus a survey expert shows respondents needs to recreate the real world. In accordance with this, Dr. Isaacson showed respondents the METABIRKINS.com website, which is where Rothschild advertised the METABIRKINS NFTs. **Authority:** Isaacson Decl., Ex. 1 at 3-7, Figures 1-2 (ECF No. 67-1); Corrigan Suppl. Decl., Exs. 132 at 108:15-109:7; Ex. 141 at 57:11-59:3.

166.    Rothschild's expert, Dr. Neal admitted that the threshold for determining confusion is lower than 18.7%: "You know, if you get a confusion number above 15 percent that -- 15 percent or higher, that might -- might be considered evidence of likelihood of confusion. If

it's a less than 15 percent that might be considered evidence against confusion." **Authority:** Corrigan Suppl. Decl., Ex. 141 at 117:17-25.

167.    As shown by the Isaacson survey, many respondents either did not notice the disclaimer on METABIRKINS.com, or mistakenly thought that the disclaimer indicated that Hermès is associated with METABIRKINS. **Authority:** Isaacson Decl., Ex. 1 at 25-29, Report Ex. 12 at 9, 22, 40, 52.

168.    One respondent in the Isaacson survey mentioned the disclaimer in response to Questions 1 and 2, but on Question 4, their answer indicated that the disclaimer did not clear up their confusion as to whether the METABIRKINS were from Hermès. **Authority:** Isaacson Decl., Ex. 1 at Report Ex. 12 at 9-10 (Respondent ID 18); Corrigan Suppl. Decl., Ex. 132 at 113:23-117:3.

169.    Dr. Isaacson's survey correctly uses the term "item," which is neutral and non-leading. The word "NFT" is leading because it directs respondent attention to certain parts of the MetaBirkins webpage, and away from other parts of the webpage. **Authority:** Corrigan Suppl. Decl., Ex. 132 at 169:18-170:5; 172:10-21.

170.    Dr. Neal did not have any suggestion for an alternative to the term "items," other than "some language that made it clear whether [Dr. Isaacson] was referring to the NFT or to the real world physical object depicted in the NFT." **Authority:** Corrigan Suppl. Decl., Ex. 141 at 128:17-130:21.

171.    Dr. Neal offered a method to re-code the Isaacson survey.  Dr. Neal's method requires that respondents repeat their answer to Question 1 in Question 4, i.e., indicate confusion more than once, to count as confused, and Dr. Neal seeks to re-classify respondents as not confused who obviously are confused, such as Respondent 83 (answer to Question 1 was "The

company is Birkin, you can see the brand clearly") or Respondent 108 (answer to Question 1 was "metabirkins", Question 4 was "Hermès", and to Question 7 was "Hermès"). **Authority:** Corrigan Suppl. Decl., Ex. 132 at 209:15-213:25; Millsap Decl., Ex. 9 at 15-16 (Table 2) (ECF No. 65-9).

172.    Any single response that reflects confusion with Hermès should be counted as confused, regardless of whether that response is repeated in a subsequent question. **Authority:** Corrigan Suppl. Decl., Ex. 132 at 91:3-16, 94:11-95:9, 100:24-101:16.

173.    Dr. Neal could not identify a single survey that relied on his asserted re-coding, or any court decision or reference that uses this re-coding method, nor had Dr. Neal ever conducted a survey using this method. **Authority:** Corrigan Suppl. Decl., Ex. 141 at 111:6-22.

174.    Dr. Neal did not conduct a survey. **Authority:** Corrigan Suppl. Decl., Ex. 141 at 29:19-31:3.

175.    The Handbag Survey's measures were 18.8% for the test webpage, and 15.2% for that control. Dr. Isaacson explained, in his deposition, that "[a] net confusion level of 3.6 percent would normally be associated with the absence of confusion, but it's also important to remember that the survey didn't show no confusion. What the survey showed is control cell confusion that was almost equal to the test confusion." **Authority:** Corrigan Suppl. Decl., Ex. 132 at 127:13-19; Isaacson Decl., Ex. 1, Report Ex. 11 at 24 (ECF No. 67-1).

Dated: October 21, 2022
New York, New York

**BAKER & HOSTETLER LLP**
Deborah A. Wilcox, Esq. (*pro hac vice*)
Key Tower
127 Public Square
Cleveland, OH 44114
Telephone:    216.621.0200

**BAKER & HOSTETLER LLP**
Lisa Bollinger Gehman, Esq. (*pro hac vice*)
1735 Market Street
Philadelphia, PA 19103
Telephone:    215.568.3100

**BAKER & HOSTETLER LLP**

By:    /s/ *Gerald J. Ferguson*
Gerald J. Ferguson, Esq.
Oren J. Warshavsky, Esq.
Kevin M. Wallace, Esq.
Megan A. Corrigan, Esq.
45 Rockefeller Plaza
New York, NY 10111
Telephone:    212.589.4200
Facsimile:    212.589.4201

*Attorneys for Plaintiffs*
*Hermès International and*
*Hermès of Paris, Inc.*