UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HERMÈS INTERNATIONAL and HERMÈS OF PARIS, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> MASON ROTHSCHILD, <br><br> Defendant. | CIVIL ACTION NO. <br><br> 22-CV-00384 (JSR) |

### REDACTED REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

BAKER & HOSTETLER LLP

Gerald J. Ferguson, Esq.
Oren J. Warshavsky, Esq.
Kevin M. Wallace, Esq.
Megan A. Corrigan, Esq.
45 Rockefeller Plaza
New York, NY 10111
Telephone:   212.589.4200
Facsimile:   212.589.4201

Deborah A. Wilcox, Esq. (*pro hac vice*)
Key Tower
127 Public Square
Cleveland, OH 44114
Telephone:   216.621.0200

Lisa Bollinger Gehman, Esq. (*pro hac vice*)
1735 Market Street
Philadelphia, PA 19103
Telephone:   215.568.3100

**TABLE OF CONTENTS**

Page(s)

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.    THE UNCONTESTED FACTS SHOW ROTHSCHILD ADOPTED THE METABIRKINS MARK FOR COMMERCIAL, NOT ARTISTIC REASONS ... 2

    II.    THE UNDISPUTED MATERIAL FACTS CONCERNING THE *POLAROID* FACTORS SHOW A LIKELIHOOD OF CONSUMER CONFUSION ............... 6

CONCLUSION .............................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc.*,
    301 F.R.D. 31 (S.D.N.Y.), *objections overruled*,
    301 F.R.D. 47 (S.D.N.Y. 2014) ...................................................................................3, 5

*Hermès Int'l v. Rothschild*,
    No. 22-CV-384 (JSR), 2022 WL 1564597 (S.D.N.Y. May 18, 2022) ............................2, 6, 8

*Rogers v. Grimaldi*,
    875 F.2d 944 (2d Cir. 1989)..............................................................................................9

*Savin Corp. v. Savin Grp.*,
    391 F.3d 439 (2d Cir. 2004)..............................................................................................9

*Tiffany & Co. v. Costco Wholesale Corp.*,
    971 F.3d 74 (2d Cir. 2020)................................................................................................8

*Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*,
    925 F.2d 566 (2d Cir. 1991)..............................................................................................5

**Statutes**

15 U.S.C. § 1114(1)(a)..............................................................................................................8

**Rules**

Fed. R. Civ. P. 26(a)(2)............................................................................................................3

Fed. R. Civ. P. 37....................................................................................................................3

**Other Authorities**

Cameron Thompson, *Who What Wearables: A Guide to Digital Fashion and the*
    *Metaverse*, CoinDesk (Sept. 29, 2022),
    https://www.coindesk.com/business/2022/09/29/who-what-wearables-a-guide-
    to-digital-fashion-and-the-metaverse ..............................................................................10

Plaintiffs Hermès International and Hermès of Paris, Inc. (collectively, "Hermès") respectfully submit this memorandum of law in further support of their motion for summary judgment against Defendant Mason Rothschild ("Rothschild").

**PRELIMINARY STATEMENT**

Hermès brought this action because Rothschild was infringing Hermès's valuable BIRKIN trademark by promoting the sale of NFTs called METABIRKINS. Worse still, Rothschild associated these NFTs with files showing digital images of handbags that looked like Hermès's BIRKIN handbags. A traditional trademark infringement analysis using the *Polaroid* factors indisputably points in one direction only: Rothschild is an infringer.

Rothschild does not even try to dispute most of this evidence because he cannot. Instead, Rothschild runs a number of arguments, though none are persuasive. As he has since the case commenced, Rothschild argues that under *Rogers v. Grimaldi*, he is an artist entitled to use Hermès's trademark. But as this Court has twice explained, *Rogers* is not a blanket license to infringe. Instead, Rothschild must show that his use of the term METABIRKINS is artistically relevant and not explicitly misleading. Rothschild fails on both grounds: Rothschild used the name METABIRKINS to profit from Hermès's goodwill (the METABIRKINS NFTs were sold and *resold* as just a shrouded object), and he confused and explicitly misled the public.

Rothschild also seeks to use new evidence to rebut the record. Rothschild's own texts and testimony show ███████████████████████████████████████████████████

███████████████████████████. ████████████████████████████████████

███████████████████████████████████████████ Rothschild, for the first time, claims he was working with an unnamed individual (never previously disclosed or alluded to) to secure a meeting with Hermès. Confronted with Hermès quoting him and showing the evidence as developed, Dr. Gopnik, Rothschild's art expert, submits a post factum

1

declaration with facts and opinions not previously proffered, as well as explanations concerning his prior testimony and report. These new assertions fail to create an issue of fact, but even if they did, they are improper and should not be considered.

Hermès's motion for summary judgment should be granted.

## ARGUMENT

I. **THE UNCONTESTED FACTS SHOW ROTHSCHILD ADOPTED THE METABIRKINS MARK FOR COMMERCIAL, NOT ARTISTIC REASONS**

As this Court recently explained, the artistic relevance prong of *Rogers* "ensures that the defendant intended an artistic—i.e., noncommercial—association with the plaintiff's mark, as opposed to one in which the defendant intends to associate with the mark to exploit the mark's popularity and good will." *Hermès Int'l v. Rothschild*, No. 22-CV-384 (JSR), 2022 WL 1564597, at *6 (S.D.N.Y. May 18, 2022) (quotation omitted). The undisputed facts show Rothschild's commercial (and not artistic) intent in adopting METABIRKINS as a trademark and promoting the METABIRKINS NFTs as commodities:

- In a December 6, 2021 interview with *Yahoo! Finance*, Rothschild stated: "I wanted to see as an experiment to see if I could create the same kind of illusion that [the BIRKIN handbag] has in real life as a digital commodity. And I feel like I've kind of accomplished that . . . put[ing] together this kind of digital commodity everybody loves, bringing it into the digital world with this introduction of the metaverse and seeking how it works out and how it plays in the hands of like the community. . . ." (Def.'s Counterstatement to Pls.' Rule 56.1 Statement of Material Facts (ECF No. 86) ("Def. Opp. SOMF")[1] ¶ 168);

---

[1] All citations to Def. Opp. SOMF include both Hermès's statement of material facts and Rothschild's responses thereto.

- Rothschild described his METABIRKINS project as a "tribute to Herm[è]s' most famous handbag, the Birkin." (*Id.* ¶ 167); and

- Rothschild, for his benefit: (i) owns and operates a website at the domain name <MetaBirkins.com> (*Id.* ¶ 65); (ii) maintains, controls, and uses both Twitter and Instagram accounts using the handle @MetaBirkins (*Id.* ¶¶ 67-68); and (iii) created, runs, and operates the METABIRKINS Discord server. (*Id.* ¶ 69.)

Rothschild cannot dispute the METABIRKINS NFTs are digital commodities. It is undisputed that ███████████████████████████████████████████████████

███████████████████████████████████ (*Id.* ¶¶ 188-195, 198-200, 202, 204.) Faced with the reality of these undisputed statements showing Rothschild's intent to profit, Rothschild tries to recast facts through new testimony from Dr. Gopnik. (Oct. 21, 2022 Decl. of Dr. Gopnik (ECF No. 80) ("Gopnik Decl.").) However, Dr. Gopnik's unsubstantiated opinions regarding Rothschild's statements must be precluded.[2] Dr. Gopnik's improper opinions are magnified when viewed in conjunction with his prior testimony and report. (*See* Oct. 28, 2022 Decl. of Lisa Bollinger Gehman ("Gehman Decl."), Ex. 8.) Not only are Dr. Gopnik's unsupported claims about "shilling" and "pumping" fundamentally improper, he even testified that he was "not an NFT" or metaverse expert. (*Id.*, Ex. 10 at 188:2-189:8, 219:24-220:5.)

Rothschild's commercial intent is further evidenced by the METABIRKINS NFTs' attributes as digital brand (i.e., commercial) NFTs, not art-only projects. (Oct. 7, 2022 Decl. of

---

[2] Dr. Gopnik cannot "bolster, strengthen, or improve [his] report[] by endlessly researching the issues [he] already opined upon, or [] continually supplement [his] opinions." *Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc.*, 301 F.R.D. 31, 41 (S.D.N.Y.), *objections overruled*, 301 F.R.D. 47 (S.D.N.Y. 2014). Dr. Gopnik's declaration goes beyond his expert report, violating Rule 26(a)(2) as his opinions are new and do not stem from previously unknown or unavailable information. The new statements are provided to manufacture issues of fact and contradict his prior statements. Under Rule 37, Dr. Gopnik's declaration should be excluded.

3

Dr. Scott Duke Kominers ("Kominers Decl."), Ex. 1 at 16-34, 42-5, ECF No. 71-1.) Rothschild's art expert, Dr. Gopnik, stated that the METABIRKINS NFTs are "digital brand" NFTs. (Oct. 7, 2022 Decl. of Megan A. Corrigan ("Corrigan Decl."), Ex. 34 ¶¶ 22-27 (ECF No. 73-14).) Dr. Gopnik further stated that "Rothschild deliberately rejects the restricted world of 'art-only' NFTs (I have argued in the *Times* that its artistic potential is close to non-existent) and instead ventures into the world of 'digital-brand' NFTs that seems to have real leverage on our current reality." (*Id.* ¶ 22) Rothschild distinguishes among NFT projects as "utility driven" and "art driven" (Dr. Kominers distinguishes these as "digital brand" and "art-only" NFTs, respectively). (Def. Opp. SOMF ¶¶ 80-81.) Rothschild advocates that brands adopt "utility driven" NFT projects, and the uncontested facts show Rothschild does just that with the METABIRKINS NFTs:

- Rothschild created, operates, and actively engages with a Discord community under the name METABIRKINS, utilizing Discord moderators and managers. (*Id.* ¶ 69.) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.* ¶ 70);

- Rothschild promoted his I Like You You're Weird ("ILYYW") NFT project through channels associated with the METABIRKINS NFTs (*Id.* ¶ 72);

- Early community members of the METABIRKINS Discord were given "higher priority" for the ILYYW NFT project, including "white list" spots. (*Id.* ¶ 73);

- The images currently associated with the METABIRKINS NFTs can be worn, held, and displayed in virtual environments and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and could be made compatible with wearing in any virtual environment (*Id.* ¶¶ 98-100);

- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.* ¶ 74); and

4

- Rothschild ███████████████████████████████████████

  ███████████████████████████████████████████████

  ███████████████████████████████ (*Id.* ¶ 63.)

Rothschild's naked recharacterization of these undisputed facts cannot turn his commercial venture into an art project. He cannot create a material issue of fact by introducing either his or Dr. Gopnik's contradictory declarations. *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir. 1991); *Advanced Analytics, Inc.*, 301 F.R.D. at 41. Rothschild does not dispute that the digital files (i.e., the images of the handbags) currently associated with the METABIRKINS NFTs exist separate and apart from the NFTs themselves: the digital files are not on the blockchain like the NFTs, the digital files have changed over time, and they can be further changed at any time by Rothschild. (Def. Opp. SOMF ¶¶ 40, 45, 47.) The NFTs, by contrast, are immutable.

Further, it was the BIRKIN Mark that drove sales of the METABIRKINS NFTs, not the digital images associated with the METABIRKINS NFTs. (Kominers Decl., Ex. 1 at 1, 42-54.) Indeed, Rothschild sold minting rights to the 100 NFTs via a whitelist and then an additional 16 resales occurred (meaning 116 total sales occurred) even *before* the shrouded images were replaced by the handbag images. (Def. Opp. SOMF ¶¶ 42-43, 45-46.) Without citing any proof, Rothschild now claims that "the record shows that purchasers saw and doubtless understood that they were buying . . . artwork." (Def. Opp. at 7; Def. Opp. SOMF ¶ 45.) Worse, Rothschild has not produced any copies of the Discord post that allegedly showed the images of the handbags, which he testified that he later deleted. (Gehman Decl., Ex. 11 at 227:3-12, 234:17-235:4.)

Finally, it bears noting that Rothschild is not an artist. The designer here is Mark Berden, whose existence Rothschild shielded, even in this case. (Def. Opp. SOMF ¶ 244.) ███████

5

██████████████████████████████ (*Id.* ¶¶ 35, 51). ████████████

████████████████████████████████████████████████████

(Corrigan Decl., Ex. 23 at Rothschild008393-95 (ECF No. 73-07); Ex. 55 at Rothschild008316-17 (ECF No. 73-28); Gehman Decl., Ex. 11 at 135:7-136:16, 156:22-157:18, 229:5-230:15.)[3]

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████ (Corrigan Decl., Ex. 21 at 155:9-156:11; Oct. 21, 2022 Decl. of Mason Rothschild (ECF No. 79) ("Rothschild Opp. Decl.") ¶ 3; Def. Opp. SOMF ¶ 241.)

## II. THE UNDISPUTED MATERIAL FACTS CONCERNING THE *POLAROID* FACTORS SHOW A LIKELIHOOD OF CONSUMER CONFUSION

Even if *Rogers* applies, the Court must look at the *Polaroid* factors to determine the likelihood of consumer confusion, and, to the extent applicable, whether Rothschild's adoption and use of the METABIRKINS trademark was explicitly misleading. Application of the *Polaroid* factors unequivocally demonstrates that Rothschild's use of the METABIRKINS trademark for his NFT project infringes Hermès's BIRKIN Mark. Rothschild does not discuss the *Polaroid* factors in his opposition, tacitly conceding a likelihood of confusion, and that Rothschild's use of the METABIRKINS trademark was explicitly misleading. Instead, Rothschild urges the Court to disregard controlling Second Circuit law and apply a different standard. (Def. Opp. Br. at 14-18 (ECF No. 78).) As this Court has explained to Rothschild, if *Rogers* applies, "explicit misleadingness" is resolved by an examination of the *Polaroid* factors. *Hermès Int'l*, 2022 WL 1564597, at *5 (citation omitted).

---

[3] Hermès did not expect this point to be disputed. Rothschild's texts submitted with Hermès's Rule 56.1 Statement corroborate this fact. (Corrigan Decl., Ex. 23 at Rothschild008393-008395 (ECF No. 73-07); Ex. 55 at Rothschild008316-008317 (ECF No. 73-28).

6

The *Polaroid* factors weigh in Hermès's favor and demonstrate both a likelihood of confusion and that Rothschild's use and adoption of METABIRKINS was explicitly misleading.

**Rothschild's bad faith intent in adopting the METABIRKINS Mark**: As this Court explained, Hermès has pleaded "sufficient factual allegations to support a conclusion of . . . [Rothschild's] bad faith in adopting the mark." *Id.* at *6. Rothschild does not dispute his statements—now introduced as facts—which show he intended to profit by associating the METABIRKINS NFTs with the BIRKIN Mark:[4]

- Rothschild referred to the METABIRKINS NFTs as a "digital commodity" and stated that his: "goal is for MetaBirkins [sic] double as an investment for holders like the real-world 'holy grail' handbag." (*Id.* ¶¶ 168-169);

- In a draft description, Rothschild stated the METABIRKINS were "a collection of *100 unique Birkin NFTs* in simulated fur. MetaBirkins are a riff on Hermes' most famous handbag, the Birkin. . . .'" (*Id.* ¶ 206) (emphasis added);

- Rothschild ran a contest on Twitter ahead of the METABIRKINS NFTs release, describing the NFTs as "one of a kind, Birkins" (*Id.* ¶ 245); and

---

[4] Rothschild's bad faith is further evidenced by refusing to comply with discovery. (Gehman Decl. ¶¶ 1-11, Exs. 1-7.) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (Corrigan Decl., Ex. 122 (ECF No. 73-69); Ex. 128 (ECF No. 73-73).)  Rothschild argues that a one-page, unmarked invoice, included in an 18,619-page production, was sufficient. He now claims he emailed Berden (Rothschild Opp. Decl. ¶ 3), but no emails were produced. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Rothschild now claims an unidentified "former CEO" was procuring a meeting with Hermès. (Def. Opp. SOMF ¶ 173; Rothschild Opp. Decl. ¶ 6.) Lastly, Rothschild now argues that two documents each with one line of text—submitted 500 pages apart—show that he did not want the NFT minting process to use the term "BIRKIN," though evidence clearly shows otherwise. (Gehman Decl. ¶¶ 6-11, Ex. 6.) This Court should not take notice of any of these purported facts.

7

- ███████████████████████████████████████████████████████████
  ██████████████████ (*Id.* ¶ 176.)

**Strength of the mark**: Rothschild admits the BIRKIN Mark is strong. (*Id.* ¶¶ 29, 84-86.)

**Similarity of the marks**: Unable to deny the similarity of the BIRKIN Mark with METABIRKINS—which in its entirety encompasses "BIRKIN"—Rothschild claims METABIRKINS is not a mark. (Def. Opp. SOMF ¶¶ 17, 88.) However, Rothschild does not dispute how he uses METABIRKINS (Def. Opp. SOMF ¶¶ 65-70), and as a matter of law, those uses are source-identifying and thus, METABIRKINS serves as a mark. *See Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 92 (2d Cir. 2020). Further, Rothschild's use of METABIRKINS need not be a mark in order to infringe. 15 U.S.C. § 1114(1)(a).

**Actual confusion**: This Court explained that the Amended Complaint contained allegations of evidence "of actual confusion on the part of both consumers and the media about Hermès's affiliation with Rothschild's MetaBirkins collection, believing there is such an affiliation and mistakenly reporting it as such." *Hermès Int'l*, 2022 WL 1564597, at *6, n.4. Rothschild does not dispute any of this evidence. ████████████████████████████
████████████████████████ (Def. Opp. SOMF ¶ 120.) Multiple publications reported that METABIRKINS NFTs were either affiliated with, created by, released by, or authorized by Hermès—one even after this lawsuit was commenced—such as *Elle UK*, *New York Post*, *L'Officiel*, and *Challenges*. (*Id.* ¶¶ 121, 123-129.) Multiple tweets and online comments referred to the NFTs as "Birkins" and commented that Hermès released or created a BIRKIN NFT (*Id.* ¶¶ 130-151), including a user commenting on Rothschild's tweet: "A birkin bag? Oh my god a birkin bag??" (*Id.* ¶ 138.) An intellectual property lawyer believed that Hermès authorized or was affiliated with METABIRKINS. (*Id.* ¶¶ 152-158.) ████████████████████████

8

███████████████████████████████

███████████████████ (*Id.* ¶ 159.) Rothschild's publicist constantly had to tell people that Rothschild was not affiliated with Hermès. (*Id.* ¶ 122; Gehman Decl., Ex. 13 at 49:16-22.)

A confusion survey is not required, but Hermès's survey showing 18.7% net confusion is further evidence of actual confusion.[5] *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 459 (2d Cir. 2004); (Oct. 7, 2022 Decl. of Dr. Bruce Isaacson ("Isaacson Decl."), Ex. 1 at 1, 15, 38 (ECF No. 67-1).) Dr. Neal's survey critique is outside of established survey practice. While Dr. Neal criticized the survey's use of the term "items," proffering only a replacement term of "NFT" (Def. Opp. Br. at 2), he did not conduct a survey and thus there is no evidence that applying his criticism of the way the survey stimulus was presented would have yielded different results. (Def. Opp. SOMF ¶ 173.) Dr. Neal agreed that the stimulus a survey expert shows respondents needs to recreate the real world. (Corrigan Suppl. Decl., Ex. 141 at 57:11-59:3 (ECF No. 85-12).) It is undisputed that use of a leading term impedes the respondent from encountering the website as they would in the real world. Dr. Isaacson showed respondents the website where Rothschild advertised the METABIRKINS NFTs, measuring confusion by determining whether respondents associated the site with Hermès. (Isaacson Decl., Ex. 1 at 1, 3-7, 15, 38 (ECF No. 67-1).)

**Likelihood that Hermès will bridge the gap**: Rothschild admits Hermès is likely to bridge the gap. (Def. Opp. SOMF ¶¶ 109-111, 113-115, 117-119.)

**Respective quality**: Rothschild neither disputes that Hermès's BIRKIN handbag is of high-quality (*Id.* ¶¶ 214-215) nor that ████████████████████████████████

---

[5] Rothschild again mischaracterizes the survey in *Rogers*, suggesting 38% confusion was deemed insufficient (Def. Opp Br. 18). The *Rogers* court assumed the survey's validity and the actual confusion measured was 14%. *Rogers v. Grimaldi*, 875 F.2d 944, 1001 n.8 (2d Cir. 1989).

9

██████████████████████████████

███████████████ (*Id.* ¶¶ 216-218.)

**Sophistication of consumers**: Rothschild does not dispute comments consumers posted on social media. (*Id.* ¶ 130-151.) This evidence of actual confusion demonstrates that the nascent NFT community is not discerning, despite the high price of the METABIRKINS NFTs. Indeed, the NFT community is relatively young and not well versed in this new and fast-paced market.

**Competitive proximity**: Though the digital files associated with the METABIRKINS NFTs currently have a two-dimensional utility, ████████████████████████████

████████████████████████████████████████ (Def. Opp. SOMF ¶¶ 98-100.) Rothschild can replace the current files associated with the METABIRKINS NFTs with a 3D handbag wearable in the metaverse. (*Id.* ¶¶ 38, 40, 99-100.) Rothschild argues "wearable" is contrary to common usage and inconsistent with the dictionary definition. (*Id.* ¶¶ 95, 102, 116.) However, the definition of "wearable" has evolved with the metaverse.[6] As explained by Hermès, "in the metaverse, . . . you can wear the MetaBirkin on your internet account . . . [and] in [a] profile picture – so for me it's a wearable handbag." (*Id.* ¶ 95.) Further, Dr. Gopnik previously opined that Rothschild and Hermès "are exploring similar terrain." (Corrigan Decl., Ex. 34 at ¶ 22 (ECF No. 73-14); Def. Opp. SOMF ¶ 106.) Dr. Gopnik cannot now recant his opinion by submitting a declaration. (Gopnik Decl. ¶ 4.)

## CONCLUSION

For the foregoing reasons, Hermès respectfully requests that this Court grant its motion for summary judgment on all of its claims.

---

[6] Cameron Thompson, *Who What Wearables: A Guide to Digital Fashion and the Metaverse*, CoinDesk (Sept. 29, 2022), https://www.coindesk.com/business/2022/09/29/who-what-wearables-a-guide-to-digital-fashion-and-the-metaverse/

10

Dated: October 28, 2022
       New York, New York

**BAKER & HOSTETLER LLP**

Deborah A. Wilcox, Esq. (*pro hac vice*)
Key Tower
127 Public Square
Cleveland, OH 44114
Telephone:   216.621.0200

**BAKER & HOSTETLER LLP**

Lisa Bollinger Gehman, Esq. (*pro hac vice*)
1735 Market Street
Philadelphia, PA 19103
Telephone:   215.568.3100

**BAKER & HOSTETLER LLP**

By:   /s/ *Gerald J. Ferguson*
Gerald J. Ferguson, Esq.
Oren J. Warshavsky, Esq.
Kevin M. Wallace, Esq.
Megan A. Corrigan, Esq.
45 Rockefeller Plaza
New York, NY 10111
Telephone:   212.589.4200
Facsimile:   212.589.4201

*Attorneys for Plaintiffs*
*Hermès International and*
*Hermès of Paris, Inc.*

11