# Exhibit 8

**CHART COMPARING DR. BLAKE GOPNIK'S EXPERT REPORT AND DEPOSITION WITH HIS DECLARATION**

| Topic | Excerpts from the September 1, 2022 Expert Report[1] and September 23, 2022 Deposition of Dr. Blake Gopnik[2] | Excerpts from the October 21, 2022 Declaration of Dr. Blake Gopnik[3] |
|---|---|---|
| **Rothschild's relationship with Mark Berden**<br><br>**Plans for a fur-covered "horse charm"**<br><br>**Other products from Hermès** | *Mark Berden is not discussed in the report.*<br><br>*Horse charm is not discussed in the report or deposition.*<br><br>*Rocabar/horse blanket is not discussed in the report or the deposition.* | I note that such interaction is very much revealed in Mr. Berden and Mr. Rothschild's discussion of their (rather comic and clever, I think) planning for a possible image of a fur-covered "horse charm" to add to their image of the fur-covered Birkin, thereby mimicking the (rather silly and cheesy, I think) association of actual Birkin bags with Hermès's own "horse charms," provided by the company to clients most of whom have never been within a bridle's length of a horse. Working with Mr. Berden as his technician/consultant, Mr. Rothschild considers completing his satirical depiction of Birkin bags, as deluxe commodities, by imagining a kind of fictional situation in which the fur on his "MetaBirkins" seems to spread, almost contagiously, even to the horse charms that might come with them. The more elements Mr. Rothschild appropriates from the Hermès repertoire, the more effective and complete his artistic comment on the brand, and all such branding, would be. (Had I been engaged as an art-critical consultant on the "MetaBirkins" project, I |

[1] Oct. 7, 2022 Decl. of Megan A. Corrigan, Ex. 34 (ECF No. 73-14).
[2] Oct. 7, 2022 Decl. of Megan A. Corrigan, Ex. 43 (ECF No. 73-18); Oct. 21, 2022 Suppl. Decl. of Megan A. Corrigan, Ex. 135 (ECF No. 85-6); Oct. 28, 2022 Decl. of Lisa Bollinger Gehman, Ex. 10.
[3] Oct. 21, 2022 Decl. of Dr. Blake Gopnik (ECF No. 80).

| Topic | Excerpts from the September 1, 2022 Expert Report[1] and September 23, 2022 Deposition of Dr. Blake Gopnik[2] | Excerpts from the October 21, 2022 Declaration of Dr. Blake Gopnik[3] |
|---|---|---|
| | | would have suggested that Mr. Rothschild also create a furry version of the $700 Rocabar "horse blanket" (so-called) that Hermès has made almost as famous as its Birkin bags. Had Mr. Rothschild accepted my suggestion, he would not thereby have relinquished his role as the true artist of the "Metabirkins" project.) (Gopnik Decl. at ¶ 15) (ECF No. 80). |
| **"Whales," "sweeping the floor," and "shill"**<br><br>**Mercantile aggression** | *Whales, sweeping the floor, and shill are not discussed in the expert report or the deposition.*<br><br>I'm not an NFT expert let alone a blockchain expert." (*See* Oct. 28, 2022 Decl. of Lisa B. Gehman ("Gehman Decl."), Ex. 10 at 220:4-5.)<br><br>"I am not an expert on the metaverse. I have some knowledge of it. (Gehman Decl., Ex. 10 at 189:7-8.) | I would also like to state that much of the material presented in Plaintiffs' Rule 56.1 Statement of Material Facts, in which Mr. Rothschild is shown discussing how he might sell and profit from his "MetaBirkins" artworks—by trying to engage the interest of "whales," for instance, or by "sweeping the floor" and getting influential buyers to "shill" for him—indicates that Mr. Rothschild was acting as a perfectly normal emerging artist trying to maximize income, in the knowledge that it might very well evaporate later, as so often happens. It is worth mentioning that the mercantile aggression evident in some of Mr. Rothschild's communications, which Plaintiffs seem to portray as egregious and in some way "un-artistic," is normal in the very rough-and-tumble culture of NFTs, where the politesse that prevails in galleries and auction houses — or at least in their public spaces — is deliberately avoided, and where evidently financial ambitions and concerns are expressed openly, despite the artistic values that are |

| Topic | Excerpts from the September 1, 2022 Expert Report[1] and September 23, 2022 Deposition of Dr. Blake Gopnik[2] | Excerpts from the October 21, 2022 Declaration of Dr. Blake Gopnik[3] |
|---|---|---|
| | | also very clearly in play. (Gopnik Decl. at ¶ 17) (ECF No. 80). |
| **The "MetaBirkins" title**<br><br>**Warhol openly asking for suggestions on all aspects of his art**<br><br>**"The Factory"** | *Topic of how Rothschild sought input on the naming of MetaBirkins was not in the report.*<br><br>Q. Did [Andy Warhol] have a name for his studio?<br><br>A. No.<br><br>Q. Did he operate something called The Factory?<br><br>A. No.<br><br>Q. In popular cultural is it believed that Andy Warhol operated something called The Factory?<br><br>A. That is one of many misconceptions about Andy Warhol's studios, plural.<br><br>Q. Did he ever use the term "factory" as part of his operations?<br><br>A. He absolute did, yes.<br><br>Q. What did The Factory refer to?<br><br>A. The Factory referred to one particular space on 47th Street -- well, I'm sorry, I'm wrong. Andy Warhol tended to use the phrase "the | The concerns that Plaintiffs have expressed concerning the titling of Mr. Rothschild's "MetaBirkins" are also misplaced. When Mr. Rothschild sought input from others in choosing his title, he was acting as any fine artist might, involving his social circle in his acts of creation. Like many, many artists over the last 500 years, Andy Warhol himself is well known to have openly asked those around him for suggestions on all aspects of his art, and to have used their suggestions with enthusiasm — and without thereby diminishing his own artistic status. In particular, there is good evidence that one of Warhol's most famous creations, the loft where he gathered his famous crew of Superstars, was only given its title, "The Factory," in consultation with his assistants and friends. (Gopnik Decl. at ¶ 10) (ECF No. 80). |

| Topic | Excerpts from the September 1, 2022 Expert Report[1] and September 23, 2022 Deposition of Dr. Blake Gopnik[2] | Excerpts from the October 21, 2022 Declaration of Dr. Blake Gopnik[3] |
|---|---|---|
| | factory" to refer to a space on 47th Street at -- between Third and Second Avenue that was occupied between mid to late January of 1964 and I believe January 1st of 1968. I can give you the measurements of the space if you'd like. The public uses the phrase "The Factory" in many ways, including many that are incorrect. Andy Warhol actually objected to some uses of the phrase "The Factory" to refer to his studio.<br><br>Q. How did Andy Warhol use the space on 47th Street that you just described?<br><br>A. He used it to make art. It was his studio, I'm sorry.<br><br>Q. And did he refer to the studio as The Factory?<br><br>A. On some occasions he did.<br><br>(Gehman Decl., Ex. 10 at 227:11-228:18.) | |
| **"NFT art"**<br><br>**Digital art** | Using the language of the Kominers report, you could say that, as an artist, Rothschild deliberately rejects the restricted world of "art-only" NFTs (I have argued in the Times that its artistic potential is close to non-existent) | Plaintiffs present an even more egregious distortion of my position in the following assertion: "Dr. Gopnik admits that ' "NFT art" simply does not exist.' He explains that the image contained in a video file associated with any NFT, including the METABIRKINS NFTs is not art." In my New York Times article from which Plaintiffs have |

| Topic | Excerpts from the September 1, 2022 Expert Report[1] and September 23, 2022 Deposition of Dr. Blake Gopnik[2] | Excerpts from the October 21, 2022 Declaration of Dr. Blake Gopnik[3] |
|---|---|---|
| | (Corrigan Decl., Ex. 34 at ¶ 22) (ECF No. 73-14).<br><br>There are certain activities that are all about owning certain objects that for whatever bizarre reason are the -- a group of people in the culture think is valuable, so stamps or baseball cards or in some cases great old master paintings. (Gehman Decl., Ex. 10 at 155:14-18; (Gehman Decl., Ex. 192.)<br><br>At the moment that they're collectibles, they're not art, which is why I mentioned great old master paintings. If you're collecting them in order to check a box and say, I own X, then in fact they're not functioning as art at that moment. (Gehman Decl., Ex. 10 at 155:20-25.)<br><br>Q. And why is the concept NFT art incoherent?<br><br>A. Because, as with all concepts, it's used in a particular way. People refer to NFT art when what they really mean is the image that the NFT is attached to. When people talk about NFTs having certain artistic qualities, they are really talking about the qualities of an image, except in certain business art cases where the NFT itself is playing a role and the NFTness is playing an | extracted the direct quote in that assertion, the whole point is that the digital entities we normally refer to as "NFT art" don't deserve that name specifically because they are so very obviously the same kind of digital art that we have known for decades. That is, if they are not "NFT art" it is by virtue of their being precisely the same as digital art that doesn't bear the title "NFT"— contra Plaintiffs, my position is that NFTs, as commonly understood, are very much art, of a relatively traditional kind. This is because most image-based NFTs (those are the ones the public normally has in mind in discussions of art) have almost no meaning at all apart from the quite traditional digital images to which they are attached. I made my views on the artistic status of NFTs, and their images, very clear when I was questioned at length on the topic by Plaintiffs' counsel during my sworn deposition; those views were grossly distorted in Plaintiffs' Motion. (Gopnik Decl. at ¶ 5) (ECF No. 80). |

| Topic | Excerpts from the September 1, 2022 Expert Report[1] and September 23, 2022 Deposition of Dr. Blake Gopnik[2] | Excerpts from the October 21, 2022 Declaration of Dr. Blake Gopnik[3] |
|---|---|---|
| | artistic role. (Corrigan Decl., Ex. 43 at 180:11-19) (ECF No. 73-18.)<br><br>Q. Are the MetaBirkin NFTs, the MetaBirkins NFTs, the actual NFTs, business art?<br><br>A. They do seem to function as that, yes. That's the argument of my report.<br><br>Q. How do the MetaBirkins NFTs function as business art?<br><br>A. By virtue of participating in the world of business and deluxe commodities, commenting on it, seeming to refer to it and also to have some distance from it. I'm trying to think. It's late in the day for me to do sophisticated art criticism. They have various markers that show them interacting with that world but also having a certain distance from that world. Those are hallmarks of business art. They seem to also, very importantly, be continuous with other works in the history of business art in the twentieth century. They seem to live naturally and participate in dialogue with those other works. In particular their pop art qualities make you think immediately of Warhol and his legacy. | |

| Topic | Excerpts from the September 1, 2022 Expert Report[1] and September 23, 2022 Deposition of Dr. Blake Gopnik[2] | Excerpts from the October 21, 2022 Declaration of Dr. Blake Gopnik[3] |
|---|---|---|
|  | Q. Is the fact that MetaBirkins were traded and what that trading means part of their status as business art?<br><br>A. Yes, I would say they are. The one -- one -- not the only one but one component in business art is the way in which it actually participates in the financial world, just like the investors, the artists who invest in money as a form of art as an artistic medium in the late 1960s. That can be one component in business art.<br><br>(Gehman Decl., Ex. 10 at 201:6-202:15.) |  |
| **The NFT and the image**<br><br>**"Bored Apes" NFT** | Rothschild's "MetaBirkins" are likewise more notable for their cultural presence as a collection of works for sale than for their virtues as individual aesthetic objects. (Corrigan Decl., Ex 34 at ¶ 30) (ECF No. 73-14).<br><br>As I argued in a lengthy recent treatment of NFTs, commissioned from me by the New York Times, these blockchain tokens themselves don't have any real aesthetic value, since they are nothing more than certificates of authenticity that can be attached to any kind of art object at all, regardless of its appearance.17 Where they do truly take their place in art history, I explained, is within the Business Art tradition, where the fact that they get traded, and what that | Plaintiffs' suggestion that Mr. Rothschild should be conceived as trading in NFTs that exist independently of their images is simply meaningless and incoherent. Specifically image-based NFTs such as Mr. Rothschild's get most of their meaning and identity, and their monetary value (if any) from the digital images which they certify and to which they point—any "utilities" that they also carry are normally added to increase the initial interest generated by those images, not to render the images irrelevant. Just as the deed to a house, or the certificate of ownership for a painting, would be essentially meaningless and valueless if the house or painting were destroyed or fundamentally altered, so an image-based NFT without its image would have almost no meaning or |

| Topic | Excerpts from the September 1, 2022 Expert Report[1] and September 23, 2022 Deposition of Dr. Blake Gopnik[2] | Excerpts from the October 21, 2022 Declaration of Dr. Blake Gopnik[3] |
|---|---|---|
| | trading means, are vital to their cultural power. (Corrigan Decl., Ex 34 at ¶ 13) (ECF No. 73-14).<br><br>For example, the central interest in the rather banal digital images of the famous NFTer known as Pak comes from the way they are offered to the public for just minutes at a time, with the total number you buy affecting the kind of NFT'd image you get. The central interest in Rothschild's "MetaBirkins" NFTs similarly comes from their place as high-priced commodities in the immaterial blockchain economy, and how that closely echoes the place that Hermès's Birkin bags take up in the real world of material goods and that Kominer's so-called "digital brands" take up in the world of NFTs. (Corrigan Decl., Ex 34 at ¶ 33.)<br><br>Images are visual objects with qualities. They could be produced as JPEGs, in which case they'd be digital, in fact, digital files. But they have visual instantiation. They could be crayon drawings. They could be any number of things. NFTs are non-fungible tokens, a particular kind of digital object on the blockchain. It's really -- they can be contracts. They have varied states of existence, but they're really a digital-only kind of phenomenon that's specific to the blockchain. They can do all sorts of different work, so it's hard to specify what an NFT is. They can do -- | worth. It acquires meaning and worth by virtue of the specific image to which it is attached. To give just one example, the value (cultural and monetary) that a buyer attaches to the most famous of all NFTs, the so-called "Bored Apes," varies very much depending on the appeal of any particular Ape image to that buyer. (Of course, just as in traditional fine art, other factors—of scarcity, provenance, date of production, potential contact or friendship with the maker—also affect a buyer's judgments of value.) (Gopnik Decl. at ¶ 6) (ECF No. 80). |

| Topic | Excerpts from the September 1, 2022 Expert Report[1] and September 23, 2022 Deposition of Dr. Blake Gopnik[2] | Excerpts from the October 21, 2022 Declaration of Dr. Blake Gopnik[3] |
|---|---|---|
| | have various relationships to different kinds of objects or none at all.<br><br>Q. Is the image distinct from the NFT?<br><br>A. Yes.<br><br>(Gehman Decl., Ex. 10 at 178:13-179:6.) | |
| **"[T]he cultural disturbance caused by Mason Rothschild's 'MetaBirkins' – including to the Hermès company — indicates that they are exploring similar terrain"** | Once the avant-garde had declared the death of the traditional media of painting and sculpture—in part because any aesthetic dividends they paid seemed to have been swamped by their financial returns—business itself seemed to be the art supply most likely to cast light on the commercialized world that surrounds us. The more that art might be confused with commerce, the more likely it was to have impact as truly novel and significant art that might puzzle and disturb. The cultural disturbance caused by Mason Rothschild's "MetaBirkins"—including to the Hermès company—indicates that they are exploring similar terrain. By participating in the world of digital brands, home to Hermès and other high-end commodities, Rothschild gets to probe how fine art and branding might interact in the 21st century. Using the language of the Kominers report, you could say that, as an artist, | My expert report, as quoted by Plaintiffs, notes that "the cultural disturbance caused by Mason Rothschild's 'METABIRKINS'— including to the Hermès company — indicates that they are exploring similar terrain." Let me state clearly that in the original context of that report, the "they" in my sentence very evidently refers to the "MetaBirkins" themselves, which, as I explain, are exploring similar terrain to the avant-garde artworks involved in Business Art, which I had invoked two sentences earlier. Plaintiffs incorrectly suggest instead that I meant that Mr. Rothschild's "MetaBirkins" and the Hermès company are exploring similar terrain; this could hardly be further from the truth, since Hermès is involved in the production and sale of luxury goods while Mr. Rothschild's "MetaBirkins" are works of Business Art that comment on such production and sale. (And let me note Plaintiffs' alteration of my |

| Topic | Excerpts from the September 1, 2022 Expert Report[1] and September 23, 2022 Deposition of Dr. Blake Gopnik[2] | Excerpts from the October 21, 2022 Declaration of Dr. Blake Gopnik[3] |
|---|---|---|
| | Rothschild deliberately rejects the restricted world of "art-only" NFTs (I have argued in the Times that its artistic potential is close to non-existent)11 and instead ventures into the world of "digital- brand" NFTs that seems to have real leverage on our current reality. Rothschild's art would have far less significance if it had not crossed over into Hermès-style branding. As discussed below, almost the only artistic potential of NFTs comes from their contacts with novel marketing—that is, their potential lies in their success as Business Art. And to be successful as Business Art, Rothschild's work needs to have the closest of connections with visibly successful business. (Corrigan Decl., Ex 34 at ¶ 22.)<br><br>*This provision of the report was not raised in deposition.* | original quote, capitalizing all the letters in the word "MetaBirkins" that I had merely put between quotation marks, as one would with any artwork's title. Plaintiffs no doubt deployed the all- capped form METABIRKINS to make that title look more like a trademark as used in commerce, in support of their claims on that topic which my evidence otherwise undermines.) (Gopnik Decl. at ¶ 4) (ECF No. 80). |
| "NFT art" | Once the avant-garde had declared the death of the traditional media of painting and sculpture— in part because any aesthetic dividends they paid seemed to have been swamped by their financial returns—business itself seemed to be the art supply most likely to cast light on the commercialized world that surrounds us. The more that art might be confused with commerce, the more likely it was to have impact as truly novel and significant art that might puzzle and | And again contra Plaintiffs, I certainly do not believe, and have never stated, that the digital images with which NFTs are associated are not art. For several decades I have been well known as one of the more ardent supporters of digital artworks, of many kinds—that is, of artworks in the same media as the images with which NFTs are most commonly associated. Whether or not such digital artworks come associated with NFTs does not affect their status as works of art or my opinion of |

| Topic | Excerpts from the September 1, 2022 Expert Report[1] and September 23, 2022 Deposition of Dr. Blake Gopnik[2] | Excerpts from the October 21, 2022 Declaration of Dr. Blake Gopnik[3] |
|---|---|---|
| | disturb. The cultural disturbance caused by Mason Rothschild's "MetaBirkins"—including to the Hermès company—indicates that they are exploring similar terrain. By participating in the world of digital brands, home to Hermès and other high-end commodities, Rothschild gets to probe how fine art and branding might interact in the 21st century. Using the language of the Kominers report, you could say that, as an artist, Rothschild deliberately rejects the restricted world of "art-only" NFTs (I have argued in the Times that its artistic potential is close to non-existent) and instead ventures into the world of "digital- brand" NFTs that seems to have real leverage on our current reality. Rothschild's art would have far less significance if it had not crossed over into Hermès-style branding. As discussed below, almost the only artistic potential of NFTs comes from their contacts with novel marketing—that is, their potential lies in their success as Business Art. And to be successful as Business Art, Rothschild's work needs to have the closest of connections with visibly successful business. (Corrigan Decl., Ex 34 at ¶ 22.)<br><br>For example, the central interest in the rather banal digital images of the famous NFTer known as Pak comes from the way they are offered to the public for just minutes at a time, with the | them as such. (Although I have, of course, criticized bad examples of digital art, of which there are probably no more — but also no less — than there are bad examples of painting and sculpture.) Plaintiffs simply made up my rejection of digital art to suit the convenience of Plaintiffs' argument. (Gopnik Decl. at ¶ 7) (ECF No. 80). |

| Topic | Excerpts from the September 1, 2022 Expert Report[1] and September 23, 2022 Deposition of Dr. Blake Gopnik[2] | Excerpts from the October 21, 2022 Declaration of Dr. Blake Gopnik[3] |
|---|---|---|
| | total number you buy affecting the kind of NFT'd image you get. The central interest in Rothschild's "MetaBirkins" NFTs similarly comes from their place as high-priced commodities in the immaterial blockchain economy, and how that closely echoes the place that Hermès's Birkin bags take up in the real world of material goods and that Kominer's so-called "digital brands" take up in the world of NFTs. (Corrigan Decl., Ex 34 at ¶ 33.)<br><br>But of course Rothschild's full title, "MetaBirkins," adds to the Birkins that it describes as his subject, just as his artwork goes beyond a simple realist depiction of the Hermès bags. Rothschild himself has said that one thing he has in mind, in his artistic experimentation, is to transfer the Birkin bag, with all its real-world cultural baggage, into a digital world where virtuality reigns—that is, into what is often called the "metaverse." The "meta" in the title "MetaBirkins" flags that attempt, and helps to make clear at least one aspect of Rothschild's larger project: It tells us to consider the bag we see in Rothschild's NFT as a new kind of elite metaversal commodity. Rothschild's art asks us to imagine the "Metabirkin" as the kind of deluxe Hermès bag a MetaKardashian might carry, in the virtual reality we will all inhabit—at least if Mark Zuckerberg has his way. That lends | |

| Topic | Excerpts from the September 1, 2022 Expert Report[1] and September 23, 2022 Deposition of Dr. Blake Gopnik[2] | Excerpts from the October 21, 2022 Declaration of Dr. Blake Gopnik[3] |
|---|---|---|
| | a speculative quality to Rothschild's work that aligns it with certain kinds of literary science fiction, where current cultural trends and goods are extrapolated into the future. (Corrigan Decl., Ex 34 at ¶ 37.)<br><br>Q. Let me start that question again. Referring to page 11, the sentence that begins on the third line. "Using the language of [Kominers] report, you could say that as an artist Rothschild deliberately rejects the restricted world of art-only NFTs. I have argued in The Times that its artistic potential is close to nonexistent and instead ventures into the world of digital brand NFTs that seems to have real leverage in our current reality." In this sentence are you adopting the categories of art-only NFTs and digital brand NFTs?<br><br>A. Quite the opposite. By using the phrase "using the language of the Kominers' report," I'm making it quite clear that I think that is particular to him. And in fact quite clearly I say that the artistic point of Rothschild is to deny that distinction, in a sense. That sentence is partly meant to show the distinction is not accurate. And it's in the language of the Kominers' report; it isn't something that exists outside of the Kominers' report. | |

| Topic | Excerpts from the September 1, 2022 Expert Report[1] and September 23, 2022 Deposition of Dr. Blake Gopnik[2] | Excerpts from the October 21, 2022 Declaration of Dr. Blake Gopnik[3] |
|---|---|---|
| | Q. Your report states that you have argued in The Times that the artistic potential of art-only NFTs is close to nonexistent.<br><br>Q. Is that correct?<br><br>A. That parenthesis is oversimplifying my argument in The Times. I would need to explain at some length what I mean by "art-only NFTs." That is a very, very distilled version of my argument in The Times.<br><br>Q. So what do you mean by "art-only NFTs"?<br><br>A. NFTs that consistent -- NFTs are very complicated. NFTs that point only to images and are considered only insofar as those images represent the entire NFT are not interesting as works of art.<br><br>(Gehman Decl., Ex. 10 at 85:21-87:20.) | |
| "'Business Art' practice requires its maker to actively and very visibly engage in real business activities" | *Commercial ambition is not discussed directly in the report or the deposition.*<br><br>Q. I'm referring you to an exchange that begins on Rothschild8419 and continues on to the next page. I'll start with messages from Rothschild to Mark Design. At the middle of 8419 Rothschild says, Let me know what you think about for | Even after they had long-since "emerged" as artists, Rembrandt, Edvard Munch and of course Andy Warhol were all aggressive profit-seekers at the same time as they made great art — and some aspects of their great art, and of its greatness, relate directly to their commercial ambitions. In particular, a Business Art practice in the Warhol tradition, such as Mr. Rothschild's, requires its |

| Topic | Excerpts from the September 1, 2022 Expert Report[1] and September 23, 2022 Deposition of Dr. Blake Gopnik[2] | Excerpts from the October 21, 2022 Declaration of Dr. Blake Gopnik[3] |
|---|---|---|
| | compensation as well. Next message: This could be a huge product -- project. Mark Design replies, Let's go with the percentage after sale as I am too busy to even think about a number. XD -- I imagine that's an emoji. All right. I cleared my schedule for three days. Let's print some money. Does that statement, "let's print some money," indicate to you in any way whether this is a business art project?<br><br>A. No, it tells me nothing one way or the other.<br><br>Q. And why is that?<br><br>A. Because all artists want to make money off their work, so it could be an incredibly dull painting of a seascape or it could be the most interesting avant-garde video business art project. The fact someone wants to make money off of it tells me nothing.<br><br>MR. SPRIGMAN: Okay. Jerry, I just want to note for the record before we leave that the "let's print some money" appears to be a statement from Mark Design to Mason Rothschild. Did you suggest otherwise?<br><br>MR. FERGUSON: Yes. I thought I made that clear. | maker to actively and very visibly engage in real business activities in order for that maker's commentary on business and art, and the business of art, to be most potent and convincing — and to be perplexing and even confusing as well, in the great tradition of modern art. (Gopnik Decl. at ¶ 18) (ECF No. 80). |

| Topic | Excerpts from the September 1, 2022 Expert Report[1] and September 23, 2022 Deposition of Dr. Blake Gopnik[2] | Excerpts from the October 21, 2022 Declaration of Dr. Blake Gopnik[3] |
|---|---|---|
| | MR. SPRIGMAN: No.<br><br>Q. That statement, "let's print some money," was from Mark Design to Mason Rothschild. Does that change your answer?<br><br>A. I had thought it was the opposite.<br><br>Q. Okay.<br><br>A. Let me think if it changes. Only to say that everyone wants to print some money. In this case Mark Design would like to make some money. I would also like to make some money. I don't think that tells you anything about much of anything in the case of anyone doing anything.<br><br>(Gehman Decl., Ex. 10 at 251:10-253:8.) | |
| **Titles of Warhol's work**<br><br>**Titles of unnamed artists' work** | *Topic of how Rothschild sought input on the naming of MetaBirkins was not in the report.*<br><br>"At its most basic, the title "MetaBirkins" does what titles in art most commonly do: It indicates the subject of the artwork." (Corrigan Decl., Ex. 34 at ¶ 36.) | In fact, like most artists in history, Warhol left the vast majority of his other works without formal titles; the ones that we now use were given by dealers or collectors or later art historians, and in fact exist in multiple, conflicting versions for certain works. In general, the public (and, apparently, Plaintiffs' counsel) vastly overestimates the significance of the titles they see attached to artworks; those, like the titles of Warhol's pictures, often have little or no links to the artists themselves. In my decades of close contact with |

| Topic | Excerpts from the September 1, 2022 Expert Report[1] and September 23, 2022 Deposition of Dr. Blake Gopnik[2] | Excerpts from the October 21, 2022 Declaration of Dr. Blake Gopnik[3] |
|---|---|---|
| | | artists, I have found that when they do choose to title a work (they very often prefer the contentless title, "Untitled") many of them do so quite casually, at the last minute before an exhibition or sale, merely so that the work can be told apart from others in reviews or on a price list. (Gopnik Decl. at ¶ 11) (ECF No. 80). |
| **Rothschild choosing title** | "[b]ut the prefix 'meta-' in Rothschild's title also fulfills another, possibly more important function. It tells an informed viewer that the interest we are supposed to take in the Birkin that Rothschild has labelled 'meta' comes from a larger comment it makes, rather than from its mere virtues as a depiction of a fancy purse." (Corrigan Decl., Ex. 34 at ¶ 39).<br><br>"[t]his has been one standard use of the prefix 'meta-' for several decades: A painting that repeats a famous work from the past, such as the Mona Lisa, counts as a 'metapainting': It takes a distant look at the meaning and history of how artists have used paint; it doesn't aim simply to be a fine painting in its own right. 'Metafiction,' a common category in contemporary literature, similarly scores its points by talking about the nature and function of fiction; it doesn't aim to tell a gripping tale about compelling characters. The name 'MetaBirkins' therefore tells us, among other things, that we should read the | And I note that, in the case of Mr. Rothschild, of all the titles available or proffered by others, the one that he did choose to use is properly minimal, in the heart of the tradition of titles in fine art: It merely designates the content of Mr. Rothschild's images (that they are a riff on the famous Birkin bag) and adds a further and apposite descriptor ("meta") to make that designation more accurate, while also helping to distinguish his artworks from the commercial product commonly known as a Birkin. (Gopnik Decl. at ¶ 12) (ECF No. 80). |

| Topic | Excerpts from the September 1, 2022 Expert Report[1] and September 23, 2022 Deposition of Dr. Blake Gopnik[2] | Excerpts from the October 21, 2022 Declaration of Dr. Blake Gopnik[3] |
|---|---|---|
| | image it comes attached to as an attempt to make a larger comment on the nature of the Birkin bag—and therefore on the nature of elite commodity culture. The combination of the prefix 'meta-' with the brand name 'Birkin' tells us that we're dealing with more than the latest fancy object labeled 'Birkin,' such as the Hermès company might release on its own behalf. It tells us to take a step back and contemplate what Birkin-ness really means to our society." (Corrigan Decl., Ex. 34 at ¶ 39.) | |
| **Performative element of "Business Art"**<br><br>**Rothschild interacting with the larger public** | Rothschild "chose the title from many different options presented to him, some of which would have come from his own mind and some not," (Gehman Decl., Ex. 10 at 109:8-22.)<br><br>*Performative element of Business Art was never raised in the report or the deposition.* | If anything, the fact that Mr. Rothschild did draw his social circle's attention to his desire to title his work — as he surely did not have to do, given the minimal title he eventually chose — indicates his interest in situating his "MetaBirkins" in a social context, as is typical or even necessary for a fine work of Business Art. The genre itself is all about the interactions that occur between artists, their work, and a larger public; Business Art, that is, has always had a notably performative element (it is "relational," to use the term of art), and Mr. Rothschild's visible and enthusiastic interactions with his public, including in the act of titling his work, should be seen as one of his art supplies. Andy Warhol, Mr. Rothschild's most significant predecessor, behaved in notably similar ways; art historians regard that behavior — Warhol's engaging of a wide social circle in the creation and |

18

| Topic | Excerpts from the September 1, 2022 Expert Report[1] and September 23, 2022 Deposition of Dr. Blake Gopnik[2] | Excerpts from the October 21, 2022 Declaration of Dr. Blake Gopnik[3] |
|---|---|---|
| | | dissemination of his works and ideas — as one of his most important contributions to modern art. (Gopnik Decl. at ¶ 13) (ECF No. 80). |
| **Rothschild's relationship with Mark Berden**<br><br>**Master Raphael**<br><br>**Andy Warhol's assistants** | *Mark Berden is not discussed in the report.*<br><br>*Master Raphael is not discussed in the report or deposition.*<br><br>Q. A number of those documents you reference -- in fact, I believe most if not all of them -- involve communications with Mr. Rothschild and Mark Design?<br><br>A. Yes, that's right.<br><br>Q. And do you have an understanding of the role of Mark Design in creating the MetaBirkin images associated with MetaBirkin NFTs?<br><br>MR. SPRIGMAN: Objection.<br><br>A. Yes, his role in the production of them, I'd say.<br><br>Q. And what was his role in production?<br><br>A. Well, I'd have to look at them in detail. He seemed to play several different roles. He was in a rich, collaborative relationship. He was | Plaintiffs' concerns about the technical assistance rendered to Mr. Rothschild by Mark Berden are as misplaced as their concerns about Mr. Rothschild's titling, and for similar reasons. As I made very plain to Plaintiffs' counsel during my deposition, my study of the relevant communications between Mr. Rothschild and Mr. Berden revealed that, in the creation of Mr. Rothschild's "Metabirkins," the two men were filling the standard roles of creator and skilled digital technician, having precisely the interactions one would expect between such figures. It is beyond commonplace for contemporary artists to engage a team of specialist fabricators, programmers and skilled assistants to complete all but their least ambitious projects; no one creator could have all the skills required in today's technically complex art world — and especially when digital imagery, such as Mr. Rothschild's, is involved. Indeed, such teamwork was already standard from the time of Renaissance master Raphael, with his vast and varied creative staff, right up to the assistant-filled studio of Andy Warhol. In all these cases, old and new, the artist at the head of a project would ask and pay for input and advice from the professionals he or she had hired, as they came to engage with the subject |

| Topic | Excerpts from the September 1, 2022 Expert Report[1] and September 23, 2022 Deposition of Dr. Blake Gopnik[2] | Excerpts from the October 21, 2022 Declaration of Dr. Blake Gopnik[3] |
|---|---|---|
| | functioning as a high-level studio assistant. That's what studio assistants do.<br><br>(Gehman Decl., Ex. 10 at 244:12-245:5.) | matter and imagery at issue and with its technical realization. It would in fact be bizarre for an artist to ignore the input of such skilled collaborators — just as it would be bizarre for judges to ignore the input of their clerks, or for lawyers to reject the thoughts of their paralegals, although such input from subordinates would not indicate any diminished responsibility for the final decision-making in a trial or lawsuit. In seeking assistance, input and advice from Mr. Berden, Mr. Rothschild was not relinquishing his role as creative artist; he was fulfilling it in the most standard and indeed responsible way. (Gopnik Decl. at ¶ 14) (ECF No. 80). |
| **Wearable**<br><br>**Consumer confusion** | Birkin bags are bought by a rarefied class of people who can afford such conspicuous moments of consumption. Rothschild's NFT'd "MetaBirkins" are meant to mimic this economic aspect of the real-world bags they depict—in much the same way, in fact, that a more traditional artistic depiction points to something of interest by mimicking its appearance. As Rothschild put it in an interview, since Birkin bags are fundamentally about "showing off" extreme wealth, NFTs that fetch "crazy amounts of money" have a similar status.18 The particular combination of Rothschild's production of NFTs, and the way they reference the Birkin bags of Hermès, allows Rothschild to | Plaintiffs have suggested that, merely by deploying a realistic reference to the Birkin handbag in his artistic comment on it, Mr. Rothschild has somehow created confusion with the actual, physical handbag. In so suggesting, Plaintiffs make the unlikely, almost unbelievable assertion that the "wearable" real-world handbag made by Hermes — from the finest of real-world hides and textiles, as the company likes to insist — might, or would probably, be confused with the entirely imaginary (and fur-covered) "MetaBirkins" handbag that could, in some wearer's imagination, be "worn" and "used" in the metaverse. Having written an entire Oxford PhD that was centrally concerned with the philosophy and psychology of pictorial |

| Topic | Excerpts from the September 1, 2022 Expert Report[1] and September 23, 2022 Deposition of Dr. Blake Gopnik[2] | Excerpts from the October 21, 2022 Declaration of Dr. Blake Gopnik[3] |
| --- | --- | --- |
| | make an important artistic point about the way that our society—including the art world—is dominated by high-status goods. (Corrigan Decl., Ex. 34 at ¶ 34).<br><br>Q. What is the functional distinction between a work of art and a nonwork of art?<br><br>A. Objects -- or let's say images, just as shorthand, if you don't mind. Images can have all sorts of functions. When an image is functioning in a very practical sense just to provide information, for instance, or for that matter to clothe the body in an attractive way, that is not -- I prefer to use the word fine art. That's not an example of fine art. But then there are objects whose goal is not functional, whose goal is to make us think about the nature of things like dresses, to make us think about the everyday instantiations of those same objects. It's essentially philosophical practice, that art is a philosophical practice, a meta practice, and other objects, other images, other objects are functional objects within our world. Sorry.<br><br>Q. If an object is functioning to provide status, is it -- is that a functional use? | representation, I am pleased to reassure Plaintiffs that viewers of such representations are reliably skilled at distinguishing real and represented worlds — in fact, it is only because of that distinction that pictorial representations achieve their full meaning and function. Their function is to reference reality, that is, not to replace it; if I may be permitted to wax philosophical for a moment, that is in fact what it means for something to represent. Of necessity, every successful representation thus shares certain features with the subject it represents, and could thereby function as a stand-in for that subject, at least in the imagination of at least one observer. That does not mean that no representations ought to be permitted, lest confusion reign between objects and their depictions. No one tries to walk into Vermeer's "View of Delft," much as that great painting might seem to invite it; no one (I hope) tries to caress the "flesh" of Michelangelo's David. And no sane observer will attempt to use Mr. Rothschild's digital representations of absurdist, fur-covered "MetaBirkins" in any of the ways that a real Birkin bag might be used, either as a useful carrier for a wallet and keys or as a bearer of social status. (Gopnik Decl. at ¶ 16) (ECF No. 80). |

| Topic | Excerpts from the September 1, 2022 Expert Report[1] and September 23, 2022 Deposition of Dr. Blake Gopnik[2] | Excerpts from the October 21, 2022 Declaration of Dr. Blake Gopnik[3] |
|---|---|---|
| | A. You just defined it as function. Yes, if it's doing a job, then it's functional.<br><br>Q. Okay. If someone purchases an item to provide status, is that a functional use?<br><br>A. I would say that it was.<br><br>(Gehman Decl., Ex. 10 at 172:11-173:14.) | |
| **Utilities** | Many living artists who achieved success before the age of NFTs have been doing their best to embrace NFTs as a new medium for marketing themselves and their work.5 It would be strange for them not to embrace the full range of marketing opportunities, including digital "utilities," that Kominers sees as restricted to his so-called "digital brands." Any artist who restricts his or her digital engagement to an "art-only" space, as Kominers suggests some do, has simply failed to take advantage of the marketing options that NFTs present. Some of the projects that Kominers classes as "digital brands," such as the NFTs of the Bored Ape Yacht Club,6 are in fact widely discussed in the context of NFT art. As quoted in the supplement to the Kominers report, Rothschild speaks of the advantages that come with building a sense of community among the members of his art's digital audience—in knowing "who your core fans are," | Plaintiffs also seem to imply that because the NFTs for Mr. Rothschild's images come with certain "utilities" attached, that somehow detracts from his status as an artist and from the artistic status of his creations. Yet the kinds of opportunities offered by those utilities — to be a member of a social community built around "MetaBirkins"; to have early access to subsequent artistic projects by Mr. Rothschild; to participate in special events organized by him (although, contra Plaintiffs, evidence suggests he never did hold properly "gated" events for his "MetaBirkins") — all of these are perfectly normal aspects of traditional artistic practices. It is absolutely standard, for instance, for collectors of an early project by a painter to be given privileged access to subsequent bodies of work. (You might easily call that an unstated but understood "utility" that comes with the purchase of that artist's work.) And it is almost a cliché that collectors buy an artist's works partly |

| Topic | Excerpts from the September 1, 2022 Expert Report[1] and September 23, 2022 Deposition of Dr. Blake Gopnik[2] | Excerpts from the October 21, 2022 Declaration of Dr. Blake Gopnik[3] |
| --- | --- | --- |
| | and interacting with them "on a daily basis, like, you know, in seconds" 7—and in doing that he is simply doing what any smart artist ought to do in the age of NFTs. He is not in any way signaling that he is entering some other non-art domain of "branding," as Kominers suggests he is— Rothschild couldn't make such a switch if he wanted to, because no such separate domain has ever existed. (Corrigan Decl., Ex 34 at ¶ 37.) | for the social access that gives them to the artist and his or her circle — for the specifically social "utility" that comes with the purchase. (In private, artists have often complained to me about the social duties that come with sales.) The selling and buying of works of art has always involved "utilities," of one kind or another, that have little to do, in any immediate way, with the properly artistic qualities of those works. In being sold with explicit "utilities" associated with them, Mr. Rothschild's NFT'd images are not much different from more traditional works whose associated "utilities" are left implied. (Gopnik Decl. at ¶ 9) (ECF No. 80). |
| **Opining on Plaintiffs' summary judgment papers** | *Gopnik admits he is opining on the Summary Judgment papers.* | In closing, let me say that I have read Plaintiffs' summary judgment papers, and none of the arguments and claims in them makes me any less certain that Mason Rothschild's "MetaBirkins" images, in tandem with the NFTs to which they are associated, make up a clearly artistic project, in the established tradition of Andy Warhol's Business Art. (Gopnik Decl. at ¶ 18) (ECF No. 80). |