**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HERMÈS INTERNATIONAL and
HERMÈS OF PARIS, INC.,

        Plaintiffs,

        v.

MASON ROTHSCHILD,

        Defendant.

No. 22-CV-00384-JSR

<span style="color:red">**Contains Confidential Materials**
**Filed Under Seal**</span>

### ROTHSCHILD'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AND STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION

Pursuant to Local Civil Rule 56.1, Defendant Mason Rothschild respectfully submits the following Reply in Response to Plaintiffs' Response to Defendant's Rule 56.1 Statement of Undisputed Material Facts and Statement of Additional Material Facts in Opposition ("RHCS").

**I.   ROTHSCHILD'S REPLY TO HERMÈS' RESPONSE TO ROTHSCHILD'S RULE 56.1 STATEMENT OF UNIDPUSTED MATERIAL FACTS**

Hermès raises no genuine dispute as to any material fact in Rothschild's 56.1 Statement. Although Hermès purports to dispute most of the facts set out therein, Hermès does not succeed in raising a genuine dispute; rather, Hermès simply cites to documents and testimony that are consistent with the asserted fact or offers irrelevant "facts" and argument that do nothing to controvert Rothschild's 56.1 statements. Hermès' responses are also replete with mischaracterizations of the record, omissions of dispositive facts, and inappropriate legal argument.

Local Rule 56.1 requires the responding party to *specifically* controvert the material facts set forth in an opposing party's statement pursuant to Local Rule 56.1(a) with citations to evidence that would be admissible. Local Rule 56.1(b)-(d). The Southern District of New York adopted Local Rule 56.1(d) for a reason, namely "to supply the Courts with an accurate factual record" and "to prohibit parties from taking … misleading and unfair 'shortcuts' (*i.e.* unsupported denials) …" *Omnipoint Commc'ns, Inc. v. City of White Plains*, 175 F. Supp. 2d 697, 700 (S.D.N.Y. 2001), *rev'd on other grounds*, 430 F.3d 529 (2d Cir. 2005). A response pursuant to Local Rule 56.1(b)-(d) should not contain argument or narrative in an effort to "spin" the impact of the admissions a party is required to make. *Goldstick v. The Hartford, Inc.*, No. 00 Civ. 8577 (LAK), 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (finding that plaintiff's Rule 56.1 Statement failed to comply with the rule because the plaintiffs "added argumentative and often lengthy narrative in almost every case[,] the object of which is to 'spin' the impact of the admissions plaintiff has been compelled to make"); *U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3*, No. 00 Civ. 4763 RMB JCF, 2006 WL 2136249, at *3 (S.D.N.Y. Aug. 1, 2006) ("'Rule 56.1 statements are not argument. They should contain factual assertions with citation to the record. They should not contain conclusions …' [P]laintiffs cannot evade the impact of accepting a fact by adding legal argument to their counterstatements.") (internal citations omitted).

Rather than adhering to these requirements, Hermès frequently purports to "dispute" a fact, but then cites evidence and/or states allegations that are consistent with the asserted fact, relate to an entirely different subject matter, or constitute legal argument in an effort to "spin" the admissions that Hermès is compelled to make. Such responses do not create a material dispute and merely serve to distract from the real issues in the litigation. Courts are free to

disregard such denials. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001) ("Where, as here, the record does not support the assertions in a Local Rule 56.1 statement, those assertions should be disregarded and the record reviewed independently."); *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 314 (2d Cir. 2008) (responses that use the word "disputed" but do not demonstrate that the dispute is genuine cannot defeat summary judgment); *Omnipoint Comm'ns*, 175 F. Supp. 2d at 700 ("The Court is permitted to disregard such general denials…if cited materials do not support factual assertions."); *Watt v. N.Y. Botanical Garden*, No. 98 Civ. 1095 (BSJ), 2000 WL 193626, at *1 n.1 (S.D.N.Y. Feb. 16, 2000) (noting that court has the discretion to deem material facts set forth in support of party's summary judgment motion admitted where the statements are not controverted or where the cited materials do not support the factual statements); s*ee also UMG Recordings, Inc. v. Veoh Networks Inc.*, 665 F. Supp. 2d 1099, 1101 n.1 & 1103 n.5 (C.D. Cal. 2009) (disregarding plaintiffs' denials where plaintiffs purported to dispute defendants' facts, but then stated allegations that were consistent with or unrelated to the asserted fact).

Rothschild responds below to select Hermès responses that particularly misconstrue the record or the evidence cited. For the reasons set forth below, Hermès does not succeed in raising a genuine dispute as to any of these facts. The Court should disregard these purported disputes and adopt the facts set forth in the referenced paragraphs as undisputed for purposes of Rothschild's motion.[1]

---

[1] Set forth below in bold font are the facts listed in Rothschild's 56.1 statement to which Rothschild is specifically replying. Hermès' response to each of those facts from the Hermès Counterstatement ("HCS") is set forth in italic font, followed by Rothschild's reply to Hermès' responses in normal text.

1. **Mr. Rothschild, born Sonny Estival, is an artist as well as an entrepreneur and business owner. Declaration of Mason Rothschild dated October 6, 2022 ("Rothschild Decl.")  ¶¶ 1, 3-5; Declaration of Rhett O. Millsaps II dated October 7, 2022 ("Millsaps Decl.") ¶ 2, Ex. 1 (Gopnik Rep. ¶¶ 10, 15); ¶ 8, Ex. 7 (T. Sacks Dep. (Sept. 15, 2022) 32:2-11); ¶ 7, Ex. 6 (D. Cohen Dep. (Sept. 22, 2022) 61:25-62:10); ¶ 6, Ex. 5 (K. Loo Dep. (Sept. 7, 2022) 155:5-156:1); Amended Complaint ("Compl.") ¶¶ 1, 8-9, 25.**

   Hermès' Response: *Hermès does not dispute that Rothschild, born Sonny Estival, is an entrepreneur and business owner. Hermès disputes as inaccurate the statement that Rothschild is an artist. See Corrigan Decl., Ex. 21 at 26:15-26:23.*

   **Rothschild's Reply:** Hermès does not genuinely dispute the fact that Rothschild is an artist. Rothschild's deposition transcript excerpt cited by Hermès merely shows that Rothschild did not attend art school. But as the excerpt itself shows, Rothschild testified that he is "[s]elf-taught when it comes to art." Corrigan Decl., Ex. 21 at 26:11-12. The testimony cited by Hermès does not genuinely dispute the testimony by associates of Rothschild and independent expert Dr. Blake Gopnik identifying Rothschild as an artist.

2. **Dr. Blake Gopnik, a noted art historian, critic, and author of Warhol—the 976-page, definitive biography of Andy Warhol published in 2020—has recognized Mr. Rothschild as an artistic heir to Marcel Duchamp and Andy Warhol based on Mr. Rothschild's *MetaBirkins* art project. Millsaps Decl. ¶ 2, Ex. 1 (B. Gopnik Report (Sept. 1, 2022) ¶¶ 10, 15).**

   Hermès' Response: *Hermès does not dispute that Dr. Blake Gopnik is an art historian, critic, and author of* Warhol—*the 976-page biography of Andy Warhol published in 2020. Hermès disputes as misleading and inaccurate that METABIRKINS NFTs are an "art project" and that "Rothschild [is] an artistic heir to Marcel Duchamp and Andy Warhol" because the METABIRKINS NFTs were an investment and commodity, which Rothschild even hoped it* ▮▮▮▮▮▮▮▮▮ *See Corrigan Decl., Ex. 5 (ECF No. 72-14); Ex. 7 (ECF No. 72-16); Ex. 21 at 391:24-393:23 (ECF No. 73-5); Ex. 23 at Rothschild008391 (ECF No. 73-7); Ex. 29 at Rothschild014949 (ECF No. 73-9); Ex. 47 at Rothschild008468 (ECF No. 73-20); Ex. 87 at Rothschild014669 (ECF No. 73-45); Ex. 89 at Rothschild008648, Rothschild008658, Rothschild008665 (ECF No. 73-47).*

   **Rothschild's Reply:** Hermès does not genuinely dispute the fact that art historian, critic, and *Warhol* author Dr. Blake Gopnik has recognized Rothschild as an artistic heir to Marcel Duchamp and Andy Warhol based on Rothschild's *MetaBirkins* NFT art project. The evidence

cited by Hermès is consistent with Dr. Gopnik's unrebutted expert testimony that the *MetaBirkins* project as a whole is recognizable Business Art in the vein of Warhol and others, and that Rothschild's efforts to make his art profitable are consistent with artists' similar efforts throughout the ages. Millsaps Decl. ¶ 2, Ex. 1 (B. Gopnik Report (Sept. 1, 2022) ¶¶ 10, 15, 34). *See also* Declaration of Dr. Blake Gopnik dated October 21, 2022 (Doc. 80) ("Gopnik Decl.") ¶¶ 17-19. The evidence cited by Hermès thus is consistent with, and does not dispute, Dr. Gopnik's unrebutted expert testimony.

3. **In one early artistic project in 2015, Mr. Rothschild created and sold a collection of t-shirts titled *The Art School Dropout* as a commentary on the "ugly" designs on merchandise sold by venerated art schools at the time. Rothschild Decl. ¶ 6; Millsaps Decl. ¶ 3, Ex. 2 (M. Rothschild Dep. (Aug. 4, 2022) 48:23-53:4, Ex. 6); ¶ 4, Ex. 3 (B. Gopnik Dep. (Sept. 23, 2022) 160:21-167:7).**

   <u>Hermès' Response</u>: *Hermès does not dispute that Rothschild created and sold a collection of t-shirts titled* The Art School Dropout *in 2015. Hermès disputes as misleading and inaccurate that the collection was an "artistic project" and "a commentary on the ugly designs of merchandise sold by venerated art schools at the time" as it was merely printing art school names on t-shirts in what appeared to be authorized, branded merchandise,* ███████████████████ ███████ *See Corrigan Decl., Ex. 117 (ECF No. 72-135); Corrigan Suppl. Decl., Ex. 130.*

   **Rothschild's Reply:**  Nothing in Hermès' response controverts the asserted fact. Hermès cites an article describing Rothschild's *The Art School Dropout* t-shirt collection, and a text message in which Rothschild references a "c&d letter" from Parsons without any further context. Neither of these pieces of evidence controvert the testimony, under oath, of both Rothschild and independent expert Dr. Gopnik that Rothschild's *The Art School Dropout* t-shirt collection was an artistic project and a commentary. The evidence cited by Hermès thus does not genuinely dispute this fact.

5. **For Mr. Rothschild's first artistic project involving non-fungible tokens (NFTs), in early 2021 Mr. Rothschild produced a digital image of a chair linked to an NFT, which sold for the equivalent (at the time) of approximately $4,000. Rothschild Decl. ¶ 7; Millsaps Decl. ¶ 3 Ex. 2 (M. Rothschild Dep. (Aug. 4, 2022) 118:19-119:23).**

<u>Hermès' Response</u>: *Hermès does not dispute that Rothschild sold an NFT linked to a digital image of a chair. Hermès disputes as misleading and inaccurate that Rothschild created the image.* ███████████████████████████████████ *(Corrigan Suppl. Decl., Ex 131.).*

**Rothschild's Reply:**  Nothing in Hermès' response controverts the asserted facts. The text messages cited by Hermès actually support the stated fact that Rothschild *produced* the digital image of a chair linked to an NFT, as the text messages show that Mark Berden was performing services at Rothschild's direction. *See* Corrigan Suppl. Decl., Ex 131 at Rothschild0011242-11256. This is consistent with the asserted facts in this paragraph, with Rothschild's corroborating and uncontroverted testimony that Mr. Berden has at all times provided his services at Rothschild's direction, and with Dr. Gopnik's unrebutted expert testimony that his review of their communications showed that Mr. Berden has functioned as a high-level studio assistant to Rothschild. *See* Rothschild's Counterstatement to Plaintiffs' Rule 56.1 Statement of Material Facts (Doc. 86) ("RCSOMF") ¶¶ 35, 63, 239. The evidence cited by Hermès thus does not genuinely dispute this fact.

10. **In or around May 2021, Mr. Rothschild produced a short digital animation titled Baby Birkin, which was linked to an NFT and depicted a 40-week-old fetus gestating inside of a transparent Birkin handbag. Compl. ¶¶ 70-71; Rothschild Decl. ¶ 8.**

<u>Hermès' Response</u>: *Hermès does not dispute that the Baby Birkin image was an animation or video of a 40-week-old fetus inside a transparent BIRKIN handbag linked to an NFT. Hermès disputes as misleading and inaccurate that Mr. Rothschild produced the animation.* ███████████████████ *See Corrigan Decl., Ex. 21 at 417:7-24, 422:13-24 (ECF No. 73-5).*

**Rothschild's Reply:**  Nothing in Hermès' response controverts the asserted fact that Rothschild produced the *Baby Birkin* NFT artwork. The excerpt of testimony from Rothschild's deposition cited by Hermès actually supports the stated fact that Rothschild *produced* Baby Birkin, as Rothschild's testimony was that he "did the planning" and "the look of the whole

thing" and that Mark Berden "generated" the art based on Rothschild's input. Corrigan Decl., Ex. 21 at 417:7-24. This is consistent with the asserted facts in this paragraph, with Rothschild's corroborating and uncontroverted testimony that Mr. Berden has at all times provided his services at Rothschild's direction, and with Dr. Gopnik's unrebutted testimony that his review of their communications showed that Mr. Berden has functioned as a high-level studio assistant to Rothschild. *See* RCSOMF ¶¶ 35, 63, 239. The evidence cited by Hermès thus does not genuinely dispute this fact.

12. **The response to *Baby Birkin* inspired Mr. Rothschild's follow-up art project, which he came to title *MetaBirkins*. Rothschild Decl. ¶ 9.**

> <u>Hermès' Response</u>: *Hermès disputes as misleading that "the response to Baby Birkin inspired" the METABIRKINS and the record does not support this assertion. Hermès avers Rothschild began working on the METABIRKINS NFT project shortly after the commercial success of the Baby Birkin NFT, which as Rothschild does not dispute, sold for $23,500. (Corrigan Decl., Ex. 6 (ECF No. 72-15); Mentzer Decl., Ex. 1 at 28 (ECF No. 71-1).) Hermès further disputes as misleading and inaccurate the characterization of the METABIRKINS as an "art project." See Corrigan Decl., Ex. 5 (ECF No. 72-14); Ex. 7 (ECF No. 72-16); Ex. 21 at 391:24-393:23 (ECF No. 73-5); Ex. 23 at Rothschild008391 (ECF No. 73-7); Ex. 29 at Rothschild014949 (ECF No. 73-9); Ex. 47 at Rothschild008468 (ECF No. 73-20); Ex. 87 at Rothschild014669 (ECF No. 73-45); Ex. 89 at Rothschild008648, Rothschild008658, Rothschild008665 (ECF No. 73-47).*

**Rothschild's Reply:**  Nothing in Hermès' response controverts the asserted facts. Hermès' first statement in response is consistent with Rothschild's testimony under oath that the response to *Baby Birkin* inspired his follow-up *MetaBirkins* project. The evidence cited by Hermès to "dispute" the fact that *MetaBirkins* is an art project is consistent with Dr. Gopnik's unrebutted expert testimony that the *MetaBirkins* project as a whole is recognizable Business Art in the vein of Warhol and others, and that Rothschild's efforts to make his art profitable are consistent with artists' similar efforts throughout the ages. Millsaps Decl. ¶ 2, Ex. 1 (B. Gopnik Report (Sept. 1, 2022) ¶¶ 10, 15, 34). *See also* Gopnik Decl. ¶¶ 17-19. The evidence cited by Hermès thus does not genuinely dispute this fact.

**14. In or around December 2021, Mr. Rothschild produced and sold a collection of 100 digital images titled *MetaBirkins* and linked to NFTs; they depicted imaginary Birkin handbags entirely covered in cartoonish fur, with some of the images also incorporating other artistic elements, such as the *Mona Lisa* (*La Joconde*) and van Gogh's *The Starry Night*. Compl. ¶¶ 37, 76, 79, Fig. 5 and Ex. Z; Rothschild Decl. ¶ 9; Millsaps Decl. at ¶ 5, Ex. 4 (N. Martin Dep. (Aug. 30, 2022) 48:3-11; 60:5-14, 51:4-52:13, 52:14-53:18).**

<u>Hermès' Response</u>: *Hermès disputes this statement as misleading and inaccurate. Rothschild sold 100 NFTs titled METABIRKINS and the digital images associated with the METABIRKINS NFTs were numerically titled. (Mentzer Decl., Ex. 1 at 17-19 (ECF No. 71-1).) During the time period when the METABIRKINS NFTs were initially minted and sold, the associated digital files depicted a shrouded object, but on December 3, 2021 UTC, after the NFTs were sold, Rothschild caused the shrouded image files to be replaced with new image files which depicted handbags copying the BIRKIN Trade Dress. (Corrigan Decl., Ex. 21 at 227:16-228:10, 249:17-250:4 (ECF No. 73-5); Ex. 24 (ECF No. 73-8); Kominers Decl., Ex. 1 at 25 (ECF No. 71-1); Mentzer Decl., Ex. 1 at 15-19 (ECF No. 71-1).)* ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *orrigan Decl., Ex. 21 at 227:16-228:10, 235:16-236:6, (ECF No. 73-5); Ex. 47 (ECF No. 73-20); Ex. 48 (ECF No. 73-21); Ex. 121 (ECF No. 73-68).) Hermès admits the images did appear to have fur but takes no position on the characterization as the fur as "cartoonish." Hermès admits the images associated with the METABIRKINS NFTs may have other elements, but takes no position on the characterization as "artistic elements." (Corrigan Supp. Decl., Ex. 144 at 50:7-13; 50:22-51:11; 83:19-24 (Mr. Martin testified that "it's the Birkin shape with colors that we have done, or may have done, with the detail that we have used or may have used[;]" "it's our Birkin shape in colors that we have made on or we could make in detail that we have used or could use[;]" and "[w]hat I see here, for me is an Hermès . . . Birkin Handbag, in colors that could be the colors we used, or have used and with material that we also have used.".)*

**Rothschild's Reply:** Hermès' response omits undisputed facts that show that Hermès cannot genuinely dispute the facts stated in paragraph 14. It is true that the undisputed evidence shows that Rothschild initially, for less than 24 hours during the NFT minting process, attached an image of a shroud-covered object on a pedestal to the *MetaBirkins* NFTs. Mentzer Decl., Ex. 1 at 17-19. But Hermès' response omits its own evidence that purchasers saw and doubtless understood that the *MetaBirkins* artworks would be attached to the *MetaBirkins* NFTs, even though prior to minting the NFTs they did not know which one of the particular *MetaBirkins* artworks they would receive, because Rothschild publicly previewed and promoted the

*MetaBirkins* artworks in the weeks prior to the NFT minting. *See* Corrigan Decl. ¶ 6, Ex. 6 & Ex. 49. That evidence is consistent with Rothschild's uncontroverted deposition testimony:

> *Q: So how would somebody know what they were purchasing?*
>
> *A: Because the 100* [MetaBirkins *artworks*] *were shown in previews. You just didn't know which one you were going to get*."

Millsaps Opp. Decl. (Doc. 88) ¶ 4, Ex. 3 (M. Rothschild Dep. (August 4, 2022) 226:18-228:10).

Hermès' response that Mark Berden "created" the *MetaBirkins* images is not supported by the evidence cited, but in any event is consistent with the factual statement that Rothschild produced the *MetaBirkins* images. The evidence cited and other uncontroverted messages between Rothschild and Mr. Berden produced in discovery show that Mr. Berden technically generated the images at Rothschild's direction. *See* Corrigan Decl., Ex. 21 at 227:16-228:10, 235:16-236:6, (Doc. 73-5); Ex. 47 (Doc. 73-20); Ex. 48 (Doc. 73-21); Ex. 121 (Doc. 73-68); RCSOMF ¶¶ 35, 63, 239. This is consistent with the asserted facts in this paragraph, with Rothschild's corroborating and uncontroverted testimony that Mr. Berden has at all times provided his services at Rothschild's direction, and with Dr. Gopnik's unrebutted expert testimony that his review of their communications showed that Mr. Berden has functioned as a high-level studio assistant to Rothschild. *See* RCSOMF ¶¶ 35, 63, 239.

Hermès' response that it "takes no position on" the remainder of the facts stated is a failure to controvert those facts. Hermès thus has failed to genuinely dispute the facts stated in paragraph 14.

**15. The *MetaBirkins* images linked to the corresponding NFTs are two-dimensional, static digital images. Rothschild Decl. ¶ 9; Millsaps Decl. at ¶ 5, Ex. 4 (N. Martin Dep. (Aug. 30, 2022) 48:3-11; 64:20-65:10), ¶ 12, Ex. 11 (Plaintiffs Hermès International and Hermès of Paris, Inc.'s Responses to Defendant Rothschild's First Set of Requests for Admission, Responses to Request for Admission No. 2); Compl. ¶¶ 76, 79, Fig. 5 and Ex. Z.**

<u>Hermès' Response</u>: *Hermès does not dispute that the images currently associated with the METABIRKINS NFTs are two-dimensional. Hermès disputes as inaccurate and vague that the images are "static" because the images can be changed, at any time, and in fact, have already been changed at least once. (Corrigan Decl., Ex. 21 at 227:16-228:10, 249:17-250:4 (ECF No. 73-5); Ex. 24 (ECF No. 73-8); Kominers Decl., Ex. 1 at 25 (ECF No. 71-1); Mentzer Decl., Ex. 1 at 15-19 (ECF No. 71-1).)* ███████████████████████████████████████████████████████████████ *See Corrigan Decl., Ex. 21 at 167:21-169:5 (ECF No. 73-5); Ex. 55 at Rothschild008316-8317 (ECF No. 73-28); Mentzer Decl., Ex. 1 at 11, 21 n. 9, 24, 28-33 (ECF No. 68-1).* ████████████████████████████ *(Corrigan Decl., Ex. 52 at SACKS_000027 (ECF No. 73-25).)*

**Rothschild's Reply:**  Nothing in Hermès' response controverts any part of the asserted fact. Hermès' response that the *MetaBirkins* images attached to the corresponding NFTs can be changed does not raise a genuine issue as to whether those images are "static" (*i.e.*, motionless), admittedly two-dimensional images.

The remainder of Hermès' response is immaterial and an attempt to create confusion by selectively and misleadingly quoting from record evidence. In particular, while Rothschild stated in the cited messages that the NFTs associated with the *MetaBirkins* images were "technically metaverse ready" because they were "fully 3d," Rothschild explained in the same quoted text message conversation that Mr. Rothschild could not integrate the *MetaBirkins* images as they were made into metaverse platforms like "decentraland" or "sandbox" because "it would just be this ugly Voxel rectangle…I need more resolution in the metaverse…" Corrigan Decl., Ex. 52 at SACKS_000027. *See also* Millsaps Decl. (Doc. 65) ¶ 12, Ex. 11 (Plaintiffs Hermès International and Hermès of Paris, Inc.'s Responses to Defendant Rothschild's First Set of Requests for Admission, Responses to Request for Admission No. 2)); Millsaps Opp. Decl. (Doc. 88) ¶ 6, Ex. 5 (N. Martin Dep. (August 30, 2022) 64:20-65:10).

Hermès thus has failed to genuinely dispute the fact stated in paragraph 15.

**16. The *MetaBirkins* digital images are a form of creative expression; they are renderings of imaginary Birkin bags entirely covered in "goofy, garish fake fur"**

that "flags the absurdist, parodic intent of [the] project" and are both a fanciful tribute to the Birkin bag, which has become a cultural object signifying extreme wealth, and a reference to the fashion industry's fur-free initiative. Millsaps Decl. ¶ 2, Ex. 1 (B. Gopnik Report (Sept. 1, 2022) ¶ 38); ¶ 3, Ex. 2 (M. Rothschild Dep. (Aug. 4, 2022) 189:21-190:5); Rothschild Decl. ¶ 10.

Hermès' Response: *Hermès disputes this statement as misleading and inaccurate, except for the fact that the images associated with the METABIRKINS NFTs depict BIRKIN handbags. This statement is neither "undisputed" nor is it a "fact," but a self-serving opinion that is not supported by the record. Specifically, Hermès disputes that METABIRKINS are digital images; METABIRKINS are NFTs that have associated images. (Mentzer Decl., Ex. 1 at 16-17, 29 (ECF No. 68-1).)* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See Corrigan Decl., Ex. 48 at Rothschild014594 (ECF No. 73-21).*

**Rothschild's Reply:**  Nothing in Hermès' response controverts any part of the asserted facts. Hermès' response that the statement is a "self-serving opinion" is both false and attorney rhetoric that cannot raise a genuine issue of material fact. The statement that the *MetaBirkins* digital images are "renderings of imaginary Birkin bags entirely covered in 'goofy, garish fake fur' that 'flags the absurdist, parodic intent of [the] project'" is direct quotation from the unrebutted expert report of Dr. Gopnik, not "self-serving opinion."  Millsaps Decl. ¶ 2, Ex. 1 (B. Gopnik Report (Sept. 1, 2022) ¶ 38). And the evidence cited by Hermès in which Rothschild stated that the "antifur campaign" was "huge in fashion" is consistent with the statement that Rothschild's *MetaBirkins* artworks are in part a reference to the fashion industry's fur-free initiatives. *Id*. ¶ 3, Ex. 2 (M. Rothschild Dep. (Aug. 4, 2022) 189:21-190:5); Rothschild Decl. ¶ 10.

Hermès thus has failed to genuinely dispute the facts stated in paragraph 16.

17. The *MetaBirkins* project as a whole, including its promotion and sales in connection with NFTs, is a "Business Art" project in the vein of Warhol, Duchamp, and other such artists who have deliberately engaged with the intersection of art and commerce; the project was at least in part an artistic experiment to explore how the culture would respond to simple images of imaginary Birkin bags and where the value lies in the Birkin bag (*i.e.*, in the handcrafted physical object or in the image it

**projects?).** Millsaps Decl. ¶ 2, Ex. 1 (B. Gopnik Report (Sept. 1, 2022) ¶¶ 18-35, 37-40); Rothschild Decl. ¶ 11.

Hermès' Response: *Hermès disputes this statement as inaccurate and misleading. Rothschild was not engaging with an "artistic experiment" but rather sought to create and sell a "digital commodity" (Corrigan Decl., Ex. 7 (ECF 72-16)) and seeking "global publicity" (Corrigan Decl., Ex. 5 (ECF No. 72-14)).* ████████████████████████ ████████████ *(Corrigan Decl., Ex. 23, Rothschild008391-92 (ECF No. 73-7))* ████████ *(Corrigan Decl., Ex. 87 at Rothschild014669 (ECF No. 73-45)). Rothschild sold METABIRKINS NFTs, not the images, and through this sale created a brand and promoted other NFT projects,* ████████████████████████ ████████████ *See Corrigan Decl., Ex. 89 at Rothschild008649 (ECF No. 73-47); Mentzer Decl., Ex. 1 at 9 (ECF No. 68-1).*

**Rothschild's Reply:** Nothing in Hermès' response controverts the asserted fact. The evidence cited by Hermès to "dispute" the fact that *MetaBirkins* is an art project is consistent with Dr. Gopnik's unrebutted expert testimony that the *MetaBirkins* project as a whole is recognizable Business Art in the vein of Warhol and others, and that Rothschild's efforts to aggressively promote his art and make it profitable are consistent with artists' similar efforts throughout the ages. Millsaps Decl. ¶ 2, Ex. 1 (B. Gopnik Report (Sept. 1, 2022) ¶¶ 10, 15, 34). *See also* Gopnik Decl. ¶¶ 17-19.

Hermès' response that Rothschild sold NFTs but not the *MetaBirkins* images attached to them is attorney spin contradicted by Hermès' own evidence showing that Rothschild began promoting the *MetaBirkins* artworks that would be attached to the NFTs weeks before the NFTs were sold or minted. *See* response to paragraph 14, *supra*.

Hermès' response regarding Rothschild's use of whitelist spots likewise does not raise a genuine issue of fact as to whether the *MetaBirkins* project is art. Dr. Gopnik provided cogent, unrebutted expert testimony that artists for ages have provided this kind of "utility" with their artworks. *See* response to paragraph 78, *infra*.

Hermès thus has failed to raise a genuine dispute regarding this fact.

18. **At a most basic level, the "MetaBirkins" title is artistically relevant to the** *MetaBirkins* **project and images because it indicates the subject of the artwork. Millsaps Decl. ¶ 2, Ex. 1 (B. Gopnik Report (Sept. 1, 2022) ¶ 36), ¶ 5, Ex. 4 (N. Martin Dep. (Aug. 30, 2022) 85:23-86:6 ("*Q: Do you consider the word MetaBirkins to be in any way descriptive of the images that you see here? A: There is some link between the title [MetaBirkins] and what I see*"), ¶ 12, Ex. 11 (Plaintiffs Hermès International and Hermès of Paris, Inc.'s Responses to Defendant Rothschild's First Set of Requests for Admission, Responses to Request for Admission No. 3).**

<u>Hermès' Response</u>: *Hermès disputes this statement as inaccurate and misleading and not supported by the record. METABIRKINS is not "artistically relevant" because Rothschild intended to commercially exploit the BIRKIN Mark's popularity and goodwill. (Corrigan Decl., Ex. 5 (ECF No. 72-14) ("I knew I had to try and recreate the same exclusivity and demand of Herm[è]s'[s] most famous handbag."); Ex. 6 (ECF No. 72-15) ("Metabirkins are a tribute to Herm[è]s'[s] most famous handbag, the Birkin, one of the most exclusive, well-made luxury accessories. Its mysterious waitlist, intimidating price tags, and extreme scarcity have made it a highly covetable 'holy grail' handbag that doubles as an investment or store of value."); Ex. 7 (ECF No. 72-16) ("I wanted to see as an experiment to see if i could create that same kind of illusion that it has in real life as a digital commodity. . . selling it at that, keeping that scarcity of 100 bags total . . .").) The term METABIRKINS is the domain name and fixed term associated with the NFT, not the image and not the "title." (Corrigan Decl., Ex. 18 at 4 (ECF No. 73-02); Ex. 21 at 32:14-19, 258:21-261:15, 378:18-379:4 (ECF No. 73-5); Mentzer Decl., Ex. 1 at 10, 29 (ECF No. 68-1).) The images of the digital handbags are titled numerically. (Mentzer Decl., Ex. 1 at 17-19 (ECF No. 68-1).) Rothschild chose to include the METABIRKINS name in the smart contract to associate it with the NFTs, not the images. (Mentzer Decl., Ex. 1 at 10-11, 16-19 (ECF No. 68-1).) The METABIRKINS name was created by a different person under a contest. (Corrigan Decl., Ex. 46 (ECF No. 72-60).) Hermès also disputes that Mr. Martin's statement indicates artistic relevance because Mr. Martin was only asked about whether the name METABIRKINS was descriptive, not if it was artistically relevant. See Millsaps Decl., Ex. 4 at 85:23-86:6 (ECF No. 64-4)..*

**Rothschild's Reply:**  Nothing in Hermès' response controverts the asserted fact. The evidence cited by Hermès to "dispute" the fact that *MetaBirkins* is an art project is consistent with Dr. Gopnik's unrebutted expert testimony that the *MetaBirkins* project as a whole is recognizable Business Art in the vein of Warhol and others, and that Rothschild's efforts to aggressively promote his art and make it profitable are consistent with artists' similar efforts

throughout the ages. Millsaps Decl. ¶ 2, Ex. 1 (B. Gopnik Report (Sept. 1, 2022) ¶¶ 10, 15, 34). *See also* Gopnik Decl. ¶¶ 17-19.

Hermès' response that the name *MetaBirkins* refers to a website and NFTs but not to the *MetaBirkins* images, and that Rothschild sold NFTs but not the *MetaBirkins* images attached to them, is attorney spin contradicted by Hermès' own evidence showing that Rothschild began promoting the *MetaBirkins* artworks that would be attached to the NFTs weeks before the NFTs were sold or minted. *See* response to paragraph 14, *supra*. Nor has Hermès offered any evidence showing that the individual *MetaBirkins* images are "titled" numerically, rather than simply being referred to by a number, encoded in each artwork's associated NFT. With respect to the contest Hermès refers to held for the purpose of naming Rothschild's project, Hermès' version of events is inconsistent with Rothschild's deposition testimony. In his deposition, Rothschild explained that he already had considered the *MetaBirkins* name as a possibility when he ran this contest. After the contest participant suggested that name and reached out directly to Rothschild, he sent her his phone number and spoke with her to explain that fact. *See* Millsaps Opp. Decl. ¶ 13, Ex. 12; Rothschild Opp. Decl. ¶ 12. Moreover, Dr. Gopnik has provided unrebutted expert testimony on this point:

> The concerns that Plaintiffs have expressed concerning the titling of Mr. Rothschild's "MetaBirkins" are also misplaced. When Mr. Rothschild sought input from others in choosing his title, he was acting as any fine artist might, involving his social circle in his acts of creation. Like many, many artists over the last 500 years, Andy Warhol himself is well known to have openly asked those around him for suggestions on all aspects of his art, and to have used their suggestions with enthusiasm — and without thereby diminishing his own artistic status. In particular, there is good evidence that one of Warhol's most famous creations, the loft where he gathered his famous crew of Superstars, was only given its title, "The Factory," in consultation with his assistants and friends.

Gopnik Decl. ¶ 10.

The remainder of Hermès' response is irrelevant to the question of artistic relevance addressed in paragraph 18. Hermès thus has failed to raise a genuine dispute regarding this fact.

19. **The "MetaBirkins" title additionally is artistically relevant to the project at a deeper level; it "adds to the Birkins that it describes as [Rothschild's] subject" and "tells an informed viewer that the interest we are supposed to take in the Birkin that Rothschild has labelled 'meta' comes from a larger comment it makes, rather than from its mere virtues as a depiction of a fancy purse." Millsaps Decl. ¶ 2, Ex. 1 (B. Gopnik Report (Sept. 1, 2022) ¶¶ 37-40); Rothschild Decl. ¶ 12.**

Hermès' Response: *Hermès disputes this statement as misleading and inaccurate, this statement is neither "undisputed" nor is it a "fact," rather, it is a self-serving opinion and characterization that is not supported by the record. Hermès disputes the characterization that METABIRKINS title is artistically relevant. METABIRKINS is not "artistically relevant" because Rothschild intended to exploit the BIRKIN Mark's popularity and goodwill. (Corrigan Decl., Ex. 5 (ECF No. 72-14) ("I knew I had to try and recreate the same exclusivity and demand of Herm[è]s'[s] most famous handbag."); Ex. 6 (ECF No. 72-15) ("Metabirkins are a tribute to Herm[è]s'[s] most famous handbag, the Birkin, one of the most exclusive, well-made luxury accessories. Its mysterious waitlist, intimidating price tags, and extreme scarcity have made it a highly covetable 'holy grail' handbag that doubles as an investment or store of value."); Ex. 7 (ECF No. 72-16) ("I wanted to see as an experiment to see if i could create that same kind of illusion that it has in real life as a digital commodity. . . selling it at that, keeping that scarcity of 100 bags total . . .").) Hermès, again, points to the fact that the term METABIRKINS is the domain name and the fixed term associated with the NFT, not the name or title of the image and not the "title" overall. (Corrigan Decl., Ex. 18 at 4 (ECF No. 73-02); Ex. 21 at 32:14-19, 258:21-261:15, 378:18-379:4 (ECF No. 73-5); Mentzer Decl., Ex. 1 at 10, 29 (ECF No. 68-1).) The images of the digital handbags are titled numerically. (Mentzer Decl., Ex. 1 at 17-19 (ECF No. 68-1).) Rothschild chose to include the METABIRKINS name in the smart contract to associate it with the NFTs, not the images. (Mentzer Decl., Ex. 1 at 10-11, 16-19 (ECF No. 68-1).) THE METABIRKINS name was created by a different person under a contest. (Corrigan Decl., Ex. 46 (ECF No. 72-60).).*

**Rothschild's Reply:**  Nothing in Hermès' response controverts the asserted fact.

Hermès' response that the statement is a "self-serving opinion" is both false and attorney rhetoric that cannot raise a genuine issue of material fact. The statement is direct quotation from the unrebutted expert report of Dr. Gopnik, not "self-serving opinion."  Millsaps Decl. ¶ 2, Ex. 1 (B. Gopnik Report (Sept. 1, 2022) ¶¶ 37-40).

The remainder of Hermès' immaterial response is addressed in paragraph 18, *supra*.

Hermès thus has failed to raise a genuine dispute regarding this fact.

20. **When asked if Hermès had evidence of any attempts by Mr. Rothschild to explicitly mislead others to believe that *MetaBirkins* is associated with Hermès, Hermès' representative could point only to the use of the "Hermès" and "Birkin" marks and the claimed Birkin trade dress, and not to any *explicit* claim that Hermès was the source of the *MetaBirkins* artworks and associated NFTs, or that Hermès had sponsored or endorsed the *MetaBirkins* artworks and associated NFTs. Millsaps Decl. ¶ 5 Ex. 4 (N. Martin Dep. (Aug. 30, 2022) 114:9-115:16, 118:13-18).**

Hermès' Response: *Hermès disputes this statement as inaccurate and misleading. This statement is a mischaracterization of Nicolas Martin's testimony and is not supported by the record. During the refenced line of questioning, Rothschild did not confront Mr. Martin with any of the evidence cited in Hermès Complaint or produced in discovery, nor ask any specific questions as to Rothschild's actions and Mr. Martin clearly explained that he could not recall all examples off the top of his mind, and provided the examples of Rothschild's use of the word BIRKIN in early communications, the BIRKIN Trade Dress. (Millsaps Decl., Ex. 4 at 114:16-115:7.) Rothschild's business associates attested to explicitly misleading others to believe that METABIRKINS NFTs are associated with Hermès:* ███████████████████████████████████████████████████████ ████████████████ *(Corrigan Decl., Ex. 45 at 43:14-19 (ECF No. 73-19); Ex. 82 at Rothschild015178 (ECF No. 73-38).)* ███████████████████████████████ *(Corrigan Decl., Ex. 68 at 149:7-23 (ECF No. 73-32).)* ████████████████████████ *(Corrigan Decl., Ex. 20 at Rothschild008345 (ECF No. 73-4).)* ████████ *(Corrigan Decl., Ex. 22 at Rothschild008383, Rothschild008386 (ECF No. 73-6).).*

**Rothschild's Reply**:  Nothing in Hermès' response controverts the asserted fact. The cited testimony of Nicolas Martin, the General Counsel of Hermès Group—the most senior lawyer in the entire constellation of Hermès entities—speaks for itself.

The remainder of Hermès' response—that "Rothschild's business associates attested to explicitly misleading others to believe that METABIRKINS NFTs are associated with Hermès"—is actually controverted by the evidence cited by Hermès for this assertion. The cited communications with Messrs. Cohen, Loo, Ramirez, and Maresky are private communications between Rothschild and his associates, not public statements or statements to consumers.

Moreover, the fact that they were discussing with Rothschild whether there was any affiliation with Hermès is itself evidence that they were *not* explicitly misled as to such an affiliation.

Hermès thus has failed to raise a genuine dispute regarding this fact.

**22. In promoting *MetaBirkins*, Mr. Rothschild never made any statements attributing *MetaBirkins* to Hermès or claiming any affiliation with Hermès. *Id.***

Hermès' Response: *Hermès disputes this statement as inaccurate, misleading, and incomplete.*



*(Corrigan Decl., Ex. 68 at 149:7-23 (ECF No. 73-32).) (Corrigan Decl., Ex. 55 at Rothschild008307 (ECF No. 73-28).) (Corrigan Decl., Ex. 20 at Rothschild008345 (ECF No. 73-4).)*

*(Corrigan Decl., Ex. 22 at Rothschild008383, Rothschild008386 (ECF No. 73-16).)*

*(Corrigan Decl., Ex. 36 at 124:17-125:10 (ECF No. 73-16); Ex. 52 at SACKS_000047 (ECF No. 73-25).) Rothschild further advertised and promoted the METABIRKINS NFTs as a "tribute to Herm[è]s' most famous handbag, the Birkin." (Corrigan Decl., Ex. 6 at HERMES_0037671 (ECF No. 72-15).) The BIRKIN Mark is inextricably intertwined with Hermès, and by adopting the mark, he was claiming an affiliation with Hermès.*

**Rothschild's Reply**:  Nothing in Hermès' response controverts the asserted fact. The cited private communications between Rothschild and his associates actually are consistent with the asserted fact; the fact that they were discussing with Rothschild whether there was any affiliation with Hermès is itself evidence that they were *not* explicitly misled as to such an affiliation. The statement that *MetaBirkins* were a "tribute to Herm[è]s' most famous handbag, the Birkin" was on the *MetaBirkins* website and made no statement attributing MetaBirkins to Hermès or claiming any affiliation with Hermès; on the contrary, it expressly identified Rothschild as the creator. *See* Corrigan Decl., Ex. 6 at HERMES_0037671. Rothschild

additionally added a disclaimer to the site in response to press confusion about the project. *See id*. at at HERMES_0037448.

The remainder of Hermès' response ("The BIRKIN Mark is inextricably intertwined with Hermès, and by adopting the mark, he was claiming an affiliation with Hermès") is improper legal argument with no factual support. It does not controvert Dr. Gopnik's expert testimony that Rothschild referenced and engaged with, but did not "adopt," Hermès' marks, trade dress, or brands in his artwork and the promotion of his artwork. *See* Millsaps Opp. Decl. ¶ 3, Ex. 2 (Gopnik Dep. (Sept. 23, 2022) 76:5-78:8).

Hermès thus has failed to raise a genuine dispute regarding this fact.

23. **When a few press outlets mistakenly attributed *MetaBirkins* to Hermès shortly after the launch of the project, Mr. Rothschild or his representative reached out promptly to point out that Hermès was not affiliated with *MetaBirkins* and to ask for a correction. *Id*.; Millsaps Decl. ¶ 13, Ex. 12 (emails from Rothschild and his representative to journalists).**

Hermès' Response: *Hermès disputes this statement as inaccurate and incomplete.* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮*, indicating common confusion. (Corrigan Decl., Ex 68 at 61:3-18; 110:14-111:16, 143:15-144:17 (ECF No. 73-32)). Despite this, Rothschild and his representative failed to ask for corrections in some publications that were confused about Hermès's affiliation with the METABIRKINS NFTs, including the New York Post and Challenges. (Corrigan Decl., Ex. 75 at HERMES_0036022 (ECF No. 72-93); Ex. 76. (ECF No. 72-94).)* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮*(Corrigan Decl., Ex. 110 at KLOO_0000039-42 (ECF No. 72-128).) Additionally, neither Rothschild nor his representatives ever corrected the multitude of comments on the various social media platforms where customers and social media users explicitly confused and attributed the METABIRKINS NFTs to Hermès. See Corrigan Decl., Ex. 37 at HERMES_0008362, HERMES_0008376, HERMES_0008439, HERMES_0008445, HERMES_0008634, HERMES_0008638, HERMES_0008684, HERMES_0008689, HERMES_0008696, HERMES_0008706, HERMES_0008752, HERMES_0008757, HERMES_0008802, HERMES_0008809, HERMES_0008824-8828, HERMES_0008835, HERMES_0008841-8842 (ECF No. 72-46); Ex. 38 at HERMES_0009435-36, HERMES_0009520, HERMES_0009533, HERMES_0009536, HERMES_0009540-9541, HERMES_0009544-9545 HERMES_0009549, HERMES_0009522, HERMES_0009555, HERMES_0009598, HERMES_0009605, HERMES_0009608 (ECF No. 72-47).*

**Rothschild's Reply**:  Nothing in Hermès' response controverts the asserted fact that Rothschild or his representative promptly reached out to mistaken publications to ask for corrections.

Hermès offers a selected excerpt from the deposition transcript of Kenneth Loo, Rothschild's press agent, to assert that Mr. Loo ███████████████████████████ ██████████████████████████████████—but Hermès omits Mr. Loo's immediately following testimony that shows Hermès' mischaracterization here. Mr. Loo's full testimony was:



Declaration of Rhett O. Millsaps II in Further Support of Rothschild's Motion for Summary Judgment ("Millsaps Reply Decl.") ¶ 2, Ex. 13 (K. Loo Dep. (Aug. 10, 2022) 49:18-50:10).

Additionally, Hermès cites articles by the *New York Post* and *Challenges* (a French publication) that mistakenly attributed *MetaBirkins* to Hermès, and then makes the assertion, unsupported by any citation to evidence, that "Rothschild and his representative failed to ask for corrections" of those articles. Hermès omits the fact that the *New York Post* actually did correct its story; *see* https://nypost.com/2022/01/08/experts-predict-living-in-the-metaverse-by-2030/ ("LA artist Mason Rothschild created a colorful VR spinoff of the ridiculously expensive Birkin bag, and some of his virtual MetaBirkins have sold 'for as much as the crypto equivalent of

£40,000 [British pounds],' *Elle* reported. Alas, Hermès alleges he did so without permission, and the company is suing Rothchild in Manhattan federal court for unauthorized use of the Birkin trademark.") (last visited October 28, 2022).

The remaining evidence cited by Hermès—social media comments from unidentified individuals—does not controvert the fact that Rothschild or his representative sought corrections of mistaken press articles. Moreover, the social media comments cited show that the commenters were well aware that *MetaBirkins* was not affiliated with Hermès, or they otherwise do not indicate that the commenters were actually confused as to affiliation or source. *See* Corrigan Decl., Ex. 37 (Doc. 72-46) at HERMES_0008362, HERMES_0008376, HERMES_0008439, HERMES_0008445, HERMES_0008634, HERMES_0008638, HERMES_0008684, HERMES_0008689, HERMES_0008696, HERMES_0008706, HERMES_0008752, HERMES_0008757, HERMES_0008802, HERMES_0008809, HERMES_0008824-8828, HERMES_0008835, HERMES_0008841-8842; Ex. 38 (Doc. 72-47) at HERMES_0009435-36, HERMES_0009520, HERMES_0009533, HERMES_0009536, HERMES_0009540-9541, HERMES_0009544-9545 HERMES_0009549, HERMES_0009522, HERMES_0009555, HERMES_0009598, HERMES_0009605, HERMES_0009608.

Hermès thus has failed to raise a genuine dispute regarding this fact.

**24. Following publication of those mistaken articles and receipt of a cease-and-desist letter from Hermès, Mr. Rothschild also added a disclaimer on the www.metabirkins.com website to make clear that his *MetaBirkins* project was in no way affiliated with Hermès. Rothschild Decl. ¶ 14.**

<u>Hermès' Response</u>: *Hermès disputes this statement as incomplete. While Hermès admits that a disclaimer was added to the METABIRKINS.com website after receipt of the cease-and-desist letter, Rothschild failed to include that the disclaimer was added after the initial sales of the METABIRKINS NFTs. (Corrigan Decl., Ex. 6 (ECF No. 72-15).) Additionally, Rothschild failed to add similar (or any such) disclaimers on either his social media sites or any of the NFT marketplaces where he had METABIRKINS NFTs storefronts. See Corrigan Decl., Ex. 25 (ECF No. 72-34); Ex. 26 (ECF No. 72-35); Ex.*

*27 (ECF No. 72-36); Ex. 28 (ECF No. 72-37); Ex. 37 (ECF No. 72-46); Ex. 38 (ECF No. 72-46).*

**Rothschild's Reply**:  Nothing in Hermès' response controverts the asserted fact.

The evidence cited by Hermès for its additional assertions shows that Rothschild clearly identified himself as the creator of *MetaBirkins* even before he added the disclaimer to the website. *See* Corrigan Decl., Ex. 6. Rothschild had no control over listings on NFT marketplace platforms. *See* Declaration of Mason Rothschild in Opposition to Plaintiffs' Motion for Summary Judgment dated October 20, 2022 (Doc. 79) ("Rothschild Opp. Decl.") ¶ 9.

Hermès thus has failed to raise a genuine dispute regarding this fact.

27. **Dr. Isaacson chose or was directed not to rely on the Handbag Survey for his opinions and conclusions in this case after the data for the survey had been collected. Millsaps Decl. ¶ 11, Ex. 10 (B. Isaacson Dep. (Sept. 20, 2022) 141:16-142:12.**

<u>Hermès' Response</u>: *Hermès disputes this statement as misleading. Dr. Isaacson's basis for relying on the NFT Survey (defined herein) as opposed to the Handbag Survey was because his "opinions in this matter are based on the survey of NFT purchasers rather than the survey of handbag purchasers because Hermès has made allegations in this matter that are consistent with forward confusion." See Isaacson Decl., Ex. 1 ¶ 91 (ECF 67-01).*

**Rothschild's Reply**:  Nothing in Hermès' response controverts the asserted fact, which is based on Dr. Isaacson's own unambiguous testimony, as follows:

A: The handbag survey was gathering data twice as long as the other survey. So it took longer before we had the results. And sometimes after the interviewing was completed, so I know that it wasn't until after July 17, 2022, that I knew that we weren't using the handbag survey. And I'm saying, sometime between July 17th and maybe a week or two after that, that would have been the time when counsel would have told me that they were only interested in having me base my opinions on the NFT survey and not on the handbag survey.

Q: So the decision not to use the handbag survey was made after you had collected the data for that survey; is that right?

A: That's correct. Because otherwise we would have stopped data – I would have stopped data – if they had told me we're not going to be basing any decisions based

on that survey, I would have stopped data collection for the survey.

Hermès' statement that Dr. Isaacson did not offer any opinion as to that survey because

his "opinions in this matter are based on the survey of NFT purchasers rather than the survey of

handbag purchasers because Hermès has made allegations in this matter that are consistent with

forward confusion" is self-serving nonsense; Dr. Isaacson clearly was aware of Hermès'

allegations in this case before he conducted the handbag survey.

Hermès thus has failed to raise a genuine dispute regarding this fact.

**30. But Dr. Isaacson admitted at his deposition that the NFT Survey was in fact not a survey of trademark *confusion* at all; he testified that his survey was testing not for confusion but for mere mental association between *MetaBirkins* and Hermès. Millsaps Decl. ¶ 11, Ex. 10 (B. Isaacson Dep. (Sept. 20, 2022) 95:10-18, 102:3-9, 108:15-110:12, 120:2-8, 124:3-13).**

Hermès' Response: *Hermès disputes this statement as misleading, inaccurate, vague, and incomplete. Rothschild's mischaracterizes Dr. Isaacson's deposition testimony. Dr. Isaacson testified about the mental processes respondents likely engaged in that created the likelihood of confusion measured by his NFT Survey: "there's only one kind of confusion that I'm basing my opinions on. And that's where someone sees the MetaBirkins web page and makes a cognitive connection in their own mind between that web page and Hermes or Birkin." (Corrigan Suppl. Decl., Ex 132 at 95:13-18.) Dr. Isaacson further testified as to a particular respondent: "their answer to question 4 indicates that they clearly see a Hermes bag in the MetaBirkins home page and that means they're confused by the way that likel[ihood] of confus[ion] surveys work. . . . They've made a cognitive connection between a bag that they're shown that is never labeled as an Hermes bag in the survey, but they've identified it as an Hermes bag twice. . . . I don't see where there's any question that this respondent is confused." See Corrigan Suppl. Decl., Ex 132 at 101:22-102:17.*

**Rothschild's Reply**:  Nothing in Hermès' response controverts the asserted fact; in fact,

Hermès' response only further supports the asserted fact. Dr. Isaacson's cited testimony speaks

for itself and makes clear that he was not testing for confusion as to source or affiliation, but only

for "cognitive connections" between *MetaBirkins* and Hermès' Birkin bag. Of course, artwork

that depicts a fanciful Birkin bag would necessarily spark such a cognitive connection in any

viewer who recognizes what the artwork is depicting. That plainly is not evidence that such a

viewer would be confused as to the source of the artwork or its affiliation with Hermès.

Hermès thus has failed to raise a genuine dispute regarding this fact.

**31. For this reason, Dr. Isaacson counted as "confused" NFT Survey respondents who, when asked about the source of the products on the webpage that Isaacson used as a stimulus, read back to him the *disclaimer* on the page, which explicitly stated that *MetaBirkins* had no connection with Hermès. Millsaps Decl. ¶ 11, Ex. 10 (B. Isaacson Dep. (Sept. 20, 2022) 118:25-120:8), ¶ 10, Ex. 9 (Neal Rep. ¶¶ 3.3-3.3.15.2).**

Hermès' Response: *Hermès disputes this statement as misleading, incomplete, vague, and inaccurate. Dr. Isaacson testified: "this person not only is confused by the web page but they're also confused by the disclaimer . . . because they're not quite sure what's going on. But they are clearly demonstrating that they looked at this and they thought that somehow Hermes is involved in it. They think that Hermes is providing the items that are shown on the webpage." (Corrigan Suppl. Decl., Ex. 132 at 116:18-117:3.) Dr. Isaacson further testified: "their answer to question 2 demonstrates just how confused they are by the page, and demonstrates as well that that disclaimer which is sometimes the case for disclaimers that are not sufficiently clear is exacerbating their confusion. . . . they saw something in the disclaimer that made them confused. Not that it made them unconfused . . . but rather led them to believe, based on seeing the word Hermes in the disclaimer possibly, that they were confused." **Authority:** Corrigan Suppl. Decl., Ex. 132 at 118:17-119:14.*

**Rothschild's Reply**: Nothing in Hermès' response controverts the asserted fact; in fact, Hermès' internally incoherent response only further supports the asserted fact. As Dr. David Neal made clear in his report, Dr. Issacson was required to "include an additional follow-up question to rule out the possibility that respondents are merely reading or 'playing back' what is shown to them in the survey, rather than actually being confused and thinking specifically of the senior user when they see the junior user's allegedly infringing goods." Neal. Rep. ¶ 3.3.2. And in fact Dr. Issacson included that follow-up question—that is, he included a question that enabled him "to determine whether respondents who listed "Hermes" or "Birkin" at Q1 were, in fact, thinking of the Plaintiffs versus merely reading or playing back one of many brands written on the stimulus they had just seen." Millsaps Decl. [Doc. 65] ¶ 11, Ex. 10 (Neal Rep. ¶ 3.3.8). And

yet, as Dr. Neal shows, Dr. Isaacson simply ignored the answers to that follow-up question when coding his results. *Id*. ¶¶ 3.3.6-3.3.9. In one of those answers, shown in Neal Rep. Table 2, Response ID 18, the subject stated that "[t]he webpage Name and description states it's MetaBirkins. But also, the webpage disclaimer at the bottom clearly states the author of the post or NFT is not affiliated with 'Hermès' who is the actual registered Trademark Owner of Birkin bags." Dr. Isaacson counted this respondent as "confused" simply because the respondent mentioned the word "Hermès", despite it being absolutely clear that the respondent was not confused and was simply "reading back" that term because it was contained in the disclaimer.

When Dr. Neal re-calculated Dr. Isaacson's results, this time including in the calculation the answers to the follow-up question to rule out "reading back," the level of net confusion dropped to 9.3%. *Id*. ¶¶ 3.3.11-3.3.14.

Hermès thus has failed to raise a genuine dispute regarding this fact.

## II. ROTHSCHILD'S RESPONSE TO HERMÈS' STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION

Rothschild sets forth his responses to Hermès' statement of additional material facts below,[2] although Rothschild contends that none of the purported material facts are actually material to Rothschild's motion for summary judgment.

32. Hermès owns the BIRKIN trademark which registered on the Principal Register of the U.S. Trademark and Patent Office ("USPTO") on September 6, 2005 under Registration No. 2991927 (the "BIRKIN Mark"). Authority: Corrigan Decl., Ex. 13 at HERMES_0007355; Martin Decl. at ¶ 5.

***Rothschild's Response***:

**(32)**   Undisputed.

33. Hermès owns the BIRKIN trade dress which registered on the Principal Register of the USPTO on March 29, 2011 under Registration No. 3936105 (the "BIRKIN Trade Dress"). Authority: Corrigan Decl., Ex. 14 at HERMES_0007674; Martin Decl. at ¶ 5.

---

[2] Several paragraph numbers are duplicated in Hermès' statement of additional material facts; Rothschild replicates them here to avoid further confusion.

*Rothschild's Response*:

**(33)**     Mr. Rothschild does not dispute that Hermès owns Registration No. 3936105. The question of whether Hermès owns a trade dress in connection with the Birkin handbag is a question of law to which no response is necessary here.

34.     The BIRKIN Mark is in full force and effect for leather or imitation leather goods, namely, handbags. Authority: Corrigan Decl., Ex. 13; Martin Decl. at ¶ 5.

*Rothschild's Response*:

**(34)**     Mr. Rothschild does not dispute that the registration for the BIRKIN Mark is valid and persisting.

35.     The BIRKIN Mark, registered on the USPTO Principal Register, became incontestable on February 9, 2012, and has been continuously used since its registration. Authority: Corrigan Decl., Ex. 13; Martin Decl. at ¶ 5.

*Rothschild's Response*:

Undisputed.

36.     The BIRKIN Mark is strong and distinctive for handbags. Authority: Corrigan Decl., Ex. 18 at 7.

*Rothschild's Response*:

**(36)**     Undisputed.

37.     Hermès is well known for its iconic BIRKIN handbag, which is an exclusive Hermès design that was created in 1984 by the late President and Artistic Director of Hermès, Jean-Louis Dumas for actress Jane Birkin and first sold in U.S. commerce in 1986. This bag is universally known as the BIRKIN handbag. Authority: Martin Decl. at ¶ 6.

*Rothschild's Response:*

**(37)**     Mr. Rothschild does not dispute that Hermès is well known for its Birkin

handbag, that the first Birkin was created in 1984 by the late President and Artistic Director of

Hermès, Jean-Louis Dumas for actress Jane Birkin, or that it was first sold in U.S. commerce in

1986. Mr. Rothschild disputes, however, that the Birkin handbag is "universally known," which

is an issue for which Plaintiffs bear the burden of proof, and which the evidence in the record

does not show.

32.     Over time, the BIRKIN handbag has become one of Hermès's most iconic products, if not its most iconic product. Authority: Martin Decl. at ¶ 7.

**Rothschild's Response:**

**(32)**   Undisputed.

33.     Hermès spends ███████████████████ in advertising. Since 2016, Hermès has spent ███████████████ in U.S. advertising, which includes advertising the BIRKIN handbag. Authority: Martin Decl. at ¶ 12, Ex. 2.

**Rothschild's Response:**

**(33)**   Undisputed.

34.     By way of example, in the U.S. for Fall/Winter 2020, Hermès spent $588,500 USD in advertising the BIRKIN handbag in print publications. Authority: Martin Decl., Ex. 3.

**Rothschild's Response:**

**(34)**   Undisputed.

35.     The BIRKIN handbag and BIRKIN Mark (as defined herein) have been advertised in widely distributed publications such as the *WSJ Magazine*, *Architect Digest*, *Town & Country*, *Departures*, *Elle*, *W*, *Vogue*, *Harper's Bazaar*, *Vanity Fair*, and the *New York Times Style Magazine*. Authority: Corrigan Decl., Ex. 1; Martin Decl., Ex. 3.

**Rothschild's Response:**

**(35)**   Undisputed.

36.     The BIRKIN handbag and BIRKIN Mark regularly receive unsolicited press coverage in the U.S. in major fashion publications such as *Vogue*, *Harper's Bazaar*, *New York Times Style Magazine*, *Vanity Fair*, *Marie Claire*, *W*, *Allure*, *Elle*, *WWD*; have been featured in *WSJ Magazine*, *Forbes*, and *Departures*; and have received online coverage in *CNN Business* and *Time*. Authority: Corrigan Decl., Ex. 2.

**Rothschild's Response:**

**(36)**   Undisputed.

37.     THE BIRKIN handbag and BIRKIN Mark also receive unsolicited coverage in international fashion publications, including for example, *Harper's Bazaar* editions in Indonesia, India, and Taiwan, *In Style* in Germany, *Marie Claire* Hong Kong, *Prestige* Malaysia, *Elle* editions in Germany and Australia, *Glam* in Qatar, *Female* Malaysia's leading fashion & beauty magazine, *Flare* Canada's fashion magazine, *Vogue* Italy, and *Madame Figaro* in France, among others around the world. Authority: Corrigan Decl., Ex. 3.

**Rothschild's Response:**

**(37)**     Undisputed.

38.     The BIRKIN handbag has been featured in numerous U.S. television shows and movies over the years, including for example, *Sex and the City*, *Gossip Girl*, *Gilmore Girls*, Apple TV+'s *Loot*, *Unbreakable Kimmy Schmidt*, *Inventing Anna*, *The Proposal*, *Transformers*, *Inside Man, The Royal Tenenbaums, Fifty Shades Freed, The Women, The Hustle, Tenet, The Bling Ring, Midnight in Paris, Made of Honor, Think Like A Man, What Men Want, Little, Rizzoli & Isles, Brooklyn Nine-Nine, Jessica Jones,* and *Velvet Buzzsaw.* Authority: Corrigan Decl., Ex. 4.

**Rothschild's Response:**

**(38)**     Undisputed.

39.     The BIRKIN handbag is distributed exclusively through Hermès's stores. As of December 31, 2021, Hermès had over 303 stores across the world, with 73 stores in Europe, 47 in the Americas (including 31 in the U.S.), 95 in Asia, and 6 in Oceania. Hermès has since opened two additional stores in the U.S., for a total of 33. Authority: Martin Decl. at ¶ 11, Ex. 1.

**Rothschild's Response:**

**(39)**     Undisputed.

40.     Since the first sale of the BIRKIN handbag in 1986, Hermès has sold more than ███████████ worth of BIRKIN handbags in the U.S. In the past 10 years, Hermès's [sic] has annually sold over ███████████ U.S. dollars' worth of BIRKIN handbags in significant quantities in the U.S. Authority: Martin Decl. at ¶ 10.

**Rothschild's Response:**

**(40)**     Undisputed.

41.     In Rothschild's marketing for the METABIRKINS NFTs, he described the BIRKIN handbag as "Herm[è]s' most famous handbag" and a "highly covetable 'holy grail' handbag." Authority: Corrigan Decl., Ex. 5 at HERMES_0009806; Ex. 6 at HERMES_0037671.

*Rothschild's Response:*

**(41)**     Mr. Rothschild does not dispute that the quotes in paragraph 13 appear in the cited materials, but he disputes that they were used in "marketing for…NFTs" alone. As HERMES_0009806 and HERMES_0037671 show, the statements were made in describing the *MetaBirkins* art project as a whole.

Additionally, the term "METABIRKINS NFTs" is not defined in Hermès' Rule 56.1 Counterstatement. As a consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are independent either from the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire *MetaBirkins* art project, of which they are an integral part.

42.     Defendant stated in a December 6, 2021 interview with *Yahoo! Finance* that for him, "there's nothing more iconic than the Hermes Birkin bag." Authority: Corrigan Decl., Ex. 7 at HERMES_0010582.

*Rothschild's Response:*

**(42)**     Undisputed.

43.     Defendant first began using the METABIRKINS Mark as early as November 7, 2021. Authority: Corrigan Decl., Ex. 10 at Rothschild006657; Ex. 11.

*Rothschild's Response:*

**(43)**     Mr. Rothschild does not dispute that he began using the *MetaBirkins* title for his art project as early as November 7, 2021. Mr. Rothschild disputes, however, that he has used "MetaBirkins" as a trademark, which is a legal question, not a question of fact.

44.     The BIRKIN handbag has been famous in the U.S. for many years, and at least prior to Defendant's use. Authority: Martin Decl. at ¶ 15.

*Rothschild's Response:*

(44)    Mr. Rothschild does not dispute that the Birkin handbag is well-known in the U.S. But Mr. Rothschild disputes that the Birkin handbag is "famous," at least as that term is used in U.S. trademark law. Under U.S. trademark law, fame refers to the widespread recognition by the national consuming public of a trademark, not a product like a handbag. Plaintiffs have not produced evidence to show fame in the sense in which the concept operates in U.S. trademark law.

45.    For decades, Hermès has developed its reputation and distinctive image as a luxury fashion house of high-quality merchandise and has invested substantially in developing its goodwill in the HERMÈS Mark (as defined herein), BIRKIN Mark, and BIRKIN Trade Dress (as defined herein), which are all known worldwide. The BIRKIN Mark and BIRKIN handbag are famous and among Hermès's most valuable assets. Authority: Martin Dec. at ¶ 14.

*Rothschild's Response:*

(45)    Undisputed, except that Mr. Rothschild disputes that the BIRKIN Mark is "famous," at least as that term is used in U.S. trademark law, as Plaintiffs have not produced evidence to show fame in that sense. Mr. Rothschild also disputes that the Birkin handbag can be "famous;" that term, as used in U.S. trademark law, applies to marks, not products.

46.    ███████████████████████████████ **Authority:** Martin Decl. at ¶¶ 19-20; Exs. 6-8 (ECF Nos. 69-06, 69-07, 69-08); Corrigan Decl., Ex. 12 at 245:2-248:18; 250:4-7, 252:22-253:3; Exs. 16-17 (ECF Nos. 72-25, 72-26).

*Rothschild's Response:*

(46)    Mr. Rothschild does not dispute that ████████████████████



(emphasis added). *See* Declaration of Kevin D. Mentzer dated October 3, 2022 (Doc. 68)

("Mentzer Decl."), Ex. 1 at 7 ("The Metaverse is still evolving but generally thought of as a combination of virtual reality and augmented reality worlds accessed through a browser or headset. It is envisioned as a virtual space where people could work and play.").

47.    Hermès owns pending U.S. Application Serial Nos. 97566629 for BIRKIN and 97566611 for HERMÈS, in connection with non-fungible tokens (NFTs) and related goods and services. Authority: Corrigan Decl., Exs. 16-17; Martin Decl. at ¶ 19.

*Rothschild's Response:*

**(47)**    Mr. Rothschild does not dispute that Hermès filed these pending applications on August 26, 2022, on an "intent-to-use" basis.

48.    Other major fashion brands have already entered the metaverse. **Authority:** Corrigan Decl., Ex. 21 at 113:9-116:20 (ECF No. 73-05); Ex. 62 (ECF No. 72-76); Ex. 63 (ECF No. 72-77); Ex. 64 (ECF No. 72-78); Ex. 65 (ECF No. 72-81); Ex. 66 (ECF No. 72-84).

*Rothschild's Response:*

**(48)**    Mr. Rothschild does not dispute that other major fashion brands have entered

virtual spaces but disputes that "the metaverse" is a singular place or definitive concept, as

implied in the statement that "Other major fashion brands have already entered *the* metaverse"

(emphasis added). *See* Declaration of Kevin D. Mentzer dated October 3, 2022 (Doc. 68)

("Mentzer Decl."), Ex. 1 at 7 ("The Metaverse is still evolving but generally thought of as a

combination of virtual reality and augmented reality worlds accessed through a browser or

headset. It is envisioned as a virtual space where people could work and play.").

49.    The USPTO has taken the position that virtual and physical goods are the kind that "may emanate from a single source, under a single mark" and that "[t]he same providers of real fashion goods often provide virtual fashion goods." Authority: Corrigan Supp. Decl., Exs. 142 at p. 9; Ex. 143 at p. 7.

*Rothschild's Response:*

**(49)**    Undisputed.

50.    For example, U.S. Application Serial No. 97112038 was filed by individuals not affiliated with Gucci for the mark GUCCI for virtual goods, including "footwear, clothing, headwear, eyewear, handbags, laptop bags, backpacks, luggage, briefcases, art, toys, jewelry,

watches, hair accessories, pet collars, accessories and charms for use in online virtual worlds." The USPTO issued an Office Action on August 30, 2022, refusing registration, in part, because the mark was identical and the virtual goods were the same as the physical goods covered by Gucci's GUCCI registrations so "consumers would be likely to assume the existence of a connection between the parties," also noting that Gucci is "is so well-known that consumers would presume a connection." Authority: Corrigan Supp. Decl., Ex. 142 pp. 8-11.

**Rothschild's Response:**

**(50)**    Undisputed.

51.    Similarly, U.S. Application Serial No. 97112054 was filed by an individual not affiliated with Prada for the mark PRADA for virtual goods, including "footwear, clothing, headwear, eyewear, handbags, laptop bags, backpacks, luggage, briefcases, art, toys, jewelry, watches, hair accessories, pet collars, accessories and charms for use in online virtual worlds." The USPTO issued an Office Action on August 29, 2022, refusing registration, in part, because the mark was identical and the goods were "virtual versions" of the goods covered by Prada's PRADA registrations, noting that "providers of real fashion goods often provide virtual fashion goods" and "PRADA is so well-known that consumers would presume a connection." Authority: Corrigan Supp. Decl., Ex. 143 at pp. 6-8.

**Rothschild's Response:**

**(51)**    Undisputed.

52.    Hermès has invested significant time and money in making Hermès what it is today, including in making the BIRKIN handbag what it is today. Considering what could be Hermès's future with the metaverse and NFTs, the fact that Defendant launched his METABIRKINS NFTs first, whatever Hermès will do, there will always be a reference to what Defendant has done. It has caused irreparable harm to Hermès. Today, whatever Hermès does in the metaverse or with NFTs, there will always be a tie to Defendant or METABIRKINS. Consumers could become newly confused as they might not believe, for example, that Hermès's NFTs are really from Hermès. Indeed, entering the NFT market with the BIRKIN trademark is becoming more difficult for Hermès because the METABIRKINS name has already been used for an NFT. Authority: Martin Decl. at ¶ 24, Exs. 6-8; Corrigan Decl., Ex. 12 at 273:24-274:25.

**Rothschild's Response:**

**(52)**    Mr. Rothschild does not dispute that Hermès has invested significant time and money in its company and the Birkin handbag. But Mr. Rothschild disputes the remainder of paragraph 52, which is speculative and unsupported by evidence in the record aside from Nicolas Martin's conclusory, self-serving testimony. *See* Martin Decl. at ¶ 24, Exs. 6-8; Corrigan Decl., Ex. 12 at 273:24-274:25.

53.     Defendant has harmed Hermès's "goodwill and [its] capacity to exploit and to use [its] trademark Birkin and [its] trade dress in the metaverse and in the NFT." Authority: Corrigan Decl., Ex. 12 at 277:23-278:3.

*Rothschild's Response:*

**(53)**     Mr. Rothschild disputes the statement in paragraph 53, which is speculative and

unsupported by evidence in the record aside from Nicolas Martin's conclusory, self-serving

testimony. *See* Corrigan Decl., Ex. 12 at 277:23-278:3. Rothschild additionally disputes that "the

metaverse" is a singular place or definitive concept. *See* Declaration of Kevin D. Mentzer dated

October 3, 2022 (Doc. 68) ("Mentzer Decl."), Ex. 1 at 7 ("The Metaverse is still evolving but

generally thought of as a combination of virtual reality and augmented reality worlds accessed

through a browser or headset. It is envisioned as a virtual space where people could work and

play.").

54.     The METABIRKINS NFTs are data recorded on the Ethereum blockchain. That data lives forever on the blockchain and is governed by a smart contract which is immutable Authority: Mentzer Decl., Ex. 1 at 10, 29.

*Rothchild's Response:*

**(54)**     Mr. Rothschild disputes that the data "lives forever," which is a characterization not supported by the evidence.

55.     ███████████████████████████████████████████████
███████████████████████████████     Under the METABIRKINS NFTs smart contract, these NFTs are permanently branded METABIRKINS because the smart contract cannot be changed. Authority: Corrigan Decl., Ex. 21 at 258:21-261:15, 378:18-379:4 (ECF No. 73-5); Mentzer Decl., Ex. 1 at 10, 29.

*Rothchild's Response:*

**(55)**     Mr. Rothschild does not dispute that ███████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

56.     Rothschild is the controller of the smart contract governing the METABIRKINS NFTs. As the controller, Rothschild can modify or change the images associated with the METABIRKINS NFTs at any time. Authority: Corrigan Decl., Ex. 21 at 227:16-228:10, 249:17-250:4 (ECF No. 73-5); Mentzer Decl., Ex. 1 at 11, 16-17, 21 n. 9, 24, 29 (ECF No. 68-1).

*Rothschild's Response:*

**(56)**     Undisputed.

57.     During the time period when the METABIRKINS NFTs were first minted and sold, all of the digital files associated with the METABIRKINS NFTs depicted the same images of a shroud covering an unidentified object. All initial sales of METABIRKINS NFTs occurred during the time when the METABIRKINS NFTs were associated with the same image of a shroud. Authority: Corrigan Decl., Ex. 21 at 227:16-228:3; Ex. 24; Kominers Decl., Ex. 1 at 25; Mentzer Decl., Ex. 1 at 15-19 (screenshot of Figure 9 on page 17 is depicted below).

*Rothschild's Response:*

**(57)**     Mr. Rothschild does not dispute that the *MetaBirkins* NFTs were attached to the

same image of a shroud covering an unidentified object for less than 24 hours during the initial

minting process, until the "unveiling" occurred upon conclusion of minting, "when each NFT

received their unique [*MetaBirkins*] image." Mentzer Decl., Ex. 1 at 17-19. But Hermès'

statement omits its own material evidence showing that purchasers saw and doubtless understood

that the *MetaBirkins* artworks would be attached to the *MetaBirkins* NFTs, even though prior to

minting the NFTs they did not know which one of the particular *MetaBirkins* artworks they

would receive, because Rothschild publicly previewed and promoted the *MetaBirkins* artworks

in the weeks prior to the NFT minting. *See* Corrigan Decl. (Doc. 72) ¶ 6, Ex. 6 & Ex. 49. That

evidence is consistent with Rothschild's uncontroverted deposition testimony:

> *Q: So how would somebody know what they were purchasing?*
>
> *A: Because the 100* [MetaBirkins *artworks*] *were shown in previews. You just didn't know which one you were going to get*."

Millsaps Opp. Decl. (Doc. 88) ¶ 4, Ex. 3 (M. Rothschild Dep. (August 4, 2022) 226:18-228:10).

33

Additionally, the term "METABIRKINS NFTs" is not defined in Hermès' Rule 56.1 counterstatement. As a consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are independent either from the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire *MetaBirkins* art project, of which they are an integral part.

58.      During the minting process, the METABIRKINS NFTs were still associated with the shrouded image above, and 16 METABIRKINS NFTs were sold or transferred prior to the images being replaced with the digital files depicting furry BIRKIN handbags. These shrouded images were called "MetaBirkins" in the OpenSea marketplace where Defendant promoted and made available for sale the METABIRKINS NFTs. Authority: Corrigan Decl., Ex. 21 at 249:17-250:4; Mentzer Decl., Ex. 1 at 15-19.

***Rothschild's Response:***

**(58)**      Mr. Rothschild disputes this statement to the extent it suggests that buyers did not understand at the time of sale that they were buying a *MetaBirkins* artwork, based on the undisputed evidence cited in response to paragraph 57, *supra*.

Mr. Rothschild additionally disputes that the shrouded images were called *MetaBirkins,* which is not supported by evidence in the record, and that he "promoted and made available for sale" the *MetaBirkins* NFTs in the OpenSea marketplace. Mr. Rothschild has provided uncontroverted testimony that OpenSea automatically listed the NFTs after they were minted. *See* Rothschild Opp. Decl. ¶ 9.

Additionally, the term "METABIRKINS NFTs" is not defined in Hermès' Rule 56.1 counterstatement. As a consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are independent either from the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire *MetaBirkins* art project, of which they are an integral part.

59.     The initial purchasers were not purchasing particular images, but rather rights to own a METABIRKINS branded NFT, then associated with the same image of a shrouded object. Authority: Mentzer Decl., Ex. 1 at 16-19, 29.

**_Rothschild's Response:_**

**(59)**     Mr. Rothschild disputes this statement, which is a characterization controverted by undisputed evidence in the record. Hermès' statement omits its own material evidence showing that purchasers saw and doubtless understood that the _MetaBirkins_ artworks would be attached to the _MetaBirkins_ NFTs, even though prior to minting the NFTs they did not know which one of the particular _MetaBirkins_ artworks they would receive, because Rothschild publicly previewed and promoted the _MetaBirkins_ artworks in the weeks prior to the NFT minting. _See_ Corrigan Decl. (Doc. 72) ¶ 6, Ex. 6 & Ex. 49. That evidence is consistent with Rothschild's uncontroverted deposition testimony:

> _Q: So how would somebody know what they were purchasing?_
>
> _A: Because the 100_ [MetaBirkins _artworks_] _were shown in previews. You just didn't know which one you were going to get_."

Millsaps Opp. Decl. (Doc. 88) ¶ 4, Ex. 3 (M. Rothschild Dep. (August 4, 2022) 226:18-228:10).

Additionally, the term "METABIRKINS NFTs" is not defined in Hermès' Rule 56.1 counterstatement. As a consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are independent either from the _MetaBirkins_ artworks they authenticate or Mr. Rothschild's entire _MetaBirkins_ art project, of which they are an integral part.

60.     Kominers's statistical analysis of NFT trading data determined that Rothschild's use of the BIRKIN Mark in METABIRKINS drove sales. Authority: Kominers Decl., Ex. 1 at 42-54 (ECF No. 71-1); Mentzer Decl., Ex. 1 at 16-19, 29 (ECF No. 68-1).

*Rothschild's Response:*

(60)    Mr. Rothschild disputes this statement, which omits Dr. Kominers' key admission

at his deposition that is fatal to his conclusion. Dr. Kominers admitted at his deposition that he

did not take into account the art market as a factor in his analysis of the sales of Rothschild's

*MetaBirkins* because he "couldn't figure out a way to do it that would be robust." Millsaps Opp.

Decl. (Doc. 88) ¶ 5, Ex. 4 (Kominers Dep. (Aug. 29, 2022) 247:5-250:12).

61.    After minting ended on December 3, 2021 UTC, Rothschild caused the shrouded
image files associated with the newly minted METABIRKINS NFTs to be replaced with images
like that shown below. Authority: Mentzer Decl., Ex. 1 at 19 (screenshot of Figure 11 on page 18
depicted below).

*Rothschild's Response:*

(61)    Mr. Rothschild disputes this statement to the extent it suggests that buyers did not

understand at the time of sale that they were buying a *MetaBirkins* artwork, based on the

undisputed evidence cited in response to paragraph 57, *supra*.

Mr. Rothschild otherwise does not dispute the factual details laid out in paragraph 61.

62.    These new files depicted "handbags," that ████████████████████████
████████████████████████████████████ Authority: Corrigan Decl.,
Ex. 6 at HERMES_0037671 (ECF No. 72-15); Ex. 21 at 147:18-148:1 (ECF No. 73-5); Ex. 98 at
Rothschild014825 (ECF No. 73-56); Mentzer Decl., Ex. 1 at 19 (ECF No. 68-1)..

*Rothschild's Response:*

(62)    Mr. Rothschild disputes this statement to the extent that ████████████████

████████████████████████████████████████████████████████████

████████████████████ *See* Rothschild's reply to paragraphs 15-16, *supra*.

Additionally, Hermès' own expert testified that the *MetaBirkins* images do not depict Birkins,

but rather "they depict fuzzified bags that look similar to Birkins." Millsaps Opp. Decl. (Doc. 88)

¶ 5, Ex. 4 (S. Kominers Dep. (Aug. 29, 2022) 119:18-240).

Mr. Rothschild does not dispute that h███████████████████████████████████

███████████████████████

63.   ███████████████████████████████████████████ Authority: Corrigan Suppl. Decl., Ex. 139 at Rothschild008429-88433, Rothschild008454-8457.

*Rothschild's Response:*

**(63)**   Mr. Rothschild disputes Hermès' characterization that ██████████████

█████████████████████████████████ The undisputed record evidence shows that

Mr. Berden functioned as a high-level studio assistant who assisted Mr. Rothschild in the

creation of the *MetaBirkins* artworks; at all times, Mr. Berden worked at Mr. Rothschild's

direction, and Mr. Rothschild had final approval over his work, including all of the *MetaBirkins*

artwork images. *See* Corrigan Decl., Ex. 55 at Rothschild008309-8320 (showing Mr. Rothschild

giving feedback and direction to Mr. Berden); Millsaps Opp. Decl. (Doc. 88) ¶ 2, Ex. 1 at

Rothschild0011356-11359, Rothschild0011416-11428, Rothschild0014566-14594,

Rothschild0014660-14663, Rothschild0014683-14685, Rothschild0014687-14694,

Rothschild0014796-14802; ¶ 3, Ex. 2 (Gopnik Dep. (Sept. 23, 2022) 244:7-245:5 (in response to

questioning about his review of a voluminous number of Mr. Rothschild's and Mr. Berden's

communications, stating that Mr. Berden "was functioning as a high-level studio assistant" to

Mr. Rothschild)); Gopnik Decl. ¶ 14; Rothschild Opp. Decl. ¶¶ 3-4.

Mr. Rothschild does not dispute that ███████████████████████████████

██████████████████████████████████████████████████████as shown in

the cited text messages. *See* Corrigan Suppl. Decl., Ex. 139 at Rothschild008429-88433,

Rothschild008454-8457.

64.   ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████ Authority: Corrigan Decl., Ex. 55 at Rothschild008305-8308 (ECF No. 73-28); Ex. 111 at Rothschild008420 (ECF No. 73-61); Ex. 113 at Rothschild015475-76 (ECF No. 73-63).

*Rothschild's Response:*

(64)    Mr. Rothschild disputes Hermès' self-serving and inaccurate characterization that

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████ Corrigan Decl., Ex. 111 at Rothschild008410-8415. *See also* Corrigan

Decl., Exs. 55 and 111 generally; Millsaps Opp. Decl. (Doc. 88) ¶ 2, Ex. 1 at

Rothschild0011356-11359, Rothschild0011416-11428, Rothschild0014566-14594,

Rothschild0014660-14663, Rothschild0014683-14685, Rothschild0014687-14694,

Rothschild0014796-14802.

65.    ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████

Authority: Corrigan Decl., Ex. 113 at Rothschild015475-76 (ECF No. 73-63).

*Rothschild's Response:*

(65)    Mr. Rothschild does not dispute that ████████████████████████

██████████████████████████████ but Mr. Rothschild disputes the misleading

insinuation that ████████████████████████████████████████████

███████████████████████████████████████ *See* Rothschild response to

paragraph 64, *supra*.

66.     Some consumers were skeptical about the METABIRKINS NFTs and wondered if the METABIRKINS NFTs were just a scam or "rug." Authority: Corrigan Decl., Ex. 38 at HERMES_0009452 (ECF 72-47); Ex. 114 at Rothschild007787-88 (ECF No. 72-132).

*Rothschild's Response:*

**(66)**     Mr. Rothschild does not dispute that two unidentified individuals, one on Twitter and one on Instagram, posted comments questioning whether MetaBirkins was a scam or a "rug" in the wake of Hermès' cease-and-desist letter, as shown in the cited screenshots. Mr. Rothschild disputes that these individuals were consumers, and there is no evidence in the record to support that assertion.

67.     The digital images attached to the METABIRKINS NFTs are "handbags" in the digital world and "metaverse ready" in any metaverse capable of pulling image information from the METABIRKINS smart contract. Authority: Corrigan Decl., Ex. 12 at 60:16-61:3, 67:11-15 (ECF No. 73-1); Ex. 34 ¶ 37 (ECF No. 73-14); Mentzer Decl., Ex. 1 at 28-31 (ECF No. 68-1).

*Rothschild's Response:*

**(67)**     Mr. Rothschild disputes Mr. Rothschild disputes this statement in its entirety. Hermès has admitted that the *MetaBirkins* images are two-dimensional, static digital images that depict handbags. *See* Rothschild response to paragraph 15, *supra*; *see also* Millsaps Opp. Decl. (Doc. 88) ¶ 5, Ex. 4 (S. Kominers Dep. (Aug. 29, 2022) 119:18-240) (Dr. Kominers testifying that the "images associated with the *MetaBirkins* NFTs…depict fuzzified bags that look similar to Birkins.").

Mr. Rothschild does not dispute that the *MetaBirkins* images are able to be displayed as two-dimensional pictures in some metaverse environments, but Mr. Rothschild disputes that they are "metaverse ready" as handbags or in any other useful sense. *See* Rothschild response to paragraph 15, *supra*.

68.     Rothschild has the ability to update the files associated with the METABIRKINS NFTs, can replace the file associated with the METABIRKINS NFTs with a 3D file, compatible with any metaverse platform at any time. Authority: Mentzer Decl., Ex. 1 at 28-33 (ECF No. 68-1).

**Rothschild's Response:**

**(68)**     Mr. Rothschild does not dispute that he had the ability to do this, but Mr. Rothschild disputes any insinuation that he has ever planned to do this, for which there is no evidence because he has not. Additionally, the term "METABIRKINS NFTs" is not defined by Hermès. As a consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are independent either from the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire *MetaBirkins* art project, of which they are an integral part.

69.     Social media users can "wear [the METABIRKINS] in profile picture[s]." Authority: Corrigan Decl., Ex. 12 at 60:16-61:3, 67:11-15 (ECF No. 73-1).

**Rothschild's Response:**

**(69)**     Mr. Rothschild disputes the statement in paragraph 69, which is not a fact but rather is a self-serving characterization by Hermès' corporate representative. The statement is inconsistent with the dictionary definition of "wear" and "wearable" and also contrary to common usage of those words. *See*, *e.g.*, Oxford English Dictionary (https://www.oed.com) ("wear: To carry or bear on one's body or on some member of it, for covering, warmth, ornament, etc.; to be dressed in; to be covered or decked with; to have on.").

Additionally, it is undisputed that the *MetaBirkins* images are two-dimensional digital images. *See* Rothschild response to paragraph 15, *supra*. The *MetaBirkins* images are as "wearable" as any two-dimensional image on the Internet.

70. Dr. Gopnik described the METABIRKINS NFTs as an "elite metaversal commodity. . . the kind of deluxe Hermès bag a MetaKardashian might carry, in the virtual reality we will all inhabit." Authority: Corrigan Decl., Ex. 34, ¶ 37.

*Rothschild's Response:*

**(70)**     Mr. Rothschild disputes that Dr. Gopnik described the *MetaBirkins* images or NFTs as a literal commodity. As Dr. Gopnik has explained, Plaintiffs have selectively twisted his words here to change the meaning of what Dr. Gopnik actually opined:

> The following sentence from Plaintiff's motion further implies that I am denying the artistic status of Mr. Rotshchild's "MetaBirkins": "Dr. Gopnik described the METABIRKINS NFTs as an 'elite metaversal commodity. . . the kind of deluxe Hermès bag a MetaKardashian might carry, in the virtual reality we will all inhabit.' " In fact, the sentence of mine that Plaintiff quoted is meant to underline the artistic status of the "MetaBirkins," by making clear the imaginative work that they do. The very next sentence in my report, conveniently omitted by Plaintiff, makes that very clear: "That lends a speculative quality to Mr. Rothschild's work that aligns it with certain kinds of literary science fiction, where current cultural trends and goods are extrapolated into the future."

Gopnik Decl. ¶ 8; Corrigan Decl., Ex. 34, ¶ 37.

Additionally, the term "METABIRKINS NFTs" is not defined by Hermès. As a consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are independent either from the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire *MetaBirkins* art project, of which they are an integral part.

71. ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████  Authority: Corrigan Decl., Ex. 21 at 167:21-169:5 (ECF No. 73-5); Ex. 55 at Rothschild008316-8317 (ECF No. 73-28).

*Rothschild's Response:*

**(71)**     Mr. Rothschild does not dispute that ████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████ See Rothschild response to

paragraph 15, *supra*.

72.    ████████████████████████████████████████████

████ Authority: Corrigan Decl., Ex. 52 at SACKS_000027.

*Rothschild's Response:*

**(72)**     Mr. Rothschild does not dispute that ████████████████████

██████████████████████████████████████████ but Mr.

Rothschild disputes that █████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████ Corrigan Decl., Ex. 52 at

SACKS_000027. *See also* Millsaps Decl. (Doc. 65) ¶ 12, Ex. 11 (Plaintiffs Hermès International

and Hermès of Paris, Inc.'s Responses to Defendant Rothschild's First Set of Requests for

Admission, Responses to Request for Admission No. 2)); Millsaps Opp. Decl. ¶ 6, Ex. 5 (N.

Martin Dep. (August 30, 2022) 64:20-65:10).

Additionally, the term "METABIRKINS NFTs" is not defined by Hermès. As a

consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he

disputes Hermès' use of the term to the extent it suggests the NFTs are independent either from

the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire *MetaBirkins* art project, of which they are an integral part.

73.    There are sub-markets within the larger NFT market. Two sub-markets are "art-only" and "digital brand" NFTs. "Art-only" NFTs "serve just to convey ownership of (often digital) artworks, imagery, collectibles or similar—without any other utility or other direct holder benefits." "Digital brand" NFTs "use digital assets such as art, imagery, or collectibles as a springboard for establishing a broader product ecosystem, holder community, and brand." Authority: Kominers Decl., Ex. 1 at 1 (ECF No. 71-1).

***Rothschild's Response:***

**(73)**    Mr. Rothschild disputes the validity of the artificial category of "digital brand" NFTs" that Dr. Kominers invented for his report in this case. *See* Millsaps Opp. Decl. (Doc. 88) ¶ 5, Ex. 4 (S. Kominers Dep. (Aug. 29, 2022) 124:9-126:6 (wherein Dr. Kominers admits that he never published anything using the terms "art-only" NFTs and "digital brand" NFTs prior to submitting his expert report in this case).

Further, as Dr. Blake Gopnik explained in his unrebutted expert report, the distinction that Dr. Kominers attempts to draw between "art-only" NFTs and "digital brand" NFTs is "specious…Any fine artist eager to be recognized in the 21st century, and to earn a living, would naturally adopt many or all of the strategies used to publicize and sell branded products, and this would include the strategies that brands adopt in the new world of NFTs." Millsaps Decl. (Doc. 65) ¶ 2, Ex. 1 (Gopnik Rep.) at 6. As Dr. Gopnik further opined:

> [A]t least as far back as Rembrandt an artist's signature style has also functioned to create brand-recognition in the market for art; there is simply no way to distinguish between an artist's properly "aesthetic" activities and the way they use those aesthetics to establish the brand that their market, like most elite markets, depends on. Even as they make their art, most artists are also running a small business whose function is to sell that art. To do that, they can choose to use the same marketing strategies that any other business would use. Just as Pablo Picasso was a master at manipulating the 20th-century market for physical art objects, playing dealers and collectors off each other to control his art's supply and demand, so today's artists should be expected to understand and use all aspects of the 21st century's new digital markets for their goods and images.

*Id*. Dr. Gopnik additionally has explained:

> [T]he kinds of opportunities offered by those utilities — to be a member of a social community built around "MetaBirkins"; to have early access to subsequent artistic projects by. Mr. Rothschild; to participate in special events organized by him (although, contra Plaintiff, evidence suggests he never did hold properly "gated" events for his "MetaBirkins") — all of these are perfectly normal aspects of traditional artistic practices. It is absolutely standard, for instance, for collectors of an early project by a painter to be given privileged access to subsequent bodies of work. (You might easily call that an unstated but understood "utility" that comes with the purchase of that artist's work.) And it is almost a cliché that collectors buy an artist's works partly for the social access that gives them to the artist and his or her circle — for the specifically social "utility" that comes with the purchase. (In private, artists have often complained to me about the social duties that come with sales.) The selling and buying of works of art has always involved "utilities," of one kind or another, that have little to do, in any immediate way, with the properly artistic qualities of those works. In being sold with explicit "utilities" associated with them, Mr. Rothschild's NFT'd images are not much different from more traditional works whose associated "utilities" are left implied.

Gopnik Decl. ¶ 9.

Dr. Kominers testified throughout his deposition that he cannot say what is art and what is not, so he cannot rebut Dr. Gopnik's opinions here. *See* Millsaps Reply Decl. ¶ 3, Ex. 14 (S. Kominers Dep. (Aug. 29, 2022) 75:16-76:12; 88:6-15). Nonetheless, Dr. Gopnik's testimony about this matter is consistent with Dr. Kominers' testimony that media attached to a so-called "digital brand NFT" can be art. *See id*. at 136:22-137:2.

74.    Unlike "art-only" NFTs, "digital brand" NFTs launch with a brand asset, which is then followed by various forms of rewards for NFT holders, typically called "utilities," including additional brand assets. The purpose of creating "utilities" for digital brand NFTs is to enhance the value of the NFTs and promote sales and resales. This can enrich the owner of the smart contract, who can collect income on sales and resales. **Authority:** Kominers Decl., Ex. 1 at 1, 7-10, 13, 15-20 (ECF No. 71-1); Mentzer Decl., Ex. 1 at 9, 17-25 (ECF No. 68-1).

*Rothschild's Response:*

**(74)**    Mr. Rothschild disputes the validity of the artificial categories of "art-only NFTs" and "digital brand NFTs" that Dr. Kominers invented for his report in this case and repeats here his response to paragraph 73, *supra*.

75.    In recent live audio interviews on Twitter Spaces, Rothschild acknowledged the art-only and digital brand segments of the NFT market, while renaming them "art driven" and "utility driven." Authority: Kominers Decl., Ex. 2 at 1-2 (ECF No. 71-2); Kominers Decl., Ex. 3 at 11:19-12:8 (ECF No. 71-3); Kominers Decl., Ex. 4 at 11:22-12:11 (ECF No. 71-4).

*Rothschild's Response:*

**(75)**    Mr. Rothschild disputes the validity of the artificial categories of "art-only NFTs" and "digital brand NFTs" that Dr. Kominers invented for his report in this case and repeats here his response to paragraph 73, *supra*.

76.    Rothschild advocates that brands embrace the "digital brand" or "utility driven" NFTs and avoid the "art-only" NFTs. Authority: Kominers Decl., Ex. 2, at 1-2 (ECF No. 71-2).

*Rothschild's Response:*

**(76)**    Mr. Rothschild does not dispute the statements attributed to him but disputes any implication that it signals that his *MetaBirkins* project is not art. As Dr. Blake Gopnik explained:

> [T]he kinds of opportunities offered by those utilities — to be a member of a social community built around "MetaBirkins"; to have early access to subsequent artistic projects by. Mr. Rothschild; to participate in special events organized by him (although, contra Plaintiff, evidence suggests he never did hold properly "gated" events for his "MetaBirkins") — all of these are perfectly normal aspects of traditional artistic practices. It is absolutely standard, for instance, for collectors of an early project by a painter to be given privileged access to subsequent bodies of work. (You might easily call that an unstated but understood "utility" that comes with the purchase of that artist's work.) And it is almost a cliché that collectors buy an artist's works partly for the social access that gives them to the artist and his or her circle — for the specifically social "utility" that comes with the purchase. (In private, artists have often complained to me about the social duties that come with sales.) The selling and buying of works of art has always involved "utilities," of one kind or another, that have little to do, in any immediate way, with the properly artistic qualities of those works. In being sold with explicit

"utilities" associated with them, Mr. Rothschild's NFT'd images are not much different from more traditional works whose associated "utilities" are left implied.

Gopnik Decl. ¶ 9. *See also* Rothschild's response to paragraph 73, *supra*.

77.    Rothschild criticized Gucci's launch of "purely art" NFTs that had "no real like utility" because "it doesn't do anything" and "just dilute[s] their brand in Web3 to like not really have much behind it." Authority: Kominers Decl., Ex. 2, at 1-2 (ECF No. 71-2).

   *Rothschild's Response:*

   **(77)**    Mr. Rothschild disputes Hermès' characterization of his full statement about

Gucci's NFT project based on the words that Hermès cherry picked from it. A review of the full

transcript shows that Mr. Rothschild criticized Gucci for promising NFTs with utility but failing

to deliver the utility. Mr. Rothschild further disputes the validity of the artificial categories of

"art-only NFTs" and "digital brand NFTs" that Dr. Kominers invented for his report in this case.

*See* Rothschild's response to paragraph 73, *supra*.

78.    Dr. Gopnik noted the METABIRKINS NFTs are "digital brand" NFTs or "utility driven." Dr. Gopnik stated in his report that "Rothschild deliberately rejects the restricted world of 'art-only' NFTs (I have argued in the Times that its artistic potential is close to non-existent) and instead ventures into the world of 'digital brand' NFTs that seems to have real leverage on our current reality." Authority: Corrigan Decl., Ex. 34 ¶ 22 (ECF No. 73-14).

   *Rothschild's Response:*

   **(78)**    Mr. Rothschild disputes that Dr. Gopnik embraced Dr. Kominers' artificial

categories of "art-only" and "digital brand" NFTs, which Dr. Gopnik expressly rejected as

"specious." *See* Rothschild's response to paragraph 73, *supra*. Moreover, Dr. Kominers testified

throughout his deposition that he cannot say what is art and what is not, so he cannot rebut Dr.

Gopnik's opinions in this case. *See* Millsaps Reply Decl. ¶ 3, Ex. 14 (S. Kominers Dep. (Aug.

29, 2022) 75:16-76:12; 88:6-15).

79.    METABIRKINS NFTs mirror the attributes of "digital brand" NFTs or "utility driven" NFTs. Authority: Kominers Decl., Ex. 1 at 1, 32-41(ECF No. 71-1); Kominers Decl., Ex. 2 at 1-2 (ECF No. 71-2); Kominers Decl., Ex. 3 at 11:19-12:8 (ECF No. 71-3); Kominers Decl., Ex. 4 at 11:22-12:11 (ECF No. 71-4).

*Rothschild's Response:*

**(79)**   Mr. Rothschild disputes the validity of the artificial categories of "art-only NFTs" and "digital brand NFTs" that Dr. Kominers invented for his report in this case and repeats here his response to paragraph 73, *supra*.

80.   Rothschild promoted the METABIRKINS NFTs —not the images—as the key to unlocking all of his future projects. Authority: Corrigan Decl., Ex 5 (ECF No. 72-14).

*Rothschild's Response:*

**(80)**   Mr. Rothschild disputes this statement in its entirety, and the record evidence

cited does not support it. Mr. Rothschild has always promoted the *MetaBirkins* artworks along

with their corresponding NFTs. *See* Rothschild response to paragraphs 14 and 57, *supra*.

81.   Rothschild promised purchasers of the METABIRKINS NFTs other digital assets, including replicating an "Herm[è]s Horse Companion" (Rothschild's pink horse image at left compared to the orange Hermès Rodeo horse charm at right below) to "'attach' to bag[s]." ███████████ Authority: Corrigan Decl., Ex. 21 at 179:24-181:3 (ECF No. 73-5); Ex. 35 at SACKS_000253-254 (ECF No. 73-15); Ex. 36 at 198:16-199:14 (ECF No. 73-16); Ex 47 (ECF No. 73-20); Kominers Decl., Ex. 1 at 52-53 (ECF No. 71-1).

*Rothschild's Response:*

**(81)**   Mr. Rothschild does not dispute that ███████████████

███████████████████████████████████████

███████████████████████████ but Mr. Rothschild

disputes any insinuation that this is evidence that his *MetaBirkins* project was not art. As Dr.

Gopnik has explained after reviewing communications between Mr. Rothschild and his assistant:

> I note that such interaction is very much at stake in Mr. Berden and Mr. Rothschild's discussion of their (rather comic and clever, I think) planning for a possible image of a fur-covered "horse charm" to add to their image of the fur-covered Birkin, thereby mimicking the (rather silly and cheesy, I think) association of actual Birkin bags with Hermès's own "horse charms," provided by the company to clients most of whom have never been within a bridle's length of a horse. Working with Mr. Berden as his technician/consultant, Mr. Rothschild considers completing his satirical depiction of Birkin bags, as deluxe commodities, by imagining a kind of fictional situation in which the fur on his

"MetaBirkins" seems to spread, almost contagiously, even to the horse charms that might come with them. The more elements Mr. Rothschild borrows from the Hermès repertoire, the more effective and complete his artistic comment on the brand, and all such branding, would be. (Had I been engaged as an art-critical consultant on the "MetaBirkins" project, I would have suggested that Mr. Rothschild also create a furry version of the $700 Rocabar "horse blanket" (so-called) that Hermès has made almost as famous as its Birkin bags. Had Mr. Rothschild accepted my suggestion, he would not thereby have relinquished his role as the true artist of the "Metabirkins" project.).

Gopnik Decl. ¶ 15.

Further, it is undisputed that ███████████████████████████████

███████████████████████████████████████████████████ *See* Millsaps

Opp. Decl. (Doc. 88) ¶ 5, Ex. 4 (S. Kominers Dep. (Aug. 29, 2022) 179:6-18) ("*Q: Is there any digital merchandise associated with MetaBirkins? A: So there was – Rothschild indicated plans to introduce an airdrop of another NFT which might be considered digital merchandise…But all of these are things he could have done. But I'm not aware that he introduced those individual assets at this time.*")

82.    Rothschild gave purchasers of the METABIRKINS NFTs exclusive whitelist access to his next NFT projects. Authority: Corrigan Decl., Ex. 5 (ECF No.72-14); Ex. 42 at 21:18-22:2 (ECF No. 73-17).

***Rothschild's Response:***

**(82)**    Rothschild disputes this statement, which is controverted by the evidence cited to support it. As the testimony shows, Mr. Rothschild gave "higher priority" to get a whitelist spot for his I Like You You're Weird art project to "early supporters of [Rothschild], not necessarily owners of MetaBirkins." Corrigan Decl., Ex. 42 at 21:20-22:2.

83.    Rothschild was planning to provide additional utilities (generative projects) to METABIRKINS NFT holders. Rothschild promised that "the top 10 longest MetaBirkins Holders (at the time of generative project minting) will be gifted an item from the generative project collection." Authority: Corrigan Decl., Ex. 5 (ECF No.72-14).

***Rothschild's Response:***

**(83)**   Rothschild does not dispute the quote attributed to him but disputes the self-serving characterization that he was promising "utility." Mr. Rothschild's promise as stated was to provide additional artwork to those holders.

84.   Rothschild advertised a plan for exclusive access to future real-world parties for the METBIRKINS NFT holders at his Terminal 27 store. Authority: Corrigan Decl., Ex. 35 at SACKS_000252 (ECF No. 73-15); Kominers Decl., Ex. 3 at 76:16-79:10 (ECF No. 71-03)

***Rothschild's Response:***

**(84)**   Mr. Rothschild disputes this statement, and the cited evidence does not support it. The cited text message excerpt shows on its face that Mr. Rothschild was privately "brainstorming" ideas when he texted his associate, "Can also throw a party for holders at my store." Corrigan Decl., Ex. 35 at SACKS_000252. And the cited August 16, 2022, transcript is clear on its face that Mr. Rothschild was not referring to *MetaBirkins* there but was answering the question, "Do you ever plan on like cr[e]ating an NFT for your store, Terminal 27? Like exclusive for the store…" Kominers Decl., Ex. 3 at 76:3-5. *See also* generally Kominers Decl., Ex. 3 at 76:3-79:10.

85.   Rothschild created a METABIRKINS community on Discord. The community had at its peak approximately 36,000 members—meaning that at least 35,900 people that did not own METABIRKINS NFTs were members of a METABIRKINS community. METABIRKINS community members received access and updates on Rothschild's other projects. Rothschild promised the first 1,000 members of the METABIRKINS Discord community would be given "white list" spots for an upcoming, undisclosed, and unrelated NFT project. Authority: Corrigan Decl., Ex. 5 (ECF No. 72-14); Ex. 21 at 31:16-20 (ECF No. 73-5).

***Rothschild's Response:***

**(85)**   The term "METABIRKINS NFTs" is not defined by Hermès. As a consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are independent either from the *MetaBirkins*

artworks they authenticate or Mr. Rothschild's entire *MetaBirkins* art project, of which they are

an integral part. Otherwise, Mr. Rothschild does not dispute the stated facts.

86.    Rothschild cross-promoted the METABIRKINS NFTs with other NFT projects,
including his I Like You You're Weird ("ILYYW") NFTs. Authority: Corrigan Decl., Ex. 37
HERMES_0008391-00088405 (ECF No. 72-46); Ex. 38 at HERMES_0009420 (ECF No. 72-
47); Ex. 40 (ECF No. 72-54); Ex. 41 (ECF No. 72-55); Kominers Decl., Ex. 1 at 34-38 (ECF No.
71-1)

### *Rothschild's Response:*

**(86)**    Mr. Rothschild disputes that he promoted NFTs alone. The term

"METABIRKINS NFTs" is not defined by Hermès. As a consequence, Mr. Rothschild does not

know what Hermès means that term to refer to, but he disputes Hermès' use of the term to the

extent it suggests the NFTs are independent either from the *MetaBirkins* artworks they

authenticate or Mr. Rothschild's entire *MetaBirkins* art project, of which they are an integral

part.

Mr. Rothschild does not dispute that he promoted his ILYYW art project through

channels associated with his *MetaBirkins* art project.

87.    Rothschild promoted and marketed the METABIRKINS NFTs as a digital brand.
He drew parallels between his METABIRKINS NFTs and the most successful digital branded
NFTs: Bored Ape Yacht Club and Doodles. Authority: Kominers Decl., Ex. 1 at 1, 16, & 33
(ECF No. 71-1).

### *Rothschild's Response:*

**(87)**    Mr. Rothschild disputes that he promoted and marketed his *MetaBirkins* artworks

or the NFTs to which they are linked as a "digital brand" as opposed to art. As Dr. Blake Gopnik

explained, the distinction that Dr. Kominers attempts to draw between "art-only" NFTs and

"digital brand" NFTs is "specious…Any fine artist eager to be recognized in the 21st century,

and to earn a living, would naturally adopt many or all of the strategies used to publicize and sell

branded products, and this would include the strategies that brands adopt in the new world of

NFTs." Millsaps Decl. (Doc. 65) ¶ 2, Ex. 1 at 6. As Dr. Gopnik further opined:

> [A]t least as far back as Rembrandt an artist's signature style has also functioned to create brand-recognition in the market for art; there is simply no way to distinguish between an artist's properly "aesthetic" activities and the way they use those aesthetics to establish the brand that their market, like most elite markets, depends on. Even as they make their art, most artists are also running a small business whose function is to sell that art. To do that, they can choose to use the same marketing strategies that any other business would use. Just as Pablo Picasso was a master at manipulating the 20th-century market for physical art objects, playing dealers and collectors off each other to control his art's supply and demand, so today's artists should be expected to understand and use all aspects of the 21st century's new digital markets for their goods and images.

*Id*.

Mr. Rothschild further disputes that his Tweet referencing *MetaBirkins* and popular NFT

projects Bored Ape Yacht Club and Doodles is evidence that he promoted his *MetaBirkins* art

project as a "digital brand." As Plaintiffs' own expert, Dr. Kominers, stated, "…it is not clear

what, precisely, Rothschild intended from the reference here other than an aspirational

implication that the *MetaBirkins* would increase in value ("MetaBirkins2Pluto") to reach towards

the extremely high values attained by the Bored Ape Yacht Club and Doodles NFTs…"

Kominers Decl., Ex. 1 at 33-34.

Additionally, the term "METABIRKINS NFTs" is not defined by Hermès. As a

consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he

disputes Hermès' use of the term to the extent it suggests the NFTs are independent either from

the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire *MetaBirkins* art project, of

which they are an integral part.

88.     Had Hermès not taken action to stop Rothschild's digital brand activities,
Rothschild likely would have continued with the same digital brand building activities mapped
out in his ILYYW NFT project. Authority: Kominers Decl., Ex. 1 at 38-39 (ECF. 71-1).

***Rothschild's Response:***

**(88)**     Mr. Rothschild disputes that he had plans to use the ILYYW roadmap with his separate *MetaBirkins* art project. Plaintiffs have no evidence to support this statement; indeed Dr. Kominers' cited report states, "Rothschild's strategies to promote the value of the ILYYW NFTs suggest a number of steps he *might theoretically take* to promote the value of the MetaBirkins brand if permitted to do so." Kominers Decl., Ex. 1 at 38 (emphasis added).

Mr. Rothschild additionally disputes the validity of the artificial category of "digital brand" activities in relation to image-based NFTs that Dr. Kominers invented for his report in this case. *See* Millsaps Opp. Decl. ¶ 5, Ex. 4 (S. Kominers Dep. (Aug. 29, 2022) 124:9-126:6 (wherein Dr. Kominers admits that he never published anything using the terms "art-only" NFTs and "digital brand" NFTs prior to submitting his expert report in this case).

Further, as Dr. Blake Gopnik explained, the distinction that Dr. Kominers attempts to draw between "art-only" NFTs and "digital brand" NFTs is "specious…Any fine artist eager to be recognized in the 21st century, and to earn a living, would naturally adopt many or all of the strategies used to publicize and sell branded products, and this would include the strategies that brands adopt in the new world of NFTs." Millsaps Decl. (Doc. 65) ¶ 2, Ex. 1 at 6. As Dr. Gopnik further opined:

> [A]t least as far back as Rembrandt an artist's signature style has also functioned to create brand-recognition in the market for art; there is simply no way to distinguish between an artist's properly "aesthetic" activities and the way they use those aesthetics to establish the brand that their market, like most elite markets, depends on. Even as they make their art, most artists are also running a small business whose function is to sell that art. To do that, they can choose to use the same marketing strategies that any other business would use. Just as Pablo Picasso was a master at manipulating the 20th-century market for physical art objects, playing dealers and collectors off each other to control his art's supply and demand, so today's artists should be expected to understand and use all aspects of the 21st century's new digital markets for their goods and images.

*Id.*

89.     Rothschild generated the METABIRKINS NFTs to be sold as digital commodities and profit from them. Authority: Mentzer Decl., Ex. 1 at 21, 48 (ECF No. 68-1); Corrigan Decl., Ex. 5 (ECF No. 72-14); Ex. 7 (ECF No 72-16); Ex. 29 at Rothschild014949, Rothschild014952, Rothschild014957 (ECF No. 73-9); Kominers Decl., Ex. 1 at 26 (ECF No. 71-1).

***Rothschild's Response:***

**(89)**     Rothschild disputes this statement in its entirety, which is improper argument and

mischaracterization of the cited evidence. Mr. Rothschild used NFTs to sell his *MetaBirkins*

artworks and as an artistic experiment in itself, as Mr. Rothschild has explained and as Dr.

Gopnik has opined in his unrebutted expert report and testimony. *See* Rothschild responses to

paragraphs 2, 12, 14, 16, 18, *supra*.

Additionally, the term "METABIRKINS NFTs" is not defined by Hermès. As a

consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he

disputes Hermès' use of the term to the extent it suggests the NFTs are independent either from

the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire *MetaBirkins* art project, of

which they are an integral part. It is undisputed that Rothschild's *MetaBirkins* artworks have

always been associated with the *MetaBirkins* NFTs. *See* Rothschild response to paragraph 14,

*supra*.

90.     ███████████████████████████████████████████████████
Authority: Corrigan Decl., Ex. 23 at Rothschild008391 (ECF No. 73-7); Ex. 47 at
Rothschild008468 (ECF No. 73-20); Ex. 95 at Rothschild011297 (ECF No. 73-53); Ex. 97 at
Rothschild008499 (ECF No. 73-55)

***Rothschild's Response:***

**(90)**     Mr. Rothschild does not dispute that he sent the quoted text messages.

91.     ███████████████████████████████████████████████████
███████████████████████████████. Authority: Corrigan Decl., Ex. 7 at
HERMES_0010582, ECF No. 72-16; Ex. 29 at Rothschild014949.

*Rothschild's Response:*

(91)    Mr. Rothschild does not dispute the words attributed to him in the cited documents. Mr. Rothschild disputes that 

and Hermès has no evidence to support that assertion.

92.    Authority: Corrigan Decl., Ex. 21 at 352:-354:22; Ex. 36 at 186:22-88:22, 191:13-25; Ex. 67 at SACKS_000159.

*Rothschild's Response:*

(92)    Mr. Rothschild does not dispute that

Corrigan Decl., Ex. 21 at 353:9-19.

*Id.* at 352:4-353:22.

93.    Authority: Corrigan Decl., Ex. 87 at Rothschild014669 (ECF No. 73-45).

*Rothschild's Response:*

(93)    Mr. Rothschild disputes that

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████ Rothschild Decl. (Doc. 66) ¶ 11; Gopnik Decl. (Doc. 80) ¶¶ 17-18.

Additionally, the term "METABIRKINS NFTs" is not defined by Hermès. As a consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are independent either from the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire *MetaBirkins* art project, of which they are an integral part. It is undisputed that Rothschild's *MetaBirkins* artworks have always been associated with the *MetaBirkins* NFTs. *See* Rothschild response to paragraph 14, *supra*.

94. ████████████████████████████████████████
███████████████████████████████████████
████████████████████████████ Authority: Corrigan Decl., Ex. 21 at 393:22-23;
Ex. 88 at Rothschild014857-59.

***Rothschild's Response:***

**(94)** Undisputed.

95. ████████████████████████████████████████
████████████████████ uthority: Corrigan Decl., Ex. 21 at 392:6-8; Ex. 89 at Rothschild008648,
Rothschild008658, Rothshcild008665.

***Rothschild's Response:***

**(95)** Undisputed.

96. ████████████████████████████████████████
████████████████ Authority: Corrigan Decl., Ex. 52 at SACKS_000032.

***Rothschild's Response:***

**(96)** Undisputed.

97.  Authority: Corrigan Decl., Ex. 54 at Rothschild008802, Rothschild008805-6, Rothschild008808.

***Rothschild's Response:***

**(97)**   Undisputed.

98. Authority: Corrigan Decl., Ex. 90 at Rothschild008963.

***Rothschild's Response:***

**(98)**   Undisputed.

99. Authority: Corrigan Decl., Ex. 86 at 38:24-39:12; Ex. 91 at Rothschild009090.

***Rothschild's Response:***

**(99)**   Undisputed.

100. Authority: Corrigan Decl., Ex. 92 at Rothschild009283 (ECF No. 73-50).

***Rothschild's Response:***

**(100)**   Undisputed.

101. Authority: Corrigan Decl., Ex. 55 at Rothschild008308 (ECF No. 73-28).

***Rothschild's Response:***

**(101)**   Mr. Rothschild does not dispute that he sent the quoted text messages. Mr.

Rothschild disputes the statement, however, on the basis that the term "METABIRKINS NFTs"

is not defined by Hermès. As a consequence, Mr. Rothschild does not know what Hermès means

that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs

are independent either from the *MetaBirkins* artworks they authenticate or Mr. Rothschild's

entire *MetaBirkins* art project, of which they are an integral part. It is undisputed that

Rothschild's *MetaBirkins* artworks have always been associated with the *MetaBirkins* NFTs. *See*

Rothschild response to paragraph 14, *supra*.

102.  ██████████████████████████████
████████████████████████████████████████
████████████ Authority: Corrigan Decl., Ex. 36 at 50:14-58:6.

*Rothschild's Response:*

**(102)** Undisputed.

103.    On October 11, 2022, Rothschild tweeted "NFTs in a nutshell: Overpromise,
underdeliver = PUMP[;] Underpromise, overdeliver = DUMP." Authority: Corrigan Suppl.
Decl., Ex. 137.

*Rothschild's Response:*

**(103)** Mr. Rothschild does not dispute that he posted the quoted Tweet as a criticism of

the current state of NFT art.

104.  ████████████████████████████████
████████████████████ Authority: Corrigan Decl., Ex.
21 at 195:16-24; Ex. 85 at Rothschild008527.

*Rothschild's Response:*

**(104)** Mr. Rothschild disputes that ███████████████████████

████████████████████████ which is unsupported by the cited record evidence. ██

████████████████████████████████████████

██████████████████████ Corrigan Decl., Ex. 21 at 195:19-25.

Additionally, the term "METABIRKINS NFTs" is not defined by Hermès. As a consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are independent either from the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire *MetaBirkins* art project, of which they are an integral part. It is undisputed that Rothschild's *MetaBirkins* artworks have always been associated with the *MetaBirkins* NFTs. *See* Rothschild response to paragraph 14, *supra*.

105. ███████████████████████████████████████████ Authority Corrigan Decl., Ex. 21 at 386:17-387:23; Ex. 89 at Rothschild08652.

*Rothschild's Response:*

**(105)** Undisputed.

106. ███████████████████████████████████████████ Authority: Corrigan Decl., Ex. 54 at Rothschild008804.

*Rothschild's Response:*

**(106)** Mr. Rothschild does not dispute that ██████████████████████████ ████████████████████████ but Mr. Rothschild disputes Hermès' implication that his use of the term transforms his art into something other than art. The statement is consistent with Mr. Rothschild's "Business Art" practice as cogently identified by Dr. Blake Gopnik. *See* Gopnik Decl. ¶ 19; Millsaps Decl. (Doc. 65) ¶ 4, Ex. 3 (B. Gopnik Dep. (Sept. 23, 2022) 122:19-123:16.

107. Through July 2022, total sales volume for METABIRKINS NFTs exceeded $1.1 million. Authority: Mentzer Decl. Ex. 1, at 21, 48.

*Rothschild's Response:*

**(107)**   Mr. Rothschild does not dispute the figures for total sales and re-sales of the *MetaBirkin* artworks but disputes the statement insofar as it refers only to NFTs. The term "METABIRKINS NFTs" is not defined by Hermès. As a consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are independent either from the *MetaBirkin* artworks they authenticate or Mr. Rothschild's entire *MetaBirkins* art project, of which they are an integral part. It is undisputed that Rothschild's *MetaBirkins* artworks have always been associated with the *MetaBirkins* NFTs. *See* Rothschild response to paragraph 14, *supra*.

108.   ███████████████████████████████████████████
███████████████ Authority: Corrigan Suppl. Decl. Ex. 134 at 379:12-381:2, 326:20-328:5.

*Rothschild's Response:*

**(108)**   Undisputed.

109.   According to Dr. Gopnik, there is a category of art called "business art" or "commerce by artist." Dr. Gopnik claims that "business art" includes, investing money in the stock market, creating a corporation, the public sale of works at auction, opening a restaurant, adopting the trademark of another company, activity geared towards provoking a lawsuit, and making money. **Authority:** Corrigan Suppl. Decl., Ex. 135 at 123:20-124:22, 128:13-21, 129:13-25, 131:3-14, 236:25-238:24, 245:9-11; Corrigan Decl., Ex. 34 at 13-14 (ECF No. 73-14).

*Rothschild's Response:*

**(109)**   Rothschild disputes Hermès' attempt to distort Dr. Gopnik's testimony. Dr. Gopnik did not testify that "'business art' includes, investing money in the stock market, creating a corporation, the public sale of works at auction, opening a restaurant, adopting the trademark of another company, activity geared towards provoking a lawsuit, and making money." Rather, Dr. Gopnik testified that various Business Art projects have, over the history of the field, involved these activities and others. This passage is an example of Hermès' distortion of Dr. Gopnik's

clear testimony. Here, Dr. Gopnik is testifying about the circumstances in which money-making

activities can be understood as an element of a Business Art project:

> Q.   IN WHAT CIRCUMSTANCES IS MAKING MONEY AN EXAMPLE OF
> BUSINESS ART?
>
> A.   WHEN IT'S INCORPORATED INTO A PRACTICE THAT WHERE
> CONTEXTUALLY YOU REALIZE IT HAS RESONANCE IN -- WHEN I
> WAS TALKING ABOUT THE DEFINITION OF ART, WHEN IT SEEMS TO
> HAVE LARGER RESONANCE IS SOMETHING THAT CAN BE
> DISCUSSED OUTSIDE OF FUNCTIONAL CIRCLES WHEN IT SEEMS TO
> HAVE A LARGER, I'M SORRY TO USE THE WORD, ARTISTIC
> RESONANCE.  AND THERE ARE CLUES THAT TELL YOU THAT'S A
> USEFUL WAY OF CONSIDERING IT.
>
> Q.   WHAT ARE THE CLUES THAT TELL YOU THAT MAKING MONEY
> IS BUSINESS ART?
>
> A.   WHEN IT SEEMS TO -- WITH THAT PARTICULAR ACT OF MAKING
> MONEY SEEMS TO BE PART OF A TRANSITION THAT'S A BUSINESS
> ART TRANSITION. WHEN IT GETS EXTRA RESONANCE IN
> RELATIONSHIP TO HISTORY OF OTHER PRACTICES THAT ARE LIKE
> BUSINESS ART THAT INVOLVE THOSE SAME SENSE OF ISSUES.
> WHEN  THERE ARE CONTEXTUAL CLUES THAT TELL YOU, WAIT A
> MINUTE, MAYBE THIS ISN'T STRAIGHTFORWARD, MAYBE I NEED TO
> THINK OF THIS AS A META PRACTICE RATHER THAN SOMEONE
> SIMPLY TRYING TO MAKE MONEY.

Millsaps Reply Decl. ¶ 4, Ex. 15 (Gopnik Dep. (Sept. 23, 2022) 121:16-122:15). Hermès is

engaged in abuse of the litigation process here, as they are in many instances in distorting facts

and then claiming them as undisputed.

Setting Hermès' attempted distortions of Dr. Gopnik's testimony aside, Hermès does not

genuinely dispute the fact that art historian, critic, and *Warhol* author Dr. Blake Gopnik has

recognized Rothschild as an artistic heir to Marcel Duchamp and Andy Warhol based on

Rothschild's *MetaBirkins* NFT art project. The evidence cited by Hermès is consistent with Dr.

Gopnik's unrebutted expert testimony that the *MetaBirkins* project as a whole is recognizable

Business Art in the vein of Warhol and others, and that Rothschild's efforts to make his art

profitable are consistent with artists' similar efforts throughout the ages. Millsaps Decl. ¶ 2, Ex.

1 (B. Gopnik Report (Sept. 1, 2022) ¶¶ 10, 15, 34). *See also* Gopnik Decl. (Doc. 80) ¶¶ 17-19.

The evidence cited by Hermès thus is consistent with, and does not dispute, Dr. Gopnik's

unrebutted expert testimony.

110.    Dr. Gopnik has stated that creating confusion regarding whether a trademark
owner has authorized goods is also a component of "business art," and in certain "business art"
cases, the NFT itself can "play[] an artistic role." Authority: Corrigan Suppl. Decl., Ex. 135 at
180:14-19, 239:3-16.

**Rothschild's Response:**

**(110)** Rothschild disputes Hermès' attempt again to distort Dr. Gopnik's testimony. Here

is Dr. Gopnik's testimony, in context. First, Dr. Gopnik testified about how NFTs can play an

artistic role in Business Art projects:

> Q.   DO YOU AGREE WITH THE STATEMENT THAT NFT ART SIMPLY
> DOES NOT EXIST?
>
> A.   IT'S AN INCOHERENT STATEMENT.  I'M SORRY.
>
> Q.   WHY IS IT INCOHERENT?
>
> A.   I SHOULDN'T SAY THE STATEMENT IS INCOHERENT.  THE
> STATEMENT "NFT ART" IS INCOHERENT.
>
> Q.   AND WHY IS THE CONCEPT NFT ART INCOHERENT?
>
> A.   BECAUSE AS ALL CONCEPTS IT'S USED IN A PARTICULAR WAY.
> PEOPLE REFER TO NFT ART WHEN WHAT THEY REALLY MEAN IS
> THE IMAGE THAT THE NFT IS ATTACHED TO.  WHEN PEOPLE TALK
> ABOUT NFTS HAVING  CERTAIN ARTISTIC QUALITIES, THEY ARE
> REALLY TALKING ABOUT THE QUALITIES OF AN IMAGE, EXCEPT IN
> CERTAIN BUSINESS ART CASES WHERE THE NFT ITSELF IS PLAYING
> A ROLE AND THE NFTNESS IS PLAYING AN ARTISTIC ROLE.
>
> Q.   HOW CAN WE TELL IF AN NFT ITSELF IS PLAYING A ROLE AND
> THE NFTNESS IS PLAYING AN ARTISTIC ROLE? […]

A.   BY LOOKING AT THE HISTORY OF BUSINESS  ART IN TWENTIETH
CENTURY ART AND SEEING IF THE NFT PLAYS A ROLE WITHIN THAT.
AND IF THERE'S SUFFICIENT CUES TO INDICATE THAT THAT'S
WHAT'S GOING ON….THERE ARE SOME CASES WHERE THE ART IS
THE NFT ITSELF AS IT CIRCULATES WITHIN THE CULTURE.

Millsaps Reply Decl. ¶ 4, Ex. 15 (Gopnik Dep. (Sept. 23, 2022) 176:16-177:25). And here is Dr.

Gopnik testifying, in context, about whether confusion about the source of a product could be an

element of a business art project:

Q.   IS CREATING CONFUSION REGARDING WHETHER A TRADEMARK
OWNER HAS AUTHORIZED GOODS BUSINESS ART? […]

A.   I'D HAVE TO SEE A PARTICULAR INSTANCE OF IT.  IT MIGHT
VERY WELL BE.

Q.   IN –

A.   A COMPONENT IN BUSINESS ART.  NOTHING FREESTANDING IS
OR IS NOT BUSINESS ART.  YOU'D HAVE TO LOOK AT A LARGER SET
OF ART SUPPLIES THAT GO INTO A PROJECT TO DECIDE THE EXTENT
TO WHICH ANY ONE OF THEM IS NECESSARY OR INTERESTING OR
USEFUL IN DETERMINING CREATING THAT WORK OF BUSINESS ART.

Millsaps Reply Decl. ¶ 4, Ex. 15 (Gopnik Dep. (Sept. 23, 2022) 234:24-235:13).

111.    Dr. Gopnik testified that "a non-specialist has no sense of art" and explained that
to understand "business art," one must "have knowledge of the history of business art, for
instance. You'd have to have knowledge of other examples of business art. You would need to
understand those cues in order to understand what you're confronting." Authority: Corrigan
Suppl. Decl., Ex. 135 at 131:15-132:8.

**Rothschild's Response:**

**(111)**   Rothschild disputes Hermès' statement to the extent it purports to suggest that

*MetaBirkins* may not be properly understood as art. Dr. Gopnik's testimony merely states that to

understand Business Art, or any other type of art, one must have some exposure to that type of

art:

Q.   AS A NONSPECIALIST LOOKING AT A BUSINESS ACTIVITY, HOW DO I DETERMINE WHETHER SOMETHING IS -- THAT ACTIVITY IS BUSINESS OR BUSINESS ART?  […]

A.   YOU WOULD HAVE TO LOOK AT -- WELL AS A NONSPECIALIST, AS I SAID, A NONSPECIALIST HAS NO SENSE OF ART.  MOST CULTURES DON'T HAVE A CONCEPT OF ART.  YOU ALREADY HAVE TO KNOW A GREAT DEAL OF CONTEXTUAL INFORMATION, CONTEXTUAL CLUES, TO UNDERSTAND A PAINTING IS ART.  IT'S NOT A CATEGORY THAT EXISTS IN MOST CULTURES. IN THIS PARTICULAR SUBGROUP YOU HAVE TO HAVE KNOWLEDGE OF THE HISTORY OF BUSINESS ART, FOR INSTANCE.  YOU'D HAVE TO HAVE KNOWLEDGE OF OTHER EXAMPLES OF BUSINESS ART.  YOU WOULD NEED TO UNDERSTAND THOSE ACCUSE IN ORDER TO UNDERSTAND WHAT YOU'RE CONFRONTING.

Millsaps Reply Decl. ¶ 4, Ex. 15 (Gopnik Dep. (Sept. 23, 2022) 129:7-24.

112.    Dr. Gopnik further testified that a person could acquire an understanding of "business art," if "[y]ou look at a lot of art, you think about a lot of art, you read about art, you immerse yourself in the world, in this case, of twentieth century art, in this case a particular part of twentieth century art." Authority: Corrigan Suppl. Decl., Ex. 135 at 129:3-10.

### *Rothschild's Response:*

**(112)**   Rothschild disputes Hermès' statement to the extent it purports to suggest that

*MetaBirkins* may not be properly understood as art. Dr. Gopnik's testimony merely states that to

understand Business Art, or any other type of art, one must have some exposure to that type of

art. Millsaps Reply Decl. ¶ 4, Ex. 15 (Gopnik Dep. (Sept. 23, 2022) 126:19-127:4).

113.    According to Dr. Gopnik, the Judiciary should not decide whether the use of intellectual property is "fair use." Rather than judges "decid[ing] that they're art critics", Dr. Gopnik testified that judges should "poll a number of art critics" and weigh the opinions. Authority: Corrigan Suppl. Decl., Ex. 135 at 138:4-141:2, 247:25-250:17; Ex. 136.

### *Rothschild's Response:*

**(113)**   Dr. Gopnik is not a lawyer, which he made clear in his testimony. Hermès is again

distorting and selectively quoting from Dr. Gopnik's testimony, which is, in context, merely

stating that art critics can be useful to courts in their understanding of art:

Q.   WHICH ART CRITICS SHOULD JUDGES CONSULT WITH IN MAKING FAIR USE DECISIONS?

A.   I CAN'T GIVE YOU A LIST OF NAMES.  I GUESS THEY WOULD WON'T TO POLL A NUMBER OF ART CRITICS.  I'M NOT SURE.  I HAVEN'T THOUGHT IT THROUGH THAT MUCH.  IT WILL NEVER HAPPEN.

Q.   WHY DO YOU SAY THAT WILL NEVER HAPPEN?

A.   THE TRUTH IS WHAT I WAS TRYING TO ARTICULATE I THINK BY SAYING THAT THEY SHOULD CONSULT WITH ART CRITICS IS THAT THE -- YOU KNOW, I'M NOT A LAWYER, SO I HAVEN'T THOUGHT THIS THROUGH THOROUGHLY.

Millsaps Reply Decl. ¶ 4, Ex. 15 (Gopnik Dep. (Sept. 23, 2022) 137:24-138:11).

114.    Dr. Gopnik is not aware of any other art professionals who consider METABIRKINS NFTs art. Authority: Corrigan Suppl. Decl., Ex. 135 at 95:15-23, 142:21-25.

***Rothschild's Response:***

**(114)**   Here, Hermès is engaged in even more egregious distortion of Dr. Gopnik's

testimony. Hermès offers this testimony and suggests that other art critics *do not* consider

*MetaBirkins* to be art. Dr. Gopnik's testimony suggests no such thing:

Q. Are you aware of any consensus among art critics that the images in NFTs produced and sold by Mason Rothschild find their natural and obvious home among the artistic experience carried out by modern artists over the last century?

A. There is no consensus among art critics on pretty much any issue. For instance, I find the Mona Lisa a fairly trivial object, and most  art critics would disagree with me.

Millsaps Reply Decl. ¶ 4, Ex. 15 (Gopnik Dep. (Sept. 23, 2022) 95:15-23).

Q. Can you conceive that there would be another art critic that would have an opinion that the MetaBirkin NFT project is not art? […]

A. Yes, and they would be wrong.

*Id*. at 142:21-25.

115.    Rothschild created METABIRKINS Twitter and Instagram accounts, a METABIRKINS Discord server and a METABIRKINS Website all to promote and advertise the METABIRKINS NFTs. Authority: Corrigan Decl., Ex. 6 (ECF No. 715); Ex. 18 at 4-5 (ECF No. 73-02); Ex. 21 at 29:16-31:15, 32:14-19 (ECF No. 73-5); Ex. 37 HERMES_0008349-8350,

HERMES_0008524-8533, HERMES_0008713-0008719, HERMES_0008764,
HERMES_0008818-8822 (ECF No. 72-46); Ex. 38 at HERMES_0009416-0009432 (ECF No.
72-47); Ex. 39 (ECF No. 72-53).

   *Rothschild's Response:*

   **(115)**   Mr. Rothschild does not dispute that he created these accounts and sites to
promote the *MetaBirkins* art project, which includes the *MetaBirkins* images and their associated
NFTs.

   116.   Rothschild described the METABIRKINS NFTs on his METABIRKINS.com
website, on the OpenSea NFT marketplace where the METABIRKINS NFTs were sold, and in
interviews, as a "tribute to Herm[è]s' most famous handbag, the Birkin." Authority: Corrigan
Decl., Ex. 6 at HERMES_0037671 (ECF No. 72-15); Ex. 7 (ECF No. 72-16); Ex. 28 (ECF No.
72-37); Rothschild Decl. ¶ 10 (ECF No. 66).

   *Rothschild's Response:*

   **(116)**   Mr. Rothschild does not dispute that he made that statement on the
metabirkins.com website and in an interview. Mr. Rothschild's disputes that he made that
statement on the OpenSea NFT marketplace, which Rothschild does not control. *See* Rothschild
Opp. Decl. ¶ 9.

   117.   In a December 6, 2021 interview with Yahoo! Finance, Rothschild stated: "I
wanted to see as an experiment to see if I could create the same kind of illusion that [the BIRKIN
Handbag] has in real life as a digital commodity. In his interview with Yahoo! Finance, when
speaking about counterfeiting of "high-end luxury items like an Hermes bag," Rothschild
complained that "before my collection dropped, there was a bunch of like counterfeit NFTs that
weren't from my collection" Authority: Corrigan Decl., Ex. 7 (ECF No. 72-16).

   *Rothschild's Response:*

   **(117)**   Undisputed.

   118.   Rothschild claims the METABIRKINS NFTs are an "experiment to explore
where the value in the Birkin handbag actually lies—in the handcrafted physical object, or in the
image it projects?" Authority: Rothschild Decl. ¶ 11 (ECF No. 66).

   *Rothschild's Response:*

   **(118)**   Undisputed.

   119.   ████████████████████████████████████████████████████
████████████████████████████   Authority: Corrigan Decl., Ex. 19 at Rothschild008291,
(ECF No. 73-3); Ex. 22 at Rothschild008383-8385 (ECF No. 73-6).

*Rothschild's Response:*

**(119).** Mr. Rothschild disputes that  ████████████████████████████████████

████████████████████████████████████ which is unsupported by the cited record evidence. ██

█████████████████████████████████████████████████████████████████

██████████████████████ Corrigan Decl., Ex. 21 at 195:19-25. Mr. Rothschild disputes that ██

███████████████████████████████ and there is no evidence in the record to support that

contention. Mr. Rothschild does not dispute that ███████████████████████████████████

████████████████████████████████████████ *See* Corrigan Decl., Ex. 21

at 147:10-148:1; Ex. 47 at Rothschild008467-8469; Ex. 48 at Rothschild014566; Ex. 49 at

Rothschild008328; Ex. 50 at Rothschild008679. Mr. Rothschild also does not dispute that ██

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

████████████████████████████████████ Corrigan Decl., Ex. 46.

Additionally, the term "METABIRKINS NFTs" is not defined by Hermès. As a

consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he

disputes Hermès' use of the term to the extent it suggests the NFTs are independent either from

the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire *MetaBirkins* art project, of

which they are an integral part. It is undisputed that Rothschild's *MetaBirkins* artworks have

always been associated with the *MetaBirkins* NFTs. *See* Rothschild response to paragraph 14,

*supra*.

120.     Rothschild announced the eventual launch of his METABIRKINS NFT project on social media by referring to the NFTs as "one of a kind, Birkins". **Authority:** Corrigan Decl., Ex. 46 (ECF No. 72-60).

*Rothschild's Response:*

(120)   Mr. Rothschild disputes that in these communications he was referring only to the NFTs linked to his *MetaBirkins* images, which is unsupported by the cited record evidence. As Mr. Rothschild explained in his cited testimony, his use of "birkins" was shorthand for "the [*MetaBirkins*] project." Corrigan Decl., Ex. 21 at 195:19-25. Mr. Rothschild disputes that he referred to NFTs alone as "Birkins," and there is no evidence in the record to support that contention. Mr. Rothschild does not dispute that he sometimes casually referred to his artworks as "birkins" in shorthand privately among his friends and associates. *See* Corrigan Decl., Ex. 21 at 147:10-148:1; Ex. 47 at Rothschild008467-8469; Ex. 48 at Rothschild014566; Ex. 49 at Rothschild008328; Ex. 50 at Rothschild008679. Mr. Rothschild also does not dispute that he once publicly referred to his forthcoming artworks as "Birkins" when he previewed the artwork on his @MasonRothschild Instagram account, including an image of one of the *MetaBirkins* artworks and writing alongside it, "A preview of my upcoming NFT collection…Releasing 50, one of a kind, Birkins of varying rarity…The collection needs a name. Share this post and reply with your suggestion, best suggestion gets a gifted Birkin." Corrigan Decl., Ex. 46.

Additionally, the term "METABIRKINS NFTs" is not defined by Hermès. As a consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are independent either from the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire *MetaBirkins* art project, of which they are an integral part. It is undisputed that Rothschild's *MetaBirkins* artworks have always been associated with the *MetaBirkins* NFTs. *See* Rothschild response to paragraph 14, *supra*.

121.    Rothschild promoted the METABIRKINS NFTs on his METABIRKINS.com website as "Birkin NFTs." Authority: Corrigan Decl., Ex. 6 at HERMES_0037671 (ECF No. 72-60).

**Rothschild's Response:**

**(121)**   Mr. Rothschild disputes that he referred to NFTs alone as "Birkins," and there is no evidence in the record to support that contention. Mr. Rothschild does not dispute that he sometimes casually referred to his artworks as "birkins" in shorthand privately among his friends and associates. See Corrigan Decl., Ex. 21 at 147:10-148:1; Ex. 47 at Rothschild008467-8469; Ex. 48 at Rothschild014566; Ex. 49 at Rothschild008328; Ex. 50 at Rothschild008679. Mr. Rothschild also does not dispute that he once publicly referred to his forthcoming artworks as "Birkins" when he previewed the artwork on his @MasonRothschild Instagram account, including an image of one of the *MetaBirkins* artworks and writing alongside it, "A preview of my upcoming NFT collection…Releasing 50, one of a kind, Birkins of varying rarity…The collection needs a name. Share this post and reply with your suggestion, best suggestion gets a gifted Birkin." Corrigan Decl., Ex. 46.

Additionally, the term "METABIRKINS NFTs" is not defined by Hermès. As a consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are independent either from the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire *MetaBirkins* art project, of which they are an integral part. It is undisputed that Rothschild's *MetaBirkins* artworks have always been associated with the *MetaBirkins* NFTs. *See* Rothschild response to paragraph 14, *supra.*

122.    Rothschild advertised the METABIRKINS NFTs using Hermès's trademarks in two slogans: "Mint a MetaBirkin Hold a MetaBirkin," and "NOT YOUR MOTHER'S BIRKIN." Authority: Corrigan Decl., Ex. 38, HERMES_0009416, HERMES_0009424, HERMES_0009431, HERMES_0009432, HERMES_0009435 (ECF No. 72-47); Corrigan Decl.,

Ex. 37 at HERMES_0008634, HERMES_0008713-0008719 (ECF No. 72-46); Isaacson Decl., Ex. 1 ¶¶ 7-10, figures 1-2 (ECF No. 67-1).

*Rothschild's Response:*

Mr. Rothschild disputes that in these communications he was referring only to the NFTs linked to his *MetaBirkins* images, which is unsupported by the cited record evidence. As Mr. Rothschild explained in his cited testimony, his use of "birkins" was shorthand for "the [*MetaBirkins*] project." Corrigan Decl., Ex. 21 at 195:19-25.

Additionally, the term "METABIRKINS NFTs" is not defined by Hermès. As a consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are independent either from the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire *MetaBirkins* art project, of which they are an integral part. It is undisputed that Rothschild's *MetaBirkins* artworks have always been associated with the *MetaBirkins* NFTs. *See* Rothschild response to paragraph 14, *supra.*

123.    On October 29, 2021, Rothschild ran a contest on Twitter asking followers to reply with their suggestions for the collection name, and stated the "best suggestion gets a gifted Birkin." Twitter user "JessLozano.eth in NY" responded on November 2, 2021 with several suggestions, including "not your mom's Birkin." Rothschild used the slogan "Not Your Mother's Birkin" ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

Authority: Corrigan Decl., Ex. 46 (ECF No. 72-60); Ex. 21 at 203:24-204:24 (ECF No. 75-5).

*Rothschild's Response:*

**(123)**   Mr. Rothschild disputes this statement to the exist that Hermès' version of events is inconsistent with Rothschild's deposition testimony. In his deposition, Rothschild explained that he already had considered the *MetaBirkins* name as a possibility when he ran this contest. After the contest participant suggested that name and reached out directly to Rothschild,

he sent her his phone number and spoke with her to explain that fact. *See* Millsaps Opp. Decl. ¶ 13, Ex. 12; Rothschild Opp. Decl. ¶ 12.

124.   The initial storefront for the METABIRKINS NFTs on OpenSea did not have a single reference to Rothschild. Authority: Corrigan Decl., Ex. 28 (ECF No. 72-37).

**Rothschild's Response:**

**(124)**   Mr. Rothschild does not dispute this statement but notes that he does not control the listings on auction sites—these are generated by the sites themselves—and he did not supply the content that appeared on those sites. *See* Rothchild Opp. Decl. ¶ 9

125.   When the METABIRKINS NFTs were sold on Zora, another NFT marketplace, there was no mention of Rothschild being the creator. Authority: Corrigan Decl., 26 (ECF No. 72-35).

**Rothschild's Response:**

**(125)**   Mr. Rothschild does not dispute this statement but notes that he does not control

the listings on auction sites—these are generated by the sites themselves—and he did not supply

the content that appeared on those sites. *See* Rothchild Opp. Decl. ¶ 9.

126.   There is no mention of Rothschild on the METABIRKINS storefront on the LooksRare NFT marketplace. Authority: Corrigan Decl., Ex. 25 (ECF No. 72-25).

**Rothschild's Response:**

**(126)**   Mr. Rothschild does not dispute this statement but notes that he does not control

the listings on auction sites—these are generated by the sites themselves—and he did not supply

the content that appeared on those sites. *See* Rothchild Opp. Decl. ¶ 9.

127.   Prior to Hermès taking action, the METABIRKINS Instagram account merely included a tag to Rothschild's personal account in the biography without any signal or context. The METABIRKINS Instagram account had nearly 17,000 followers at the time. The account was updated only after Hermès took action against Rothschild. Authority: Corrigan Suppl. Decl., Ex 138 HERMES_0037428; Corrigan Decl., Ex. 37 (ECF No. 72-46.

*Rothschild's Response:*

**(127)**   Mr. Rothschild does not dispute that the MetaBirkins Instagram page contained a tag to his personal Instagram account but disputes Hermès' insinuation that Rothschild did not claim authorship of *MetaBirkins* on the project's Instagram page prior to updating it; he originally included his name, which linked to his personal Instagram page, in the manner in which an arist might sign an artwork. *See* Corrigan Suppl. Decl., Ex 138 HERMES_0037428.

128.   Rothschild added a disclaimer about his lack of affiliation with Hermès on his METABIRKINS.com website after he minted all of the METABIRKINS NFTs. The disclaimer never appeared on any of the NFT marketplaces, including LooksRare where at least one sale has occurred since the filing of this lawsuit. Authority: Corrigan Decl., Exs. 6 (ECF No. 72-15); Ex. 25 (ECF No. 72-34); Ex. 26 (ECF No. 72-35); Ex. 27 (ECF No. 72-36); Ex. 28 (ECF No.72-37); Ex. 37 (ECF No. 72-46); Ex. 38 (ECF No. 72-47); Mentzer Decl., Ex. 1 at 10, 20-22, 43-44 (ECF No. 68-1).

*Rothschild's Response:*

**(128)**   Mr. Rothschild does not dispute this statement but notes that the evidence cited by Hermès for its additional assertions shows that Rothschild clearly identified himself as the creator of *MetaBirkins* on the *MetaBirkins* website even before he added the disclaimer to the website. *See* Corrigan Decl., Ex. 6. Rothschild does not control the listings on auction sites— these are generated by the sites themselves—and he did not supply the content that appeared on those sites. *See* Rothschild Opp. Decl. ¶. 9.

129.   The disclaimer consists of two lines of small font, but capitalized HERMÈS. The disclaimer is on a webpage that contains 17 large handbag images, and other eye-catching elements, including flashing text that reads, "NOT YOUR MOTHER'S BIRKIN." Authority: Isaacson Decl., Ex. 1 at ¶¶ 7-10, Figures 1-2 (ECF No. 67-1); Corrigan Decl., Ex. 6. (ECF No. 72-15).

*Rothschild's Response:*

**(129)**   The evidence cited by Hermès shows that Rothschild clearly identified himself as the creator of *MetaBirkins* even before he added the disclaimer to the website. *See* Corrigan

Decl., Ex. 6. Mr. Rothschild disputes Hermès' characterization of the disclaimer, which speaks for itself.

130.  Authority: Corrigan Decl., Ex. 68 at 149:7-23 (ECF No. 73-32

***Rothschild's Response:***

**(130)**   Mr. Rothschild does not dispute that

Corrigan Decl., Ex. 68 at 149:7-23.

131. Authority: Corrigan Decl., Ex. 55 at Rothschild008307.

***Rothschild's Response:***

**(131)**   Undisputed.

132. Authority: Corrigan Decl., Ex. at 20 at Rothschild008345 (ECF No. 73-4).

***Rothschild's Response:***

**(132)**   Undisputed.

133. Authority: Corrigan Decl., Ex. 22 at Rothschild008383, Rothschild008386 (ECF No. 73-6).

***Rothschild's Response:***

**(133)**   Undisputed.

134. 

Authority: Corrigan Decl., Ex. 12 at 44:7-11 (ECF No.73-1); Ex. 21 at 144:12-146:5 (ECF No. 75-5); Martin Decl. at ¶ 17, Ex. 4 (ECF No. 70, 69-4).

*Rothschild's Response:*

**(134)**   Mr. Rothschild does not dispute that ▮▮▮▮▮▮▮▮ but he disputes



▮▮▮▮▮▮▮▮   Rothschild Opp. Decl. 6.

135. ▮▮▮▮▮▮▮▮   Authority: Corrigan Decl., Ex. 52 at SACKS_000047; Ex. 36 at 124:17-125:10.

*Rothschild's Response:*

**(135)**   Mr. Rothschild does not dispute the cited private communications between him

and his associates.

136.   Dr. Blake Gopnik provided an expert report stating that "NFT'd images made to mimic a purse sold at Walmart would be sure to get little artistic transaction in our Hermès-mad culture. The Kominers report submitted in this case is quite right to note that the success of Rothschild's 'MetaBirkins' depends on their connection to the Hermès brand." Authority: Corrigan Decl., Ex. 34, ¶ 35 (ECF No.73-14).

*Rothschild's Response:*

**(136)**   Undisputed.

137.   Rothschild admits that the future value of the METABIRKINS NFTs would come not from the art associated with the NFTs but instead would come from the publicity, community activities, and other forms of utility offered to METABIRKINS NFT holders. Authority: Kominers Decl., Ex. 3 at 47:25-48:12.

*Rothschild's Response:*

**(137)**   Mr. Rothschild disputes Plaintiffs' characterization that he admitted that the future value of his *MetaBirkins* NFT artworks would not come from the associated art but instead from the publicity, community activities, and other forms of utility. As the transcript cited shows, Mr. Rothschild was speaking about creating a community and utility in the way that artists have done for ages, but in a new medium using NFTs. *See* Kominers Decl., Ex. 3 at 47:25-48:12; Gopnik Decl. ¶ 9. Moreover, the value of Mr. Rothschild's *MetaBirkins* NFTs is tied to the artwork to which they are linked and the art project as a whole. *See* Gopnik Decl. ¶ 6.

138.   ███████████████████████████████████████████████ Authority: Corrigan Decl., Ex. 21 at 280:23-281:10 (ECF No. 73-5).

*Rothschild's Response:*

**(138)**   Mr. Rothschild does not dispute that ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████ Millsaps Opp. Decl. ¶ 6, Ex. 7 (K. Loo Dep. (Aug. 10, 2022) 62:15-65:21).

Additionally, the term "METABIRKINS NFTs" is not defined by Hermès. As a consequence, Mr. Rothschild does not know what Hermès means that term to refer to, but he disputes Hermès' use of the term to the extent it suggests the NFTs are independent either from the *MetaBirkins* artworks they authenticate or Mr. Rothschild's entire *MetaBirkins* art project, of

which they are an integral part. It is undisputed that Rothschild's *MetaBirkins* artworks have

always been associated with the *MetaBirkins* NFTs. *See* Rothschild response to paragraph 14,

*supra.*

139.   ███████████████████████████████████████████

█████████████████████████████████████████ Authority: Corrigan Decl., Ex. 21 at

184:14-194:22; Ex. 85 at Rothshcild008526.

***Rothschild's Response:***

**(139)**   Undisputed.

140.   Hermès has sold fur BIRKIN handbags, but Rothschild had no idea whether
Hermès made fur BIRKIN handbags. Authority: Corrigan Decl., Ex. 21 at 187:15-17; 194:24-
195:1 (ECF No. 73-5); Exs. 60 (ECF No. 73-29); Ex. 61 (ECF No. 73-30).

***Rothschild's Response:***

**(140)**   Mr. Rothschild disputes that Hermès has sold "fur BIRKIN handbags." The

images of handbags produced by Hermès for this contention show leather handbags with fur

embellishments, not "fur…handbags," and certainly not handbags entirely covered in cartoonish

fur like those depicted in the *MetaBirkins* images. *See* Corrigan Decl., Exs. 60 - 61; Compl. ¶ 79

& Fig. 5, ¶ 83 & Fig. 6.

Mr. Rothschild also disputes that he "had no idea whether Hermès made fur Birkin

handbags." In the testimony cited as evidence for this contention, Mr. Rothschild was asked, "by

the way, are Birkins made with fur?" Mr. Rothschild responded, "Not that I know of." Corrigan

Decl., Ex. 21 at 194:24-195:1.

141.   ██████████████████████████████████████

████████████████████████████ Authority: Corrigan Decl., Ex. 21 at 43:18-25, 48:4-6,
72:16-17, 84:1-89:7 (ECF No. 73-5); Exs. 99 (ECF No. 72-117-72-124. 73-57).

*Rothschild's Response:*

**(141)**   Mr. Rothschild disputes Hermès' self-serving characterization that ██████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

Rothschild Opp. Decl. ¶ 7. ████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████ Corrigan Decl., Ex. 21 at 112:4-9

142.   ████████████████████████████████████████████

████████████████████████████████████████████████████████████

Authority: Corrigan Suppl. Decl., Ex.134 at Tr. 84:14-90:21.

*Rothschild's Response:*

**(142)**   Mr. Rothschild disputes that █████████████████████████ See

Rothschild's response to paragraph 141, *supra*. Mr. Rothschild does not dispute that ████████

████████████████████████████████████████████████

143.   ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████ Authority: Corrigan

Decl., Ex. 67 at SACKS_000109-110.

*Rothschild's Response:*

**(143)**   Undisputed.

144.   ████████████████████████████████████████████

Authority: Corrigan Decl., Ex. 45 at 43:14-19 (ECF No. 73-19); Ex. 68 at 61:3-18 (ECF No.73-32); Ex. 82 at Rothschild015178 (ECF No. 73-38).

*Rothschild's Response:*

(144)   Mr. Rothschild disputes this statement in its entirety. The cited record evidence is private communications between Mr. Rothschild and his business associates, not consumers, and does not show confusion, let alone "significant" confusion.

145.   In preparing an NFT presentation at the end of 2021 for the AIPPI, an IP association in Paris, France, Boriana Guimberteau, a French intellectual property lawyer, became aware of the Baby Birkin NFT and believed "Hermès authorized the NFT or there was some kind of a partnership with Hermès for this NFT." The Baby Birkin NFT was Defendant's NFT project that preceded his METABIRKINS NFT project. Authority: Corrigan Decl., Ex. 21 at 119:24-120:2; Ex. 77 at 6:20-9:21; Ex. 78.

*Rothschild's Response:*

(145)   Mr. Rothschild does not dispute that Ms. Guimberteau testified that she believed that Hermès authorized or was somehow affiliated with *Baby Birkin* because it used the word "Birkin" and the shape of a Birkin bag, and because she saw an article with a picture of the *Baby Birkin* artwork with "Image Courtesy of Hermès" written under the image. Millsaps Opp. Decl. (Doc. 88) ¶ 7, Ex. 6 (Boriana Guimberteau Dep. (Sept. 14, 2022) 9:15-10:12, 26:25-28:18.

146.   Ms. Guimberteau thought the METABIRKINS NFTs were "necessarily with Hermès' agreement." Authority: Corrigan Decl., Ex. 77 at 10:24-11:7 (ECF No. 73-34

*Rothschild's Response:*

(146)   Mr. Rothschild does not dispute that Ms. Guimberteau testified that she was believed that Hermès authorized or was somehow affiliated with MetaBirkins because "as it was related to Hermès, it was necessarily with Hermès' agreement" and also used the word "Birkin" and the shape of a Birkin bag. Millsaps Opp. Decl. ¶ 7, Ex. 6 (Boriana Guimberteau Dep. (Sept. 14, 2022) 10:19-11:7, 28:24-29:12).

147.   During her AIPPI NFT presentation, Ms. Guimberteau presented that the Baby Birkin and METABIRKINS NFTs were "made with Hermès or by Hermès." Authority: Corrigan Decl., Ex. 77 at 11:8-11:20, 13:16-14:6; Ex. 79.

*Rothschild's Response:*

**(147)** Undisputed.

148. It was Ms. Guimberteau's understanding at the time, late 2021, that "there were a lot of fashion and luxury houses that launched NFTs" and "Hermès was also a luxury house that also launched an NFT." Authority: Corrigan Decl., Ex. 77 at 13:24-14:19.

*Rothschild's Response:*

**(148)** Undisputed.

149. Ms. Guimberteau prepared and signed an Affidavit declaring that as of December 9, 2021, she "thought that these [Baby Birkin and MetaBirkins NFTs] were also made in close collaboration with HERMÈS," because "the names of the NFTs include the famous trademark 'BIRKIN' and reproduced the shape of the bag." Authority: Corrigan Decl., Ex. 77 at 15:24-18:2; Exs. 80-81.

*Rothschild's Response:*

**(149)** Undisputed.

150. ████████████████████████████████████████ uthority: Corrigan Decl., Ex. 36 at 169:3-18; Ex. 112 at SACKS_000346.

*Rothschild's Response:*

**(150)** Mr. Rothschild does not dispute that ████████████████████

██████████████████████████████████

151. ██████████████████████████████████ Authority: Corrigan Decl., Ex. 68 at 110:2-111:8; 143:15-146:5 (ECF No. 73-32); Ex. 69 (ECF No. 72-87); Ex. 74 (ECF No. 72-92); Martin Decl. at ¶ 17, Ex. 4 (ECF No. 70, 69-4).

*Rothschild's Response:*

**(151)** *See* Mr. Rothschild's response to paragraph 23, *supra.*

152. *Elle UK* was confused by Hermès's affiliation with the METABIRKINS NFTs and published an article titled, "Birkin NFT: Everything You Need To Know About The 'Handbag' Of The Future," reporting that Hermès had created the METABIRKINS NFTs and

referred to the METABIRKINS as a BIRKIN. Authority: Corrigan Decl., Ex. 68 at 110:14-111:16 (ECF No. 73-32); Exs. 69-71 (ECF No. 72-87 – 72-89).

*Rothschild's Response:*

(152)   Mr. Rothschild disputes that there is evidence in the record to show that *Elle UK* actually was confused about Hermès' affiliation with *MetaBirkins* aside from the referenced article published by *Elle UK*. Mr. Rothschild does not dispute that *Elle UK* published the referenced article titled, "Birkin NFT: Everything You Need To Know About The 'Handbag' Of The Future."

153.   ████████████████████████████████████████████
███████████████ uthority: Corrigan Decl., Ex. 68 at 110:2-20 (ECF No. 73-32); Ex. 69 (ECF No. 72-87).

*Rothschild's Response:*

(153)   Undisputed.

154.   *L'Officiel*, a French fashion magazine with US edition, reported that Hermès "partnered with" Rothschild and described the METABIRKINS NFTS as "a new line of exclusive Birkin bags" and "another collection of Birkin NFTs." Authority: Corrigan Decl., Ex. 72 (ECF No. 72-90).

*Rothschild's Response:*

(154)   Undisputed.

155.   ████████████████████████████████████████████
███████████████ Authority: Corrigan Decl., Ex. 67 at SACKS_000121 (ECF No. 73-31).

*Rothschild's Response:*

(155)   Undisputed.

156.   ████████████████████████████████████████████
███████████████ Authority: Corrigan Decl., Ex. 68 at 143:15-144:17 (ECF No. 73-32); Ex. 74 (ECF No. 72-92).

*Rothschild's Response:*

**(156)**   Undisputed.

157.   The *New York Post* was confused about Hermès's affiliation with the METABIRKINS NFTs, stating that Hermès had entered the metaverse and "unveiled the MetaBirkin—a VR version of its signature bag." Authority: Corrigan Decl., Ex. 75 at HERMES_0036022 (ECF No. 72-93).

*Rothschild's Response:*

**(157)**   Mr. Rothschild disputes that there is evidence in the record to show that the *New York Post* actually was confused about Hermès' affiliation with *MetaBirkins* aside from the referenced article published by the paper. Mr. Rothschild does not dispute that the *New York Post* published the referenced article with the quoted statement and subsequently published a correction. *See* Rothschild's response to paragraph 23, *supra*.

158.   Months after the filing of this lawsuit, publications were still confused as to the origin of the METABIRKINS NFTs: In May, the French publication *Challenges* reported that Hermès "unveil[ed] virtual bags under the name 'MetaBirkin.'" Rothschild nor Loo reached out to correct the reporting. Authority: Corrigan Decl., Ex. 76 (ECF No. 72-94).

*Rothschild's Response:*

**(158)**   Mr. Rothschild disputes that there is evidence in the record that "publications are still confused as to the origin of the METABIRKINS NFTs." Mr. Rothschild does not dispute that *Challenges* published the referenced article with the quoted statement, and that Mr. Rothschild and Mr. Loo did not contact *Challenges*, as it is a French publication and they were unaware of it.

159.   ████████████████████████████████████████████
████████████████████████████ Authority: Corrigan Decl., Ex. 68 at 71:15-72:24 (ECF No. 73-32); Ex. 110 at KLOO_0000037 (ECF No. 72-128).

*Rothschild's Response:*

**(159)**   Undisputed.

160. ███████████████████████████████████

████████████████████████████████ Authority: Corrigan Decl.,
Ex. 110 at KLOO_0000039-42, (ECF No. 72-128.

*Rothschild's Response:*

**(160)**   Undisputed.

161.   Consumers expressed confusion on the METABIRKINS Instagram and Twitter
accounts regarding whether the METABIRKINS NFTs were authorized, affiliated, or sponsored
by Hermès. Authority: Corrigan Decl., Ex. 37 at HERMES_0008362, HERMES_0008376,
HERMES_0008439, HERMES_0008445, HERMES_0008634, HERMES_0008638,
HERMES_0008684, HERMES_0008689, HERMES_0008696, HERMES_0008706,
HERMES_0008752, HERMES_0008757, HERMES_0008802, HERMES_0008809,
HERMES_0008824-8828, HERMES_0008835, HERMES_0008841-8842; Ex. 38 at
HERMES_0009435-36, HERMES_0009520, HERMES_0009533, HERMES_0009536,
HERMES_0009540-9541, HERMES_0009544-9545 HERMES_0009549, HERMES_0009522,
HERMES_0009555, HERMES_0009598, HERMES_0009605, HERMES_0009608 (ECF No.
72-46).

*Rothschild's Response:*

**(161)**   Rothschild disputes that these social media posts reflect confusion regarding

whether the *MetaBirkins* artworks and NFTs were authorized, affiliated, or sponsored by

Hermès, and there is no evidence in the record to support that assertion.

162.   Customers expected more from the METABIRKINS NFTs, including receiving a
real-world handbag. Authority: Corrigan Decl., Ex. 37 at HERMES_0008376,
HERMES_0008398, HERMES_0008443, HERMES_0008689, HERMES_0008701,
HERMES_0008723, HERMES_0008759, HERMES_0008790, HERMES_0008799 (ECF No.
72-46.

*Rothschild's Response:*

**(162)**   Rothschild disputes that any of the cited evidence demonstrates that consumers

expected "More from the METABIRKINS NFTs, including receiving a real-world handbag."

Hermes distorts the comments reflected in those documents, which were made by unidentified

commenters (with no evidence that they were consumers) and frequently demonstrate that the

commenters are clear that Hermès had nothing to do with *MetaBirkins*..

163.    ███████████████████████████████
████████████  uthority: Corrigan Suppl. Decl., Ex. 140.

***Rothschild's Response:***

**(163)**   Rothschild does not dispute that he made the quoted statement.

164.    Hermès's expert, Dr. Bruce Isaacson, conducted a survey measuring "the likelihood of confusion between Birkin bags from Hermès and MetaBirkins NFTs, which are sold by the Defendant, Mason Rothschild." Dr. Isaacson's survey found net confusion among the NFT audience of 18.7%. Authority: Isaacson Decl., Ex. 1 at 1, 15, 38 (ECF No. 67-1).

***Rothschild's Response:***

**(164)**   Rothschild does not dispute that Dr. Isaacson conducted a survey that purports to measure "the likelihood of confusion between Birkin bags from Hermes and MetaBirkins NFTs, which are sold by the Defendant, Mason Rothschild." Rothschild also does not dispute that Dr. Isaacson purports to have found net confusion of 18.7%. Rothschild disputes that Dr. Isaacson's survey measures likelihood of confusion at all, and he disputes that the survey shows net confusion of 18.7%. *See* Rothschild response to paragraphs 30-31, *supra*.

165.    Dr. Isaacson's survey measured confusion by determining whether respondents who were shown the *MetaBirkins* website associated it with Hermès. The stimulus a survey expert shows respondents needs to recreate the real world. In accordance with this, Dr. Isaacson showed respondents the METABIRKINS.com website, which is where Rothschild advertised the METABIRKINS NFTs. Authority: Isaacson Decl., Ex. 1 at 3-7, Figures 1-2 (ECF No. 67-1); Corrigan Suppl. Decl., Exs. 132 at 108:15-109:7; Ex. 141 at 57:11-59:3.

***Rothschild's Response:***

**(165)**  Rothschild does not dispute that the stimulus a survey expert shows respondents needs to recreate the real world, or that Dr. Isaacson showed survey respondents a screenshot from the metabirkins.com website. Rothschild also does not dispute that Rothschild promoted his *MetaBirkins* artworks, which he sold by way of NFTs, on his website. Rothschild does not dispute that Dr. Isaacson's study only sought to determine whether respondents associated

something in the stimulus with Hermes, but Rothschild disputes that the study determined

whether respondents who were shown the metabirkins.com website associated it with Hermès.

Dr. Isaacson showed respondents a screenshot from the website that showed the MetaBirkins

artwork, depicting a fanciful Birkin bag, and asked respondents questions about the "items on the

webpage," which he did not define. Isaacson Decl., Ex. 1 ¶ 18. Additionally, Dr. Isaacson

testified that his survey measured "cognitive connections," which would be sparked by artwork

depicting Birkin bags and would not necessarily indicate confusion as to source of the artworks.

*See* Rothschild response to paragraphs 30-31, *supra*.

166.     Rothschild's expert, Dr. Neal admitted that the threshold for determining
confusion is lower than 18.7%: "You know, if you get a confusion number above 15 percent that
-- 15 percent or higher, that might -- might be considered evidence of likelihood of confusion. If
it's a less than 15 percent that might be considered evidence against confusion." Authority:
Corrigan Suppl. Decl., Ex. 141 at 117:17-25.

**Rothschild's Response:**

**(166)**   Rothschild does not dispute that Dr. Neal made the quoted statement in his

deposition. Rothschild disputes that Dr. Neal admitted that the threshold for determining

confusion is lower than 18.7%, which is a legal question, and Rothschild specifically disputes

that the threshold is lower than 20% in this case.

167.     As shown by the Isaacson survey, many respondents either did not notice the
disclaimer on METABIRKINS.com, or mistakenly thought that the disclaimer indicated that
Hermès is associated with METABIRKINS. Authority: Isaacson Decl., Ex. 1 at 25-29, Report
Ex. 12 at 9, 22, 40, 52. 168. One respondent in the Isaacson survey mentioned the disclaimer in
response to Questions 1 and 2, but on Question 4, their answer indicated that the disclaimer did
not clear up their confusion as to whether the METABIRKINS were from Hermès. Authority:
Isaacson Decl., Ex. 1 at Report Ex. 12 at 9-10 (Respondent ID 18); Corrigan Suppl. Decl., Ex.
132 at 113:23-117:3.

**Rothschild's Response:**

**(167)**   Rothschild disputes that many respondents in Dr. Isaacson's survey did not notice

the disclaimer or mistakenly thought the disclaimer indicated that Hermes is associated with

*MetaBirkins*. In fact, Hermes badly distorts the response of Respondent 18, who clearly literally read back the disclaimer, including the statement that *MetaBirkins* is not affiliated with Hermès. Isaacson Decl., Ex. 1 at Report Ex. 12 at 9-10 (Respondent ID 18); Millsaps Decl. (Doc. 65) ¶ 11, Ex. 10 (B. Isaacson Dep. (Sept. 20, 2022) 118:25-120:8), ¶ 10, Ex. 9 (Neal Rep. ¶¶ 3.3-3.3.15.2).

168.    One respondent in the Isaacson survey mentioned the disclaimer in response to Questions 1 and 2, but on Question 4, their answer indicated that the disclaimer did not clear up their confusion as to whether the METABIRKINS were from Hermès. Authority: Isaacson Decl., Ex. 1 at Report Ex. 12 at 9-10 (Respondent ID 18); Corrigan Suppl. Decl., Ex. 132 at 113:23-117:3.

### *Rothschild's Response:*

**(168)**   As Dr. David Neal made clear in his report, Dr. Issacson was required to "include an additional follow-up question to rule out the possibility that respondents are merely reading or 'playing back' what is shown to them in the survey, rather than actually being confused and thinking specifically of the senior user when they see the junior user's allegedly infringing goods." Neal. Rep. ¶ 3.3.2. And in fact Dr. Issacson included that follow-up question—that is, he included a question that enabled him "to determine whether respondents who listed "Hermes" or "Birkin" at Q1 were, in fact, thinking of the Plaintiffs versus merely reading or playing back one of many brands written on the stimulus they had just seen." Millsaps Decl. [Doc. 65] ¶ 11, Ex. 10 (Neal Rep. ¶ 3.3.8). And yet, as Dr. Neal shows, Dr. Isaacson simply ignored the answers to that follow-up question when coding his results. *Id*. ¶¶ 3.3.6-3.3.9. In one of those answers, shown in Neal Rep. Table 2, Response ID 18, the subject stated that "[t]he webpage Name and description states it's MetaBirkins. But also, the webpage disclaimer at the bottom clearly states the author of the post or NFT is not affiliated with 'Hermès' who is the actual registered Trademark Owner of Birkin bags." Dr. Isaacson counted this respondent as "confused" simply because the

respondent mentioned the word "Hermès", despite it being absolutely clear that the respondent was not confused and was simply "reading back" that term because it was contained in the disclaimer.

When Dr. Neal re-calculated Dr. Isaacson's results, this time including in the calculation the answers to the follow-up question to rule out "reading back," the level of net confusion dropped to 9.3%. *Id*. ¶¶ 3.3.11-3.3.14.

169.    Dr. Isaacson's survey correctly uses the term "item," which is neutral and nonleading. The word "NFT" is leading because it directs respondent attention to certain parts of the MetaBirkins webpage, and away from other parts of the webpage. Authority: Corrigan Suppl. Decl., Ex. 132 at 169:18-170:5; 172:10-21.

### *Rothschild's Response:*

**(169)**    Rothschild disputes that Dr. Isaacson's survey correctly uses the term "item," which is inherently ambiguous when the respondent was shown an image of a fanciful Birkin bag and asked "who makes the item on the webpage?" Additionally, according to Hermès' summary judgment papers, its claim is based on Mr. Rothschild's use of the *MetaBirkins* name for NFTs. Failing to focus the survey on the name of the NFTs, as Isaacson admitted he did not, makes his survey irrelevant. *See* Millsaps Opp. Decl. (Doc. 88) ¶ 14, Ex. 13 (B. Isaacson Dep. (Sept. 20, 2022) 154:8-156:14); *see id*. at 156:11-14 ("Like I said, I don't have an opinion on the confusion caused by individual elements. I only have an opinion on the confusion caused by the group.").

170.    Dr. Neal did not have any suggestion for an alternative to the term "items," other than "some language that made it clear whether [Dr. Isaacson] was referring to the NFT or to the real world physical object depicted in the NFT." Authority: Corrigan Suppl. Decl., Ex. 141 at 128:17-130:21.

*Rothschild's Response:*

**(170)**   Mr. Rothschild does not dispute that Dr. Neal said that Dr. Isaacson should have used language that made it clear whether the survey questions were referring to the NFT or the real-world physical object depicted in the NFT. Mr. Rothschild disputes that it was Dr. Neal's burden to craft Dr. Isaacson's study so that it actually measured what it purported to measure.

171.   Dr. Neal offered a method to re-code the Isaacson survey. Dr. Neal's method requires that respondents repeat their answer to Question 1 in Question 4, i.e., indicate confusion more than once, to count as confused, and Dr. Neal seeks to re-classify respondents as not confused who obviously are confused, such as Respondent 83 (answer to Question 1 was "The company is Birkin, you can see the brand clearly") or Respondent 108 (answer to Question 1 was "metabirkins", Question 4 was "Hermès", and to Question 7 was "Hermès"). Authority: Corrigan Suppl. Decl., Ex. 132 at 209:15-213:25; Millsap Decl., Ex. 9 at 15-16 (Table 2) (ECF No. 65-9).

*Rothschild's Response:*

**(171)**   Rothschild does not dispute that Dr. Neal offered a method of re-coding responses to Dr. Isaacson's survey questions. Hermes inappropriately seeks to characterize as undisputed fact the proper interpretation of survey response answers. Dr. Neal's criticism of Dr. Isaacson's coding speaks for itself. Millsaps Decl. (Doc. 65) ¶ 10, Ex. 9 (Neal Rep. ¶¶ 3.3.11-3.3.14).

172.   Any single response that reflects confusion with Hermès should be counted as confused, regardless of whether that response is repeated in a subsequent question. Authority: Corrigan Suppl. Decl., Ex. 132 at 91:3-16, 94:11-95:9, 100:24-101:16.

*Rothschild's Response:*

**(70)**   Hermes again inappropriately seeks to characterize as undisputed fact argument about the proper interpretation of Dr. Isaacson's survey. Mr. Rothschild disputes Hermes' characterization. Dr. Neal's criticism of Dr. Isaacson's methodology speaks for itself.

173.   Dr. Neal could not identify a single survey that relied on his asserted re-coding, or any court decision or reference that uses this re-coding method, nor had Dr. Neal ever conducted a survey using this method. Authority: Corrigan Suppl. Decl., Ex. 141 at 111:6-22.

*Rothschild's Response:*

**(173)**   Rothschild does not dispute that Dr. Neal did not identify another survey that

required re-coding in the way that would have been appropriate here, given the flaws in Dr.

Isaacson's design.

174.   Dr. Neal did not conduct a survey. Authority: Corrigan Suppl. Decl., Ex. 141 at
29:19-31:3.

*Rothschild's Response:*

**(174)**   Undisputed

175.   The Handbag Survey's measures were 18.8% for the test webpage, and 15.2% for
that control. Dr. Isaacson explained, in his deposition, that "[a] net confusion level of 3.6 percent
would normally be associated with the absence of confusion, but it's also important to remember
that the survey didn't show no confusion. What the survey showed is control cell confusion that
was almost equal to the test confusion." Authority: Corrigan Suppl. Decl., Ex. 132 at 127:13-19;
Isaacson Decl., Ex. 1, Report Ex. 11 at 24 (ECF No. 67-1).

*Rothschild's Response:*

**(175)**   Mr. Rothschild does not dispute that the Handbag Survey purported to show

18.8% confusion in the test condition and 15.2% for the control. Mr. Rothschild also does not

dispute that Dr. Issacson made the quoted statements in his deposition, or that a net confusion

level of 3.6% normally would be associated with the absence of confusion.

Dated:  October 28, 2022                      Respectfully Submitted,

/s/ *Rhett O. Millsaps II*
Rhett O. Millsaps II
Christopher J. Sprigman
Mark P. McKenna (*pro hac vice*)
Rebecca Tushnet
LEX LUMINA PLLC
745 Fifth Avenue, Suite 500
New York, NY  10151
(646) 898-2055
rhett@lex-lumina.com

*Attorneys for Defendant Mason Rothschild*