**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

HERMÈS INTERNATIONAL and
HERMÈS OF PARIS, INC.,

              Plaintiffs,

              v.

MASON ROTHSCHILD,

              Defendant.

No. 22-cv-00384-JSR

ECF Case

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ROTHSCHILD'S MOTION FOR SUMMARY JUDGMENT

October 28, 2022

Rhett O. Millsaps II
Christopher J. Sprigman
Mark P. McKenna (*pro hac vice*)
Rebecca Tushnet
LEX LUMINA PLLC
745 Fifth Avenue, Suite 500
New York, NY  10151
Tel:  (646) 898-2055
Email:  rhett@lex-lumina.com

*Attorneys for Defendant Mason Rothschild*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES…………………………………………………………...ii

PRELIMINARY STATEMENT……………..……………………………………………...1

ARGUMENT……………………………………………………………………………...1

I.      UNDISPUTED FACTS SHOW THAT *ROGERS* APPLIES AND REQUIRES
        SUMMARY JUDGMENT FOR ROTHSCHILD…....…………………………………...1

        A.      The Undisputed Facts Show that the *MetaBirkins* Name is Artistically Relevant
                to the *MetaBirkins* Artworks and to the Entire Project……………....…...……......4

        B.      The Undisputed Facts Show that Rothschild's Use of Hermès' Marks is Not
                Explicitly Misleading.…………………………………………….…………………5

CONCLUSION……..…………………………………………………………………………10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bonilla v. H&M Hennes & Mauritz L.P.*,
No. 12 Civ. 6919 (LAK)(MHD), 2014 WL 12661621 (S.D.N.Y. Apr. 16, 2014)...............9

*Bonilla v. H&M Hennes & Mauritz L.P.*,
No. 12 Civ. 6919 (LAK), 2014 WL 12661274 (S.D.N.Y. Jun. 10, 2014).........................9

*Dr. Seuss Enters., L.P. v. ComicMix LLC*,
983 F.3d 443 (9th Cir. 2020)...........................................................................8

*Easy Spirit, LLC v. Skechers U.S.A., Inc.*,
571 F. Supp. 3d 185 (S.D.N.Y. 2021).............................................................10

*Gordon v. Drape Creative, Inc.*,
909 F.3d 257 (9th Cir. 2018)..........................................................................7

*GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*,
769 F. Supp. 2d 630 (S.D.N.Y. 2011)..............................................................10

*Groeneveld Transport Efficiency, Inc. v. Lubecore Intern., Inc.*,
730 F.3d 494 (6th Cir. 2013)..........................................................................10

*Grubhub Inc. v. Kroger Co.*,
No. 1:21-cv-05312, 2022 WL 2774986 (N.D. Ill. May 25, 2022)...............................10

*Jet, Inc. v. Sewage Aeration Sys.*,
165 F.3d 419 (9th Cir. 1999)..........................................................................10

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
543 U.S. 111 (2004).....................................................................................6

*Lang v. Retirement Living Publishing Co.*,
949 F.2d 576 (2d Cir. 1991)........................................................................6, 9

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*,
156 F. Supp. 3d 425 (S.D.N.Y. 2016).............................................................5

*Louis Vuitton Malletier S.A. v. Warner Bros. Enter. Inc.*,
868 F. Supp. 2d 172 (S.D.N.Y. 2012)..............................................................5

ii

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
  209 F. Supp. 3d 612 (S.D.N.Y. 2016)……………………………………………………9, 10

*Medici Classics Productions, LLC v. Medici Group, LLC*,
  683 F. Supp. 2d 304 (S.D.N.Y. 2010)……………………………………………….....10

*MGFB Properties, Inc. v. Viacomcbs Inc.*,
  No. 5:19cv257-RH-MJF, 2021 WL 4843905 (N.D. Fla. Sept. 22, 2021)……………………….9

*Nora Beverages, Inc. v. Perrier Grp., Inc.*,
  269 F.3d 114 (2d Cir. 2001)……………………………………………………………....9

*Reply All Corp. v. Gimlet Media, Inc.*,
  No. 15-CV-4950 (WFK)(PK), 2020 WL 13536220 (E.D.N.Y. Feb. 12, 2020)…………….…10

*Reply All Corporation v. Gimlet Media, LLC*,
  843 Fed. Appx. 392 (2d Cir. 2021)…………………………………………………………….9

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir. 1989)……………………………………………………………1, 7, 8

*Smith v. California*,
  361 U.S. 147 (1959)……………………………………………………………………….4

*Two Hands IP LLC v. Two Hands America, Inc.*,
  563 F. Supp. 3d 290 (S.D.N.Y. 2021)…………………………………………………….10

*W.W.W. Pharm. Co. v. Gillette Co.*,
  808 F. Supp. 1013 (S.D.N.Y. 1992)……………………………………………...……10

Mason Rothschild respectfully submits this reply memorandum of law in further support of his motion for summary judgment against Plaintiffs Hermès International and Hermès of Paris, Inc. (collectively, "Hermès").

## PRELIMINARY STATEMENT

After filling its complaint with images of the *MetaBirkins* artworks Rothschild released with NFTs, arguing that those static, two-dimensional images are infringing "virtual handbags," and submitting a confusion survey based on those images,[1] Hermès now asks the Court to ignore the attached images, arguing about what Rothschild hypothetically *could do* in the future. But Hermès cannot create an issue of material fact with pure speculation. Undisputed facts show that NFTs are bits of digital code on a blockchain, with no inherent properties of their own. NFTs are defined by what they're attached to—in this case, indisputably the *MetaBirkins* artworks.

Hermès' papers only confirm that this is a straightforward case under *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). The *MetaBirkins* title is artistically relevant to Rothschild's digital artworks and to his NFT art project as a whole, and his use of the *MetaBirkins* name is not explicitly misleading. The *MetaBirkins* artwork is squarely protected by the First Amendment. This Court should reject all of Hermès' claims.

## ARGUMENT

### I.   UNDISPUTED FACTS SHOW THAT *ROGERS* APPLIES AND REQUIRES SUMMARY JUDGMENT FOR ROTHSCHILD

Discovery has forced Hermès to concede that the *MetaBirkins* digital images at issue in this case are two-dimensional, fanciful depictions of imaginary Birkin bags[2]—that is, they are

---

[1] *See* Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment ("Rothschild Opp.") (Doc. 78) at 1-2.
[2] *See* Rothschild's Reply to Plaintiffs' Response to Defendant's Rule 56.1 Statement of Undisputed Material Facts and Statement of Additional Material Facts ("RHCS") ¶¶ 15-16.

artworks protected by the First Amendment. In a last-ditch effort to avoid dismissal, Hermès now

contends that Rothschild wasn't selling artworks at all but was instead selling only NFTs—bits

of digital code "not indelibly tied to any artwork."[3] Hermès' new argument ignores

uncontroverted, dispositive facts and the unrebutted expert testimony of Dr. Blake Gopnik.

It is undisputed that the NFTs in this case have been attached to Rothschild's *MetaBirkins*

artworks since the NFTs were minted. RHCS ¶¶ 15-16. It thus makes perfect sense that the NFTs

are named—or, as Hermès would have it, "branded"—METABIRKINS. Opp. at 3. Hermès

nonetheless attempts to disassociate the NFTs from the *MetaBirkins* images by emphasizing that,

for less than 24 hours during the NFT minting process, Rothschild attached an image of a

shroud-covered object on a pedestal to the NFTs. *Id.* But Hermes' own evidence shows that

Rothschild publicly previewed the *MetaBirkins* artworks in the weeks prior to the *MetaBirkins*

NFT minting. *See* RHCS ¶ 57. Purchasers thus knew that each NFT minted would be attached to

one of those artworks; they just didn't know which one until the reveal. *Id*. Moreover, Dr.

Gopnik gave unrebutted testimony that the shrouded placeholder image and reveal process only

strengthened his opinion that the *MetaBirkins* project as a whole is art. *See* Declaration of Rhett

O. Millsaps II in Support of Rothschild's Opposition to Plaintiffs' Motion for Summary

Judgment (Doc. 88) ("Millsaps Opp. Decl.") ¶ 3, Ex. 2 (B. Gopnik Dep. (September 23, 2022)

207:4-208:7).

Hermès points out that it is technically possible that, in the future, Rothschild could

change what is attached to the NFTs. *See* Opp. at 1, 3. But it was also theoretically possible that

"Ginger & Fred" could have been used for a movie to which that title wasn't artistically relevant.

---

[3] Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Opp.") at 3.

Conjecture about hypothetical uses cannot create a material issue. There is no evidence that Rothschild has ever contemplated replacing the *MetaBirkins* artworks with other images.[4]

Finally, Hermès relies on Dr. Kominers' expert report to argue that *Rogers* doesn't apply because the *MetaBirkins* are so-called "digital brand NFTs," which "launch with a brand asset [*e.g.*, art], followed by various forms of rewards for NFT holders, typically called 'utilities'…" Opp. at 4. Dr. Kominers distinguishes "digital brand NFTs" from "art-only NFTs." *Id.*. But as Dr. Gopnik has explained in unrebutted testimony, that distinction is specious; for ages, artists have promoted their art with exactly the sort of "utilities" that Dr. Kominers identified. *See* RHCS ¶ 73.

Dr. Gopnik—the only expert in this case qualified to opine on art—has given cogent, unrebutted testimony explaining both that the *MetaBirkins* images are traditional visual art and additionally that Rothschild's use of NFTs in this particular instance is recognizable as "Business Art" in the vein of Warhol and others because "Rothschild's NFT'd 'MetaBirkins' are meant to mimic [an] economic aspect of the real-world bags they depict—in much the same way…that a more traditional artistic depiction points to something of interest by mimicking its appearance." Declaration of Rhett O. Millsaps II in Support of Rothschild's Motion for Summary Judgment (Doc. 65) ("Millsaps Decl.") ¶ 2, Ex. 1 (Gopnik Rep. ¶¶ 34). Notably, Hermès chose not to proffer an art expert in this case, despite its considerable resources.[5] Both Dr. Kominers and Hermès' designated 30(b)(6) witness testified that they do not know and cannot say whether

---

[4] Hermès' redefines the word "wear" in an absurd attempt to characterize the admittedly two-dimensional *MetaBirkins* artworks as "wearable." *See* Rothschild Opp. at 23-24. *See also* RHCS ¶ 94.  Under Hermès' definition, all art is "wearable."

[5] Dr. Kominers admitted at his deposition that he has no knowledge or opinion about what constitutes art; he explained that in the context of his opinion, he used the word "art" simply to mean "imagery or other digital media that is sometimes associated to" an NFT. RHCS ¶ 73

*MetaBirkins* is art.[6] RHCS ¶ 73 (Kominers); Declaration of Rhett O. Millsaps II in Further

Support of Rothschild's Motion for Summary Judgment ("Millsaps Reply Decl.") ¶ 5, Ex. 16.

Ultimately, Hermès argues that *MetaBirkins* is not art because Rothschild aggressively

marketed and sold his art for profit. *See* Opp. at 5. That argument ignores Dr. Gopnik's

unrebutted testimony that it is commonplace for artists to seek to profit from their art, and that

Rothschild here was practicing Business Art. *See* RHCS ¶ 17. It also ignores controlling First

Amendment law, which makes clear that much noncommercial speech is sold for profit. *See,*

*e.g.*, *Smith v. California*, 361 U.S. 147, 150 (1959) (profit-seeking "is of course no matter" to

protection of artistic speech). And, if that weren't enough, it ignores virtually every case in

which courts have applied *Rogers*—cases that involve works sold for profit, frequently on a

much greater commercial scale than *MetaBirkins*. *See* Rothschild Opp. at 21-22.

### A.     The Undisputed Facts Show that the *MetaBirkins* Name is Artistically Relevant to the *MetaBirkins* Artworks and to the Entire Project.

Given that the undisputed facts and Dr. Gopnik's unrebutted testimony show that the

*MetaBirkins* images and the *MetaBirkins* NFT project as a whole are art, the *MetaBirkins* name

is artistically relevant to both. Dr. Gopnik provided cogent, unrebutted testimony as to why the

*MetaBirkins* name is artistically relevant both to the *MetaBirkins* images and to the NFT art

project as a whole. RHCS ¶ 19. But the Court need not rely on Dr. Gopnik's opinion for this;

even Hermès' own representative was obliged to admit that the *MetaBirkins* name is descriptive

---

[6] That did not stop Dr. Kominers from offering an unqualified opinion that the pricing of *MetaBirkins* was most likely attributable to the use of the "Birkin" mark and trade dress, RHCS ¶ 60, even though he admitted at his deposition that he did not take into account prices in the art market as a "factor" in his "empirical" analysis of the prices fetched by *MetaBirkins* because he "couldn't figure out a way to do it that would be robust." *Id.*  Notably, it would not be possible for any aspect of the images to affect the pricing of the *MetaBirkins* NFTs if they were, as Hermès speciously suggests, not connected to the images.

of the content of the *MetaBirkins* artworks. RHCS ¶ 18. And since the NFTs have always been associated with those artworks, the use of the *MetaBirkins* name with the NFTs (which are simply certificates of authenticity of the artworks) carries the same artistic relevance.

Hermès argues that Rothschild "intended to trade off the goodwill of the BIRKIN Mark" and therefore the *MetaBirkins* name is not artistically relevant to the art. Opp. at 9. But Hermès itself admits that the Birkin bag "has become a cultural symbol of rarefied wealth through prolific references in media and pop culture." Opp. SOMF (Doc. 90) ¶ 13. Dr. Gopnik has explained in unrebutted testimony that the "function of the 'MetaBirkins' would…dissolve" and "Rothschild's artistic expression would be stymied" if Rothschild could not reference the Birkin bag, which is the whole point of his artistic project. Millsaps Decl. ¶ 2, Ex. 1 (Gopnik Rep. ¶ 34). *Cf. Louis Vuitton Malletier S.A. v. Warner Bros. Entmt.*, 868 F. Supp. 2d 172, 178 (S.D.N.Y. 2012) (finding film's reference artistically relevant because the public "signifies Louis Vuitton … with luxury and a high society lifestyle"); *see also Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d 425, 437 (S.D.N.Y. 2016) ("MOB's tote bags would not make their point … if the obverse of the tote merely depicted some generic handbag."). Accepting Hermès' argument would mean that *no* artist could reference the Birkin bag, or any other trademark that has achieved power as a cultural symbol, without losing the protection of *Rogers.* That argument turns *Rogers*' artistic relevance requirement on its head and would make many significant artworks illegal, including Andy Warhol's *Brillo Boxes* and *Campbell's Soup Cans*.

### B. The Undisputed Facts Show that Rothschild's Use of Hermès' Marks is Not Explicitly Misleading.

Discovery has made clear that Hermès does not have evidence that Rothschild's use of Hermès' marks explicitly mislead as to the source of the *MetaBirkins* artworks. Critically, there is no evidence that any prospective *MetaBirkins* purchaser was confused. Hermès seeks to show

explicit misleadingness by pointing to: 1) its flawed survey; 2) uses of the marks that require

inference; 3) comments Rothschild made privately to associates and others but not to consumers;

(4) inquiries by those non-consumers; and 5) statements by journalists and unidentified people

on social media for which there is no basis for attribution to Rothschild. *See* Opp. at 14-18. None

of this is evidence of *explicit* misleadingness under *Rogers*.

      1.    ***Hermès' survey.*** As an initial matter, Hermès wrongly asserts that it need not

show a "particularly compelling" level of confusion. Opp. at 13. In fact, cases in this Circuit that

have used a "quick look" *Polaroid* analysis to evaluate explicit misleadingness under *Rogers*

have unambiguously demanded that evidence of confusion be "particularly compelling." *See*

Rothschild Br. (Doc. 62) at 17; Memorandum Order (Doc. 50) at 15 (there must be "sufficiently

compelling" likelihood of confusion to overcome *Rogers*). As those courts have all recognized,

*Rogers* would mean nothing if it did not at least impose a higher threshold for actionable

confusion. *Cf. KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 120

(2004) (trademark defense that only operates in absence of likely confusion is no defense at all).

      In defense of its survey, which purports to find 18.7% net confusion,[7] Hermès cites non-

*Rogers* cases in which courts credited surveys ostensibly showing less than 20% confusion. Opp.

at 14-15. But this does not meet the *Rogers* standard, which demands more than ordinary

evidence of confusion. *Rogers* itself deemed irrelevant a survey showing 38% confusion. *See*

Rothschild Br. at 16-17.[8]

---

[7] The survey is utterly unreliable as evidence of any likelihood of confusion. *See* Rothschild Br.
at 19-22. Most basically, the survey wasn't designed to measure trademark *confusion* at all, but
only "cognitive connections"—*i.e.*, association—which is not confusion. *See* Rothschild Br. at
20; *Lang v. Retirement Living Publishing Co.*, 949 F.2d 576, 582-83 (2d Cir. 1991).
[8] Hermès also ignores the fact that Dr. Isaacson's survey does not even purport to measure
confusion attributable specifically to the *MetaBirkins* name—which is how Hermès has now
defined its claim. *See* Rothschild Opp. at 14, n. 3.

2.      *Uses of "MetaBirkins" that require an inference.* The bulk of Hermès' putative

evidence involves uses of "MetaBirkins" name itself and referential use of the Hermès and Birkin

marks unaccompanied by any explicit misstatements regarding source. *See* Opp. at 17-19. All of

those uses require consumers to draw inferences regarding source. *See* Compl. ¶¶ 81-133. But

uses that require inference are, by definition, not *explicitly* misleading. *See Rogers*, 875 F.2d at

1001 (risk of mistaken inference, not attributable to explicit misstatement, not sufficient to

outweigh interests in artistic expression); Rothschild Br. at 14. Moreover, as Rothschild's brief in

support of summary judgment explains, Rothschild identified himself as the responsible artist and

added a disclaimer to avoid any reasonable confusion. Rothschild Br. at 15-16.

Hermès cites *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 270 (9th Cir. 2018), for the

proposition that use of a mark alone can be actionable under *Rogers*. *See* Opp. at 17. But that

single case makes clear on the very page that Hermès cites that its logic does not apply when the

parties' primary markets are distinct, most especially when the trademark claimant primarily

makes non-artistic products:

> In *MCA Records* and *Walking Mountain*, for example, Mattel's Barbie mark was used in
> a song and a series of photos. In *E.S.S.*, the mark of a strip club was used in a video game.
> And in *Twentieth Century Fox*, the mark of a record label was used in a television show.
> In each of these cases, the senior user and junior user used the mark in different ways.
> This disparate use of the mark was at most "only suggestive" of the product's source and
> therefore did not outweigh the junior user's First Amendment interests.

*Gordon*, 909 F.3d at 270 (cleaned up). Here, unlike *Gordon*, where the parties made the same

joke on the same physical products, but like all the *Rogers* cases *Gordon* distinguished,

Rothschild has used the *MetaBirkins* name as the title of an artwork, in a different context than

Hermès uses its mark. Hermès' Birkin handbags are physical goods made out of leather.

Rothschild's *MetaBirkins* are artworks that depict imaginary Birkin bags—fanciful images that,

as Dr. Gopnik opined, are covered in "goofy, garish fake fur" that "flags the absurdist, parodic

intent of [the] project" SUF ¶ 16 (Gopnik Rep. ¶ 38; (M. Rothschild Dep. (Aug. 4, 2022) 189:21-190:5); Rothschild Decl. ¶ 10. Like the uses *Gordon* distinguished, Rothschild's use of "Birkin" in this context was, at most, only suggestive of any connection with Hermès. By contrast, the examples of explicit misleadingness in *Rogers* involved signature-type or possessive uses that inherently signaled authorship and thus have a heightened risk of misleadingness in the context of art. 875 F.2d at 999–1000. Hermès is not an author and Birkin bags are not artworks. They are objects in the world that are the subject of the *MetaBirkins* art.

The inapplicability of *Gordon* is reinforced by *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443 (9th Cir. 2020). There, clear attribution to the authors on the cover of the Dr. Seuss-inspired book precluded any finding of explicit falsity, even though the book "uses the Seussian font in the cover, the Seussian style of illustrations, and even a title that adds just one word—*Boldly* —to the famous title—*Oh, the Places You'll Go!*." *Id.* at 462. The *ComicMix* court distinguished *Gordon*, noting the additional expressive content supplied by the artists and stating that "the cover conspicuously lists David Gerrold and Ty Templeton, not Dr. Seuss, as authors, and Boldly states that it is 'not associated with or endorsed by' Seuss." *Id.* at 463. Rothschild claimed authorship on the metabirkins.com website, Rothschild Br. at 20-21, and on his social media accounts, RHCS ¶¶ 127-129. He never attributed authorship to Hermès.[9]

**3.** ***Private statements and inquiries.*** The fact that a few people asked Rothschild about whether there was a relationship between *MetaBirkins* and Hermès is not evidence of

---

[9] Hermès complains that Rothschild's name was not on the pages on auction sites such as OpenSea and Rarible that listed *MetaBirkins*. Opp. at 11. But Rothschild did not control the listings on auction sites—these are generated by the sites themselves—and he did not supply the content that appeared on those sites. Rothchild Decl. at para. 9. Contrary to Hermès' assertions, Rothschild claimed authorship of *MetaBirkins* on the project's Instagram page; he included his name, which linked to his personal Instagram page. *See* RHCS ¶ 121.

confusion. The Second Circuit has long held that "[i]nquiries about the relationship between an owner of a mark and an alleged infringer do not amount to actual confusion. Indeed, such inquiries are arguably premised upon a *lack* of confusion between the products such as to inspire the inquiry itself." *Nora Beverages, Inc. v. Perrier Grp., Inc.*, 269 F.3d 114, 124 (2d Cir. 2001) (affirming district court's finding of no genuine issue of material fact on confusion).[10]

Even if these inquires did reflect confusion, they would be irrelevant because Hermès has not produced any facts indicating that they came from prospective *consumers* of Rothschild's expensive artworks. *See* Opp. at 14; *Lang*, 949 F.2d at 583 (declining to consider misdirected phone calls as evidence of actual confusion where the plaintiff had "not shown that these misdirected callers were prospective purchasers" of her products); *id.* at 582-83 ("trademark infringement protects only against mistaken purchasing decisions and not against confusion generally"); *Bonilla*, 2014 WL 12661621, at *14 (inquiries by non-consumers did not create material issue of fact).

   **4.**   ***Statements by journalists and unidentified individuals online.*** Likewise, scattered statements by journalists and unidentified individuals on social media, *see* RHCS ¶¶ 150-161, do not reflect likely consumer confusion. *See, e.g., MGFB Properties, Inc. v. Viacomcbs Inc.*, No. 5:19cv257-RH-MJF, 2021 WL 4843905, at *7 (N.D. Fla. Sept. 22, 2021)

---

[10] This Court considered a similar question in *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612 (S.D.N.Y. 2016), which held that "inquiries by fashion industry professionals as to whether LVL XIII had collaborated with LV" were not probative of confusion. *Id.* at 672. As the Court also pointed out, people with a "pre-established personal or business relationship" with either of the parties were "not representative of the typical consumer." *Id.*; *see also Bonilla v. H&M Hennes & Mauritz L.P.*, No. 12 Civ. 6919 (LAK)(MHD), 2014 WL 12661621, at *14 (S.D.N.Y. Apr. 16, 2014) (R&R) (questions about whether fashion collaboration existed did not show confusion), *adopted*, No. 12 Civ. 6919 (LAK), 2014 WL 12661274 (S.D.N.Y. Jun. 10, 2014); *Reply All Corporation v. Gimlet Media, LLC*, 843 Fed. Appx. 392, 398 (2d Cir. 2021) (same as *Nora*).

(applying *Rogers* and holding that social media evidence was unpersuasive because actionable confusion requires that consumer decisions be affected); *Medici Classics Productions, LLC v. Medici Group, LLC*, 683 F. Supp. 2d 304, 312-13 (S.D.N.Y. 2010) (inquiries and media misattribution not probative of likely consumer confusion).[11]

Hermès' non-consumer evidence falls short of the higher standard imposed by *Rogers*. Fleeting non-consumer confusion does not outweigh artists' First Amendment rights to depict, question, and comment on the world around them. Given the undeniable sophistication of reasonable purchasers of these expensive artworks, Hermès' evidence does not create a material issue. *See Easy Spirit, LLC v. Skechers U.S.A., Inc.*, 571 F. Supp. 3d 185, 213 (S.D.N.Y. 2021) (even $70 would produce "thoughtful" purchases); *LVL XIII Brands*, 209 F. Supp. 3d at 676 n.105, 688 (highlighting consumer sophistication in balancing factors where sneakers retailed for $495 to $1,200); Rothschild Br. at 23.[12]

## CONCLUSION

For the foregoing reasons, Hermès has failed to raise any genuine issue of material fact, and the Court should grant Rothschild's motion for summary judgment.

---

[11] These statements aren't evidence of confusion even in non-*Rogers* cases. *Two Hands IP LLC v. Two Hands America, Inc*., 563 F. Supp. 3d 290, 307 (S.D.N.Y. 2021) (inquiries and mistaken social "tagging" of plaintiff not probative of consumer confusion); *Reply All Corp. v. Gimlet Media, Inc*., No. 15-CV-4950 (WFK)(PK), 2020 WL 13536220, at *6 (E.D.N.Y. Feb. 12, 2020) ("Misdirected social media posts and unsolicited emails praising Defendant's podcast are evidence of general confusion and not mistaken purchasing decisions, damage to goodwill, or loss of control of reputation."); *GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*, 769 F. Supp. 2d 630, 644-45 (S.D.N.Y. 2011) (statements from non-purchasers not probative); *W.W.W. Pharm. Co. v. Gillette Co*., 808 F. Supp. 1013, 1020-21 (S.D.N.Y. 1992) (same); *Grubhub Inc. v. Kroger Co.*, No. 1:21-cv-05312, 2022 WL 2774986, at *5 (N.D. Ill. May 25, 2022) (anonymous social media posts not evidence of actual confusion).
[12] *See also Groeneveld Transport Efficiency, Inc. v. Lubecore Intern., Inc.*, 730 F.3d 494, 509-10 (6th Cir. 2013) (one of two key factors making confusion unlikely was that product cost $2500, requiring consumer sophistication); *Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 424 (9th Cir. 1999) (same, $800-$2600).

Dated:  October 28, 2022

Respectfully Submitted,

/s/ *Rhett O. Millsaps II*
Rhett O. Millsaps II
Christopher J. Sprigman
Mark P. McKenna (*pro hac vice*)
Rebecca Tushnet
LEX LUMINA PLLC
745 Fifth Avenue, Suite 500
New York, NY  10151
(646) 898-2055
rhett@lex-lumina.com

*Attorneys for Defendant Mason Rothschild*