**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HERMÈS INTERNATIONAL and HERMÈS OF
PARIS, INC.,

                      Plaintiffs,

          -against-

MASON ROTHSCHILD,

                   Defendant.

CIVIL ACTION NO.

22-CV-00384 (JSR)

## REDACTED OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE

**BAKER & HOSTETLER LLP**

Gerald J. Ferguson, Esq.
Oren J. Warshavsky, Esq.
Jason S. Oliver, Esq.
Jessica H. Fernandez, Esq.
Francesca A. Rogo, Esq.
45 Rockefeller Plaza, 14th Floor
New York, NY 10111
Telephone:   212.589.4200
Facsimile:   212.589.4201

Deborah A. Wilcox, Esq. (*pro hac vice*)
Key Tower
127 Public Square
Cleveland, OH 44114
Telephone:   216.621.0200

Lisa Bollinger Gehman, Esq. (*pro hac vice*)
1735 Market Street
Philadelphia, PA 19103
Telephone:   215.568.3100

**Table of Contents**

**Page**

ARGUMENT ........................................................................................................................1

    I.      SOCIAL MEDIA POSTS (EXS. 42, 99, 100)........................................................1

           A.     Rothschild's Motion Concerning Exhibit 42 is Meritless............................1

           B.     Exhibits 99 and 100 Do Not Constitute Hearsay ........................................2

           C.     The "State of Mind" Hearsay Exception Applies to the Social Media
                Posts ...........................................................................................................3

    II.     BORIANA GUIMBERTEAU .............................................................................9

    III.    POST-LITIGATION STATEMENT BY ROTHSCHILD (EX. 288)..................13

           A.     Proposed Exhibit 288 is Relevant to Rothschild's "Good Faith" .............14

           B.     Proposed Exhibit 288 May Be Used to Challenge Rothschild's
                Credibility ................................................................................................16

    IV.    CERTAIN COMMUNICATIONS BY ROTHSCHILD (EX. 285) .....................17

           A.     Proposed Exhibit 285 is Relevant to Rothschild's "Good Faith" .............18

           B.     Proposed Exhibit 285 May Be Used to Challenge Rothschild's
                Credibility ................................................................................................19

CONCLUSION.................................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Eagle Outfitters, Inc. v. Payless Shoesource, Inc.*,
  No CV 07-1675 (ERK) (VVP) 2007 WL 9723295 (E.D.N.Y. Dec. 20, 2007) ........................5

*Berkshire Fashions, Inc. v. Sara Lee Corp.*,
  725 F. Supp. 790 (S.D.N.Y. 1989), *aff'd sub nom. Berkshire Fashions v. Sara
  Lee*, 904 F.2d 33 (2d Cir. 1990) ...................................................................................9

*Best Cellars, Inc. v. Wine Made Simple, Inc.*,
  320 F. Supp. 2d 60 (S.D.N.Y. 2003) ...........................................................................3

*Brown v. Henderson*,
  257 F.3d 246 (2d Cir. 2001) ......................................................................................14

*Bulman v. 2BKCO, Inc.*,
  882 F. Supp. 2d 551 (S.D.N.Y. 2012) .........................................................................10

*Candy Craft Creations, LLC v. Gartner*,
  No. CV 212-091, 2015 WL 7738069 (S.D. Ga. Dec. 1, 2015) ......................................16

*Canes Bar & Grill of S. Fla., Inc. v. Sandbar Bay, LLC*,
  343 F. Supp. 3d 1236 (S.D. Fla. 2018) ........................................................................6

*Chester Barrie, Ltd. v. Chester Laurie, Ltd.*,
  189 F. Supp. 98 (S.D.N.Y. 1960) ...............................................................................10

*Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*,
  754 F.2d 591 (5th Cir. 1985) .....................................................................................10

*Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*,
  111 F.3d 993 (2d Cir. 1997) ....................................................................................3, 5

*GTFM, Inc. v. Solid Clothing, Inc.*,
  215 F. Supp. 2d 273 (S.D.N.Y. 2002) .........................................................................10

*Hope Organics LLC v. Preggo Leggings LLC*,
  No. 21-CV-2416 (TMR), 2021 WL 5919367 (S.D.N.Y. Dec. 15, 2021) ..........................5, 7

*Khan v. Addy's BBQ LLC*,
  419 F. Supp. 3d 538 (E.D.N.Y. 2019) .........................................................................3

*Louis Vuitton Malletier, S.A. v. Hyundai Motor Am.*,
  No. 10 CIV. 1611 PKC, 2012 WL 1022247 (S.D.N.Y. Mar. 22, 2012) .............................6

ii

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
   209 F. Supp. 3d 612 (S.D.N.Y. 2016), a*ff'd sub nom.*
   720 F. App'x 24 (2d Cir. 2017) ........................................................................11

*Museum of Mod. Art v. MOMACHA IP LLC*,
   339 F. Supp. 3d 361 (S.D.N.Y. 2018)............................................................6, 12

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*,
   269 F.3d 114 (2d Cir. 2001)..............................................................................11

*OraLabs, Inc. v. Kind Grp. LLC*,
   No. 13-CV-00170-PAB-KLM, 2015 WL 4538444 (D. Colo. July 28, 2015)..........................5

*Polaroid Corp. v. Polarad Elecs. Corp.*,
   287 F.2d 492 (2d Cir. 1961)...............................................................2, 7, 14, 18

*Roadway Exp., Inc. v. Roadway Motor Plazas, Inc.*,
   No. 86-CV-1406, 1990 WL 120945 (N.D.N.Y. Aug. 16, 1990) ............................10

*Stone Brewing Co., LLC v. Millercoors, LLC*,
   No. 3:18-CV-00331-BEN-LL, 2021 WL 63139 (S.D. Cal. Jan. 7, 2021)..............................16

*Tri-Star Pictures, Inc. v. Unger*,
   14 F. Supp. 2d 339 (S.D.N.Y. 1998)....................................................................9

*Two Hands IP LLC v. Two Hands America, Inc.*,
   563 F.Supp.3d 290 (S.D.N.Y. 2021)....................................................................8

*United States v. Cedeno*,
   644 F.3d 79 (2d Cir. 2011).............................................................................17, 19

*Virgin Enters. Ltd. v. Nawab*,
   335 F.3d 141 (2d Cir. 2003)..............................................................................11

**Statutes**

15 U.S.C. § 1116(a) .............................................................................................8

**Rules**

Fed. R. Evid. 607 ........................................................................................16, 19

Fed. R. Evid. 608 ..................................................................................... *passim*

Fed. R. Evid. 609 ........................................................................................16, 19

Fed. R. Evid. 701 ............................................................................................12

Fed. R. Evid. 802(d)(2) ........................................................................................2

Fed. R. Evid. 803(3)....................................................................................................4

**Other Authorities**

4 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 24:117
    (5th ed. 2022)....................................................................................................8

29 Wright & Miller, *Fed. Prac. & Proc. Evid.* § 6253 (2d ed. 2022) ...........................................13

Pursuant to Judge Rakoff's Individual Rule 9, Plaintiffs Hermès International and Hermès of Paris, Inc. (collectively, "Hermès") respectfully submit this opposition to the motions in limine filed by Defendant Mason Rothschild ("Rothschild") to exclude: (1) social media posts; (2) the testimony of Boriana Guimberteau; (3) a post-litigation statement by Rothschild; and (4) certain communications by Rothschild. These are addressed in order.

## ARGUMENT

## I.      SOCIAL MEDIA POSTS (EXS. 42, 99, 100)

Hermès's corporate social media in proposed Exhibit 42 is wholly unrelated to Rothschild or METABIRKINS and should have never been the subject of a motion in limine. Proposed Exhibits 99 and 100 relate to Rothschild's curated METABIRKINS social media, do not constitute hearsay and, even if they did, are admissible as state-of-mind evidence showing actual confusion and association among prospective consumers. Accordingly, Rothschild's motion in limine to exclude such exhibits and all related testimony should be denied in its entirety.

### A.      Rothschild's Motion Concerning Exhibit 42 is Meritless

Rothschild's motion in limine seeks to exclude proposed social media "evidence of actual confusion regarding the source of Rothschild's MetaBirkins NFT artworks." (Rothschild Br. 1). However, proposed Exhibit 42 has nothing to do with either Rothschild or METABIRKINS NFTs and Rothschild's motion should be denied on that basis alone. On its face, proposed Exhibit 42 states "Instagram: 4 comments on the post by lucas zanotto which, as far as I know, have no connection to metabirkin but IP." Jan. 13, 2023 Decl. of Rhett O. Millsaps II ("Millsaps Decl."), Ex. A at HERMES_0020988. It's unclear if Rothschild actually reviewed this exhibit. None of his arguments or assertions address any facts related to this exhibit. Rothschild moves to exclude this exhibit for actual confusion. It's a pity that Rothschild failed to confirm his tortured understanding as this exhibit is completely unrelated to "actual confusion." Rather, Hermès will

offer proposed Exhibit 42 to show that users commenting on Hermès's own Instagram account already associate Hermès with NFTs in general, and ask Hermès about NFT plans.  This is an important "bridging the gap" factor for the jury to consider in conducting its likelihood of confusion analysis under *Polaroid*.  *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495–96 (2d Cir. 1961).  Thus, as Rothschild fails to understand this exhibit and because Hermès's use of this exhibit is outside of the scope of the motion in limine, the jury should be permitted to review this relevant evidence.

  **B.**  **Exhibits 99 and 100 Do Not Constitute Hearsay**

Exhibit 99 is an export of an Instagram account, set up by Rothschild for his METABIRKINS NFTs—it is the METABIRKINS Instagram account.  Likewise, Exhibit 100 is the export of a Twitter account, set up by Rothschild for his METABIRKINS NFTs—it is the METABIRKINS Twitter account.  Accordingly, these social media reports concerning the METABIRKINS NFTs are Rothschild's own social media accounts, which he controls.  As the Court is well aware, the gravamen of Hermès's case is federal trademark infringement, and this claim is based on Rothschild's use of the METABIRKINS mark in commerce.  Rothschild's promotion of the METABIRKINS NFTs were almost exclusively (if not exclusively) through social media, and mostly through accounts that he controls.  As Rothschild does not dispute, these exhibits are copies of the social media accounts. Thus, Exhibits 99 and 100 are not some random account; they are how Rothschild marketed the METABIRKINS NFTs, both before and after they were minted.

Though the social media reports in proposed Exhibits 99 and 100 include out-of-court statements, two of those social media reports include a number of relevant posts by Rothschild himself, and thus should qualify as an exception under Rule 802(d)(2) or as an admission.  Hermès should also be allowed to use the comments posted by others to Rothschild's social media accounts

used to promote the METABIRKINS NFTs.  While these comments are out-of-court statements, Hermès is ***not*** offering them to prove the truth of the matter asserted.  Rather, Hermès is offering the social media reports for the fact that they exist on Rothschild's own curated social media accounts.  These exhibits are not hearsay if they are not being offered for the truth of the matter asserted, rather than that they existed (without deletion or response) on Rothschild's social media accounts.  *Khan v. Addy's BBQ LLC*, 419 F. Supp. 3d 538, 548 n.7 (E.D.N.Y. 2019) ("anonymous internet reviews do not constitute hearsay"); *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1003–04 (2d Cir. 1997) (noting "no hearsay problem" where testimony involving consumer complaints as to price information submitted to the wrong company "was not offered to prove that Fun-Damental was actually selling to some retailers at lower prices, but was probative of the declarant's confusion"); *see also*, *Best Cellars, Inc. v. Wine Made Simple, Inc.*, 320 F. Supp. 2d 60, 76 n.4 (S.D.N.Y. 2003) (considering evidence obtained from questions asked by unidentified consumers and noting "the mere fact that the declarant's statements were made may be probative of customer confusion").

###   C.   The "State of Mind" Hearsay Exception Applies to the Social Media Posts

It is important to consider that Rothschild curates his social media content.  He also knows how to delete social media posts by him and comments by others.  In fact, Rothschild took affirmative steps days before summary judgment papers were due to delete most of his @masonrothschild Twitter history, including 829 Tweets.  ECF Nos. 72-112, 72-147, 77 at 12, n. 5.  Yet again, on January 22, 2023, the eve of the motion in limine opposition filings, Rothschild deleted most of his @masonrothschild Twitter history, including 258 Tweets. Jan. 23, 2023 Decl. of Jessica H. Fernandez ("Fernandez Decl."), Exs. 1–2.   Through his counsel, Rothschild has asserted his continuing right to delete social media posts during active litigation.  ECF No. 97-4.  During the periods during which Rothschild chose not to delete (or respond to) posts and comments

on his social media accounts, he did so with knowledge.  This conduct was part of his branding and part of the accused conduct here.

Even if the social media posts in proposed Exhibits 99 and 100 are hearsay being offered for the truth of the matter asserted, the statements contained therein fall within the state of mind exception to the hearsay rule.  *See* Fed. R. Evid. 803(3).  The very nature of the comments on Rothschild's social media accounts indicate that the comments were created by actual or potential customers of the METABIRKINS NFTs. Instagram comments in Exhibits 99 are contemporaneous records showing a confused state of mind in real time in response to Rothschild's posts concerning METABIRKINS NFTs: For example, on 11/20/2021 a Instagram user commented: "And also gm to @wednesdaysummers for putting me on! @bronze_bombshel since you're the fashion history god, what do you think about Birkins (and fashion generally) entering the metaverse EYEBALL EMOJI". Jan. 13, 2023 Millsaps Decl., Ex. B at HERMES_0008828. Another user on 12/4/2021 stated: "Ok, I have a couple Birkins, but NFTs? This is too awesome!!!" *Id*. at HERMES_0008689.  There is also evidence that prospective and actual METABIRKINS NFTs purchasers were confused because they stated that they were scammed when the NFTs did not come with a real bag. *See, e.g.*, 1/14/2022 "Where is my purse! You guys scammed me!" *Id*. at HERMES_0008398, HERMES_0008405.  Exhibit 100 includes Twitter posts with additional examples of confusion: 11/17/2021: "Can't wait to own a birkin,"  Millsaps Decl., Ex. C at HERMES_0009598; 11/28/2021: "Birkin N[F]T is the future!!!!"  *Id*. at HERMES_0009550. Another user also tweeted, which Rothschild then retweeted from the METABIRKINS Twitter, "You know what comes after the avatar/pfp frenzy? Metaverse fashion. Dressing those metaverse avatars. Digital outfits and accessories. Big brands are already experimenting with NFTs. Be early. @MetaBirkins Whitelisting now on discord [link] Minting soon."  *Id*. at HERMES_0009435–36.

Hermès is offering these statements to prove both that Rothschild chose to keep these posts on the METABIRKINS accounts and the confused state of mind of the declarants. *Fun-Damental Too*, 111 F.3d at 1003–04 (in trade dress infringement action, employee testimony about customers' complaints was admissible to show confusion of trade dress of toy bank and competitor's product because it went to declarant's state of mind); *see also Am. Eagle Outfitters, Inc. v. Payless Shoesource, Inc.*, No CV 07-1675 (ERK) (VVP) 2007 WL 9723295, at *12 (E.D.N.Y. Dec. 20, 2007) ("[T]he hearsay nature of this evidence is not an issue because the testimony is not offered to prove the truth of the customer's assertion that there is a connection or affiliation between the parties, but only to prove the confused state of mind of the customer.") Further, the cited statements exhibit more than mere assertions of similarity or reminders of Hermès, and are relevant to establishing actual confusion. Thus, uncorrected social media comments made on Rothschild's METABIRKINS Instagram and Twitter accounts are relevant, probative forms of evidence as to the confused state of mind of the declarants. *OraLabs, Inc. v. Kind Grp. LLC*, No. 13-CV-00170-PAB-KLM, 2015 WL 4538444, at *4 n.7 (D. Colo. July 28, 2015) ("The Twitter posts that Kind Group provides are even more direct than accounts of third-party statements. . . . These statements are not hearsay and are properly considered as evidence of actual confusion.").

Rothschild finds no support in the Second Circuit for his argument that "[t]he lack of opportunity for cross-examination attendant to the admission of pseudonymous internet posts means that there will be no opportunity to delve into or clarify the sincerity and meaning of such offhand comments." (Rothschild Br. 3). The law is clear that "courts in this Circuit have accepted online customer reviews and comments on social media as anecdotal evidence of actual confusion" in Lanham Act cases. *Hope Organics LLC v. Preggo Leggings LLC*, No. 21-CV-2416 (TMR),

2021 WL 5919367, at *8 (S.D.N.Y. Dec. 15, 2021); *Museum of Mod. Art v. MOMACHA IP LLC*, 339 F. Supp. 3d 361, 378–79 (S.D.N.Y. 2018) (recognizing that "social media posts" and internet "comment[s]" were credible evidence of "actual confusion" in *Polaroid* analysis); *Louis Vuitton Malletier, S.A. v. Hyundai Motor Am.*, No. 10 CIV. 1611 PKC, 2012 WL 1022247, at *23 (S.D.N.Y. Mar. 22, 2012) (recognizing that Twitter postings "reflect some actual confusion"); *see also Canes Bar & Grill of S. Fla., Inc. v. Sandbar Bay, LLC*, 343 F. Supp. 3d 1236, 1246 (S.D. Fla. 2018) ("social media posts" were "evidence of actual confusion, as they show the declarants', or in this case, the social media posters' state of mind").

The presence and extent of Rothschild's marketing of the METABIRKINS NFTs on social media increases the relevance and probative value of these exhibits.  Rothschild is, by his own account, a ██████████ Fernandez Decl., Ex. 3 at Rothschild014957.  Rothschild extensively marketed the METABIRKINS NFTs using social media platforms including the METABIRKINS Twitter, METABIRKINS Instagram, and METABIRKINS Discord.  Millsaps Decl., Exs. B–C; Fernandez Decl., Ex. 4.  Rothschild controls and curates all social media accounts for the METABIRKINS NFTs and uses social media as his platform to directly engage with the METABIRKINS NFT community.  For example, Rothschild used the METABIRKINS Discord community to provide updates on his plans for the METABIRKINS NFTs brand as well as to announce rewards for his most loyal METABIRKINS NFT holders and early adopters of the METABIRKINS Discord server.  Fernandez Decl., Ex. 5.  Thus, people responding to those posts are relevant.  Rothschild may argue about the importance of those statements, but they certainly show how people were reacting on his social media accounts.  Rothschild has shown that he knows how to post, respond, and engage with others on social media.

Rothschild admitted—both before this lawsuit and then at his deposition—that confusion and controversy would help him and the METABIRKINS NFTs brand.  Fernandez Decl., Ex. 6 at Rothschild008526; Ex. 7 at 184:14–194:22.  Rothschild was aware of the existence of consumer confusion on social media and █████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ Fernandez Decl., Ex. 8. ████████████████████████ Rothschild successfully received the very type of reactions he now seeks to exclude on the METABIRKINS social media accounts.  Rothschild could have corrected confusion on social media and/or deleted those posts, but remained silent as mounting consumer confusion was good for his business.  To the extent there was confusion evident on the social media accounts that he controlled, it is evidence of his bad faith adoption and maintenance of the METABIRKINS mark.  Rothschild's good faith (or lack thereof) is an important factor for the jury to consider in conducting its likelihood of confusion analysis.  *Polaroid Corp.*, 287 F.2d at 495–96.  Thus, the jury should be presented with this evidence, all of which was *always* under Rothschild's control.

Without support, Rothschild attempts to draw a line between evidence of anonymous consumer confusion accepted in email and phone format and the similar expressions of confusion and association on social media.  (Rothschild Br. 2).  In the context of modern consumer interaction over social media, these statements are akin to the traditional consumer outreaches via emails and phone calls and represent the state of mind of the prospective consumer of METABIRKINS NFTs as they were viewing the METABIRKINS NFTs content posted by Rothschild.  *Hope Organics*, 2021 WL 5919367, at *8 (noting "it is not extraordinary in today's Internet age for consumers to

communicate with brands in the form of online comments and reviews, and for parties to rely on such comments to present any evidence of actual confusion").

Hermès brought claims for dilution under the Lanham Act and the laws of New York. Social media posts or other communications that reflect inquiries about a relationship between the METABIRKINS NFTs and Hermès's famous and well-known BIRKIN and HERMÈS marks are also relevant evidence of actual association. Accordingly, the evidence in Exhibits 99 and 100 is also probative of actual association supporting its dilution claims. *See* 4 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 24:117 (5th ed. 2022) ("'Association' in the world of anti-dilution law means that the ordinary person on encountering the junior user's mark will *think of* the senior user's famous mark. Or in other words, the accused mark will call to mind the senior user's famous mark. . . . That person is not confused, but in that person's mind there is the kind of 'association' that is one necessary ingredient for a case of likely dilution.") (emphasis in original). Here, the above cited examples of social media comments exhibited evidence of state of mind concerning actual association between Hermès as the senior user of the BIRKIN Mark and Trade Dress and Rothschild; they are wholly relevant to the issues to be tried.

As stated above, Rothschild was aware of confusion on social media. Because confusion is good for business, Rothschild did not change the METABIRKINS name causing Hermès to lose control over its reputation in the rapidly growing metaverse. In addition to the presumption of irreparable harm that arises from such a loss of control[1], Hermès has provided testimony and

---

[1] The Trademark Modernization Act of 2020 ("TMA") provides that a finding of a likelihood of confusion creates a presumption of irreparable harm. *Two Hands IP LLC v. Two Hands America, Inc.*, 563 F.Supp.3d 290, 300 (S.D.N.Y. 2021). Specifically, the TMA amended Section 34(a) of the Lanham Act to clarify that a rebuttable presumption of irreparable harm applies upon a finding of infringement in the permanent injunction context or upon a finding of likelihood of success on the merits in the context of preliminary injunctive relief. 15 U.S.C. § 1116(a).

evidence, and will do so at trial, that Rothschild has harmed Hermès's goodwill and its capacity to exploit and to use its BIRKIN trademark and trade dress in the metaverse and in connection with NFTs.

For the foregoing reasons, Exhibits 42, 99, and 100 are relevant to Hermès's trademark infringement and dilution claims. Hermès's evidence in these exhibits is not hearsay and, even if it were, is admissible as state-of-mind evidence showing actual confusion and association among prospective consumers. Accordingly, Rothschild's Motion to Exclude Social Media Posts should be denied.

## II.     BORIANA GUIMBERTEAU

The testimony of Boriana Guimberteau should not be excluded because it is relevant evidence of actual confusion, one of the *Polaroid* factors in the likelihood of confusion test, a central issue to be tried in this case; and is not likely to confuse, mislead, or unduly prejudice the jury.

Evidence of actual confusion does not need to be limited to potential or actual consumers of METABIRKINS NFTs for it to be relevant and probative of likelihood of confusion. Courts have found that confusion of non-purchasers, including trade experts, professionals, journalists, media, wholesalers, and retailers, can be relevant in determining likelihood of confusion. *See, e.g.*, *Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 356–57 (S.D.N.Y. 1998) (finding that proffered "evidence of actual confusion is significant" where sophisticated journalists and film reviewers wrote articles expressly identifying defendant's film as a sequel to plaintiff's film); *Berkshire Fashions, Inc. v. Sara Lee Corp.*, 725 F. Supp. 790, 796–97 (S.D.N.Y. 1989), *aff'd sub nom. Berkshire Fashions v. Sara Lee*, 904 F.2d 33 (2d Cir. 1990) ("[A]ctual trade confusion is highly probative on the question of whether a likelihood of confusion exists, generally, in the marketplace, since wholesalers and retail dealers may be deemed to be more sophisticated about

the origins and sources of product lines than average consumers."); *GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 297 (S.D.N.Y. 2002) (finding wholesaler's confusion as "persuasive evidence of more widespread confusion by retail customers," and wholesaler is a quintessential sophisticated buyer whose "confusion speaks volumes about the likely confusion of less informed consumers"); *Chester Barrie, Ltd. v. Chester Laurie, Ltd.*, 189 F. Supp. 98, 102 (S.D.N.Y. 1960) (considering evidence of actual confusion among persons engaged in the retail clothing business); *Roadway Exp., Inc. v. Roadway Motor Plazas, Inc.*, No. 86-CV-1406, 1990 WL 120945, at *6 (N.D.N.Y. Aug. 16, 1990) ("Mistakes made by consumers, however, are not the only evidence of confusion the court considers."); *Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 597 (5th Cir. 1985) (finding trial court's belief that only actual confusion on the part of the ultimate purchasers was relevant was error and that evidence of actual confusion can be based on professionals, including distributors, retailers, and trade show visitors).  Ms. Guimberteau is a confused professional commenting on  the emergence of NFTs including in the fashion realm, and is thus relevant and can be considered.

While courts may give the greater weight to actual confusion of purchasers or potential buyers, this does not mean that actual confusion of non-purchasers is completely irrelevant to the analysis.  For example, Rothschild cites *Bulman v. 2BKCO, Inc.*, 882 F. Supp. 2d 551, 562 (S.D.N.Y. 2012), selectively quoting from the decision that "courts must focus on whether prospective purchaser[s]—and not other industry members or general members of the public—are likely to be received."  (Rothschild Br. 6).  The *Bulman* court nevertheless considered instances of confusion by reporters and the media (i.e. industry members and general members of the public) in conjunction with other evidence of confused purchasers.  882 F. Supp. 2d at 562.  Confusion by non-prospective purchasers, such as Ms. Guimberteau, is thus clearly still relevant to the jury's

assessment of whether there is a likelihood of confusion. Other courts have found such inquiries to be evidence of actual confusion. *See, e.g.*, *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 151 (2d Cir. 2003) (finding district court correctly concluded that inquiries about whether defendant's kiosk was affiliated with plaintiff's stores was evidence of actual confusion).

The other case relied upon by Rothschild, *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 672 (S.D.N.Y. 2016), a*ff'd sub nom.* 720 F. App'x 24 (2d Cir. 2017) is also distinguishable.  In *LVL XIII Brands*, the court found that individuals—nine of twelve which had pre-established or business relationships with LVL XIII—inquiring into whether or not there was a relationship between LVL XIII and Louis Vuitton were not probative of actual confusion. *Id.* citing *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 124 (2d Cir. 2001).

Here, Ms. Guimberteau had no pre-existing relationship with Hermès (Millsaps Decl., Ex. D at 7:9–15, 19:10–15, 20:15–18) like the individuals in LVL XIII did.  She did not simply question whether the METABIRKINS NFTs were made by Hermès but rather expressly proclaimed in a presentation that the METABIRKINS NFTs were "made with Hermès or by Hermès" (Fernandez Decl., Ex. 9 at 13:24–14:6), thus evidencing her actual confusion.

Rothschild further attempts to argue that Ms. Guimberteau's confusion is irrelevant because it is based on "naked assumption," but all confusion is inevitably based on assumption, and Ms. Guimberteau's own testimony shows that her assumptions were not "naked," but rather were based on the use of BIRKIN Mark and handbag design in the context of other luxury brands offering NFTs.  Ms. Guimberteau, an intellectual property attorney, was making these comments in connection with a presentation she was giving to international intellectual attorneys.  Ms. Guimberteau testified she came to believe there was an affiliation between Hermès and the METABIRKINS through research and articles read online (Millsaps Decl., Ex. D at 10:19–23),

the same way any other consumer could have come to learn about the METABIRKINS and concluded "it was related to Hermès, it was necessarily with Hermès' agreement." *Id.* at 10:24–11:7. She formed this belief based on the use of the BIRKIN mark and shape of the handbag images associated with the METABIRKINS NFTs (*Id.* at 28:24–29:9), and the fact that when the confusion took place, "there were a lot of fashion and luxury houses that launched NFTs . . . And for me, Hermès was also a luxury house that also launched a NFT. It was part of this movement." Fernandez Decl., Ex. 9 at 14:5–19.

While Rothschild attempts to further discredit the relevance of Ms. Guimberteau's testimony by alluding that her confusion may stem from French law, he can point to no evidence or testimony from Ms. Guimberteau to prove this insinuation. Rothschild had the opportunity to cross examine Ms. Guimberteau, and did in fact do so, but failed to inquire whether French law played any role in Ms. Guimberteau's confusion regarding the affiliation between Hermès and the METABIRKINS NFTs. Just because Ms. Guimberteau is an attorney does not mean her confusion is based on French law, somehow not relevant, or akin to expert testimony. *See Museum of Mod. Art*, 339 F. Supp. 3d at 378–79 (considering an email the plaintiff received from an attorney who thought "'the style of the font and the display of the [infringer's] name looked so much like the familiar [plaintiff's] logo' that he needed to confirm whether [the infringer] was affiliated with the [plaintiff]" as anecdotal evidence of actual confusion). Rothschild's focus on Ms. Guimberteau being a French lawyer with knowledge of the fashion industry and NFTs is a red herring. Ms. Guimberteau is not testifying as a lawyer nor providing testimony in the form of a legal conclusion, but as a lay witness to provide anecdotal evidence regarding her own subjective confusion as to the affiliation between Hermès and the METABIRKINS. *See* Fed. R. Evid. 701 advisory committee's note ("[T]he distinction between lay and expert witness testimony is that lay testimony

results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field.") (quotation marks and citations omitted).  Just because someone is knowledgeable about an industry or is a professional in that industry, does not mean their testimony is automatically that of an expert or they are unable to testify as a lay witness.  *See* 29 Wright & Miller, *Fed. Prac. & Proc. Evid.* § 6253 (2d ed. 2022) ("the mere fact that a witness has specialized knowledge and could qualify as an expert witness does not mean that the witness is, in fact, testifying as an expert.").

Rothschild further conclusory states that because Ms. Guimberteau is a lawyer her testimony poses the risk of confusing, misleading, on unduly prejudicing the jury, but cites no authority to support this position.  As noted above, the fact that someone may have specialized knowledge in a certain area does not mean that they can't testify as a lay witness or that a jury is incapable of viewing them as a lay witness.  Further, a simple and appropriate instruction to the jury regarding Ms. Guimberteau's testimony being that of a lay witness could be provided to prevent any potential confusion or prejudice.

For the reasons stated above, Ms. Guimberteau's testimony is relevant to the issue of likelihood of confusion and not likely to confuse, mislead, or unduly prejudice the jury. Accordingly, Rothschild's Motion to Exclude Ms. Guimberteau's testimony should be denied.

## III.      POST-LITIGATION STATEMENT BY ROTHSCHILD (EX. 288)

Rothschild's third motion in limine seeks to exclude a ███████████████

████████████████████████████████████████████████

████████████████████████  For the reasons discussed below, Hermès's proposed Exhibit 288 and any related testimony should not be excluded because it is relevant to Rothschild's bad faith and is probative of the trademark infringement and dilution issues in this case.  In addition, such

evidence may be used on cross examination to challenge Rothschild's credibility.  Fed. R. Evid. 608(b)(1).

   A.   **Proposed Exhibit 288 is Relevant to Rothschild's "Good Faith"**

   As this lawsuit was underway, ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ Fernandez Decl., Ex. 7 at 382:19–

383:17; Millsaps Decl., Ex. E at Rothschild010392, Rothschild10401–02.

   Rothschild's motion in limine seeks to re-characterize this exhibit and statement as a

████████████████████████████████████████████████ (Rothschild Br. 7).  This is

improper.  *See, e.g.*, *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("[F]actual allegations

that might otherwise defeat a motion for summary judgment will not be permitted to do so when

they are made for the first time in the plaintiff's affidavit opposing summary judgment and that

affidavit contradicts her own prior deposition testimony.")  Despite this eleventh-hour re-

characterization, Rothschild did not dispute Hermès's proposed Exhibit 288 and his associated

deposition testimony during summary judgment briefing.  Fernandez Decl., Ex. 7 at 382:19–

383:17.  Likewise, he admitted that this was simply untrue in responding to Hermes's Rule 56.1

Statement.  ECF No. 86 ¶ 246.  Rothschild's "good faith" is an important factor for the jury to

consider in conducting its likelihood of confusion analysis.  *Polaroid*, 287 F.2d at 495–96.

Proposed Exhibit 288 is circumstantial, indirect evidence that is probative of Rothschild's state of

mind concerning his continued bad faith intent to profit from Hermès's trademarks by adopting

the METABIRKINS mark.  It is an extension of ████████████████████████████████

████████████████████████ when the BIRKIN name was adopted and the METABIRKINS NFTs were

minted.  Such testimony is also relevant to Rothschild's bad faith underpinning Hermès's damages

14

and irreparable harm.  Finally, such testimony also goes to Rothschild's defense here: if Rothschild believed he was simply exercising his First Amendment rights, ███████████████████

██████████████████████████████████████████████████████████

████████████  Whether this is puffery or not, Rothschild's statement is relevant to his bad faith under *Polaroid* and this evidence should be examined by the jury.

Undisputed circumstantial evidence concerning Rothschild's ████  ████  ███████

█████████████████████████  cannot be highly prejudicial or confusing to the jury.  It is a plain statement by Rothschild.  The exhibit and related testimony are straightforward and relate directly to Rothschild's intent as well as his glib approach to Hermès's intellectual property rights.  Likewise, the undisputed evidence Hermès seeks to introduce will not unduly delay the resolution of this case and would, at most, take minutes to present to the trier of fact.

It must be remembered that Rothschild did not cease using the METABIRKINS trademark.  To the contrary, he has maintained the social media accounts at Instagram, Discord, and Twitter— even until today.  The METABIRKINS.com website is still up, and still features the METABIRKINS NFTs (and nothing else).  Thus, Rothschild's conduct is ongoing today, well after the lawsuit commenced.  Hermès's position is that Rothschild's continued conduct and bad faith intent remain highly relevant to the *Rogers* and *Polaroid* analyses concerning Rothschild's decision to adopt and continue using the METABIRKINS name.  There is no basis for suggesting that evidence arising after the lawsuit is somehow less relevant than that which arose prior.  For example, months after the litigation began, news publications including *Challenges* were still confused as to the origin of the METABIRKINS NFTs.  Fernandez Decl., Ex. 10.  Rothschild obviously understands this and, other than two pieces of evidence, thus does not seek to exclude related evidence of post-litigation conduct or confusion.

15

Rothschild points to no case law where courts have categorically rejected admissibility of post-litigation conduct ***of the defendant*** in a trademark infringement case.  Rothschild's reliance on *Candy Craft Creations, LLC v. Gartner*, No. CV 212-091, 2015 WL 7738069 (S.D. Ga. Dec. 1, 2015) is misplaced.  In *Candy Craft Creations*, the plaintiff sought introduction of evidence of litigation discovery misconduct claims to support defendant's state of mind as well as in support of an attorney's fee claim.  2015 WL 7738069, at *1–3.  The discovery violations in that case concerned defendant's alleged withholding of evidence and were subject to complex discovery motion practice.  *Id.*[2]  The factual circumstances in *Candy Craft Creations* have nothing in common with the ████████████████████████████████

████████████████████████  Likewise, Rothschild's undisputed statement would not constitute a need for a "trial within a trial" concerning application of the federal discovery rules as it is merely an extension of other evidence of bad faith (which Rothschild does not seek to exclude via motion in limine) that will be presented at trial.  Accordingly, any minor concern of prejudice is far outweighed by the probative value of the evidence and its relation to Rothschild's good faith in adopting and continuing to use the METABIRKINS trademark and continued intent to profit off of Hermès's registered trademarks and his disregard of its long-standing intellectual property rights.

**B.**  **Proposed Exhibit 288 May Be Used to Challenge Rothschild's Credibility**

Additionally, a party may use evidence of a witness's character to support or attack a witness's credibility within the confines of Federal Rules of Evidence 607–609.  Rule 608(b)(1)

---

[2] Other courts in the trademark infringement context have reached a different result and permitted evidence of post-litigation and discovery misconduct in jury trials.  *See e.g.*, *Stone Brewing Co., LLC v. Millercoors, LLC*, No. 3:18-CV-00331-BEN-LL, 2021 WL 63139, at *6 (S.D. Cal. Jan. 7, 2021)("evidence of discovery disputes and misconduct 'may be probative of willfulness, and as such, a broad limitation is unwarranted in a motion in limine.") (internal citation omitted).

permits specific instances of conduct to be inquired into on cross-examination "if they are probative of the character for truthfulness or untruthfulness of ... the witness." Fed. R. Evid. 608(b)(1); *United States v. Cedeno*, 644 F.3d 79, 82 (2d Cir. 2011). Certainly, Hermès should be able to question Rothschild about this document to demonstrate his overall credibility. This is especially true here, where Rothschild's good faith (or lack thereof) and conduct are central issues in this case.

Here, Rothschild did not previously dispute the evidence in question and ███████████ ████████████████████████████████ Accordingly, Rothschild may be cross-examined on his statement for the purpose of questioning his character for truthfulness or untruthfulness and to assess Rothschild's honesty and credibility.

## IV.        CERTAIN COMMUNICATIONS BY ROTHSCHILD (EX. 285)

Rothschild's fourth motion in limine seeks to exclude an exhibit and statement that he made to ███████████████████████████████████████████████████ ██████████████████████████████ As stated above, it must be remembered that Rothschild did not cease using the METABIRKINS trademark once the lawsuit began. To the contrary, he has maintained the METABIRKINS.com website and all social media accounts at Instagram, Discord, and Twitter—even until today. Hermès's position is that Rothschild's continued conduct and bad faith intent remain highly relevant to the *Rogers* and *Polaroid* analyses concerning Rothschild's decision to adopt and continue using the METABIRKINS trademark. There is no basis for suggesting that evidence arising after the lawsuit is somehow less relevant than evidence that arose prior.

For the reasons discussed below, Hermès's proposed Exhibit 285 and any related testimony should not be excluded because it is relevant to Rothschild's bad faith and is probative of the

trademark infringement and dilution liability issues in this case.  In addition, such evidence may be used on cross examination to challenge Rothschild's credibility.  Fed. R. Evid. 608(b)(1).

**A.**   **Proposed Exhibit 285 is Relevant to Rothschild's "Good Faith"**

Rothschild admits that the substance of proposed Exhibit 285 and his prior related testimony is his "layman's view" of whether ███████████████████████████████ ██████████████████████ (Rothschild Br. 8–9).  This "view" provides insight into Rothschild's state of mind on the issue of bad faith that is to be balanced by the jury during the likelihood of confusion analysis.  *Polaroid*, 287 F.2d at 495–96.  During a February 18, 2022 chat, approximately one month after Hermès filed suit, Rothschild messaged ██████████████████ ████████████████████████████████████████████████ Millsaps Decl., Ex. F at Rothschild010863–64.  ██████████████████████████████████████ ███████████ *Id.* ██████████████████████████████ ███████████████████ Fernandez Decl., Ex. 7 at 69:4–9, 73:10–74:1, 356:23–362:8.

Proposed Exhibit 285 is indirect, circumstantial evidence that is probative of Rothschild's state of mind concerning his continued bad faith intent to profit from Hermès's trademarks.  This evidence was created soon after the litigation was filed and is an extension of a voluminous string of false statements made to third parties when the BIRKIN name was adopted and the METABIRKINS NFTs were minted.  Here, if Rothschild believed that he had done everything right with respect to his adoption of the METABIRKINS mark, his reaction would be very different.  ████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████ Millsaps Decl., Ex. F at Rothschild010863–64. ████████████████████████████████████████████████ ████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████    Such testimony is also relevant to Rothschild's bad faith

in connection with Hermès's damages claim.

Proposed Exhibit 285 and related testimony are straightforward and relate directly to Rothschild's intent as well as his disregard of Hermès's intellectual property rights. Likewise, the undisputed evidence Hermès seeks to introduce will not unduly delay the resolution of this case as any presentation would be brief. Accordingly, any potential claim of prejudice is outweighed by the probative value of this exhibit and testimony when viewed in connection with the specific facts of this case.

### B.     Proposed Exhibit 285 May Be Used to Challenge Rothschild's Credibility

Additionally, a party may use evidence of a witness's character to support or attack a witness's credibility within the confines of Federal Rule of Evidence 607–609. Rule 608(b)(1) permits specific instances of conduct to be inquired into on cross-examination "if they are probative of the character for truthfulness or untruthfulness of . . . the witness." Fed. R. Evid. 608(b)(1); *Cedeno*, 644 F.3d at 82.

Rothschild may be cross-examined on his statement as specific conduct for the purpose of questioning his character for truthfulness or untruthfulness and to assess the Rothschild's honesty and credibility.

### CONCLUSION

For the foregoing reasons, Hermès respectfully requests that this Court deny Rothschild's motions in limine to preclude: (1) social media posts in proposed Exhibits 42, 99, and 100; (2) the testimony of Boriana Guimberteau; (3) the statement by Rothschild in proposed Exhibit 288; and (4) the communications by Rothschild in proposed Exhibit 285.

Dated: January 23, 2023
      New York, New York

**BAKER & HOSTETLER LLP**
Deborah A. Wilcox, Esq. (*pro hac vice*)
Key Tower
127 Public Square
Cleveland, OH 44114
Telephone:  216.621.0200

**BAKER & HOSTETLER LLP**
Lisa Bollinger Gehman, Esq. (*pro hac vice*)
1735 Market Street
Philadelphia, PA 19103
Telephone:  215.568.3100

**BAKER & HOSTETLER LLP**

By:   /s/ *Gerald J. Ferguson*
     Gerald J. Ferguson, Esq.
     Oren J. Warshavsky, Esq.
     Jason S. Oliver, Esq.
     Jessica H. Fernandez, Esq.
     Francesca A. Rogo, Esq.
     45 Rockefeller Plaza, 14th Floor
     New York, NY 10111
     Telephone:  212.589.4200
     Facsimile:  212.589.4201

     *Attorneys for Plaintiffs*
     *Hermès International and*
     *Hermès of Paris, Inc.*