# EXHIBIT 1

**PLAINTIFFS' PROPOSED JURY INSTRUCTIONS**

## I.     GENERAL INSTRUCTIONS

### INSTRUCTION NO. ___

### Duty of the Court

We are now approaching the most important part of this case, your deliberations. You have heard all the evidence in the case, as well as the final arguments of the lawyers for the parties. Before you go deliberate, it is my duty to instruct you as to the law that will govern your deliberations. These are the final and binding instructions, which entirely replace the preliminary instruction I gave you at the start of the case, which you should now discard.

Regardless of any opinion that you may have as to what the law may be or ought to be, it is your sworn duty to follow the law as I give it to you. Also, if any attorney or other person has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

Because my instructions cover many points, I have provided each of you with a copy of them not only so that you can follow them as I read them to you now, but also so that you can have them with you for reference throughout your deliberations. In listening to them now and reviewing them later, you should not single out any particular instruction as alone stating the law, but you should instead consider my instructions as a whole.

*Authority*: Adapted from this Court's "Instructions of Law to the Jury" (ECF No. 190) in *Adidas Am., Inc. v. Thom Browne, Inc.,* 21-cv-05615-JSR (S.D.N.Y. Jan. 13, 2023) (Rakoff, J.); *see also* 4 *Modern Federal Jury Instructions-Civil* ¶ 71.2 (2020).

**INSTRUCTION NO. ___**

**Duty of the Jury**

Your duty is to decide the fact issues in the case and arrive, if you can, at a verdict. You, the members of the jury, are the sole and exclusive judges of the facts. You pass upon the weight of the evidence; you determine the credibility of the witnesses; you resolve such conflicts as there may be in the testimony; and you draw whatever reasonable inferences you decide to draw from the facts as you determine them.

In determining the facts, you must rely upon your own recollection of the evidence. To aid your recollection, we will send you all the exhibits at the start of your deliberations, together with an index to help you find what you want.  If you need to review particular items of testimony, we can also arrange to provide them to you in transcript or read-back form.

Please remember that none of what the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions, is evidence. Nor is anything I may have said evidence. The evidence before you consists of just three things: the testimony given by witnesses that was received in evidence, the exhibits received into evidence, and the stipulations of the parties received into evidence.

Testimony consists of the answers given by the witnesses to the questions that were permitted to be asked here in court. Please remember that questions, although they may provide the context for answers, are not themselves evidence; only answers are evidence, and you should therefore disregard any question to which I sustained an objection. Also, you may not consider any answer that I directed you to disregard or that I directed be stricken from the record. Likewise, you may not consider anything you heard about the contents of any exhibit not received in evidence.

More generally, you should be careful not to speculate about matters not in evidence. Your focus should be solely on the evidence that was presented here in court.  Anything you may see or

hear when court was not in session is not evidence, even if what you saw or heard was done or said by one of the parties, their counsel, or by one of the witnesses.  In addition, I instruct you not to look at, read, consult, or use any material of any kind, including the news, press, social media platforms, Internet, dictionaries, or any scientific, technical, or law books in connection with your jury service.

It is the duty of the attorney for each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. Counsel also have the right and duty to ask the Court to make rulings of law and to request conferences out of the hearing of the jury. All such questions of law must be decided by me. You should not show any prejudice against any attorney or party because the attorney objected to the admissibility of evidence, asked for a conference out of the hearing of the jury, or asked me for a ruling on the law.

I also ask you to draw no inference from my rulings or from the fact that upon occasion I asked questions of certain witnesses. My rulings were no more than applications of the law, and my questions were only intended for clarification or to expedite matters. You should understand that I have no opinion as to the verdict you should render in this case.

*Authority*: Adapted from this Court's "Instructions of Law to the Jury" (ECF No. 190) in *Adidas Am., Inc. v. Thom Browne, Inc.,* 21-cv-05615-JSR (S.D.N.Y. Jan. 13, 2023) (Rakoff, J.); *see also* 4 *Modern Federal Jury Instructions-Civil* ¶ 71.3 (2020); *N.Y. Pattern Jury Instr.—Civil* 1:7.

**INSTRUCTION NO. ___**

**Duty of Impartiality**

You are to perform your duty of finding the facts without bias or prejudice or sympathy or hostility as to any party, for all parties are equal under the law. You are to perform your final duty in an attitude of complete fairness and impartiality. You are not to be swayed by rhetoric or emotional appeals. It must be clear to you that if you were to let extraneous considerations interfere with your thinking, there would be a risk that you would not arrive at a true and just verdict. So do not be guided by anything except clear thinking and calm analysis of the evidence.

*Authority*: Adapted from this Court's "Instructions of Law to the Jury" (ECF No. 190) in *Adidas Am., Inc. v. Thom Browne, Inc.,* 21-cv-05615-JSR (S.D.N.Y. Jan. 13, 2023) (Rakoff, J.); *see also* 4 *Modern Federal Jury Instructions-Civil* ¶ 71-5, P 71-10 (2020).

## INSTRUCTION NO. ___

### Burden of Proof: Preponderance of the Evidence

As you know, this is a civil case. In a civil case, a party who is making a claim against another party has what we call the "burden of proof," which is the burden of establishing each of the essential elements of that claim. Here, Hermès International and Hermès of Paris, Inc. (collectively, "Hermès") have asserted claims against Mason Rothchild, and therefore has the burden of proof on those claims.

I will describe the essential elements of Hermès's claims shortly, but for now, keep in mind that Hermès must prove each of the essential elements of each of its claims by a preponderance of the credible evidence. The "credible evidence" means such evidence that you find worthy of belief. To establish an element of a claim by a "preponderance" of the credible evidence means to prove that that element is more likely true than not true.

When assessing whether a party has met its burden of proof or failed to do so, the question is not which party called the greater number of witnesses or how much time one party or another spent during the trial. The focus must always be on the quality of the evidence: its persuasiveness in convincing you of its truth.

*Authority*: Adapted from this Court's "Instructions of Law to the Jury" (ECF No. 190) in *Adidas Am., Inc. v. Thom Browne, Inc.,* 21-cv-05615-JSR (S.D.N.Y. Jan. 13, 2023) (Rakoff, J.); 4 *Modern Federal Jury Instructions- Civil* ¶ 73-2 (2020).

**INSTRUCTION NO. ___**

**Direct and Circumstantial Evidence**

In deciding whether a party meets its burden of proof, you may consider both direct evidence and circumstantial evidence.

Direct evidence is evidence proving a fact directly. For example, where a witness testifies to what he or she saw, heard, or observed, that is called direct evidence.

Circumstantial evidence is evidence tending to prove a fact by proof of other facts. To give a simple example, suppose that when you came into the courthouse today the sun was shining and it was a nice day, but the courtroom blinds were drawn, and you could not look outside. Later, as you were sitting here, someone walked in with a dripping wet umbrella and, soon after, somebody else walked in with a dripping wet raincoat. Now, on our assumed facts, you cannot look outside of the courtroom, and you cannot see whether or not it is raining. So, you have no direct evidence of that fact. But on the combination of the facts about the umbrella and the raincoat, it would be reasonable for you to infer that it had begun raining.

That is all there is to circumstantial evidence. Using your reason and experience, you infer from established facts the existence or the nonexistence of some other fact. Please note, however, it is not a matter of speculation or guess; it is a matter of logical inference.

The law makes no distinction between direct and circumstantial evidence. Circumstantial evidence is of no less value than direct evidence, and you may consider either or both, and may give them such weight as you conclude is warranted.

*Authority*: Adapted from this Court's "Instructions of Law to the Jury" (ECF No. 190) in *Adidas Am., Inc. v. Thom Browne, Inc.,* 21-cv-05615-JSR (S.D.N.Y. Jan. 13, 2023) (Rakoff, J.); *see also* 4 *Modern Federal Jury Instructions-Civil* ¶ 74-2 (2020).

- 6 -

**INSTRUCTION NO. \_\_\_**

**Witness Credibility**

It must be clear to you by now that counsel for the opposing parties are asking you to draw very different conclusions about various factual issues in the case. An important part of that decision will involve making judgments about the testimony of the witnesses listened to and observed through live and remote testimony. In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which the witnesses testified, and any other matter in evidence that may help you to decide the truth and the importance of each witness's testimony.

Your decision to believe or not to believe a witness may depend on how that witness impressed you. How did the witness appear to you? Was the witness candid, frank and forthright; or did the witness seem to be evasive or suspect in some way? How did the way the witness testified on direct examination compare with how the witness testified on cross-examination? Was the witness consistent, or contradictory? Did the witness appear to know what he or she was talking about? Did the witness strike you as someone who was trying to report his or her knowledge accurately? These are examples of the kinds of common-sense questions you should ask yourselves in deciding whether a witness is or is not truthful.

How much you choose to believe a witness may also be influenced by the witness's bias. Does the witness have a relationship with any of the parties that may affect how he or she testified? Does the witness have some interest, incentive, loyalty, or motive that might cause him or her to shade the truth? Does the witness have some bias, prejudice, or hostility that may cause

the witness to give you something other than a completely accurate account of the facts he or she testified to?

You should also consider whether the witness had an opportunity to observe the facts he or she testified about, and whether the witness's recollection of the facts stands up in light of the other evidence in the case.

In other words, what you must try to do in deciding credibility is to size up a person just as you would in any important matter where you are trying to decide if a person is truthful, straightforward, and accurate in his or her recollection.

*Authority*: Adapted from this Court's "Instructions of Law to the Jury" (ECF No. 190) in *Adidas Am., Inc. v. Thom Browne, Inc.,* 21-cv-05615-JSR (S.D.N.Y. Jan. 13, 2023) (Rakoff, J.); *see also* 4 *Modern Federal Jury Instructions-Civil* ¶ 76-1 (2020).

**INSTRUCTION NO. ___**

**Deposition Testimony**

Some of the testimony before you is in the form of transcript and video excerpts from depositions that were received in evidence. A deposition is simply a procedure whereby, prior to trial, the attorneys may question a witness or a party under oath before a court stenographer. You should consider the deposition testimony transcript and video excerpts received at trial according to the same standards you would use to evaluate the testimony of a witness given live in court.

*Authority*: Adapted from this Court's "Instructions of Law to the Jury" (ECF No. 190) in *Adidas Am., Inc. v. Thom Browne, Inc.,* 21-cv-05615-JSR (S.D.N.Y. Jan. 13, 2023) (Rakoff, J.).

**INSTRUCTION NO. ___**

**Specialized Testimony from Expert Witnesses**

The law permits parties to offer testimony from witnesses who were not involved in the underlying events of the case but who by education or experience profess to expertise in a specialized area of knowledge. In this case, the expert witnesses who testified were Dr. Bruce Isaacson, Dr. Scott Duke Kominers, Dr. Kevin D. Mentzer, called by Hermès, and Dr. Blake Gopnik, and Dr. David Neal , called by Mason Rothschild. Specialized testimony is presented to you on the theory that someone who is learned in the field may be able to assist you in understanding specialized aspects of the evidence. You should consider the specialized testimony received at trial including testimony using remote videoconferencing means according to the same standards you would use to evaluate the testimony of a witness given live in court.

However, your role in judging credibility and assessing weight applies just as much to these witnesses as to other witnesses. When you consider the specialized opinions that were received in evidence in this case, you may give them as much or as little weight as you think they deserve. For example, a specialized witness necessarily bases his or her opinions, in part or in whole, on what that witness learned from others, and you may conclude that the weight given the witness's opinions may be affected by how accurate or inaccurate that underlying information is. More generally, if you find that the opinions of a specialized witness were not based on sufficient data, education, or experience, or if you should conclude that the trustworthiness or credibility of such a witness is questionable, or if the opinion of the witness is outweighed, in your judgment, by other evidence in the case, then you may, if you wish, disregard the opinions of that witness, entirely or in part. On the other hand, if you find that a specialized witness is credible, and that the witness's opinions are based on sufficient data, education, and experience, and that the other evidence does

not give you reason to doubt the witness's conclusions, you may, if you wish, rely on that witness's

opinions, and give them whatever weight you deem appropriate.

*Authority*: Adapted from this Court's "Instructions of Law to the Jury" (ECF No. 190) in *Adidas Am., Inc. v. Thom Browne, Inc.,* 21-cv-05615-JSR (S.D.N.Y. Jan. 13, 2023) (Rakoff, J.); 4 *Modern Federal Jury Instructions-Civil* ¶ 74-5 (2020).

## II.    LIABILITY

## INSTRUCTION NO. ___

### Liability in General

With these general instructions in mind, let me know turn to the claims in this case that Hermès brings against Mason Rothschild.  The claims arise from Hermès's rights in the HERMÈS trademark, BIRKIN trademark and the BIRKIN handbag trade dress and Mason Rothschild's uses of those rights in the creation, marketing, advertising and sale of the METABIRKINS NFTs.

I will shortly instruct you on each of the essential elements that Hermès must prove, by a preponderance of the evidence, to prevail on a given claim.  This is known as establishing "liability." If Hermès has failed to prove any essential element of a particular claim by a preponderance of the evidence, you must find Mason Rothschild not liable on that claim.  By contrast, if you find that Hermès has proven by a preponderance of the evidence every essential element of a particular claim, then you should find Mason Rothschild liable on that claim.

Hermès asserts seven claims for relief:

1.    Mason Rothschild's creation, marketing, advertising and sale of the METABIRKINS NFTs infringe upon Hermès's BIRKIN word mark for handbags;

2.    Mason Rothschild's creation, marketing, advertising and sale of the METABIRKINS NFTs using the METABIRKINS trademark, the HERMÈS word mark, and the BIRKIN handbag trade dress constitute false designations of origin, false descriptions and false representations;

3.    Mason Rothschild's creation, marketing, advertising and sale of the METABIRKINS NFTs mark dilutes the BIRKIN mark under federal law;

4.    Mason Rothschild's registration and/or use of the domain name <metabirkins.com> constitutes cybersquatting;

5.      Mason Rothschild's creation, marketing, advertising and sale of the METABIRKINS NFTs constitute injury to Hermès's business reputation and dilution under New York law;

6.      Mason Rothschild's creation, marketing, advertising and sale of the METABIRKINS NFTs constitute common law trademark infringement under New York law; and

7.      Mason Rothschild's creation, marketing, advertising and sale of the METABIRKINS NFTs constitute misappropriation and unfair competition under New York common law.

*Authority*:  Adapted from this Court's "Instructions of Law to the Jury" (ECF No. 190) in *Adidas Am., Inc. v. Thom Browne, Inc.,* 21-cv-05615-JSR (S.D.N.Y. Jan. 13, 2023) (Rakoff, J.)

**INSTRUCTION NO. ___**

**Preliminary Instruction—The Trademarks at Issue**

Before we turn to Hermès's claims, a word about the trademarks at issue. A trademark can be a word, name, symbol, or design, or any combination of these items that indicates the company associated with a product. The owner of a trademark has the right to exclude others from using that trademark or a similar mark that is likely to cause confusion in the marketplace. The main function of a trademark is to identify and distinguish goods or services as the product of a particular manufacturer or merchant and to protect its goodwill.

Here, Hermès asserts infringement, unfair competition, dilution and cybersquatting of the BIRKIN trademark as described and exemplified in a federal trademark registration that you can review at Plaintiffs' Exhibit 5. Hermès also asserts unfair competition over Mason Rothschild's use of the BIRKIN trademark, and also use of the BIRKIN handbag trade dress and the HERMÈS trademark as described and exemplified in Plaintiffs' Exhibits 6 and 7.

*Authority*:  Adapted from this Court's "Instructions of Law to the Jury" (ECF No. 190) in *Adidas Am., Inc. v. Thom Browne, Inc.,* 21-cv-05615-JSR (S.D.N.Y. Jan. 13, 2023) (Rakoff, J.); 3A Fed. Jury Prac. & Instr. § 159:40; 159.41 (6th ed.); 15 U.S.C. § 1127; *Lane Capital Management, Inc. v. Lane Capital Management, Inc.*, 192 F.3d.2d 337, 343-344 (2d Cir. 1999).

**INSTRUCTION NO. ___**

**Trademark Infringement**

Hermès asserts that Mason Rothschild has infringed Hermès's BIRKIN trademark through his uses of the BIRKIN mark and METABIRKINS mark. The specific products that Hermès accuses of infringement are Rothschild's collection of 100 METABIRKINS NFTs (collectively referred to as the "Accused Products.")

Hermès contends that Mason Rothschild's uses of BIRKIN and METABIRKINS in connection with the Accused Products is likely to confuse consumers into thinking that the products are made and sold or otherwise connected with, associated with, sponsored by or approved by Hermès.

It is not necessary that the mark used by Mason Rothschild be an exact copy of Hermès's mark. Rather, Hermès must demonstrate that, viewed in its entirety, the mark used by Mason Rothschild is likely to cause confusion in the minds of reasonably prudent purchasers or users as to the source of the product in question. The test is not one of actual confusion, mistake, or deception. It is unnecessary that the evidence show that any specific person has been confused or misled.

It is enough if you find that the consequences of Mason Rothschild's use of METABIRKINS in all reasonable probability would be to confuse the public regarding the source, sponsorship, approval, or affiliation of the products. The fact that the products could be distinguished by careful or discriminatory purchasers is not enough to lead you to conclude that there is no likelihood of confusion.

*Authority*: Model Civil Jury Instruction for the Ninth Circuit § 15.1 (2019) (modified); 15 U.S.C. §§ 1114, 1127; *L & L Wings, Inc. v. Marco-Destin, Inc.*, 676 F. Supp. 2d 179, 187-188 (S.D.N.Y. 2009); Instruction 86A-15 General Instruction;  *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1074, 1077 (2d Cir. 1993); 3A Fed. Jury Prac. & Instr. § 159:20 (6th ed.); *Hamilton Int'l Ltd. v. Vortic LLC*, 486  F.Supp.3d 657, 661 (S.D.N.Y. 2020) (elements of trademark

infringement must be proven by a preponderance of the evidence); *MyPlayCity, Inc. v. Conduit Ltd.*, No. 10 Civ. 1615(CM), 2012 WL 2929392 at *4 (S.D.N.Y. July 18, 2012) (quoting 15 U.S.C. § 1127).

**INSTRUCTION NO. ___**

**Balancing of Policy Objectives**

The legal principles regarding the law of trademark infringement discussed in these instructions result from attempts to balance the following conflicting policy objectives:

1. the need to protect the public from being misled about the nature and source of the goods they buy;

2. the need to protect the property rights of a business to identify itself and its goods to the public; and

3. the need to try to achieve these goals while encouraging fair competition among those providing goods in our free-market economy.

In short, fair competition among those manufacturing and selling goods is encouraged, but unfair competition, including trademark infringement, is destructive of this competitive process and is illegal. Because of the conflicting policy objectives involved in cases of this type, each case must be decided largely on its specific facts. You, the jury, are the judge of the facts.

*Authority*: Instruction 86A-8 Purpose of Trademark Protection and Prohibition of Infringement *4 Modern Federal Jury Instructions-Civil*

**INSTRUCTION NO. ___**

**Registration of Trademark**

Once the owner of a mark has obtained the right to exclude others from using the trademark, the owner may obtain a certificate of registration issued by the United States Patent and Trademark Office. Afterwards, when the owner brings an action for infringement, the owner may rely solely on the registration certificate to prove the owner has the right to exclude others from using the trademark in connection with the type of goods or services specified in the certificate. An owner is not required to register its mark to enforce its rights in a trademark.

*Authority*: 3A Fed. Jury Prac. & Instr. § 159:3 (6th ed.); 15 U.S.C. §§ 1114, 1127; *L & L Wings, Inc. v. Marco-Destin, Inc.*, 676 F. Supp. 2d 179, 187-188 (S.D.N.Y. 2009).

**INSTRUCTION NO. \_\_\_**

**Likelihood of Confusion**

In determining whether there is or will be a likelihood of confusion caused by the uses of BIRKIN by Hermès and METABIRKINS by Mason Rothschild in connection with their respective goods, you may draw on your common experience as citizens of the community. In addition to the general knowledge you have acquired throughout your lifetimes, you may also consider:

1.     the strength of the BIRKIN mark;

2.     the similarity of the BIRKIN and METABIRKINS marks;

3.     the competitive proximity of the products in the marketplace;

4.     the likelihood that Hermès will "bridge the gap" by moving into the NFT market;

5.     evidence of actual confusion;

6.     Mason Rothchild's bad faith in adopting the METABIRKINS mark;

7.     the respective quality of the products; and

8.     the sophistication of the consumers in the relevant market.

In considering the factors I just described to you, please keep in mind that no one factor or consideration is conclusive, but each of these factors, as well as any other factors you find relevant, should be weighed in light of the total evidence presented at the trial to determine whether, on balance, a likelihood of confusion exists. If Hermès has proved that a likelihood of confusion exists, it has then carried its burden of proof on its infringement claim.

*Authority*: Adapted from this Court's "Instructions of Law to the Jury" (ECF No. 190) in *Adidas Am., Inc. v. Thom Browne, Inc.,* 21-cv-05615-JSR (S.D.N.Y. Jan. 13, 2023) (Rakoff, J.); 3A Fed. Jury Prac. & Instr. § 159:25 (6th Ed.) (modified);  *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1077 (2d Cir. 1993); *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495-496 (2d Cir. 1961).

**[Alternative Instruction if *Rogers* applies]**

You must first determine whether Mason Rothschild used the METABIRKINS trademark merely as a title of artwork, or whether instead he used the METABIRKINS trademark to sell non-speech commercial products, such as virtually wearable Birkin bags or NFTs with added functionality.

If you find that the METABIRKINS NFTs are works of artistic expression, then you must go on to consider whether:

1.      The METABIRKINS trademark has no artistic relevance to the Accused Products;

         or

2.      If there is artistic relevance, then use of the METABIRKINS mark explicitly misleads as to the source or the content of the Accused Products.

To be artistically relevant, you must find that Mason Rothschild intended an artistic—that is, noncommercial-association—with Hermès's BIRKIN mark, as opposed to one in which Mason Rothschild intended to associate with the BIRKIN mark to exploit the BIRKIN mark's popularity and good will.

If you find an artistic association, then you must go on to consider whether Mason Rothschild's use of the METABIRKINS mark is explicitly misleading in the sense that it induces members of the public to believe the METABIRKINS NFTs were prepared or otherwise authorized by Hermès.  To determine whether Mason Rothschild's use of the METABIRKINS mark is explicitly misleading, you may draw on your common experience as citizens of the community. In addition to the general knowledge you have acquired throughout your lifetimes, you should also consider:

1.      the strength of the BIRKIN mark;

2.      the similarity of the BIRKIN and METABIRKINS marks;

3.      the competitive proximity of the products in the marketplace;

4.      the likelihood that Hermès will "bridge the gap" by moving into the NFT market;

5.      evidence of actual confusion;

6.      Mason Rothchild's bad faith in adopting the METABIRKINS mark;

7.      the respective quality of the products; and

8.      the sophistication of the consumers in the relevant market.

In considering the factors I just described to you, please keep in mind that no one factor or consideration is conclusive, but each of these factors, as well as any other factors you find relevant, should be weighed in light of the total evidence presented at the trial to determine whether, on balance, a likelihood of confusion exists. If Hermès has proved that a likelihood of confusion exists, it has then carried its burden of proof on its infringement claim.

*Authority: Twin Peaks Prods., Inc. v. Publ'ns Int'l Ltd.*, 996 F.2d 1366, 1379–80 (2d Cir. 1993); *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989); *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495-496 (2d Cir. 1961).

**INSTRUCTION NO. ___**

**Likelihood of Confusion—The strength of Hermès's trademark**

The more the consuming public recognizes Hermès's BIRKIN trademark as an indication of the source of Hermès's goods and services, the stronger the BIRKIN trademark, and the more likely it is that a consumer or observer may be confused about the source of Mason Rothschild's goods if he uses a similar mark. I instruct you that Mason Rothschild admits that the BIRKIN Mark is strong for handbags.

*Authority*: Adapted from this Court's "Instructions of Law to the Jury" (ECF No. 190) in *Adidas Am., Inc. v. Thom Browne, Inc.,* 21-cv-05615-JSR (S.D.N.Y. Jan. 13, 2023) (Rakoff, J.); 3A Fed. Jury Prac. & Instr. § 159:25 (6th Ed.) (modified); *Virgin Enterprises Ltd. v. Nawab*, 335 F.3d 141, 148 (2d Cir. 2003); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 873 (2d Cir.1986).

**INSTRUCTION NO. ___**

**Likelihood of Confusion—The similarity of the marks**

If the overall impression created by Hermès's BIRKIN trademark in the marketplace is similar to the impression created by Mason Rothschild's METABIRKINS trademark in appearance, sound, or meaning, there is a greater chance of likelihood of confusion. Similarities in appearance, sound, or meaning weigh more heavily than differences in finding the marks are similar.  Because Hermès's BIRKN handbags and Mason Rothschild's METABIRKINS NFTs are not typically displayed in the same locations, it is improper to compare the marks side by side. *See Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 534 (2d Cir. 2005) ("Where products in the relevant market are not typically displayed in the same locations, centering on whether they are likely to be distinguished when viewed simultaneously is incorrect, and will result in a faulty likelihood-of-confusion analysis.").

Adding a generic name to another's mark, especially if it is a famous mark, will not usually avoid a likelihood of confusion. You should consider whether Hermès's and Mason Rothschild's marks have similar dominant features, including design features, in how they appear visually to the consumer, vendor, or observer, the meanings of the marks, and how the marks sound when spoken in oral communications. I instruct you that Mason Rothschild admitted that the images associated with the METABIRKINS NFTs were intended to be "similar to a Birkin bag."

*Authority*: 3A Fed. Jury Prac. & Instr. § 159:25 (6th Ed.) (modified); 4 McCarthy, *supra*, § 23:50; *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 873-874 (2d Cir. 1986).

**INSTRUCTION NO. ___**

**Likelihood of Confusion—The competitive proximity of the products in the marketplace**

If Mason Rothschild and Hermès use their trademarks on the same, related, and/or complementary kinds of goods and services, there may be a greater likelihood of confusion about the source of the goods and services than otherwise. There is no requirement that Mason Rothschild compete with Hermès for a likelihood of confusion to exist.

*Authority*: 3A Fed. Jury Prac. & Instr. § 159:25 (6th Ed.) (modified); *Virgin Enterprises Ltd. v. Nawab*, 335 F.3d 141, 150-51 (2d Cir. 2003); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 874 (2d Cir.1986).

**INSTRUCTION NO. ___**

**Likelihood of Confusion—The likelihood that the senior user will "bridge the gap" by moving into the junior user's product market**

A strong possibility that either party will expand their business to compete with the other or be marketed to the same audience weighs in favor of finding Mason Rothschild's present use is infringing.

Hermès is entitled to protection to expand its business and may force Mason Rothschild to stop using an infringing mark in its area even if he adopted his mark in complete good faith. The danger of affiliation or sponsorship confusion increases when Mason Rothschild's goods or services are in a market that is one into which Hermès would naturally expand.

While an affirmative finding of a likelihood of expansion will provide a strong indication that the parties' simultaneous use of the marks is likely to lead to confusion, a negative finding is not a strong indication to the contrary.

The law protects a trademark owner's "interest in being able to enter a related field at some future time" and does not require proof of present intent to enter that field.

Where there is more than a likelihood of expansion, but actual expansion, this factor weighs for finding a likelihood of confusion.

*Authority*: 3A Fed. Jury Prac. & Instr. § 159:25 (6th Ed.) (modified); *Virgin Enterprises Ltd. v. Nawab*, 335 F.3d 141, 150-51 (2d Cir. 2003);*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 874 (2d Cir.1986); *BPI Lux S.a.r.l. v. Bd. of Managers of Setai Condo. Residence at 40 Broad St.*, No. 18 CIV. 1621 (NRB), 2019 WL 3202923, at *7 (S.D.N.Y. July 16, 2019).

## INSTRUCTION NO. ___

### Likelihood of Confusion—Evidence of actual confusion

Actual confusion is not required for a finding of likelihood of confusion. However, if use by Mason Rothschild of Hermès's BIRKIN trademark has led to instances of actual confusion of ordinary purchasers and the relevant public, this strongly suggests a likelihood of confusion. Nothing shows the likelihood of confusion more than the fact of actual confusion.

*Authority*: 3A Fed. Jury Prac. & Instr. § 159:25 (6th Ed.); *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 459 (2d Cir. 2004); *Virgin Enterprises Ltd. v. Nawab*, 335 F.3d 141, 151 (2d Cir. 2003); *Berkshire Fashions, Inc. v. Sara Lee Corp.*, 725 F. Supp. 790, 796–97 (S.D.N.Y. 1989), *aff'd sub nom. Berkshire Fashions v. Sara Lee*, 904 F.2d 33 (2d Cir. 1990) ("actual trade confusion is highly probative on the question of whether a likelihood of confusion exists, generally, in the marketplace, since wholesalers and retail dealers may be deemed to be more sophisticated about the origins and sources of product lines than average consumers"); *GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 297 (S.D.N.Y. 2002) (finding wholesaler's confusion as "persuasive evidence of more widespread confusion by retail customers," and wholesaler is a quintessential sophisticated buyer whose "confusion speaks volumes about the likely confusion of less informed consumers"); *Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 356-57 (S.D.N.Y. 1998) (finding that proffered "evidence of actual confusion is significant" where sophisticated journalists and film reviewers wrote articles expressly identifying Defendants film as a sequel to Plaintiff's film).

INSTRUCTION NO. ___

**Likelihood of Confusion—The junior user's bad faith in adopting the mark**

Knowing use by Mason Rothschild of Hermès's trademark to identify similar goods services may strongly show an intent to derive benefit from the reputation of Hermès's BIRKIN mark, suggesting an intent to cause a likelihood of confusion. Mason Rothschild's intent is measured at the time he chose or adopted his mark. Proof that Mason Rothschild chose or adopted a mark with the intent of copying Hermès's BIRKIN mark may, standing alone, justify an inference of likelihood of confusion.

The adequacy and care with which Mason Rothschild investigated and evaluated his proposed mark, and his knowledge of similar marks or allegations of potential confusion, are highly relevant to intent.

*Authority*: 3A Fed. Jury Prac. & Instr. § 159:25 (6th Ed.); *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 721 (3d Cir. 2004); *Telechron, Inc. v. Telicon Corp.*, 198 F.2d 903, 908 (3d Cir. 1952); *BPI Lux S.a.r.l. v. Bd. of Managers of Setai Condo. Residence at 40 Broad St.*, No. 18 CIV. 1621 (NRB), 2019 WL 3202923, at *7 (S.D.N.Y. July 16, 2019); *Stern's Miracle-Gro Prods., Inc. v. Shark Prods., Inc.*, 823 F. Supp. 1077, 1088 (S.D.N.Y. 1993); *Dominion Bankshares Corp. v. Devon Holding Co.*, 690 F. Supp. 338, 347 (E.D. Pa. 1988); *Max Factor & Co. v. Factor*, 226 F. Supp. 120, 126 (S.D. Cal. 1963).

**INSTRUCTION NO. ___**

**Likelihood of Confusion—The respective quality of the products**

You should consider the quality of the Accused Products relative to Hermès's products. If the products are of similar quality, confusion may be more likely, whereas if they are of different quality, confusion is less likely.

*Authority: Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 875 (2d Cir.1986).

**INSTRUCTION NO. ___**

**Likelihood of Confusion—The sophistication of the consumers in the relevant market**

The more sophisticated the potential buyers of the goods and services or the more costly the goods and services, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be.

*Authority*: 3A Fed. Jury Prac. & Instr. § 159:25 (6th Ed.); *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 461 (2d Cir. 2004); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 875 (2d Cir.1986).

**INSTRUCTION NO. \_\_\_**

**False Designations of Origin; False Descriptions and Representations**

Hermès alleges claims of unfair competition against Mason Rothschild under federal law. To establish unfair competition, Hermès has the burden of proving each of the following by a preponderance of the evidence:

1. Mason Rothschild used in commerce the BIRKIN and METABIRKINS trademarks, the HERMÈS word mark, and the BIRKIN handbag trade dress; and made false designations of origin, false or misleading descriptions of fact, or false or misleading representations of fact, which—

2. are likely to cause confusion or mistake, or to deceive, as to the affiliation, connection, or association of Mason Rothschild's goods with Hermès's goods, or to cause confusion or mistake, or to deceive, as to the origin, sponsorship, or approval of Mason Rothschild's goods by Hermès.

In determining the second element, you should follow the earlier instruction concerning likelihood of confusion.

*Authority*: 15 U.S.C. § 1125(a); *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1074 (2d Cir. 1993); *Sun Trading Distributing Co., Inc. v. Evidence Music Inc.*, 980 F.Supp. 722, 727 (S.D.N.Y. 1997).

**INSTRUCTION NO. ___**

**Federal Dilution**

Hermès also asserts a claim for trademark dilution claim under the federal law.  This claim does not require showing that consumers are likely to be confused about the source of the Accused Products.  Instead, they require showing that the uses of the BIRKIN and METABIRKINS trademarks in connection with the Accused Products are likely to dilute the distinctiveness of Hermès's BIRKIN mark by eroding its distinctiveness in the mind of the public.

To prove dilution under federal law, Hermès must prove that:

1.     the BIRKIN mark is famous;

2.     Mason Rothschild is making commercial use of the METABIRKINS trademark in commerce;

3.     Mason Rothschild's use began after the BIRKIN mark became famous; and

4.     Mason Rothschild's use of METABIRKINS trademark dilutes the quality of the BIRKIN mark by diminishing its capacity to identify and distinguish goods and services, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

*Authority:* Adapted from this Court's "Instructions of Law to the Jury" (ECF No. 190) in *Adidas Am., Inc. v. Thom Browne, Inc.,* 21-cv-05615-JSR (S.D.N.Y. Jan. 13, 2023) (Rakoff, J.); 15 U.S.C. § 1125(c)(1); *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 448-449 (2d Cir. 2004); *MyPlayCity, Inc. v. Conduit Ltd.*, No. 10 Civ. 1615(CM), 2012 WL 2929392 at *4 (S.D.N.Y. July 18, 2012) (quoting 15 U.S.C. § 1127).

**INSTRUCTION NO. ___**

**Federal Dilution--Fame**

The BIRKIN mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether the BIRKIN mark is "famous," you may consider: (i) the duration, extent, and geographic reach of advertising and publicity of the mark; (ii) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) the extent of actual recognition of the mark; and (iv) whether the mark is registered. Here, as described above, the BIRKIN mark consists of a specific federal registration that you can review at Plaintiffs' Exhibit 5.

*Authority:* Adapted from this Court's "Instructions of Law to the Jury" (ECF No. 190) in *Adidas Am., Inc. v. Thom Browne, Inc.,* 21-cv-05615-JSR (S.D.N.Y. Jan. 13, 2023) (Rakoff, J.); 15 U.S.C. § 1125(c)(2)(A); *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 450-451 (2d Cir. 2004).

**INSTRUCTION NO. ___**

**Federal Dilution—Blurring**

Whether METABIRKINS is likely to dilute the quality of the BIRKIN trademark by diminishing the capacity of the mark to identify and distinguish goods and services depends on factors including:

1. The degree of similarity between METABIRKINS and the famous BIRKIN mark;

2. the degree of inherent or acquired distinctiveness of the famous BIRKIN mark;

3. the extent to which Hermès is engaging in substantially exclusive use of the BIRKIN mark;

4. the degree of recognition of the famous BIRKIN mark;

5. whether Mason Rothschild intended to create an association with the famous BIRKIN mark;

6. any actual association between METABIRKINS and the famous BIRKIN mark, and

7. Mason Rothschild's use began after the BIRKIN trademark became famous.

You may also consider any other relevant factors, and you should remember that no one of these factors is conclusive.  Your task is to consider whether, after considering these factors and any others you find relevant, Mason Rothschild's use of the METABIRKINS mark in connection with the Accused Products is more likely than not to dilute the distinctiveness of Hermès's BIRKIN mark.

*Authority:* Adapted from this Court's "Instructions of Law to the Jury" (ECF No. 190) in *Adidas Am., Inc. v. Thom Browne, Inc.,* 21-cv-05615-JSR (S.D.N.Y. Jan. 13, 2023) (Rakoff, J.); 15 U.S.C. § 1125(c)(2)(B)(i)-(vi); *Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 459 (S.D.N.Y. 2017).

**INSTRUCTION NO. ___**

**Cybersquatting**

To establish a claim of cybersquatting, Hermès must show that the BIRKIN mark was distinctive at the time the domain name <metabirkins.com> was registered; that the <metabirkins.com> domain name is identical to, or confusingly similar to, Hermès's BIRKIN mark; and that Mason Rothschild had a bad faith intent to profit from the BIRKIN mark.

*Authority:  Webadviso v. Bank of Am. Corp.*, 448 F.App'x 95, 97 (2d Cir. 2011).

**INSTRUCTION NO. ___**

**Dilution Under New York Law**

To show dilution under New York law, Hermès must show that it possesses a strong mark—one which has a distinctive quality or has acquired a secondary meaning.  In determining whether a mark is "strong," you may consider:

i.    The duration, extent, and geographic reach of advertising and publicity of the BIRKIN mark, whether advertised or publicized by Hermès or third parties.

ii.   The amount, volume, and geographic extent of sales of goods or services offered under the BIRKIN mark.

iii.  The extent of actual recognition of the BIRKIN mark.

iv.   Whether the BIRKIN mark was registered on the principal register.

Hermès must also show that the BIRKIN and METABIRKIN marks are "substantially similar;" that is, if they are at least similar enough that a substantial segment of the target group of customers sees the two marks as essentially the same.  Use of the substantially similar mark may create a likelihood of dilution by either blurring or tarnishment.

To determine the likelihood of blurring you may consider the following factors, including: (i) the similarity of the BIRKIN and METABIRKIN marks; (ii) the similarity of the products covered; (iii) the sophistication of the consumers; (iv) the existence of Mason Rothschild's predatory intent; (v) the renown of the BIRKIN mark; and (vi) the renown of the METABIRKINS mark.

You may also consider any other relevant factors, and you should remember that no one of these factors is conclusive.  Your task is to consider whether, after considering these factors and any others you find relevant, Mason Rothschild's use of the METABIRKINS mark in connection

with the Accused Products is more likely than not to dilute the distinctiveness of Hermès's

BIRKIN mark.

*Authority: New York Stock Exchange, Inc. v. New York, New York Hotel LLC,* 293 F.3d 550, 558 (2d Cir.2002); *Strange Music, Inc. v. Strange Music, Inc.,* 326 F. Supp. 2d 481, 496 (S.D.N.Y. 2004); *Fireman's Ass'n of State of New York v. French Am. Sch. of New York,* 839 N.Y.S.2d 238, 241-42 (2007); *Miss Universe, L.P., LLLP v. Villegas,* 672 F. Supp. 2d 575, 595 (S.D.N.Y. 2009).

**INSTRUCTION NO. ___**

**Common Law Trademark Infringement and Unfair Competition**

Hermès alleges claims of infringement and unfair competition under New York common law against Mason Rothschild, arising out of the use by Mason Rothschild of the mark BIRKIN in connection with his marketing and sale of METABIRKINS NFTs.

In order to establish a violation of common law unfair competition, Hermès has the burden of proving each of the following by a preponderance of the evidence:

1. Mason Rothschild used BIRKIN in commerce;

2. Mason Rothschild acted in bad faith; and

3. Mason Rothschild's use of BIRKIN caused a likelihood of confusion.

In determining whether Mason Rothschild is liable for unfair competition under common law, you should follow the earlier instruction concerning likelihood of confusion.

*Authority: Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 485 (2d Cir. 2005); *ESPN, Inc. v. Quiksilver, Inc*., 586 F. Supp. 2d 219, 230 (S.D.N.Y. 2008).

### III.    MONETARY RELIEF INSTRUCTIONS

### INSTRUCTION NO. ___

### Recovery of Profits

If you find Mason Rothschild liable for trademark infringement or unfair competition, or if you find Mason Rothschild liable for willful federal trademark dilution, you may award Hermès the profits you determine that Mason Rothschild earned as a result of his liability.  You should measure such profits as the difference between Mason Rothschild's total revenues relating to the Accused Products and the expenses Mason Rothschild incurred in order to make those sales. Hermès has the burden of proving Mason Rothschild's gross revenue only. Mason Rothschild has the burden of proving all elements of costs or deductions claimed against his gross revenue. In other words, by a preponderance of the evidence:

1. Hermès must prove Mason Rothschild's gross revenue that is attributable to the Accused Products.

2. Mason Rothschild must prove all costs, expenses, or deductions claimed as attributable to the Accused Products. Expenses are all operating and production costs incurred in producing the gross revenue. Gross revenue minus operating and production costs equals Mason Rothschild's profits.

Unless you find that a portion of the profit from the sale of Mason Rothschild's goods and services in connection with his use of BIRKIN is attributable to factors other than use of the mark BIRKIN, you should find that the total profit is attributable to the infringement.

*Authority*: Model Jury Instructions, American Bar Association, *Copyright, Trademark and Trade Dress Litigation* § 2.8.1 (2008) (modified); 15 U.S.C. § 1117(a); *RVC Floor Decor, Ltd. v. Floor and Decor Outlets of America, Inc.*, 527 F.Supp.3d 305, 331 (E.D.N.Y. 2021) (*citing Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S.Ct. 1492, 1497 (2020)).

**INSTRUCTION NO. ___**

**Statutory Damages – Cybersquatting**

If you find for Hermès on its cybersquatting claim, you must determine Hermès's damages. Hermès seeks a statutory damage award, established by Congress for the domain name registration. Its purpose is not only to compensate Hermès for its losses, which may be hard to prove, but also to penalize the domain registrant and deter future violations of the law.

The amount you may award as statutory damages is not less than $1,000, nor more than $100,000.

## IV.    AFFIRMATIVE DEFENSE INSTRUCTIONS

### INSTRUCTION NO. ___

### Defense—"Classic" Fair Use

The owner of a trademark cannot exclude others from making a fair use of that trademark. Mason Rothschild alleges that he is making a fair use of the BIRKIN mark because he uses it as other than as a trademark, to accurately describe his own products.

Mason Rothschild has the burden of proving his fair use of the mark by a preponderance of the evidence and needs to show that he:

1.  used the mark other than as a trademark;

2.  used the mark fairly and in good faith; and

3.  used the mark only to describe his goods and not at all to describe Hermès's products.

*Authority:* Model Civil Jury Instruction for the Ninth Circuit § 15.24 (2019); 15 U.S.C. §§ 1115(b)(4); *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308-312 (2d Cir. 2013)**.**

## V.    CONCLUDING INSTRUCTIONS

### INSTRUCTION NO. ___

**Selection of Foreperson; Right to See Exhibits and Hear Testimony;**
**Communications with the Court**

You will shortly retire to the jury room to begin your deliberations. As soon as you get to the jury room, please select one of your number as the foreperson, to preside over your deliberations and to serve as your spokesperson if you need to communicate with the Court.

You will be bringing with you into the jury room a copy of my instructions of law and a verdict form on which to record your verdict. In addition, we will send into the jury room all the documentary and physical exhibits that were admitted into evidence, along with an index so that you can locate what you want. If you want any of the testimony, that can also be provided, in either transcript or read-back form. But please remember that it is not always easy to locate what you might want, so be as specific as you possibly can be in requesting portions of testimony. Also, if you want any of the videotapes replayed, please let us know and we will bring you back into the courtroom to see the relevant videotape.

Any of your requests, in fact any communication with the Court, should be made to me in writing, signed by your foreperson, and given to the marshal, who will be available outside the jury room throughout your deliberations. After consulting with counsel, I will respond to any question or request you have as promptly as possible, either in writing or by having you return to the courtroom so that I can speak with you in person.

*Authority*: Adapted from this Court's "Instructions of Law to the Jury" (ECF No. 190) in *Adidas Am., Inc. v. Thom Browne, Inc.,* 21-cv-05615-JSR (S.D.N.Y. Jan. 13, 2023) (Rakoff, J.).

**INSTRUCTION NO. ____**

**Verdict; Need for Unanimity; Duty to Consult**

You should not, however, tell me or anyone else how the jury stands on any issue until you have reached your verdict and recorded it on your verdict form.

Each of you must decide the case for yourself, after consideration, with your fellow jurors, of the evidence in the case, and your verdict must be unanimous. In deliberating, bear in mind that while each juror is entitled to his or her opinion, you should exchange views with your fellow jurors. That is the very purpose of jury deliberation — to discuss and consider the evidence; to listen to the arguments of fellow jurors; to present your individual views; to consult with one another; and to reach a verdict based solely and wholly on the evidence.

If, after carefully considering all the evidence and the arguments of your fellow jurors, you entertain a conscientious view that differs from the others', you are not to yield your view simply because you are outnumbered. On the other hand, you should not hesitate to change or modify an earlier view that, after discussion with your fellow jurors, now appears to you erroneous.

In short, your verdict must reflect your individual views and it must also be unanimous.

This completes my instructions of law.

*Authority*: Adapted from this Court's "Instructions of Law to the Jury" (ECF No. 190) in *Adidas Am., Inc. v. Thom Browne, Inc.,* 21-cv-05615-JSR (S.D.N.Y. Jan. 13, 2023) (Rakoff, J.).