**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

HERMÈS INTERNATIONAL and
HERMÈS OF PARIS, INC.,

           Plaintiffs,

           v.

MASON ROTHSCHILD,

           Defendant.

---

Civ. Action No. 22-cv-00384-JSR

## <u>DEFENDANT'S PROPOSED JURY INSTRUCTIONS</u>

Pursuant to the Court's Rules of Practice, Section 7, Defendant Mason Rothschild submits the following proposed jury instructions on liability and monetary relief (Sections I and II), as well as his proposed one-page preliminary instruction (Section III).

For general and concluding instructions, Mr. Rothschild would propose that the Court give the same general instructions (Nos. 1-8) and concluding instructions (Nos. 16-17) in this Court's "Instructions of Law to the Jury" (ECF No. 190) in *Adidas Am., Inc. v. Thom Browne, Inc.*, 21-cv-05615-JSR (S.D.N.Y. Jan. 13, 2023) (Rakoff, J.).

I. LIABILITY INSTRUCTIONS……………………………………………………………4

INSTRUCTION NO. 9. Liability in General…………………………………………....4

INSTRUCTION NO. 10. The Trademark at Issue……………………………………...5

INSTRUCTION NO. 11. Applicability of the Lanham Act……………………………….6

INSTRUCTION NO. 12. Applicability of Rogers……………………………..……………7

INSTRUCTION NO. 13. Artistic Relevance……………………………………….……....8

INSTRUCTION NO. 14. Explicitly Misleading……………………………………….…..9

INSTRUCTION NO. 14b. Likelihood of Confusion Factors If *MetaBirkins* are Found to be Not an Artistic or Expressive Work……………………………………………………..……12

INSTRUCTION NO. 15. Likelihood of Confusion—The Strength of Hermès' Trademark……14

INSTRUCTION NO. 16. Likelihood of Confusion—The Similarity of the Mark to the *MetaBirkins* Name……………………………………………….……………………15

INSTRUCTION NO. 17. Likelihood of Confusion—The Competitive Proximity of the Products in the Marketplace………………………………..…………………………………16

INSTRUCTION NO. 18. Likelihood of Confusion—The Likelihood that the Senior User will "Bridge the Gap" by Moving into the Junior User's Product Market…………………..…17

INSTRUCTION NO. 19. Likelihood of Confusion—Evidence of Actual Confusion……..……18

INSTRUCTION NO. 19b. Likelihood of Confusion—Evidence of Actual Confusion if *MetaBirkins* are Found to be Not An Artistic or Expressive Work……………...……………19

INSTRUCTION NO. 20. Likelihood of Confusion—The Junior User's Bad Faith in Adopting the Mark………………………………………………………………………………20

INSTRUCTION NO. 21. Likelihood of Confusion—The Respective Quality of the Products…21

INSTRUCTION NO. 22. Likelihood of Confusion—The Sophistication of the Consumers in the Relevant Market………………………………………………….……………………22

INSTRUCTION NO. 23. False Designations of Origin; False Descriptions and Representations………………………..……………………………………………23

INSTRUCTION NO. 24. Federal Dilution…………………………………………………25

INSTRUCTION NO. 25. Federal Dilution—Fame…………………………...………………26

INSTRUCTION NO. 26. Federal Dilution—Use as a Trademark…………………………………27

INSTRUCTION NO. 27. Federal Dilution—Blurring……………………………………..……28

INSTRUCTION NO. 28. Federal Dilution—Defenses……………………….…………………30

INSTRUCTION NO. 29. Cybersquatting……………………………..…………………………31

INSTRUCTION NO. 30. Dilution Under New York Law………………………………………33

INSTRUCTION NO. 31. Dilution Under New York Law—Defenses………….………………35

INSTRUCTION NO. 32. Common Law Trademark Infringement and Unfair Competition…...36


II. MONETARY RELIEF INSTRUCTIONS

INSTRUCTION NO. 33. Recovery of Profits……………………………………...……………37

[INSTRUCTION NO. 34. Statutory Damages—Cybersquatting……...……………………38][1]


III. ONE-PAGE PROPOSED PRELIMINARY INSTRUCTION………………………………39

---

[1] This instruction need not be given; the Court can decide statutory damages if there is any cybersquatting liability.

II. LIABILITY

**INSTRUCTION NO. 9**

<u>Liability in General</u>

With these general instructions in mind, let me now tum to the two claims in this case that the plaintiffs, Hermès International and Hermès of Paris, Inc (collectively referred to as "Hermès") bring against Mr. Mason Rothschild: claims of trademark infringement, trademark dilution, and cybersquatting.

I will shortly instruct you on each of the essential elements that Hermès must prove, by a preponderance of the evidence, to prevail on a given claim. This is known as establishing "liability." If Hermès has failed to prove any essential element of a particular claim by a preponderance of the evidence, you must find Mason Rothschild not liable on that claim.[2] By contrast, if you find that Hermès has proven by a preponderance of the evidence every essential element of a particular claim, and that no defenses apply, then you should find Mr. Rothschild liable on that claim.

Authority: Adapted from this Court's "Instructions of Law to the Jury" (ECF No. 190) in *Adidas Am., Inc. v. Thom Browne, Inc.,* 21-cv-05615-JSR (S.D.N.Y. Jan. 13, 2023) (Rakoff, J.)

---

[2] To the extent the Court rules that the *Polaroid* factors apply to the *Rogers* test, confusion would need to be established by Plaintiffs by "particularly compelling" evidence. Twin Peaks Productions, Inc. v. Publications Int'l Ltd., 996 F.2d 1366 (2d Cir. 1993).

**INSTRUCTION NO. 10**

<u>The Trademark at Issue</u>

Before we turn to Hermès' claims, a word about the trademarks at issue. A trademark can be a word, name, symbol, or design that indicates to consumers the company associated with a product. Here, Hermès asserts infringement and dilution of what it calls the "Birkin" mark.

For the purposes of this case, Hermès' Birkin mark means its use of the word "Birkin" on handbags in the manner described in a federal trademark registration that you can review at Plaintiffs' Exhibit 5. Hermès also asserts unfair competition with respect to Mason Rothschild's use of the Birkin mark, and also use of the Birkin handbag trade dress and the Hermès trademark as described in Plaintiffs' Exhibits 6 and 7.

Authority: Adapted from this Court's "Instructions of Law to the Jury" (ECF No. 190) in *Adidas Am., Inc. v. Thom Browne, Inc.,* 21-cv-05615-JSR (S.D.N.Y. Jan. 13, 2023) (Rakoff, J.)

**INSTRUCTION NO. 11**

<u>Applicability of Lanham Act</u>

**NOTE: Mr. Rothschild maintains his position that the Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), applies to this case and precludes Lanham Act liability unless Hermès establishes the following:**

In order to prevail on its trademark claims, Hermès must prove that any confusion relates to the source of a *tangible good* sold by Rothschild. Hermès cannot prevail by showing confusion regarding the source of Rothschild's *intangible artworks*. If you find either (1) that Rothschild has not sold any tangible goods, or (2) that Hermès has not proven that consumers are likely to be confused about the source of any tangible goods sold by Rothschild, you must find for Rothschild.

Authority: *Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003)

**INSTRUCTION NO. 12**

<u>Applicability of Rogers</u>

Where the defendant uses a mark as the title of an expressive work, or as part of the expressive work, that use is not infringing as long as (1) it has any artistic relevance whatsoever to the underlying work and (2) is not explicitly misleading.

You must first decide whether Rothschild's *MetaBirkins* are *expressive works*—i.e., a work that contains some creative expression, or conveys some meaning, message, critique, or commentary. The fact that a work is sold for profit does not mean it is not an expressive work. Many expressive works (movies, video games, paintings) are sold for profit. The *MetaBirkins* are expressive works if artistic or creative expression is the product being sold to consumers rather than the expression being used to advertise some other product.

If you decide that the *MetaBirkins* are expressive works, then you must find for Rothschild on all of Hermès' claims if his use of the *MetaBirkins* name and/or the images of Birkin bags have any artistic relevance whatsoever to the *MetaBirkins* art project (see Instruction No. 13) and those uses are not explicitly misleading (see Instruction No. 14).

If you decide that the *MetaBirkins* are not expressive works, then you may only find Rothschild liable if you find a likelihood of confusion as discussed below in Instruction No. 14b.


Authority: *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989)

**INSTRUCTION NO. 13**

<u>Artistic Relevance</u>

You must decide whether Rothschild's use of the *MetaBirkins* name had any artistic relevance whatsoever to the *MetaBirkins* art project. If you find that use of the *MetaBirkins* name was at all artistically relevant, you must find in Rothschild's favor on this question.

In considering whether Rothschild's use of the *MetaBirkins* name was artistically relevant to the *MetaBirkins* art project, you may consider whether Rothschild had any artistic intent. If you find that Rothschild had any artistic intent whatsoever, as opposed to having arbitrarily chosen the name solely to exploit the publicity value of Hermès's mark and without any relevance to the art project, then you must find for Rothschild on this issue.

Authority: *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989)

**INSTRUCTION NO. 14**

<u>Explicitly Misleading</u>

If you find that Rothschild's use of the *MetaBirkins* name was artistically relevant to the *MetaBirkins* art project, then you must consider whether use of that name was explicitly misleading.

Use of the *MetaBirkins* name is explicitly misleading only if Rothschild has made an *express* statement that falsely identified the source of the expressive works or explicitly misrepresented the content of those works. Use of the *MetaBirkins* name is not explicitly misleading merely because some consumers draw the incorrect *inference* that Hermès was somehow involved with the *MetaBirkins*. [Explicit misleadingness is not proven by likelihood of confusion.]

Authority: *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989)

**INSTRUCTION NO. 14 adding Polaroid factors**

**NOTE: Mr. Rothschild maintains the position that *Rogers* applies and that the *Polaroid* factors are not relevant to assessing explicit misleadingness under *Rogers*. If the Court disagrees with that understanding of *Rogers* and intends to instruct the jury on the *Polaroid* factors, then Rothschild proposes deleting the final bracketed sentence of the paragraph above and adding the following to the end of Instruction No. 14:**

In considering whether Rothschild's use of the *MetaBirkins* name was explicitly misleading, you may consider several factors relating to the likelihood that consumers in the market for Rothschild's *MetaBirkins* will be confused into thinking that Rothschild's *MetaBirkins* art project originates with Hermès. Those factors include:

1. the strength of the Birkin mark (see Instruction No. 15);

2. the similarity of the Birkin mark and the *MetaBirkins* name (see Instruction No. 16);

3. the competitive proximity of the products in the marketplace (see Instruction No. 17);

4. the likelihood that Hermès will "bridge the gap" by moving into the digital art market (see Instruction No. 18);

5. evidence of actual confusion (see Instruction No. 19);

6. whether Mason Rothchild adopted the *MetaBirkins* name in bad faith (see Instruction No. 20);

7. the respective quality of the products (see Instruction No. 21); and

8. the sophistication of the consumers in the relevant market (see Instruction No. 22);

9. whether the use of Hermès' mark is necessary to describe both Hermès' products and Rothschild's products, that is, whether the product is not readily identifiable without use of the mark;

10. whether Rothschild used only so much of Hermès' mark as is necessary to identify the product or service; and

11. whether Rothschild did anything that would, in conjunction with the mark, suggest sponsorship or endorsement by the plaintiff holder, that is, whether Rothschild's conduct or language reflects the true or accurate relationship between Rothschild's and Hermès' products or services.

Importantly, these factors are suggestive of explicit misleadingness only if together they show a *particularly compelling* likelihood of confusion. If you do not find that Hermès has made a particularly compelling showing of likely confusion, you must find for Rothschild on this issue.

In considering the factors I just described to you, please keep in mind that no one factor or consideration is conclusive, but each of these factors, as well as any other factors you find relevant, should be weighed in light of the total evidence presented at the trial to determine whether, on balance, that a particularly compelling likelihood of confusion exists.

Authority: *Twin Peaks Productions, Inc. v. Publications Int'l Ltd*., 996 F.2d 1366 (2d Cir. 1993); *Polaroid Corp. v. Polarad Electronics Corp*., 287 F.2d 492, 495 (2d Cir. 1961); *International Information Systems Sec. Certification Consortium, Inc. v. Security University, LLC*, 823 F.3d 153, 168 (2d Cir. 2016)

**INSTRUCTION NO. 14b**

Likelihood of Confusion Factors—If *MetaBirkins* are Found to be Not an Artistic or Expressive
Work

This instruction applies only if you find *MetaBirkins* to be <u>not</u> an artistic or expressive

work. Hermès contends that Mr. Rothschild's use of the *MetaBirkins* name is likely to confuse

consumers into thinking that the products are made and sold or otherwise connected with,

associated with, sponsored by or approved by Hermès, which owns the Birkin mark. In

considering whether Rothschild's use of the *MetaBirkins* name is likely to cause consumer

confusion, you may consider several factors relating to the likelihood that consumers in the

market for Rothschild's *MetaBirkins* will be confused into thinking that Rothschild's

*MetaBirkins* art project originates with Hermès. Those factors include:

1.  the strength of the Birkin mark (see Instruction No. 15);

2.  the similarity of the Birkin mark and the *MetaBirkins* name (see Instruction No. 16);

3.  the competitive proximity of the products in the marketplace (see Instruction No. 17);

4.  the likelihood that Hermès will "bridge the gap" by moving into the digital art market
    (see Instruction No. 18);

5.  evidence of actual confusion (see Instruction No. 19b);

6.  whether Mason Rothchild adopted the *MetaBirkins* name in bad faith (see Instruction
    No. 20);

7.  the respective quality of the products (see Instruction No. 21); and

8.  the sophistication of the consumers in the relevant market (see Instruction No. 22).

9.  whether the use of Hermès' mark is necessary to describe both Hermès' products and Rothschild's products, that is, whether the product is not readily identifiable without use of the mark;

10. whether Rothschild used only so much of Hermès' mark as is necessary to identify the product or service; and

11. whether Rothschild did anything that would, in conjunction with the mark, suggest sponsorship or endorsement by the plaintiff holder, that is, whether Rothschild's conduct or language reflects the true or accurate relationship between Rothschild's and Hermès' products or services.

In considering the factors I just described to you, please keep in mind that no one factor or consideration is conclusive, but each of these factors, as well as any other factors you find relevant, should be weighed in light of the total evidence presented at the trial to determine whether, on balance, that a particularly compelling likelihood of confusion exists.

Authority: *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961); *International Information Systems Sec. Certification Consortium, Inc. v. Security University*, LLC, 823 F.3d 153, 168 (2d Cir. 2016)

**INSTRUCTION NO. 15**

<u>Likelihood of Confusion—The strength of Hermès' trademark</u>

The first factor is the strength of Hermès Birkin trademark.  In some cases, the fact that the plaintiff's mark is widely recognized by consumers as an indication of the source of the plaintiff's goods suggests that consumers are more likely to be confused about the source of the defendant's goods if the defendant is using a similar mark. You may also consider that where the defendant seeks, at least in part, to engage with or comment on the plaintiff or the plaintiff's mark, it may be that consumers' recognition of the mark will make it *less likely* that consumers will be confused about the source of the defendant's products.

Authority: *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)

## INSTRUCTION NO. 16

### Likelihood of Confusion—The similarity of the mark and the *MetaBirkins* name

In ordinary trademark cases, the plaintiff objects to the defendant's use of the same or a similar mark as a trademark for the defendant's goods or services. In those cases, if the overall impression created by the defendant's mark is similar to the impression created by the plaintiff's mark, confusion might be more likely.

Here you must consider whether Rothschild's use of *MetaBirkins* as the name of his art project is likely to create confusion regarding the source of the MetaBirkins art project. In considering whether the name *MetaBirkins* is similar to Plaintiff's Birkin mark, you should take into account all of the context in which consumers encountered the *MetaBirkins*, including all surrounding content, and whether, in that context, consumers were likely to be confused. If you find that Rothchild's *MetaBirkins* artistically engaged with or commented on the Birkin bags, you should find that any similarity between *MetaBirkins* and Birkin and/or any similarity between Rothschild's artworks and the Birkin bags is probative of a *lack* of confusion.

Authority: *Polaroid Corp. v. Polarad Electronics Corp*., 287 F.2d 492, 495 (2d Cir. 1961)

**INSTRUCTION NO. 17**

<u>Likelihood of Confusion—The competitive proximity of the products in the marketplace</u>

The third factor is the competitive proximity of the products in the marketplace.  If Rothschild's *MetaBirkins* do not compete with products Hermès sells under its Birkin mark, then confusion is less likely.

If you find that Rothschild's *MetaBirkins* <u>do not</u> compete with any products sold by Hermès under the Birkin mark, you should find that this factor favors Rothschild. If you find that Rothschild's *MetaBirkins* <u>do</u> compete with any products sold by Hermès under the Birkin mark, you should find that this factor favors Hermès.

Authority: *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)

**INSTRUCTION NO. 18**

<u>Likelihood of Confusion—The likelihood that the senior user will "bridge the gap" by moving into the junior user's product market</u>

The fourth factor is whether Hermès will "bridge the gap."  A likelihood that Hermès will expand the goods and services offered under the allegedly infringing mark to compete with the Rothschild indicates that confusion may be more likely.

However, Hermès is not entitled to prevent others from creating expressive works that refer to or depict Birkin bags. If you find that *MetaBirkins* are expressive works, then in evaluating the likelihood of bridging the gap, you should not consider the likelihood that Hermès, either itself or in collaboration with artists, will create expressive works and/or license expressive works referring to Hermès.


Authority: *Polaroid Corp. v. Polarad Electronics Corp*., 287 F.2d 492, 495 (2d Cir. 1961)

## INSTRUCTION NO. 19

### Likelihood of Confusion—Evidence of actual confusion

The fifth factor is evidence of actual confusion among consumers.  In order to prove that Rothschild's use of the Birkin mark was explicitly misleading, Hermès must make a *particularly compelling* showing of likelihood of confusion. While actual confusion among relevant purchasers or likely purchasers is ordinarily not required for a finding of likelihood of confusion, lack of evidence of actual confusion among relevant purchasers or likely purchasers is probative on the question of confusion. Specifically, the lack of evidence of actual confusion suggests that there is not a particularly compelling case of confusion. Actual confusion requires more than a general mistake or inadvertence.[3]

In considering whether Hermès has offered evidence of actual confusion among relevant purchasers or likely purchasers, you may consider survey evidence that you find probative of the question. You should carefully consider whether the methodology of any surveys was scientifically sound, and whether any offered surveys demonstrate confusion regarding the source of tangible products that Hermès alleges are infringing.

Authority: *Polaroid Corp. v. Polarad Electronics Corp*., 287 F.2d 492, 495 (2d Cir. 1961)

---

[3] Reply All Corp. v. Gimlet Media, LLC, 843 F. App'x 392, 397 (2d Cir. 2021).

**INSTRUCTION NO. 19b**

<u>Likelihood of Confusion—Evidence of actual confusion if *MetaBirkins* are found not to be an artistic or expressive work</u>

This instruction applies only if you find *MetaBirkins* to be <u>not</u> an artistic or expressive work.

The fifth factor is evidence of actual confusion among consumers.  In order to prove that Rothschild's use of the Birkin mark was infringing, Hermès must make a showing of likelihood of confusion. While actual confusion among relevant purchasers or likely purchasers is ordinarily not required for a finding of likelihood of confusion, lack of evidence of actual confusion among relevant purchasers or likely purchasers is probative on the question of confusion. Specifically, the lack of evidence of actual confusion suggests that there is not a likelihood of confusion. Actual confusion requires more than a general mistake or inadvertence.[4]

In considering whether Hermès has offered evidence of actual confusion among relevant purchasers or likely purchasers, you may consider survey evidence that you find probative of the question. You should carefully consider whether the methodology of any surveys was scientifically sound, and whether any offered surveys demonstrate confusion regarding the source of tangible products that Hermès alleges are infringing.

Authority: *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)

---

[4] *Reply All Corp. v. Gimlet Media, LLC*, 843 F. App'x 392, 397 (2d Cir. 2021).

**INSTRUCTION NO. 20**

Likelihood of Confusion—The junior user's bad faith in adopting the mark

The sixth factor is whether Rothschild acted in bad faith.  Rothschild's intent in choosing the Birkin bag as the subject of his art project and using the *MetaBirkins* name for the art project is relevant to your determination of explicit misleadingness. If you find that Rothschild acted in bad faith purely to capitalize on the commercial value of Hermès' Birkin mark you may find this would favor Hermès.  On the other hand, if you find that Rothschild had any artistic intent in creating his images and naming his art project *MetaBirkins*, or otherwise acted in good faith, you may find that this factor favors Rothschild.

Authority: *Polaroid Corp. v. Polarad Electronics Corp*., 287 F.2d 492, 495 (2d Cir. 1961)

**INSTRUCTION NO. 21**

<u>Likelihood of Confusion—The respective quality of the products</u>

The seventh factor is the respective quality of the products. You should not consider the artistic merit of Rothschild's artworks. If you find that Rothschild's *MetaBirkins* were expressive works, the respective quality of the products is not relevant. If you find that Rothschild's *MetaBirkins* are not expressive works, then you may consider the quality of any tangible goods sold by Rothschild as those products compare to products sold by Hermès.


Authority: *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)

**INSTRUCTION NO. 22**

<u>Likelihood of Confusion—The sophistication of the consumers in the relevant market</u>

The final factor is the sophistication of the consumers.  The more sophisticated the potential buyers of the goods and services or the more costly the goods and services, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be. In general, purchasers of expensive goods, like Rothschild's *MetaBirkins*, are considered to be sophisticated. If you find that purchasers of Rothschild's *MetaBirkins* are sophisticated, you may find that this factor weighs in Rothschild's favor.  If you find that purchasers of Rothschild's *MetaBirkins* are unsophisticated, you may find this factor weighs in Hermès' favor.


Authority: *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)

INSTRUCTION NO. 23

<u>False Designations of Origin; False Descriptions and Representations</u>

Hermès alleges claims of unfair competition against Mason Rothschild under federal law. To establish unfair competition, Hermès has the burden of proving each of the following by a preponderance of the evidence:

1. Mason Rothschild used in commerce the Birkin mark, the Hermès word mark, and the Birkin handbag trade dress; and made false designations of origin, false or misleading descriptions of fact, or false or misleading representations of fact, which—

2. are likely to cause confusion or mistake, or to deceive, as to the affiliation, connection, or association of Mason Rothschild's tangible goods with Hermès' goods, or to cause confusion or mistake, or to deceive, as to the origin, sponsorship, or approval of Mason Rothschild's tangible goods by Hermès.

In evaluating this claim, you should refer to the instructions regarding whether Rothschild's *MetaBirkins* are expressive works. If you find that the *MetaBirkins* are expressive works, then you should find that Rothschild's uses do not violate Hermès' rights as long as those uses have any artistic relevance whatsoever (see Instruction No. 13) and are not explicitly misleading (see Instruction No. 14).

If you do <u>not</u> find that the *MetaBirkins* are expressive works, then you should consider whether Rothschild's use of the *MetaBirkins* name and/or the images of the Birkin bags was likely to cause confusion. In making this decision, you may consider several factors relating to the likelihood that consumers in the market for Rothschild's *MetaBirkins* will be confused into thinking that Rothschild's *MetaBirkins* art project originates with Hermès . Those factors include:

1.  the strength of the Birkin mark (see Instruction No. 15);

2.  the similarity of the Birkin mark and the *MetaBirkins* name (see Instruction No. 16);

3.  the competitive proximity of the products in the marketplace (see Instruction No. 17);

4.  the likelihood that Hermès will "bridge the gap" by moving into the digital art market (see Instruction No. 18);

5.  evidence of actual confusion (see Instruction No. 19b);

6.  whether Mason Rothchild adopted the *MetaBirkins* name in bad faith (see Instruction No. 20);

7.  the respective quality of the products (see Instruction No. 21); and

8.  the sophistication of the consumers in the relevant market (see Instruction No. 22).

9.  whether the use of Hermès' mark is necessary to describe both Hermès' products and Rothschild's products, that is, whether the product is not readily identifiable without use of the mark;

10. whether Rothschild used only so much of Hermès' mark as is necessary to identify the product or service; and

11. whether Rothschild did anything that would, in conjunction with the mark, suggest sponsorship or endorsement by the plaintiff holder, that is, whether Rothschild's conduct or language reflects the true or accurate relationship between Rothschild's and Hermès' products or services.

Authority: 15 U.S.C. § 1125(a); *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)

# INSTRUCTION NO. 24

## Federal Dilution

Hermès also asserts a claim for trademark dilution claim under the federal law. Dilution requires a showing that Rothschild's *MetaBirkins* are likely to dilute the distinctiveness of Hermès' Birkin mark by impairing its distinctiveness in the mind of the public.

To prove dilution under federal law, Hermès must prove each of the following, that:

1. the Birkin mark is famous (see Instruction No. 25);

2. Mason Rothschild is making commercial use of the *MetaBirkins* name as a trademark in commerce (see Instruction No. 26);

3. Mason Rothschild's use began after the Birkin mark became famous; and

4. Mason Rothschild's use of *MetaBirkins* as a trademark dilutes the quality of the Birkin mark by diminishing its capacity to identify and distinguish Hermès's goods and services, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury (see Instruction No. 27).

Authority: Adapted from this Court's "Instructions of Law to the Jury" (ECF No. 190) in *Adidas Am., Inc. v. Thom Browne, Inc.,* 21-cv-05615-JSR (S.D.N.Y. Jan. 13, 2023) (Rakoff, J.); 15 U.S.C. § 1125(c)(1).

**INSTRUCTION NO. 25**

Federal Dilution—Fame

The Birkin mark is famous if you find it is *widely recognized by the general consuming public of the United States* as a designation of source of the goods or services of the mark's owner. "Famous" means essentially a household name, across the entire United States, and not in some particular region or city, or among some specific segment of the American public, but rather among the general public.[5]

In determining whether the Birkin mark is "famous," you may consider: (i) the duration, extent, and geographic reach of advertising and publicity of the mark; (ii) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) the extent of actual recognition of the mark; and (iv) whether the mark is registered.

If you do not find that Birkin is a famous mark, you must find against Hermès on the federal dilution claim.

Authority: Adapted from this Court's "Instructions of Law to the Jury" (ECF No. 190) in *Adidas Am., Inc. v. Thom Browne, Inc.,* 21-cv-05615-JSR (S.D.N.Y. Jan. 13, 2023) (Rakoff, J.)

---

[5]McCarthy  § 24:104; *DigitAlb, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547, 557 (S.D.N.Y. 2018); *Friesland Brands, B.V. v. Vietnam Nat'l Milk Co*., 228 F. Supp. 2d 399, 412 (S.D.N.Y. 2002); *Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 193 F. Supp. 3d 245, 283 (S.D.N.Y. 2016); *George Nelson Found. v. Modernica, Inc*., 12 F. Supp. 3d 635, 648 (S.D.N.Y. 2014); *Capri Sun GmbH v. American Beverage Corp.*, 595 F.Supp.3d 83, 182 (S.D.N.Y. 2022); *DigitAlb, Sh.a v. Setplex, LLC*, 284 F.Supp.3d 547, 557 (S.D.N.Y. 2018).

**INSTRUCTION NO. 26**

<u>Federal Dilution—Use as a Trademark</u>

Use as a trademark requires that you find that Mason Rothschild was using the name *MetaBirkins* as a trademark to identify the source of his goods or services, and not as part of a communicative or informational message, or as a description of the content or message of an artistic work.[6] If you find that Mason Rothschild was not suing *MetaBirkins* as a trademark, you must find against Hermès on the federal dilution claim.

Authority: Adapted from this Court's "Instructions of Law to the Jury" (ECF No. 190) in *Adidas Am., Inc. v. Thom Browne, Inc.,* 21-cv-05615-JSR (S.D.N.Y. Jan. 13, 2023) (Rakoff, J.)

---

[6] *MasterCard Intern. Inc. v. Nader 2000 Primary Committee, Inc*., 2004 WL 434404, at *8 (S.D.N.Y. Mar. 8, 2004).

### INSTRUCTION NO. 27

#### Federal Dilution—Blurring

You must also determine whether Rothschild's use of the Birkin impairs the distinctiveness of the Birkin mark by what is known as "blurring"—an association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark. "Distinctiveness" means the ability of the Birkin mark to serve as a trademark identifying Hermès's products to the public.[7] Relevant factors may include: the degree of similarity between the *MetaBirkins* name and the Birkin mark; the degree of inherent or acquired distinctiveness of the Birkin mark; the extent to which Hermès is engaging in substantially exclusive use of the Birkin mark; the degree of recognition of the Birkin mark; whether Mason Rothschild intended to create an association with the famous Birkin mark; and any actual association between *MetaBirkins* and the Birkin mark.

You may also consider any other relevant factors, and no one of these factors is conclusive.  You should keep in mind that proof of likely association is not itself proof of likely blurring.[8]  The use must be likely to impair the distinctiveness of the famous mark. Your task is to determine whether the use of *MetaBirkins* is likely to blur the Birkin trademark by

---

[7] McCarthy on Trademarks and Unfair Competition, Fifth Edition § 4:13 (2022) ("The term 'distinctive' is a key term of art in trademark law. The word can cause misunderstanding because it does not have the same connotation that it has in everyday speech. … [Trademark distinctiveness means the symbol] is used by a substantial number of people as a symbol to identify and distinguish one source") (footnotes omitted).
[8] *Select Comfort Corp. v. Baxter*, 2018 WL 6529493 (D. Minn. Dec. 12, 2018), *aff'd in relevant part*, 996 F.3d 925 (8th Cir. 2021) ("Evidence of Defendants' intent [to create an association] could be probative of the fact that such an association exists. However, such evidence does not create a presumption or admission of actual association. There must also be injury to the famous trademark. Anti-dilution law does not prohibit free-riding.").

diminishing the capacity of Birkin to identify and distinguish Hermès' goods and services to the public.[9]

Authority: Adapted from this Court's "Instructions of Law to the Jury" (ECF No. 190) in *Adidas Am., Inc. v. Thom Browne, Inc.,* 21-cv-05615-JSR (S.D.N.Y. Jan. 13, 2023) (Rakoff, J.)

---

[9] 15 U.S.C, § 1125(c)(2)(B); *Starbucks Corp. v. Wolfe's Borough Coffee, Inc*., 588 F.3d 97, 109 (2d Cir. 2009); *Gap, Inc. v. G.A.P. Adventures Inc*., 2011 WL 2946384, at *17 (S.D.N.Y. Jun. 24, 2011); 4 McCarthy § 24:118.

**INSTRUCTION NO. 28**

<u>Federal Dilution—Defenses</u>

It is a defense to a claim of dilution that a use is identifying and parodying, criticizing, or commenting upon Hermès or Birkin unless the use is made as a designation of source for Rothschild's own goods or services. A use that informs users of the content of an expressive work is not a designation of source.

Separately, it is a defense to dilution liability that a use is *noncommercial*, even if it is also serving as a designation of source or a commercial use in commerce.[10] A noncommercial use is one that does more than propose a commercial transaction—i.e., a use that communicates artistic or creative content is a noncommercial use—even if it is sold for money in the market.[11]

Authority: Adapted from this Court's "Instructions of Law to the Jury" (ECF No. 190) in *Adidas Am., Inc. v. Thom Browne, Inc.,* 21-cv-05615-JSR (S.D.N.Y. Jan. 13, 2023) (Rakoff, J.)

---

[10] 15 U.S.C. § 1125
[11] *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 906-07 (9th Cir. 2002).

**INSTRUCTION NO. 29**

Cybersquatting

To establish a claim of cybersquatting, Hermès must show that the Birkin mark was distinctive at the time the domain name <metaBirkins.com> was registered; that the <metaBirkins.com> domain name is identical to, or confusingly similar to, Hermès' Birkin mark; and that Mason Rothschild had a bad faith intent to profit from registering the domain name.

In determining whether Mr. Rothschild had a bad faith intent to profit, you may consider factors such as his use of the domain name in connection with the bona fide offering of any goods or services; his bona fide noncommercial or fair use of the mark in a site accessible under the domain name; whether he intended to divert consumers from the mark owner's online location to a site that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark; whether he offered to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct; whether he provided  material and misleading false contact information when applying for the registration of the domain name, intentionally failed to maintain accurate contact information, or had a pattern of such conduct; whether he registered or acquired multiple domain names which he knew were identical or confusingly similar to marks of others or dilutive of famous marks of others; and the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous.

You may not find bad faith intent if you find that Rothschild believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful.[12] If you find that Rothschild's use was artistically relevant to the *MetaBirkins* art project and not explicitly misleading, then it is a lawful use, and you must find for Mr. Rothschild on Hermès' cybersquatting claim.

Authority: *Webadviso v. Bank of Am. Corp.*, 448 F. App'x 95, 97 (2d Cir. 2011)

---

[12] 15 U.S.C. § 1125(d).

**INSTRUCTION NO. 30**

<u>Dilution Under New York Law</u>

To show dilution under New York law, Hermès must show that it possesses a strong mark.  In determining whether a mark is "strong," you may consider:

i.  The duration, extent, and geographic reach of advertising and publicity of the Birkin mark, whether advertised or publicized by Hermès or third parties.

ii.  The amount, volume, and geographic extent of sales of goods or services offered under the Birkin mark.

iii.  The extent of actual recognition of the Birkin mark.

iv.  Whether the Birkin mark was registered on the principal register.

Hermès must also show that the Birkin mark and *MetaBirkins* are "substantially similar;" that is, if they are at least similar enough that a substantial segment of the target group of customers sees the two marks as *essentially the same*.  It is not enough that the two marks are similar enough to confuse consumers—they must be so similar that consumers would see them as essentially the same.[13]

If you find that Birkin is distinctive and that *MetaBirkins* is substantially similar, you should then determine whether the use of *MetaBirkins* is likely to blur the Birkin trademark by diminishing the capacity of BirkinS to identify and distinguish Hermès's goods and services to the public. To determine the likelihood of blurring you may consider the following factors, including: (i) the similarity of the Birkin and *MetaBirkins*; (ii) the similarity of the products

---

[13] *Akiro LLC v. House of Cheatham, Inc.*, 946 F. Supp. 2d 324, 342 (S.D.N.Y. 2013); *Miss Universe, L.P., LLLP v. Villegas*, 672 F. Supp. 2d 575, 595 (S.D.N.Y. 2009).

covered; (iii) the sophistication of the consumers; (iv) whether Mason Rothschild acted with predatory intent; (v) the renown of the Birkin mark; and (vi) the renown of *MetaBirkins*.

If you find that Birkin is distinctive and that *MetaBirkins* is substantially similar, you should also consider whether the use of *MetaBirkins* is likely to tarnish the Birkin trademark by injuring its business reputation.[14]

You should keep in mind that association is not itself blurring. Your task is to determine whether the use of *MetaBirkins* is likely to blur the Birkin trademark by diminishing the capacity of Birkin to identify and distinguish Hermès' goods and services to the public or tarnish it by injuring its business reputation.

Authority: *New York Stock Exchange, Inc. v. New York, New York Hotel LLC*, 293 F.3d 550, 558 (2d Cir.2002)

---

[14] N.Y. Gen. Bus. Law § 360–l.

**INSTRUCTION NO. 31**

<u>Dilution Under New York Law—Defenses</u>

If you find that Rothschild is entitled to a defense under federal dilution law, you must find that the state dilution claim fails as well.

It is a defense that a use is identifying and parodying, criticizing, or commenting upon Hermès or Birkin unless the use is made as a designation of source for Rothschild's own goods or services. A use that informs users of the content of an expressive work is not a designation of source.

Separately, it is a defense that a use is noncommercial, even if it is also serving as a designation of source or a commercial use in commerce.  A noncommercial use is one that does more than propose a commercial transaction—i.e., a use that communicates artistic or creative content is a noncommercial use—even if it is sold for money in the market.

Authority: *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc*., 156 F. Supp. 3d 425, 434 n.3 (S.D.N.Y. 2016), *aff'd*, 674 F. App'x 16 (2d Cir. 2016); *Tiffany (NJ) Inc. v. eBay, Inc*., 576 F. Supp. 2d 463, 523 (S.D.N.Y. 2008), *aff'd*, 600 F.3d 93 (2d Cir. 2010)

## INSTRUCTION NO. 32

### Common Law Trademark Infringement and Unfair Competition

Hermès alleges claims of infringement and unfair competition under New York common law against Mason Rothschild.

In order to establish a violation of common law infringement or unfair competition, Hermès has the burden of proving each of the following by a preponderance of the evidence:

1.      Mason Rothschild used Birkin in commerce;

2.      Mason Rothschild acted in bad faith; and

3.      Mason Rothschild's use of Birkin caused a likelihood of confusion.

If you determine that *MetaBirkins* is an expressive work (see Instruction No. 12), that the *MetaBirkins* name is artistically relevant to the *MetaBirkins* artworks (see Instruction No. 13), and that Mr. Rothschild's use of the name *MetaBirkins* is not explicitly misleading (see Instruction No. 14), then you must find for Mr. Rothschild on this claim. If you find that *MetaBirkins* is not an expressive work, then in determining whether Mason Rothschild is liable for infringement or unfair competition under common law, you should follow the earlier instructions concerning likelihood of confusion and defenses (see Instruction No. 19b).

Authority: *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 485 (2d Cir. 2005)

III. MONETARY RELIEF INSTRUCTIONS

**INSTRUCTION NO. 33**

<u>Recovery of Profits</u>

If you find Mason Rothschild liable for trademark infringement or unfair competition, or if you find Mason Rothschild liable for willful federal trademark dilution, you may award Hermès the profits you determine that Mason Rothschild earned as a result of his liability. Conduct is willful if a person knows they are infringing the trademark owner's trademark, but a good faith belief in noninfringement, even if wrong, is not willful.

You should measure profits as the difference between Mason Rothschild's total revenues relating to the Accused Products and the expenses Mason Rothschild incurred in order to produce and sell them.  Hermès has the burden of proving Mason Rothschild's gross revenue from any products you determine are infringing. Mason Rothschild has the burden of proving all elements of costs or deductions claimed against his gross revenue, as well as profits attributable to factors other than the use of the Birkin mark.

You should not award any profits from any products or services you do not determine are infringing.

Authority: Adapted from this Court's "Instructions of Law to the Jury" (ECF No. 190) in *Adidas Am., Inc. v. Thom Browne, Inc.,* 21-cv-05615-JSR (S.D.N.Y. Jan. 13, 2023) (Rakoff, J.)

**[INSTRUCTION NO. 33]**

[Statutory Damages – Cybersquatting]

**NOTE: This instruction need not be given; the Court can decide statutory damages if there is any cybersquatting liability**.

[If you find for Hermès on its cybersquatting claim, you may award as statutory damages of not less than $1,000, nor more than $100,000. In doing so, you may consider Hermès's damages from the domain name registration.]

Hermès owns trademark rights in the Birkin mark. Hermès asserts claims for trademark infringement, unfair competition, trademark dilution, and cybersquatting against Mason Rothschild for Mr. Rothschild's creation and sale of *MetaBirkins*, a series of 100 artworks depicting imaginary Birkin handbags covered in colorful fake fur. Each of Rothschild's *MetaBirkins* artworks is associated with an NFT—a small bit of computer code recorded on something called the "blockchain." Each *MetaBirkins* NFT points to the particular *MetaBirkins* artwork with which it is associated, and acts as a deed of ownership for that artwork.

Hermès primary claim asserts that Rothschild's use of the title *MetaBirkins* for his artwork and associated NFTs is likely to cause confusion among ordinary consumers by creating the false impression that *MetaBirkins* are created by Hermès, or are associated or connected with Hermès, or have Hermès's sponsorship, endorsement, or approval.

Mr. Rothschild denies that *MetaBirkins* create confusion among consumers. Mr. Rothschild also asserts that the First Amendment to the U.S. Constitution gives him the right to make artworks depicting Birkin bags, and to give those artworks a title that describes what the artworks are about.

Hermès is seeking Rothschild's profits on the *MetaBirkins*. Mr. Rothschild is seeking a ruling that his artwork is protected by the First Amendment, and that he neither confused consumers nor diluted the Birkin mark nor committed cybersquatting. Mr. Rothschild is also seeking to have Hermès for the money he has had to pay to lawyers to defend this lawsuit.

Your job as the jury will be to hear the evidence, and to weigh it carefully according to the legal instructions I will give you at the end of the trial. You will do so without bias toward either party. I ask you to keep your minds open until you have heard all the evidence, and to render the verdict that you believe the law requires given the evidence you will hear.