# BakerHostetler

Baker & Hostetler LLP

Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114-1214

T 216.621.0200
F 216.696.0740
www.bakerlaw.com

Deborah A. Wilcox
direct dial: 216.861.7864
DWilcox@bakerlaw.com

February 5, 2023

**VIA E-MAIL RAKOFFNYSDCHAMBERS@NYSD.USCOURTS.GOV**

Hon. Jed S. Rakoff
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   *Hermès International et al. v. Rothschild, 22-cv-00384-JSR*
    *Neal Supplemental Report and Proposed Jury Instruction*

Dear Judge Rakoff:

We are counsel to Plaintiffs Hermès International and Hermès of Paris, Inc. (collectively "Hermès"), and write with respect to the above-referenced matter and in response to counsel for Defendant Mason Rothschild's ("Rothschild") letter to Your Honor dated February 4, 2023 proposing an addition to jury Instruction No. 10 and submitting Dr. Neal's Supplemental Expert Rebuttal Report ("Supplemental Report").

The Supplemental Report is unreasonable and would cause undue prejudice. Dr. Isaacson's expert report was submitted on August 4, 2022. The survey focused on Rothschild's MetaBirkins webpage. Nothing in the survey has changed since August 4th. Dr. Neal submitted his rebuttal report on September 1, 2022, and he is attacking Dr. Isaacson's survey. Though Rothschild's counsel repeatedly says that Hermès has changed its position, the Court can look back to the arguments from the time of the complaint and motion to dismiss—this case has always been the same. That Rothschild's website included the Hermès name is certainly an aggravating factor, the

Hon. Jed S. Rakoff
February 5, 2023
Page 2

reality is that this is not new and there was never a trademark infringement claim about the Hermès mark standing alone.

Given that Dr. Isaacson is done testifying and out of the jurisdiction, this is prejudicial to Hermès. Rothschild has known about this issue for several months—there was no reason to wait until 6 days into trial to seek to supplement Dr. Neal's report or testimony.

Further, Dr. Neal should not be permitted to submit a Supplemental Report or related testimony at trial because his additional opinions are based on his mistaken understanding that "Hermès no longer alleges that the presence of the name 'HERMES' on [Rothschild's] MetaBirkins website is causing a likelihood of confusion with [Hermès]." Supp. Report ¶ 1.2. Hermès has presented evidence in its case-in-chief that Rothschild has aggravated the likelihood of confusion caused by his use of the Birkin trademarks through statements indicating collaboration with Hermès. These misleading statements aggravate and contribute to the likelihood of confusion. By way of example only, Rothschild's statements that the MetaBirkins NFTs were a tribute to Hermès—which was on his MetaBirkins.com website before receiving the cease and desist letter, on the Rarible NFT marketplace, and in Rothschild's *MetaBirkins and Beyond* blog post—could be interpreted by the relevant consuming public that there is an association or sponsorship with Hermès. Similarly, Rothschild explicitly stated multiple times in writing that he was trying to reach out to Hermès before the MetaBirkins NFTs launched and this is another example of how he used the Hermès name to confuse potential consumers into believing that the MetaBirkins NFTs were in some way connected to Hermès.

To the extent the Court is nonetheless considering Dr. Neal's Supplemental Report, it should not be permitted because Hermès maintains that the disclaimer on Rothschild's MetaBirkins.com website is ineffective in dispelling a likelihood of confusion. The disclaimer states, "We are not affiliated, associated, authorized, endorsed by, or in any way officially connected with the HERMES, or any of its subsidiaries or its affiliates. The official HERMES website can be found at https://www.hermes.com/." Tr. 741:5-10. The use of "HERMES" in this disclaimer refers to Hermès the company name and the manufacturer and source of the Birkin handbag.

After receiving the cease and desist letter, Rothschild added a disclaimer that uses "HERMES" *three* times. The Second Circuit "has placed the burden of proving the effectiveness of a disclaimer squarely on the shoulders of the party relying upon it." *Museum of Modern Art v. MOMACHA IP LLC*, 339 F. Supp. 3d 361, 377 (S.D.N.Y. 2018) *quoting BIC Corp. v. Far Eastern Source Corp.*, atNo. 99-CV-11385 (HB), 2000 WL 1855116, at *6 (S.D.N.Y. Dec. 19, 2000), *aff'd*, 23 F. App'x 36 (2d Cir. 2001). Hermès disputes that Rothschild has met his burden and in fact contends that the disclaimer enhances confusion given its presence on the MetaBirkins.com website and the repeated use of "HERMES."

Dr. Isaacson testified that he tested the MetaBirkins.com webpage to determine whether it caused confusion as either coming from Hermès or Birkin or sponsored, authorized, or approved by Hermès or Birkin. Tr. 738:25-739:4. Dr. Isaacson tested the MetaBirkins.com webpage because it is where Rothschild advertises the MetaBirkins NFTs. Tr. 740:19-23. Dr. Isaacson also testified

Hon. Jed S. Rakoff
February 5, 2023
Page 3

that he chose to measure the Metabirkins.com webpage because it has a disclaimer and he wanted his research to reflect the effect of the disclaimer as well. *Id.* When asked why he wanted to include the disclaimer in the test page of the survey, Dr. Isaacson responded,

> A. I wanted to include it so that I could have my survey measure the effect of the disclaimer. If we zoom back out to see the whole web page, you can see there's three things that can occur when someone comes to this web page. They might see the disclaimer and they might realize from the disclaimer that Hermès or Birkin is not in any way connected with this web page. They might not notice the disclaimer at all; it is only two faint lines on a very busy page. And then they might see the disclaimer and misread it and take away the mistaken impression that the web page is connected with Hermès or Birkin. So I wanted to make sure that my survey reflected the effect of the disclaimer.
>
> Q. So even with a disclaimer, there can still be a likelihood of confusion?
>
> A. Absolutely.

Tr. 743:20-744:9. Dr. Isaacson further testified that he tested the elements together as a group "because that is how someone would encounter them who came together. They'd see them all together, not individually." Tr. 746:13-18. "The closer the survey methods mirror the situation in which the ordinary person would encounter the trademark, the greater the evidentiary weight of the survey results." J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION Sec. 32:163 (5th Ed. 2018).

Dr. Isaacson's survey found that even with the disclaimer, there was 18.7 % net confusion, which he opined indicated a substantial likelihood of consumer confusion. Tr. 757:7-13. In the context of NFT purchasers in this case, Dr. Isaacson testified that likelihood of confusion "means that people who encounter that web page, that there's a likelihood that a substantial percentage of them would either think that that web page comes from Hermès or Birkin or is sponsored or authorized or approved by Hermès or Birkin." Tr. 761:9-15. The first question the survey asked was, "What company, companies, person or people do you think makes or provides the items shown on the web page?" Tr. 748:11-19. An acceptable response would be Hermès, in addition to Birkin. Indeed, the evidence shows that Hermès is the company that manufacturers, advertises, and sells, and thus is the source of, the Birkin handbag. Had Hermès removed the disclaimer in its entirety from the survey test page, Rothschild would have accurately claimed the survey test page did not mirror the real world.

In sum, Dr. Neal's last minute Supplemental Report is extremely prejudicial and untimely. In addition to being baseless, Dr. Isaacson completed his testimony last Friday and has already left the jurisdiction, and should Your Honor permit Dr. Neal's Supplemental Report and testimony, Dr. Isaacson would be unavailable to testify on redirect. Despite opposing counsel's characterizations, Hermès has not changed its position that the presence of the Hermès company name in the disclaimer and Rothschild's numerous public references to Hermès is part of

Hon. Jed S. Rakoff
February 5, 2023
Page 4

Rothschild's attempt to induce a likelihood of confusion between the MetaBirkins NFTs and the Birkin trademark and trade dress.

For these same reasons, it is unnecessary to include Rothschild's proposed jury Instruction No. 10 that "Hermès does not allege infringement of the 'Hermès' mark." Should Your Honor be considering such an instruction, Hermès submits that it should be followed by the following instruction: "You may consider, though, whether the manner in which Mr. Rothschild used the Hermès name in a manner that contributed to or aggravated the likelihood of consumer confusion. In particular, Mr. Rothschild bears the burden of proof in proving by a preponderance of the credible evidence that the disclaimer on his <https://metabirkins.com> website is sufficient to dispel a likelihood of consumer confusion."

We appreciate Your Honor's attention to this matter.

Sincerely,

Deborah A. Wilcox
Partner

cc: Rhett O. Millsaps II
    Christopher J. Sprigman
    Jonathan Harris
    Adam B. Oppenheim