Ct. Ex. 1



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HERMÈS INTERNATIONAL and
HERMÈS OF PARIS, INC.,

                    Plaintiffs,

          -v-

MASON ROTHSCHILD,                                    1:22-cv-384-JSR

                    Defendant.

## THE COURT'S INSTRUCTIONS OF LAW TO THE JURY

## I.  GENERAL INSTRUCTIONS

1. Duty of the Court

2. Duty of the Jury

3. Duty of Impartiality

4. Burden of Proof: Preponderance of the Evidence

5. Direct and Circumstantial Evidence

6. Witness Credibility

7. Deposition Testimony

8. Specialized Testimony

## II.  LIABILITY

9. Liability in General

10. The Trademark at Issue

11. Trademark Infringement

12. Trademark Dilution

13. Cybersquatting

14. First Amendment Protection

## III.  DAMAGES

15. Infringement and Dilution Damages: Recovery of Profits

16. Cybersquatting Damages

## IV.  CONCLUDING INSTRUCTIONS

17. Selection of Foreperson; Right to See Exhibits and Hear Testimony; Communications with the Court

18. Verdict; Need for Unanimity; Duty to Consult

## I.  GENERAL INSTRUCTIONS

### INSTRUCTION NO. 1

#### Duty of the Court

We are now approaching the most important part of this case, your deliberations. You have heard all the evidence in the case, as well as the final arguments of the lawyers for the parties. Before you retire to deliberate, it is my duty to instruct you as to the law that will govern your deliberations. These are the final and binding instructions, which entirely replace the preliminary instruction I gave you at the start of the case, which you should now discard.

Regardless of any opinion that you may have as to what the law may be or ought to be, it is your sworn duty to follow the law as I give it to you. Also, if any attorney or other person has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

Because my instructions cover many points, I have provided each of you with a copy of them, not only so that you can follow them as I read them to you now, but also so that you can have them with you for reference throughout your deliberations. In listening to them now and reviewing them later, you should not single out any particular instruction as alone stating the law, but you should instead consider my instructions as a whole.

## INSTRUCTION NO. 2

### Duty of the Jury

Your duty is to decide the fact issues in the case and arrive, if you can, at a verdict. You, the members of the jury, are the sole and exclusive judges of the facts. You pass upon the weight of the evidence; you determine the credibility of the witnesses; you resolve such conflicts as there may be in the testimony; and you draw whatever reasonable inferences you decide to draw from the facts as you determine them.

In determining the facts, you must rely upon your own recollection of the evidence. To aid your recollection, we will send you the exhibits at the start of your deliberations, together with an index to help you find what you want. If you need to review particular items of testimony, we can also arrange to provide them to you in transcript or read-back form.

Please remember that none of what the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions, is evidence. Nor is anything I may have said evidence. The evidence before you consists of just three things: the testimony given by witnesses that was received in evidence, the exhibits that were received in evidence, and any stipulations of the parties as to matters in evidence.

Testimony consists of the answers that were given by the witnesses to the questions that were permitted to be asked here in court. Please remember that questions, although they may provide the context for answers, are not themselves evidence; only answers are evidence, and you should therefore disregard any question to which I sustained an objection. Also, you may not consider any answer that I directed you to disregard or that I directed be stricken from the record. Likewise, you may not consider anything you heard about the contents of any exhibit that was not received in evidence.

4

More generally, you should be careful not to speculate about matters not in evidence. Your focus should be solely on the evidence that was presented here in court.

It is the duty of the attorney for each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. Counsel also have the right and duty to ask the Court to make rulings of law and to request conferences out of the hearing of the jury. All such questions of law must be decided by me. You should not show any prejudice against any attorney or party because the attorney objected to the admissibility of evidence, asked for a conference out of the hearing of the jury, or asked me for a ruling on the law.

I also ask you to draw no inference from my rulings or from the fact that on occasion I asked questions of certain witnesses. My rulings were no more than applications of the law and my questions were only intended for clarification or to expedite matters. You should understand that I have no opinion as to the verdict you should render in this case.

## INSTRUCTION NO. 3

### Duty of Impartiality

You are to perform your duty of finding the facts without bias or prejudice or sympathy or hostility as to any party, for all parties are equal under the law. You are to perform your final duty in an attitude of complete fairness and impartiality. You are not to be swayed by rhetoric or emotional appeals. It must be clear to you that if you were to let extraneous considerations interfere with your thinking, there would be a risk that you would not arrive at a true and just verdict. So do not be guided by anything except clear thinking and calm analysis of the evidence.

## INSTRUCTION NO. 4

### Burden of Proof: Preponderance of the Evidence

As you know, this is a civil case. In a civil case, a party who is making a claim against another party has what we call the "burden of proof," which is the burden of establishing each of the essential elements of that claim. Here, the plaintiffs, Hermès International Inc. and Hermès of Paris, Inc., which I will refer to collectively as "Hermès," has asserted various claims against Mason Rothschild, and therefore has the burden of proof as to those claims.

I will describe the essential elements of Hermès' claims shortly, but for now, keep in mind that for any given claim you are considering, Hermès must prove each of the essential elements of that claim by a preponderance of the credible evidence. The "credible evidence" means such evidence that you find worthy of belief. To establish an element of a claim by a "preponderance" of the credible evidence means to prove that that element is more likely true than not true.

When assessing whether a party has met its burden of proof or failed to do so, the question is not which party called the greater number of witnesses or how much time one party or another spent during the trial. The focus must always be on the quality of the evidence: its persuasiveness in convincing you of its truth.

7

## INSTRUCTION NO. 5

### Direct and Circumstantial Evidence

In deciding whether a party meets its burden of proof, you may consider both direct evidence and circumstantial evidence.

Direct evidence is evidence that proves a fact directly. For example, where a witness testifies to what he or she saw, heard, or observed, that is called direct evidence.

Circumstantial evidence is evidence that tends to prove a fact by proof of other facts. To give a simple example, suppose that when you came into the courthouse today the sun was shining and it was a nice day, but the courtroom blinds were drawn and you could not look outside. Later, as you were sitting here, someone walked in with a dripping wet umbrella, and, soon after, somebody else walked in with a dripping wet raincoat. Now, on our assumed facts, you cannot look outside of the courtroom and you cannot see whether it is raining. So you have no direct evidence of that fact. But on the combination of the facts about the umbrella and the raincoat, it would be reasonable for you to infer that it had begun raining.

That is all there is to circumstantial evidence. Using your reason and experience, you infer from established facts the existence or the nonexistence of some other fact. Please note, however, it is not a matter of speculation or guess; it is a matter of logical inference.

The law makes no distinction between direct and circumstantial evidence. Circumstantial evidence is of no less value than direct evidence, and you may consider either or both, and may give them such weight as you conclude is warranted.

8

## INSTRUCTION NO. 6

### Witness Credibility

It must be clear to you by now that counsel for the opposing parties are asking you to draw very different conclusions about various factual issues in the case. An important part of that decision will involve making judgments about the testimony of the witnesses you have listened to and observed. In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence that may help you to decide the truth and the importance of each witness's testimony.

Your decision to believe or to not believe a witness may depend on how that witness impressed you. How did the witness appear to you? Was the witness candid, frank, and forthright, or did the witness seem to be evasive or suspect in some way? How did the way the witness testified on direct examination compare with how the witness testified on cross-examination? Was the witness consistent, or contradictory? Did the witness appear to know what he or she was talking about? Did the witness strike you as someone who was trying to report his or her knowledge accurately? These are examples of the kinds of common-sense questions you should ask yourselves in deciding whether a witness is or is not truthful.

How much you choose to believe a witness may also be influenced by the witness's bias. Does the witness have a relationship with any of the parties that may affect how he or she testified? Does the witness have some interest, incentive, loyalty, or motive that might cause him or her to shade the truth? Does the witness have some bias, prejudice, or hostility that may cause the witness to give you something other than a completely accurate account of the facts he or she testified to?

You should also consider whether the witness had an opportunity to observe the facts he or she testified about, and whether the witness's recollection of the facts stands up in light of the other evidence in the case.

9

In other words, what you must try to do in deciding credibility is to size up a person just as you would in any important matter where you are trying to decide if a person is truthful, straightforward, and accurate in his or her recollection.

## INSTRUCTION NO. 7

### Depositions and Remote Testimony

Some of the testimony before you is in the form of a videotaped deposition that was received in evidence. At various times, moreover, excerpts from the depositions of several witnesses were read into evidence. A deposition is simply a procedure where prior to trial the attorneys may question a witness under oath before a court stenographer. You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony of a witness given live at trial.

In addition, one witness testified remotely by video conference. You should consider this testimony according to the same standards you use to evaluate the testimony of the witnesses who testified here in the courtroom.

11

## INSTRUCTION NO. 8

### Specialized Testimony

The law permits parties to offer testimony from witnesses who were not involved in the underlying events of the case but who by education or experience profess to expertise in a specialized area of knowledge. In this case, the expert witnesses who testified were Dr. Kevin Mentzer, Dr. Scott Duke Kominers, and Dr. Bruce Isaacson, called by the plaintiffs, and Dr. David Neal, called by the defendant. Specialized testimony is presented to you on the theory that someone who is learned in the field may be able to assist you in understanding specialized aspects of the evidence.

However, your role in judging credibility and assessing weight applies just as much to these witnesses as to other witnesses. When you consider the specialized opinions that were received in evidence in this case, you may give them as much or as little weight as you think they deserve. For example, a specialized witness necessarily bases his or her opinions, in part or in whole, on what that witness learned from others, and you may conclude that the weight given the witness's opinions may be affected by how accurate or inaccurate that underlying information is. More generally, if you find that the opinions of a specialized witness were not based on sufficient data, education, or experience, or if you should conclude that the trustworthiness or credibility of such a witness is questionable, or if the opinion of the witness is outweighed, in your judgment, by other evidence in the case, then you may, if you wish, disregard the opinions of that witness, entirely or in part. On the other hand, if you find that a specialized witness is credible, and that the witness's opinions are based on sufficient data, education, and experience, and that the other evidence does not give you reason to doubt the witness's conclusions, you may, if you wish, rely on that witness's opinions and give them whatever weight you deem appropriate.

12

## II.   LIABILITY

## INSTRUCTION NO. 9

### Liability in General

With these general instructions in mind, let me now turn to the three claims in this case that the plaintiff, Hermès, brings against the defendant, Mason Rothschild: first, a claim of trademark infringement; second, a claim of trademark dilution; and third, a claim of so-called "cybersquatting." I will shortly instruct you on each of the essential elements that Hermès must prove, by a preponderance of the evidence, to prevail on a given claim. This is known as establishing "liability" on that claim.

In addition, however, even if you find the defendant is liable on one or more of these claims, you must also consider whether the legally-protected right to artistic expression nonetheless bars liability or not.

## INSTRUCTION NO. 10

### The Trademark at Issue

Before we turn to Hermès' claims, a brief word about the trademark at issue. A trademark can be a word, name, symbol, or design that indicates to consumers the company associated with a product. Here, Hermès asserts trademark infringement, trademark dilution, and cybersquatting as to the "Birkin" mark, which is a federally registered trademark described at Plaintiffs' Exhibits 5 and 6 and that covers both the word "Birkin" and the handbag's distinct visual appearance. In this case, it is undisputed that Mr. Rothschild marketed certain NFTs under the heading "MetaBirkins" and that these NFTs were associated with digital images of fur-covered Birkin bags. Collectively, these NFTs and their associated images are here referred to as "MetaBirkins NFTs."

## INSTRUCTION NO. 11

### Trademark Infringement

Hermès' first claim is trademark infringement. Hermès asserts that Mr. Rothschild has infringed Hermès' Birkin mark (which as described in Instruction 10, includes both the word "Birkin" and the Birkin bag's distinct visual appearance) through the use of this mark in his MetaBirkins NFT project. Specifically, Hermès contends that Mr. Rothschild's use of the Birkin name and/or the handbag's distinct visual appearance is likely to confuse potential consumers into thinking that the MetaBirkins NFTs are made and sold or otherwise connected with, associated with, sponsored by or approved by Hermès.

In determining whether consumers are likely to be confused, you may draw on your own common experience. You should also take into consideration the following factors:

*First*, the strength of Hermès' "Birkin" trademark. A mark's strength is measured by its tendency to identify the products sold under the mark as associated with a particular company and may depend on factors such as advertising, media coverage of products bearing the mark, sales success, the longevity and exclusivity of the mark's use, consumer studies linking the mark to the company, and any other factor in evidence that you find bears on the strength of the mark. The stronger the mark, the more likely that similar uses by other parties will cause confusion.

*Second*, the degree of similarity between Hermès' Birkin mark and the MetaBirkins NFT's name and visual appearance. In particular, you should consider what effect the similarity or lack thereof has on consumers and whether any similarity between the parties' mark is likely to cause confusion among consumers.

*Third*, whether the MetaBirkins NFTs and Hermès' products compete for the same consumers.

15

*Fourth*, whether or not there is evidence that consumers are actually confused about whether Hermès offers or is associated with the MetaBirkins NFTs. While proof of actual confusion is not necessary to prove trademark infringement, and it is enough for plaintiffs to show likelihood of confusion, evidence of actual confusion can weigh in favor of there being a likelihood of confusion. Conversely, the absence of evidence of actual confusion can be evidence that confusion is unlikely.

*Fifth*, the degree of care and attention that an ordinary consumer would use when encountering Hermès' Birkin mark and the MetaBirkins NFTs. Generally, the more sophisticated and careful the average consumer of a product is, the less likely that that consumer will be confused about the company or individual behind a similarly named product. Here, given the high price of Birkin handbags, you should presume that consumers of the Birkin handbags are more sophisticated and deliberate than ordinary consumers.

*Sixth*, whether Hermès has shown that Mr. Rothschild acted in bad faith. In this context, bad faith goes to whether Mr. Rothschild used the "MetaBirkins" name and the visual appearance of the underlying images with the intention that consumers would believe that Hermès originated or endorsed the MetaBirkin NFTs, or whether Mr. Rothschild chose to purposely turn a blind eye to the likelihood that potential consumers would be confused.

*Seventh*, the likelihood that Hermès had concrete and realistic plans to produce and sell its own NFTs using the Birkin mark, such that potential consumers could mistakenly believe that the MetaBirkins NFT project represented Hermès' entry into the NFT market.

In considering the factors I just described to you, please keep in mind that no one factor or consideration is conclusive, but each of these factors, as well as any other factors you find relevant, should be weighed in light of the total evidence presented at the trial to determine whether, on

16

balance, a likelihood of confusion exists. If Hermès has proved that a likelihood of confusion exists, it has carried its burden of proof on its infringement claim.

- The degree to which Mr. Rothschild's use of the Birkin mark is similar to Hermès' use of the Birkin mark;

- The strength of the Birkin mark, which you should evaluate as described in Instruction 11;

- The degree to which the Birkin mark is widely recognized;

- Whether Mr. Rothschild intended to create an association with the Birkin mark;

- Any actual association by consumers of the MetaBirkins NFTs with the Birkin mark.

You may also consider any other relevant factors, and you should remember that no one of these factors is conclusive. Your task is to consider whether, after considering these factors and any others you find relevant, Hermès has proved that Mr. Rothschild's use of the Birkin mark is more likely than not to dilute the distinctiveness of the Birkin mark.

19

## **INSTRUCTION NO. 13**

### Cybersquatting

Finally, Hermès alleges that Rothschild engaged in "cybersquatting" through his use of the domain name <https://metabirkins.com> for his website. To prevail on this claim, Hermès must prove the following three elements: (1) that the Birkin mark was distinctive at the time the domain name <https://metabirkins.com> was registered; (2) that the <https://metabirkins.com> domain name is identical to, or confusingly similar to, Hermès's Birkin mark; and (3) that Mason Rothschild had a bad faith intent to profit from the Birkin mark.

In determining whether Mr. Rothschild acted in bad faith on this claim, you may consider whether Mr. Rothschild used the domain name in connection with the offering of any goods or products; and whether he intended to divert consumers from the mark owner's online location to a site that could harm the goodwill represented by the Birkin mark, either for commercial gain or with the intent to tarnish or disparage the mark. If you find that Mr. Rothschild had reasonable grounds to believe that the use of this domain name was lawful, you must find that he did not act in bad faith.

## INSTRUCTION NO. 14

### First Amendment Protection

If, and only if, you find Mr. Rothschild is liable for any one or more of the three claims described above, you must then consider whether, nonetheless, Mr. Rothschild is protected from liability on any claim because, in creating the MetaBirkins NFTs, he engaged in artistic expression protected by the First Amendment to the U.S. Constitution.

It must be clear to you by now that the parties disagree about the degree to which the MetaBirkins NFTs are works of artistic expression. Mr. Rothschild contends that, because he started the project primarily for artistic reasons, the NFTs are paradigmatic works of art. Hermès asserts that any artistic expression is incidental at best and Mr. Rothschild's real intention was to confuse people into thinking his MetaBirkins NFTs were sponsored by or associated with Hermès.

It is undisputed, however, that the MetaBirkins NFTs, including the associated images, are in at least some respects works of artistic expression, such as, for example, in their addition of a total fur covering to the Birkin bag images. Given that, Mr. Rothschild is protected from liability on any of Hermès' claims unless Hermès proves by a preponderance of the evidence that Mr. Rothschild's use of the Birkin mark was not just likely to confuse potential consumers but was intentionally designed to mislead potential consumers into believing that Hermès was associated with Mr. Rothschild's MetaBirkins project. In other words, if Hermès proves that Mr. Rothschild actually intended to confuse potential customers, he has waived any First Amendment protection.

Therefore, in your verdict form, you will first indicate whether Mr. Rothschild is liable for any one or more of Hermès' claims under the instructions set forth in Instructions 11, 12, and 13. But if you do find Mr. Rothschild liable for one or more of these claims, you must then indicate

21

on the verdict form, in accordance with Instruction 14, whether Mr. Rothschild is nonetheless protected from liability by reason of his First Amendment protection.

## III.   DAMAGES

### INSTRUCTION NO. 15

Infringement and Dilution Damages: Recovery of Profits

If you find Mr. Rothschild liable for trademark infringement and/or trademark dilution and if you further find that Hermès has overcome Mr. Rothschild's First Amendment protection by proving that his use of the Birkin mark was intentionally misleading, you must award Hermès the profits you determine Mr. Rothschild earned as a result of his infringement and/or dilution. You should measure such profits as the difference between Mr. Rothschild's total sales of any MetaBirkins NFTs that you determine infringed and/or diluted Hermès' Birkin mark and the expenses Mr. Rothschild incurred in order to make those sales. The burden is on Hermès to show by the preponderance of the credible evidence the amount Mr. Rothschild received from selling the MetaBirkins NFTs, while the burden is on Mr. Rothschild to show by the preponderance of the credible evidence the expenses he incurred in order to sell the MetaBirkins NFTs.

## **INSTRUCTION NO. 16**

### Cybersquatting Damages

If you find Mr. Rothschild liable for cybersquatting and if you further find that Hermès has overcome Mr. Rothschild's First Amendment protection by proving that his use of the Birkin mark was intentionally misleading, you may then award what are called "statutory damages" for the cybersquatting. The amount you may award as statutory damages is not less than $1,000, and not more than $100,000. In determining the exact amount of statutory damages, you may consider what amount may be necessary to penalize Mr. Rothschild for the use of the domain name and deter future cybersquatting.

## IV.     CONCLUDING INSTRUCTIONS

### INSTRUCTION NO. 17

Selection of Foreperson; Right to See Exhibits and Hear Testimony;
Communications with the Court

You will shortly retire to the jury room to begin your deliberations. As soon as you get to the jury room, please select one of your number as the foreperson, to preside over your deliberations and to serve as your spokesperson if you need to communicate with the Court.

You will be bringing with you into the jury room a copy of my instructions of law and a verdict form on which to record your verdict. In addition, we will send into the jury room all the documentary and physical exhibits that were admitted into evidence, along with an index so you can locate what you want. If you want any of the testimony, that can also be provided, in either transcript or read-back form. But please remember that it is not always easy to locate what you might want, so be as specific as you possibly can be in requesting portions of testimony. Also, if you want any of the videotapes replayed, please let us know and we will bring you back into the courtroom to see the relevant videotape.

Any of your requests, in fact any communication with the Court, should be made to me in writing, signed by your foreperson, and given to the marshal, who will be available outside the jury room throughout your deliberations. After consulting with counsel, I will respond to any question or request you have as promptly as possible, either in writing or by having you return to the courtroom so that I can speak with you in person.

25

## INSTRUCTION NO. 18

### Verdict; Need for Unanimity; Duty to Consult

You should not, however, tell me or anyone else how the jury stands on any issue until you have reached your verdict and recorded it on your verdict form.

Each of you must decide the case for yourself, after consideration, with your fellow jurors, of the evidence in the case, and your verdict must be unanimous. In deliberating, bear in mind that while each juror is entitled to his or her opinion, you should exchange views with your fellow jurors. That is the very purpose of jury deliberation — to discuss and consider the evidence; to listen to the arguments of fellow jurors; to present your individual views; to consult with one another; and to reach a verdict based solely and wholly on the evidence.

If, after carefully considering all the evidence and the arguments of your fellow jurors, you entertain a conscientious view that differs from the others', you are not to yield your view simply because you are outnumbered. On the other hand, you should not hesitate to change or modify an earlier view that, after discussion with your fellow jurors, now appears to you erroneous.

In short, your verdict must reflect your individual views and it must also be unanimous.

This completes my instructions of law.

26