N27VHERT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

HERMÈS INTERNATIONAL, et al.,

               Plaintiffs,

          v.                          22 Civ. 384 (JSR)

MASON ROTHSCHILD,

              Defendant.              Trial

------------------------------x

                              New York, N.Y.
                              February 7, 2023
                              11:00 a.m.

Before:

                    HON. JED S. RAKOFF,

                              District Judge
                              –and a Jury–

                        APPEARANCES

BAKER & HOSTETLER LLP
      Attorneys for Plaintiffs
BY:  DEBORAH A. WILCOX
     OREN J. WARSHAVSKY
     GERALD J. FERGUSON

HARRIS ST. LAURENT & WECHSLER LLP
      Attorneys for Defendant
BY:  ADAM B. OPPENHEIM
     JONATHAN A. HARRIS

LEX LUMINA PLLC
      Attorneys for Defendant
BY:  RHETT O. MILLSAPS, II
     CHRISTOPHER SPRIGMAN

1          (Trial resumed; jury not present)

2          THE COURT:  So we've received another note from the

3    jury which we've marked as Jury Note No. 3.  It reads as

4    follows:  On instruction 14, when you say "Mr. Rothschild's use

5    of the Birkin mark... was intentionally designed to mislead

6    potential consumers into believing that Hermès was associated

7    with..." specifically the word "associated," does that mean

8    that Hermès sanctioned, participated in, involved with the

9    creation of or consumers associating Hermès goodwill,

10   exclusively uniqueness of the mark with MetaBirkin.

11         So I would propose the following response for your

12   consideration:  To the jury, thank you for your most recent

13   note.  As used in the third paragraph of instruction 14, the

14   word "associated" means that Mr. Rothschild intended that

15   potential consumers of the MetaBirkins NFTs (including the

16   underlying images) would think that the MetaBirkins NFTs were

17   sponsored by or approved by Hermès or that Hermès had otherwise

18   agreed to be connected to the MetaBirkins NFTs.

19         So any problems with that from plaintiff?

20         Do you want me to read it again?

21         MR. WARSHAVSKY:  Your Honor, I might ask you to,

22   because when I first read this I thought the answer to both was

23   yes, and that's where my head was.  So if I could just -- I was

24   trying to keep up by reading just to make sure.

25         THE COURT:  All right.

N27VHERT

1          To the jury, thank you for your most recent note.  As

2     use you had in the third paragraph of instruction 14, the word

3     "associated" means that Mr. Rothschild intended that potential

4     consumers of the MetaBirkins NFTs, including the underlying

5     images, would think that the MetaBirkins NFTs were sponsored by

6     or approved by Hermès or that Hermès had otherwise agreed to be

7     connected to the MetaBirkins NFTs.

8          MR. WARSHAVSKY:  That sounds right, your Honor.

9          Oh, no, no, no.  I'm sorry.

10          MR. FERGUSON:  I apologize, your Honor.

11          In the jury instruction discussion, Attorney Wilcox

12     had asked your Honor to find that there be a separate part of

13     paragraph 14 for each of -- separate one for the likelihood of

14     confusion and the dilution.  Because likelihood of -- with

15     dilution, you don't have to show a likelihood of confusion.

16     And when she raised that point, your Honor's response was that

17     the word "association" captured both likelihood of confusion

18     and dilution.

19          At this point --

20          THE COURT:  Which is, I think, clear from the earlier

21     instructions, where, for example, in defining "dilution," it

22     references to associated.

23          So now what's your problem -- you have correctly

24     remembered the record.  What's your problem with the current

25     proposal?

N27VHERT

          1          MR. FERGUSON:  My concern is that the response

          2    indicates that only the elements of the likelihood of confusion

          3    should be considered, whereas our position --

          4          THE COURT:  That may be by -- as to "sponsored by" or

          5    "approved," but that's why I added -- oh, I see.  You're saying

          6    because you can have dilution, even if Hermès never agreed to

          7    the --

          8          MR. FERGUSON:  That's correct, your Honor.  And that's

          9    why I think that it also -- it's not one or the other, it's

         10    both.

         11          The second --

         12          THE COURT:  Yes, I agree with that part.

         13          MR. SPRIGMAN:  Your Honor, if I might.

         14          THE COURT:  Yes.

         15          MR. SPRIGMAN:  If, in fact -- so, first of all, I

         16    don't agree with that.  I think that what you have read is

         17    adequate.  The Lanham Act says cause a stake or deceive as to

         18    the origin, sponsorship or approval.  Those are the key words.

         19    And I think your articulation captures that.

         20          But with respect to dilution, your Honor, the

         21    intention, if we're going to talk about the intention, that he

         22    has is not simply to associate, because that is not liability

         23    for dilution; it is to diminish the selling power of the mark,

         24    which is an entirely additional thing.  And the key thing --

         25    because I think where courts have made mistakes with dilution,

N27VHERT

1     it's not to pay attention to the diminishment of the selling

2     power of the mark and to leverage mere association into

3     liability, which is a mistake.

4                THE COURT:  Okay.  So you would send in my note as is.

5                MR. SPRIGMAN:  I would.

6                And with respect to the second part, consumers

7     associating Hermès goodwill, this I think is the danger, your

8     Honor, that the jury is actually manifesting, which is that

9     this is an artwork that references the Birkin bag.  And so of

10    course there's an association --

11               THE COURT:  You have exactly intuited what I had in

12    mind when I wrote this proposed instruction, was to make sure

13    they didn't fall into that trap.

14               So I understand the point that plaintiffs' counsel is

15    making, but I think this is the right response.  So I will give

16    it to my courtroom --

17               MR. WARSHAVSKY:  Your Honor, can I just make one

18    point?

19               THE COURT:  Go ahead.

20               MR. WARSHAVSKY:  I'm sorry.

21               THE COURT:  Go ahead.

22               MR. WARSHAVSKY:  In the question itself, the predicate

23    was intentionally -- in the question it says was intentionally

24    designed to mislead.  So I think that intent element is already

25    there and understood by the jurors.

N27VHERT

```
 1          THE COURT:  Well, I hear what you're saying, and I
 2   think your argument is not without some force.  But I think in
 3   the end, it's more important to convey -- or reduce the very
 4   confusion that defense counsel posited was maybe implicit in
 5   their note, so I will go with my proposed instruction.
 6          All right.  Stay tuned.
 7          (Recess pending verdict)
 8          THE COURT:  So we've received another note which we
 9   will mark as Jury Note 4.
10          Dear Judge Rakoff, No. 1, if the jury decides that
11   Mr. Rothschild infringed and diluted the trademark and is
12   liable for cybersquatting, yet feels there is a First Amendment
13   protection, is he able to continue selling the NFTs, as well as
14   keep ownership of the www metabirkins.com?
15          No. 2, if we are unanimous on the first three charges,
16   but can't resolve the First Amendment issue, what happens?
17          So with respect to No. 2, I think the answer is we
18   will ask you to continue to deliberate.  It's only early
19   February.
20          With respect to the first question, I think the answer
21   is, in effect, that's not to be determined by this litigation.
22   I can't remember, did plaintiff move for injunctive relief?
23          MR. WARSHAVSKY:  We did, your Honor.
24          THE COURT:  Oh, all right.  So it could be determined
25   by this litigation.
```

N27VHERT

1    So I think the answer to that would be it would be

2    determined by the Court; but the determination has not yet been

3    made.

4    MR. WARSHAVSKY:  Actually, your Honor, I think the

5    answer would be just yes, because if they were to grant the --

6    if the jury were to find for --

7    THE COURT:  Well, the problem is the way they worded

8    it.  I'll read it again.

9    If the jury decides that Mr. Rothschild infringed and

10   diluted the trademark and is liable for cybersquatting, yet

11   feels there is a First Amendment protection, is he able to

12   continue selling the NFTs as well as keep ownership of www

13   metabirkins.com?

14   I interpret that to mean that they would answer the

15   jury verdict liable, liable, liable, on the first three claims,

16   and then would say barred by First Amendment.  So at that

17   point, if there's any equitable remedies available such as

18   injunctive relief, doesn't that have to be decided by the Court

19   after hearing from both sides?

20   MR. WARSHAVSKY:  Your Honor, I could confer with my

21   colleagues, but my understanding is if there's First

22   Amendment -- that if they went with Mr. Rothschild on the First

23   Amendment, that kind of undercuts the first three findings.  I

24   don't know how you could issue an injunction.

25   THE COURT:  I can see many possibilities.  I don't

N27VHERT

1    want to take too much time discussing them now, because they

2    would be the subject of -- but, for example, the First

3    Amendment protection doesn't necessarily mean that, going

4    forward, a claim could not be made for injunctive relief.

5            Also, it's a great shame that I understand

6    Mr. Rothschild is sick and at home, though, at his request, if

7    there is a verdict today, we'll Zoom him in.  But I'm willing

8    to bet that he might agree to this, given the position he

9    took --

10           MR. SPRIGMAN:  Your Honor, if I might address that,

11   I'm sorry, when you're done.

12           THE COURT:  Yes.

13           MR. SPRIGMAN:  Your Honor, we agree with you that

14   there is something remaining to be determined here, a First

15   Amendment protection applies.  We think the problem is much

16   deeper than that.

17           First, the jury appears to be engaging in logrolling

18   with respect to his First Amendment rights, meaning they appear

19   from this question to be determining whether the First

20   Amendment protects his artistic expression in part by what they

21   think the consequences are.  And that, your Honor, A, is

22   prejudicing my client, not fair, not First Amendment doctrine.

23           But also, this is an artifact, your Honor, again, of

24   the way you structured the jury instructions.  So the way you

25   structured the jury instructions, as I mentioned last Friday --

N27VHERT

| | |
|---|---|
| 1 | THE COURT:  Well, so wait a minute, I'm not sure I |
| 2 | read the first part of the letter the way you do.  And in any |
| 3 | event, I'm not sure it's not within the broad prerogatives of |
| 4 | the jury, which has, under the law, very broad discretion.  But |
| 5 | assuming you're right, for the sake of argument, then the right |
| 6 | answer to number one is it shouldn't be part of your concern, |
| 7 | so disabuse them of that fear that you have. |
| 8 | MR. SPRIGMAN:  Your Honor, I think you might attempt |
| 9 | to disabuse them of the concern, but I think they have the |
| 10 | concern. |
| 11 | THE COURT:  You know that from your deep -- or maybe |
| 12 | you've talked to Dr. Neal about psychology? |
| 13 | MR. SPRIGMAN:  Your Honor, I have not talked to Dr. |
| 14 | Neal and this is not his branch of psychology. |
| 15 | THE COURT:  That's for sure. |
| 16 | MR. SPRIGMAN:  I would suggest to you that this |
| 17 | question at least raises the possibility -- |
| 18 | THE COURT:  So what is your application? |
| 19 | MR. SPRIGMAN:  My application is that you grant a |
| 20 | JMOL, because at this point -- |
| 21 | THE COURT:  Denied. |
| 22 | MR. SPRIGMAN:  Thank you. |
| 23 | But then, your Honor, I think we should talk about |
| 24 | whether there's some representation we can make to them about |
| 25 | that possibility remaining open.  Because right now -- |

N27VHERT

| | |
|---|---|
| 1 | THE COURT:  Here, it seems to me — and I'll hear from |
| 2 | plaintiffs' counsel in a minute.  It seems to me there are two |
| 3 | possibilities with respect to Question No. 1.  Either to say |
| 4 | this is not your concern; or to say it will be determined, if |
| 5 | at all, at some later date.  I'm open to both of those |
| 6 | possibilities, but I'm not clear which of those two you are |
| 7 | electing. |
| 8 | MR. HARRIS:  Your Honor, may I ask you a question to |
| 9 | follow up on something you said? |
| 10 | THE COURT:  Yes. |
| 11 | MR. HARRIS:  Mr. Rothschild is reachable.  Should we |
| 12 | ask him your question? |
| 13 | THE COURT:  Yes, but I think that's for the future, |
| 14 | his view on this.  I don't think we should say -- it clearly |
| 15 | would not be proper to say to the jury, Mr. Rothschild has now |
| 16 | agreed to X, Y, or Z.  That would be inappropriate.  But I |
| 17 | certainly -- I had the impression, which could be totally |
| 18 | wrong, that he didn't want to spend his life litigating further |
| 19 | with Hermès. |
| 20 | MR. HARRIS:  I believe -- don't hold me to it, your |
| 21 | Honor, but I believe he testified that he is moving on. |
| 22 | THE COURT:  All right.  In any event, let me -- |
| 23 | assuming that the choice in response to No. 1 is either to say |
| 24 | this is none of your concern or to say it will be determined, |
| 25 | if at all, at a later date, which do you prefer? |

N27VHERT

1             MR. SPRIGMAN:  Your Honor, I think determined at all

2     at a later date.  But I wonder if you could indicate to them

3     that the determination would be made by you.

4             THE COURT:  Okay.  That's a possibility.

5             Let me hear from plaintiffs' counsel.

6             MR. WARSHAVSKY:  Your Honor, I think -- I'm troubled

7     by this because I think the jury is reacting here to

8     plaintiffs' opening and -- defendant's opening and defendant's

9     closing.  Defendant's opening --

10            THE COURT:  Oh, my God, what a terrible thing.

11            MR. WARSHAVSKY:  They are allowed to.  But I think

12    what they are struggling with is that the way it was presented

13    to them was that this is a -- that the First Amendment is there

14    as a protection to obviate the need and to allow Mr. Rothschild

15    to do this.  So I think they are responding to that.  I think

16    this is the right question.

17            I'm surprised to hear how defense counsel responded

18    because I would have thought they said the First Amendment is a

19    blanket or it's not.  And if it's a blanket to liability, I'm

20    not sure -- I'm still not sure I understand how that -- how you

21    could still fashion injunctive relief.  I must admit that's

22    a --

23            THE COURT:  So wait a minute.  I just want to make

24    sure I understand your position.

25            Your position is that if they grant the First

N27VHERT

1   Amendment bar that, in your view, Mr. Rothschild could continue

2   with his use of metabirkins.com and the use of the images,

3   etc., is that your --

4          MR. WARSHAVSKY:  I don't think we -- your Honor, I

5   hadn't thought about it until this instruction came out.  I

6   always thought that was the defense position, that was what I

7   understood their argument to be, both before and after trial

8   and in prior pleadings, that this creates a protection.  I

9   would love to move for an injunction.  I certainly don't want

10  to waive that right.  And I understand your question and I

11  understand that it may not be answering exactly -- of course we

12  would --

13         THE COURT:  But let me put to you the same choice I

14  put to your adversary.  Assuming, notwithstanding all the good

15  arguments from both sides, this stubborn judge thinks that

16  there are only two possible answers to Question No. 1, either

17  this is not your concern, diplomatically, or that this will be

18  determined, if at all, at a later time by the judge.

19         MR. WARSHAVSKY:  Of those two options, your Honor, I

20  think the second is the option that we would want.

21         THE COURT:  Okay.  So both sides seem to agree that's

22  preferable.

23         Now, the second question was, if we are unanimous on

24  the first three charges, but can't resolve the First Amendment

25  issue, what happens?  And I do think there's only one possible

N27VHERT

1     answer to that, which is, you need to continue to deliberate

2     and make every effort, if possible, to reach a conclusion on

3     all the issues presented to you.

4               Yes?  Anyone disagree with that?

5               MR. WARSHAVSKY:  No disagreement, your Honor.

6               MR. SPRIGMAN:  Your Honor, I just want to note that

7     what -- again, my concern here is what's at play is that you in

8     your instructions said you should change your mind, if your

9     mind is changed, which seems tautologically correct to me, but

10    you should not change your mind simply to go along -- you

11    should not change your mind simply to walk out of here.  And

12    I'm afraid that, again, we are at a point where they feel they

13    can't resolve the First Amendment issue and --

14              THE COURT:  See, I'm surprised, given the arguments

15    you've made, none of which have yet persuaded me, but

16    nevertheless --

17              MR. SPRIGMAN:  I'm trying.

18              THE COURT:  -- that you would move for a mistrial.

19    What could be more fun than to try this case again?  I would

20    put aside everything else.

21              MR. SPRIGMAN:  Your Honor, I must say, I'm not done

22    yet, but I was getting there.  I mean, this is my point.  I

23    think where we are right now is Question 1 suggests we have

24    possibly logrolling with consequences at stake, right.  In

25    other words, like what is he going to do -- whether he has a

N27VHERT

First Amendment right depends on what we think he's going to do, which is odd.  And the second one is, you know, we probably can't resolve this, I read this, because, you know, "think harder" is maybe not going to work.  And so if it doesn't work and we can't resolve this, what's going to happen?  Because if what's going to happen is everything gets thrown out, all our work gets thrown out, then we will agree, even if we don't agree, we will --

THE COURT:  So I really, with deep respect, think that you are overanalyzing the secret jury proceedings just based on a few words in a note.  I always talk or my law clerks always talk to the jurors after the end of the case, and I've done that now for over 300 jury trials.  And I find there's always things that they say that I didn't expect.

But I also find that, in the end, really without exception, they are very good about following the instructions of the Court.  That's why I'm surprised.  I would have thought you would have -- if you think the jury is under this misimpression, the logrolling issue, you would have preferred the first approach, namely, it's none of your concern.  And I think they would have adhered to that instruction.  But you have taken the other route.

MR. SPRIGMAN:  Your Honor, in a sense, I cannot claim your expertise in what juries think, but I do not have this record of talking to juries.  I am concerned just as defense

N27VHERT

1    counsel that they are considering consequences like this, and

2    you tell them not to consider consequences, even if they are

3    not aware of it, even if -- because people often are not aware

4    of their own thought processes.  And when they recount their

5    thought processes later, they are telling you something, but it

6    doesn't necessarily capture their thinking.

7            I do social science in my other job, and that's a

8    constant problem in social science.

9            THE COURT:  Analyzing the subconscious thoughts of the

10   jury is something that I have not undertaken to do and I

11   will -- since Professor Freud is dead, we may have to forego

12   that opportunity in any event.

13           But, in any event, both sides agree I should give the

14   second alternative, so let me draft something and then see how

15   it looks to you.

16           Okay.  So here is my proposed note to the jury:

17           Thank you for your most recent note.  With respect to

18   Question No. 1, any determination of whether Mr. Rothschild can

19   continue selling the NFTs and keep ownership of www

20   metabirkins.com, if you find he is liable for Hermès' three

21   claims, but that such liability is barred by the First

22   Amendment, protection is something that will be determined, if

23   at all, by the Court at a later date.

24           With respect to Question No. 2, if you are unanimous

25   on the three claims but cannot resolve the First Amendment

1    issue, you will need to continue your deliberations in

2    accordance with instruction number 18, which sets forth all the

3    stuff about don't give up your conscientious views, but make

4    every effort to reach a verdict.  So that last part was not

5    part of the note, just to fill you in on what instruction

6    number 18 says.

7              So any objection to that from plaintiff?

8              MR. WARSHAVSKY:  Your Honor, I think what you said is

9    faithful to option one.  I continue to be troubled by the idea

10   that we -- if we go to simply the cybersquatting claim, for

11   example, because maybe that's the easiest to discuss here, that

12   if we tell the jury that that's to be decided at a later

13   date --

14             THE COURT:  I really am having real difficulties with

15   both lawyers here.  I've offered you the option of just simply

16   saying it's none of your concern, and both sides rejected that.

17             MR. WARSHAVSKY:  Well, we certainly rejected it

18   because of the way the closing arguments went.  I think what

19   you said -- I have no objection to what you just wrote as being

20   faithful to option one.  And if I'm choosing between only

21   option one and option two, then that's it, I think then it's

22   really the prior objection that I was restating.

23             THE COURT:  I'm not sure I understand your objection

24   to option one.  What is wrong -- and to tell you the truth, the

25   more I'm thinking about it to myself, the more I'm thinking

N27VHERT

1    that option one may be the better approach.

2          Basically, they've asked a hypothetical which defense

3    counsel is reading a lot into, but whatever it may or may not

4    reflect, it's really not their concern.  It's the functional

5    equivalent, the more I think about it, of a jury asking in a

6    criminal case, What's the penalty?  And the law is crystal

7    clear that the answer to that is, It's not your concern.  And I

8    think this is functionally the equivalent.

9          So I'm rethinking this and thinking maybe,

10   notwithstanding the excellent arguments made by both sides,

11   that I should change the answer to No. 1 to simply say, It's

12   not your concern.

13         MR. SPRIGMAN:  Your Honor, if you do that, would it be

14   possible to add to -- "it's not your concern" is the gist, but

15   the concept I'm trying to get across is something like, In

16   determining whether the First Amendment protects him, you need

17   to focus on the matters in front of you and not future

18   consequences.

19         THE COURT:  I might consider that.

20         Any problem with my response to Question No. 2?

21         MR. SPRIGMAN:  Your Honor, I'm sorry, could you just

22   give us one moment?

23         THE COURT:  Yes.

24         I'll tell you what, while you're all thinking about

25   this, I was supposed to have lunch at 1 o'clock with Judge

N27VHERT

1    Rochon.  Let me go tell her that we're going to need to

2    reschedule.  I'll be right back.

3            (Recess)

4            THE COURT:  Judge Rochon was kind enough not to

5    express her condolences to me.

6            Okay.  Here's my latest version, having thought

7    further about this, for the note responsive to their note, and

8    then we have one other item to take up.

9            "To the jury, thank you for your most recent note.

10   With respect to Question No. 1, you should not concern yourself

11   with the consequences, if any, of any verdict you may render.

12   You need to focus solely on deciding the issues presented for

13   your determination.

14           "With respect to Question No. 2, if you are unanimous

15   on the first three items on your verdict form, but cannot yet

16   resolve the fourth question involving the First Amendment

17   protection, you need to continue your deliberations in

18   accordance with instruction number 18."

19           Putting aside all previous objections from counsel for

20   both sides, all of which are preserved for the wonderful appeal

21   that will inevitably follow, regardless of verdict in this

22   case, any problems with that wording from plaintiffs' counsel?

23           MR. WARSHAVSKY:  No, your Honor.

24           THE COURT:  From defense counsel?

25           MR. SPRIGMAN:  No, your Honor.

1          THE COURT:  All right.  So I'll give that to my

2    courtroom deputy to take it to the jury.

3          Now, you may recall that we had told Juror No. 6 that

4    she would be excused if the jury didn't reach a deliberation

5    today.  And she has sent a note now, which I'll read, but just

6    basically re-raising that issue.

7          Hello, Judge Rakoff.  I was told you have to leave by

8    3:30 p.m. today.  I wanted to plan ahead.  My understanding is

9    that I am excused after today to return to my job.  I wanted to

10   make sure there is nothing else I needed to do today if we are

11   to -- if we are not to reach a verdict.  Does the jury proceed

12   and act as if I never existed?  Thank you.

13         And then it's signed by Juror No. 6.

14         So my suggestion is that we meet in the robing room on

15   the record, sealed, except as to the parties, with Juror No. 6

16   to see if we can prevail on her to give us one more day.  If

17   she says no, we have to accept that, given the representations

18   we all made to her from the very get-go, and she did flag this

19   from day one.  But I think that we might prevail.

20         I would caution her, before we even start, Don't tell

21   us anything about what's going on in the jury room, but we

22   would like you to continue.

23         If she is excused, then I think the jury -- and the

24   law is clear, I think, that the jury continues, but are free to

25   take account of whatever she said before she was excused.  This

N27VHERT

1    happens all the time, usually for reasons like a juror gets

2    sick or something like that.  And you don't tell the jury at

3    that point, Start all over again.  You say, Just continue.

4    It's different from a situation where, like in a criminal case,

5    where there are alternates and a juror is excused and the

6    alternate comes in, then they have to start again.  But that's

7    because the alternate was not part of the earlier

8    deliberations.

9            So I think we could -- if they don't reach a verdict

10   by 3:30, we could bring them in and simply tell them that they

11   should continue their deliberations, and they don't have to

12   excise from their deliberations whatever the excused juror may

13   have said during deliberation.

14           Any disagreement with that?

15           MR. WARSHAVSKY:  Not from plaintiff, your Honor.

16           MR. SPRIGMAN:  Nor from us, your Honor.

17           THE COURT:  Okay.  So let's get Juror No. 6 and bring

18   her in and see if we can prevail on her to give us one more

19   day.

20           MR. WARSHAVSKY:  Your Honor, as a practical matter, I

21   had a question which is --

22           THE COURT:  I'm sorry?

23           MR. WARSHAVSKY:  I just had a question about the

24   scheduling.  Does the jury then break at 3:30?

25           THE COURT:  See, I teach at Columbia.  I teach at

N27VHERT

1     NYU -- I don't know if any of you ever heard of that law

2     school.  I teach at NYU on Mondays from 6:30 to 8:30, so we can

3     stay, that's why we could have stayed till 5:30 yesterday, if

4     they wanted to.  But I teach at Columbia from --

5               THE DEPUTY CLERK:  Juror entering the courtroom.

6               THE COURT:  And so I have to leave -- all right.

7               Come into the robing room, counsel.

8               (Pages 1102-1104 SEALED)

9               (Continued on next page)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        (In open court)

2        THE COURT:  Okay.  So Juror No. 6 is not sure she can

3   get a replacement, but she's going to give it her best shot and

4   let my courtroom deputy know no later than a half hour from

5   now.

6        I don't see the need to tell the rest of the jurors

7   who are there, who probably are having their lunch, not to

8   deliberate for the next half hour, unless anyone thinks I

9   should tell them that.  Anyone think I should tell that?

10       MR. WARSHAVSKY:  No, your Honor, not from plaintiffs.

11       THE COURT:  Very good.

12       MR. SPRIGMAN:  No, your Honor.

13       THE COURT:  Excellent.  Good.

14       And my courtroom deputy will report to you the

15   results.  And now I'm going to have my lunch, consisting of a

16   few dried apricots and whatever else I can find at my desk.

17       So see you soon.

18       Oh, and I'm sorry, you guys, I think under these

19   circumstances, why don't you take lunch in waves, so to speak,

20   so there's always someone here, but the rest of you can take

21   lunch.

22       (Recess pending verdict)

23       THE COURT:  Please be seated.

24       All right.  So first, thanks to Juror No. 6's

25   excellent efforts, she is able to serve tomorrow.  She'll just

N27VHERT

1  be slightly delayed till 10 o'clock; so deliberations won't

2  commence tomorrow until 10 o'clock.

3         Second, the jury asked whether they could stay to 5:30

4  today.  Through my courtroom deputy, I informed them that they

5  could stay to 5:30, but I had to leave at 3:30 to teach; so

6  they couldn't send any notes or a verdict or anything, but they

7  could continue to deliberate.  And they apparently

8  Solomonically resolved that by saying that they -- in the note

9  that I'm about to read, "Jury is leaving at 4:30 p.m.  We will

10 return at 10 a.m. tomorrow."

11        So kudos to our jury.

12        Very good.

13        And we'll see you guys tomorrow at 10 o'clock.

14        MR. HARRIS:  Thank you, your Honor.

15        MR. WARSHAVSKY:  Thank you, your Honor.

16        (Adjourned to February 8, 2023 at 10 a.m.)

17

18

19

20

21

22

23

24

25