# EXHIBIT E

```
N1VsHER1
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

HERMÈS INTERNATIONAL. et al.,

       Plaintiffs,

        v.                                    22 Civ. 384 (JSR)

MASON ROTHSCHILD,

       Defendant.

------------------------------x

                            New York, N.Y.
                            January 31, 2023
                            9:30 a.m.

Before:

              HON. JED S. RAKOFF,

                           District Judge
                           -and a Jury-

                 APPEARANCES

BAKER & HOSTETLER LLP
    Attorneys for Plaintiffs
BY:  DEBORAH A. WILCOX
    OREN J. WARSHAVSKY
    GERALD J. FERGUSON

HARRIS ST. LAURENT & WECHSCLER LLP
    Attorneys for Defendant
BY:  ADAM B. OPPENHEIM
    JONATHAN A. HARRIS

LEX LUMINA PLLC
    Attorneys for Defendant
BY:  RHETT O. MILLSAPS, II

1  or maybe's artistic expression.
2          We'll work on the exact wording of that later.  But
3  I'm not yet sure why that doesn't mean that they can't
4  introduce someone who says this is perceived by the consumer as
5  having little or no artistic expression.  I mean, if that is
6  what that expert says.
7          MR. MILLSAPS:  Your Honor, that expert actually
8  testified at his deposition that he can't tell you what is or
9  is not art in the way that the world understands art.
10         THE COURT:  Oh, well, then he joins all the rest of
11 us.  No, but that's relevant.
12         Let me hear from plaintiff's counsel.
13         MR. WARSHAVSKY:  Your Honor, nothing has changed.
14 This motion should have been made and it should be briefed.
15 Because the problem is, we disagree with how Mr. Millsaps just
16 described this expert.  This expert is actually explaining that
17 the reason for the sale of the MetaBirkins was because, and the
18 reason they fetched the prices they did, was because they were
19 assumed to be branded NFTs.  He was explaining what that means.
20 That has nothing to do with art or not art.  So this expert is
21 not --
22         (Continued on next page)

N1vnher2

        THE COURT:  Okay.  What you are saying is he's saying the way this was set up, the consumer or many consumers would believe that they were purchasing whatever it was something produced by Hermès?

        MR. WARSHAVSKY:  Or a brand.  Because trademark you have to think it comes from a source.  So whether it's associated with Hermès, from Hermès, from somebody who is associated with Birkin, they don't necessarily know that Hermès makes Birkins, but they think it is a Birkin, it could be any of those things.  I think the expert is going to drill down to the whole idea.  When you talk about explicit misleadingness or intent, sometimes we have an insight, but we usually do it through indirect evidence.

        THE COURT:  All right.

        Let me ask you this:  When are we getting to this expert?

        MR. WARSHAVSKY:  The earliest would be tomorrow.

        THE COURT:  All right.  What I think we should do is have this expert along with counsel come in at 9:00 tomorrow, and I will question the expert and get a better idea of exactly what he is saying and not saying and what he can say and can't say and I will make a ruling before he takes the stand.

        MR. WARSHAVSKY:  Your Honor, just one point?

        THE COURT:  Yes.

        MR. WARSHAVSKY:  This is the expert who is appearing

1  Q.  Today that's correct?
2  A.  Yeah.
3  Q.  Mr. Martin, there's no evidence that Mr. Rothschild ever
4  told anyone that MetaBirkins came from Hermès, isn't that
5  right?
6          MR. WARSHAVSKY:  Objection.
7          THE COURT:  Well, as phrased, sustained.
8  BY MR. MILLSAPS:
9  Q.  Mr. Martin, are you aware of any evidence that
10 Mr. Rothschild ever told anyone that the MetaBirkins came from
11 Hermès?
12 A.  No.
13 Q.  Mr. Martin, you were just testifying that Hermès has been
14 damaged by consumer confusion, is that right?
15 A.  Yes.
16 Q.  What is the evidence of consumer confusion that you have
17 seen?
18 A.  I think we have an expert report on consumer confusion.  I
19 can also refer to Mr. Bob Chavez' testimony, which if I
20 remember correctly mentioned that some of his students were
21 confused.
22         I have seen articles in the press media saying that
23 this project was made in partnership, made by Hermès, and I
24 anticipate that the people that, when you read a newspaper, you
25 can believe that what is written in the newspaper is true, and