**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

HERMÈS INTERNATIONAL and
HERMÈS OF PARIS, INC.,

          Plaintiffs,

          v.

MASON ROTHSCHILD,

          Defendant.

No. 22-cv-00384-JSR

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLANTIFFS' MOTION FOR PERMANENT INJUNCTION

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 2

   I.   HERMÈS' UNCLEAN HANDS SHOULD BAR INJUNCTIVE RELIEF ...................... 2

   II.   A DISCLAIMER IS THE ONLY APPROPRIATE INJUNCTIVE RELIEF UNDER
        THE FIRST AMENDMENT AND FACTS OF THIS CASE ...................................... 7

      A.  A Disclaimer Would Avert Any Irreparable Harm to Hermès. ...................................... 10

      B.  A Disclaimer is Warranted by the Balance of Hardships Between Hermès, Mr.
          Rothschild, and Bona Fide, Good-Faith Purchasers of *MetaBirkins* Artworks Who Are
          Not Parties to This Action............................................................................................ 14

      C.  The Public Interest Would Best Be Served by a Disclaimer in This Case. ................... 16

CONCLUSION...................................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aris–Isotoner Gloves, Inc. v. Berkshire Fashions, Inc.*
  792 F. Supp. 969 (S.D.N.Y. 1992) ...................................................................... 3, 6

*Burndy Corp. v. Teledyne Indus., Inc.*
  748 F.2d 767 (2d Cir. 1984)................................................................................. 7

*City of Lakewood v. Plain Dealer Publ'g Co.*
  486 U.S. 750 (1988)............................................................................................ 9

*Connection Distrib. Co. v. Reno*
  154 F.3d 281 (6th Cir. 1998) ............................................................................. 16

*Consumers Union of United States, Inc. v. Gen. Signal Corp.*
  724 F.2d 1044 (2d Cir. 1983).............................................................................. 8

*eBay Inc. v. MercExchange, LLC*
  547 U.S. 388 (2006)............................................................................................ 7

*Elrod v. Burns*
  427 U.S. 347 (1976)........................................................................................... 16

*Estate of John Lennon v. Screen Creations, Ltd.*
  939 F. Supp. 287 (S.D.N.Y. 1996) ..................................................................... 2

*First Nat'l Bank of Boston v. Bellotti*
  435 U.S. 765 (1978)........................................................................................... 16

*Goldstein v. Delgratia Mining Corp.*
  176 F.R.D. 454 (S.D.N.Y. 1997) ........................................................................ 3

*Hermès Int'l v. Rothschild*
  22-cv-384 (JSR), 2023 WL 1458126 (S.D.N.Y. Feb. 2, 2023) ..................... 5, 6, 8, 9

*Hermès Int'l v. Thursday Friday Inc.*
  11-cv-00580-AKH (S.D.N.Y. 2011)................................................................... 4

*Hurley v. Irish–American Gay, Lesbian and Bisexual Grp. of Boston*
  515 U.S. 557 (1995)....................................................................................... 9, 10

*Keystone Driller Co. v. Gen. Excavator Co.*
  290 U.S. 240 (1933)............................................................................................ 6

*Laugh Factory, Inc. v. Basciano*
  608 F. Supp. 2d 549 (S.D.N.Y. 2009) ............................................................. 2, 5

*Ligon v. City of New York*
  925 F. Supp. 2d 478 (S.D.N.Y. 2013) ................................................................. 16

*Mattel, Inc. v. Walking Mountain Prods.*
  353 F.3d 792 (9th Cir. 2003) ............................................................................... 9

*Motorola Credit Corp. v. Uzan*
  561 F.3d 123 (2d Cir. 2009) ................................................................................ 2

*Nat'l Endowment for the Arts v. Finley*
  524 U.S. 569 (1998) .......................................................................................... 10

*New York Progress and Prot. PAC v. Walsh*
  733 F.3d 483 (2d Cir. 2013) .............................................................................. 16

*Newsom v. Albemarle County Sch. Bd.*
  354 F.3d 249 (4th Cir. 2003) ............................................................................. 16

*Nichino Am., Inc. v. Valent U.S.A. LLC*
  44 F.4th 180 (3d Cir. 2022) ................................................................................. 8

*Nikon, Inc. v. Ikon Corp.*
  987 F.2d 91 (2d Cir. 1993) ................................................................................ 14

*Rogers v. Grimaldi*
  875 F.2d 994 (2d Cir. 1989) .............................................................................. 12

*Salinger v. Colting*
  607 F.3d 68 (2d Cir. 2010) .................................................................................. 7

*Soltex Polymer Corp. v. Fortex Industries, Inc.*
  832 F.2d 1325 (2d Cir. 1987) ............................................................................ 12

*Specialty Minerals, Inc. v. Pluess–Staufer AG*
  395 F. Supp. 2d 109 (S.D.N.Y.2005) .................................................................. 2

*Spence v. Washington*
  418 U.S. 405 (1974) .......................................................................................... 10

*Times Mirror Magazines, Inc. v. Las Vegas Sport News*
  212 F.3d 157 (3d Cir. 2000) .............................................................................. 13

*Twin Peaks Prod. v. Public. Int'l*
  996 F.2d 1366 (2d Cir. 1993) ............................................................................ 12

*Waldman Publ'g Corp. v. Landoll, Inc.*
    43 F.3d 775 (2d Cir. 1994)......................................................................... 14

*Warner Bros. Entm't Inc. v. RDR Books*
    575 F. Supp. 2d 513 (S.D.N.Y. 2008) ........................................................ 7

*Westchester Media v. PRL USA Holdings, Inc.*
    214 F.3d 658 (5th Cir. 2000) ........................................................... 8, 12, 13

**Statutes**
15 U.S.C. § 1116................................................................................................ 7, 8

**Other Authorities**
3 McCarthy § 23:18...........................................................................................13

iv

Defendant Mason Rothschild respectfully submits this memorandum of law in opposition to the Motion for Permanent Injunction submitted by Plaintiffs Hermès International and Hermès of Paris, Inc. (collectively, "Hermès").

## PRELIMINARY STATEMENT

Despite Hermès' counsel's repeated refrain that "Hermès is not seeking to punish Mr. Rothschild" in this case,[1] Hermès is seeking to do just that with its grossly overreaching request for injunctive relief and its motion brief that gratuitously attempts to smear Mr. Rothschild, his expert, and his counsel. Hermès asks for permanent injunctive relief that goes far beyond what is appropriate in a case, like this one, that involves artistic expression. Indeed, Hermès' request would not be appropriate even if this case involved counterfeit Birkin bags being sold on Canal Street, which the *MetaBirkins* artworks at issue indisputably are not. Specifically, Hermès seeks not only seizure of artistic and other materials in Mr. Rothschild's possession, but also measures that would substantially impair or destroy the property rights of bona fide, good-faith purchasers of *MetaBirkins* artworks who are not parties to this case.

Hermès' request for equitable relief is further tainted by Hermès' own dishonest conduct during trial. As detailed below, Hermès' global general counsel and hired experts made numerous false and misleading statements in their trial testimony in their effort to secure a jury verdict at any cost. If Hermès were confident in its legal position on the real facts of the case, there would be no reason for Hermès to engage in an inexcusable pattern of duplicity in pressing its case. Hermès certainly should not be throwing stones from its glass house, and the Court can and should take into account Hermès' unclean hands on its motion for equitable relief.

---

[1] *See*, *e.g.*, Declaration of Ashley N. Robinson dated March 14, 2023 ("Robinson Decl."), Ex. A at 994:24–25.

If the Court awards injunctive relief to Hermès despite its unclean hands, the Court should award narrowly tailored relief that takes into account the First Amendment interests at stake.[2] Under the facts and circumstances of this case, use of a disclaimer—rather than seizure of artworks and related materials, as requested by Hermès—is an adequate and appropriate remedy that would balance both the First Amendment and trademark rights at issue. This is especially so because the evidence shows that Hermès will not suffer irreparable harm absent the draconian injunction that it seeks, given the weak—if not legally insufficient—evidence of confusion and the sophistication of purchasers of both Hermès' products and Mr. Rothschild's *MetaBirkins* artworks.

## ARGUMENT

### I.     HERMÈS' UNCLEAN HANDS SHOULD BAR INJUNCTIVE RELIEF

It "is well-established that a court of equity will not exercise its power in favor of a plaintiff whose actions show inequitable conduct or bad faith where the misconduct has a material relation to the equitable relief that plaintiff seeks." *Laugh Factory, Inc. v. Basciano*, 608 F. Supp. 2d 549, 560 (S.D.N.Y. 2009) (Rakoff, J.) (citing *Motorola Credit Corp. v. Uzan*, 561 F.3d 123 (2d Cir. 2009)); *Specialty Minerals, Inc. v. Pluess–Staufer AG*, 395 F. Supp. 2d 109, 112 (S.D.N.Y.2005)). *See also Estate of John Lennon v. Screen Creations, Ltd*., 939 F. Supp. 287, 293 (S.D.N.Y. 1996) ("A court may deny injunctive relief based on the defense of unclean hands where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party.") (internal quotations and citations omitted); *Goldstein v. Delgratia Mining Corp*., 176 F.R.D. 454,

---

[2] As the Court is aware, Mr. Rothschild also is filing today a renewed motion for judgment as a matter of law; Mr. Rothschild makes the arguments herein in the alternative in case the Court denies that motion and determines that injunctive relief in Hermès' favor is appropriate.

458 (S.D.N.Y. 1997) (unclean hands defense successful where plaintiff made multiple misrepresentations to court regarding law and facts); *Aris–Isotoner Gloves, Inc. v. Berkshire Fashions, Inc*., 792 F. Supp. 969, 970 (S.D.N.Y. 1992), *aff'd by summary order*, 983 F.2d 1048 (2d Cir. 1992) (defendant's unclean hands barred laches defense in trademark dispute where defendant's president fabricated testimony to create false impression).

Hermès has unclean hands that should bar the injunctive relief it now seeks because it engaged in a pattern of deliberately dishonest conduct throughout trial.

First, Hermès' global general counsel and Rule 30(b)(6) witness, Nicolas Martin, testified on direct examination that Hermès had not "interacted with Mr. Rothschild" after sending (through counsel) its cease-and-desist letter regarding *MetaBirkins*, deliberately creating a false impression for the jury that Mr. Rothschild had simply ignored the letter. Robinson Decl., Ex. B at 191:5–7 (*Q:* "*Has Hermès interacted with Mr. Rothschild…since Hermès sent that [cease-and-desist] letter?*" *A:* "*No.*"). Mr. Martin was forced to admit on cross-examination that, in fact, Mr. Rothschild did respond promptly through a letter from his counsel and then further engaged in settlement discussions with Hermès through counsel. *Id*. at 206:14–208:4, 213:3–9. Mr. Martin attempted to explain his testimony on cross-examination by saying that he meant only that he personally had no direct contact with Mr. Rothschild (*id*. at 210:3–12). That answer was disingenuous. The question he was answering on direct was about *Hermès'* contact with Mr. Rothschild through Hermès' attorneys vis-à-vis Hermès' cease-and-desist letter, and as Hermès' top lawyer he ultimately was forced to concede that Hermès' attorneys "are effectively Hermès…" *Id*. at 207:19–20.

Mr. Martin also was asked on direct examination to identify "the last time Hermès brought a trademark infringement lawsuit in the U.S. [aside from] counterfeiting. . .  like the

stuff you might see a few blocks from here." Robinson Decl., Ex. B at 193:1–4. Mr. Martin testified that that he was "only aware of one case more than 20 years ago." *Id*. Hermès' counsel then reiterated to the jury in his closing argument that Mr. Martin had testified that "Hermès has not brought a claim like this – just a trademark infringement claim, straight trademark infringement claim – in over 20 years." Robinson Decl., Ex. A at 952:24–953:3. The press picked up and reported on this testimony. *See* Robinson Decl., Ex. C (reporting that Mr. Martin testified that Hermès "had not brought a trademark suit in the U.S. for decades before suing Rothschild last year"). But this, too, was deliberately misleading. Hermès in fact brought a trademark infringement claim in this District in 2011 alleging that tote bags printed with images of Birkin bags constituted, *inter alia*, infringement under federal and state law and dilution by tarnishment. *See* Robinson Decl., Ex. D (complaint filed in *Hermès Int'l v. Thursday Friday Inc*., 11-cv-00580-AKH (S.D.N.Y. 2011)).

Hermès' hired experts also gave materially false testimony. In an effort to undermine Mr. Rothschild's rebuttal survey expert at trial, Hermès' counsel gratuitously asked Hermès' survey expert, Dr. Bruce Isaacson, at the end of his direct examination: "Had you ever heard of defendant Mason Rothschild's proffered expert witness, Dr. David Neal, before this lawsuit?" Dr. Isaacson unequivocally replied, "No." Robinson Decl., Ex. E at 762:7–10. But this testimony was false, and Dr. Isaacson (and presumably Hermès) knew it was false. In fact, as Dr. Neal testified, Dr. Isaacson had worked on the same side of a case with Dr. Neal before this lawsuit, and Dr. Isaacson approached Dr. Neal in the courthouse immediately after Dr. Isaacson left the witness stand on February 3 to "say hello, since [he and Dr. Neal] had never met in person before, despite having worked on that case." Robinson Decl. Ex. A at 904:9–17.

Another of Hermès' experts, Dr. Kevin Mentzer, gave misleading testimony on direct examination at trial. Despite identifying a *MetaBirkins* image as a *MetaBirkins* NFT in his expert report (*see* Robinson Decl., Ex. F at 10)—which Dr. Mentzer submitted to the Court under oath prior to trial, see ECF No. 68-1—when asked by the Court during direct examination, "The MetaBirkins, a MetaBirkins is an image; yes?", Dr. Mentzer testified, "MetaBirkins, no, is the name of the smart contract." Robinson Decl., Ex. G at 90:25–91:4. Dr. Mentzer continued to prevaricate under further pointed questioning by the Court in front of the jury, in clear contradiction of his expert report. *Id*. at 91:5–92:14. This led the Court effectively to impeach Dr. Mentzer with his expert report outside the presence of the jury. *See id*. at 103:1–104:19. Dr. Mentzer's duplicity on this point was material because it plainly was meant to confuse the jury by advancing Hermès' specious argument—rejected by the Court based on undisputed evidence, *see Hermès Int'l v. Rothschild*, 22-cv-384 (JSR), 2023 WL 1458126, at *5-6 (S.D.N.Y. Feb. 2, 2023) (Rakoff, J.)—that the *MetaBirkins* NFTs were separable from the *MetaBirkins* images for purposes of liability.

This dishonest conduct at trial by Hermès and its experts "has a material relation to the equitable relief that [Hermès] seeks," *Laugh Factory*, 608 F. Supp. 2d at 560, because Hermès used this false and misleading testimony simultaneously to attack Mr. Rothschild's and his expert's credibility and to bolster the credibility of Hermès' witnesses, to paint Mr. Rothschild as a scofflaw, and ultimately to secure a jury verdict in Hermès' favor. Indeed, post-trial public comments by the jury foreperson indicate that Hermès succeeded in its efforts despite the evidence actually presented at trial. For instance, the jury foreperson posted a comment on LinkedIn after the trial justifying the jury's verdict by, *inter alia*, incorrectly stating that Mr. Rothschild "didn't disclaim the relationship to Hermes nor correct major media outlets published

confusion that this was initiated by Hermes… Then when busted, ignored a cease and desist and tried to hide under the 1st amendment." Robinson Decl., Ex. H.

In fact, Mr. Rothschild provided uncontradicted testimony at trial that he and his publicist corrected articles that mistakenly attributed MetaBirkins to Hermès, and Hermès admitted that the articles were corrected. *See* Robinson Decl., Ex. I at 303:8–304:9; Ex. E at 789:10–791:21, 797:9–22, 800:23–801:7; *Rothschild*, 2023 WL 1458126 at *6 (Rakoff, J.) (noting that "when several publications mistakenly reported an affiliation between Hermès and the MetaBirkins project, the defendant's publicist, Kenneth Loo, reached out and asked that these publications issue corrections regarding the mistaken affiliation"). The evidence also established at trial that Mr. Rothschild did not ignore Hermès' cease-and-desist letter, though Hermès' global general counsel apparently successfully used his direct testimony to create that false impression with the jury (*see* p. 3, *supra*).

The Court should deny Hermès' request for equitable relief in its entirety based on Hermès' unclean hands arising from its misconduct at trial. *See*, *e.g.*, *Berkshire Fashions*, 792 F. Supp. at 970–72 (defendant's unclean hands barred equitable defense in trademark dispute where defendant's president fabricated testimony to create false impression because "a finding of [a party's] unclean hands on an issue for which it has sought and continues to seek equitable relief is sufficient to bar the prospect of such relief once unclean hands are discovered"); *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 244–245 (1933) ("The governing principle is 'that whenever a party who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of this court will be shut against him in limine.'" (citation omitted)).

## II.    A DISCLAIMER IS THE ONLY APPROPRIATE INJUNCTIVE RELIEF UNDER THE FIRST AMENDMENT AND FACTS OF THIS CASE

The Lanham Act provides that courts "shall have power to grant injunctions, *according to the principles of equity and upon such terms as the court may deem reasonable*, to prevent the violation of any right of the registrant of a mark." 15 U.S.C. § 1116(a) (emphasis added). A plaintiff "seeking a permanent injunction still must satisfy the traditional four-factor test before the district court may use its equitable discretion to grant such relief." *Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513, 551 (S.D.N.Y. 2008). Specifically, a plaintiff must demonstrate: "(1) that it will suffer an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id*. at 551–52 (citations omitted).

An injunction, however, is not mandatory and does not automatically follow a determination that a trademark has been infringed. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 392–93 (2006) ("[T]his Court has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed."); *Salinger v. Colting*, 607 F.3d 68, 78 n. 7 (2d Cir. 2010) ("[A]lthough today we are not called upon to extend *eBay* beyond the context of copyright cases, we see no reason that eBay would not apply with equal force to an injunction in any type of case."). Further, in trademark infringement cases, "permanent injunctive relief will be granted only upon proof of the likelihood that purchasers of the product may be misled in the future...." *Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 767, 772 (2d Cir. 1984).

Injunctive relief is not mandatory even under the amended language of 15 U.S.C. § 1116 following the Trademark Modernization Act. As the Third Circuit recently held, the statutory presumption of irreparable harm is only a rebuttable one that shifts the burden of *production*, not the burden of persuasion, to the defendant to point to evidence that any consumer confusion is unlikely to cause irreparable harm. *See Nichino Am., Inc. v. Valent U.S.A. LLC*, 44 F.4th 180, 186 (3d Cir. 2022). "If a defendant successfully rebuts the TMA's presumption by making this slight evidentiary showing, the presumption has no further effect. It has done its work and simply disappears like a bursting bubble." *Id*. At that point, the burden of production "returns to the plaintiff to point to evidence that irreparable harm is likely absent an injunction." *Id.* Here there is no doubt that both Mr. Rothschild and Hermès have produced evidence that irreparable injury is unlikely, *see* Section II.A., *infra*, so the presumption should disappear "like a bursting bubble."

If the Court does award injunctive relief in this case, the Court should "accommodate trademark remedies with First Amendment interests" because, as this Court found as a matter of law, the *MetaBirkins* at issue are "at least partly…artistic" speech. *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 672 (5th Cir. 2000); *Rothschild*, 2023 WL 1458126, at *5-6 (Rakoff, J.); Robinson Decl., Ex. J (The Court's Instructions of Law to the Jury) at 21 ("It is undisputed…that the MetaBirkins NFTs, including the associated images, are in at least some respects works of artistic expression…"); *Consumers Union of United States, Inc. v. Gen. Signal Corp.*, 724 F.2d 1044, 1053 (2d Cir. 1983), *cert. denied*, 469 U.S. 823 (1984) (holding that the district court erred in enjoining the defendant from making any reference to plaintiff's mark because "[i]f the record truly evinced a likelihood of consumer confusion (which it does not), the proper course would have been to require a clear disclaimer. The First Amendment demands use of a disclaimer where there is a reasonable possibility that it will suffice to alleviate consumer

confusion."); *Rothschild*, 2023 WL 1458126 at *5 ("trademark law, unlike copyright law, is not founded on a constitutional mandate, and therefore must be applied with caution where constitutionally protected speech is arguably involved") (Rakoff, J.).

The First Amendment interests are especially strong in this case, given that it is undisputed that the Birkin mark has become a cultural symbol of wealth and status. *See* Robinson Decl. Ex. B at 152:21–153:2; Ex. K at 68:3–70:9; *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 807 (9th Cir. 2003) (holding that "when marks transcend their identifying purpose and enter public discourse and become an integral part of our vocabulary, they assume a role outside the bounds of trademark law," that "[w]here a mark assumes such cultural significance, First Amendment protections come into play," and that "[i]n these situations, the trademark owner does not have the right to control public discourse whenever the public imbues his mark with a meaning beyond its source-identifying function.") (cleaned up).

Mr. Rothschild has used the "Birkin" mark only to promote the *MetaBirkins* NFT artworks, which are indisputably noncommercial speech protected by the First Amendment—not consumer products like the products at issue in the inapposite cases cited by Hermès in its motion brief. *See*, *e.g.*, *Hurley v. Irish–American Gay, Lesbian and Bisexual Grp. of Boston*, 515 U.S. 557, 569 (1995) (The protection of the First Amendment is not limited to written or spoken words, but includes other mediums of expression, including music, pictures, films, photographs, paintings, drawings, engravings, prints, and sculptures); *City of Lakewood v. Plain Dealer Publ'g Co*., 486 U.S. 750, 756 n. 5 (1988) (The fact that expressive materials are sold does not diminish the degree of protection to which they are entitled under the First Amendment). The "constitutional protection of artistic works turns not on the political significance that may be attributable to such productions, though they may indeed comment on the political, but simply on

9

their expressive character, which falls within a spectrum of protected 'speech' extending outward from the core of overtly political declarations." *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 602–03 (1998). Moreover, "a narrow, succinctly articulable message is not a condition of constitutional protection, which if confined to expressions conveying a 'particularized message,' would never reach the unquestionably shielded painting of Jackson Pollock, music of Arnold Schoenberg, or Jabberwocky verse of Lewis Carroll." *Hurley*, 515 U.S. at 569 (quoting *Spence v. Washington*, 418 U.S. 405, 411 (1974) (per curiam)).

Accordingly, the only appropriate injunctive relief based on the evidence in this case would be to require a clear disclaimer because (i) a disclaimer would avert the irreparable harm claimed by Hermès; (ii) a disclaimer would balance the hardships between Hermès, Mr. Rothschild, and bona fide, good-faith purchasers of *MetaBirkins* artworks who are not parties to this action; and (iii) a disclaimer would serve the public interest in this case.

### A.     A Disclaimer Would Avert Any Irreparable Harm to Hermès.

Hermès has produced no evidence of any concrete harm that it has suffered from Mr. Rothschild's promotion and sales of his *MetaBirkins* artworks; rather, the evidence shows that Hermès' sales of Birkin bags have continued to increase year over year, even after the *MetaBirkins* were released. *See* Robinson Decl., Ex. K at 95:12–101:21; Ex. B at 195:21–196:15. Moreover, and tellingly, Hermès chose not to move for a preliminary injunction at the outset of this case, which would have been an appropriate request if Hermès genuinely believed that it was being irreparably harmed by the promotion and sales of *MetaBirkins* artworks.

The only evidence of any harm—let alone irreparable harm—identified by Hermès in their instant submission is (i) Mr. Martin's testimony that Hermès was harmed by *MetaBirkins* because Hermès "lost this opportunity of being first on the [NFT] market," (ii) vague testimony

from Hermès' employee, Maximilien Moulin, that the *MetaBirkins* somehow interfered with
Hermès' launch of its own NFTs, and (iii) Mr. Moulin's testimony that *MetaBirkins* would
potentially cause confusion among consumers or otherwise interfere with Hermès' NFT plans
going forward. Memorandum of Law in Support of Plaintiffs' Motion for Permanent Injunction
(Dkt. No. 166) ("Hermès' Br.") at 14 (identifying evidence that supports Hermès' claim of
irreparable harm absent a permanent injunction).

      Hermès' complaint that they will no longer be first to market with Birkin NFTs is
factually incorrect (as *MetaBirkins* are not Birkin or Hermès NFTs), and in any event is not a
harm that could be remedied by prospective injunctive relief. Likewise, Mr. Moulin's vague
assertion that *MetaBirkins* somehow interfered with the launch of Hermès' own NFTs is water
under the bridge and cannot be remedied by prospective injunctive relief.[3]

      The only evidence identified by Hermès of purported irreparable harm that could be
remedied by prospective injunctive relief is Mr. Moulin's testimony that *MetaBirkins* would
potentially cause confusion among consumers or otherwise interfere with Hermès' NFT plans
going forward. *See* Hermès Br. at 14. But as Mr. Moulin explained at trial, almost all of Hermès'
own plans for consumer-facing NFTs involve utility related to Hermès' own products and events,
*e.g.*, providing NFTs as certificates of authenticity to customers who purchase physical Hermès
products, using NFTs as admission tickets for Hermès events, or distributing NFTs that would be
usable as three-dimensional objects in a virtual world or video game. *See* Robinson Decl., Ex. E

---

[3] Mr. Moulin's testimony that *MetaBirkins* interfered with Hermès' NFT plans is belied by his
testimony that as of trial, Hermès had not publicly released any NFTs (*see* Robinson Decl., Ex. E
at 720:11–16), and by Hermès' intent-to-use trademark applications related to NFTs, which were
not filed until August 2022—nine months after *MetaBirkins* were released and eight months after
this action was commenced. *See* Robinson Decl., Ex. L.

at 700:14–21, 701:20–702:6; 702:19–706:3. There is no evidence whatsoever that the *MetaBirkins* NFTs could be used for any of these purposes; the *MetaBirkins* have no connection to Hermès products, events, or other offerings, and it is undisputed that the *MetaBirkins* are flat, two-dimensional pictures and not virtual wearables or otherwise usable in virtual worlds like the NFTs planned by Hermès. *See* Robinson Decl., Ex. B at 137:6–16.

The *MetaBirkins* thus do not compete with any of the products or services that Hermès has plans to offer with NFTs. And to the extent that Hermès has plans to sell artworks with NFTs, Hermès cannot use the Lanham Act to stop others from selling competing artworks that reference or depict Hermès' products or marks, so long as consumers are not explicitly misled as to their source. That is the entire point of *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), *Twin Peaks Prod. v. Public. Int'l*, 996 F.2d 1366 (2d Cir. 1993), and their progeny.

Accordingly, to the extent that Hermès has identified actionable, prospective irreparable harm in the form of potential consumer confusion from continued promotion and sales of the *MetaBirkins* artworks, including through the metabirkins.com website and *MetaBirkins* social media accounts, use of a clear disclaimer would avert such harm. This is especially so given the indisputable sophistication of consumers of Hermès' Birkin handbags, which sell for between $12,000 and $200,000, and *MetaBirkins* NFT artworks, which have sold for the equivalent of thousands or tens of thousands of dollars. *See* Robinson Decl., Ex. K at 57:18–21; *Soltex Polymer Corp. v. Fortex Industries, Inc*., 832 F.2d 1325 (2d Cir. 1987) ("given the undisputed fact that the market for defendants' industrial containers consists of relatively sophisticated buyers, the district court reasonably concluded that the minimal or moderate amount of potential confusion found could be cured effectively by use of a disclaimer"); *Westchester Media*, 214 F.3d at 674 (reversing and remanding for consideration of a disclaimer instead of more stringent

injunctive relief in part because the markets for "both PRL's products and Westchester's magazine consist[ed] of relatively sophisticated buyers" and "[s]uch buyers are more likely to notice, read, and understand the import of any written disclaimers attached to Westchester's magazine"); *cf. Times Mirror Magazines, Inc. v. Las Vegas Sport News*, 212 F.3d 157, 168–69 (3d Cir. 2000) ("Unsophisticated buyers ... are more vulnerable to confusion, mistake, and misassociations against which the trademark protects").

Moreover, as made clear by the trial testimony of Nicolas Martin, there is no evidence whatsoever that any actual purchaser of a *MetaBirkins* artwork ever was confused. *See* Robinson Decl., Ex. B at 198:13–199:19. This was consistent with the testimony of Mr. Rothschild himself. *See* Robinson Decl., Ex. I at 304:10–16; Ex. M at 540:23–542:2. While the "lack of actual confusion" is "not determinative," it "is relevant to the fashioning of [injunctive] relief." *Westchester Media*, 214 F.3d at 673 (citing 3 McCarthy § 23:18).

And finally, Hermès' evidence of likelihood of consumer confusion consists only of a handful of anonymous social media posts, a handful of mistaken news articles that were corrected, and a deeply flawed survey of purported NFT purchasers conducted and presented by an expert witness, Dr. Bruce Isaacson, who gratuitously lied under oath about whether he had ever heard of Mr. Rothschild's rebuttal expert.[4] *See* Memorandum of Law in Support of Rothschild's Renewed Motion for Judgment as a Matter of Law ("JMOL Br.") at 22–28; p. 4, *supra*. This evidence is legally insufficient to establish a likelihood of confusion in an ordinary

---

[4] Although Hermès complains about a handful of mistaken media articles as evidence of confusion around *MetaBirkins*, its Associate Director of Corporate Communication, Luisa Maria Vittadini, testified that Hermès did not respond to a direct inquiry from *Business of Fashion* asking if Hermès was somehow affiliated with *MetaBirkins*, despite Hermès' view that *Business of Fashion* is one of the most important fashion magazines. *See* Robinson Decl., Ex. E at 788:5–789:9. Ms. Vittadini later admitted that the mistaken articles were corrected. *See id.* at 789:10–791:21, 797:9–22, 800:23–801:7.

trademark infringement case, let alone in a case involving artistic expression and First

Amendment protections. *See* JMOL Br. at 26–30. And in any event, concerns about any such

confusion could be remedied with a clear disclaimer on the *MetaBirkins* website, social media

accounts, and NFT auction platforms where *MetaBirkins* are traded and sold—particularly given

the evidence that: (i) as Hermès's Social Media and Web Director, Ambre-Elise Binoche,

testified, when Hermès and an artist collaborate on a project promoted by social media, Hermès

itself makes clear in social media posts that Hermès is behind the project with the artist (*see*

Robinson Decl., Ex. E at 7:8–8:20); and (ii) that Hermès does not sell Birkin bags online (*see*

Robinson Decl., Ex. K at 73:5-11). Indeed, Hermès does not appear even to own, let alone use,

the domain names birkin.com or birkins.com.

      For the foregoing reasons, Hermès has not shown and cannot show irreparable injury that

would not be remedied with a disclaimer, and thus the First Amendment demands that the Court

deny Hermès' overreaching and unconstitutional demands for injunctive relief.

      **B.**    **A Disclaimer is Warranted by the Balance of Hardships Between Hermès,**
           **Mr. Rothschild, and Bona Fide, Good-Faith Purchasers of *MetaBirkins***
           **Artworks Who Are Not Parties to This Action.**

      A district court may abuse its discretion where a permanent injunction in a trademark

case is too broad, *see*, *e.g.*, *Nikon, Inc. v. Ikon Corp.*, 987 F.2d 91, 94 (2d Cir. 1993), *i.e.*, not

"narrowly tailored to fit specific legal violations" because the district court "should not impose

unnecessary burdens on lawful activity." *Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775,

785 (2d Cir. 1994).

      Under the First Amendment, it is lawful for Mr. Rothschild and anyone else—including,

especially, owners of *MetaBirkins* artworks who are not parties to this action—to promote and

sell the *MetaBirkins* artworks using the BIRKIN mark in the "MetaBirkins" title so long as they

do not do so in a way that explicitly misleads as to source. And yet Hermès asks this Court for the kind of broad, uncompromising injunctive relief befitting a counterfeiter of Hermès' products, including, *inter alia*, (i) enjoining Mr. Rothschild and others from using the *MetaBirkins* title that describes the artworks, (ii) ordering the transfer of the metabirkins.com domain name, ENS domains, and social media accounts using the *MetaBirkins* title, (iii) ordering the transfer to Hermès of the *MetaBirkins* NFT smart contract and all *MetaBirkins* artworks in Mr. Rothschild's possession, and (iv) ordering the transfer of any income received by Mr. Rothschild from sales of *MetaBirkins* artworks since the start of the trial. Hermès Br. at 18-23.

The proposed order for injunctive relief submitted by Hermès would not only eviscerate Mr. Rothschild's prospective First Amendment right to promote and sale his *MetaBirkins* artworks in a way that does not explicitly mislead as to their source, but, as conceded by Hermès' blockchain expert, Dr. Mentzer, it also would substantially impair or destroy the property rights of bona fide, good-faith purchasers of *MetaBirkins* artworks who are not parties to this case.[5] *See* Robinson Decl., Ex. G at 91:6–92:15; Ex. B at 144:9–12.

This is so because the relief requested by Hermès not only would prohibit such third parties from publicly using the *MetaBirkins* title under any circumstances to reference or sell their *MetaBirkins* artworks, it also would give Hermès control of the *MetaBirkins* smart contract, which, as Dr. Mentzer testified, would allow Hermès to change the images associated with the

---

[5] Hermès' request that the Court order an accounting and transfer of profits made by Mr. Rothschild from sales, if any, of *MetaBirkins* artworks since trial began, *see* Hermès Br. at 21–22, is inappropriate because there is no evidence of use of the *MetaBirkins* title to promote or sell *MetaBirkins* artworks in an explicitly misleading way since trial began. On the contrary, the broad media coverage that the case has received would alert potential *MetaBirkins* consumers that Mr. Rothschild, and not Hermès, is the source of *MetaBirkins*. *See* Hermès Br. at 10–11.

*MetaBirkins* NFTs, effectively destroying the *MetaBirkins* artworks. *See* Robinson Decl., Ex. G at 97:18–20, 99:8–9.

The injunctive relief sought by Hermès thus would cause irreparable injury to Mr. Rothschild and to the current owners of *MetaBirkins* artworks. *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). The use of a disclaimer, on the other hand, would balance Hermès' concerns of injury caused by consumer confusion with the First Amendment interests of Mr. Rothschild, the *MetaBirkins* owners, and the public.

### C.     The Public Interest Would Best Be Served by a Disclaimer in This Case.

The "Constitution often protects interests broader than those of the party seeking their vindication. The First Amendment, in particular, serves significant societal interests." *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 776 (1978). *See also New York Progress and Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) ("[S]ecuring First Amendment rights is in the public interest."); *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) ("[I]t is always in the public interest to protect First Amendment liberties."); *Newsom v. Albemarle County Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003) ("Surely, upholding constitutional rights serves the public interest."); *Ligon v. City of New York*, 925 F. Supp. 2d 478, 541 (S.D.N.Y. 2013) ("[T]he public interest lies with the enforcement of the Constitution.").

Because the *MetaBirkins* indisputably are works of artistic expression, *see* p. 8, *supra*, the Court must balance the public's significant interest in protecting First Amendment liberties with the public's interest in not being deceived about the source of the *MetaBirkins* artworks. A clear disclaimer would do just that; it would protect the First Amendment interests at stake while

making clear to consumers (to the extent that there is any confusion) that the *MetaBirkins* artworks are Mr. Rothschild's creation and are not affiliated with Hermès.

## <u>CONCLUSION</u>

Because of Hermès' unclean hands arising from its misconduct at trial, Mr. Rothschild respectfully requests that the Court deny Hermès' request for equitable relief. If the Court exercises its discretion to grant equitable relief, however, then Mr. Rothschild respectfully requests that the Court deny Hermès' overreaching and unconstitutional requests for injunctive relief and instead grant Mr. Rothschild's proposed order requiring the use of a clear disclaimer in connection with the promotion and sales of *MetaBirkins* NFT artworks.

Dated: March 14, 2023
         New York, New York

                              Respectfully Submitted,

                               /s/ *Rhett O. Millsaps II*
                              Rhett O. Millsaps II
                              Christopher J. Sprigman
                              Mark P. McKenna (*pro hac vice*)
                              Rebecca Tushnet
                              LEX LUMINA PLLC
                              745 Fifth Avenue, Suite 500
                              New York, NY 10151
                              (646) 898-2055
                              rhett@lex-lumina.com

                              Jonathan Harris
                              Adam Oppenheim
                              Ashley Robinson
                              HARRIS ST. LAURENT & WECHSLER LLP
                              40 Wall Street, 53rd Floor
                              New York, NY 10005
                              jon@hs-law.com
                              (212) 397-3370

                              *Attorneys for Defendant Mason Rothschild*