# EXHIBIT A

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    HERMÈS INTERNATIONAL, et al.,

4                   Plaintiffs,

5          v.                              22 Civ. 384 (JSR)

6    MASON ROTHSCHILD,

7                   Defendant.             Trial

8    ------------------------------x
                                           New York, N.Y.
9                                          February 6, 2023
                                           9:30 a.m.
10
     Before:
11
                           HON. JED S. RAKOFF,
12
                                           District Judge
13                                            –and a Jury–

14


15                            APPEARANCES

16   BAKER & HOSTETLER LLP
          Attorneys for Plaintiffs
17   BY:  DEBORAH A. WILCOX
          OREN J. WARSHAVSKY
18        GERALD J. FERGUSON

19   HARRIS ST. LAURENT & WECHSLER LLP
          Attorneys for Defendant
20   BY:  ADAM B. OPPENHEIM
          JONATHAN A. HARRIS
21
     LEX LUMINA PLLC
22        Attorneys for Defendant
     BY:  RHETT O. MILLSAPS, II
23        CHRISTOPHER SPRIGMAN

24

25
```

1   a likelihood of confusion between two trademarks?

2   A.  Yes.  I have done that many times.  A rough estimate would

3   be 60 to 90 different surveys of that kind specifically.

4   Q.  And the jury heard Dr. Isaacson talk about his use of the

5   *Eveready* method for testing likelihood of confusion.  Have you

6   used that specific method in conduct surveys before?

7   A.  I have.  That's a common method, and I've probably used it

8   50 times I would say.

9   Q.  Before we get into the details of what you have to say,

10  have you heard of Dr. Isaacson before this case?

11  A.  I had.  We actually worked on the same side of a case a

12  couple of years ago.  So I was aware of him from that prior

13  case.

14  Q.  And on Friday afternoon, did Dr. Isaacson approach you here

15  in the courthouse?

16  A.  He did, yes.  I think just to say hello, since we had never

17  met in person before, despite having worked on that case.

18  Q.  Now, you testified on Friday about your assignment in this

19  case.  But would you just remind us of what your goals were.

20  A.  Sure.  Pretty simple.  To conduct a scientific review of

21  the two surveys that Dr. Isaacson did, and in particular to

22  look at his conclusion from the first survey, the one of the

23  NFT purchases, where he concluded that there was a likelihood

24  of confusion.  I looked very closely at that confusion to work

25  out if it was accurate or not.

1  consideration.

2          This case has proceeded a little bit oddly in that

3  it's kind of felt at times like we're almost trying two

4  different cases.  And so I thought I'd almost level set for a

5  little bit.  And I want to go back to where I started a week

6  ago when I was giving my opening statement.

7          And what I told you was that there are two main

8  reasons that Hermès brought this lawsuit.  First, Hermès

9  believed that consumers were going to be confused by the

10  MetaBirkins NFTs; and second, Hermès believed that the

11  MetaBirkins NFTs damaged their Birkin brand.

12          Mr. Rothschild's counsel, Mr. Millsaps, then got up

13  and talked about Mr. Rothschild's right as an artist.  And he

14  then said that this case was about a multibillion-dollar

15  corporation trying to punish Mr. Rothschild because they don't

16  like his art, and because they are scared of what it might show

17  about the luxury consumer culture.

18          I submit you didn't see any evidence of that

19  throughout this trial.  Hermès took no position about

20  Mr. Rothschild's art; certainly took no position about any

21  commentary.  I'm not sure we heard about any commentary.  And

22  Hermès is certainly not here to punish Mr. Rothschild.  And

23  I'll get to that a little bit later.

24          The evidence actually showed just the opposite, right.

25  Nicholas Martin got up and testified.  And his testimony was

1    that Hermès has not brought a claim like this — just a

2    trademark infringement claim, straight trademark infringement

3    claim — in over 20 years.  He then said it never sued an

4    artist, it never even sent a cease and desist to an artist.

5    And that was even true for Mr. Rothschild's Baby Birkin

6    project, right.

7              So why was this case different?

8              And that's a theme I'm going to come back to in a

9    moment.

10             But let's talk for a minute about what a trademark

11   infringement case is really about.  And as Judge Rakoff said,

12   he's going to provide you with the instructions.  But

13   generally, trademark infringement is about consumer confusion.

14   The central question is whether a potential consumer, when he

15   or she sees the MetaBirkins NFTs, is likely to be confused that

16   they somehow are connected to or sponsored by Hermès.

17             Hermès's second claim, the damage -- where it's been

18   damaged is what's called dilution.  And that looks to whether

19   the MetaBirkins NFTs somehow does damage to Hermès's Birkin

20   trademark.  I'm going to explain those both a little bit more

21   later.

22             But let's get back to the central question again:  Why

23   did Hermès bring this claim?

24             Now, Nicholas Martin went through those reasons.

25             First, there were 100 NFTs.  They looked similar to

 1    evidence.

 2              Remember, in his own words:  I don't think people

 3    realize how much you can get away with in art by saying in the

 4    style of.  That's his statement to his investors.

 5              We know that Mr. Rothschild adopted the Birkin name

 6    and used the configuration of the Birkin bag to make money.  We

 7    know his goal was for these NFTs to sell at as high of a price

 8    as possible.  We know that people purchased these NFTs because

 9    it was affiliated with a brand.  Dr. Kominers' unrebutted

10    testimony makes that very plain.  And we know that

11    Mr. Rothschild succeeded.

12              Not only did we discuss the press and the few comments

13    on social media, but we have Isaacson's survey.  Dr. Isaacson

14    says 18.7 percent of potential NFT customers, or almost one in

15    five people, were confused.

16              Dr. Isaacson showed Mr. Rothschild's web page without

17    any changes, and one in five thought it was either Birkin or

18    Hermès.

19              But let's even say we want to believe Dr. Neal's

20    critique.  It's one in 10.  Right?  That's how many people are

21    confused.  As such, Mr. Rothschild's conduct doesn't get saved

22    by the First Amendment.

23              Now, as I said, I am going to switch a little bit here

24    to damages.  As I said a little while earlier, Hermès is not

25    seeking to punish Mr. Rothschild.  If punishment were Hermès'