**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HERMÈS INTERNATIONAL and
HERMÈS OF PARIS, INC.,

                Plaintiffs,

     -against-

MASON ROTHSCHILD,

               Defendant.

CIVIL ACTION NO.

22-CV-00384 (JSR)

## PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR PERMANENT INJUNCTION

**BAKER & HOSTETLER LLP**

Gerald J. Ferguson, Esq.
Oren J. Warshavsky, Esq.
Jason S. Oliver, Esq.
Jessica H. Fernandez, Esq.
Megan A. Corrigan, Esq.
Francesca A. Rogo, Esq.
45 Rockefeller Plaza, 14th Floor
New York, NY 10111
Telephone:   212.589.4200
Facsimile:    212.589.4201

Deborah A. Wilcox, Esq. (*pro hac vice*)
Key Tower
127 Public Square
Cleveland, OH 44114
Telephone:   216.621.0200

Lisa Bollinger Gehman, Esq. (*pro hac vice*)
1735 Market Street
Philadelphia, PA 19103
Telephone:   215.568.3100

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT .....................................................................................................................1

     I.      ROTHSCHILD'S UNCLEAN HANDS ARGUMENT IS MERITLESS..............1

          A.     Standard of Review.............................................................................1

          B.     Hermès' Witness Nicolas Martin Did Not Give False Testimony ..............3

          C.     Dr. Isaacson Did Not Give False Testimony ................................................5

          D.     Dr. Mentzer Did Not Give False Testimony.................................................6

     II.     A DISCLAIMER IS AN INAPPROPRIATE REMEDY .......................................7

CONCLUSION....................................................................................................................10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbott Lab'ys v. Adelphia Supply USA*,
    No. 15-CV-5826 (CBA) (MDG), 2015 WL 10906060
    (E.D.N.Y. Nov. 6, 2015), *aff'd sub nom. Abbott Lab'ys v. H&H Wholesale*
    *Servs., Inc.*, 670 F. App'x 6 (2d Cir. 2016)...................................................................8

*Aris-Isotoner Gloves, Inc. v. Berkshire Fashions, Inc.*,
    792 F. Supp. 969 (S.D.N.Y. 1992), *aff'd sub nom. Aris-Isotoner Gloves v.*
    *Berkshire Fashions*, 983 F.2d 1048 (2d Cir. 1992) ...................................................2

*Cartier v. Symbolix, Inc.*,
    386 F. Supp. 2d 354 (S.D.N.Y. 2005)........................................................................1

*Charles of Ritz Grp. Ltd. v. Quality King Distribs., Inc.*,
    832 F.2d 1317 (2d Cir. 1987).....................................................................................8

*Dress for Success Worldwide v. Dress 4 Success*,
    589 F. Supp. 2d 351 (S.D.N.Y. 2008)........................................................................1

*Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.*,
    No. 12 CIV. 01416 GBD, 2014 WL 3874193 (S.D.N.Y. Aug. 5, 2014),
    *rev'd in part, vacated in part on other grounds*, 897 F.3d 413 (2d Cir. 2018)........1

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.*,
    82 F. Supp. 2d 126 (S.D.N.Y. 1999).........................................................................2

*Goldstein v. Delgratia Min. Co.*,
    176 F.R.D. 454 (S.D.N.Y. 1997) ..............................................................................2

*Hamilton Int'l Ltd. v. Vortic LLC*,
    13 F.4th 264 (2d Cir. 2021) .......................................................................................8

*Home Box Off., Inc. v. Showtime/The Movie Channel Inc.*,
    832 F.2d 1311 (2d Cir. 1987).....................................................................................7

*JTH Tax LLC v. Agnant*,
    No. 22-CV-2385 (PKC) (CLP), 2022 WL 1556656 (E.D.N.Y. May 17, 2022),
    *aff'd*, No. 22-1229-CV, 2023 WL 2467363 (2d Cir. Mar. 13, 2023) ......................2

*Laugh Factory, Inc. v. Basciano*,
    608 F. Supp. 2d 549 (S.D.N.Y. 2009)........................................................................2

*Estate of Lennon by Lennon v. Screen Creations, Ltd.*,
  939 F. Supp. 287 (S.D.N.Y. 1996)......................................................................2

*Liquid Glass Enters., Inc. v. Dr. Ing. h.c.F. Porsche AG*,
  8 F. Supp. 2d 398 (D.N.J. 1998) ......................................................................8

*Nichino America, Inc. v. Valent U.S.A. LLC*,
  44 F.4th 180 (3d Cir. 2021) ............................................................................10

*Patsy's Italian Rest., Inc. v. Banas*,
  575 F. Supp. 2d 427 (E.D.N.Y. 2008) *aff'd*, 658 F.3d 254 (2d Cir. 2011)..............................2

*Total Control Apparel, Inc. v. DMD Int'l Imports, LLC*,
  409 F. Supp. 2d 403 (S.D.N.Y. 2006).................................................................2

**Statutes**

15 U.S.C. § 1127.......................................................................................8

**Other Authorities**

4 McCarthy on Trademarks and Unfair Competition § 23:51 (5th ed. 2023) ...............................10

Plaintiffs Hermès International and Hermès of Paris, Inc. (collectively, "Hermès") respectfully submit this reply memorandum in further support of their motion for a permanent injunction against Mason Rothschild's a/k/a Sonny Alexander Estival ("Rothschild").

## PRELIMINARY STATEMENT

The jury found that Rothschild was not just liable for trademark infringement, dilution, and cybersquatting, but also that Rothschild intentionally misled customers. Trying to resist an injunction, Rothschild now argues that Hermès has proceeded with unclean hands and that a disclaimer should suffice here. He is wrong on both counts, and an injunction should issue.

## ARGUMENT

## I.  ROTHSCHILD'S UNCLEAN HANDS ARGUMENT IS MERITLESS

Rothschild asserts that Hermès "engaged in a pattern of deliberately dishonest conduct." Def.'s Mem. of Law in Opp'n to Pls.' Mot. for Permanent Inj. ("Def.'s Br.") at 3, ECF No. 175. Rothschild's argues that three witnesses (Mr. Martin, Dr. Isaacson, and Dr. Mentzer) were dishonest. The testimony of each witness was truthful and accurate. But even if there were inaccuracies, Rothschild has not—because he cannot—show that it was intentional, let alone the result of brazen fraud, deceit, unconscionability, or bad faith that would justify allowing Rothschild to continue intentionally misleading consumers.

### A.  Standard of Review

"A court may deny injunctive relief based on the defense of unclean hands where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue." *Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.*, No. 12 CIV. 01416 GBD, 2014 WL 3874193, at *8 (S.D.N.Y. Aug. 5, 2014), *rev'd in part, vacated in part on other grounds*, 897 F.3d 413 (2d Cir. 2018) *quoting Cartier v. Symbolix, Inc.*, 386 F. Supp. 2d 354, 362 (S.D.N.Y. 2005) (internal quotation marks omitted). *See also Dress for Success*

*Worldwide v. Dress 4 Success*, 589 F. Supp. 2d 351, 363–64 (S.D.N.Y. 2008). "Typically, courts that have denied injunctive relief due to plaintiff's unclean hands have found plaintiff guilty of truly unconscionable and brazen behavior." *Total Control Apparel, Inc. v. DMD Int'l Imports, LLC*, 409 F. Supp. 2d 403, 410 (S.D.N.Y. 2006) *quoting Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 126, 131 (S.D.N.Y. 1999); *see also Patsy's Italian Rest., Inc. v. Banas*, 575 F. Supp. 2d 427, 461 (E.D.N.Y. 2008) *aff'd*, 658 F.3d 254 (2d Cir. 2011) ("[B]ecause trademark law also involves protecting the public's interests, courts typically only bar recovery under a theory of unclean hands when a plaintiff's conduct was egregious, or clear, unequivocal and convincing." (citations and internal quotation marks omitted)). The burden of proof falls on the party asserting the defense. *Gidatex*, 82 F. Supp. 2d at 130; *see also JTH Tax LLC v. Agnant*, No. 22-CV-2385 (PKC) (CLP), 2022 WL 1556656, at *12 (E.D.N.Y. May 17, 2022), *aff'd*, No. 22-1229-CV, 2023 WL 2467363 (2d Cir. Mar. 13, 2023).

The cases Rothschild cites starkly contrast with the conduct alleged here—even if accurate (which it is not). In *Laugh Factory, Inc. v. Basciano*, 608 F. Supp. 2d 549, 556, 560 (S.D.N.Y. 2009), the plaintiff was carrying on secret, material negotiations behind the defendant's back. In *Estate of Lennon by Lennon v. Screen Creations, Ltd.*, 939 F. Supp. 287, 293 (S.D.N.Y. 1996) the defendant's agent for purposes of negotiating the parties' license was, in fact, secretly an agent for the plaintiff, and the plaintiff issued the same license to another party. In *Goldstein v. Delgratia Min. Co.*, 176 F.R.D. 454, 458 (S.D.N.Y. 1997), the plaintiff made multiple misrepresentations to the court about the nature of the action and the existence of other proceedings. And in *Aris-Isotoner Gloves, Inc. v. Berkshire Fashions, Inc.*, 792 F. Supp. 969, 972 (S.D.N.Y. 1992), *aff'd sub nom. Aris-Isotoner Gloves v. Berkshire Fashions*, 983 F.2d 1048 (2d Cir. 1992), the defendant's sworn statements on remand directly contradicted his testimony in the original proceeding.

### B.      Hermès' Witness Nicolas Martin Did Not Give False Testimony

Rothschild's argues that Mr. Martin misled the jury about the parties' discussions after Hermès sent a cease-and-desist letter. Rothschild argues that Hermès tried to hide discussions among counsel. Rothschild knows that's false. Hermès included this very correspondence as trial exhibits. March 3, 2023 Declaration of Jessica H. Fernandez, ECF No. 168 ("Fernandez Decl."), Ex. 7 (ECF No. 168-07); March 24, 2023 Supplemental Declaration of Jessica H. Fernandez ("Fernandez Suppl. Decl."), Ex. 61. Rothschild did <u>not</u>. Joint Pretrial Consent Order Ex. 4, ECF No. 134-4. Also, Mr. Martin testified truthfully concerning those very discussions.

Context is important. An issue at trial was Rothschild's dishonest statements that he was collaborating with Hermès. *See* Mem. of Law in Supp. of Pls.' Mot. for Permanent Inj. at 4 (ECF No. 166); Fernandez Decl. Ex. 10 at 47 (ECF No. 168-10); Ex. 16 at 5 (ECF No. 168-16); Ex. 17 at 4 (ECF No. 168-17); Ex. 18 at 4 (ECF No. 168-18); Ex. 19 at 8 (ECF No. 168-19); Ex. 20 at 11 (ECF No. 168-20). During opening, Mr. Millsaps suggested Rothschild was actually honest, stating "[a]nd you will hear from Hermès' own witness that it is not unusual for artists to approach Hermès to pitch a collaboration with them, because they want to work with Hermès." Fernandez Decl., Ex. 31 at 48:18–21 (ECF No. 168-31). Mr. Rothschild testified similarly and during closing counsel repeated that Rothschild "was hoping to collaborate with Hermès . . . he did try." Fernandez Suppl. Decl., Ex. 62 at 299:13–17; Ex. 63 at 1016:9–15.

That was untrue. And to confirm the same Counsel asked Mr. Martin "[d]id Hermès interact with Mr. Rothschild" both before and after sending the cease-and-desist letter. March 14, 2023 Declaration of Ashley N. Robinson, ECF No. 177 ("Robison Decl."), Ex. B at 191:2–7 (ECF No. 177-2). Mr. Martin answered those questions truthfully—Hermès did not interact with Mr. Rothschild. On cross examination, Rothschild sought to paint Hermès as somehow rushing to a lawsuit and engaging in bad faith discussions (and routinely substituted the term "contact" for

"interaction"). Fernandez Suppl. Decl., Ex. 64 at 206–214. And despite being irrelevant to all issues (and mischaracterizations) Mr. Martin truthfully testified about the discussions among counsel leading Rothschild to the following conclusion:

> Q. So, Mr. Martin, before lunch you then testified, correct me if I'm wrong, that Hermès sent Mr. Rothschild a cease-and-desist letter when it discovered these plans, but then had no further contact with Mr. Rothschild; was that your testimony?
>
> A. Yes, but for me, the answer from was not part -- I mean, what I wanted to say -- perhaps I did it wrong -- is that I had no direct contact with Mr. Rothschild after the cease-and-desist letter. He answered through his lawyers, through his lawyers. But I had no contact, Hermès had no direct contact with Mr. Rothschild. That was the way I understood for me.
>
> Q. So you don't consider contact through your lawyers who are working as your agents to be Hermès having contact with Mr. Rothschild?
>
> MR. WARSHAVSKY: Objection.
>
> THE COURT: Sustained. I think he's indicated that he, all he was saying was that he didn't have direct contact with Mr. Rothschild. The jury can see that there were letters sent in both directions, all containing the sweet nothings that are typical of lawyers' letters.

Robinson Decl., Ex. B at 210:3–22.

Rothschild's argument that Mr. Martin's testimony "deliberately create[ed] a false impression for the [J]ury" (Def.'s Br. at 3) is belied by Mr. Martin's truthful testimony and the fact that it was Hermès, not Rothschild, that included settlement correspondence as trial exhibits. Mr. Martin's response to Mr. Millsaps's questioning highlight that point. Hermès and Mr. Martin were focused on Rothschild's lies about collaborating and/or efforts to collaborate with Hermès. Rothschild's focus, apparently, was to bring up irrelevant, failed settlement communications.

Rothschild next argues that Mr. Martin's was deliberately misleading when testifying that he was "only aware of [Hermès bringing] one [trademark infringement] case more than 20 years

ago." Def.'s Br. at 3–4. This was part of the testimony demonstrating that Hermès did not bring claims against galleries, artists, or others. Fernandez Suppl. Decl., Ex. 64 at 193:22–195:7. In fact, Hermès did not bring a claim concerning the Baby Birkin. *Id.* at 191:22–192:18. Rothschild argues that 12 years ago, Hermès brought a trademark infringement claim. The docket shows that case was settled before a case management order was entered and before discovery. *Hermès Int'l v. Thursday Friday Inc.*, 11-cv-00580-AKH) (S.D.N.Y. 2011) (ECF Nos. 15–19). There is no evidence Mr. Martin was ever aware of this short-lived 2011 case, but even if he had been aware of it 12 years ago (and it can be assumed he did have that knowledge in 2011 given his role at Hermès), his failure to recall it at trial, when testifying about his awareness, is of no moment and immaterial to the claims here. Rothschild provides no credible reason to think this mistake would have impacted the Jury or that it would benefit Mr. Martin or Hermès here.

### C.   Dr. Isaacson Did Not Give False Testimony

Rothschild claims that Dr. Isaacson's testimony that he had not heard of Dr. Neal prior to this lawsuit was untrue. Dr. Isaacson has been personally involved in over 1,000 surveys over the past 17 years. Fernandez Suppl. Decl., Ex. 65 at 733:23–734:1. Dr. Neal testified that he was "aware of" Dr. Isaacson they because they worked on the same case. *Id.*, Ex. 63 at 904:9–13. Dr. Isaacson submits a declaration herewith emphasizing, again, that he was previously unaware of Dr. Neal. Isaacson Decl., ¶¶ 5, 9. Even when he works on a case where another expert is engaged, absent instruction from the client, Dr. Isaacson will not speak with that other expert. *Id.* ¶ 8. Thus, Dr. Isaacson testified truthfully. And even if Dr. Isaacson once knew Dr. Neal and forgot, there certainly is no basis to argue that Dr. Isaacson, if mistaken, was being untruthful, let alone acting unconscionable.

### D.    Dr. Mentzer Did Not Give False Testimony

Rothschild claims that Dr. Kevin Mentzer gave false testimony. Def.'s Br. at 5. Dr. Mentzer testified about the technical and complicated functionalities of NFTs and the METABIRKINS NFT smart contract. He testified that the images associated with the METABIRKINS NFTs changed over time and can still change. Fernandez Suppl. Decl., Ex. 66 at 98:21–101:22.

Rothschild argues:

> Dr. Mentzer's duplicity on this point was material because it plainly was meant to confuse the jury by advancing Hermès' specious argument . . . that the MetaBirkins NFTs were separable from the MetaBirkins images *for purposes of liability*.

Def.'s Br. at 5 (emphasis added). Dr. Mentzer did not opine on liability. And the NFTs and the images were separable, as Mr. Millsaps explained in his opening:

> An NFT is just a snippet of code on a public internet register called a blockchain.
>
> * * *
>
> The easiest way to think of an NFT is like a deed or a certificate of title, but it's digital. It's called a token because it represents something else, just like a deed to a house represents the house . . .
>
> * * *
>
> You will see that an NFT, like a deed, doesn't have any inherent nature or value by itself. ***An NFT derives its value from whatever it is attached to***. Just like the deed to a house would be meaningless if the house didn't exist.

Fernandez Suppl. Decl., Ex. 66 at 45:24–46:11 (emphasis added).

Both Mr. Millsaps and Dr. Mentzer explained that an NFT is just a piece of code that is different from the file it is attached to. Dr. Mentzer was no more "prevaricating" about this than Mr. Millsaps. And as was evident at trial, the images associated with the METABIRKINS NFTs changed over time. And while Dr. Mentzer was cross examined on several issues, there were no questions concerning the above. Contrary to Rothschild's assertions, Dr. Mentzer's testimony was consistent with his report.

During direct examination, the Court asked "The MetaBirkins . . . is an image; yes?", to which Dr. Mentzer responded, "MetaBirkins, no, is the name of the smart contract." Robison Decl., Ex. G at 90:25–91:4 (ECF No. 177-7). This testimony is consistent with Dr. Mentzer's report where he defines a METABIRKINS NFT the same way (and similar to Mr. Millsaps) as "a token on a Ethereum blockchain that represents ownership of a unique item (a MetaBirkins NFT)." *Id.*, Ex. F at 10 (ECF No. 177-6). Dr. Mentzer further explains that the images associated with the token are stored separately and with respect to MetaBirkins NFTs, changed over time. Fernandez Suppl. Decl., Ex. 66 at 81:13–18; 97:8–100:14.

Dr. Mentzer's report was entirely consistent with his trial testimony. On page 10 of his report, Dr. Mentzer includes an image currently associated with the METABIRKINS NFTs and identifies this image as "a visual representation of one of the MetaBirkins NFTs." Robinson Decl., Ex. F at 10. In referring to the image in Figure 1 of his report, he testified "[t]hat is the visual representation of what is being offered for sale is the actual token, which to all of us wouldn't really mean anything." Robinson Decl., Ex. G at 91:12–16. And in response to the Court's questioning, "[s]o if you go on the relevant website and you want to purchase exclusive use of this image, that's what you ultimately are getting for your money, right?" Dr. Mentzer responded, "[t]hat is your expectation." *Id.* at 91:14–22. This testimony clarified that a consumer's expectation when purchasing an NFT was to obtain rights to the image associated with it. This testimony is accurate and unrebutted, not dishonest.

## II.    A DISCLAIMER IS AN INAPPROPRIATE REMEDY

Because disclaimers are generally ineffective, the Second Circuit places an affirmative duty and burden on infringers, like Rothschild, to demonstrate "evidence sufficient to demonstrate that any proposed materials would significantly reduce the likelihood of confusion." *Home Box Off., Inc. v. Showtime/The Movie Channel Inc*., 832 F.2d 1311, 1316 (2d Cir. 1987). *See also*,

*Charles of Ritz Grp. Ltd. v. Quality King Distribs., Inc.,* 832 F.2d 1317, 1324 (2d Cir. 1987);

*Abbott Lab'ys v. Adelphia Supply USA*, No. 15-CV-5826 (CBA) (MDG), 2015 WL 10906060, at

*13 (E.D.N.Y. Nov. 6, 2015), *aff'd sub nom. Abbott Lab'ys v. H&H Wholesale Servs., Inc.*, 670

F. App'x 6 (2d Cir. 2016) ("Where, as here, an infringer attempts to avoid a substantial likelihood

of consumer confusion by adding a disclaimer, it must establish the disclaimer's effectiveness."

(citation omitted)). As the Second Circuit recently explained "Our decisions following *Home Box*

*Office* and *Charles of the Ritz Group* have continued to hold that a defendant must justify the

effectiveness of its proposed disclaimers at the remedy stage, after a finding of a substantial

likelihood of confusion." *Hamilton Int'l Ltd. v. Vortic LLC*, 13 F.4th 264, 274 n.4 (2d Cir. 2021).

Furthermore, "disclaimers will never remedy dilution because consumer confusion is irrelevant in

establishing a dilution claim." *Liquid Glass Enters., Inc. v. Dr. Ing. h.c.F. Porsche AG*, 8 F. Supp.

2d 398, 405 n.5 (D.N.J. 1998). *See also* 15 U.S.C. § 1127. Rothschild ignores dilution entirely.

To combat the overwhelming evidence of a likelihood of confusion, one of Rothschild's

main arguments at trial was explained in opening by Mr. Millsaps:

> Mr. Rothschild wanted the credit for MetaBirkins. He set up a
> MetaBirkins website and social media accounts that identified him
> as the creator of MetaBirkins. He identified himself as the creator of
> MetaBirkins in media interviews.

Fernandez Suppl. Decl., Ex. 66 at 47:17–21. This was echoed repeatedly in Rothschild's closing

argument:

> You have seen that Mr. Rothschild identified himself as the creator
> of MetaBirkins on the MetaBirkins website. And . . . he even put up
> a disclaimer on the website to make clear, doubly clear that Hermès
> was not affiliated with MetaBirkins.
> * * *
> Mr. Rothschild identified himself on the MetaBirkins social media
> pages like the MetaBirkins Instagram pages that you see here.
> * * *

> Mr. Rothschild also identified himself on auction platforms where he was able to, like he did here on Rarible. You can see it says, A digital art project by Mason Rothschild . . .
>
> * * *
>
> Mr. Rothschild made clear in this public Discord channel . . . that he was the one behind MetaBirkins. You can see here, when he posted on December 22, 2021: No, like every disclaimer says, this is an art project and not associated with Hermès.
>
> * * *
>
> In public, the only evidence is that Mason Rothschild is proud of what he did and took credit for it. And . . . Mr. Rothschild put up a disclaimer on the website which you've already seen.
>
> * * *
>
> As my colleague covered, from the start metabirkins.com website informed consumers that Mason Rothschild was the creator. And . . . Mr. Rothschild put up a disclaimer.
>
> * * *
>
> Mason Rothschild was respectful and . . . [he] put a disclaimer on his website. And he went on Discord and told all those tens of thousands of people that he wasn't affiliated with Hermès

Fernandez Suppl. Decl., Ex. 63 at 1002:8–1026:15.

The Jury considered the same arguments and evidence Rothschild now proffers and nonetheless found likelihood of confusion (and intentionally misleading conduct). Dr. Isaacson's survey used the metabirkins.com website, including the disclaimer, and still found 18.7% confusion. *Id*., Ex. 65 at 740:19–23; 741:1–9; 743:17–744:9; 757:3–6. The only evidence Mr. Rothschild produced about his disclaimer showed that people on his social media account were still confused and did not understand the disclaimer. *Id*., Ex. 67; Ex. 68 at 555:12–18.

As a leading commentator explains:

> Some consumer studies indicate that disclaimers are ineffective in curing customer confusion over similar marks. In some instances, the use of a disclaimer may serve to aggravate, not alleviate, confusion over brands.
>
> * * *
>
> Rather than the burden being on the plaintiff to show how a disclaimer would not obviate the confusion, the burden is now placed on the infringer to show how a disclaimer would prevent likely confusion. Since the impact of a disclaimer is often

9

> speculative and indeterminate, this shifting of the burden is an important move towards strengthening remedies against trademark infringement.
>
> * * *
>
> In the author's view, the problem with a disclaimer in a case of clear infringement is that the consumer is then faced with two contradictory messages: the infringing trademark says that this product comes from source Alpha - the disclaimer says we have no connection with Alpha. Imagine the infringing product greeting the potential purchaser with a smile and saying: "Hello! I'm from APPLE, but of course I have no connection with APPLE!" Such conflicting messages put together can sometimes create a label or advertisement that is just as or even more confusing and deceptive than the infringing mark alone.

4 McCarthy on Trademarks and Unfair Competition § 23:51 (5th ed. 2023).

Professor McCarthy's concerns are borne out here by the evidence at trial. The Jury heard from Mr. Rothschild and his counsel that he wanted to take credit for the METABIRKINS and used a disclaimer. The Jury found infringement and an intent to mislead notwithstanding Rothschild undertaking the very same conduct that he now says is a sufficient remedy. There is no reason to believe the public will react differently. A disclaimer simply is of no use here.

Eschewing Second Circuit precedent and the leading commentator, Rothschild argues that the Court should follow *Nichino America, Inc. v. Valent U.S.A. LLC*, 44 F.4th 180 (3d Cir. 2021). But *Nichino* was a preliminary injunction, and the defendant was still required to come forward with some evidence to rebut the presumption of irreparable harm. Rothschild, however, comes forward with speculation and attorney palaver. Even if *Nichino* were relevant, it provides no cover for Rothschild here.

## <u>CONCLUSION</u>

For the foregoing reasons, Hermès respectfully requests that this Court grant its motion for permanent injunction and enter its Order of Permanent Injunction.

Dated: March 24, 2023
New York, New York

**BAKER & HOSTETLER LLP**
Deborah A. Wilcox, Esq. (*pro hac vice*)
Key Tower
127 Public Square
Cleveland, OH 44114
Telephone:  216.621.0200

**BAKER & HOSTETLER LLP**
Lisa Bollinger Gehman, Esq. (*pro hac vice*)
1735 Market Street
Philadelphia, PA 19103
Telephone:  215.568.3100

**BAKER & HOSTETLER LLP**

By:   */s/ Gerald J. Ferguson*
Gerald J. Ferguson, Esq.
Oren J. Warshavsky, Esq.
Jason S. Oliver, Esq.
Jessica H. Fernandez, Esq.
Megan A. Corrigan, Esq.
Francesca A. Rogo, Esq.
45 Rockefeller Plaza, 14th Floor
New York, NY 10111
Telephone:  212.589.4200
Facsimile:    212.589.4201

*Attorneys for Plaintiffs*
*Hermès International and*
*Hermès of Paris, Inc.*