# Exhibit 6



| TODAY'S DIGITAL DAILY | | MY ACCOUNT |

BUSINESS
Khaite Scores Investment From Stripes

FASHION
Versace's 'Almost Couture' in Los Angeles

BUSINESS
Wall Street Gets Tough on Gap Inc.

BUSINESS / TECHNOLOGY

# EXCLUSIVE: Mason Rothschild Speaks About Hermès NFT Case

Mason Rothschild, sued by Hermès over his MetaBirkins NFTs, brings WWD inside a landmark lawsuit that may set a new precedent for brands and artists in the metaverse.

*By* ADRIANA LEE          NOVEMBER 22, 2022, 6:59PM





Mason Rothschild  COURTESY PHOTO

**WWD: Why did you create the MetaBirkins NFTs?**

**Mason Rothschild:** I come from the fashion world and understanding what was going on during the climate that was fashion at that moment, was the Kering Group announcing that they were going to go fur-free. So when it comes to just that idea of fur-free fashion — moving into fur-free, not using it in any of their products moving forward and making that promise to the world and their consumers — I wanted to do something that spoke to that.

So the whole idea behind MetaBirkins was a bunch of furry Birkins that were simulated fur. They're not hurting any animals, because they're digital, and speaking to the fact that things are fur-free, like, "Oh, if you wanted to get a fur product, but not attack animals and harm animals any types of way" … that's kind of what it all stemmed from. And at the same time, there were a couple of different things going. You know, could I put this 2D image in the hand of a collector and see what they did with it.

**WWD: They did a lot, given demand …**

**MR:** I think a lot in the media has gotten misconstrued, in the fact that the crazy dollar amounts that these were selling for — right? Like at the time $30,000 to $40,000 is what a MetaBirkin would go for. And I think a lot of media assumed that that's what I was selling them for. But I sold these for the equivalent of $100 today. During the time that they were minted and sold, it was like 300 bucks, I think. And immediately after they were minted, they were selling for $10,000, $20,000, $30,000.

That's what people created — the culture around what I was able to generate did that. I didn't do that. That wasn't artificial. That was what people gave value to. And that was part of the experiment, and I think we were successful in that experiment.

**WWD: You brought up sales, so I have to ask, what did you make from MetaBirkins?**

**MR:** So in January … these are all numbers from when this minted, not today, because crypto and stuff like that is down like 75 percent. MetaBirkins, at the beginning, the mint was about 45,000 at the time. And then in terms of the post-mint sales, there was 1.1 million, which attributed to like $80,000 and after-market royalties, and that was the two weeks after, until OpenSea decided to pull them due to, you know, Hermès' request.

**WWD: These are still for sale today, isn't that right?**

**MR:** I want to make that clear, too. So I'm not selling them. I'm not voluntarily opening up storefronts and selling them, whether it's Rarible or LooksRare or anything in the space in Web 3.0. These collections are made available by the platforms themselves. They scrape from these different collections that are listed — for example, you could make something right now and mint it as an NFT, and it would pop up on OpenSea. You wouldn't need to do any legwork to get that on OpenSea, you know what I mean? … They just exist on these marketplaces that are supposed to be essentially "decentralized."

**WWD: Tell me about where things stand with the case right now.**

**Christopher J. Sprigman:** Discovery — the period where the parties exchange documents and do depositions of people on each side who have knowledge and the facts about the case — ended, and we filed a motion for summary judgment … and the process basically confirmed what we always thought to be true, which is that MetaBirkins are art, that the title "MetaBirkins" is artistically relevant to the content of the images.

MetaBirkins describes what the images [show] and also that there's no claim ever made by Mason that Hermès was the author or the creator of MetaBirkins. So given what discovery shows, the First Amendment should protect Mason's art, Mason's artistic speech against Hermès' trademark claims. You know, artists have a right under the First Amendment to describe, to comment on what's around them.

**Rhett O. Millsaps II:** One of the things that is important in our summary judgment papers is that we have an expert in our case, Blake Gopnik [former chief art critic of The Washington Post and an art critic at Newsweek who contributes to contribute to The New York Times]. He's the author of the definitive biography of Andy Warhol that was published in 2020. He's one of the leading experts in contemporary art in America and probably the world.

He wrote a report in our case explaining why MetaBirkins are art and why what Mason has done here is actually brilliant, artistically. So Hermès' position — and this is their position in their summary judgment papers and what they're going to be trying to argue — is that MetaBirkins are not art and that Mason was just trying to use the Birkin brand to get rich and famous quickly. He was selling commodities, that's their argument, and that NFTs are commodities, because they're tradable and investable.

**WWD: You disagree? What's your perspective on that?**

**ROM:** It's a specious argument, because NFTs are just bits of code on the blockchain. NFTs don't have any character of their own. Their character is defined by whatever it is that they're attached to, right? You can have an NFT that's attached to digital artwork. You could have an NFT that functions as an admission ticket to an event. You could have an NFT that's attached to a physical Birkin handbag.

Hermès has now made this really absurd 11th-hour argument. They started this case by complaining that Mason had created this knockoff virtual handbag — that's what they were calling MetaBirkins…. That wasn't really working for them, because they're clearly just representations, images of fanciful fur-covered Birkin handbags, and because that's so clearly art, now on their summary judgment motion, after almost a year of this case, that the court should pay no attention to the images. Just look at the NFTs, and their argument is Mason is selling NFTs, he wasn't selling artwork. Never mind that the NFTs were attached to the artwork and they were sold together. People knew they were buying the MetaBirkins artwork that were attached to the NFTs that they were getting.

Hermès has had shifting positions throughout the case, and now they're really shifting into absurd territory…. Hermès admits that they're two-dimensional static images, [but] now they're arguing that they are wearable in the virtual world, because for instance, you could make a MetaBirkin your profile picture, and they consider that to be wearable.

**WWD: How do you define "wearable"?**

**ROM:** You can look at the dictionary of what it means to wear something, it's to actually have it on your person or your body. A picture is not wearable in the traditional sense. And Hermès is trying to say fashion companies are selling wearable, virtually wearable items for digital worlds. Yes, that's true. But those are three-dimensional wearable items that are made for avatars, in particular, in the virtual world.

Hermés has admitted that [MetaBirkins are] just two-dimensional static images, just like the Mona Lisa is a two-dimensional static image of a woman's face. They've literally said in their summary judgment papers that, yes, MetaBirkins are two-dimensional static images, but they're wearable in virtual worlds because, for instance, you can make them your Twitter profile picture. Under that definition, the Mona Lisa is wearable.

**WWD: Recently, a Singapore court determined that tokens may be considered property and subject to "proprietary injunction." That's a different country and judicial system, but does it complicate your defense, if NFTs are increasingly considered legal property?**

**ROM:** I don't think it's a concern in our particular case, because this is clearly artwork. Artwork also is property. If you own a painting, that's property. If you own a sculpture, that's property. So it's not a problem, if NFTs are considered to be property or not. As I said, NFTs are just bits of code on a blockchain. It's meaningless, except for what it's attached to.

**WWD: Early on, Mason was quoted as describing the project — his second to feature the Birkins, after his previous Baby Birkin NFT project — as an experiment. Does that square with the argument that he was intentionally creating art?**

**ROM:** Blake Gopnik's report [in] our opening summary judgment papers … recognize[s] the artistic experiments that Mason was creating here and said, "This is in the vein of business art," like Andy Warhol's Brillo boxes and other business art projects like that, that blur the boundaries between commerce and art. And in this case, Gopnik said what Mason has done is a very brilliant modern example of business art, because the way that he has used NFTs to sell the MetaBirkins artworks, the images, his use of the eminent NFTs itself is artwork in this case. Because the NFTs, in essence, mimic what the real-world Birkin handbags do, the way that they circulate in society, the way that people ascribe value to them …

Hermès' entire case depends on the court and everyone saying you either have art, or you have commerce. And there's a huge dividing line between the two. But of course, that's absurd. Art and commerce have always been inextricably linked. Artists themselves are business people, artists have to sell their work … And then also, artists … — for centuries, particularly since brands have come to dominate our culture — art has commented on that and engaged with commerce, as a means of reflecting what's going on in our society and commenting on it.

Gopnik has explained both of those avenues.



The Baby Birkin, Rothschild's previous Birkin-oriented NFT project.

**WWD: Mason, you're a designer and an artist, which in this context, I suppose, means business artist.**

**MR:** This year, I'm being exhibited at Scope, which is one of the biggest art shows in Miami for Art Basel. I'm being exhibited alongside some of my heroes, who also participate in this kind of business art. I love Kaws; I love Damien Hirst; I love Daniel Arsham, and all those guys, right? Every single one of the artists that I look up to in today's space and market, they take full advantage of commerce.

Kaws does the collaboration with Uniqlo, [but] that doesn't make him any less of an artist. Daniel Arsham will do a collaboration with Porsche and Pokémon and release an edition of 10,000 Charizard figures, [but] that doesn't make him less of an artist. That's him participating in commerce with the art style that he's created.

**WWD: And you can do that alone or through Gasoline, your Web 3.0 creative studio.**

**MR:** I started Gasoline as an extension of myself. I'm always one to be up on the latest technologies and practices that I believe will change the world as we know it. The artwork we create and the partners we collaborate with all share one unifying goal — to innovate with this new technology. We don't believe what we are doing "fills a hole" but, more so, creates a new path for others to follow. Thinking outside the box and shedding light on a space that is unknown to over 8 billion human beings makes Gasoline special. Rarely do we have the chance to work with something so new and that's what makes this endeavor so distinctive. The ideas and technology alone are distinctive because they have yet to be done and applied in today's world.

Tell me about Gasoline.

**MR:** I recently started Gasoline, [a studio where] we create art. We create art for big brands — and, you know, plenty of brands have reached out to us prior to this project to do official collaborations. People who are actually leaning in to the cool factor that is NFTs in the future, that it brings to this whole industry.

**WWD: In speaking with brands, where do you draw the line between art and, say, digital knockoffs? How do you explain the difference?**

**MR:** [MetaBirkins] was something I made, and there's plenty of people who are knocking me off, you know. … [P]eople make fake Kaws, and call it Kaws' Stuff … [But] Hermès didn't make it. I didn't take an image that they already had and repurpose it.

**ROM:** A knockoff is something that is meant to replace something else or something that functions in the same way. So a knockoff Birkin handbag would be another physical leather handbag that's meant to confuse people and make them think that it's a Birkin.

Drawing a picture of a Birkin handbag can't be a knockoff.

 **NEWSLETTERS**

**SIGN UP**

Sign up for WWD news straight to your inbox every day

## WWD RECOMMENDS



**FASHION SCOOPS**

Hermès International Seeks Permanent Injunction for 'MetaBirkin' NFTs

By ROSEMARY FEITELBERG



**FASHION FEATURES**

'Everything Everywhere All at Once' Costume Designer Shirley Kurata Has Deep Fashion Roots

By BOOTH MOORE



**MEDIA**

Drake, 21 Savage Settle Trademark Lawsuit With Condé Nast

By MARISA GUTHRIE



WWD x NMG: Brunello Cucinelli

## Most Popular



EXCLUSIVE: BTS' Jimin Signs on as Tiffany & Co.'s Latest Ambassador

 Dare to Bare? Industry Experts Weigh in on the Sheer Trend, the 'Free...

 Louis Vuitton Signs BTS Member J-Hope as Brand Ambassador

 Hong Kong Socialite, Influencer Found Brutally Murdered

 Salt Life Clothing Co. Cofounder Sentenced for Killing of Teenage...



Get all the top news stories and alerts straight to your inbox.

Email                    SIGN UP

By subscribing, I agree to the Terms of Use and Privacy Policy. // This site is protected by reCAPTCHA Enterprise and the Google Privacy Policy and Terms of Service apply.

# THE ESSENTIALIST


NYFW Fall 2023 Street Style Hair Trends: Unexpected Updos...


The 20 Best Slouchy Bags That Exude Laid-Back Style


NYFW Street Style Recap: The Fashion Crowd Goes Green


Get all the top news stories and alerts straight to your inbox.

Email    SIGN UP

By subscribing, I agree to the Terms of Use and Privacy Policy. // This site is protected by reCAPTCHA Enterprise and the Google Privacy Policy and Terms of Service apply.




WWD and Women's Wear Daily are part of Penske Media Corporation. © 2023 Fairchild Publishing, LLC. All Rights Reserved.
Powered by WordPress.com VIP

https://wwd.com/business-news/technology/metabirkins-mason-rothschild-hermes-nft-case-1235427843/#  12/12