UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HERMÈS INTERNATIONAL and HERMÈS OF PARIS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MASON ROTHSCHILD, <br><br> Defendant. | No. 22-cv-00384-JSR |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................1

    I.    HERMÈS BARELY ATTEMPTS TO DEFEND THIS COURT'S UNLAWFUL INTENT INSTRUCTION. .................................................................................................1

    II.   HERMÈS CANNOT DEFEND THE JURY'S VERDICT ON ITS CONFUSION, DILUTION, OR CYBERSQUATTING CLAIMS ............................................................3

        No Reasonable Jury Could Have Found that Rothschild Intended to Confuse Consumers ........................................................................................................................3

        No Reasonable Jury Could Have Found that the Evidence Established a "Particularly Compelling" Likelihood of Confusion .....................................................................6

        No Reasonable Jury Could Have Found Rothschild's Noncommercial Speech Diluted the Birkin Mark or Trade Dress ............................................................................................7

        No Reasonable Jury Could Have Found Rothschild Liable for Cybersquatting ..................8

    III.  THE COURT'S ERRONEOUS EXCLUSION OF DR. GOPNIK WAS PREJUDICIAL AND IS GROUNDS FOR A NEW TRIAL. ...........................................................................8

    IV.  HERMÈS' COMPLAINTS ABOUT ROTHSCHILD'S PUBLIC STATEMENTS ILLUSTRATE ITS LACK OF RESPECT FOR FIRST AMENDMENT RIGHTS. ..........9

## TABLE OF AUTHORITIES

**Cases**

*Dastar Corp. v. Twentieth Century Fox Film Corp.*
  539 U.S. 23 (2003) ...................................................................................................................9

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*
  156 F. Supp. 3d 425 (S.D.N.Y. 2016) .......................................................................................5

*Mattel, Inc. v. MCA Recs., Inc.*
  296 F.3d 894 (9th Cir. 2002) .................................................................................................7, 8

*Rogers v. Grimaldi*
  875 F.2d 994 (2d Cir. 1989) ......................................................................................................5

*Twin Peaks Prod. v. Public. Int'l*
  996 F.2d 1366 (2d Cir. 1993) ....................................................................................................6

*United States v. Yu–Leung*
  51 F.3d 1116 (2d Cir. 1995) ......................................................................................................9

**Statutes**

15 U.S.C. § 1125 ........................................................................................................................7, 8

**Other Authorities**

J. Thomas McCarthy
  McCarthy on Trademarks And Unfair Competition § 24:128 (5th ed. 2022) ............................7

**Rules**

New York Rule of Professional Conduct 3.6 ..................................................................................9

Defendant Mason Rothschild respectfully submits this reply memorandum of law in further support of his motion for judgment as a matter of law or new trial.

**PRELIMINARY STATEMENT**

Hermès' response to Defendant Mason Rothschild's Renewed Motion for Judgment as a Matter of Law or New Trial ("JMOL") attempts to distract the Court from the governing legal rules. The Court should correct the jury's unlawful verdict by granting Mr. Rothschild's motion.

**ARGUMENT**

**I.    HERMÈS BARELY ATTEMPTS TO DEFEND THIS COURT'S UNLAWFUL INTENT INSTRUCTION**

In his opening brief, Rothschild demonstrated that the Court's intent instruction was inconsistent with Second Circuit law. If the jury had been properly instructed, and *Rogers* properly applied, no reasonable jury could have found Rothschild liable on any of Hermès' claims. *See* Memorandum of Law in Support of Defendant's Renewed Motion for Judgment as a Matter of Law or New Trial [ECF No. 173] ("MR Br.") at 1-5.

In response, Hermès barely even attempts to defend the Court's instruction. Instead, Hermès argues baselessly that Rothschild waived his right to object either to the ordering of the jury instructions or to the substance of Instruction No. 14. *See* Plaintiff's Mem. of Law in Opp. to Defendant's Mot. for Judgment as a Matter of Law or New Trial [ECF No. 183] ("Opp. Br.") at 4-5. But Rothschild submitted proposed jury instructions directly in opposition to Instruction No. 14. *See* ECF Nos. 138, 143. Specifically, Rothschild proposed an instruction that contained an objective test for explicit misleadingness; indeed, it has been Rothschild's consistent position that the "explicitly misleading" prong of *Rogers* is an objective test. *See* ECF No. 138 at 9. Likewise, Rothschild proposed a Special Verdict Form that would have applied an objective *Rogers* test as the first and primary consideration for the jury. *See* ECF No. 139 at 2.

1

Additionally, Mr. Sprigman objected extensively both to the structure of the Court's draft jury charges and to the substance of Instruction No. 14 in particular. With regard to the structure, Mr. Sprigman argued at length that "the first thing…the jury should consider is the First Amendment," and thus the instructions should have been reordered to elevate Instruction No. 14 above the Court's Instruction No. 11. Declaration of Ashley N. Robinson dated April 4, 2023 ("Robinson Decl."), Ex. A at 857:23-858:10. Mr. Sprigman further explained that "the way [the Court's instructions were] structured, it looks to the jury like an excuse," *id*. at 860:20-21, and that the Court's ordering of the instructions "clashes with *Rogers*." *Id.* at 861:16-863:3.

Indeed, even though the Court changed the heading of Instruction No. 14 from "First Amendment Defense" to "First Amendment Protection," (*see id*. at 858:2-5), <u>the Court itself later fell into the same trap that the ordering inevitably laid for the jurors</u>. *See* Robinson Decl., Ex. B at 898:1-3 (THE COURT: "But I did add to Instruction No. 9, where I am describing the basic claims, a sentence to flag the First Amendment *defense* was coming.") (emphasis added).

With regard to the substance of Instruction No. 14, Mr. Sprigman argued that the instruction should apply an objective test for explicit misleadingness and should explain to the jury that "[a]n explicitly misleading use is not a use which may merely confuse consumers who draw mistaken inference of connection to Hermès. An explicitly misleading use must suggest that connection directly and unambiguously." Robinson Decl., Ex. A at 888:14-17.[1] Mr. Sprigman accepted the Court's Instruction No. 14 only after the Court made clear that it was limiting discussion of the instruction to the language seeking to effectuate the Court's focus on

---

[1] Hermès asserts that "Rothschild conceded" that "the 'explicitly misleading' prong in *Rogers* is subjective." Opp. Br. at 7. That argument is incorrect. When the Court asked Mr. Sprigman, "Is the [*Rogers*] test objective or subjective?", Mr. Sprigman unequivocally replied, "The test is objective, your Honor. It is objective." Robinson Decl., Ex. A at 817:9-11.

2

intent, with the Court expressly stating: "Everything else will remain exactly as it is, and *all objections thereto are preserved*." Robinson Decl., Ex. B at 899:5-7 (emphasis added). And Mr. Sprigman made clear that he was "arguing within the framework that [the Court has] set down." Robinson Decl., Ex. A at 886:25-887:1.

In that context, Mr. Sprigman stated that Rothschild's position was that "the instruction [gave] the jury words they [could] use to actually apply the principle" regarding intent that was set out by the Court, despite Rothschild's objections. Robinson Decl., Ex. B at 901:14-21. In doing so, however, he made clear that Rothschild's agreement with that instruction was only within the framework that the Court had set down, "right or wrong" as a matter of law. *Id*. at 1053:4-1054:3. Mr. Sprigman further made this clear in arguing: "I would submit to you, your Honor, that *if this case is about intent*, *as you have made it to be*, then if the First Amendment is going to have its day in this courtroom, it should be with you." *Id*. at 1058:12-15 (emphasis added). Mr. Sprigman concluded his argument by again making clear that Rothschild's position is that the explicitly misleading prong of *Rogers* had nothing to do with intent but rather with explicit misstatements. *See id*. at 1065:25-1066:24.

The record is clear that Rothschild repeatedly objected to the ordering of the Court's instructions and to the substance of Instruction 14. Hermès' waiver arguments are baseless.

## II. HERMÈS CANNOT DEFEND THE JURY'S VERDICT ON ITS CONFUSION, DILUTION, OR CYBERSQUATTING CLAIMS

***No Reasonable Jury Could Have Found that Rothschild Intended to Confuse Consumers.*** None of Hermès' purported evidence of Rothschild's intent shows that he intended to confuse consumers rather than *to make an artistic reference to the Hermès' Birkin bag*. Hermès accuses Rothschild of various lies—for example, about the prospect of partnering with Hermès, and about who came up with the *MetaBirkins* name. *See* Opp. Br. at 17, 25-26. But even

3

if Hermès were right that Rothschild lied about those things (he did not), not one of those "lies" is probative of an intent *to confuse actual or potential purchasers* of *MetaBirkins*. MR Br. at 18-22. Hermès also accuses Rothschild of wanting to make money from his art. But again, an intent to profit is not evidence of an intent to confuse. *Id.* at 21.

This is precisely why intent never should have been made an issue in this case. It invited Hermès to sift through Rothschild's private, irrelevant communications and smear Rothschild with allegations that have nothing to do with the legally relevant issues: his overt use of the mark or confusion of relevant purchasers.

Hermès asserts that Rothschild's intent to make an artistic reference is "simply an interpretation fabricated by his counsel." Opp. Br. at 27. That assertion is itself a fabrication. The issue of Rothschild's artistic reference has been at the heart of this case throughout. Rothschild himself testified clearly and credibly about his intent to make an artistic reference with *MetaBirkins*, in addition to artistic references he made with other works. *See* Robinson Decl., Ex. C at 543:21-544:12, 575:22-576:7; Ex. D at 260:5-263:14; Ex. E at 285:7-23, 302:10-18. Moreover, the *MetaBirkins*' artistic reference to Hermès' Birkin bags is obvious from the face of the works—indeed, the Court ruled that the *MetaBirkins* are artistic expression. *See* ECF No. 143 at 21 ("It is undisputed…that the MetaBirkins NFTs, including the associated images, are in at least some respects works of artistic expression.").[2] That is a crucial point, because every piece of "intent" evidence relied on by Hermès actually indicates nothing more than Rothschild's intent to reference artistically, which cannot lead to liability. *See* MR Br. at 18-22.

---

[2] Hermès itself argues that the Court's exclusion of Dr. Gopnik was proper *because the Court ruled that the MetaBirkins were artistic expression*. Opp. Br. at 35-36. Moreover, had the Court not improperly excluded Dr. Blake Gopnik from testifying, he would have explained the artistic nature of the project and other important aspects of art history that would have allowed the jury to put into context the *MetaBirkins* works and Rothschild's conduct. *See* MR Br. at 35-38.

One apt example is Hermès' cite to Dr. Kominers' testimony that unusually high resale value of the *MetaBirkins* NFTs was the result of the NFTs' association with the Hermès brand. *See* Opp. Br. at 16-17. Even if that were true, Dr. Kominers cannot show that the "association" indicated *confusion*, rather than people simply valuing *MetaBirkins* for the artistic reference they make. As Judge Furman recognized in evaluating a parody of Louis Vuitton's well-known handbags, the message of invoking a well-known luxury brand derives from "the features of the [product] itself, society's larger obsession with status symbols, and the meticulously promoted image of expensive taste (or showy status) that [those luxury products] have, to many, come to symbolize." *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d 425, 436 (S.D.N.Y. 2016), *aff'd*, 674 Fed.Appx. 16 (2d Cir. 2016).

Dr. Kominers claimed that the association between the *MetaBirkins* and Hermès must have been confusion because the prices of *MetaBirkins* declined following a public statement by Hermès that it was not associated with *MetaBirkins*. *See* Opp. Br. at 16-17. That testimony was pure speculation: it did not account for the fact that OpenSea and other NFT auction platforms delisted *MetaBirkins* around that time, *see* Robinson Decl., Ex. E at 422:15-17, or for the movement in either the NFT markets or cryptocurrency prices. But more importantly, even if Dr. Kominers' testimony suggests that some people in the market were confused, it says absolutely nothing about whether Rothschild intended to confuse them or whether he intended to make an artistic reference that resulted in some (legally unactionable) confusion.

Hermès' arguments on this point further illustrate why licensing the jury's unguided inquiry into Rothchild's intent was error. As *Rogers* makes clear, an intent to engage in artistic reference is not the same as an intent to confuse—even if confusion actually results. *See Rogers v. Grimaldi*, 875 F.2d 994, 1000 (2d Cir. 1989) (holding that the test "insulates from restriction

5

titles [and works] with at least minimal artistic relevance that are ambiguous or only implicitly misleading"). In these circumstances, it is exceedingly difficult for any factfinder to distinguish between intent to reference and intent to confuse, because in many cases reference will predictably lead to at least some level of confusion. The evidence in this case provided no basis for the jury to distinguish intent to reference from intent to confuse without eviscerating Rothschild's First Amendment rights—and Hermès supplies no such basis. *See* MR Br. at 18-22.

   ***No Reasonable Jury Could Have Found that the Evidence Established a "Particularly Compelling" Likelihood of Confusion.*** Hermès' arguments that it established a likelihood of confusion are largely irrelevant; had this Court properly instructed the jury in a way that adhered to the test laid out in *Rogers*, any reasonable jury would have found that Rothschild's use of the Birkin mark was not *explicitly* misleading—indeed, Hermès' top lawyer admitted as much on the stand. *See* Robinson Decl., Ex. D at 198:9–12. A properly instructed jury *would never have needed to consider the likelihood of confusion at all* to find Rothschild could not be liable on any of Hermès' claims.

   Even if this Court had instructed the jury under *Twin Peaks Prod. v. Public. Int'l*, 996 F.2d 1366 (2d Cir. 1993), no reasonable jury could have found that Hermès had established the "particularly compelling" likelihood of confusion standard that *Twin Peaks* requires when First Amendment expression is at stake. *Id*. at 1379.[3] Hermès' purported evidence of confusion in this case amounts to (a) a few mistaken press reports, (b) a few random Internet comments from people Hermès has offered no evidence were *actual or potential customers* of Rothschild's expensive NFTs, and (c) a survey that, at best, provides weak evidence of confusion and, properly understood, in fact provides no evidence of likelihood of confusion at all. *See* MR Br. at

---

[3] *Twin Peaks*, however, is not the proper test in this case; *Rogers* is. *See* MR Br. at 22-23.

23-28. Scattered mistaken press reports and unvalidated Internet comments cannot be the basis for a finding of likelihood of confusion even in a normal trademark case, much less one where First Amendment-protected speech is at stake. *See id.* at 24-26. The Isaacson survey, even if fully credited, would be barely sufficient in an ordinary trademark case. It is utterly insufficient in a case, like this one, that involves protected speech and for which a showing of confusion must be particularly compelling to find liability. *See id.* at 26-28.

***No Reasonable Jury Could Have Found Rothschild's Noncommercial Speech Diluted the Birkin Mark or Trade Dress.*** As Rothschild has consistently pointed out throughout this case, the Lanham Act states explicitly that there can be no dilution liability for "noncommercial" uses of a mark. *See* 15 U.S.C. § 1125(c)(3)(C). In doing so, the statute relies on First Amendment law's definition of noncommercial speech, which extends to all expression that does more than simply propose a transaction. *See Mattel, Inc. v. MCA Recs., Inc.*, 296 F.3d 894, 905-06 (9th Cir. 2002) (explaining that for-profit speech which is itself the product being sold is noncommercial); J. Thomas McCarthy, McCarthy on Trademarks And Unfair Competition § 24:128 (5th ed. 2022) (explaining that dilution is limited to "commercial speech" as defined by First Amendment law).

Hermès' assertion that Rothschild's noncommercial use argument is waived because it "was not previously raised" is demonstrably false. Opp. Br. at 19. Rothschild raised the argument in his Motion to Dismiss (*see* ECF No. 27 at 22-23), and in his Motion for Summary Judgment. *See* ECF No. 62 at 23-24. Rothschild also raised this argument in his Proposed Jury Instructions:

> Separately, it is a defense to dilution liability that a use is noncommercial, even if it is also serving as a designation of source or a commercial use in commerce. A noncommercial use is one that does more than propose a commercial transaction—i.e., a use that communicates artistic or creative content is a noncommercial use—even if it is sold for money in the market.

ECF No. 138 at 30, 35. And Mr. Sprigman attempted to raise this argument again at the charging conference, but the Court heard only one of Rothschild's dilution objections before moving on to the cybersquatting charge. *See* Robinson Decl., Ex. A at 875:14-878:16.

On the merits, Hermès' assertion that the *MetaBirkins* are purely commercial, and thus do not fit within the exception, is wrong. *See* Opp. Br. at 19. The *MetaBirkins* obviously constitute artistic expression, as this Court ruled. *See* ECF No. 143 at 21. *MetaBirkins* thus are noncommercial speech; even when sold for profit, the *MetaBirkins* are protected by the First Amendment because *those artworks are the speech being sold. MCA*, 296 F.3d at 905-06.

***No Reasonable Jury Could Have Found Rothschild Liable for Cybersquatting.***
Hermès' cybersquatting claims should fail under *Rogers* for the same reason as Hermès' trademark infringement and dilution claims: none of these claims should succeed against Rothschild's protected artistic speech. *See* MR Br. at 40. Additionally, as the Court implicitly recognized in denying summary judgment to Hermès, Rothschild at minimum had reasonable grounds to believe his use was fair; his intent to reference is not the type of bad faith intent to profit required by the statute. *See* 15 U.S.C. § 1125(d)(1)(B)(ii) ("Bad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful."). Moreover, there is no evidence in this case to support a reasonable jury finding that Rothschild engaged in any of the sort of conduct typically associated with valid cybersquatting claims. *See* MR Br. at 40.

**III.   THE COURT'S ERRONEOUS EXCLUSION OF DR. GOPNIK WAS PREJUDICIAL AND IS GROUNDS FOR A NEW TRIAL**

Contrary to Hermès' baseless assertion, Rothschild has not waived his argument that the exclusion of Dr. Gopnik was error, prejudicial, and grounds for a new trial. Rothschild opposed

8

Hermès' motion *in limine* to exclude Dr. Gopnik, and his opposition was sufficient to preserve this argument. *See*, *e.g.*, *United States v. Yu–Leung*, 51 F.3d 1116, 1121 (2d Cir. 1995).[4]

### IV. HERMÈS' COMPLAINTS ABOUT ROTHSCHILD'S PUBLIC STATEMENTS ILLUSTRATE ITS LACK OF RESPECT FOR FIRST AMENDMENT RIGHTS

Hermès' insinuations that Rothschild prejudiced Hermès by making statements to the public or to the press, or that Rothschild's counsel somehow violated New York Rule of Professional Conduct 3.6, are baseless. Mr. Millsaps' comments to *WWD* simply reiterated what the parties argued in their respective summary judgment briefs. *See* ECF No. 78 at 2-3.[5] Rothschild's Tweet and Dr. Gopnik's op-ed, *see* Opp. Br. at 10, were fair characterizations of the ultimate outcome of the trial and were echoes of commentary by many members of the media and the public. *See*, *e.g.*, Robinson Decl., Ex. F at 1 (LinkedIn post from trademark lawyer David Bernstein stating that he "expect[s the Second Circuit] to be far more deferential to the important First Amendment issues at play here than was the district court," and that "[t]rademark law was not designed to give brand owners the power to stop commentators from talking about brands or to stop artists from depicting brands in their art."); Ex. G (*The New York Times*: "Hermès Wins *MetaBirkins* Lawsuit; Jurors Not Convinced NFTs Are Art").

Art is protected by the First Amendment. The jury was invited to find that Rothschild was not an artist, but a scammer, despite his *MetaBirkins* being recognized in the culture as art and in

---

[4] With respect to the invalidity of Hermès' trademark claims under the Supreme Court's holding in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), and the Court's prejudicial questioning of Dr. Neal, Rothschild relies on the arguments in his opening brief, and none of Hermès' arguments are apt.

[5] Indeed, despite filing a complaint and an opposition to Rothschild's motion to dismiss that focused overwhelmingly on the *MetaBirkins* images, Hermès suddenly insisted in its summary judgment motion that its claims were "about the NFTs, not necessarily the images associated with them." ECF No. 76 at 5; *see also id*. at 2 (focusing on "the BIRKIN ***name***") (emphasis in original). At oral argument, Mr. Warshavsky reiterated this new position: "I know the defendant would like it if we sued for a picture. We're not." Robinson Decl., Ex. H at 18:25-19:2.

contravention of the broad protections provided to artworks by the First Amendment. This was illustrated by the jury forewoman's legally erroneous and factually inaccurate post-trial social media posts, *e.g.*, "I personally feel our decision actually protects digital artists in the metaverse and NFT space who use their freedom of expression with the goodwill of the brand and the consumer in mind. If so there is no need to *hide under the cloak of the 1st amendment*." Robinson Decl., Ex. F at 2 (emphasis added); *see also* Ex. I, ("It distinguished the intent behind the product. If you violate a TM and IP to leverage, confuse or mislead to profit you aren't protected by the first amendment"); Ex. J at 2 ("Only instead of being purely artistic about it he created an entire business and marketing plan…along with it, didn't disclaim the relationship to Hermes nor correct major media outlets published confusion that this was initiated by Hermes. He leveraged their trademarks to create hype and to profit. Then when busted, *ignored a cease and desist and tried to hide under the 1st amendment*.") (emphasis added), at 3 ("also the comparison to Warhol and Campbell's soup is apples to oranges. Campbell's said it was ok for starters. Plus Warhol took credit from day one without confusion. And sorry dude you aren't Warhol. Lol.").

The Court should grant judgment as a matter of law for Rothschild. But if the Court instead orders a new trial, Hermès has no basis for asserting that Rothschild's characterization of the prior jury's decision would have any bearing on—let alone prejudice—Hermès in a new trial with a new jury.

Dated: April 4, 2023

                                          Respectfully Submitted,

                                          /s/ *Rhett O. Millsaps II*
                                        Rhett O. Millsaps II
Christopher J. Sprigman
Mark P. McKenna (*pro hac vice*)
Rebecca Tushnet
LEX LUMINA PLLC
745 Fifth Avenue, Suite 500
New York, NY 10151
(646) 898-2055
rhett@lex-lumina.com

Jonathan Harris
Adam Oppenheim
Ashley Robinson
HARRIS ST. LAURENT & WECHSLER LLP
40 Wall Street, 53rd Floor
New York, NY 10005
jon@hs-law.com
(212) 397-3370

*Attorneys for Defendant Mason Rothschild*