# EXHIBIT A

N23VHER1

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  HERMÈS INTERNATIONAL, et al.,

4                 Plaintiffs,

5           v.                        22 Civ. 384 (JSR)

6  MASON ROTHSCHILD,

7                 Defendant.          Trial

8  ------------------------------x
                                      New York, N.Y.
9                                     February 3, 2023
                                      9:35 a.m.
10

   Before:
11
                        HON. JED S. RAKOFF,
12
                                      District Judge
13                                     -and a Jury-

14

15                         APPEARANCES

16  BAKER & HOSTETLER LLP
         Attorneys for Plaintiffs
17  BY:  DEBORAH A. WILCOX
         OREN J. WARSHAVSKY
18       GERALD J. FERGUSON

19  HARRIS ST. LAURENT & WECHSLER LLP
         Attorneys for Defendant
20  BY:  ADAM B. OPPENHEIM
         JONATHAN A. HARRIS
21
    LEX LUMINA PLLC
22       Attorneys for Defendant
    BY:  RHETT O. MILLSAPS, II
23       CHRISTOPHER SPRIGMAN

24

25

1   granted and then reversed recently is *Gordon v. Drake*.  And

2   that case is like the case you're positing.  Judges and juries

3   can tell the difference; but if a case is a jump ball, if it's

4   not that screaming case of pretext like the one that you just

5   described for me, we should not be here.

6           THE COURT:  Let me ask you this.  And first off, I'm

7   glad you added "with all respect."  Whenever I hear counsel say

8   that, I need to find my microscope.

9           Is the test objective or subjective?

10          MR. SPRIGMAN:  The test is objective, your Honor.  It

11  is objective.  It is objective in the first factor, which is

12  artistic relevance.  You look at the use.  You ask, is the use

13  artistically relevant to the artwork?

14          Here, no reasonable jury could find that it's not for

15  the simplest possible reason:  The use describes the content.

16  You know, Ginger and Fred in *Rogers v. Grimaldi* described the

17  content of the film.  Regardless of whether people were

18  confused by that — and they were, by the way, there's evidence

19  in that case that the court saw 38 percent total confusion,

20  that is confusion about source, affiliation, licensing, 38

21  percent total confusion.  The court said, That's not the point.

22  The point is this use is artistically relevant.

23          And it didn't, to get to the second factor --

24          THE COURT:  Let's just stick with the first for a

25  minute.

N23sHER8                    Charge Conference

1          THE COURT:  I'll her from defense counsel on that in a

2     minute.

3               Anything else?

4               MR. WARSHAVSKY:  Yes.  Also on this, I think the blind

5     eye should be to the likelihood the consumers would be confused

6     not the high likelihood, because it's only a likelihood of

7     confusion test.

8               THE COURT:  Yes, I think that's right.

9               Let me hear from defense counsel.

10              MR. HARRIS:  Raise one point and turn over to

11    Mr. Sprigman.

12              In the second sentence, Hermès contends that

13    Rothschild's use of the Birkin mark is likely to confuse

14    consumers into thinking blah, blah, blah.

15              I think it should be that he's likely to consume --

16    consumers who are potential purchasers of MetaBirkins NFTs,

17    because I believe that based on Dr. Isaacson's testimony today,

18    he has conceded that there is no confusion among consumers of

19    Hermès handbags.

20              THE COURT:  Yes.  All right.  So potential consumers,

21    I agree.

22              OK.  I agree with that.

23              MR. SPRIGMAN:  So, your Honor, my ask is going to be a

24    little bit more pervasive.

25              So instruction 11 should be demoted.  What should be

1    in place of instruction 11 is a revised version of instruction

2    number 14.  The way this is currently structured, you had

3    written it initially framed the First Amendment as a defense.

4    The First Amendment is not a defense in a Rogers case.

5            THE COURT:  Well, that's why I changed the wording.

6            (Continued on next page)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        to the jury a 50-page unbelievably convoluted charge whose only

2        purpose was to prevent any appellate issue, and the jury would

3        never even be given a written copy.  And that was the universal

4        practice.  And the theory being that the jury exercises the

5        voice of the community or something like that.  So far be it

6        that we should ask them to exercise reason.

7                So my object is to make things as simple for the jury

8        and straightforward for the jury as possible.  And so my

9        reasoning was the *Rogers* test, no matter how phrased — and

10       we'll get to that in a minute — is, I think, going to be

11       something that will not be part of their everyday experience.

12       It's a much more legalistic kind of concept.

13               And they only have -- they have to reach it, but they

14       only have to reach it if they find that plaintiffs have already

15       proven under regular standards infringement or dilution or

16       whatever.  And so that was my reasoning for doing it in the

17       order I did.  And I'm still inclined that way, but I agree,

18       it's a close question.

19               MR. SPRIGMAN:  Your Honor, I'm going to be frank.  I

20       disagree because whether you phrase it as a defense or not, the

21       way this is structured, it looks to the jury like an excuse.

22       If they find Mr. Rothschild liable under the standards that

23       should not, by any means, apply in this case, but apply in a

24       case where it's a handbag versus a handbag instead of a handbag

25       versus a picture of a handbag --

1              THE COURT:  Well, I hear that, and I don't think

2      that's a frivolous argument.  And I appreciate your saying you

3      disagree with me, because you've never disagreed with me

4      before.

5              MR. SPRIGMAN:  That's what I'm here for, your Honor.

6              THE COURT:  But I think one of the reasons I

7      thought -- another reason I thought it best to proceed this way

8      is that the test -- or, excuse me, the factors that they would

9      normally consider on things like explicitly misleading are

10     things that are also *Polaroid* factors.  It's not all of it, and

11     I actually agree with you, it's a high standard.  But it is the

12     *Polaroid* factors which were the product of the brilliance of

13     Henry Friendly, to -- you can have your Justice Scalia, but in

14     my view, Henry Friendly is the plus ultra.

15             MR. SPRIGMAN:  I am on board with you, Judge, on that.

16             THE COURT:  But, in any event, it was designed to get

17     at whether things are misleading, confused, and so forth.

18             So I thought it was also helpful to the jury to have

19     that first in their minds before we got to the higher standard

20     that has to be met under the First Amendment.

21             MR. SPRIGMAN:  Your Honor, I understand the

22     motivation.  But it clashes with *Rogers*.  And I'll just read

23     something very brief from *Rogers* that I think will make this

24     clear.

25             THE COURT:  Go ahead.

1          MR. SPRIGMAN:  *Rogers* said:  We believe that, in

2     general, the act should be construed to apply to artistic works

3     only where the public interest -- the act should be construed

4     to apply to artistic works only where the public interest in

5     avoiding consumer confusion outweighs the public interest and

6     free expression.  In the context of allegedly misleading titles

7     using a celebrity's name, that balance will normally not

8     support application of the act unless the title has no artistic

9     relevance to the underlying work whatsoever or if it has some

10    artistic relevance unless the title explicitly misleads.

11         Now, the court drops a footnote, very important

12    footnote.  The footnote says:  This limiting construction would

13    not apply to misleading titles that are confusingly similar to

14    other titles.  The public interest in sparing consumers this

15    type of confusion outweighs the slight public interest in

16    permitting others to use such titles.

17         That, your Honor, is *Twin Peaks*.  *Twin Peaks* takes up

18    that invitation in footnote 5 and applies the *Polaroid* factors

19    in a case where the limiting construction doesn't apply because

20    it's title versus title.  That's when the *Polaroid* factors

21    apply.

22         Now, what I read to you at the beginning, I think,

23    pretty clearly says that you've got to start with *Rogers*,

24    because *Rogers* determines --

25         THE COURT:  Well, I don't agree that it says I have to

1    start.  But I think there is some merit to your arguments as to

2    why it might be more logical and more reflective of the balance

3    to start.  So I'm still open to that possibility.

4              So assuming we started, we would still get to the

5    instruction on infringement if they --

6              MR. SPRIGMAN:  We would.  We would get there later,

7    but we would start with the instruction --

8              THE COURT:  No, no, no.  I understand.  But I'm just

9    saying -- because I have to put together a charge.  Assuming

10   for the sake of argument that we start with 14 as modified --

11             MR. SPRIGMAN:  Yes.

12             THE COURT:  -- do you have any other problem with what

13   will then be the next thing, if, and only if, you find they've

14   survived that test, then we get to infringement, and then I'll

15   give them essentially what is now instruction 11.

16             MR. HARRIS:  Your Honor, I think -- I'm not exactly

17   sure that it's a problem with 11; but it would need to be in

18   here the particularly compelling language.  I know things are

19   being moved around.  So I'm not sure where in your formulation

20   that would go.  But that's my understanding.

21             THE COURT:  Unless I missed something completely,

22   here's the choice:  Either, as it presently reads, we say, In

23   order to find liability on each of the three claims, you have

24   to find this on infringement, you have to find this on

25   dilution, you have to find this on cybersquatting.  But even if

1              Second of all, I had raised the issue, and I thought

2    you had agreed to it, and then you hadn't stated it as you went

3    through the things.  Maybe I just misheard.  But I had raised

4    the issue that the only thing that Hermès is alleging in this

5    case at this point is forward confusion, which is that it is

6    potential consumers NFT of --

7              THE COURT:  So thank you for raising that.  But I felt

8    good about saying things I just did anyway, but thank you for

9    raising that.

10             So that's a different point than what I had

11   understood.  So let me make a note here right now about that

12   and I will take that into consideration.

13             MR. HARRIS:  Thank you, your Honor.

14             THE COURT:  All right.  Trademark dilution.  Again,

15   forget about the order question.  Anything that plaintiffs

16   would change?

17             MR. WARSHAVSKY:  No, your Honor.

18             THE COURT:  Anything defense counsel would change?

19             MR. SPRIGMAN:  Yes.  Two things, broadly.

20             If you look at the third paragraph, it begins:  The

21   Birkin mark is famous if it is widely recognized by the general

22   consuming public as designating Hermès as the source of goods

23   bearing the mark.

24             This case poses a special problem with respect to

25   fame.  So fame is typically a mark that is a household name

N23VHER9

1    across the United States:  Chevy, Coke, Nike.

2              Hermès Birkin mark is not such.  All the while --

3              THE COURT:  Why do you say that?

4              MR. SPRIGMAN:  So they've been using famous

5    colloquially.

6              THE COURT:  So --

7              MR. SPRIGMAN:  So what I would -- sorry.

8              THE COURT:  Every time I meet over the last month a

9    couple I know, dozens of couples, and I say to them, Do you

10   know what a Birkin bag is?  And the male always says, Never

11   heard of it.  And the female always says, Of course.

12             MR. SPRIGMAN:  Yes, your Honor.

13             THE COURT:  So why isn't it fame?

14             MR. SPRIGMAN:  That answers the question.  The general

15   consuming public of the United States includes men, first of

16   all.  And even in this bubble of ultra privilege in which we

17   live where people can afford Birkin bags --

18             THE COURT:  I'm sorry, how many men are consumers of

19   handbags?

20             MR. SPRIGMAN:  No, your Honor, that is not the

21   standard.  The standard under the Lanham Act for fame, for

22   trademark fame, is the general consuming public of the United

23   States, which means, first, general --

24             THE COURT:  That's, of course, the term I use here.

25   In the sentence I say:  The Birkin bag is famous if it is

1    widely recognized by the general consuming public.

2            MR. SPRIGMAN:  Your Honor, nationwide.  Because we all

3    live in New York City, where it's environs.  Birkins, if you

4    had a relative in Peoria, not to slight Peoria, it's

5    unlikely --

6            THE COURT:  I put it to my cousin in -- my cousin and

7    her husband in San Diego over the weekend.  She knew

8    immediately what I was talking about and said she only wished

9    she had one.

10           MR. SPRIGMAN:  Your Honor, San Diego is a city in

11   which Hermès has a store, because San Diego is also an enclave

12   of the rich.  Most of this country is not an enclave of the

13   rich and people in most of this country have no idea, have

14   never heard of either Hermès or a Birkin bag.

15           I'm sure if you travel out to New Jersey --

16           THE COURT:  Why isn't that just argument?  What I've

17   said in this is the Birkin bag -- excuse me, the Birkin mark is

18   famous if it is widely recognized by the general consuming

19   public as designating Hermès as the source of the goods bearing

20   the mark.  In measuring fame, you may consider your own

21   experiences, as well as the extent, history, and geographic

22   reach of advertising and publicity of the mark both by Hermès

23   or third parties, the amount, volume, and geographic reach of

24   sales of products bearing the mark, the extent to which members

25   of the public actually recognize the mark, and whether the mark

1    was federally registered.

2            So I've repeated twice in specific terms the

3    geographic argument.  And I've also included the more general

4    language about the general consuming product, giving full reign

5    to your colleague on summation to say they never heard of

6    Birkin in Peoria, although I doubt there's been any evidence of

7    that, but that still may be an argument.

8            So what more do you want?

9            MR. SPRIGMAN:  I would like you to just do it a little

10   bit more clearly for the jury, which means general consuming

11   public nationwide or general consuming public of the United

12   States.

13           THE COURT:  Denied.

14           MR. SPRIGMAN:  Make that clear.

15           THE COURT:  Let's go on to cybersquatting.  Anything

16   plaintiffs would change on that?

17           MR. WARSHAVSKY:  No, your Honor.

18           THE COURT:  Anything defense would change on that?

19           MR. SPRIGMAN:  No, your Honor.

20           THE COURT:  All right.  Now we get to 14.  And

21   obviously the wording will have to change if we go first with

22   that, but let's get beyond that.

23           So the first sentence would now be, if we go first

24   with that:  Before you reach anything else, you need to

25   determine, words to that effect, whether Mr. Rothschild must be

1    just said would be a clear articulation of that and wouldn't

2    necessarily --

3            THE COURT:  OK.  I can fix the wording on that.

4            MR. SPRIGMAN:  So then you say, given that, you can

5    find Mr. Rothschild liable on any of Hermès' claims if and only

6    if Hermès has proved by a preponderance of the evidence that,

7    one, Mr. Rothschild used the Birkin mark not for any artistic

8    or non-commercial purposes, but rather to solely -- I think the

9    word solely has to be in there -- solely to exploit the

10   popularity and goodwill that consumers associate with the

11   Birkin mark.

12           Again, your Honor, this first part of the test should

13   not be a freeform balancing test but, in fact, if there is any

14   artistic purpose, this element should be found in favor of

15   Mr. Rothschild.  So the word "solely" would help.

16           THE COURT:  Well, see, that's why I was very surprised

17   when you disagreed with me on our discussion of objective

18   versus subjective.  If we were talking about his intent, then

19   the word "solely" might have to be in there.

20           But you told me, oh, no, it's an objective test.

21           MR. SPRIGMAN:  Your Honor, I'm arguing in two

22   different levels at the same time.

23           THE COURT:  That's clear.

24           MR. SPRIGMAN:  Yes, but, your Honor, you have to give

25   me points on that, because I'm arguing within the framework

1     that you have set down.  I'm also arguing with the framework I

2     think is right, having read these cases many, many times.  So

3     please give me the latitude to operate in both a practical and

4     ideal.

5              THE COURT:  Yes.

6              MR. SPRIGMAN:  So with respect to the second, and that

7     is really the nub, the nub is -- again, I have sympathy for

8     you.

9              What does explicitly misleading mean?

10             Let me suggest something that I think would be helpful

11    to the jury.  Explicitly misleading use is not a use which may

12    merely confuse consumers who draw mistaken inference of

13    connection to Hermès, and explicitly misleading use must

14    suggest that connection directly and unambiguously.

15             That's the heart of it.

16             THE COURT:  Well, part of it is there.  I say clearly

17    and unambiguously.  I'm willing to change clearly to directly.

18             So you just want the additional --

19             MR. SPRIGMAN:  Well, your Honor, what I'm reacting to

20    is somewhat infelicitous construction of a statement, a use --

21    I'm sorry -- a use of a mark clearly unambiguously confuses

22    people.  That is a conceptual mouthful, if I may mix metaphors.

23             And what I was trying to do was to break this out a

24    little bit into the idea that ordinary confusion and ordinarily

25    confusing use of a mark confuses consumers by allowing them to

1    draw mistaken inference.  That is not explicitly misleading

2    use.  Explicitly misleading use which, again, is the point of

3    the Rogers test to really limit liability here, to instances

4    where someone goes out and says, This is from Hermès, right, in

5    the title.

6            MetaBirkins by Hermès would be an explicitly

7    misleading use.  You can read that right off of Rogers in the

8    examples that they use to define it.  Not an inference, but an

9    explicit statement that commands the conclusion, if anyone is

10   paying attention, that --

11           THE COURT:  All right.  So just read me the specific

12   language that you would substitute for that second sentence.

13           MR. SPRIGMAN:  And (2) that such use was explicitly

14   misleading.  An explicitly misleading use is not a use which

15   may merely confuse consumers who draw mistaken inference of

16   connection to Hermès.  An explicitly misleading use must

17   suggest that connection directly and unambiguously.

18           THE COURT:  All right.  What are you reading from, by

19   the way?

20           MR. SPRIGMAN:  What I wrote.

21           THE COURT:  That's a good authority.

22           All right.  I will certainly consider that.

23           Now since we are getting quite late and our reporter

24   has to leave in approximately one minute, I'll hear from

25   plaintiff's counsel in a minute on 14.