# EXHIBIT B

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

HERMÈS INTERNATIONAL, et al.,

              Plaintiffs,

        v.                              22 Civ. 384 (JSR)

MASON ROTHSCHILD,

              Defendant.                Trial
------------------------------x
                                        New York, N.Y.
                                        February 6, 2023
                                        9:30 a.m.
Before:

                  HON. JED S. RAKOFF,

                                        District Judge
                                         -and a Jury-


                       APPEARANCES

BAKER & HOSTETLER LLP
     Attorneys for Plaintiffs
BY:  DEBORAH A. WILCOX
     OREN J. WARSHAVSKY
     GERALD J. FERGUSON

HARRIS ST. LAURENT & WECHSLER LLP
     Attorneys for Defendant
BY:  ADAM B. OPPENHEIM
     JONATHAN A. HARRIS

LEX LUMINA PLLC
     Attorneys for Defendant
BY:  RHETT O. MILLSAPS, II
     CHRISTOPHER SPRIGMAN
```

1  But I did add to Instruction No. 9, where I am describing the
2  basic claims, a sentence to flag the First Amendment defense
3  was coming.  I think that was a fair resolution of the
4  competing arguments.
5        Now, the more I thought about the *Rogers* test and the
6  various cases not just in the Second Circuit but elsewhere that
7  have elaborated and expanded the *Rogers* test over the weekend,
8  the more I thought that on the facts of this case the real
9  question is the defendant's intent.
10       Because while both *Rogers* and the related cases speak
11 in, frankly, less than clear terms like "explicitly misleading"
12 or "artistically relevant" and the like, the real question
13 here, so far is the defense is concerned, is did Mr. Rothschild
14 intend to mislead?  In which case, of course, he has no First
15 Amendment protection, any more than a con man has First
16 Amendment protection from telling lies to the public to make
17 money.  Or did he not intend to mislead, in which case I think
18 there can be no question that there was at least some artistic
19 aspect to what he was offering.
20       As indicated in the instruction by his covering the
21 Birkin bags with fur, he says he covered it with fur to show
22 how ridiculous the consumer interest in Birkin bags was and the
23 plaintiff says, no, it was just part of his whole way to try to
24 sneak in as he sought to dupe the public.
25       They would be fair arguments to the jury, but that all

1  goes to his intent.  That's why I said I think the focus is
2  really on intent.
3         So I try to capture that, but I have added some
4  additional words since I sent this to you on Saturday to the
5  third paragraph of Instruction No. 14.  Everything else will
6  remain exactly as it is, and all objections thereto are
7  preserved.
8         But here is now what I have for 14:
9         "It is undisputed that the MetaBirkins NFTs, including
10 the associated images, are in at least some respects works of
11 artistic expression, such as, for example, the addition of the
12 total fur covering on the Birkin bag images.  Given that,
13 Mr. Rothschild is protected from liability on any of Hermès'
14 claims unless Hermès proves by a preponderance of the evidence
15 that Mr. Rothschild's use of the Birkin mark was not just
16 likely to confuse potential consumers, but was intentionally
17 designed to mislead potential consumers into believing that
18 Hermès was associated with Mr. Rothschild's MetaBirkin
19 projects.  In other words, if Hermès proves that Mr. Rothschild
20 actually intended to confuse potential customers, he has waived
21 any First Amendment protection."
22         I think, as will be obvious, that doesn't use some of
23 the buzzwords from *Rogers* and related cases, but I think the
24 whole *Rogers* issue in this case turns on his intent.
25         So let me hear any comments on the new version of

1  misleading conduct, but it does relate to an intent to

2  associate versus the intent to cause confusion. I think you

3  might have addressed that with this.

4      THE COURT: I use the word "associated" in the new

5  version, yes.

6      MS. WILCOX: Okay. Thank you.

7      MR. SPRIGMAN: Your Honor, just in response to that

8  last quickly. Yes, the dilution cause of action does require

9  an intent to associate, but in addition, it requires harm to

10 the mark. It requires an impairment of the mark's

11 distinctiveness. So we think that your instructions as they

12 stand make that clear to the jury, or at least clear enough.

13 These are lay people, and this is complicated.

14      But back to the instruction itself, we here at this

15 table believe that the instruction gives the jury words they

16 can use to actually apply the principle, and we are satisfied

17 with it.

18      That said, Judge, we do remain, we have remaining

19 arguments on the JMOL and in particular something that I think

20 is central to the relationship between *Rogers* and this case

21 that I would just like at some point to get to.

22      THE COURT: If we had had more time right now, I was

23 going to hear the further argument on the Rule 50 motions, but

24 as I promise you, you will have that opportunity before I rule.

25      MR. SPRIGMAN: Thank you, your Honor.

1           MR. SPRIGMAN:  Your Honor, on Friday you mentioned
2  that we will have additional argument on JMOL.
3           THE COURT:  This is the moment.
4           MR. SPRIGMAN:  It is down to intent, your Honor.  You
5  made it clear in instruction No. 14, right or wrong, that this
6  case comes down to Mr. Rothschild's intent.  In fact, you set a
7  very high standard for Hermès to establish that intent.
8           That intent is that Hermès must prove that
9  Mr. Rothschild's use of the Birkin mark was not just likely to
10 confuse potential consumers, but was intentionally designed to
11 mislead potential consumers into believing that Hermès was
12 associated with Mr. Rothschild's MetaBirkins project.
13          Now, your Honor, we agreed to that instruction because
14 we understood, we acknowledged based on last Friday's exchange
15 that I had with you and based on the hypothetical that you
16 offered to me that your concern was that someone who is just
17 basically a scammer should not be taking advantage of First
18 Amendment protection to perpetuate a scam.
19          We understand that, your Honor.  Right or wrong as a
20 matter ever law, we understand the concern.  Based on that
21 concern, and based on the way that you revised your instruction
22 to reflect it, I want to give you three reasons, your Honor,
23 why in my view no rational jury could find on the objective
24 evidence in this case, whether they believe Mr. Rothschild or
25 not, no rational jury could find on the objective evidence in

1  this case that Mr. Rothschild intentionally designed his
2  MetaBirkins project, intentionally designed his use of the
3  Birkin mark or the Birkin trade dress to deceive.
4          Now, I have three points.  I think I can make them
5  quickly.
6          At the end, I am going ask you to grant us judgment as
7  a matter of law on all of these claims.
8          First, Mr. Martin, the 30(b)(6) witness for this
9  client, has admitted on the stand that there are no explicit
10 statements ever made by Mr. Rothschild inviting people to
11 believe, to conclude that Hermès was connected with the
12 MetaBirkins art project, no explicit statements in public, no
13 explicit statements in private.  None.
14         Now, that is very important, your Honor, because the
15 *Rogers* case, whether we agree on it or not -- and I can talk to
16 you, your Honor, about that.  I have done a lot more thinking
17 over the weekend.  I think I have additional things I can tell
18 you about that, but forget it.
19         Whatever we think about the precise meaning of *Rogers*
20 and its relationship with *Twin Peaks*, those cases are clear
21 that the statements must be, the use of the mark must be
22 explicitly misleading.
23         The fact that there are no explicit statements in this
24 case where Mr. Rothschild went out to the people or even his
25 private contacts and said that his project has anything to do

1          MR. SPRIGMAN:  That's my second point.

2          Here's my third and to me, your Honor, the most
3   important.  This is a First Amendment case.  The First
4   Amendment is supposed to provide all of us, including Mason
5   Rothschild, when he makes his art, with breathing room.  The
6   First Amendment is not supposed to be a hunting license for
7   companies like Hermès to pick out from thousands of texts and
8   nitpick to death in a courtroom things that Mason Rothschild
9   says to his buddies in private.  That's what so much of the
10  testimony in this case has been about, trying to paint
11  Mr. Rothschild as a scammer.

12          I would submit to you, your Honor, that if this case
13  is about intent, as you have made it to be, then if the First
14  Amendment is going to have its day in this courtroom, it should
15  be with you.  And the way you should do it, I'm asking you, is
16  to give Mr. Rothschild and artists like him who may not guard
17  every word, who may not think in advance of any possible misuse
18  and permutation that can be made by the people that they've
19  angered, give them the breathing room to be artists and not
20  lawyers.

21          Mr. Rothschild gave an interview to *Yahoo! News*.  And
22  you may remember, your Honor, months and months and months ago,
23  when my colleague Rebecca Tushnet gave an argument to you on a
24  motion to dismiss, the other side made a big deal about that
25  *Yahoo! News* interview.  That *Yahoo! News* interview, I will

1  bucks, you know, a minimum of 12,000 bucks, like they said.  So
2  I said, Let me see if I can charge, like, almost nothing for
3  them, like, 450 bucks, and see what the people do with them and
4  see what they value.  Is it the image or, like, the product?"
5         Okay.  That's the experiment.  That's what he said in
6  the *Yahoo! News* interview; that's what he said on the stand.
7  It's been consistent.
8         This point about collaboration, you know, your Honor,
9  I've been puzzled by this point from the start.  Mason
10 Rothschild never made -- he never lied about having the
11 collaboration.  He wanted a collaboration; he told people he
12 was working on it.  He was working on it.  He was calling
13 people trying to get to Hermès because, you know, to be
14 truthful, your Honor, he was puzzled as to why they were upset
15 about this.
16         Artists collaborate with Hermès all the time.  Hermès
17 spent time telling the jury about how they collaborate with
18 artists.  The idea that Mr. Rothschild couldn't collaborate
19 with them or couldn't possibly think that he could collaborate
20 with them doesn't stand up to the evidence that Hermès itself
21 has introduced in this courtroom.  It may be that Hermès
22 considers him unworthy, but, you know, that's not
23 Mr. Rothschild's fault nor is it something that he necessarily
24 understands.
25         Look, your Honor, again, the word "explicit" appears

in *Rogers*.  The word "explicit" appears in *Twin Peaks*.  It is the test.  This word "explicit" has got to do something.  And the thing that it has to do in this case is that it has to have you asking yourself, did Mason Rothschild ever explicitly tell anybody, public or private, that his MetaBirkins were connected in any way with Hermès?  He never said anything public.  He never said, for example, your Honor, I'm going to name this project MetaBirkins by Hermès.  He never did that.  He never did this privately.  He never said to someone, when they said, Hey, does this have anything to do with Hermès?  He never said, Yeah, it does.  Or, you know, They are sponsoring it or they are licensing it or I have their approval.  He never said anything like that.

What they're reduced to, what Hermès is reduced to, is taking isolated bits of flotsam and jetsam in, I'm sorry, you said several 100 text chains.  It's thousands and thousands and thousands of exchanges within those several 100 text chains.  And they are cobbling together a narrative that, to be truthful, I mean, your Honor, is -- it is a concoction.

If you allow this case to proceed -- I mean, it's gone to the jury, but I'm asking you for a JMOL so that we do not get liability for First Amendment protected artistic speech based on a concoction.  We should limit liability in these instances to explicit statements.

The rule, your Honor, after hearing you on Friday, I