# BakerHostetler

Baker&H
45 Rockefe
New York,

T 212.589
F 212.589
www.bakerl

Oren J. Warshavsky
direct dial: 212.589.4624
owarshavsky@bakerlaw.com

December 15, 2023

Honorable Jed S. Rakoff, U.S.D.J.
Room 1340
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   *Hermès International et al. v. Rothschild*, 22-cv-00384-JSR - Hermès' Response to Rothschild's Motion to Stay Collection of Money Judgment

Dear Judge Rakoff:

Plaintiffs Hermès International and Hermès of Paris ("Hermès") submit this letter and accompanying declaration of Francesca A. Rogo ("Rogo Decl.") in opposition to defendant Mason Rothschild's request that the Court waive Fed. R. Civ. P. 62(d)'s bond requirement.

Largely ignoring the salient inquiries, Rothschild tries to make an equitable argument. But Rothschild's application does not arrive on a blank slate. As this Court explained in denying Rothschild's motion to set aside the judgment he now wishes relief from: "in effect, the jury found that Rothschild was simply a swindler" and his "entire scheme here was to defraud consumers into believing . . . that Hermès was endorsing his lucrative MetaBirkins NFTs." *Hermès Int'l v. Rothschild*, No. 22-CV-384 (JSR), 2023 WL 4145518, at *1, *4 (S.D.N.Y. June 23, 2023), ECF No. 191. Rothschild's application is insufficient and should be denied.

<u>Legal Standard</u>

Generally, a stay is informed by the well-known *Hilton* factors, concerning whether: (1) the applicant is likely to succeed on the merits; (2) the applicant will be irreparably injured absent a stay; (3) the non-moving party will not suffer substantial injury; and (4) the public interest is impacted. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 5312894, at *3 (S.D.N.Y. Aug. 18, 2023). Rothschild's application addresses the third and fourth factors, but not the first two. To the extent the Court determines *Hilton* is the proper test, Rothschild's application fails for failure to address the first two factors.

Rothschild instead relies on *In re Nassau County Strip Search Cases*, 783 F.3d 414 (2d Cir. 2015), which includes a five-factor test:

Honorable Jed S. Rakoff, U.S.D.J.
December 15, 2023
Page 2

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

*Id.* at 417–18.

**Argument**

The purpose of a supersedeas bond is to ensure that judgment creditors, like Hermès, will be able to collect its judgment when Rothschild's appeal fails. *Id.* at 417. Rothschild asks that the Court allow him to pledge the MetaBirkins smart contract and a single MetaBirkin Non-Fungible Token ("NFT") in lieu of a bond. By Rothschild's own admission, "the smart contract has no quantifiable monetary value" and that the value of the MetaBirkins NFT "has crashed." Rothschild Decl. ¶ 11. That is an understatement. The last MetaBirkin sale was for 0.1 ETH, which is about $219 USD. Rogo Decl. Ex. 1. A $219.00 asset—which is more likely to decrease in value than increase—is insufficient security.

<u>None Of the Five Factors Weigh In Rothschild's Favor</u>

Rothschild argues that the collection process is not complex, pointing to his physical business, Terminal 27. Yet Rothschild concedes that Terminal 27 is "growing and requires significant resources for its expansion" and then identifies the variety of expenses required to operate the business. Rothschild Decl. ¶ 6. Further, Rothschild has not used Terminal 27 assets to pay the judgment or to secure a bond.

When a party offers alternative security, "the alternative must, like a supersedeas bond, provide full and fast relief." *Leevson v. Aqualife USA Inc.*, No. 14-CV-6905 JBW VMS, 2017 WL 6541766, at *4 (E.D.N.Y. Dec. 8, 2017), *report and recommendation adopted*, 2017 WL 6550683 (E.D.N.Y. Dec. 21, 2017). The *Leevson* court required a bond where "[m]uch of Defendants' net worth is tied up in the Building from which the Court can fairly infer that collection of this judgment would be involved and time consuming." *Id.* at 2. Likewise, in *Moore v. Navillus Tile, Inc.*, the Court required a bond where "[m]uch of [defendant's] net worth is tied up in hard assets—the ready cash on its balance sheet is a small fraction of its net worth—from which I can fairly infer that collection of this judgment would be complicated and time consuming." No. 14 CIV. 8326, 2017 WL 4326537, at *2 (S.D.N.Y. Sept. 28, 2017).

Though Rothschild cites a lack of funds, he cannot be taken at his word when the evidence shows otherwise. As Rothschild showed at trial, he distorts and prevaricates. For example, he told numerous business associates that he was negotiating and partnering with Hermès. Rogo Decl., Exs. 2 at 47, 3 at 4, 4 at 4, 5 at 5, 6 at 8. Rothschild misled his investors about his given name ███████████████████████████████████████████████████████████ *Id.*, Exs. 2 at 26, 7 at 10392.

Honorable Jed S. Rakoff, U.S.D.J.
December 15, 2023
Page 3

Rothschild avers that he has not paid Lex Lumina since the motion to dismiss (Rothschild Decl. ¶ 4), which was decided on May 5, 2022. Rothschild's finances do not seem to be the cause. First, in December 2021, ████████████████████████████████████████ Rogo Decl., Ex. 8 at 367–68. In April 2022, while the motion to dismiss was briefed, Rothschild publicized a trip to Hawaii, where he stayed at the Four Seasons Hotel and rented a Land Rover Defender. *Id.*, Ex. 9. In December 2022 and January 2023, when Lex Lumina and its co-counsel, Harris St. Laurent & Wechsler LLP ("Harris"), were preparing for trial, Rothschild posted about staying at the Amangiri hotel in Utah, which costs thousands of dollars per night, (*Id.*, Ex. 10) and complained that he could not enjoy his ice cream in first class because of turbulence. *Id.*, Ex. 11. On January 4, 2023, ████████████████████████████████████████ *Id.*, Exs. 12–13. He publicized his arrival for trial with four pieces of luxury luggage from Rimowa, which cost well over $1,000 each. *Id.*, Ex. 14. As Rothschild alludes, he publicized back-to-back trips to Japan and Italy, where he rented a BMW convertible, a boat, and stayed in luxury resorts. *Id.*, Exs. 15–16.

Rothschild attempts to blunt the impact of his profligate lifestyle as "business" travel for Terminal 27. Terminal 27 is owned by Rothschild and his fiancé (*Id.*, Ex. 17 at 253:1–7), which demonstrates the complexity of the issues here, and puts in perspective his claim that his assets are "tied up" in Terminal 27. Rothschild Decl. ¶ 5.

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Although Rothschild now claims he does not own real property (Rothschild Decl. ¶ 8), he recently publically stated that he has a house, and offered $3,000 cash to anyone that could identify a perceived intruder. Rogo Decl., Ex. 24.

Rothschild has shown that he does not even pay simple debts. Rothschild promised to give a MetaBirkin NFT to the person who suggested the name for the NFT collection. An individual named "Makisa" suggested the name on Twitter, but Rothschild did not honor his promise. ████████████████████████████████████ *Id.*, Exs. 19 at 204:17–18. Realizing he was caught in a lie, at trial, Rothschild testified that another individual, @hectorc, suggested the name on Instagram, and he gave that individual the NFT instead. *Id.*, Ex. 31 at 470:14–471:25. However, the next day, Rothschild was shown evidence that @hectorc never received the NFT, and was forced to revise his testimony again. *Id.*, Exs. 31 at 470:14–477:6, 20.

In his opening statement, Mr. Millsaps, Rothschild's counsel, tried to blunt Mr. Rothschild's strained relationship with the truth, telling the jury that it "will also learn that [Rothschild] sometimes exaggerates and embellishes the truth, especially [when] he's promoting himself and his projects." *Id.*, Ex. 30 at 49:23–50:1. Mr. Millsaps introduced us to Rothschild—we should believe him. Rothschild misleads business associates, claims to have hiden money, lives a lavish lifestyle, claims to have a house publicly while disowning it here (under seal), and yet claims to

be impecunious. If Rothschild's declaration here is true, it will be hard to collect from him. If it is untrue, it will be even harder. Rothschild will also likely argue that he testified that some of the foregoing statements he made were untrue—but that only exacerbates the issue here: Rothschild has shown himself to be unreliable at best.

Finally, even if all of Rothschild's representations here are true, collection will only get harder with time, and the Court should decline his offer to have Hermès bet on his future. Rothschild points to "this ongoing lawsuit" as one of the reasons his activities in Gasoline have been slow. Rothschild Decl. ¶ 7. ████████████████████████████████████████ That comes as no surprise. Rothschild's "successes" were projects using Hermès's BIRKIN marks: the Baby Birkin NFT and METABIRKINS NFTs. Although he attempted to leverage this success into subsequent product lines, his NFT project "I Like You You're Weird" currently sells at 0.0035 ETH (approximately $7.75 USD) and his follow-up project "This Artwork Is Subject To Change" is selling for 0.0031 ETH (approximately $6.87 USD). *Id.*, Exs. 22–23.

Rothschild fails to address the second, third, and fourth factors under *In re Nassau County Strip Search Cases*. That failure is likely determinative, as "Courts in this District have determined that such an inability to pay is determinative of at least these factors, and often to the entire inquiry." *Sire Spirits, LLC v. Green*, No. 21 CIV. 7343 (JPC), 2023 WL 1516574, at *2 (S.D.N.Y. Feb. 3, 2023). *See also EMA Fin., LLC v. Joey New York Inc.*, No. 17-CV-9706 (VSB), 2022 WL 2399754, at *2 (S.D.N.Y. July 1, 2022), *reconsideration denied*, No. 17-CV-9706 (VSB), 2022 WL 4611949 (S.D.N.Y. Sept. 30, 2022) ("A defendant's motion for a stay based on their inability to pay the judgment weighs decisively against waiver of the bond requirement"); *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 649 (S.D.N.Y. 2018) ("Those factors contemplate waiving the requirement of a supersedeas bond because a court is satisfied that the debtor would be able to pay the judgment with ease").



Equities

Rothschild does not come to this court with anything resembling clean hands. Rothschild willfully infringed Hermès's trademarks, misleading consumers and lying to business associates along the way. Recognizing that a traditional equitable analysis does him no favors, Rothschild's

"equitable" argument is simply an argument that because Hermès runs a successful and profitable business and Rothschild does not, he should be allowed to escape the judgment. The judgment is a result of Rothschild's willful conduct—and there is no equitable basis for supporting his luxurious lifestyle at the expense of the judgment.

Rothschild also suggests that Hermès is seeking to exert pressure on Rothschild because of his appeal. Rothschild's appeal is comprised of the same arguments that were rejected at least five times in this case. Further, the Supreme Court's decision in *Jack Daniel's Prop. Inc. v. VIP Prd. LLC*, 599 U.S. 140 (2023) and the Second Circuit's decision in *Vans, Inc. v. MSCHF Prod Studio, Inc.* No. 22-1006, 2023 WL 8385065 (2d Cir. Dec. 5, 2023) have further eroded Rothschild's First Amendment argument. In short, Rothschild's argument about Hermès being motivated by fear of his appeal of the Jury Verdict is an unsupported contrivance.

Public Interest

Rothschild cites to an amicus brief filed in support of his appeal to argue that the case is of significant import to the artistic community. The amicus brief was signed by 5 parties: MSCHF, Alfred Steiner, Jack Butcher, CTHDRL, and Authors Alliance. Rothschild filed an amicus brief supporting MSCHF in the *Vans* case. No. 22-1006, ECF No. 10. Steiner, also represented by Lex Lumina, joined Rothschild as an amicus in *Vans*. *Id.* Butcher collaborated with Rothschild on an NFT project. Rogo Decl., Exs. 25–26. CTHDRL partnered with Rothschild in connection with NFT projects and Terminal 27. *Id.*, Exs. 27–28. And finally, Authors Alliance, also represented by Lex Lumina, joined Rothschild as an amicus in *Vans* (No. 22-1006, ECF No. 10). Further, Lex Lumina attorneys that have appeared for Rothschild at trial and/or on appeal—Christopher Sprigman, Mark MacKenna, and Mark Lemley (appeal only)—are founding members of Authors Alliance, as is Rebecca Tushnet, previously of Lex Lumina and also counsel to Rothschild at the trial court level (Ms. Tushnet argued the motion to dismiss) and on appeal. Rogo Decl., Ex. 29. This group hardly can be seen to be representing a public interest, let alone one that should sway the court here.

## Conclusion

Rothschild addressed only two of the *In re Nassau County Strip Search Cases* factors, and neither tip in his favor. Rothschild's equities and public interest arguments also fail to move the needle. Hermès has a valid judgment that it should be able to enforce absent a supersedeas bond, and Rothschild has shown no basis for altering that requirement.

Respectfully submitted,

/s/ *Oren Warshavsky*
Oren J. Warshavsky
Partner