# Exhibit 31

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

HERMÈS INTERNATIONAL, et al.,

              Plaintiffs,

         v.                              22 Civ. 384 (JSR)

MARTIN ROTHSCHILD,

              Defendant.
------------------------------x
                                         New York, N.Y.
                                         February 2, 2023
                                         9:30 a.m.
Before:

                    HON. JED S. RAKOFF,

                                         District Judge
                                         -and a Jury-


                         APPEARANCES

BAKER & HOSTETLER LLP
     Attorneys for Plaintiffs
BY:  DEBORAH A. WILCOX
     OREN J. WARSHAVSKY
     GERALD J. FERGUSON

HARRIS ST. LAURENT & WECHSCLER LLP
     Attorneys for Defendant
BY:  ADAM B. OPPENHEIM
     JONATHAN A. HARRIS

LEX LUMINA PLLC
     Attorneys for Defendant
BY:  RHETT O. MILLSAPS, II
```

1           THE COURT:  I think in light of what was just brought
2    to my attention, I think we'll even go today until 115 rather
3    than one.
4           (Jury present)
5           Good morning, ladies and gentlemen.
6           THE JURY:  Good morning.
7           THE COURT:  As you know, today we're not going to have
8    an afternoon session.  I think we will go, instead of going
9    until one, we will go to 1:15 just to make the most use we can
10   of today.
11          Tomorrow, by contrast, we will be sitting all the way
12   until 4:30.  But it's counsel's expectation, and mine, that
13   that will allow us to finish all the evidence in the case
14   tomorrow.
15          OK.  Counsel.
16          MR. WARSHAVSKY:  Thank you, your Honor.
17          Can I ask that we bring up Defense Exhibit 613, which
18   was offered yesterday.
19    SONNY ESTIVAL, resumed.
20   CROSS-EXAMINATION
21   BY MR. WARSHAVSKY:
22   Q.  Mr. Rothschild, yesterday you testified that in response to
23   the Birkin naming contest, you gave user *hectourc* in the middle
24   here a MetaBirkin for picking the name?
25          MR. HARRIS:  Objection, not his testimony.

             THE COURT:  Well, rather than have a debate about
whether it was or was not, just if you have a transcript, you
can quote it.  If not, you can just ask him again the other
question the underlying question.
             MR. WARSHAVSKY:  Sure.
             THE COURT:  Give the page number and line number.
             MR. WARSHAVSKY:  Sure.  I'm looking at pages number
291, starting from line 11 through page 292, line nine.
             THE COURT:  Go ahead.  Read it.
             MR. WARSHAVSKY:  Read it.
             THE COURT:  Yes.
             MR. WARSHAVSKY:  OK.
BY MR. WARSHAVSKY:
"Q.  And did, in fact, people -- did you post it just on the
contest, just on Instagram, or did you also post it on other
social media?"
             MR. WARSHAVSKY:  I should note, this was when your
counsel was examining you.
             You responded:
"A.  I posted it on Twitter.
"Q.  And did somebody suggest names?
"A.  Yes.  Actually, I got suggested MetaBirkins on Instagram
and on Twitter.
"Q.  If you look in the middle of this page, there is a
*hectourc*?

1  "A.  Correct.
2  "Q.  Suggesting MetaBirkins?
3  "A.  Yes.
4  "Q.  Did the contest -- you said there were two, there was
5  somebody on Instagram and also someone on Twitter.
6          Do you remember the name of the person that suggested
7  it on Twitter?
8  "A.  Makisa.  Her handle is *asiancryptogirl*.
9  "Q.  Do you know her actual name?
10 "A.  Makisa, that's just her display name.  I don't know her
11 real name.  It could be, but I'm not sure.
12 "Q.  Did, in fact, the contest winners receive anything?
13 "A.  One of them did.
14 "Q.  All right.  Who received something?
15 "A.  Instagram was the first one I saw, so Instagram winner."
16         THE COURT:  OK.  So you remember giving that
17 testimony?
18         THE WITNESS:  Correct.
19         THE COURT:  OK.  Put another question.
20 BY MR. WARSHAVSKY:
21 Q.  Is that testimony accurate?
22 A.  Not on MetaBirkin, but I allowed a spot for a MetaBirkin.
23 Q.  You gave this person *hectourc* a whitelist spot for a
24 MetaBirkin?
25 A.  Yes.

1            MR. WARSHAVSKY:  OK.  I would like to show the witness
2    and counsel defense Exhibit 387 for identification.  It's a
3    rebuttal exhibit.
4            MR. HARRIS:  Your Honor, I'm sorry.  I can't read
5    that.
6            THE COURT:  Yes.  I don't think it's legible.
7            Do you want to blow up?
8            MR. HARRIS:  There we go.
9            MR. WARSHAVSKY:  Scroll to the bottom just to show
10   this is a document produced by the witness and by
11   Mr. Rothschild in this case.  Go back to the top.
12   BY MR. WARSHAVSKY:
13   Q.  This is your Instagram direct message with this person,
14   *hectourc*, correct?
15   A.  Correct.
16   Q.  And *hectourc* is writing to you beginning, we go down to the
17   bottom, you actually write to hectourc --
18           THE COURT:  Wait a minute.  Are you offering this?
19           MR. WARSHAVSKY:  Sure.  We'll offer it into evidence.
20           THE COURT:  You can't quote from it if it's not in
21   evidence.
22           MR. WARSHAVSKY:  I understand.
23           THE COURT:  Any objection?
24           MR. HARRIS:  No objection, your Honor.
25           THE COURT:  Received.

1             (Plaintiff's Exhibit 387 received in evidence)
2             THE COURT:  Show it to the jury.
3             MR. WARSHAVSKY:  All right.
4             THE COURT:  Go ahead.
5   BY MR. WARSHAVSKY:
6   Q.  This is your direct message with *hectourc* on Instagram,
7   correct?
8   A.  Yes.
9   Q.  And the first from you is -- the first message is from you
10  at the bottom:  MetaBirkins, baby.  I got a Birkin with your
11  name on it.
12            That's from you, correct?
13  A.  Yes.
14  Q.  And then there is some back and forth.
15            And let's go to November 30.  *Hectourc* says, Hey, just
16  wanted to know if you guys need anything from me.
17            You didn't respond to that, right?
18  A.  No.
19  Q.  Let's go up to the emoji from December 3 at 1:39 p.m.
20  A.  Yes.
21  Q.  That's while the MetaBirkins were minting?
22  A.  Well, the day before.
23  Q.  It was 24-hour period, right?
24  A.  Yeah.
25  Q.  So this was while the minting process was going on still?

1  A.   Yes.
2  Q.   OK.  And this is an emoji of somebody with their head in
3  their hands?
4  A.   I think it is, like, prayer hands.
5  Q.   Prayer hands.  And then above that, later that day *hectourc*
6  writes, Hope you guys will see this, correct?
7  A.   Um, yes.
8  Q.   OK.  Let's go to December 4 at 12:05 p.m.
9       That's after the MetaBirkins had minted, right?
10 A.   Yes.
11 Q.   And *hectourc* writes, Hey, guys.  Hitting you guys up again
12 about my gifted Birkin.  Just want to make sure I'm not being
13 ignored?
14 A.   Yes.
15 Q.   And you didn't respond to that, right?
16 A.   No.
17 Q.   OK.  Above that we have two you guys on December 6.  I
18 don't know if that is you or yo, guys.  And then the second
19 one, I already missed out on the first release.
20       You don't respond to that, right?
21 A.   Yes.
22 Q.   OK.  And let's turn to Plaintiff's Exhibit 388.
23       Mr. Rothschild in this case -- just to the judge,
24 defense counsel, and the witness, please.
25       This is a Twitter direct message, correct?

1  A.  Yes.
2  Q.  That you produced in this case?
3  A.  Correct.
4          MR. WARSHAVSKY:  Offer into evidence, your Honor.
5          MR. HARRIS:  No objection, your Honor.
6          THE COURT:  Received.
7          (Plaintiff's Exhibit 388 received in evidence)
8  Q.  Hey MetaBirkins team.  Just trying to reach out about my
9  gifted MetaBirkin from the naming contest on Instagram a while
10 back.  My IG is *hectourc*.  Thanks.
11 A.  Yes.
12 Q.  Did you respond to this?
13 A.  No.
14 Q.  OK.  So *hectourc* is suggesting he didn't receive a
15 whitelist spot, correct?
16 A.  Yes.
17 Q.  So going back to your testimony of yesterday, did *hectourc*
18 receive a MetaBirkin?
19 A.  To my knowledge.  So *hectourc* is actually a friend of my
20 friend Love Menzi on Instagram, so he communicated that way.
21 Q.  OK.  So are you saying that *hectourc* received a whitelist
22 spot?
23 A.  To my knowledge, at the time, it was -- I looked into this
24 after the fact, but I did have these direct messages.
25 Q.  OK.  But your testimony yesterday was that you gifted --

1    that he received the gift.  You corrected me earlier and said
2    that he received a whitelist spot.  Here he is saying to you,
3    he didn't receive a whitelist spot, and you didn't respond,
4    correct?
5    A.  To my knowledge, at the time when you asked me the
6    question, that's what I thought.
7    Q.  OK.  So but right now as we sit here today, I'm asking you,
8    was your testimony yesterday accurate?
9    A.  Um, so my knowledge yesterday, that's what it was.  That
10   was my testimony.  I didn't have these, um, Instagram messages
11   yesterday.
12   Q.  Well, you did have these Instagram messages, Instagram and
13   Twitter, because these came from you, correct?
14   A.  Correct, in discovery.
15   Q.  OK.  So I just want to make sure we're clear.
16              The testimony you gave yesterday was incorrect?
17   A.  It was based on what knowledge I had at the time.
18              MR. WARSHAVSKY:  Move to strike, your Honor.
19              THE COURT:  No, I'm not going to strike that.
20              But do you want to change now your response?
21              THE WITNESS:  Me?
22              THE COURT:  Yes.
23              THE WITNESS:  I don't.
24              THE COURT:  Now that you've seen these documents, are
25   you still adhering to the testimony you gave yesterday, or do

1  you now have a revised view?
2             THE WITNESS:  I have a revised view.
3             THE COURT:  What's your revised view?
4             THE WITNESS:  That these were the text messages that
5  *hectourc* sent, but we had our forms of communication through
6  friends.  Um, I -- that's my revised.
7             THE COURT:  All right.  Go ahead, counsel.
8  BY MR. WARSHAVSKY:
9  Q.  Mr. Rothschild, did you give *hectourc* a whitelist spot?
10 A.  To my knowledge at the time, yes.
11 Q.  OK.  Which MetaBirkin -- we have your wallet and all the
12 MetaBirkins here on.  We have the ETH wallets here.
13            Which one did he get?
14            We'll check into this and come back to it.
15            Which whitelist spot do you think you gave him?
16 A.  I'm not sure.
17 Q.  Which MetaBirkin did he get?
18 A.  I'm not sure.
19 Q.  So you had follow-up discussions with *hectourc*.  You didn't
20 respond to any of this.  You said you had follow-up discussions
21 through a friend?
22 A.  Yes.
23 Q.  Who is that friend?
24 A.  Love.
25 Q.  Did you produce anything of your discussions of Love in

1  this case?
2  A.  I'm not positive they were via DM or in person.  They all
3  live in Los Angeles.
4  Q.  You followed up with someone in person who is a friend of a
5  friend rather than responding to this person?
6  A.  Correct.
7  Q.  OK.  So it's your testimony still that you gave him a
8  whitelist spot?
9  A.  To my knowledge.
10 Q.  So the documents are wrong?
11 A.  These documents were just a small amount of time.  It's
12 been a year since then.
13 Q.  That wasn't my question.
14       Are these documents wrong?
15 A.  No.
16 Q.  They are right?
17 A.  Yes.
18 Q.  So *hectourc* is complaining that he doesn't get a whitelist
19 spot.
20       You're still saying you gave him one?
21 A.  To my knowledge, yes.
22 Q.  When you keep saying "to your knowledge," you either gave
23 the whitelist spot or you didn't.
24       THE COURT:  Counsel, your job is to put questions, not
25 to put statements.

1           MR. WARSHAVSKY:  My apologies, your Honor.
2    Q.  What evidence do you have that you gave *hectourc* a
3    whitelist spot?
4    A.  I looked into this prior to this trial to find more
5    information, but I don't have these direct messages any longer.
6    Q.  On Friday you had an Instagram story with a picture from an
7    office building saying prepping, prepping, prepping, correct?
8    A.  Correct.
9    Q.  So you were preparing for this case?
10   A.  Um, as I think people do.
11   Q.  Yes?
12   A.  Yes.
13   Q.  OK.  And in preparing for this case, you were talking --
14   were you looking at the evidence and talking about this?
15   A.  Um, yes.
16   Q.  OK.  Because, in fact, throughout this case, that was the
17   first time -- yesterday on the stand was the first time you
18   said in this case that you gave a bag to *hectourc*, correct?
19   A.  Yes.
20   Q.  At your deposition when I asked you about it, you didn't
21   bring up *hectourc*, correct?
22   A.  I had to look into my direct messages then.  I can't
23   remember everything.
24           MR. WARSHAVSKY:  OK.  Your Honor, move to strike.
25           THE COURT:  No.

1  Q.  OK.  At your deposition, did you mention *hectourc*?
2  A.  No.
3  Q.  On summary judgment briefing in this case, did you
4  participate in that?
5           MR. HARRIS:  Objection, your Honor.
6           THE COURT:  Sustained.
7  Q.  When you were doing your prepping, prepping, prepping
8  Friday, were you focused on that Instagram post?
9           MR. HARRIS:  Objection, your Honor.
10          THE COURT:  As phrased, sustained.
11 Q.  Did you look at that Instagram post on Friday?
12 A.  What Instagram post?
13          MR. WARSHAVSKY:  Can you bring back up Exhibit 631.
14 Q.  This Instagram post.
15 A.  Um, did I look at it on Friday specifically?
16 Q.  Yes.
17 A.  I don't remember.
18 Q.  Did you look at it Saturday?
19 A.  I'm sure I've seen it through the trial prep.
20 Q.  I'm just asking if you saw it on Saturday?
21 A.  I'm not sure what day.
22          THE COURT:  I think he's fairly answering your
23 questions, counsel.  Put a new question.
24 Q.  OK.  Do you remember yesterday we talked about the Baby
25 Birkin?