# Lex Lumina PLLC

Rhett O. Millsaps II  |  rhett@lex-lumina.com  |  646.535.1137

January 26, 2024

<u>VIA ECF</u>

The Honorable Jed S. Rakoff
Room 1340
United States Courthouse
500 Pearl Street
New York, NY  10007

Re:   *Hermès International et al. v. Rothschild*, 22-cv-00384-JSR;
<u>Rothschild's Request for Clarification of Injunction's Scope</u>

Dear Judge Rakoff:

Pursuant to the Court's direction by email on January 19, 2024, and Minute Entry entered on January 26, 2024, Mr. Rothschild respectfully submits this letter in support of his request for clarification regarding whether the Order of Permanent Injunction (the "Order") in this case would prohibit Mr. Rothschild from providing permission to a Swedish museum to display *MetaBirkins* artworks in its upcoming exhibition on Andy Warhol and Business Art.

### *Background*

The Court entered the Order on June 23, 2023 (ECF No. 190). The Order enjoins Mr. Rothschild "and his associates, business partners, influencers, representatives, and all others in active concert or participation with him who receive actual notice of this Order" from:

1. Manufacturing, minting, issuing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, or otherwise disposing of the "MetaBirkins" non-fungible tokens ("NFTs") and any merchandise related to the "MetaBirkins" NFTs, including without limitation, listing the "MetaBirkins" NFTs or related merchandise for sale on any marketplace, collecting royalties in connection with the "MetaBirkins" NFTs, and/or otherwise disposing of the "MetaBirkins" NFTs;

2. Making any statement or representation or performing any act that is likely to lead the public to believe that any "MetaBirkins" NFTs or related merchandise are in any manner associated or connected with Hermès and/or its "Birkin" trademark and/or trade dress;

3. Using the infringing "MetaBirkins" mark on social media platforms to facilitate the circulation, sale, marketing, advertising, promoting, and renting of the "MetaBirkins" NFTs or related merchandise;

4. Registering, using, or trafficking any domain names or social media or NFT platform usernames or handles that use and/or incorporate the "MetaBirkins" mark; and

5. Providing any benefits to holders of the "MetaBirkins" NFTs, such as airdrops, or otherwise creating incentives for third parties to purchase "MetaBirkins" NFTs.

Order at 1-2. Mr. Rothschild has appealed the Order and the judgment in this case; the Order has not been stayed pending appeal. *See* ECF No. 194.

As the evidence established at trial in this case, NFTs are units of data stored on a blockchain, which is a distributed ledger that records and shows the complete transaction history of NFTs stored on it. *See* January 30, 2023, trial transcript (ECF No. 151) at 78:9-79:14. An NFT can be linked to a digital media file, such as an image, movie, or music file, in which case the NFT is like a deed of ownership for the linked media. *See id*. at 81:2-18; January 31, 2023, trial transcript (ECF No. 149) at 126:20-127:4. In such cases, most people think of and refer to the image or other linked media as "an NFT." *See* ECF No. 151 at 80:13-16. In this case, "if people are referring to *MetaBirkins*… They're generally referring to the image [of an imaginary, fur-covered Birkin bag] itself…" ECF No. 149 at 126:25-127:4; ECF No. 151 at 103:12-104:4. The *MetaBirkins* images are stored on the Interplanetary File System, which is a distributed file storage protocol that allows computers all over the world to store and serve files as part of a giant peer-to-peer network—so the *MetaBirkins* artworks are not stored in any centralized location and are publicly accessible on the Internet. Declaration of Mason Rothschild dated January 25, 2024 ("Rothschild Decl."), ¶ 4. Mr. Rothschild retains ownership of the copyrights in the *MetaBirkins* artworks, even as the particular *MetaBirkins* artworks are owned by the respective NFT holders. *Id*. ¶ 3.

Just before Christmas last year, the Spritmuseum in Stockholm, Sweden (the "Museum") contacted Mr. Rothschild to ask for his permission to display *MetaBirkins* artworks in an exhibition to open this year curated by Dr. Blake Gopnik that focuses on Andy Warhol and Business Art. *Id*. ¶ 5. Given the Order and this ongoing case, Mr. Rothschild referred communications with the Museum to undersigned counsel. *Id*.

On December 22, 2023, we emailed Hermès' counsel to explain the request and to inquire as to whether Plaintiffs Hermès International and Hermès of Paris, Inc. (together, "Hermès") would contend that Mr. Rothschild's giving such permission to the Museum somehow violated the Order. *See* Declaration of Rhett O. Millsaps II dated January 26, 2024 ("Millsaps Decl."), Ex. 1 at 7-8. We did so out of an abundance of caution, given Hermès' scorched-earth approach to this case, not because we believed there was any reasonable way that the Order can be read to prohibit Mr. Rothschild from giving his permission to a museum to display *MetaBirkins* artworks in an exhibition alongside other artworks.

In response to questions posed by Hermès' counsel, we spoke with representatives of the Museum on January 15, 2024, to obtain additional information about the planned exhibit. *See* Millsaps Decl. ¶ 3. As we explained to Hermès' counsel by email that day:

> The [Museum] is planning an exhibition focusing on Warhol's work from the 1970s and 80s and Business Art. A large part of the exhibition will focus on Warhol's work, and there will be a section of the exhibition that focuses on artists who came after Warhol and work within the same tradition. The [M]useum intends to include *MetaBirkins* in the latter section, alongside other NFT artworks (and artworks in other media). The [M]useum intends to display *MetaBirkins* on a screen just as the images are available on the Internet. The museum intends to include mention of [this] lawsuit in the exhibit's description of the *MetaBirkins* artworks.

*Id*., Ex. 1 at 3. Additionally, as we explained to Hermès' counsel, the Museum has provided no contract or written permission form to Mr. Rothschild, and the Museum will pay no compensation to Mr. Rothschild in exchange for his permission to exhibit the *MetaBirkins* artworks. *Id*.; Rothschild Decl. ¶ 7.

Hermès' counsel responded the following day with baseless accusations against Dr. Gopnik and a threat to take legal action against the Museum and Dr. Gopnik, stating:

> If this is to go forward, then Hermes does not consent…On a practical level, it is unclear why, if Rothschild is as financially strapped as he has testified, and he has not paid your firm for almost two years, he would be gearing up for another dispute for which there is no financial upside. It suggests that perhaps there is more of a payday or quid pro quo between he and Dr. Gopnik, and perhaps that Dr. Gopnik is a business associate and had a financial stake in the outcome of the trial. We will look into that separately and revert as necessary. Will Lex Lumina also be representing the museum and/or Dr. Gopnik in connection with this issue?

Millsaps Decl., Ex. 1 at 2.

In fact, as we explained to Hermès' counsel, Mr. Rothschild has no relationship with Dr. Gopnik aside from hiring Dr. Gopnik—at a substantially discounted rate, agreed to by Dr. Gopnik because of this case's importance to the public and the art world—to serve as an expert in this case, which engagement concluded a year ago. Rothschild Decl. ¶ 8. Mr. Rothschild has spoken briefly with Dr. Gopnik only once—in passing during preparation for the trial in this case a year ago—and otherwise has never had any contact with Dr. Gopnik. *Id*. Mr. Rothschild had no prior contact with the Museum before they reached out about this matter last month, and he has had no part in planning or encouraging the exhibition at issue. *Id*. ¶ 6. To Mr. Rothschild's knowledge, neither Dr. Gopnik nor the Museum have any financial interest in *MetaBirkins* or the outcome of this case. *Id*. ¶ 9. Nevertheless, on a telephone call with Chambers on January 19, 2024, Hermès seemed to suggest that Dr. Gopnik, a non-party witness, ought to be bound by

Hon. Jed S. Rakoff
Page 4 of 5
January 26, 2024

the Order, despite the fact that Mr. Rothschild has nothing to do with Dr. Gopnik's planning of the exhibition. Millsaps Decl. ¶ 4. That is incorrect. *See* Fed. R. Civ. P. 65 (providing that injunctions and restraining orders are binding "only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise").

### *Argument*

The Museum has asked Mr. Rothschild, the author and copyright owner in the *MetaBirkins* artworks, to give his permission for the public display of several of those artworks. We do not read the Order in this case to prohibit Mr. Rothschild from granting that permission. In doing so, Mr. Rothschild is not "[m]anufacturing, minting, issuing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, or otherwise disposing" of the *MetaBirkins* NFTs. Order at 1. Nor would he be collecting any royalties or other payment. *See* Rothschild Decl. ¶ 7. He, as the copyright owner, would simply be giving the Museum permission to make a public display of artwork that already is publicly available on the Internet. *See id*. ¶ 4. As we understand it, the Museum will present several *MetaBirkins* artworks along with text noting the connection between those artworks and Andy Warhol's works in the genre of Business Art. *See Id*. ¶ 5; Millsaps Decl. ¶ 3. The Museum would make no claim of any connection between *MetaBirkins* artworks and Hermès. To the contrary, the exhibit text would identify Mr. Rothschild as the artist responsible for *MetaBirkins*, explain that Hermès sued and won a trial against Mr. Rothschild for trademark infringement, and further explain that Mr. Rothschild is challenging that result on appeal. *Id*.

Interpreting the Order to prohibit Mr. Rothschild from giving permission for the public display of *MetaBirkins* artworks in the Museum would be inconsistent both with trademark law and with the First Amendment. First, with respect to trademark law, the Supreme Court made clear just last year that the Lanham Act does not reach conduct occurring outside the United States. *See Abitron Austria GmbH v. Hectronic Int'l, Inc.,* 600 U.S. 412, 428 (2023) ("In sum, we hold that § 1114(1)(a) and § 1125(a)(1) are not extraterritorial and that the infringing 'use in commerce' of a trademark provides the dividing line between foreign and domestic applications of these provisions."). Thus, the Order, insofar as it is based on findings of violation of the Lanham Act, cannot apply extraterritorially either.

Second, even if the Lanham Act applied extraterritorially, it would not reach the Museum's public display of the *MetaBirkins* artworks because such display would not involve a "use in commerce"—which, the Supreme Court made clear in *Abitron*, is the type of conduct that the Lanham Act regulates. *See id.* at 423. Under the Act, the "term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade," where the mark serves to "identify and distinguish [the mark user's] goods ... and to indicate the source of the goods." *Id.* at 428 (quoting 15 U.S.C. § 1127). Display in an art museum is not "trade"—there is no commercial transaction proposed or attached to the *MetaBirkins* artworks in such context.

Nor would the Museum's display of the *MetaBirkins* artworks, along with

explanatory text, constitute a trademark use of the "Birkin" mark. The Museum will present the "*MetaBirkins*" term as the title of the *MetaBirkins* artworks. The source of the *MetaBirkins* artworks will be identified as Mr. Rothschild, not Hermès. The *MetaBirkins* artwork will not be for sale, or promoted for sale, in connection with the exhibit or in any other way. The artworks will be displayed in an *art museum*, where attendees are virtually certain to understand the *MetaBirkins* images as artworks and the term "*MetaBirkins*" as a title of the artworks, and not as a source indicator—particularly where, as here, the artworks will be accompanied by an explanatory text about the litigation brought by Hermès. *See* Millsaps Decl. ¶ 3. For these reasons, the Museum display will not create any substantial risk of confusion among relevant consumers, which, again, is a necessary predicate for Lanham Act liability.

The bottom line here: The Order cannot be interpreted to prohibit an activity that (a) occurs outside the United States and thus beyond the reach of the Lanham Act, (b) does not constitute a use in commerce, by Mr. Rothschild or anyone else, and (c) poses no substantial risk of consumer confusion. Indeed, interpreting the Order to prohibit Mr. Rothschild from approving the Museum's inclusion of *MetaBirkins* artworks in its exhibition would overrun the scope of the U.S. trademark law that is the basis for the Order. *See, e.g.*, *Hermès Int'l et al. v. Rothschild*, 654 F.Supp.3d 268, 277 (S.D.N.Y. 2003) ("trademark law, unlike copyright law, is not founded on a constitutional mandate, and therefore must be applied with caution where constitutionally protected speech is arguably involved") (Rakoff, J.). Mr. Rothschild has a strong First Amendment interest in authorizing the public display of his *MetaBirkins* artworks, and, in particular, in public discussion of his artwork and the legal dispute connected to it. *See, e.g.*, *Hurley v. Irish–American Gay, Lesbian and Bisexual Grp. of Boston*, 515 U.S. 557, 569 (1995) (The protection of the First Amendment is not limited to written or spoken words, but includes other mediums of expression, including music, pictures, films, photographs, paintings, drawings, engravings, prints, and sculptures). Interpreting the Order to restrain Mr. Rothschild from authorizing the Museum's display of *MetaBirkins* artworks would be a restraint on speech that is not justified by the protection of any cognizable trademark interest under U.S. law.

Accordingly, Mr. Rothschild respectfully requests that the Court confirm Mr. Rothschild's understanding that the Order does not prohibit Mr. Rothschild from giving the Museum permission to publicly display the *MetaBirkins* artworks in the Museum's upcoming exhibition on Andy Warhol and Business Art. Such clarification will avoid further groundless threats from Hermès—against both Mr. Rothschild and third parties not subject to the Order—as well as the possibility of needless and wasteful collateral litigation.

Sincerely,

/s/ *Rhett O. Millsaps II*

cc: All Counsel of Record (via ECF)