# BakerHostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

Oren J. Warshavsky
direct dial: 212.589.4624
owarshavsky@bakerlaw.com

February 2, 2024

*VIA ECF*

The Honorable Jed S. Rakoff
United States District Court for the Southern
District of New York
500 Pearl Street
Room 1340
New York, NY 10007

Re:   *Hermès International et al. v. Rothschild*, 22-cv-00384-JSR;
Rothschild's Request for Clarification of Injunction's Scope

Hermès respectfully requests that the Court deny Rothschild's request for clarification of the injunction, or defer ruling pending discovery and, if necessary, an evidentiary hearing concerning the conduct at issue. Since December, Hermès has asked Rothschild to provide basic information that would enable it to take a position on this request. Instead of providing the requested information—which may well have resolved this dispute without judicial intervention and unnecessary costs—Rothschild's subsequent conduct has only raised more questions.

As Rothschild showed at trial, Hermès has taken no action against artists and museums who use Hermès's trademarks in non-misleading ways—including works that could be deemed critical of Hermès. Here, however, because of Rothschild's intentionally misleading conduct, the Court appropriately permanently enjoined him and his associates from, *inter alia*, "marketing, … advertising, [and] promoting" the MetaBirkins NFTs as well as "[m]aking any statement or representation or performing any act that is likely to lead" to confusion. Order of Permanent Injunction (the "Order") ECF No. 190 at ¶¶ 1–2. Hermès lacks sufficient information to determine whether Rothschild's proposed conduct would run afoul of this injunction. For example, Rothschild's submission provides no details about the permission he would be granting—such as the promotion of the exhibit or any merchandising. Rothschild's submission also raises serious questions about his involvement in encouraging the museum to exhibit the MetaBirkins NFTs.

Parties seeking clarification of an injunction must present courts with "a *concrete* situation that [leaves] parties or 'successors and assigns' in the dark as to their duty toward the court." *Paramount Pictures Corp. v. Carol Pub. Grp., Inc.*, 25 F. Supp. 2d 372, 374 (S.D.N.Y. 1998) (quoting *Regal Knitwear Co. v. Nat'l Labor Relations Bd.*, 324 U.S. 9, 15 (1945) (emphasis added). With so many questions unanswered, Rothschild fails to present such a concrete situation.

February 2, 2024
Page 2

I. Background

On December 22, 2023, Rothschild's counsel told Hermès that "[t]he Spritmuseum in Stockholm has notified Mr. Rothschild that it intends to include *MetaBirkins* artworks in an upcoming exhibition, and they have asked Mr. Rothschild for his permission for the public display of some of the *MetaBirkins* images." Jan. 26, 2024 Declaration of Rhett O. Millsaps ("Millsaps Decl."), Ex. 1 at 7. The Spritmuseum—which translates to "Museum of Spirits"—is a museum "dedicated to Swedish drinking culture and is the permanent home to the internationally renowned Absolut Art Collection." https://spritmuseum.se/en/ (last visited Jan. 31, 2024). Rothschild's counsel sought Hermès's position on whether this would violate the injunction.

To consider the issue, on December 25 Hermès requested Rothschild provide "contracts, communications, and/or materials that detail the plans, people and/or entities that are or have been involved, and any other pertinent information about the planned exhibit." Millsaps Decl., Ex 1 at 7. Rothschild replied that "[t]here are no contracts or documents" and that Rothschild would receive no compensation, but otherwise provided no details. *Id.* at 6. Rothschild also suggested—on December 26—that this matter was urgent, requiring Court intervention that week. *Id.*

Hermès responded that same day, asking basic questions like "[w]ill the term 'MetaBirkin' be used" and what might be the accompanying text making clear that Hermès has no association with the work. *Id.* at 4. At this point, Hermès recalled that Rothschild's expert—Dr. Blake Gopnik—wrote that he planned to curate an exhibit at the Spritmuseum. Rogo Decl., Exs. 1 at 35–39; 2 ¶ 5; 3. Rothschild's initial communications conspicuously did not mention Dr. Gopnik, but instead made it sound like the Spritmuseum solicited Rothschild's permission out of the blue. Millsaps Decl., Ex 1 at 6. ("The Spritmuseum apparently is planning an upcoming exhibition on Warhol and Business Art and intends to include MetaBirkins artworks as part of the exhibition.").

Notwithstanding his claim of urgency, Rothschild did not respond to Hermès until January 15, 2024. *Id.* at 3. His response did not answer any of Hermès's questions or even mention Dr. Gopnik's involvement in the exhibit. *Id.* Hermès reiterated that it could not consent to Rothschild's request without more information. *Id.* at 2. In response, Rothschild's counsel merely asserted that "[o]ur understanding from Dr. Gopnik and the Spritmuseum is that neither of them have any financial interest in *MetaBirkins*" but otherwise provided no new details. *Id.*

II. Analysis

Instead of answering Hermès's basic questions so that it could form a position, Rothschild now requests this Court to opine on the scope of the injunction in the absence of that same information. The Court should decline Rothschild's invitation to clarify the injunction until Rothschild clarifies the conduct on which the Court would be opining.

1. *Rothschild is wrong that the conduct at issue could not possibly implicate the injunction*

Rothschild is wrong that the injunction could not be implicated by the conduct here because the injunction "cannot . . . prohibit an activity that (a) occurs outside the United States and thus

February 2, 2024
Page 3

beyond the reach of the Lanham Act, (b) does not constitute a use in commerce, by Mr. Rothschild or anyone else, and (c) poses no substantial risk of consumer confusion." Ltr. at 5.

Starting with extraterritoriality, Rothschild's argument that "the Lanham Act does not reach conduct occurring outside the United States" is a sideshow. Ltr. at 4 (citing *Abitron Austria GmbH v. Hectronic Int'l, Inc.*, 600 U.S. 412, 428 (2023)). Hermès's underlying claims are based on Rothschild's "infringing use" of its trademarks in domestic commerce and therefore fully consistent with this principle. *Abitron*, 600 U.S. at 422. Because of Rothschild's infringing use of Hermès's trademarks in domestic commerce, the Court exercised its broad equitable authority to permanently enjoin Rothschild from continuing to confuse consumers and "continu[ing] to promote the sale of the MetaBirkins NFTs while also seeking to collect a royalty for these sales." *Hermes Int'l v. Rothschild*, No. 22-CV-384 (JSR), 2023 WL 4145518, at *7 (S.D.N.Y. June 23, 2023). Nothing in *Abitron* prevents courts from enjoining parties from engaging in activities abroad that might lead to or aggravate an infringing use in domestic commerce. Regardless, while the Spritmusem's exhibit would be in Sweden, Rothschild does not deny that his and Dr. Gopnik's conduct regarding that exhibit has occurred and would occur in the United States.

Rothschild's "use in commerce" argument fails for similar reasons. Hermès is not concerned that the Spritmuseum's display of the MetaBirkins NFT images constitutes a commercial use under the Lanham Act. It is concerned about commercial activity that may accompany this exhibition. For example, Hermès is concerned that Rothschild might be using the Spritmusem's exhibit *to promote* his infringing MetaBirkins NFTs or cause further confusion. Artists (and curators) frequently seek to promote works by lobbying or otherwise encouraging museum exhibits, as such exhibitions raise the profile and the value of their work. Indeed, there is even an MTV reality show—"The Exhibit: Finding the Next Great Artist"—where artists compete to have their work displayed in the Smithsonian's Hirshhorn Museum.

Finally, Rothschild's argument that the exhibit "poses no substantial risk of consumer confusion" fails for two reasons. Ltr. at 5. *First*, Rothschild has not provided the information necessary to determine whether the exhibit presents a risk of confusion, as discussed below. *Second*, the injunction entirely prohibits Rothschild from promoting or marketing the infringing MetaBirkins NFTs; it is not limited to promotional and marketing efforts that themselves might be confusing. Order at 1–2.

2. *The Court should not opine on the scope of the injunction without more information*

Rothschild fails to present this Court with a "concrete" situation on which it could opine. *Paramount*, 25 F. Supp. 2d at 374. While Rothschild's submissions offer this Court a little more detail than he provided Hermès, they are still deficient in crucial respects.

To start, Rothschild provides *no* information about the scope of the "permission" that he would be granting to the Spritmuseum. Rothschild avers that "[t]he museum has not provided me with a contract or any other document to sign." Jan. 26, 2024 Declaration of Mason Rothschild ("Rothschild Decl."), ¶ 7. Neither Rothschild nor his attorneys provide written communications from the museum, nor do they specifically describe the verbal communications. It is implausible

February 2, 2024
Page 4

that the museum—believing Rothschild's permission legally necessary—would fail to seek written permission. And even if Rothschild's "permission" will be oral, we still do not know basic details about the scope of that permission, like how the museum might advertise the exhibit or sell accompanying merchandise. We do not know, for example, if the license will cover selling goods featuring MetaBirkins in the museum shop or elsewhere.

Notably, Rothschild asserts that he "own[s] the exclusive copyright in the 100 *MetaBirkins* digital artworks." Rothschild Decl., ¶ 1. It therefore appears that the permission could include a copyright license, although Rothschild's submissions never specify. Hermès notes that, under U.S. law, it is not clear whether Rothschild owns the copyright to these images as Mark Design, not Rothschild, created them. And under Swedish law, Rothschild (or Mark Design) likely does not own any copyright in the images because they were made by copying a schematic of Hermès' Birkin bag. Rogo Decl., Ex. 4 at 741, 743– 44, 757; Swedish Act (1960:729) on Copyright in Literary and Artistic Works (as amended up to Act (2018:1099)). Hermès believes the Court should avoid opining on a copyright question that involves issues of fact and law that the parties have never addressed.

We also do not know key details about the exhibit itself. Rothschild states only that "[t]he [M]useum intends to display *MetaBirkins* on a screen just as the images are available on the Internet" and that it "intends to include mention of [this] lawsuit in the exhibit's description." Ltr. at 3. Rothschild refused to provide any details regarding that text, or even whether it will use the term "MetaBirkins." Because the language of Rothschild's disclaimer on his MetaBirkins.com website further confused potential consumers, *see* Rogo Decl., Ex. 5, Rothschild's bare-bones description fails to provide reasonable assurance that the exhibit will not aggravate the confusion already created. Certainly, he should not be allowed to permit others to cause confusion.

Finally, to put it bluntly, the circumstances surrounding Rothschild's request raise a serious suspicion that the Spritmuseum did not just happen to decide to include the MetaBirkins NFTs in its exhibit, but instead that Rothschild (or Dr. Gopnik) is encouraging the museum to include them as a means of promoting the MetaBirkins NFTs and his work more generally. As noted, the Spritmuseum is a museum dedicated to Swedish "drinking culture." It seems unlikely that this museum independently decided to feature Rothschild's work. Rothschild denies a connection to the museum, Rothschild Decl., ¶ 6, but the trial in this case cast a shadow on Rothschild's credibility. Rothschild's counsel admitted that he "sometimes exaggerates and embellishes the truth, especially [when] he's promoting himself and his projects." Rogo Decl., Ex. 6 at 49. That is precisely what is happening here. Rothschild's post-litigation conduct only adds to the concern, as he has refused to pay the judgment, claiming a lack of funds and the impact of this action.

Hermès's concern in this regard is only aggravated by Rothschild's less-than-full disclosure when he reached out to Hermès in December regarding this request. Rothschild suggested that the Spritmusem's request was unprompted. *See, e.g.*, Millsaps Decl., Ex 1 at 6 ("The Spritmuseum apparently is planning an upcoming exhibition on Warhol and Business Art and intends to include MetaBirkins artworks as part of the exhibition."). But Rothschild's expert, Dr. Gopnik, stated in his report that he was curating an exhibit at the Spritmuseum. Rogo Decl., Ex. 2. Only when pressed by Hermès did Rothschild's counsel concede that Dr. Gopnik is behind the

February 2, 2024
Page 5

Spritmusem's decision to exhibit the MetaBirkins NFTs. Rothschild's submissions shed little light on Dr. Gopnik's decision to include the MetaBirkins NFTs in the exhibition, including anything about their relationship. Rothschild states that he has only "personally spoken" with Dr. Gopnik once, Rothschild Decl., ¶ 8, but (putting aside Rothschild's credibility problems) this says nothing about the extent to which Rothschild communicated with Dr. Gopnik through counsel or other persons, or what other arrangements may exist concerning this exhibition.

Even if Dr. Gopnik independently decided to include the MetaBirkins NFTs in the exhibit, the injunction also applies to Rothschild's "associates, business partners, . . . and all others in active concert or participation with him who receive actual notice" of the injunction. Order at 1. Dr. Gopnik appears to have notice, as after the verdict, he promoted his "defense" of Rothschild on a podcast, describing himself as "spitting mad," Rogo Decl., Ex. 7, and published an article calling the jury "misguided," *id.*, Ex. 8. He also initially requested permission to submit an amicus brief on appeal. *Id.*, Ex. 9. Overall, the conduct of Rothschild and Dr. Gopnik is consistent with parties coordinating with each other, regardless of Rothschild's assertion that Dr. Gopnik is a mere "non-party witness" with "no relationship" to Rothschild and no "financial interest" in this litigation. Ltr. at 3–4. There are serious questions about whether Dr. Gopnik should be subject to the injunction as a business associate of and/or a person who is in active concert with Rothschild.

\*   \*   \*

It should have been easy for Rothschild to answer Hermès's basic questions about the Spritmuseum's exhibit before making this application. This is especially true since his own expert was curating it. But instead of being forthright about that fact and simply answering Hermès's questions—which may have avoided this entire dispute and wasting the Court's and parties' resources—Rothschild instead asks this Court to opine about the scope of the injunction on an incomplete record. Rothschild should provide Hermès and the Court with a full record, at which time Hermès can take a considered position and, if necessary, the Court can weigh in. The Court should deny Rothschild's motion.

We appreciate the Court's ongoing attention to this matter.

Respectfully submitted,

*/s/ Oren J. Warshavsky*

Oren J. Warshavsky