# Lex Lumina PLLC

Rhett O. Millsaps II  |  rhett@lex-lumina.com  |  646.535.1137

February 15, 2024

VIA ECF

The Honorable Jed S. Rakoff
Room 1340
United States Courthouse
500 Pearl Street
New York, NY  10007

      Re:    *Hermès International et al. v. Rothschild*, 22-cv-00384-JSR;
                Rothschild's Motion for Protective Order

Dear Judge Rakoff:

Pursuant to the Court's Minute Entry entered February 12, 2024, Mr. Rothschild respectfully submits this letter and accompanying declaration of Rhett O. Millsaps II ("Millsaps Decl.") in support of his motion, pursuant to Federal Rule of Civil Procedure 26(c)(1), for a protective order prohibiting Plaintiffs-Appellees Hermès International and Hermès of Paris, Inc. ("Hermès"), at least at this juncture, from serving or enforcing Hermès' recently noticed document subpoenas directed to Mr. Rothschid's counsel, experts, and discovery vendor in this case.

### *Background*

On or around November 29, 2023, without notice to Mr. Rothschild, Hermès served (or attempted to serve) document subpoenas on Mr. Rothschild's employer, agent, and manager (the "Employer Subpoenas") seeking information in aid of collection of the money judgment entered on February 14, 2023. *See* ECF No. 201 at 2. Hermès withdrew those subpoenas when Mr. Rothschild notified Hermès that he would move to quash because they had been served in violation of Rule 45. *Id*. Mr. Rothschild then moved to stay all post-judgment discovery pending appeal; the Court denied that motion on December 29, 2023. ECF No. 212. On January 3, 2024, Hermès noticed the Employer Subpoenas and promptly served (or attempted to serve) them again on those non-parties. Millsaps Decl. ¶ 2.

On February 9, 2024—two weeks before Mr. Rothschild's reply brief on appeal is due, and before Hermès has collected any information in connection with the Employer Subpoenas or sought to obtain any information from Mr. Rothschild himself—Hermès served document subpoenas on Lex Lumina and Harris, St. Laurent & Wechsler LLP, Mr. Rothschild's counsel in this case; Dr. Blake Gopnik and Dr. David Neal, the experts retained by Lex Lumina on behalf of Mr. Rothschild in this case; and Consilio LLC, the e-discovery vendor hired by Lex Lumina in this case (collectively, the "Non-Party

Subpoenas"). *See* Millsaps Decl. ¶ 3, Ex. 1. The Non-Party Subpoenas seek those entities' and individuals' engagement and other agreements with or related to Mr. Rothschild, as well as information regarding all payments and/or transfers made to them by or on behalf of Mr. Rothschild. *Id*.

### Argument

Federal Rule of Civil Procedure 69 generally permits broad post-judgment discovery from "any person," as "[i]n its efforts to enforce a judgment, 'the judgment creditor must be given the freedom to make a broad inquiry to discover *hidden or concealed assets of the judgment debtor*.'" *GMA Accessories, Inc. v. Electric Wonderland, Inc*., No. 07 Civ. 3219 PKC DF, 2012 WL 1933558, at *4 (S.D.N.Y. May 22, 2012) (emphasis added). "As a general matter, however, post-judgment discovery against a non-party should be 'limited to a search for the [judgment debtor's] hidden assets.'" *Id*. (citing *Costamar Shipping Co. v. Kim–Sail, Ltd.*, No. 95 Civ. 3349(KTD), 1995 WL 736907 (quoting *Cassion Corp. v. County West Bldg. Corp*., 62 F.R.D. 331, 334 (E.D.Pa.1974)). Indeed, "[i]nquiry into the assets of a non-party is only permitted 'where the relationship between the judgment debtor and the non-party is sufficient to raise a reasonable doubt as to the bona fides of the transfer of assets between them.'" *Id*. at 5 (quoting *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 562 (S.D.N.Y.1977)); *see also Uniden Corp. of America v. Duce Trading Co., LTD*., No. 89 Civ. 0878E, 1993 WL 286102, at *1 (W.D.N.Y. July 19, 1993) (noting that post-judgment discovery concerning the assets of a non-party requires "a somewhat heightened showing of necessity and relevance—*i.e.*, at least some demonstration of concealed or fraudulent transfers or alterego relationship with the judgment debtor") (citations omitted).

Moreover, "[a]s discovery under the Federal Rules is limited in scope to that which is 'relevant to any party's claim or defense,' Fed. R. Civ. P. 26(b)(1), the court may also quash or modify a subpoena that calls for irrelevant information." *GMA Accessories*, 2012 WL 1933558, at *5. Hermès must "demonstrate[] that what it seeks from the non-parties is relevant to its effort to enforce a judgment against" Mr. Rothschild and "may not simply engage in a fishing expedition." *Essex Ins. Co. v. RMJC, Inc*., Civil Action No. 01-4049, 2008 WL 2757862, at *2 (E.D. Pa. July 16, 2008) (quashing non-party post-judgment subpoenas "due to the absence of any support in the record to demonstrate relevance"). Federal Rule of Civil Procedure 26 gives the Court broad discretion to control the contours of discovery, and Rule 26(c)(1) provides that the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…"

The same day that we received notice of the Non-Party Subpoenas, we emailed Hermès' counsel to ask for the relevance of the information sought to Hermès' judgment collection efforts, and to advise that we could see no relevance and viewed the subpoenas as designed to harass. *See* Millsaps Decl., Ex. 2. On the relevance question, Mr. Warshavsky responded only that "broad post judgment discovery in aid of execution is the norm in state and federal courts," and that the Non-Party Subpoenas were fashioned "to avoid the disclosure of any privileged information or information beyond those related to financial dealings and arrangements, and potential sources of funds." *Id*. at 2. When we raised the issue in the parties' joint call with Chambers days later to

request leave to file this motion, again the only explanation that Mr. Warshavsky had for the relevance of the Non-Party Subpoenas was the general assertion that New York federal and state law permits broad post-judgment discovery into Mr. Rothschild's business relationships. *Id*. ¶ 5, Mr. Warshavsky has at no time pointed to any basis for asserting that any of the non-parties subject to the Non-Party Subpoenas were the recipients of fraudulent transfers from Mr. Rothschild or otherwise have acted to conceal any of Mr. Rothschild's assets. *Id*. ¶ 6,

As an initial matter, all the information sought by the Non-Party Subpoenas would be in Mr. Rothschild's possession and should be sought from him in the first instance. Hermès cannot demonstrate a "heightened showing of necessity and relevance" that would justify burdening any of the non-parties with the Non-Party Subpoenas at this stage. *Uniden Corp.*, 1993 WL 286102 at *1.

More importantly, the information sought by the Non-Party Subpoenas is plainly irrelevant to Hermès' efforts to enforce the judgment against Mr. Rothschild. Funds transferred to Mr. Rothschild's counsel for payment of their fees and disbursements, even for services rendered post-judgment, are not proper targets of Hermès' judgment enforcement efforts as such transfers are not "potential sources of funds" to satisfy the judgment. *See*, *e.g.*, *Townsend Farms, Inc. v. Göknur Gida Maddeleri Enerji Imalate Ithalat Ihracat Ticaret ve Sanayi A.Ş.*, 20-MC-75 (RA) (RWL), 2020 WL 7260513 (S.D.N.Y. Dec. 9, 2020) (modifying restraining notice served on the judgment debtor's counsel to allow the judgment debtor to pay counsel's firm for post-judgment representation); *SEC v. Pentagon Cap. Mgmt.*, No. 08 Civ. 3324(RWS), 2013 WL 5815374 (S.D.N.Y. Oct. 29, 2013) (same); Millsaps Decl., Ex. 2 at 2. Nor are Mr. Rothschild's agreements with his counsel regarding payment for services rendered and costs advanced relevant to Hermès' judgment collection efforts. And the same is equally if not more true regarding Mr. Rothschild's agreements with and payments to the experts and discovery vendor engaged by Lex Lumina on Mr. Rothschild's behalf for this case; payments to them by Mr. Rothschild or on his behalf for the services that they rendered—all pre-judgment—are irrelevant to identifying Mr. Rothschild's assets now available to satisfy the judgment.

Given (i) Hermès' counsel's inability to articulate the relevance of the Non-Party Subpoenas to Hermès' judgment collection efforts and (ii) the timing of those subpoenas—which Hermès curiously chose to serve precisely two weeks before Mr. Rothschild's reply brief is due in his appeal and before Hermès has obtained any information from sources that are actually relevant to Mr. Rothschild's income and assets (including Mr. Rothschild himself)—the purpose of the Non-Party Subpoenas plainly is to distract and annoy Mr. Rothschild's counsel, experts, and vendor who have supported him in this litigation, which continues in the Second Circuit. The burden of responding to subpoenas that improperly seek irrelevant information is *per se* annoying and harassing.

Accordingly, Mr. Rothschild respectfully moves the Court, pursuant to Rule 26(c)(1), for a protective order prohibiting Hermès, at least at this juncture, from serving or enforcing the Non-Party Subpoenas. In the alternative, Mr. Rothschild respectfully requests that the Court stay post-judgment discovery in this case for two weeks so that Mr. Rothschild may file an emergency motion in the Second Circuit to stay discovery pending appeal pursuant to Federal Rule of Appellate Procedure 8.

Hon. Jed S. Rakoff
Page 4 of 4
February 15, 2024

                                                Sincerely,

                                                */s/ Rhett O. Millsaps II*

cc:  All Counsel of Record (via ECF)