UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HERMÈS INTERNATIONAL and
HERMÈS OF PARIS, INC.,

       Plaintiffs,

       v.

"MASON ROTHSCHILD" a/k/a SONNY ESTIVAL,

       Defendant.

No. 22-cv-384-JSR

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR RECONSIDERATION

---

**LEX LUMINA PLLC**

Rhett O. Millsaps II
Rebecca Tushnet
Christopher J. Sprigman
Mark P. McKenna (*pro hac vice*)
745 Fifth Avenue, Suite 500
New York, NY  10151
Tel:  (646) 898-2055
Email:  rhett@lex-lumina.com

*Attorneys for Defendant Mason Rothschild*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES……………………………………….................... ii

INTRODUCTION AND BACKGROUND…..…………………………………... 1

ARGUMENT……………………………………………………………..…….. 3

    I.    LEGAL STANDARD…………………………………………………... 3

    II.    THE ORDER OVERLOOKS KEY FACTS ON THE RECORD AND THAT THE COURT COULD HAVE CONFIRMED AT THE EVIDENTIARY HEARING THAT SHOULD ALTER THE CONCLUSION REACHED…………………………………………. 3

        A.    Mr. Rothschild Will Not Provide Permission to Use *MetaBirkins* in Merchandising or Advertising for the Museum's Exhibition…........ 4

        B.    Mr. Rothschild's Counsel Did Not Misrepresent Facts Regarding the Museum's Intention to Include Discussion of this Litigation in the Planned *MetaBirkins* Exhibit.…………………………………….. 5

    III.    BASED ON THE RECORD, CONSTRUING THE INJUNCTION TO PROHIBIT MR. ROTHSCHILD FROM GIVING THE REQUESTED PERMISSION VIOLATES THE FIRST AMENDMENT………………… 7

CONCLUSION……………………………………………………………………… 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abrahamson v. Bd. of Educ.*,
    237 F. Supp. 2d 507, 510 (S.D.N.Y. 2002)……………………………..……………3

*Book People, Incorporated v. Wong*,
    91 F.4th 318, 339-40 (5th Cir. 2024)……………………………..…………………10

*Capitol Records, LLC v. ReDigi Inc.*,
    910 F.3d 649, 659-60 (2d Cir. 2018)……………………………………………………5

*Consumers Union of U.S., Inc. v. Gen. Signal Corp.*,
    724 F.2d 1044, 1053 (2d Cir. 1983), *cert. denied*, 469 U.S. 823 (1984)……………..……7

*Entm't Software Ass'n v. Blagojevich*,
    469 F.3d 641, 652 (7th Cir. 2006).....……………………………..……………….10

*Hermès Int'l et al. v. Rothschild*,
    654 F. Supp. 3d 268, 278 (S.D.N.Y. 2023)……………………………...……………9

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
    729 F.3d 99, 104 (2d Cir. 2013) ………………………………….………………..3

*Nat'l Ass'n of Mfrs. v. SEC*,
    800 F.3d 518, 530 (D.C. Cir. 2015)..…………………………………….……………10

*Nat'l Inst. of Family & Life Advocates v. Becerra*,
    585 U.S. 755, 768 (2018)………………………………………………...……8, 10

*Pittsburgh Press Co. v. Human Rels. Comm'n*,
    413 U.S. 376, 385 (1973)..…………………..………………………….……8

*Raffles Tree Apparel Pte. Ltd. v. A Base IX Co. LLC*,
    18-CV-05791 (JSR), 2019 WL 1447214, at *1 (S.D.N.Y. March 4, 2019) ……………….3

*Shrader v. CSX Transp. Inc.*,
    70 F.3d 255, 257 (2d Cir. 1995)………………………………………………3

*Solow v. Citigroup, Inc.*,
    507 Fed. Appx. 81, 83 (2d Cir. 2013) (summary order)…..……………………….9

*Trafficschool.com, Inc. v. EDriver Inc.*,
    653 F.3d 820, 829-30 (9th Cir. 2011)..………………………………….……7

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
    425 U.S. 748, 762 (1976)...………………………………..……………………8

*Westchester Media v. PRL USA Holdings, Inc.*,
    214 F.3d 658, 672 (5th Cir. 2000)………………………………………………7

*Wynn v. AC Rochester*,
    273 F.3d 153, 156 (2d Cir. 2001)……………………………...………………9

**Statutes**

17 U.S.C. § 106 ……………………………………………………………………………5

**Rules**

Local Rule 6.3 ………………….....……………………………………….…………...1, 3

**Treatises & Other**

Swedish Intellectual Property Office, "About copyright,"
    https://www.prv.se/en/copyright/about-copyright/……………………………….......…5

Defendant Mason Rothschild respectfully submits this memorandum of law in support of his motion, pursuant to Rule 6.3 of the Local Rules of the United States District Court for the Southern District of New York, for reconsideration of the Court's Opinion and Order dated March 13, 2024 (the "Order"), regarding Mr. Rothschild's motion for clarification of the scope of the Order of Permanent Injunction (the "Injunction").[1]

## INTRODUCTION AND BACKGROUND

Mr. Rothschild, with leave of the Court, filed a letter motion for clarification of the scope of the Injunction on January 26, 2024 (the "Motion"), after the Spritmuseum in Stockholm, Sweden (the "Museum") reached out to ask for Mr. Rothschild's permission to display some of his *MetaBirkins* artworks in an upcoming exhibition curated by Dr. Blake Gopnik and focusing on Andy Warhol and Business Art (the "Exhibition"). Order at 4. Specifically, Mr. Rothschild sought confirmation from the Court that he would not be in violation of the Injunction if he granted the Museum permission to display *MetaBirkins* in the Exhibition where: the exhibit would identify Mr. Rothschild as the source of *MetaBirkins* and would disclaim any affiliation with Hermès; the exhibit would include some discussion of this litigation between Hermès and Mr. Rothschild; Mr. Rothschild would receive no compensation for giving his permission to display *MetaBirkins* in the Exhibition; and Mr. Rothschild would not give permission for *MetaBirkins* to be used in merchandising or advertising for the Exhibition. Order at 4-5; ECF No. 213 at 2-4; ECF No. 219 at 1-2.

The Court held an evidentiary hearing on February 20, 2024 (the "Hearing"), at which the Court questioned Dr. Gopnik and the Museum's curator, Mia Sundberg. *See* ECF No. 228

---

[1] Mr. Rothschild does not seek reconsideration of the Order insofar as it directed the Clerk to amend the caption of this case to include Mr. Rothschild's birth name, Sonny Estival.

1

("Hearing Tr.") at 2-15.  The Court dismissed each of the witnesses without giving counsel for the parties any opportunity to question them at the Hearing.  *Id*. at 9-10, 15.  The Court later issued its Order denying the Motion "because the Court cannot conclude, based on the evidence before it, that Estival's requested permission comports with the injunction."  Order at 2.

The Order laid out two reasons for its ruling: first, that Mr. Rothschild's "written 'submission provides no details about the permission he would be granting -- such as the promotion of the exhibit or any merchandising,'" and thus "there is a real risk, in plain contravention of the injunction," that Mr. Rothschild "'might be using the Spritmuseum's exhibit to promote his infringing MetaBirkins NFTs or cause further confusion' to consumers." (*Id*. at 5-6 (citation omitted)); and second, that the "sworn testimony of both witnesses revealed that Estival's counsel had misrepresented key facts to the Court" about whether the exhibit would include mention of this litigation.  Order at 6-7.

Reconsideration of the Order is warranted because the Court overlooked key evidence adduced in Mr. Rothschild's Motion papers and at the Hearing showing that Mr. Rothschild had not been asked for, and in any event would not give, permission for use of *MetaBirkins* in merchandising or for advertising purposes, and that Mr. Rothschild's counsel did not misrepresent facts to the Court regarding the intention to mention this litigation in the *MetaBirkins* exhibit.  Based on the record before it, the Court should grant this motion for reconsideration and issue an order, consistent with the First Amendment, confirming that the Injunction does not prohibit Mr. Rothschild from giving the Museum permission only to display the *MetaBirkins* artworks in the Exhibition.

## ARGUMENT

I. **LEGAL STANDARD**

The standard for granting a motion for reconsideration under Local Rule 6.3 "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) ("A motion for reconsideration should be granted only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."). "Reconsideration is warranted where a movant can point to overlooked factual matters 'that might reasonably be expected to alter the conclusion reached' as long as they are not 'new facts, issues, or arguments not previously presented to the court.'" *Raffles Tree Apparel Pte. Ltd. v. A Base IX Co. LLC*, 18-CV-05791 (JSR), 2019 WL 1447214, at *1 (S.D.N.Y. March 4, 2019) (Rakoff, J.) (quoting *Abrahamson v. Bd. of Educ.*, 237 F. Supp. 2d 507, 510 (S.D.N.Y. 2002)).

II. **THE ORDER OVERLOOKS KEY FACTS ON THE RECORD AND THAT THE COURT COULD HAVE CONFIRMED AT THE EVIDENTIARY HEARING THAT SHOULD ALTER THE CONCLUSION REACHED**

The Court's Order (a) overlooks key evidence presented in Mr. Rothschild's Motion papers showing that the Museum did not ask for—and Mr. Rothschild expressly stated he would not provide—permission to use *MetaBirkins* in merchandising or for advertising purposes; and (b) wrongly accuses Mr. Rothschild's counsel of "misrepresent[ing] key facts to the Court"— namely, that the Museum intends to include discussion of this litigation in the planned

3

*MetaBirkins* exhibit.  Order at 5-7.  Acknowledgment of the overlooked facts should alter the conclusion reached by the Court on the Motion.

      A.    **Mr. Rothschild Will Not Provide Permission to Use *MetaBirkins* in Merchandising or Advertising for the Museum's Exhibition.**

As the first reason for denying Mr. Rothschild's Motion, the Order states:

> As Hermès points out, Estival's written "submission provides no details about the permission he would be granting -- such as the promotion of the exhibit or any merchandising." Hermes Opp. at 1.  Indeed, Estival's counsel asserts that there are "no contracts or documents" reflecting any agreement he would have with the museum or the scope of the permission he would be granting.  ECF No. 215 (declaration from Estival's counsel), at 6.  "[E]ven if [Estival's] 'permission' will be oral, we still do not know basic details about the scope of that permission, like how the museum might advertise the exhibit or sell accompanying merchandise." Hermes Opp. at 4.  "We do not know, for example, if the license will cover selling goods featuring MetaBirkins in the museum shop or elsewhere." *Id*.  Estival's own motion alludes to that possibility, noting as somehow relevant that he "retains ownership of the copyrights in the MetaBirkins artworks." Estival Mem. at 2.

Order at 5.

In fact, however, Mr. Rothschild expressly stated in a declaration in support of his Motion, "The Spritmuseum has not asked for my permission to use *MetaBirkins* images in any promotional materials or in merchandise, and I would not give such permission to the museum."  ECF No. 220 (Reply Declaration of Mason Rothschild), ¶ 4.  Mr. Rothschild's retention of ownership of the copyrights in the *MetaBirkins* artworks is relevant here not because it "alludes to [the] possibility" that *MetaBirkins* might be used in merchandising or advertising (Order at 5), but because it means that the Museum would need his permission to publicly display the *MetaBirkins* artworks in the Exhibition.  Copyright rights extend far past advertising or merchandising, and Mr. Rothschild made clear that he would not give such permission to the Museum—only permission to reproduce *MetaBirkins* images as necessary to display them in the

4

Exhibition.[2]  *Id*.

Moreover, the Museum in fact "has no intention of using the *MetaBirkins* images or title in connection with merchandise or in promotional materials for the exhibition" and has "asked Mr. Rothschild only for his permission to display some of the *MetaBirkins* artworks in the exhibition."  Declaration of Mia Sundberg dated March 19, 2024 ("Sundberg Decl."), ¶ 3.  The Court could have confirmed this at the Hearing but did not ask either Ms. Sundberg or Dr. Gopnik about this issue.  *See* Hearing Tr. at 2-15.

### B. Mr. Rothschild's Counsel Did Not Misrepresent Facts Regarding the Museum's Intention to Include Discussion of this Litigation in the Planned *MetaBirkins* Exhibit.

As the second reason for denying Mr. Rothschild's Motion, the Order states that the "sworn testimony of both [Dr. Gopnik and Ms. Sundberg] revealed that Estival's counsel had misrepresented key facts to the Court"—namely that "the exhibit text would . . explain that Hermès sued and won a trial against Mr. Rothschild [Estival] for trademark infringement."  Order at 6 (quoting Estival Mem. at 4).  But Mr. Rothschild's counsel in fact did not make any misrepresentations to the Court.

For this assertion, the Court points to Dr. Gopnik's testimony that "[w]e haven't got to the stage yet of writing the wall text that go[es] with each piece" and that "[w]all text is usually maximum a hundred words, so we're going to have to figure out a way of condensing the issues into a very short text."  Order at 6-7 (quoting Hearing Tr. at 6:6-11).[3]  But the Court overlooked

---

[2] Because of the nature of digital art, the Museum would need to make a copy of the *MetaBirkins* artwork to display it in the Museum.  *Capitol Records, LLC v. ReDigi Inc.*, 910 F.3d 649, 659-60 (2d Cir. 2018) (explaining that, because of the nature of digital files, new copies are created every time a file moves to a new computer); *see also* 17 U.S.C. §106 (providing for rights of reproduction and public display); Swedish Intellectual Property Office, "About copyright," https://www.prv.se/en/copyright/about-copyright/ (last visited March 27, 2024).

[3] Rothschild's Motion papers noted that the Museum had not provided a draft of the exhibit text.  Rothschild Reply Decl. ¶ 4.

5

Dr. Gopnik's concomitant testimony that, in the exhibit text, "[t]here certainly will be some kind of explanation of the controversy of the court case around this," and that Dr. Gopnik "can't imagine not including some discussion of what the jury's conclusion was in the exhibition." Hearing Tr. at 6:7-9; 8:15-16.

In accusing Mr. Rothschild's counsel of making a misrepresentation to the Court, the Order also points to Ms. Sundberg's testimony that "[w]e have not yet decided whether we will discuss the lawsuit in text context, in text of the exhibition. We have not at all each reached the point where we started to discuss, Dr. Blake [Gopnik] and I, what the context of the text around this artwork will be." Order at 6 (quoting Hearing Tr. at 12:19-23). But Ms. Sundberg did, in fact, tell Mr. Rothschild's counsel prior to submission of the Motion papers that "the museum would explain in the exhibit showing *MetaBirkins* that Hermès sued and won a trial against Mr. Rothschild over the *MetaBirkins* artworks, and that Mr. Rothschild is challenging that result on appeal." Sundberg Decl. ¶ 2; ECF No. 215 (Millsaps declaration), ¶ 3. And Ms. Sundberg has reaffirmed that this is the Museum's plan. Sundberg Decl. ¶ 2 ("Having considered the matter further since the Court hearing about this matter held on February 20, 2024, we do intend to convey that information in the exhibit if we are able to include the *MetaBirkins* artworks.").

Thus, Mr. Rothschild's counsel did not "misreprent[] key facts to the Court" about this issue. Order at 6. The Court could have ascertained this at the Hearing by asking Ms. Sundberg if she had told Mr. Rothschild or his counsel that the Museum planned to include information about this litigation in the exhibit, as stated in Mr. Rothschild's Motion papers. Had the Court done so, and had the Court asked the witnesses if the Museum intended to use the *MetaBirkins* images or title in any advertising or merchandising, then it should have been clear to the Court that Mr. Rothschild's giving his permission simply for display of the *MetaBirkins* artworks in the

6

Exhibition, as described in his Motion papers, would not violate the terms of the Injunction—and that the First Amendment would prohibit construing the Injunction otherwise.

Instead, the Court asked Dr. Gopnik whether he would commit to informing the Museum's patrons that Mr. Rothschild "was found by a jury to have committed fraud"—a compelled statement that, as explained below, would be both factually inaccurate and legally untenable under the First Amendment. Hearing Tr. at 8:9-11; *see also id*. at 12-14.

### III. BASED ON THE RECORD, CONSTRUING THE INJUNCTION TO PROHIBIT MR. ROTHSCHILD FROM GIVING THE REQUESTED PERMISSION VIOLATES THE FIRST AMENDMENT

In fashioning injunctive relief in a trademark case, the "First Amendment demands use of a disclaimer where there is a reasonable possibility that it will suffice to alleviate consumer confusion." *Consumers Union of U.S., Inc. v. Gen. Signal Corp*., 724 F.2d 1044, 1053 (2d Cir. 1983), *cert. denied*, 469 U.S. 823 (1984) (holding that the district court erred in enjoining the defendant from making any reference to plaintiff's mark because "[i]f the record truly evinced a likelihood of consumer confusion…the proper course would have been to require a clear disclaimer"); *Westchester Media v. PRL USA Holdings, Inc*., 214 F.3d 658, 672 (5th Cir. 2000) (courts must "accommodate trademark remedies with First Amendment interests"); *Trafficschool.com, Inc. v. EDriver Inc.*, 653 F.3d 820, 829-30 (9th Cir. 2011) (the "permanent injunction here does raise [First Amendment] concerns because it erects a barrier to *all* content on the…website, not merely that which is deceptive").

The record, as discussed above, and Ms. Sundberg's testimony that the Museum would include a disclaimer in the *MetaBirkins* exhibit making clear that it "has nothing to do with the brand of Hermès" (Order at 7), should have led the Court to the only conclusion permissible here under the First Amendment: Mr. Rothschild's giving permission to the Museum simply to

7

display *MetaBirkins* artworks in the Exhibition would not violate the Injunction. That conclusion should have been reinforced by Dr. Gopnik's testimony, which the Order overlooks, that "[t]here certainly will be some kind of explanation of the controversy of the court case around this" in the exhibit and that he "can't imagine not including some discussion of what the jury's conclusion was in the exhibition." Hearing Tr. at 6:7-9; 8:15-16.

The Order, however, not only dismissed the assurance of a disclaimer as insufficient (Order at 7); it also seems to say that Mr. Rothschild's giving permission to the Museum would violate the Injunction unless the Exhibition identifies Mr. Rothschild as a "fraud" rather than an artist. *See* Order at 7-9; *see also* Hearing Tr. at 8:9-11 (the Court to Dr. Gopnik: "…if I allow those images to be used [in the Exhibition], do you agree that you will prominently state that [Mr. Rothschild] was found by a jury to have committed fraud?").

Even assuming that the Museum's inclusion of *MetaBirkins* in its Exhibition is commercial speech—which is not the case, since the Exhibition would not propose any commercial transaction[4]—such a requirement by the Court violates the principles that the Supreme Court has articulated for permissible compelled commercial speech. Even when necessary to prevent commercial deception, compelled speech must be factual, noncontroversial, related to "the terms under which…services will be available," and not unjustified or unduly burdensome. *Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755, 768 (2018) (*NIFLA*) (citation omitted). This Court's apparent requirement that the Exhibition describe Mr. Rothschild as a "fraud" rather than an artist is not factual, noncontroversial, or adequately justified.

---

[4] Commercial speech is "'"speech which does 'no more than propose a commercial transaction.'"' *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976) (quoting *Pittsburgh Press Co. v. Human Rels. Comm'n*, 413 U.S. 376, 385 (1973)).

8

First, Mr. Rothschild was found liable by the jury for trademark infringement, dilution, and cybersquatting—not fraud. ECF No. 144 (Verdict). Hermès did not, and could not, bring a fraud claim against Mr. Rothschild in this case—Hermès was not a *MetaBirkins* purchaser, and in any event there is no evidence whatsoever that an actual purchaser ever was misled or confused about the source of *MetaBirkins*. *See Solow v. Citigroup, Inc.*, 507 Fed. Appx. 81, 83 (2d Cir. 2013) (summary order) (quoting *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001)) ("'Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff.'"); ECF No. 149 (January 31, 2023, trial transcript) at 198:9-199:19 (Hermès' chief lawyer and Rule 30(b)(6) witness unable to identify at trial any evidence that Mr. Rothschild ever told anyone that *MetaBirkins* came from Hermès or that an actual *MetaBirkins* purchaser was confused); ECF No. 159 (February 6, 2023, trial transcript) at 966:5-972:11 (summation of Hermès' counsel at trial discussing evidence of confusion and identifying no evidence that an actual *MetaBirkins* purchaser was confused).

Nor could a *MetaBirkins* purchaser have plausibly pled reasonable reliance for a fraud claim, given that the evidence showed unequivocally that Mr. Rothschild prominently and consistently identified himself as the creator of *MetaBirkins* and publicly disclaimed any association with Hermès. *See*, *e.g.*, ECF No. 24-21 (printout of *MetaBirkins* website identifying Mr. Rothschild as the creator of *MetaBirkins* prior to their release); *Hermès Int'l et al. v. Rothschild*, 654 F. Supp. 3d 268, 278 (S.D.N.Y. 2023) (Rakoff, J.) (noting that "Rothschild placed a prominent disclaimer on the MetaBirkins website" and made efforts to correct publications that "mistakenly reported an affiliation between Hermès and the MetaBirkins

project"). It thus would not be factually correct for the Museum's exhibit to say that Mr. Rothschild "was found by a jury to have committed fraud…" Hearing Tr. at 8:9-11.

Second, requiring the Museum to condemn Mr. Rothschild as a "fraud" as a condition for Mr. Rothschild's granting his permission to the Museum is far from uncontroversial. Courts have invalidated less judgmental compelled labels as too controversial to be mandated. *See*, *e.g.*, *Book People, Incorporated v. Wong*, 91 F.4th 318, 339-40 (5th Cir. 2024) (invalidating compelled "sexually explicit" or "sexually relevant" labels); *Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 530 (D.C. Cir. 2015) ("The label '[not] conflict free' is a metaphor that conveys moral responsibility for the Congo war."); *Entm't Software Ass'n v. Blagojevich*, 469 F.3d 641, 652 (7th Cir. 2006) (invalidating compelled "sexually explicit" label).[5]

Finally, compelled disclosures are unjustified or unduly burdensome unless they remedy a harm that is "potentially real not purely hypothetical" and extend "no broader than reasonably necessary." *NIFLA*, 585 U.S. at 776 (citations omitted). The risk the Court has identified is deception of consumers. Order at 5-6. But it is uncontested that no one could be defrauded into a purchase at the Exhibition because the Museum's *MetaBirkins* exhibit would not involve any sales, and the exhibit would identify Mr. Rothschild as the *MetaBirkins* creator, expressly disclaiming any affiliation with Hermès. Sunderg Decl. ¶¶ 2-3; Hearing Tr. at 6:7-9; 8:15-16; 14:12-18. Compelling the labeling of Mr. Rothschild as a "fraud" in this context would function only as a scarlet letter, not a consumer protection.

---

[5] Even Mr. Rothschild's name has generated controversy in this case. While the Court sees Mr. Rothschild's use of the name "Mason Rothschild" for his artistic endeavors as "entirely phony" and evidence of "deceptiveness" (Order at 8), Ms. Sundberg states, "it is not unusual for artists to assume professional names that are different from their birth name." Sundberg Decl. ¶ 4.

## **CONCLUSION**

In light of the foregoing, Mr. Rothschild respectfully requests that his motion for reconsideration be granted.

Dated: March 27, 2024

>Respectfully Submitted,
>
>/s/ *Rhett O. Millsaps II*
>Rhett O. Millsaps II
>Rebecca Tushnet
>Christopher J. Sprigman
>Mark P. McKenna (*pro hac vice*)
>LEX LUMINA PLLC
>745 Fifth Avenue, Suite 500
>New York, NY 10151
>(646) 898-2055
>rhett@lex-lumina.com
>
>*Attorneys for Defendant Mason Rothschild*